# EXHIBIT A

Case 1:05-cv-00434-GMS    Document 11-2    Filed 07/27/2005    Page 1 of 14

**Westlaw.**

Not Reported in F.Supp.2d  
2003 WL 22519440 (E.D.Pa.)  
**(Cite as: 2003 WL 22519440 (E.D.Pa.))**

Page 1

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
E.D. Pennsylvania.
ENTERTAINMENT TECHNOLOGY
CORPORATION
v.
WALT DISNEY IMAGINEERING, et al.
**No. Civ.A. 03-3546.**

Filed June 9, 2003.
Oct. 2, 2003.

represented by Paul G. Nofer, Klehr Harrison Harvey, Branzburg & Ellers, LLP, Phila, PA, Lead Attorney, Attorney to be Noticed, Ira A. Rosenau, Klehr, Harrison, Harvey, Branzburg & Ellers LLP, Philadelphia, PA, Attorney to be Noticed, for Entertainment Technology Corporation, Plaintiff.

represented by James D. Hollyday, Laurence Z. Shiekman, Steven K Winnie, Pepper Hamilton LLP, Philadelphia, PA, Lead Attorney, Attorney to be Noticed, for Walt Disney Imagineering, Defendant.

represented by James D. Hollyday, Laurence Z. Shiekman, Steven K Winnie, (See above for address), Lead Attorney, Attorney to be Noticed, for Walt Disney Imagineering Research & Development, Inc., Defendant.

represented by James D. Hollyday, Laurence Z. Shiekman, Steven K Winnie, (See above for address), Lead Attorney, Attorney to be Noticed, for the Walt Disney Company, Defendant.

represented by James D. Hollyday, Laurence Z. Shiekman, Steven K Winnie, (See above for address), Lead Attorney, Attorney to be Noticed, for Walt Disney World Co., Defendant.

represented by Ira A. Rosenau, (See above for address), Attorney to be Noticed, for Environmental Tectonics Corporation, Counter Defendant.

*MEMORANDUM AND ORDER*

HUTTON, J.

*1 Currently before the Court are Plaintiff's Motion for Leave to Conduct Limited Discovery on an Expedited Basis and to Shorten Time to Respond to Motion (Docket No. 12), Defendants' Reply in Opposition thereto (Docket No. 20), and Plaintiff's Reply Memorandum in Further Support of its Motion (Docket No. 21).

I. *ISSUE PRESENTED*

Plaintiff Entertainment Technology Corporation ("ETC") seeks leave to conduct expedited discovery of documents concerning safety tests performed on "Mission: Space," a new ride at Walt Disney World's Epcot theme park. Plaintiff asserts expedited discovery of these documents is necessary to protect the public interest and ETC's contractual rights. Defendants Walt Disney Imagineering, Walt Disney Imagineering Research and Development, Walt Disney World Co., and Walt Disney Company (collectively referred to for purposes of this motion as "WDI") oppose the motion.

II. *FACTUAL BACKGROUND*

In January 2000 ETC and WDI entered into a contract involving the creation of Mission: Space, a new ride at the Epcot theme park in Florida. The parties' relationship dates back to at least August 1998. The Mission: Space ride is a space flight simulator that uses a multiple-arm centrifuge system to simulate the g-force load of space launch and re-entry. The ride was opened to the public on August 15, 2003. Beyond those facts, the parties characterize both the contract and their relationship very differently. ETC claims the contract gave it the responsibility to design and build the ride and to perform safety tests on the ride. WDI describes the contract as the "Material Procurement Contract," an agreement under which ETC was to provide certain goods and services for the ride.

At some point, the relationship soured and the original contract was altered by a series of changes. The one pertinent to this litigation is Change Order No. 22. The parties disagree how Change Order No. 22 affected the January 2000 contract. The basic dispute is over which party retained ultimate responsibility to complete the ride after the Change Order. WDI claims Change Order No. 22 gave Disney final say; ETC claims it retained final control.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2003 WL 22519440 (E.D.Pa.)
(Cite as: 2003 WL 22519440 (E.D.Pa.))

Page 2

In the present motion, Plaintiff ETC motions for leave to conduct expedited discovery of, among other requests, the following documents:

> All documents concerning the testing or analysis of the safety, functioning or performance of the Ride, including all components of the Ride, whether or not such testing or analysis was performed by Disney or another person or entity.

*See* Plf's Document Request No. 1, Ex. D. to Plf's Motion for Leave to Conduct Limited Discovery. The document request then lists the various categories of test data Plaintiff would like to discovery. Defendants oppose the motion, claiming expedition is not warranted and, in any event, the documents are proprietary.

