# Affidavit of David Baker

MAPP 069

PDF created with pdfFactory trial version www.pdffactory.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DYSON TECHNOLOGY LIMITED and )
DYSON, INC., )
  )
  Plaintiffs, ) CIVIL ACTION NO. 05-05-434
  )
v. )
  )
MAYTAG CORPORATION, )
  )
  Defendant. )

### AFFIDAVIT OF DAVID BAKER

STATE OF OHIO      :
                   :ss
COUNTY OF SUMMIT   :

DAVID BAKER, after being duly sworn according to law, deposes and states that he is of legal age, sound mind, and has personal knowledge of the following facts:

1. He is Vice President and General Manager of Floorcare, SBU, Maytag Corporation ("Maytag/Hoover");

2. His responsibilities entail all marketing functions, from product planning through merchandising, including P&L down to standard gross profit, pricing and "go to market" strategy, and sharing in responsibility for the top line revenue with the Vice President of Sales;

3. In 1976, he received a BSBA, and in 1978, a MBA, from the University of Akron;

4. He has been with the Floorcare Business Unit, formerly The Hoover Company, for nearly twenty-seven (27) years, during which time he has been involved in marketing and sales since 1984;

1

PDF created with pdfFactory trial version www.pdffactory.com

5. He is giving his affidavit in support of Maytag's opposition to the motion of Dyson Technology Limited and Dyson, Inc. ("Dyson") for a preliminary injunction enjoining Maytag Corporation from selling its Hoover® Fusion vacuum;

6. He understands the top ten (10) mass merchants in floorcare to be Wal-Mart, Sears, Target, K-Mart, Costco, Best Buy, Sam's Club, Lowe's, Kohls and Bed, Bath and Beyond, and his understanding is supported by trade publications, such as *HFN* (See, *HFN*, July 2005; and *HFN* February 2005, "Dyson has sucked its way into ten of the top twelve retail chains.");

7. He understands Dyson is currently offering its cyclonic vacuums in all of the top ten (10) mass merchants, with the possible exception of K-Mart;

8. Based upon Dyson's presence in at least nine (9) of the top ten (10) mass merchants, it is his opinion that Dyson has already penetrated the mass market;

9. It is his opinion that Dyson's success in penetrating the mass market is more probably due to its marketing and perceived technology more than its actual technology, and that his opinion is supported by others in the trade (e.g., *HFN*, February 2005 issue, in which Dyson is referred to as one of the best marketing companies the author has ever seen.);

10. Maytag/Hoover has had a business relationship with Wal-Mart since the mid 1980s;

11. Wal-Mart has been Maytag/Hoover's largest customer for the last four (4) to five (5) years;

12. Hoover® Fusion vacuum was conceived and developed specifically for Wal-Mart;

2

MAPP 071

PDF created with pdfFactory trial version www.pdffactory.com

13.     The Hoover® Fusion vacuum is being provided exclusively to Wal-Mart, and that Maytag/Hoover has no present plans to otherwise market or distribute it;

14.     Maytag/Hoover began its rollout of the Hoover® Fusion vacuum in late May 2005 or early June 2005, and presently has the product placed throughout Wal-Marts' approximately three thousand (3000) retail stores and dozens of distribution centers;

15.     Imposition of a preliminary injunction would irreparably injure Maytag/Hoover's business relationship with Wal-Mart, across all product lines not just the Fusion product;

16.     Imposition of a preliminary injunction that would require a recall of the Fusion vacuums from Wal-Mart would create a logistical nightmare;

17.     Imposition of a preliminary injunction would cause Maytag/Hoover financial loss from profit on this product alone in excess of $ 20 Million annually, as sales of this product are forecasted to account for 7.5% of the business unit's revenue;

18.     The Hoover® Fusion product is not an inferior product as he understand has been alleged by Dyson's expert. Hoover® products have been consistently rated Number 1 in consumer magazines, such as *Consumer Reports*, *Money Magazine* and *Good Housekeeping*. The company did not acquire the premier position in floorcare products by putting out inferior products;

19.     Nothing about the packaging or the product merchandizing graphics of the Hoover® Fusion vacuum would confuse consumers into believing that Maytag/Hoover designed and markets the product in an attempt to confuse and convince consumers that the Fusion is a Dyson product at a lower price. To the contrary, to the extent the packaging or Maytag/Hoover materials mention Dyson, it is for purposes of comparative advertising, expressly precluding confusion by consumers;

MAPP 072

PDF created with pdfFactory trial version www.pdffactory.com

20. The consuming public would be hurt by issuance of a preliminary injunction as it will be deprived of a main stream price point vacuum product from the most preferred brand and the most preferred retailer that cleans better; and

21. The Hoover® Fusion and Dyson vacuum cleaners are not the only cyclonic vacuum cleaners in the market, there being various "cyclonic" units offered by others.

FURTHER AFFIANT SAYETH NAUGHT

_____
David Baker

Sworn to and subscribed in my presence this 26 day of August 2005.

_____
Notary Public

**PAMELA S. GRAPES**
**NOTARY PUBLIC**
**STATE OF OHIO**
**MY COMMISSION EXPIRES** 8-14-08

4

MAPP 073

PDF created with pdfFactory trial version www.pdffactory.com