**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

DYSON TECHNOLOGY LIMITED )
and DYSON, INC., )
)
Plaintiffs, )
)   No. C.A. 05-434-GMS
v. )
)
MAYTAG CORPORATION, )
)
Defendant. )
)

**JOINT RULE 26(f) REPORT**

On November 18, 2005, plaintiffs Dyson Technology Limited and Dyson, Inc. (collectively, "Dyson") and defendant Maytag Corporation ("Maytag"), through their counsel, conferred pursuant to Rule 26(f) of the Federal Rules of Civil Procedure. They submit this Joint Report in preparation for the Scheduling Conference before this Court set for December 5, 2005 at 2:00 p.m., pursuant to Rule 16 of the Federal Rules of Civil Procedure and Local Rule 16.2.

**1.      Jurisdiction and Service**

The Court has jurisdiction over the subject matter of this action as well as over all the parties to this action. Dyson served its Complaint on Maytag on June 27, 2005, and Maytag served its Answer, Affirmative Defenses and Counterclaims on Dyson on August 1, 2005.

**2.      Substance of the Action**

**a.      Dyson's Complaint.** Dyson has asserted claims against Maytag for patent infringement under 35 U.S.C. § 281. Maytag is selling a vacuum cleaner known as the Hoover "Fusion" in the United States. Dyson alleges that the Fusion infringes the following United States patents owned by Dyson Technology Limited: U.S. Patent No.

4,643,748 (the "'748 Patent"), U.S. Patent No. 4,826,515 (the "'515 Patent"), U.S. Patent No. 4,853,008 (the "'008 Patent") and U.S. Patent No. 5,858,038 (the "'038 Patent") (collectively, the "Patents in Suit"). Maytag has filed an Answer denying Dyson's substantive allegations, and further asserting defenses of patent invalidity and unenforceabilty.

       **b.**     **Maytag's Counterclaims**. Maytag has asserted counterclaims against Dyson for false advertising under the Lanham Act, Delaware's Deceptive Trade Practices Statute and Delaware's common law of unfair competition. Maytag alleges that certain of Dyson's marketing and advertising statements concerning upright vacuum cleaners are false and misleading. Dyson has filed a Reply denying Maytag's substantive allegations.

       **3.**     **Identification of Issues**

       **a.**     **Dyson's Complaint**. The following <u>factual</u> issues are in dispute with regard to Dyson's Complaint:

       (i)     whether the Hoover Fusion contains all the elements of any claim of the '748 Patent;

       (ii)     whether the Hoover Fusion contains all the elements of any claim of the '515 Patent;

       (iii)     whether the Hoover Fusion contains all the elements of any claim of the '008 Patent;

       (iv)     whether the Hoover Fusion contains all the elements of any claim of the '038 Patent;

       (v)     whether and to what extent Dyson has suffered damages as a result of Maytag's infringement of any of the Patents in Suit;

(vi)    whether any infringement of the Patents in Suit by Maytag was willful; and

(vii)    whether Dyson engaged in any inequitable conduct in connection with the prosecution of any of the Patents in Suit.

The following <u>legal</u> issues are in dispute with regard to Dyson's Complaint:

(i)    whether Maytag has been and continues to infringe the '748 Patent by making, selling, offering to sell and/or importing the Hoover Fusion vacuum cleaner without authority, in violation of 35 U.S.C. § 271;

(ii)    whether Maytag has been and continues to infringe the '515 Patent by making, selling, offering to sell and/or importing the Hoover Fusion vacuum cleaner without authority, in violation of 35 U.S.C. § 271;

(iii)    whether Maytag has been and continues to infringe the '008 Patent by making, selling, offering to sell and/or importing the Hoover Fusion vacuum cleaner without authority, in violation of 35 U.S.C. § 271;

(4)    whether Maytag has been and continues to infringe the '038 Patent by making, selling, offering to sell and/or importing the Hoover Fusion vacuum cleaner without authority, in violation of 35 U.S.C. § 271;

(v)    whether the Patents in Suit are valid and enforceable; and

(vi)    whether Dyson has satisfied the requirements for a preliminary injunction.

