IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DYSON TECHNOLOGY LIMITED and DYSON, INC, | ) ) ) |
| Plaintiffs, | ) |
| v. | ) CIVIL ACTION NO.: 05-434 (GMS) ) ) |
| MAYTAG CORPORATION, | ) ) |
| Defendant. | ) |

**DEFENDANT MAYTAG CORPORATION'S RESPONSE TO
PLAINTIFFS' OPENING CLAIM CONSTRUCTION BRIEF**

Francis DiGiovanni (#3189)
Stephanie O'Byrne (#4446)
CONNOLLY BOVE LODGE & HUTZ LLP
The Nemours Building
1007 N. Orange Street
P.O. Box 2207
Wilmington, DE 19899
Phone (302) 658-9141
Facsimile (302) 658-5614

Attorneys for Defendant Maytag Corpporation

OF COUNSEL:

Ray L. Weber
Laura J. Gentilcore
RENNER, KENNER, GRIEVE,
 BOBAK, TAYLOR & WEBER
400 First National Tower
Akron, OH  44308
Phone (330) 376-1242
Facsimile (330) 376-9646

Stephen P. Durchslag
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL  60601
Phone: (312) 558-5600
Facsimile:  (312) 558-5700

Dated:  June 9, 2006

# TABLE OF CONTENTS

**PAGE**

TABLE OF CONTENTS ...........................................................................................................i

TABLE OF AUTHORITIES ................................................................................................... ii

Term No. 1 ..............................................................................................................................1

Term No. 2 ..............................................................................................................................2

Term No. 3 ..............................................................................................................................3

Term No. 4 ..............................................................................................................................4

Term No. 5 ..............................................................................................................................4

Term No. 6 ..............................................................................................................................4

Term No. 7 ..............................................................................................................................5

Term No. 8 ..............................................................................................................................6

Term No. 9 ..............................................................................................................................6

Term No. 10 ............................................................................................................................7

Term No. 11 ............................................................................................................................7

Term No. 12 ............................................................................................................................8

Term No. 13 ............................................................................................................................9

Term No. 14 .......................................................................................................................... 10

Term No. 15 .......................................................................................................................... 10

Term No. 16 .......................................................................................................................... 10

CONCLUSION ..................................................................................................................... 10

## TABLE OF AUTHORITIES

**PAGE**

*Hoganas AB v. Dresser Indus, Inc.*,
   9 F.3d 948 (Fed. Cir. 1993) .................................................................................. 10

*K-2 Corp. v. Salomon S.A.*,
   191 f.3D 1356 (Fed. Cir. 1999) ............................................................................. 2

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) ............................................................................. 9

*S3 Inc. v. NVIDIA Corp.*,
   259 F.3d 1364 (Fed. Cir. 2001) ............................................................................. 4

*Sjolund v. Musland*,
   847 F.2d 1573 (Fed. Cir. 1988) ........................................................................... 10

*Texas Instruments, Inc. v. United States Int'l Trade Comm'n*,
   988 F.2d 1165 (Fed. Cir. 1993) ............................................................................. 2

*Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*
   442 F.3d 1332 (Fed. Cir. 2006) ................................................................... 1, 3, 10

Now comes Defendant, Maytag Corporation ("Maytag"), in response to the claim constructions advanced by Plaintiffs, Dyson Technology Ltd. and Dyson, Inc. (jointly "Dyson"), set forth in the caption above.

Rather than ask this Court to construe the claims, Dyson requests that they be rewritten -- an activity proscribed by law. As presented below, Dyson not only seeks to read extraneous limitations from the specification into the claims, add and delete limitations, and ignore the plain and ordinary meanings of the terms employed, but it is now apparent that it seeks to construe its claims with reference to the accused Hoover Fusion vacuum cleaner, a process precluded by law. *Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*, 442 F.3d 1322, 1330-31 (Fed. Cir. 2006). Further, Dyson consistently resorts to extrinsic evidence, such as the Jones Affidavit, in support of its contorted constructions, rather than relying upon the intrinsic evidence of the patent and its prosecution history.

