UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DYSON TECHNOLOGY LIMITED and DYSON, INC.,<br><br>           Plaintiffs,<br><br>v.<br><br>MAYTAG CORPORATION,<br><br>           Defendant. | )<br>)<br>)<br>)<br>) Civil Action No. 05-434-GMS<br>)<br>)<br>)<br>)<br>) |

**REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE PURSUANT TO THE HAGUE CONVENTION OF 18 MARCH 1970 ON THE TAKING OF EVIDENCE ABROAD IN CIVIL OR COMMERCIAL MATTERS**

1. This Request is being made by the United States District Court for the District of Delaware, the Honorable Gregory M. Sleet, presiding. The United States District Court for the District of Delaware is located at 844 N. King Street, Wilmington, DE 19801.

2. This Request is being made to the Central Authority of the United Kingdom, The Masters' Support Unit, Royal Courts of Justice, Strand, London WCA 2LL, England.

3. A copy of the executed Request should be returned to the English Solicitors for Maytag Corporation ("Maytag").

> Jamie Harrison
> Winston & Strawn
> Bucklersbury House
> 3 Queen Victoria Street
> London EC4N 8NH
> United Kingdom

4. In conformity with Article 3 of the Hague Convention: of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters (the "Hague Evidence Convention").

(a) The requesting judicial authority is the United States District Court for the District of Delaware, the Honorable Gregory Sleet, presiding (the "Requesting Authority.")

(b) The competent authority is the Masters' Support Unit Royal Courts of Justice, Strand, London WC2A 2LL, England ("The Competent Authority.")

5. This case is a civil proceeding pending before the Requesting Authority. The Requesting Authority seeks the assistance of the High Court to obtain documentary evidence for use at the trial of this action, from the following companies known to be residing in the United Kingdom.

```
BSI
389 Chiswick High Road
London
W4 4AL
England

HI Europe
Watermans Park
Brentford High Street
TW8 0BB
England

Miles Calcraft Briginshaw Duffy
Rathbone Street
London, WIT INB
England

Walker Media
Middlesex House
34-42 Cleveland Street
London, WIT 4SE
England

Frazer Nash Consultancy Ltd.
1 Trinity Street
College Green
Bristol, BS1 5TE
England
```

6. The Plaintiff, Dyson Technology Limited, is located at Tetbury Hill, Malmesbury, England, Wilshire SN16 0RP and is represented by the following counsel:

Garrard R. Beeney
Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004

Steven F. Reich
Manatt, Phelps, Phillips LLP
7 Times Square
New York, NY 10004

C. Barr Flinn
Young Conaway Stargatt & Taylor LLP
1000 West Street
Wilmington, DE 19899

7. The Defendant, Maytag, is located at 240 Edwards Street, Cleveland, TN 37311, and is represented by the following counsel:

Stephen P. Durchslag
Winston & Strawn LLP
35 West Wacker Drive
Chicago, IL 60601

Ray L. Weber
Renner, Kenner, Greive, Bobak, Taylor & Weber
400 First National Tower
Akron, OH 44308

Francis DiGiovanni
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 N. Orange Street
Wilmington, DE 19899

**Nature and Purpose of the Proceedings**

8. This is a proceeding originally brought by the plaintiff/counter-defendant, Dyson Technology Limited, and Dyson, Inc. ("Dyson") as a patent infringement action on June 27,

2005. The defendant/counter-plaintiff, Maytag Corporation ("Maytag") filed a counterclaim on August 1, 2005, asserting that the plaintiff engaged in false packaging and advertising relating to certain models of its upright vacuum cleaners. A copy of the complaint and counterclaims is attached hereto as Exhibit 1. The parties are currently engaged in discovery proceedings.

9. In its counterclaims, Maytag asserts that Dyson has made false and misleading statements in connection with its packaging and advertising of the DC07, DC14, and DC15 upright vacuum cleaners. Specifically, Maytag claims that plaintiffs marketing campaigns make false and misleading claims as to the suction power, cleaning efficacy and design and performance capabilities of its upright vacuums. Maytag further claims that Dyson's advertising is false and misleading because in fact, plaintiffs vacuum cleaners do not have the suction power, cleaning efficacy or design and performance capabilities claimed in its advertising and marketing campaigns.

