**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| **DYSON TECHNOLOGY LIMITED**<br>**and DYSON, INC.,**<br>      **Plaintiffs,**<br>**v.**<br><br>**MAYTAG CORPORATION,**<br>      **Defendant.** | )<br>)<br>)<br>)  **Civil Action No. 05-434 GMS**<br>)<br>)  **REDACTED FOR PUBLIC FILING**<br>)<br>) |

**DEFENDANT MAYTAG CORPORATION'S MEMORANDUM IN SUPPORT OF ITS**
**MOTION FOR LEAVE TO FILE A SECOND AMENDED ANSWER,**
<u>**AFFIRMATIVE DEFENSES AND SUPPLEMENTAL COUNTERCLAIMS**</u>

Francis DiGiovanni
Connolly Bove Lodge & Hutz
The Nemours Building
1007 N. Orange Street
Wilmington, DE  19899
Phone (302) 658-9141
Fax (302) 658-5614

Kimball R. Anderson
Stephen P. Durchslag
Winston & Strawn
Chicago, IL  60601
Phone (312) 558-5600
Fax (312) 558-5700

Ray L. Weber
Laura J. Gentilcore
Renner, Kenner, Greive, Bobak,
  Taylor & Weber
400 First National Tower
Akron, OH  44308
Phone (330) 376-1242
Fax (330) 376-9646

*Attorneys for Defendant*
*Maytag Corporation*

Dated: November 28, 2006

# TABLE OF CONTENTS

**PAGE**

I.    NATURE AND STAGE OF THE PROCEEDING.............................................................1

II.   SUMMARY OF ARGUMENT .......................................................................................2

III.  STATEMENT OF FACTS ..............................................................................................3

    A.   DYSON'S EFFORTS TO AVOID DISCOVERY ...........................................................3

    B.   DISCOVERY RELATING TO DYSON'S CORPORATE OWNERSHIP .......................4

    C.

IV.  ARGUMENT ...................................................................................................................8

    A.   THERE HAS BEEN NO UNDUE DELAY IN PURSUING LEAVE TO AMEND.........9

    B.   THERE IS NO BAD FAITH OR DILATORY MOTIVE IN SEEKING TO AMEND...10

    C.   THERE HAS BEEN NO FAILURE TO CURE DEFICIENCIES OF PREVIOUS

    AMENDMENTS ...............................................................................................................10

    D.   DYSON WILL NOT BE UNDULY PREJUDICED BY THE PROPOSED

    AMENDMENT ...............................................................................................................10

    E.   THERE IS NO BASIS TO ARGUE THAT THE PROPOSED AMENDMENT WOULD

    BE FUTILE .....................................................................................................................11

V.   CONCLUSION...............................................................................................................12

## TABLE OF AUTHORITIES

PAGE

**Cases**

*Adams v. Gould Inc.,*
    739 F.2d 858 (3d Cir. 1984),
    *cert. denied,* 469 U.S. 1122 (1985) ..................................................................... 9

*Barkauskie v. Indian River Sch. Dist.,*
    951 F. Supp. 519 (D. Del. 1996) ........................................................................... 9

*Boileau v. Bethlehem Steel Corp.,*
    730 F.2d 929 (3d Cir. 1984) .................................................................................. 9

*Foman v. Davis,*
    371 U.S. 178 (1962) ............................................................................................... 9

*Glassman v. Computervision Corp.,*
    90 F.3d 617 (1st Cir. 1996) ................................................................................... 9

*In re Burlington Coat Factory Sec. Litig.,*
    114 F.3d 1410 (3d Cir. 1997) ............................................................................... 9

*Massarsky v. General Motors Corp.,*
    706 F.2d 111 (3rd Cir. 1983) .................................................................................. 11

*Procter & Gamble Co. v. Nabisco Brands, Inc.,*
    125 F.R.D. 405 (D. Del. 1987) ........................................................................ 9, 11