A discovery request would not usually warrant the extended discussion of a full memorandum and order. However, much of the debate between the parties focuses on which legal standard should be applied to decide a motion for expedited discovery. The area of law is indeed very unclear. Plaintiff argues for an inquiry into the reasonableness of the discovery request, while Defendant argues the request must be analyzed under factors akin to those used to decide preliminary injunction motions. The Court agrees with Plaintiffs and will analyze the Plaintiff's motion according to the factors discussed below. Ultimately, Plaintiff's motion for expedited discovery is denied.

### III. *LEGAL STANDARD*

*2 Federal Rule of Civil Procedure 26(d) requires that "a party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)." Rule 26(d) expressly provides for departure from the "meet and confer" process of Rule 26(f) if the parties agree to expedited discovery or if the Court so authorizes. Unlike other discovery provisions of the Federal Rules, Rule 26(d) does not provide a standard under which a court should decide expedited discovery motions. *See, e.g.,* Fed.R.Civ.P. 26(c) (providing that a party show "good cause" to get a protective order); *Pansy v. Borough of Stroudsburg*, 23 F.3d 772 (3d Cir.1994) (setting forth "good cause" test).

A survey of applicable case law, which until recently was scant, reveals that district courts in this circuit have used one of two standards to evaluate motions for expedited discovery. One standard analyzes expedited discovery requests as if they were actually requests for injunctive relief or for specific performance. This standard is understandably difficult to meet for the moving party. The other standard requires that the moving party show that the expedited discovery request is reasonable in light of all circumstances. Whether a request is reasonable, of course, changes depending on the circumstances of the case and timing of the motion. Both standards are discussed below, followed by an evaluation of which should be used in the present case.

A. *Standard One: The Notaro Factors*

In *Notaro v. Koch* the Court set forth four factors for analyzing motions for expedited discovery under Rule 30(a), used for depositions. 95 F.R.D. 403 (S.D.N.Y.1982). The moving party must demonstrate "(1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of the irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted." *Notaro,* 95 F.R.D. at 405. The four factors defined are akin to the factors used to weigh a motion for preliminary injunction because, under the circumstances of the *Notaro* case, Plaintiffs had requested simultaneously a preliminary injunction and an expedited deposition of then-Mayor of New York Edward Koch. The Court reasoned these stringent factors are appropriate to protect the defendants at such an early stage of litigation. *See Notaro,* 95 F.R.D. at 405 (citing 4A Moore's Federal Practice, para. 30.54 (1982)).

A magistrate judge in the United States District Court for the District of New Jersey was first in the Third Circuit to apply the *Notaro* analysis to a motion for expedited discovery. In *Gucci America, Inc. v. Daffy's, Inc.,* the court applied *Notaro* because the discovery request, although procedural in name, had a substantive element to it, similar to a request for equitable relief. *See* 2000 U.S. Dist. LEXIS 16714 (D.N.J. Nov. 14, 2000). In the case, Gucci sued Daffy's, a chain of retail clothing stores specializing in selling well-known brands at discounted prices, claiming that Daffy's sold counterfeit Gucci handbags. Gucci requested expedited discovery of the names of the alleged Gucci distributors who were selling Gucci products to Daffy's. Analyzing the motion, the Court looked behind the pleadings, implying that the entire litigation was a sham in order for Gucci to learn the identity of, and then to punish, these distributors. *See Gucci,* 2000 U.S. Dist. LEXIS, at *18-19. Once in possession of the distributors' names, said the Court, "Gucci will be able to act ... without the aid of the Court." *Id.* at *17. The Court found the preliminary inunction factors of Notaro to be appropriate because of the Court's "darker

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
2003 WL 22519440 (E.D.Pa.)  
**(Cite as: 2003 WL 22519440 (E.D.Pa.))**

Page 3

suspicion" that Gucci was using the discovery motion and the overall litigation process to root out certain Gucci distributors. *See id.* at *18. Ultimately, Gucci could not meet the preliminary injunction requirements and its expedited discovery motion was denied.

B. *Standard Two: Reasonableness Inquiry*

*3 Other courts have analyzed expedited discovery motions using more liberal standards than the *Notaro* factors. While no one case provides a comprehensive standard as does *Notaro,* a review of the case law reveals an emerging reasonableness inquiry based on many different factors, including some preliminary injunction factors.