**b.**    **Maytag's Counterclaims.**  The following <u>factual</u> issues are in dispute with regard to Maytag's Counterclaims:

(i)      whether Dyson has made and continues to make false and misleading claims about the suction power and cleaning efficacy of Dyson vacuum cleaner models DC07, DC14 and/or DC15;

(ii)      whether Dyson has made and continues to make false and misleading claims about the design and performance of Dyson vacuum cleaner models DC07, DC14 and/or DC15;

(iii)      whether Dyson has made and continues to make false and misleading claims about whether non-Dyson vacuum cleaners work properly;

(iv)      whether Dyson has made and continues to make false and misleading claims about whether Dyson vacuum cleaner models DC07, DC14 and/or DC15 are "Approved for allergy sufferers";

(v)      whether Dyson has made and continues to make false and misleading claims about whether its vacuum cleaners create forces equal to 100,000 times the force of gravity;

(vi)      whether Dyson has made and continues to make false and misleading claims about whether the "dirt cups" in its vacuum cleaners are hygienic;

(vii)      whether Dyson has made and continues to make false and misleading claims about the composition and durability of certain of its upright vacuum cleaners by stating, on a small plastic chip, that they are made of "liquid steel";

(viii)    whether Dyson has made and continues to make false and misleading claims about the invention of the "integral hose" and "cyclone technology";

(ix)    whether Dyson has made and continues to make false and misleading claims about prior patent infringement by Maytag's Hoover division;

(x)    whether any of the Dyson advertisements alleged to be false and misleading are material to decisions of U.S. consumers regarding the purchase of an upright vacuum cleaner;

(xi)    whether any of the Dyson advertisements alleged to be false and misleading in Maytag's Counterclaims express opinions and not facts;

(xii)    whether any of the Dyson advertisements alleged to be false and misleading in Maytag's Counterclaims have the tendency to deceive a substantial segment of U.S. consumers of upright vacuum cleaners;

(xiii)    whether Maytag has suffered any damages as a result of any of the Dyson advertisements alleged to be false and misleading; and

(xiv)    whether Maytag itself has engaged any inequitable, false, or misleading conduct in advertising its vacuum cleaners.

The following legal issues are in dispute with regard to Maytag's Counterclaims:

(i)    whether Dyson's advertising claims constitute material false and misleading descriptions of fact and material false and misleading representations of fact in interstate commercial advertising and promotion, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a);

(ii)     whether Dyson's advertising claims constitute false and misleading representations of fact in violation of the Delaware Uniform Deceptive Trade Practice Act, 6 Del. C. § 2532(a) (2005);

(iii)     whether Dyson's advertising claims violate Delaware's common law of unfair competition; and

(iv)     whether Maytag's Counterclaims should be barred in whole or in part on various legal and equitable grounds.

**4.     Narrowing of Issues**

At this stage in the litigation, the parties have not reached agreement on ways to narrow the issues before the Court.  Based on the parties' submissions in connection with Dyson's pending motion for a preliminary injunction, the parties are hopeful that they ultimately may be able to narrow the number of claims and elements in issue at trial with regards to Dyson's patent infringement claims.  The parties will work in good faith to achieve that result.  The parties also contemplate that future motions for summary judgment may help to narrow the issues before the Court.

**5.     Relief**

**a.     Dyson's Complaint.**  Dyson seeks preliminary and permanent injunctive relief against further infringement of the Patents in Suit, pursuant to 35 U.S.C. § 283.  Dyson also seeks damages, including trebled damages, pursuant to 35 U.S.C § 284, and reasonable attorneys' fees, pursuant to 35 U.S.C. § 285.  Finally, Dyson seeks costs and disbursements, together with pre- and post-judgment interest on all sums awarded.

On July 29, 2005, Dyson moved for a preliminary injunction.  That motion has been fully briefed as of September 20, 2005.

With regard to money damages, Dyson cannot estimate the amount with precision at this time, particularly without discovery from Maytag. Dyson's review of its damages is ongoing, and it will provide a more detailed damages calculation in the future through reports and evidence of expert witnesses.

      **b.**     **Maytag's Counterclaims.**  Maytag seeks preliminary and permanent injunctions enjoining Dyson and others from distributing packaging or advertising containing claims that Dyson upright vacuum cleaners (i) have superior power and suction versus all other upright vacuum cleaners on the market; (ii) clean better than all other upright vacuum cleaners on the market; (iii) do not have filters; (iv) do not lose suction; (v) create forces equal to 100,000 times the force of gravity; (vi) are hygienic; (vii) are made of "liquid steel"; and (viii) are approved for allergy sufferers.

Maytag also seeks preliminary and permanent injunctions enjoining Dyson and others from distributing packaging or advertising containing claims that (i) other vacuum cleaners do not work properly; (ii) Dyson invented the "integral hose" and "cyclone technology"; and (ii) Hoover has been found liable for infringing Dyson's patents;

Finally, Maytag seeks an order requiring Dyson to (i) recall all packaging or advertising containing any false and misleading advertising claims regarding its DC07, DC14 and DC15 upright vacuum cleaners; (ii) publish corrective advertising to dispel any false and deceptive impressions created by its advertising; and (iii) pay Maytag its damages—including compensatory, statutory and trebled damages—caused by any false and misleading advertising claims by Dyson, as well as Maytag's costs, expenses and attorneys' fees in this action.