### Term No. 1

While Dyson requests that the term "dirty air inlet" be construed to be "an opening via which the dirty air . . . flows into the outer container of the cyclonic apparatus," that definition is taken fully out of context of the patent, and ignores the remainder of the claims in which the term is used.

As a starting point, the patent specifications never refer to a "dirty air inlet." Nor do they refer to an "opening." Indeed, the patent specifications do not teach "an opening via which the dirty air . . . flows into the outer container of the cyclonic apparatus." Instead, every citation advanced by Maytag refers to a "dirty air inlet passage," clearly equating the dirty air inlet of the claims with the dirty air inlet passage of the specification. To the extent that the term needs to be construed, it should be construed consistently with the patent specification and, accordingly, should

1

be construed as "a passage by which dirty air flows into the outer container of the cleaning apparatus."

It is also important that terms of the claims be consistent with each other. Term No. 3 makes it clear that the dirty air inlet is "oriented for supplying dirt laden air into the container tangentially to the interior surface of the outer container." In other words, the dirty air inlet has the functional purpose of "supplying dirt laden air into the container tangentially." Dyson would read that functional purpose of the dirty air inlet out of the claim, thus eviscerating the limitation. But such construction is inconsistent with the law. *K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1363 (Fed. Cir. 1999); *see also Texas Instruments, Inc. v. United States Int'l Trade Comm'n*, 988 F.2d 1165, 1171 (Fed. Cir. 1993).

### Term No. 2

The term "an upper portion of the outer container," simply means "at or near the top of the outer container." Dyson suggests the presence of a midline, but none of the patents make any reference whatsoever to a midline of the outer container. Moreover, if the midline were the area of demarcation, the patentees should have referred to "an upper half of the outer container," rather than "an upper portion" thereof. As presented in Maytag's earlier briefs, the patents define the upper portion as being at or near the top.

Maytag's proposal accommodates the fact that there is a difference between "upper portion" and "top." But, the upper portion necessarily includes the top. Maytag's proposal, being "at or near the top," accommodates a region below the top as being in the described portion.

At the bottom line, there is absolutely nothing in the patent specification or prosecution history that suggests that the outer container is divided into two portions - - an upper portion and a lower portion. There are multiple portions, including, at least, a "mid portion." Clearly, this is

2

just another of Dyson's attempts to rewrite its claims in an effort to ensnare the accused product. But construction is to be made with reference to the intrinsic evidence, without recourse to the accused product. *Wilson Sporting Goods Co.*, 442 F.3d at 1330-31.

### Term No. 3

As presented above with regard to Term No. 1, the dirty air inlet passage is specifically recited as being "oriented for supplying dirt laden air into the container tangentially to the interior surface of the outer container." The dirty air inlet passage provides a specific function. That function is "supplying dirt laden air into the container tangentially to the interior surface" thereof. This is an active function. Dyson would ignore the "oriented for supplying" limitation from the claim in favor of simply "allowing" the dirt laden air to so enter the container. But the express language of the claim is that the dirty air inlet passage serves the function of "supplying dirt laden air" in a particular manner. Again, Dyson seeks to construe the claims with its eye on the accused product, rather than on the intrinsic record. That record shows a "dirty air inlet passage 57 [oriented] so as to make a tangential entry." '515 patent, col. 5, ll. 64-66. (JA 8). Said another way, the "dirty air inlet passage 16 communicates ... so as to make a tangential entry." '515 patent, col. 4, ll. 59-61. (JA 7). Similar structures are present in the '748 and '008 patents. (JA 14-28).

Dyson objects to defining the word "tangentially." Maytag's only concern is that a jury may not understand what "tangentially" means. Notably, footnote 3 of Dyson's brief shows a tangent line between the points T and P. It is fundamental that a line drawn from point T to the center of the circle would be perpendicular to the tangent line TP, consistent with Maytag's proposal. Should the Court determine that a jury would not need assistance in this regard, Maytag does not object to substituting the word "tangentially" for the phrase "in a direction perpendicular to the radius of the interior surface of the outer container" in its proposal.

**Term No. 4**

Maytag reasserts the position it advanced with regard to Term No. 2, regarding the phrase "upper portion of the container."