10. Additionally, Maytag claims that Dyson's packaging and advertising, claiming that other vacuums do not work properly is false and misleading. Maytag claims that Dyson's marketing campaign in this regard falsely communicates to consumers that other vacuum cleaners, including Maytag's Hoover WindTunnel upright vacuum cleaner, do not work properly.

**The Evidence to be Obtained**

11. HI Europe, Miles Calcraft Briginshaw Duffy, and Walker Media ("The Advertising Agencies") have undertaken advertising and marketing work for or on behalf of Dyson, specifically related to the upright vacuum cleaner models at issue in these proceedings.

12. The Advertising Agencies have either been identified by Dyson's Initial

Disclosures[1] as individuals likely to have relevant information related to "Dyson's marketing and sales" of the relevant products or given their documentary production to date, by Maytag as companies likely to have relevant documentary evidence. Maytag seeks the production of documents related to the advertising and marketing campaigns performed for or on behalf of plaintiffs in this regard.

13. Specifically, Maytag seeks that the Advertising Agencies produce for inspection and photocopying the following documents for use at trial:

(1) any and all documents dated January 1, 2002 through August 31, 2005, relating to any advertising, promotional materials and all other materials relating to advertising or marketing of Dyson upright vacuums sold in the United States, including but not limited to any target audience analysis, copy strategy, copy direction, advertising copy tests, creative briefs, brand-recognition studies, competitive advertising analysis, positioning statements, in-market studies or so called first-launch studies, tracking studies, marketing and media strategy documents, media schedules, market research, and any Network clearance, inquiry or any and all documents reflecting results of any survey, focus groups, or other market research, investigation or study relating to advertising;

(2) Any and all documents dated January 1, 2002 through August 31, 2005, that pertain or refer to the dollar amount expended by Dyson for advertising or marketing of Dyson upright vacuums sold in the United States; and

---

[1] Initial Disclosures are a disclosure each side is mandated to make at the initial stage of the proceedings by the U.S. Federal Rules of Civil Procedure, Rule 26(a) of the Federal Rules of Civil Procedure requires that a party "must" provide to other parties the name and other identifying information of Individuals that are "likely to have discoverable information."

      (3) Any and all documents dated January 1, 2002 through August 31, 2005, concerning communications between the Advertising Agencies and/or any television network and/or any other advertising agency and/or industry association and/or any testing facilities, laboratories or research companies relating to the advertising and/or testing, analyses, research or evaluations for Dyson upright vacuums made or sold in the United States, including but not limited to research related to the performance of Dyson vacuums sold in the United States as related to cleaning ability and suction..

      (4) Any and all documents dated January 1, 2002 through August 31, 2005, relating to any consumer complaints concerning the efficacy of Dyson upright vacuum models DC07, DC14 and DC15 sold in the United States.

14. Frazer Nash Consultancy Ltd. ("Frazer") has done testing work for or on behalf of Dyson specifically related to the upright vacuum models at issue in these proceedings. Maytag seeks the production of documents related to testing performed for or on behalf of Dyson in this regard. Frazer has been identified by Dyson in its Initial Disclosures as a company with knowledge of the "tests and testing methodology related to its vacuums."

15. Specifically, Maytag seeks that Frazer produce for inspection and photocopying the following documents for use at trial:

      (1) all documents dated January 1, 2002 through August 31, 2005, that discuss the efficacy of Dyson upright vacuum models DC07, DC14 and DC15 that were sold in the United States, including but not limited to cleaning effectiveness and suction ability;

9

(2) all documents dated January 1, 2002 through August 31, 2005, that compare Dyson upright vacuums sold in the United States with other upright vacuums sold in the United States;

(3) all documents dated January 1, 2002 through August 31, 2005, relating to any testing performed by Frazer at the request of Dyson related to Dyson's DC07, DC14 and DC15 upright vacuums sold in the United States OR related to any Maytag or Hoover upright vacuum sold in the United States, including without limitation the tests themselves, the protocols used, all correspondence between Frazer and Dyson or any party performing the test; any internal memoranda addressing, discussing, or commenting in any way upon the study, test, or protocol, underlying data, laboratory notebooks, reports, or notes;