*Riley v. Taylor,*
    62 F.3d 86 (3d Cir. 1995) ...................................................................................... 9

**Statutes**

15 U.S.C. § 1125(a) ...................................................................................................... 1
6 Del. C. § 2532(a) (2005) ........................................................................................... 1

**Other Authorities**

Fed .R. Civ. P. 15(a) .................................................................................................... 8

I.      NATURE AND STAGE OF THE PROCEEDING

Dyson Technology Limited and Dyson, Inc. ("Dyson") sued Maytag Corporation ("Maytag") on June 27, 2005, alleging four counts of patent infringement for Maytag's marketing of its Hoover "Fusion" vacuum cleaner. (Compl. ¶¶ 19, 25, 31, 37). In August 2005, Maytag filed its Answer, Affirmative Defenses and Counterclaims, denying each of Dyson's claims. (Answer ¶¶ 19, 25, 31, 37). In its countersuit, Maytag alleged that Dyson violated Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)), Delaware's Deceptive Trade Practices Act (6 Del. C. § 2532(a) (2005)) and the Delaware common law for unfair competition by making a number of false and misleading advertising claims regarding several of Dyson's upright vacuum cleaners and those of its competitors, including Maytag. (Answer ¶¶ 55, 60, 65)

Maytag's allegations of false advertising center on an intensive advertising blitz in the United States by Dyson over the last several years — formulated directly out of Dyson headquarters in Great Britain and featuring the image, voice and signature of Dyson founder, inventor, primary shareholder and spokesman James Dyson — claiming that Dyson vacuums, among other things, are the most powerful on the market, never lose suction and outperform all other vacuum cleaners. (Answer ¶¶ 10, 21, 27). In September 2006, Maytag filed an amended Answer, Affirmative Defenses and Supplemented Counterclaims with additional allegations related to a new Dyson television commercial campaign, which implies that other vacuums do not work effectively and Dyson vacuums do.

Thus Maytag now moves for leave to amend its Answer, Affirmative Defenses and Supplemental

Counterclaims to add Dyson James Limited, Dyson Limited and James Dyson as counterclaim defendants.

## II.    SUMMARY OF ARGUMENT

1.    Maytag's request for leave to file an amended complaint, adding current Dyson parent Dyson James Limited, former Dyson parent Dyson Limited and Dyson principal shareholder James Dyson as counterclaim defendants, should be granted because

2.    Moreover, Maytag's request for leave to file an amended counterclaim should be granted because

3.    Maytag has not delayed in bringing this motion to amend and does so in good faith; in fact, Maytag only recently learned

4.    Dyson will not be prejudiced by having these additional counterclaim defendants added to Maytag's counterclaims; discovery will not expand, and the issues in the case will remain the same.  All that will change is that the culpable individuals and legal entities will be made parties to Maytag's counterclaims.

5.    Maytag's proposed amendments will not be futile.  The Court will still retain subject matter and personal jurisdiction over the issues in this case and all of the added counterclaim defendants.

6.    Finally, Maytag's request for leave to file an amended counterclaim should be granted because it will prevent Maytag from having to take additional steps in the event it obtains a judgment on its false advertising claims that would require unnecessary duplication of

the parties and the Court's resources. The interests of the parties, justice and judicial economy are best served by allowing Maytag to add James Dyson, Dyson James Limited and Dyson Limited as counterclaim defendants.

## III.    STATEMENT OF FACTS

### A.    DYSON'S EFFORTS TO AVOID DISCOVERY

For nearly a year, Defendant/Counter-plaintiff Maytag Corporation ("Maytag") has diligently sought to ascertain the true ownership of Plaintiff/Counter-defendants Dyson Technology Limited and Dyson, Inc. ("Dyson"), but Dyson has frustrated those efforts at every turn. In late 2005, Maytag served Dyson with its first set of document requests; request number 1 sought this very information. Over the course of the ensuing year, Dyson stonewalled.