Many of the cases involve expedited discovery that is necessary to gather evidence for a pending preliminary injunction hearing. [FN1] In *Philadelphia Newspaper, Inc. v. Gannett Satellite Information Network, Inc.,* a court in the Eastern District of Pennsylvania noted that "expedited discovery is particularly appropriate when a plaintiff seeks injunctive relief because of the expedited nature of injunctive proceedings." 1998 U.S. Dist. LEXIS 10511, at *4 (E.D.Pa. July 15, 1998) (quoting *Ellsworth Associates, Inc. v. United States,* 917 F.Supp. 841, 844 (D.D.C.1996)). The court expressly rejected the *Notaro* factors as inappropriate under such circumstances. *See id.* at *5 n. 1. In attempting to develop a standard, the court focused on the circumstances of the case: the pending preliminary injunction hearing, the need for discovery, and the breadth of the moving party's discovery requests. If narrowly tailored to fit the needs of the hearing, leave to conduct expedited discovery would be granted. Where the requests are overly broad, as they were in *Philadelphia Newspapers,* leave is denied.

> FN1. *See, e.g., RDS Group Ltd. v. Davison,* No. 02-8168, 2003 LEXIS 1337 (E.D.Pa. Jan. 17, 2003) (granting expedited discovery for pending preliminary injunction hearing); *Educational Commission for Foreign School Medical Graduates v. Repik,* No. 99-1381, 1999 U.S. Dist. LEXIS 7185 (E.D.Pa. May 14, 1999); *BABN Technologies Corp. v. Bruno,* No. 98-3409, 1998 U.S. Dist. LEXIS 14802 (E.D.Pa. July 24, 1998) (same); *Philadelphia Newspaper, Inc. v. Gannett Satellite Information Network, Inc.,* No. 98-2782, 1998 U.S. Dist. LEXIS 10511 (E.D.Pa. July 15, 1998) (same); *Energetics Sys. Corp. v. Advanced Cerametrics,* No. 95-7956, 1996 U.S. Dist. LEXIS 2830 (E.D.Pa. Mar. 5, 1996) (same); *see also Gucci,* at *17 (rejecting a lower standard because Gucci's discovery motion was *not* in aid of an impending preliminary injunction hearing).

The United States District Court for the Northern District of Illinois added to the standard set forth in *Philadelphia Newspapers.* In *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. O'Connor,* the court commented that "it makes sense to examine the discovery request, as we have done, on the entirety of the record to date and the reasonableness of the request in light of all of the surrounding circumstances, similar to what was done in *Philadelphia Newspapers.*" 194 F.R.D. 618, 624 (N.D.Ill.2000). The court examined the appropriateness of expedited discovery by weighing the need for discovery at that point in the litigation with the breadth of the discovery requests, ultimately denying the requests as too broad for such an early stage of litigation.

A similar approach was employed by the United States District Court for the Northern District of California, even though no preliminary injunction hearing was pending. In *Semitool, Inc. v. Tokyo Electron America, Inc.,* the court developed a "good cause" standard akin to the inquiries made in *Merrill Lynch* and *Philadelphia Newspapers.* [FN2] *See* 208 F.R.D. 273, 275 (N.D.Cal.2002) (expressly rejecting *Notaro* under the circumstances, citing the "reasonableness" inquiries of *Merrill Lynch* and *Philadelphia Newspapers); see also Qwest Communication International, Inc. v. Worldguest Networks, Inc.,* 213 F.R.D. 418 (D.Colo.2003) (combining factors discussed in many cases to make "good cause" inquiry). The court used a balancing test, stating that "[g]ood cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Id.* at 276. The circumstances looked at by the court included how far in advance of the start of formal discovery was the motion made, how narrowly tailored are the discovery requests, what is the purpose of the plaintiff in requesting early discovery, do the requests burden the defendants, and whether the defendants are able to respond to the requests in an expedited manner. *See id.* at 276-78. The court concluded that the plaintiff's discovery was appropriate as to the requests made to the defendants, but inappropriate as to the requests made to third parties.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FN2. The "good cause" standard discussed in *Semitool* should not be confused with the Third Circuit's "good cause" standard used to decide motions for protective orders under Fed.R.Civ.P. 26(c). *See Glenmede Trust Co. v. Thompson,* 56 F.3d 476 (3d Cir.1995); *Pansy v. Borough of Stroudsburg,* 23 F.3d 772 (3d Cir.1994). Because of the possibility of confusion, the Court will refer to the expedited discovery standard as a "reasonableness" inquiry, rather than a "good cause" inquiry.

*4 Using the progression of reasoning developed in *Philadelphia Newspapers, Merrill Lynch,* and *Semitool,* the "reasonableness" inquiry emerges: a district court should decide a motion for expedited discovery "on the entirety of the record to date and the reasonableness of the request in light of all of the surrounding circumstances," unless the circumstances are such that the *Notaro* factors apply. *See Merrill Lynch,* 194 F.R.D. at 624. Whether or not a preliminary injunction hearing is pending, then, has become one factor to be evaluated among many, rather than an outcome determinative fact.