Maytag states that it cannot estimate the amount of its damages with precision at this time, particularly without discovery from Dyson. Maytag's review of its damages is ongoing and it will provide a more detailed damages calculation in the future through reports and evidence of expert witnesses.

**6.    Amendment of Pleadings**

The parties agree that all motions to amend their pleadings shall be filed on or before February 10, 2006.

**7.    Joinder of Parties**

The parties do not anticipate the need to join any additional parties. The parties agree that all motions to join additional parties shall be filed on or before February 10, 2006.

**8.    Discovery**

**a.    Subject Matter**

Dyson intends to take discovery concerning at least the following general subject areas:

(i)    the conception, design, manufacturing and production of Maytag's Hoover Fusion;

(ii)    marketing, sales and financial information concerning Maytag vacuum cleaners sold in the United States;

(iii)    profits earned by Maytag and/or sales lost by Dyson as a result of Maytag's sales of vacuum cleaners sold in the United States;

(iv)    Maytag's knowledge, study or analysis of the Patents in Suit;

(v)    Diagrams, photographs, testing results and analysis of vacuum cleaners designed or sold in the United States, including but not limited to those designed and sold by Maytag and Dyson;

(vi)    communications within Maytag concerning Dyson vacuum cleaners, advertisements or the Patents in Suit;

(vii)    communications between Maytag and others concerning Dyson vacuum cleaners, advertisements or the Patents in Suit;

(viii)    market shares for vacuum cleaners sold in the United States, including but not limited to vacuum cleaners sold by Dyson and Maytag;

(ix)    documents, information or data relied on by Maytag in opposing Dyson's motion for a preliminary injunction;

(x)    the advertising claims that are the subject of Maytag's Counterclaims and Maytag's alleged damages; and

(xi)    documents, information or data relied on by any testifying expert retained by Maytag in connection with this action.

Maytag intends to take discovery concerning at least the following general subject areas:

(i)    the conception, reduction to practice and patenting of the purported inventions set forth in the patents-in-suit;

(ii)    commercialization of products made in accordance with the patents-in-suit;

(iii)    damages asserted by Dyson as a result of Maytag's sales of accused products in the United States;

(iv)    prior art to the patents-in-suit;

(v)    Dyson's knowledge of prior art relevant to the patents-in-suit;

(vi)    commercial success and other secondary considerations regarding the purported inventions of the patents-in-suit;

(vii)    communications between Dyson and others regarding the accused vacuum cleaners and advertisements at issue herein;

(viii)    damages asserted;

(ix)    the contentions of Dyson advanced in its Motion for Preliminary Injunction;

(x)    the advertising claim, and asserted bases therefore, of Dyson, which are the subject of Maytag's counterclaims; and

(xi)    information provided to and/or relied upon by experts retained by Dyson in this matter.

**b.    Schedule**

The parties have agreed to the following discovery schedule:

| Event | Date |
|---|---|
| Rule 26(a) Initial Disclosures | December 12, 2005 |
| Joint Protective Order | December 12, 2005 |
| Notice of Reliance on Advice of Counsel as Defense to Willful Infringement and Production of Opinions of Counsel and All Related Materials | February 27, 2006 |
| *Markman* Claim Construction Hearing | July 10, 2006 (the Court's calendar permitting) |
| Fact Discovery Cut-Off | September 1, 2006 |

| Expert Reports (Party Bearing the Burden of Proof on Claim) | September 8, 2006 |
|---|---|
| Answering Expert Reports | October 6, 2006 |
| Expert Discovery Cut-Off | November 10, 2006 |
| Letter Briefs Seeking Permission to File Dispositive Motions | September 12, 2006 |
| Answering Letter Briefs | September 19, 2006 |
| Reply Letter Briefs | September 26, 2006 |
| Trial | To Be Determined by the Court's Calendar |

c.    **Limitations**

Interrogatories:  The parties agree to adhere to the limitation on the number of interrogatories set forth in Rule 33(a) of the Federal Rules of Civil Procedure.