**Term No. 5**

Here, in the term "a cyclone air inlet at an upper end ... of the cyclone," the parties agree that "upper end" means "top." But, Dyson seeks to rewrite the claim by changing "at" to "near." But, the word "near," is one of relatively, not specificity, as the word "at" is. Instead of clarifying the claim, Dyson obviscates it. The preferred embodiments referenced by Dyson in its brief all have a cyclone air inlet at the upper end. Those preferred embodiments fall within the scope of the definition advanced by Maytag. It does so without broadening the claim in the manner suggested by Dyson, changing "at" to "near."

Dyson's attempt to have the Court broaden the claim with regard to Term No. 5 is the same as its attempts with regard to Term Nos. 2 and 4. Just as Dyson would ask the Court to broaden "upper portion," to mean "upper half," it now asks the Court to broaden "at" to simply be "near." But, the construction of claims is not to be confused with rewriting them. *S3 Inc. v. NVIDIA Corp.*, 259 F.3d 1364-76 (Fed. Cir. 2001).

**Term No. 6**

Here again, Dyson requests that its claim be rewritten. Apparently, Dyson lays the blame for the confusion of terms at the doorstep of poor grammar or punctuation. But, Dyson drafted the claims, not Maytag, and only Maytag's construction is plausible, as written. Dyson's request that the Court rewrite the claim to change the grammar and punctuation originally selected is simply improper.

Subparagraph (a) of claim 1 of the '515 patent sets forth "an outer container comprising," followed by four distinct elements - - a bottom, a sidewall, a dirty air inlet, and an air outlet. (JA 9-10). It is clear from the claim that the dirty air inlet is described with particularity in the claim and is set apart from the remainder of the claim by the comma after the word "surface," and the word "and" preceding the final element of "an air outlet." The entire phrase between the comma and the word "and" deals solely with the dirty air inlet as to its position, function, orientation, and cross section. Dyson would suggest that it gratuitously set forth an additional characterization of the outer container in the section of the claim devoted exclusively to the dirty air inlet. That makes no sense.

### Term No. 7

Here, Dyson not only requests that its claim be rewritten, but its specification as well. It resorts to the intrinsic evidence of purported experts to add teachings to the specification and limitations to the claims. But, the explanation now offered by Dyson is inconsistent with the definition it offers. Dyson abandons the ordinary meaning of "maintaining its velocity," that would mean "to keep the airflow at a constant velocity or speed," in favor of the much broader definition of simply "keeping the air moving." But its experts do not even agree with this definition. As presented in Dyson's brief, Dyson's affiant, Gareth Jones, stated under oath that "air entering the top of a cone-shaped cyclone tangentially will continue to rotate (and accelerate) to the bottom of the cyclone. It is the acceleration that creates the centrifugal force necessary to separate finer dust particles from the air." But, the patent claims say nothing at all about acceleration - - nor do the patent specifications for that matter.

On the one hand, Dyson would like for the Court to believe that it was the originator and innovator of cyclonic technology, while on the other hand it suggests that the reader of its patents

5

would fully know and understand that the disclosed cyclonic technology provides for acceleration of the air. Of course, the patents themselves are totally silent as to that feature or function. So, how would such a person skilied in the art know? The arguments and positions of Dyson are incongruous, the patents fail to provide the notice function they are intended to provide, and Dyson is asking this Court to rewrite not only its patent claims, but its patent specifications, as well.

### Term No. 8

Term No. 8 tracks Term No. 3 quite closely and, accordingly, Maytag asserts the same opposition to Dyson's proposal here as it did with regard to Term No. 3. Cardinally, Dyson seeks to add limitations to this claim term that have no basis in the term itself. Indeed, there is no reference in the claims to an "inner cyclone." Moreover, the air inlet is claimed as performing the function of "supplying air tangentially to the surface" as a result of its orientation. This function is ignored in Dyson's proposal.

Again, should the Court deem the word "tangentially" to require no further construction, Maytag's proposed construction would read "the air inlet is arranged to supply air tangentially to the surface."