(4) any and all documents dated January 1, 2002 through August 31, 2005, concerning the accuracy, validity, reliability, repeatability, reproducibility, benchmarking or measurement error of any testing process or procedure for upright vacuums sold in the United States and used in any testing Frazer performed at the request of Dyson for upright vacuums sold in the United States; and

(5) any and all documents dated January 1, 2002 through August 31, 2005, related to International Electrotechnical Committee ("IEC") or ASTM International ("ASTM") protocols for testing upright vacuum cleaners as related to tests Frazer performed at the request of Dyson for upright vacuums sold in the United States.

16.     BSI is the national standards body of the UK that develops standards and standardization solutions. In particular, BSI develops standards for testing vacuums. BSI evaluates and participates in the development of IEC standards.

17.     Maytag seeks that BSI produce for inspection and photocopying the following documents dated January 1, 2002 through August 31, 2005 and limited to documents pertaining to upright vacuums sold in the United States.

    i.    Any and all documents concerning or relating to any BSI or International Electrotechinical Commission (IEC) protocols or standards for testing upright vacuum cleaners, including but not limited to all documents concerning any revision, amendment, or proposed revision or amendment, to such protocols or standards, including but not limited to protocols or standards regarding cleaning ability, suction, suction power, or filtration;

    ii.    Any and all documents concerning the role of Dyson in the development, revision or amendment, or proposed revision or amendment, of any BSI or IEC protocols or standard for testing upright vacuum cleaners;

    iii.    Any and all documents which refer or relate to Dyson's vote, proposed vote, position, view or opinion of any BSI or IEC protocols or standard for testing upright vacuum cleaners;

    iv.    Any and all documents concerning the current and historical role, contribution or position of Dyson in the affairs of the committees, subcommittees, working and/or technical groups responsible for standards or protocols for upright vacuum cleaners;

    v.    Any and all documents relating to any financial contribution or payment made by Dyson to BSI or to any committee, subcommittee, working and/or technical groups of responsible for standards for upright vacuum cleaners;

    vi.    Any and all documents relating to whether any BSI protocols or standards for upright vacuum cleaners accurately represents real-life conditions found in American homes, including but not limited to any studies, tests or other materials used to support IEC 60312 test methodology.

**Procedures to be Followed**

18. With regard to all of the documents requested in numbers 13 and 15 above, if any of the companies to be subpoenaed, contend that the contents of a document requested to be produced for inspection and copying are protected from disclosure by virtue of a privilege, it is intended and requested that each company shall nevertheless provide a description of the document in question which shall include, with respect to each document:

    i. Each privilege the company contents protects the document from disclosure;

    ii. Each and every fact upon the company relies to support the claim of privilege;

    iii. An identification of the type of document (e.g., letter, memorandum, telegram, telefax, notes or memoranda of telephone conversations, etc.);

    iv. The date of each document or when it was created;

    v. The author(s) of each document;

    vi. The person or persons to whom each document was directed;

    vii. The person or persons to whom copies of each document were supplied;

    viii. The person or persons who received or obtained copies of each document; and

    ix. The general subject matter of each document.

19. It is requested that any documents produced be made available to the parties named herein within 28 days of service of this Letter of Request.

20. It is requested that the documents be produced or made available to the attention of the following:

Jamie Harrison
Winston & Strawn LLP

Bucklersbury House
3 Queen Victoria Street
London EC4N 8NH
United Kingdom

21. The fees and costs incurred which may be reimbursable under the second paragraph of Article 14 of the Hague Evidence Convention and the fees and costs occasioned by the use of the special procedure requested in Article 26 of the Hague Evidence Convention being the fees and costs in connection with the execution of this Letter of Request, for the service of process necessary to secure the documents requested will be borne by the defendant.

22. This Letter of Request is made this 20th day of Oct., 2006 by the undersigned requesting court, the United States District Court for the District of Delaware, Delaware, United States.

_____
The Honorable Gregory M. Sleet
United States District Judge



FILED
OCT 20 2006
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

13