Despite Dyson's clear obfuscations, Maytag only recently discovered what appears to be the true ownership structure of Dyson,

Dyson's conduct during discovery is solely to blame for the fact that Maytag only recently discovered these issues.

## B.    DISCOVERY RELATING TO DYSON'S CORPORATE OWNERSHIP

During the course of discovery, Maytag served Dyson with a document request asking for

the following:

> Documents sufficient to show the ownership and control of Plaintiffs, including
> but not limited to the identity of the manager, directors and officers of Plaintiffs,
> and the managers, directors and officers of Plaintiff's engineering, legal,
> marketing, research and development, and sales operations since 2000.

Maytag's First Set of Requests for Production, Req. No. 1 (attached to as Exhibit A to Goldberg

Aff.); Affidavit of Josh Goldberg ¶ 2 (hereafter "Goldberg Aff."). "Plaintiff" in all of Maytag's

document requests to Dyson was defined as:

> . . . each of Plaintiffs, Dyson Technology Limited and Dyson, Inc., *their parents,*
> *subsidiaries and affiliated companies, predecessors-in-interest*, and all past and
> present officers, employees, directors, agents, accountants, investigators,
> attorneys, and/or other representatives or persons authorized on their behalf.

Goldberg Aff. Ex. A, Definition A (emphasis added); Goldberg Aff. ¶ 2.

Despite the simplicity of this request, Dyson failed to provide Maytag with any

substantively responsive documents prior to the beginning of depositions in this case.

---

[1] Also sorely lacking from Dyson's production were sufficient responses to Maytag's request for
Dyson's audited financial statements from the "Plaintiffs" – again, defined as all of Dyson's
parents, subsidiaries and affiliates.  Goldberg Aff. Ex. A, Req. 23.  Dyson's failure to produce
these materials is yet another example of its abuse of discovery and its desire to frustrate

Moreover, while Maytag has supplemented its document productions to Dyson on a regular basis, Dyson did not start producing the majority of its documents until October 25, 2006. For example, Dyson produced more than 14,000 pages of materials on October 25, more than 25,000 pages on October 27, more than 18,000 pages on November 2, and more than 34,000 pages on November 3. *See* October 25, October 27, November 2 and November 3 Dyson production letters, attached to Goldberg Aff. as Ex. B); Goldberg Aff.¶ 5. Aside from the September 27, 2006 deposition of James Dyson on patent issues in this case, depositions began in earnest on October 27, 2006 – two days after Dyson began this last-minute production. Goldberg Aff. ¶ 6.

Absent the benefit of a substantive review of Dyson's eleventh-hour document dump, Maytag only recently learned

*See* November 8, 2006 Deposition Transcript of James Dyson at 278, attached to Goldberg Aff. as Ex. C. James Dyson's November 8 deposition also was one of the first times Maytag became aware that

Beyond these revelations, James Dyson could not explain the intricacies of the various corporate relationships between the many Dyson subsidiaries. *Id.* at 281:4-7 ("I don't know without seeing a company structure which is quite complex, I'm not totally certain who owns

---

Maytag's legitimate attempts to determine which culpable Dyson entity will have sufficient assets to satisfy any judgment Maytag may obtain.

**C.**

As the primary owner, spokesperson, founder and inventor of the many Dyson entities, James Dyson will be personally liable for the various false advertising claims that literally came from his mouth, or appeared in print, television or on Dyson vacuum packaging over his own signature and next to his own picture.[4]

Accordingly, Maytag now requests leave to amend its Answer, Affirmative Defenses and Counterclaims to add James Dyson, Dyson James Limited and Dyson Limited as additional counter-defendants,

Maytag's proposed Amendment is attached to Dyson's Motion as Exhibit 1.