C. *Applicable Standard*

Defendants WDI argues that Plaintiff ETC's motion for expedited discovery should be analyzed under the *Notaro* factors because the discovery request is essentially the same relief asked for in Part IV of Plaintiff's complaint. Plaintiffs argue that the circumstances of this case are distinguishable from *Notaro* and that the motion for expedited discovery should be reviewed under a reasonableness analysis. As was stated above, the Court agrees with Plaintiffs as to which standard should apply.

The reasoning behind the *Notaro* and *Gucci* decisions was that the defendant non-moving party needed protection of the court from the plaintiff's extraordinary discovery requests made extraordinarily early in the litigation process. The need for protecting the defendants from "unwarily incriminating themselves before they have a chance to review the facts of the case and to retain counsel," coupled with the substantive elements of plaintiffs' the discovery requests, resulted in the appropriateness of the preliminary injunction-like factors. *See Notaro,* 95 F.R.D. at 405.

In this case, Defendants are not in need of protection. Plaintiff filed the complaint on June 9, 2003, and the pending motion on August 18, 2003. Defendants have retained counsel and are themselves sophisticated corporations. The parties have enjoyed a long contractual relationship under the "Mission: Space" agreements. Parties have filed a complaint and an answer; Defendants have had time to review the facts of the case. Further, the Court can discern no *Gucci*-like circumstances indicating that Plaintiff ETC is using the litigation as a shell game for the sole purpose of discovering the requested documents. Therefore, the strict preliminary injunction test should not apply to this case.

The Defendant is correct to point out that the discovery requests do have an element of ultimate relief to them. Given the totality of the circumstances, however, that fact is better weighed against granting the Plaintiff's motion within the rubrik of an overall reasonableness test, rather than used to trigger the strictures of the *Notaro* test.

IV. *DISCUSSION*

When viewed in light of the totality of the circumstances, Plaintiff's expedited discovery request is not reasonable at this time and, accordingly, Plaintiff is denied leave to conduct early discovery.

*5 Weighing in favor of Plaintiff's motion is the fact that the discovery request has not been made too far in advance of the start of formal discovery. The parties have already received their status forms and the case should be calendared relatively soon. Further, the discovery requests are not as overbroad as the requests deemed overbroad in the *Philadelphia Newspapers* case. *See Philadelphia Newspapers,* at *7-8 (denying expedited discovery because requests for five depositions, a set of interrogatories, and requests for production of documents were "wholly overbroad" and burdensome to defendant). Plaintiff ETC seeks only the production of documents "concerning any testing and analysis of the safety, functioning or performance of the ride, including all components of the Ride." Plf.'s Expedited Document Request No. 1. To the extent that Plaintiff seeks documents from third parties at his early stage, the requests may be overbroad; *see Semitool,* 208 F.R.D. at 277-78 (granting expedited discovery as to requests made of opposing party, denying discovery as to requests pertaining to documents held by third parties); but they are not so overbroad that the Court can dismiss the motion based on that factor alone.

Further weighing in favor of granting the Plaintiff's motion is ETC's contention that it will suffer harm to its reputation if the discovery is not expedited. Irreparable harm is one factor to consider in deciding

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

this motion. Weighing against the Plaintiff, however, is the fact that the harm to ETC's reputation that may result from this ruling is the same harm that may result from the contract action in its entirety. This underscores the point raised by Defendant WDI that what Plaintiff seeks in this expedited discovery motion is close to part of the ultimate relief sought by Plaintiff in its complaint.

There are a number of factors that weigh against, and ultimately lead the Court to deny, Plaintiff's motion. First, there is no pending preliminary injunction hearing for which the parties need to prepare, rendering the need to expedite discovery less urgent. Second, the Court is unconvinced by ETC's arguments that expedited discovery is necessary so that ETC can protect the public by reviewing WDI's testing data.

Third, and most importantly, the Court is unwilling to grant Plaintiff under this motion for expedited discovery what may amount to specific performance of part of the contested contract. Defendant points out that Plaintiff's request for relief in Count IV, paragraph 78(c) is very similar to the document requests made in this motion. [FN3] But the fact that Plaintiff may have inserted what amounts to a valid request for discoverable documents in its complaint is of little consequence to this analysis. What is of consequence is how Plaintiff plans to use the testing data if discovered. In its memorandum of law at page two, in support of expedited discovery, ETC states:

> FN3. In its Complaint, Plaintiff requests specific performance in the form of "an order directing Disney immediately to provide ETC with access to any safety or testing data relating to the Ride in Disney's possession, custody or control." Plf's Complaint, Count IV, para. 78.c.