Depositions:  With regard to a limit on the number of depositions allowable in this case, the parties are not in agreement, and respectively state the following:

**Dyson states:**  Each side should be limited to taking ten (10) depositions, excluding expert depositions.

**Maytag states:**  Each side should be limited to taking fifteen (15) depositions, excluding expert depositions.

9.    **Estimated Trial Length**

**Dyson states:**  Dyson believes that it is feasible and appropriate to bifurcate the trial of its patent infringement claims and Maytag's false advertising claims because (i) the factual and legal issues raised by those claims are different and (ii) resolution of one set of claims could affect the outcome of the other.  Dyson estimates that a trial on the patent infringement claims would take five (5) days and that a trial on Maytag's

Counterclaims would take eight (8) days. The parties will endeavor in good faith to reduce the length of trial, if possible, by stipulation or other means.

**Maytag states**: Maytag opposes bifurcation because the claims and counterclaims deal with the same subject matter and many of the factual and legal issues are overlapping. Specifically, Dyson accuses Hoover of infringing patents that purportedly protect Dyson products that Maytag contends are falsely advertised. The same products are in issue with regard to both the claims and counterclaims. Maytag estimates that a trial of the claims and counterclaims would take nine (9) days together. If tried separately, the patent infringement claims would take five (5) days and the false advertising counterclaims would take seven (7) days. The parties will endeavor in good faith to reduce the length of trial, if possible, by stipulation or other means.

### 10.    Jury Trial

The parties have requested a trial by jury.

### 11.    Settlement

The parties have discussed settlement and will continue to discuss settlement as appropriate. They currently, however, do not see prospects for early settlement. The parties nevertheless agree that this case should be referred to the United States Magistrate pursuant to 28 U.S.C. § 636 for the purpose of exploring the possibility of a settlement. If the parties later agree that the possibility of settlement may be enhanced by such referral, they will contact Magistrate Judge Thynge to schedule a settlement conference with counsel and clients.

Dated: November 28, 2005

YOUNG CONAWAY STARGATT &                    CONNOLLY BOVE LODGE & HUTZ
TAYLOR, LLP                                  LLP

                                                        /s/ Francis DiGiovanni
By: _____                  By: _____

    C. Barr Flinn (No. 4092)                      Francis DiGiovanni (No. 3189)
    John W. Shaw (No. 3362)                       Stephanie O'Byrne (No. 4446)
    Adam W. Poff (No. 3990)                       The Nemours Building
    The Brandywine Building                       1007 N. Orange Street
    1000 West Street, 17th Floor                  Wilmington, DE 19899
    Wilmington, Delaware  19801                   (302) 658-9141
    (302) 571-6600
                                                  OF COUNSEL:
    OF COUNSEL:
                                                  Ray L. Weber
    David B. Tulchin                              Laura J. Gentilcore
    Richard C. Pepperman, II                      RENNER, KENNER, GREIVE,
    James T. Williams                               BOBAK, TAYLOR & WEBER
    Keith McKenna                                 400 First National Tower
    SULLIVAN & CROMWELL LLP                        Akron, OH 44308
    125 Broad Street                              (330) 376-1242
    New York, New York  10004
    (212) 558-4000                                Stephen P. Durchslag
                                                  WINSTON & STRAWN LLP
    Steven F. Reich                               35 West Wacker Drive
    Jeffrey S. Edelstein                          Chicago, IL 60601
    Monica Y. Youn                                (312) 558-5600
    MANATT, PHELPS & PHILLIPS,
    LLP                                           *Attorneys for Defendant Maytag*
    7 Times Square                                *Corporation*
    New York, New York  10036
    (212) 790-4500

    *Attorneys for Plaintiffs Dyson*
    *Technology Limited and Dyson, Inc.*

063753.1002

## CERTIFICATE OF SERVICE

I, Adam W. Poff, hereby certify that on November 28, 2005, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Francis DiGiovanni, Esquire
> CONNOLLY BOVE LODGE & HUTZ LLP
> The Nemours Building – 8th Floor
> 1007 N. Orange Street
> Wilmington, Delaware 19801

I further certify that on November 28, 2005, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following in the manner indicated:

> BY FEDERAL EXPRESS
>
> Ray L. Weber, Esquire
> Laura J. Gentilcore, Esquire
> RENNER, KENNER, GREIVE, BOBAK,
>   TAYLOR & WEBER
> 400 First National Tower
> Akron, OH 44308

YOUNG CONAWAY STARGATT & TAYLOR, LLP

C. Barr Flinn  (No. 4092)
John W. Shaw (No. 3362)
Adam W. Poff (No. 3990)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801
(302) 571-6600
jshaw@ycst.com

*Attorneys for Dyson Technology Limited
and Dyson, Inc.*