### Term No. 9

Simply stated, the addition of the words "or a portion of the outer surface of the cyclone" constitutes a rewriting of the claim - - and a particular portion of the claim that requires no construction, in any event. Maytag does not ask the Court to construe the claim so that it "requires the dirt collection chamber to start at the cone opening," as suggested by Dyson in its brief. As Dyson acknowledges, whether the chamber starts at the cone opening or above the cone opening and then extends below it, the claim language "extending from the cone opening" accurately applies.

The time for writing claims is well past, they are now only to be construed and, indeed, the term in issue hardly requires construction.

### Term No. 10

Dyson seeks to distance itself from the fact that this claim limitation is in a means-plus-function format. That format requires that the limitation be construed to include all the structure necessary to perform the claimed function, a fact acknowledged by Dyson in its brief. The structures of all of the embodiments of the '515 patent position the motor driven fan unit vertically above and immediately adjacent the cyclone outlet port. They do this for a very important reason, to effect the airflow referenced in claim 14 as passing "sequentially through the dirty air inlet, the container, the cyclone air inlet, the cyclone, the receiving chamber and the cyclone air outlet." (JA 11). It is not just a motor and fan that generates an airflow in the context of the claim, it is a motor and fan very specifically positioned. Otherwise, the path referenced in claim 14 would simply not work. Indeed, the function associated with this claim term is not simply "generating an airflow," but a very specific airflow "which passes sequentially through the dirty air inlet, the container, the cyclone air inlet, the cyclone, the receiving chamber and the cyclone air outlet, the flow rotating around the frustro-conicle surface of the cyclone and the inner surface of the receiving chamber" so that the dirt is deposited in the receiving chamber. This claim limitation is extremely detailed as to the airflow path, and the patent makes it clear that this path is achieved by the particular positioning of the motor and fan unit vertically above and immediately adjacent the cyclone outlet port.

### Term No. 11

Dyson contends that the claimed "disc means" that "retards long strands in the dirt from clogging the air outlet and retains the strands in the container" is not a means-plus-function

7

limitation. Dyson contends that §112, ¶ 6 does not apply if the claim limitation "cites sufficient structure and material for performing that function." But, the only structure cited in the claim is a disc at a particular location, and the specification of the '748 patent makes it clear that not just any disc will perform or achieve that stated function. While Dyson suggests that a simple disc, commonly understood to be "a thin circular object," is all that is required, that position is belied by the specification, which makes it clear that a thin circular object does not satisfy the limitation. Indeed, the specification advances at col. 3, ll. 43-54 that the disc must at least have a downwardly tapered wall and an annular flange extending toward the inside wall of the container. (JA 20). Indeed, the structure for attaching the disc to the cyclone is set forth with specificity in this portion of the specification and that structure also appears to be required to achieve the desired operation.

As to "intermediate," the common definition of that word is consistent with its use in the patent application. Intermediate means "lying or occurring between two extremes or in a middle position or state." The definition consistent with the specification of the '748 patent is "in a middle position" or "midway," as clearly shown in the drawing of Fig. 1. (JA 15). There, the disc 20 is shown midway between the receiving chamber 15 and the air outlet 13d. The claim does not state that the disc is intermediate two extremes, it states that it is intermediate two particular elements, and a review of the specification and drawings demonstrates what was intended.

### Term No. 12

Here again, Dyson resorts to extrinsic evidence and advances the inconsistent position that it is the originator and inventor of cyclonic technology, yet a person skilled in the art would have been fully aware of the terms and meanings employed at the time that its invention was made. To suggest that persons skilled in the art of cyclonic technology would be able to read into the patent

8

specification and claims of the '008 patent, a patent filed some 18 years ago, an understanding of a shroud, defies credulity. So does Dyson's contention that reference to the "separate" disc and shroud in the '008 patent does not relate to "separate" components, but rather "separate" in terms of distance from one another. The '008 patent is unequivocal in its statement, apparent from the title of the patent itself, that the prior art "separate disc and shroud" were separate components, in contradistinction to the combined disc and shroud, an integral structure, referenced throughout the '008 patent, beginning at its title and ending with its claims. One skilled in the art at the time of the invention would have been directed by the patent itself to an understanding of "shroud" and "separate disc and shroud," as used in the patent. *See Phillips* v. *AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005).