Adding James Dyson, Dyson James Limited and Dyson Limited as counter-defendants will not change the dynamics of discovery or any other aspect of this litigation going forward, but will simply ensure payment of any potential judgment in Maytag's favor. No additional discovery besides what is outstanding will be required, so there will be no undue delay. Maytag does not seek leave to amend out of bad faith, but to ensure that Dyson's assets pay for any judgment, be they in the possession of Dyson corporate, or James Dyson individually. Moreover, Maytag has not been derelict in failing to add James Dyson, Dyson James Limited and Dyson Limited previously because

In addition, neither Dyson corporate, nor James Dyson, will be unduly prejudiced by being added as counter-defendants: no additional discovery other than what is outstanding will be required; and the legal and factual questions presented by this litigation will not change. Finally, Maytag's proposed amendment will not be futile, as adding these additional counter-defendants will not affect jurisdiction or Maytag's ability to state a claim.

## IV.  ARGUMENT

Leave to amend pleadings under Rule 15(a) "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). This rule promotes the interests of justice and judicial economy by encouraging related causes of actions to be considered by a Court in a single action, rather than on a piecemeal basis in multiple actions. The Third Circuit has explained that Rule 15 embodies "the liberal pleading philosophy of the federal rules," and "limits the district court's discretion to deny leave to amend." *Adams v. Gould Inc.,* 739 F.2d 858, 864 (3d Cir. 1984), *cert.*

*denied*, 469 U.S. 1122 (1985).  *See also Barkauskie v. Indian River Sch. Dist.*, 951 F. Supp. 519, 527 (D. Del. 1996); *Boileau v. Bethlehem Steel Corp.*, 730 F.2d 929, 938 (3d Cir. 1984); *Procter & Gamble Co. v. Nabisco Brands, Inc.*, 125 F.R.D. 405 (D. Del. 1987).

When determining whether leave to amend should be granted, a court should assess the following factors:  (a) undue delay; (b) bad faith or dilatory motive on the part of the movant; (c) repeated failure to cure deficiencies by amendments previously allowed; (d) undue prejudice to the opposing party by virtue of allowance of the amendments; and (e) futility of amendment.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962).  In *Foman*, the Court held:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.  In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendments, futility of amendment, etc. -- the leave sought should, as the rules require, be "freely given."

*Id.  See also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (citing *Glassman v. Computervision Corp.*, 90 F.3d 617, 622 (1st Cir. 1996)); *Riley v. Taylor*, 62 F.3d 86, 90 (3d Cir. 1995).  As discussed below, because all of the *Foman* factors weigh in favor of Maytag, the Court should grant Maytag's motion to amend.

### A.    THERE HAS BEEN NO UNDUE DELAY IN PURSUING LEAVE TO AMEND

In part due to Dyson's continued obfuscation during discovery with respect to its corporate structure and ownership, Maytag diligently continues to attempt to ascertain which entity – corporate or individual – will be able to satisfy the judgment Maytag expects to obtain for Dyson's false advertising.

Once

Maytag became aware of these facts, it immediately sought this amendment. Accordingly, there has been no delay.

**B.    THERE IS NO BAD FAITH OR DILATORY MOTIVE IN SEEKING TO AMEND**

Moreover, Maytag has no bad faith in seeking to amend. Maytag's only motive is to ensure that the proper parties are named as counter-defendants, so any judgment Maytag receives may be satisfied.

**C.    THERE HAS BEEN NO FAILURE TO CURE DEFICIENCIES OF PREVIOUS AMENDMENTS**

Because Maytag did not, and still does not, have a full picture of Dyson's corporate structure, it could not have cured any deficiencies with its prior amendment. Up until approximately November 8, 2006, Maytag believed it had named the proper Dyson entities that ultimately would be liable for the false advertising at issue in this case. Despite asking in its very first document request, served on December 27, 2005, for documents sufficient to identify Dyson's ownership, Maytag did not learn of the true structure until

**D.    DYSON WILL NOT BE UNDULY PREJUDICED BY THE PROPOSED AMENDMENT**

Most importantly, Dyson cannot argue that it will be prejudiced in any way by the addition of James Dyson, Dyson James Limited and Dyson Limited as counter-defendants. Aside from the fact that these additions will place the appropriately responsible parties squarely in the case, nothing else should change. Discovery, to the extent that Dyson has complied so far, will not expand. All that is required is for Dyson to sufficiently respond to the various outstanding document requests and interrogatories that Maytag served long ago. Moreover, the

claims of false advertising in the case will remain the same. Under these circumstances, and given the fact that nearly six months remain until the scheduled start of trial in this case, there is no credible claim of undue prejudice from Maytag's proposed amendment.