ETC needs to review the safety testing and analysis data as soon as possible to ensure that the public is not riding an unsafe entertainment ride. If ETC in fact discovers a problem in the safety testing data, it can quickly consult with Disney to try to correct any safety problems before more persons are exposed to danger.

*6 Thus, ETC wants the test data so it can participate in the safety evaluation of the Mission: Space attraction. That is precisely the specific performance ETC requests in its Complaint at Count IV, paragraph 78(a) and (b). The expedited discovery request at issue, then, goes to what may be ultimate issues in this case. That is, whether ETC has a contractual right to perform the testing and whether WDI is qualified to perform the testing without ETC's expertise.

For these reasons, the factors against Plaintiff's motion weigh more heavily than those in favor of it. The Court is unconvinced that it should depart from the formal discovery process. Accordingly, Plaintiff's Motion for Leave to Conduct Limited Discovery on an Expedited Basis is denied.

Plaintiff's Motion to Shorten Time to Respond to Motion is denied as moot.

An appropriate Order follows.

*ORDER*

AND NOW, this 2nd day of October, 2003, upon consideration of Plaintiff's Motion for Leave to Conduct Limited Discovery on an Expedited Basis and to Shorten Time to Respond to Motion (Docket No. 12), and for the reasons set forth in the accompanying Memorandum, IT IS HEREBY ORDERED that:

(1) Plaintiff's Motion for Leave to Conduct Limited Discovery on an Expedited Basis is DENIED;

(2) Plaintiff's Motion to Shorten Time to Respond to Motion is DENIED AS MOOT.

2003 WL 22519440 (E.D.Pa.)

**Motions, Pleadings and Filings (Back to top)**

• 2004 WL 2717070 (Trial Motion, Memorandum and Affidavit) Order (Oct. 13, 2004)

• 2004 WL 2717064 (Trial Motion, Memorandum and Affidavit) Order (Aug. 11, 2004)

• 2004 WL 2717054 (Trial Motion, Memorandum and Affidavit) Order (Jul. 27, 2004)

• 2004 WL 2717049 (Trial Motion, Memorandum and Affidavit) Order (Jul. 23, 2004)

• 2004 WL 2717042 (Trial Motion, Memorandum and Affidavit) Order (Jan. 30, 2004)

• 2003 WL 23903578 (Trial Pleading) Answer to Defendants' Counterclaim (Sep. 11, 2003)

• 2003 WL 23903568 (Trial Pleading) Defendants'

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
2003 WL 22519440 (E.D.Pa.)  
**(Cite as: 2003 WL 22519440 (E.D.Pa.))**

Page 6

First Amended Answer & Counterclaim to Plaintiff's Complaint (Aug. 22, 2003)

• 2003 WL 23903559 (Trial Pleading) Defendants' Answer to Plaintiff's Complaint (Aug. 08, 2003)

• 2:03cv03546 (Docket) (Jun. 09, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# **EXHIBIT B**

Westlaw.

Not Reported in F.Supp.  
1996 WL 130991 (E.D.Pa.)  
**(Cite as: 1996 WL 130991 (E.D.Pa.))**

Page 1

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, E.D. Pennsylvania.  
ENERGETICS SYSTEMS CORP.  
v.  
ADVANCED CERAMETRICS, INC.  
**No. CIV. A. 95-7956.**

March 15, 1996.

MEMORANDUM AND ORDER

PADOVA, J.

*1 AND NOW, this 5th day of March, 1996, upon consideration of the following motions and all papers filed in support of and in opposition thereto, and after a telephone conference held today with counsel, IT IS HEREBY ORDERED THAT Defendant's Motion for Expedited Discovery (Doc. No. 9), Defendant's Motion for a Protective Order (Doc. No. 15), and Plaintiff's Motion for an Order Expediting, Scheduling, and Limiting Discovery Until Defendant's Motion for a Preliminary Injunction is Heard (not yet docketed) are GRANTED IN PART AND DENIED IN PART in accordance with the memorandum that follows. Plaintiff's Motion for Additional Time (Doc. No. 16) is DENIED.

1. Plaintiff Energetics Systems Corp. (hereinafter "ESC") filed the instant suit against Defendant Advanced Cerametrics Inc. (hereinafter "ACI") asserting various claims of breach of contract, misrepresentation, and fraud, and seeking a declaratory judgment from the Court as to the parties' rights and obligations under a contract (hereinafter "the Contract") entered into by the parties on December 24, 1992. ESC alleges that under the Contract, ESC acquired an exclusive license to ACI technology for the production of electrically conductive fiber material for use in the manufacture of batteries. ESC further alleges that ACI failed to develop, produce, and deliver customized fiber material for battery manufacture to ESC as required under the Contract. ESC asserts that as inducement to enter into the Contract, ACI misrepresented to ESC its capacity to develop and produce such fibers, and ACI's rights to the technology that was the subject of the ESC license.