It is beyond question that the benefits of the '008 patent are derived from a structure in which "the shroud and disc are combined together for mounting on the outside of the inner cyclone." *See* 008 patent, col. 1, 11. 37-39. (JA 25). It is particularly noteworthy that the shroud means of the claims of the '008 patent perform the function of "providing for outlet air from the container into the air inlet to the cyclone." That is not the inherent function of a shroud. It is, however, the specific function of the shroud of the '008 patent, as set forth in the patent specification, which must be consulted for this means-plus-function limitation.

### Term No. 13

Maytag advances the ordinary and customary meaning of this term. The deficiencies of Dyson's proposal are set forth in detail in Maytag's Opening Brief.

**Term No. 14**

Maytag does not believe that construction is required, and that this term can be accorded its plain and ordinary meaning. The deficiencies resulting from Dyson's rewriting of this claim limitation are set forth in detail in Maytag's Opening Brief.

**Term No. 15**

Maytag advances the plain and ordinary meaning of this claim term and presents the deficiencies of Dyson's rewriting of the claim in its Opening Brief.

**Term No. 16**

To the extent that the Court determines that the word "tangential" does not require construction, Maytag offers that the claim term may be given its plain and ordinary meaning. In contradistinction, the deficiencies of the rewrite undertaken by Dyson are set forth in detail in Maytag's Opening Brief.

**CONCLUSION**

Dyson would have this Court rewrite its claims long after the patents have issued. That is not the function of a *Markman* undertaking. Courts are to construe claims, not rewrite them. Moreover, it is improper to read a limitation out of a claim or to add limitations to a claim, whether for purposes of finding infringement or maintaining validity. *Wilson Sporting Goods Co.,* 442 F.3d at 1330-31; *Hoganas AB v. Dresser Indus, Inc,* 9 F.3d 948, 950 (Fed. Cir. 1993); *Sjolund v. Musland,* 847 F.2d 1573, 1582 (Fed. Cir. 1988). The claim terms in issue are, for the most part, clear and unequivocal. To the extent that claim construction is required, the offerings of Maytag are consistent with the claim language, seeking to clarify that language, rather than seeking to draw extraneous limitations from the specification into the claims. Dyson's proposal should be rejected in favor of the offerings of Maytag.

/s/ Francis DiGiovanni
Francis DiGiovanni (#3189)
Stephanie O'Byrne (#4446)
CONNOLLY BOVE LODGE & HUTZ LLP
The Nemours Building
1007 N. Orange Street
Wilmington, DE 19899
Phone (302) 658-9141
Facsimile (302) 658-5614

Attorneys for Defendant Maytag Corporation

OF COUNSEL:

Ray L. Weber
Laura J. Gentilcore
RENNER, KENNER, GREIVE,
 BOBAK, TAYLOR & WEBER
400 First National Tower
Akron, OH  44308
Phone (330) 376-1242
Facsimile (330) 376-9646

Stephen P. Durchslag
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL  60601
Phone: (312) 558-5600
Facsimile:  (312) 558-5700

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I, Francis DiGiovanni, hereby certify that on June 9, 2006, I electronically filed the foregoing **DEFENDANT MATAG CORPORATION'S RESPONSE TO PLAINTIFFS' OPENING CLAIM CONSTRUCTION BRIEF** with the Clerk of the Court using CM/ECF, which will send notification that such filing to the following, upon whom I also served a copy of the foregoing by hand:

C. Barr Flinn
John W. Shaw
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801

I further hereby certify that on June 9, 2006, I have mailed via Federal Express the document to the following non-registered participant:

Richard C. Pepperman, II
James T. Williams
Keith McKenna
Sullivan & Cromwell LLP
125 Broad Street
New York, New York 10004

/s/ Francis DiGiovanni
Francis DiGiovanni (#3189)
Stephanie O'Byrne (#4446)
CONNOLLY BOVE LODGE & HUTZ LLP
The Nemours Building
1007 N. Orange Street
Wilmington, DE 19899
Phone (302) 658-9141
Facsimile (302) 658-5614

*Attorneys for Defendant Maytag Corporation*

469870_1