### E.     THERE IS NO BASIS TO ARGUE THAT THE PROPOSED AMENDMENT WOULD BE FUTILE

A motion for leave to amend may be denied as futile only if the proposed amendment would not withstand a motion to dismiss, or if it fails to state a cause of action. *See e.g., Massarsky v. General Motors Corp.*, 706 F.2d 111, 125 (3rd Cir. 1983); *Proctor & Gamble Co. v. Nabisco Brands, Inc.*, 125 F.R.D. 405, 412 (D. Del. 1987). The addition of James Dyson, Dyson James Limited and Dyson Limited as counter-defendants will have no effect on the issues presented in this case, so subject matter jurisdiction will not change.

Moreover, the Court's jurisdiction over the new counter-defendants will not change. As stated in Dyson's original Complaint, "Plaintiff Dyson Technology Limited is a corporation organized and existing under the laws of England and Wales and has its principal place of business in Malmesbury, England." (Dyson Compl. ¶ 1).

British subsidiary Dyson Technology Limited and U.S. subsidiary Dyson, Inc. already have availed themselves of the jurisdiction of the Court. Also, Maytag has no reason to believe that Dyson James Limited and Dyson Limited have not transacted business and committed the acts complained of in Maytag's Counterclaims to the same degree as the

11

subsidiaries. Accordingly, because the subject matter of the case and the Court's jurisdiction over the new counter-defendants should not change, adding these counter-defendants would not be futile.

Finally, denying Maytag's motion will require Maytag to take additional steps in the event it obtains a judgment on its false advertising claims that would require unnecessary duplication of the parties and the Court's resources. The interests of the parties, justice and judicial economy are best served by allowing Maytag to add James Dyson, Dyson James Limited and Dyson Limited as counter-defendants as soon as possible.

## V.    CONCLUSION

Accordingly, James Dyson, Dyson Limited and Dyson James Limited must be added as counter-defendants in this suit.

WHEREFORE, the Court should grant Maytag leave to amend.

12

Dated: November 28, 2006

Respectfully submitted,

MAYTAG CORPORATION

/s/ Francis DiGiovanni
Francis DiGiovanni (#3189)
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 N. Orange Street
Wilmington, DE  19899
Phone (302) 658-9141
Fax (302) 658-5614

Kimball R. Anderson
Stephen P. Durchslag
Winston & Strawn
Chicago, IL  60601
Phone (312) 558-5600
Fax (312) 558-5700

Ray L. Weber
Laura J. Gentilcore
Renner, Kenner, Greive, Bobak,
  Taylor & Weber
400 First National Tower
Akron, OH  44308
Phone (330) 376-1242
Fax (330) 376-9646

## <u>CERTIFICATE OF SERVICE</u>

I, Francis DiGiovanni, hereby certify that on November 28, 2006, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

C. Barr Flinn
John W. Shaw
Young Conaway Stargatt & Taylor LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801

I further certify that on November 28, 2006, I caused a copy of the foregoing document to be served by hand delivery and e-mail on the above-listed counsel of record, and by e-mail and first class mail on the following counsel of record:

Garrard R. Beeney
Richard C. Pepperman, II
James T. Williams
Keith McKenna
Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004

Steven F. Reich
Jeffrey S. Edelstein
Manatt, Phelps & Phillips, LLP
7 Times Square
New York, NY 10004

*/s/ Francis DiGiovanni*
Francis DiGiovanni (#3189)