2. ACI denies ESC's allegations, has raised counterclaims for breach of contract and fraud against ESC and David James, a principal of ESC, and seeks declaratory and injunctive relief from the Court. ACI asserts that it is developing a novel process to manufacture electrically conductive ceramic materials that is the subject of a pending patent application. ACI alleges that the Contract called for ACI to work with battery scientists hired by ESC to design an optimal fiber for ESC's use. Toward this end, ACI claims that it delivered lots of fibers to ESC for testing by ESC's battery scientists. ACI alleges that ESC misrepresented to ACI that it possessed the financial resources and scientific staff to produce test batteries to adequately evaluate the ACI-developed fibers. ACI claims that ESC has failed to provide these resources and payments as required by the Contract and, as a result, ESC's license to ACI's proprietary technology has expired. ACI alleges that ESC continues to represent to third partes that ESC holds a valid license to ACI's proprietary technology and is, in fact, entering into sublicensing agreements, and that ESC has filed patent applications based on ACI's intellectual property.

3. ACI filed a motion for a preliminary injunction against ESC, asking the Court to enjoin ESC from using ACI proprietary technology disclosed to ESC pursuant to the Contract, representing to third parties that ESC holds a valid license to that intellectual property and granting sublicenses, and filing or prosecuting any patent application that is based on the same. A hearing on that motion is scheduled for March 27, 1996 before this Court.

*2 4. Currently before the Court are the following motions: (a) ACI's motion for expedited discovery; (b) ACI's motion for a protective order to prohibit the parties from using or disclosing for any purpose except the instant litigation those discovery materials that the parties designate as confidential; (c) ESC's motion for expedited discovery and to limit the scope of discovery for ESC's preliminary injunction motion; and (d) ESC's motion to postpone the preliminary injunction hearing and extend other deadlines accordingly.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
1996 WL 130991 (E.D.Pa.)  
**(Cite as: 1996 WL 130991 (E.D.Pa.))**

Page 2

5. At a February 20, 1996 conference in chambers and in a proposed case management plan submitted to the Court, ESC represented that ESC no longer claims a valid license to ACI's technology. Based on ESC's representations, ACI acknowledges that the scope of its motion for a preliminary injunction has narrowed. ACI now seeks to enjoin ESC from filing or prosecuting any patent application based on ACI's proprietary technology, and a primary issue at the preliminary injunction hearing will be whether ESC is, in fact, engaged in such contact.

6. For this reason, I will grant in part ACI's motion for expedited discovery insofar as ACI seeks discovery to present its motion to preliminarily enjoin ESC and David James from filing or prosecuting any patent application based on ACI proprietary technology. ESC and James shall produce to ACI by 5:00 PM on March 14, 1996 those documents and answers to interrogatories requested by ACI that relate to the subject matter of the preliminary injunction hearing. The Court specifically notes that ESC and James shall produce to ACI by 5:00 PM on March 14, 1996 any patents and/or patent applications that ESC filed during the three-year term of the Contract, as it was extended by the parties, or following the three-year term of the Contract. ACI shall schedule depositions accordingly.

7. I also grant in part ESC's motion for expedited discovery and to limit the scope of discovery for the preliminary injunction hearing. As noted above, only that discovery that relates to the narrow focus of the preliminary injunction hearing will proceed on an expedited basis. Towards that end, ACI shall produce to ESC by 5:00 PM on March 14, 1996 the answers to questions 1, 20, 21, and 22 of ESC's first set of interrogatories, and those documents in ESC's first request for production of documents that relate to questions 1, 20, 21, and 22 of the first set of interrogatories. ESC shall schedule depositions accordingly.

8. I will decline to sign the proposed protective orders submitted by the parties. [FN1] The proposed orders would allow the parties themselves to designate discovery materials as confidential, and call for a party contesting a designation to petition the Court for a ruling as to whether the said material is confidential as that term is defined in the orders. I predict that such an arrangement in the instant litigation would entangle the Court in lengthy disputes as to what is confidential, and thus would prove to be inefficient. [FN2]

FN1. Although ESC did not file a motion for a protective order, ESC submitted to the Court its own proposed protective order with its response to ACI's motion for the same.

FN2. I also make special note of at least two problems inherent in broad, self-executing protective orders such as those proposed by the parties. First, they are inconsistent with the federal discovery rules, which contemplate extraordinary protection and secrecy in narrow circumstances. Second, they delegate substantial judicial discretion to private parties.

*3 9. Fed.R.Civ.P. 26(c)(7) empowers a federal district court to enter a protective order restricting disclosure and use of "trade secret[s] or other confidential research, development or commercial information" obtained through discovery upon good cause shown. The parties have demonstrated to the Court the potential harm that could result if a protective order restricting use and dissemination is not imposed on the discovery that is the subject of this Order. Therefore, pursuant to Fed.R.Civ.P. 26(c), I will enter this Protective Order applicable to all discovery produced in preparation for the preliminary injunction hearing as required by this Order. The provisions of the Protective Order are as follows:

a. The Protective Order shall govern all discovery material produced pursuant to this Order. It shall also apply to deposition testimony that relates to the discovery material produced pursuant to this Order.

b. Discovery material produced pursuant to this Order, and deposition testimony that relates to that discovery material, shall be designated as "Confidential." "Confidential" material shall only be used and disclosed by the receiving party for the purposes of this litigation, and the receiving party is prohibited from using or disclosing such material for any other purpose, except that to the extent the receiving party has previously used the designated "Confidential" material, this Order does not bar such continued use.

c. "Confidential" discovery material produced pursuant to this Order shall be disclosed to and viewed only by the Court, counsel of record for the receiving parties and their legal staff, the principals of the parties, and any expert retained or consulted in connection with this litigation (collectively hereinafter, "Authorized Persons") and only in connection with the instant litigation. Before any Authorized Person, other than counsel of record

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
1996 WL 130991 (E.D.Pa.)  
**(Cite as: 1996 WL 130991 (E.D.Pa.))**

Page 3

and their legal staff, is given access to "Confidential" material, that person shall be furnished with a copy of this Order and shall sign at the end thereof the following statement:

I have read the foregoing Protective Order, understand all of its terms and provisions, and agree to be bound thereby in all respects.

A copy of each signed statement shall be retained by counsel for the receiving party.

d. "Confidential" discovery material, as it is defined by this Order, shall be designated as such by stamping the word "Confidential" on the face of the writing, or otherwise clearly marking the writing with the word "Confidential," before such material is produced to the opposing party.

e. No discovery material shall be filed with the Court except as provided in the Local Rules of this Court. Any "Confidential" discovery material, as that term is defined in this Order, that is filed with the Court, including motions, pleadings, and other papers filed with the Court that disclose such "Confidential" material, shall be filed under seal and kept under seal until further order of the Court. Such documents shall, however, be available to the Court and counsel of record. Every such document shall be filed under seal in an envelope on the face of which shall be stamped or written the following:

CONFIDENTIAL

*4 This document is filed under seal and, unless otherwise ordered by the United States District Court for the Eastern District of Pennsylvania, shall not be reproduced for, or shown to, persons other than those entitled to access to "Confidential" discovery material under the Protective Order dated March 5, 1996 in Civil Action No. 95-7956, *Energetics Systems Corp. v. Advanced Cerametrics, Inc.*

f. Upon final disposition or termination of this litigation, including any appeals, the parties shall return to the producing party or person any discovery material that has been designated "Confidential" pursuant to this Order, including any copies.

g. Violation by any person of any term of this Protective Order is punishable as contempt of this Court.

10. ESC requests that the Court postpone the preliminary injunction hearing and adjust other deadlines accordingly until it is able to obtain new litigation counsel in this case. ESC argues that it would be prejudiced given the enormous amount of discovery that must be completed before the March 27th hearing. However, I note that ESC was aware on February 20, 1996--two weeks ago--that it would need to obtain new litigation counsel to prepare for the March 27th hearing. Moreover, this Order effectively narrows the scope of the expedited discovery to be completed before that hearing, thus reducing the burden on both parties. For these reasons, I will deny ESC's motion for additional time.

11. The parties shall submit to the Court by March 22, 1996 the following materials in preparation for the preliminary injunction hearing scheduled on March 27, 1996:(a) proposed findings of fact and conclusions of law; (2) hearing memoranda with cited authorities; and (3) a joint stipulation of uncontested facts.

12. All other deadlines imposed by this Court remain unchanged and in effect.

IT IS SO ORDERED.

1996 WL 130991 (E.D.Pa.)

**Motions, Pleadings and Filings (Back to top)**

• 2:95cv07956 (Docket) (Dec. 26, 1995)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# **EXHIBIT C**

Westlaw.

227 F.R.D. 142
227 F.R.D. 142, 2005 WL 433271 (D.D.C.)
(Cite as: 227 F.R.D. 142, 2005 WL 433271 (D.D.C.))

Page 1

**Motions, Pleadings and Filings**

United States District Court,
District of Columbia.
In re FANNIE MAE DERIVATIVE LITIGATION.
No. Civ. 04-1783(RJL).

Feb. 23, 2005.

**Background:** In consolidated stockholder derivative actions, plaintiff moved for expedited discovery.

**Holding:** The District Court, Leon, J., held that expedited discovery was not warranted.
Motion denied.

West Headnotes

**Federal Civil Procedure** 🗝1261
170Ak1261 Most Cited Cases
Expedited discovery was not warranted in recently consolidated stockholder derivative actions, where plaintiffs had not yet filed consolidated complaint, and there was no showing that irreparable injury would result if expedited discovery was not provided.
*142 Harvey B. Cohen, John Christopher Pasierb, Cohen, Gettings & Caulkins, P.C., Arlington, VA, and David H. Shapiro, Swick & Shapiro, P.C., Washington, DC, for Plaintiff.

James D. Wareham, Carolyn Elizabeth Morris, Paul, Hastings, Janofsky & Walker, LLP, James Edward Anklam, Erica Lynne Salmon, Piper, Rudnick, LLP, Michael J. Walsh, Jr., O'Melveny & Myers LLP, Washington, DC, for Defendants.

*MEMORANDUM OPINION AND ORDER*

LEON, District Judge.

**\*1** Plaintiff James Kellmer moves this Court for expedited discovery to enable him to make a record upon which to base a motion for preliminary injunction. There are two commonly recognized approaches to determining whether expedited discovery is appropriate: (1) the *Notaro* test; and (2) the reasonableness test. Because the Court finds that expedited discovery is inappropriate under either test, Plaintiff Kellmer's Motion for Expedited Proceedings is DENIED.

*ANALYSIS*
Federal Rule of Civil Procedure 26 ("Rule 26") does not provide a standard for the Court to use in determining whether expedited discovery is appropriate. The limited case law that discusses expedited discovery, however, reveals two common judicial approaches.

First, in *Notaro v. Koch,* a Southern District of New York court articulated the following stringent standard that moving parties must meet to be granted expedited discovery:

courts should require the plaintiff to demonstrate (1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of the irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted.

95 F.R.D. 403, 405 (S.D.N.Y.1982). This standard has been adopted by several judges since Rule 26 was amended in 1993, including one of this Court's colleagues. *See, e.g., SINCLAIR NAT'L BANK V. OFFICE OF THE COMPTROLLER OF THE CURRENCY,* No. 00-2398, 2000 WL 34012862, at *3 (D.D.C. Dec.18, 2000); *Gucci Am., Inc. v. Daffy's Inc.,* No. 00-4463, 2000 WL 1720738, at *6 (D.N.J. Nov.14, 2000); *Irish Lesbian & Gay Org. v. Giuliani,* 918 F.Supp. 728, 730 (S.D.N.Y.1996). Applying this test to the facts in this case, the Court finds that Plaintiff Kellmer is unable to satisfy the stringent standard because he has failed to demonstrate that any irreparable injury will result if the expedited discovery is not provided.

Second, several courts have adopted a more liberal test for expedited discovery that is based on reasonableness. The so-called "reasonableness test" calls for the Court to decide the motion based on the "reasonableness of the request in light of all of the surrounding circumstances...." *Entm't Tech. Corp. v. Walt Disney Imagineering,* No. 03-3546, 2003 WL 22519440, at *3 (E.D.Pa.2003) (internal quotation marks *143 omitted); *see also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. O'Connor,* 194 F.R.D. 618, 624 (N.D.Ill.2000). Among the factors to be considered by the Court are: (1) whether a

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made. *Entm't Tech., 2003 WL 22519440, at *3-5.* In this recently consolidated case, still awaiting the filing of plaintiffs' consolidated complaint, the discovery requests made by Plaintiff Kellmer appear to be a thinly veiled attempt to circumvent the normal litigation process. Considering the totality of the circumstances presented, the Court finds that the requests made by Plaintiff Kellmer are unreasonable. Thus, since Plaintiff Kellmer's request for expedited discovery satisfies neither the *Notaro* test nor the "reasonableness test," the Court DENIES the Motion for Expedited Proceedings.

### *ORDER*

**\*2** It is this 23rd day of February, 2005, hereby

**ORDERED** that the Motion for Expedited Proceedings [05-cv-0037 [# 12]] is **DENIED**.

**SO ORDERED.**

227 F.R.D. 142, 2005 WL 433271 (D.D.C.)

**Motions, Pleadings and Filings (Back to top)**

• 1:04cv01783 (Docket) (Oct. 15, 2004)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.