# EXHIBIT U

STRATEGIC STAFFING GROUP, INC. V. HARRIS FRIEDELL

CIVIL ACTION NO. 06-CV-1398

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

2006 U.S. Dist. LEXIS 66106

September 14, 2006, Decided

September 15, 2006, Filed; September 18, 2006, Entered

**PRIOR HISTORY:** Strategic Staffing Group, Inc. v. Friedell, 2006 U.S. Dist. LEXIS 51253 (E.D. Pa., July 7, 2006)

**COUNSEL:** {*1} For STRATEGIC STAFFING GROUP, INC., Plaintiff: BRANDON WIND, NEWTOWN, PA.

For HARRIS FRIEDELL, Defendant: JACQUELINE C. PIRONE, TIMOTHY D. SPEEDY, JACKSON LEWIS, LLP, MORRISTOWN, NJ.

**JUDGES:** John R. Padova, J.

**OPINION BY:** John R. Padova

**OPINION: MEMORANDUM**

Padova, J.

September 14, 2006

Plaintiff, Strategic Staffing Group, Inc., brought this common law action for fraud and breach of contract in the Court of Common Pleas for Montgomery County. It was removed here on April 3, 2006. Presently before the court is a motion by defendant Friedell to dismiss for want of personal jurisdiction and for failure to state claims upon which relief may be granted. For the reasons that follow, the motion is granted in part and denied in part.

**I. FACTUAL BACKGROUND.**

The complaint alleges that Strategic is a New York corporation with its principal place of business in New York, and with business locations in New Jersey and Pennsylvania. (Compl. P1.) It maintains offices on Cottman Avenue in Philadelphia and in Norristown. (Id. P2.) It is in the business of providing temporary and permanent staffing for its clients in exchange for a negotiated hourly rate that is paid directly to it. It then pays {*2} the temp's salary and benefits. (Id. P3.) It is one of several sister corporations that are owned by the same controlling shareholder, Eric Goldstein. A management company called GT Systems runs the payroll for all the companies. (Id. P4.)

Friedell was, until his resignation on October 28, 2005, the COO of Strategic. (Id. P6.) The Complaint alleges that Strategic and Friedell had a verbal contract of employment that provided that Friedell would perform his duties in a professional manner in exchange for his salary. (Id. P7.) One of Friedell's duties was to review customer invoices and collect the fees owed to Strategic. (Id. P9.)

At a meeting held in September 2005, Friedell informed Strategic's president, Theodore Angelus, that he had changed the way invoicing was performed. Rather than invoices from the Pennsylvania locations being sent from the New York office, they would be issued directly from the offices in Philadelphia and Norristown. (Id. P10.) He also represented that he was reviewing the invoices and they were being sent out in a timely fashion. (Id. P11.) The complaint asserts that Friedell lied to Angelus about the invoices because he intended {*3} to disrupt Strategic's business and start a competing company. (Id. PP12-14.) Following Friedell's resignation, Strategic discovered several months worth of unissued invoices, worth $430,000.00, in the desk that Friedell used at the Cottman Avenue office. (Id. PP15, 16.)

The Complaint alleges that Friedell engaged in an unlawful scheme to disrupt Strategic's business and start up his own competing staffing business in Pennsylvania and New Jersey. (Compl. P13). Friedell's misrepresentation regarding the sending of the invoices is the basis for Strategic's fraud claim. (Compl. Count I). His failure to perform that duty is the basis of Strategic's breach of an oral employment contract claim. (Compl. Count II).

Friedell's motion seeks dismissal of the complaint for want of personal jurisdiction. See **Fed. R. Civ. P. 12(b)(2)**. He also seeks dismissal of the complaint for failure to state claims upon which relief may be granted. See **Fed. R. Civ. P. 12(b)(6)**. He asserts the following facts in his motion and an accompanying affidavit regarding personal jurisdiction. He conducts

all of his business {*4} within the State of New Jersey and has no contact at all with Pennsylvania in either a business or personal capacity. (Friedell Affidavit P4,5.) In addition, he avers he was the COO of Tuttle Agency of New York, as well as Strategic, and that, while employed at Tuttle, he hired two people to establish a Tuttle office in Pennsylvania. (Friedell Affidavit PP6, 10.) He avers he provided no assistance to these employees. Friedell Affidavit P11. He also avers he had no responsibility for issuing invoices to Strategic's Pennsylvania customers. Friedell Affidavit P12. Importantly, he admits that as COO he visited the Philadelphia office approximately once a month to review its operations, meet with salespeople and visit clients. Friedell Affidavit P19. He denies ever visiting the Norristown office and asserts that he conducted no business in Pennsylvania for his own gain. Friedell Affidavit P20-21. He also denies ever maintaining an office at the Pennsylvania locations. Finally, he denies ever having an employment contract with Tuttle or Strategic, either verbal or written, upon which a breach of contract claim may arise. Friedell Affidavit P23-24.

II. DISCUSSION.

A. Personal {*5} Jurisdiction.

"[I]n reviewing a motion to dismiss under **Rule 12(b)(2)**, we 'must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." **Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 368 (3d Cir. 2002)** (quoting **Carteret Sav. Bank, F.A. v. Shushan, 954 F.2d 141, 142 n.1 (3d Cir. 1992)**). Once a defendant has properly raised a jurisdictional defense, the plaintiff bears the burden of proving, either by sworn affidavits or other competent evidence, sufficient contacts with the forum state to establish personal jurisdiction. **North Penn Gas v. Corning Natural Gas, 897 F.2d 687, 689 (3d Cir. 1990)** (per curiam); **Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 63 (1984)**.

Under the Federal Rules of Civil Procedure, district courts are authorized to exercise personal jurisdiction over non-residents to the extent permissible under the law of the state in which the district court is located. **Fed. R. Civ. P. 4(e)**; **North Penn Gas, 897 F.2d at 689**. In exercising personal jurisdiction, the court must first {*6} ascertain whether jurisdiction exists under the forum state's long-arm jurisdiction statute and then determine whether the exercise of jurisdiction comports with the **due process clause of the Fourteenth Amendment to the Constitution**. **Van Buskirk v. Carey Canadian Mines, Ltd., 760 F.2d 481, 489-90 (3d Cir. 1985)**. This inquiry has been collapsed in Pennsylvania, as the Pennsylvania long-arm statute provides that:

the jurisdiction of the Tribunals of this Commonwealth shall extend to all persons who are not within the scope of **section 5301** (relating to persons) to the fullest extent permitted by the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the constitution of the United States.

**42 Pa. Cons. Stat. Ann. § 5322(b)**; **Van Buskirk at 490**. The reach of the Pennsylvania statute is thus "coextensive" with the due process clause. **North Penn Gas, 897 F.2d at 690**.

Personal jurisdiction may be either specific or general. Specific jurisdiction applies where the plaintiff's cause of action arises from the defendant's forum related activities. **Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)**; {*7} **North Penn Gas, 897 F.2d at 690**. "To establish specific jurisdiction a plaintiff must show that the defendant has minimum contacts with the state 'such that [the defendant] should reasonably anticipate being haled into court there.'" **North Penn Gas, 897 F.2d at 690** (quoting **World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980)**). In an appropriate case, even a single act by a non-resident defendant within the forum state may support jurisdiction. **Burger King Corp., 471 U.S. at 475, n.18**. However, the contacts must not be "random, fortuitous or attenuated." **Id. at 475** (citations omitted). "Jurisdiction is proper . . . where the contacts proximately result from actions by the defendant himself that create a 'substantial connection' with the forum state." **Burger King Corp., 471 U.S. at 475** (quoting **McGee v. Int'l. Life Ins. Co., 355 U.S. 220, 223, 78 S. Ct. 199, 2 L. Ed. 2d 223 (1957)**. Where the defendant has "manifestly . . . availed himself of the privilege of conducting business [in the forum state] . . . it is presumptively not unreasonable to {*8} require him to submit to the burdens of litigation in that forum as well." **Id. at 476**, see also **Mellon Bank (East) PSFS, Nat. Ass'n. v. Farino, 960 F.2d 1217, 1221 (3d Cir. 1992)** (noting that in order to exercise specific jurisdiction, there must be "some act by which the defendant purposely availed itself of the privilege of conducting business within the forum state, thus invoking the benefits and protections of laws" (quoting **Hanson v. Denckla, 357 U.S. 235, 253, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958)**).

General jurisdiction is implicated where the claim arises from the defendant's non-forum related activities. **Helicopteros Nacionales de Colombia S.A. v. Hall, 466 U.S. 408, 414 n.9, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984)**; **Gehling v. St. George's Sch. of Medicine, 773 F.2d 539, 541 (3d Cir. 1985)**. In such a

case the plaintiff "must show significantly more than mere minimum contacts." **Provident Nat'l. Bank v. California Fed. Sav. & Loan Ass'n., 819 F.2d 434, 437 (3d Cir. 1987)**. To assert general jurisdiction, the plaintiff must establish that the defendant's contacts with the forum state were "continuous and substantial." Id. (citing {*9} **Gehling, 773 F.2d at 541** and **Compagnie des Bauxites de Guinea v. Ins. S. Of N. Am., 651 F.2d 877 (3d Cir. 1981)**.

Friedell argues that the court has no personal jurisdiction over him because all of his activities in Pennsylvania were undertaken on behalf of Strategic and, thus, under the corporate shield doctrine, cannot be used to establish personal jurisdiction over him.

Corporate officers and directors may be personally liable for torts that they commit in their corporate capacity. See **Donsco, Inc. v. Casper Corp., 587 F.2d 602, 606 (3d Cir. 1978)**; **Zubik v. Zubik, 384 F.2d 267 (3d Cir. 1967)**; **DaimlerChrysler Corp. v. Askinazi, 2000 U.S. Dist. LEXIS 8740, Civ. A. No. 99-5581, 2000 WL 822449, at *3 (E.D. Pa. June 26, 2000)**; **Kane Communications, Inc. v. Klombers, 1988 U.S. Dist. LEXIS 1985, Civ. A. No. 87 6594, 1988 WL 26462, at *2 (E.D. Pa. Mar. 10, 1988)**. "The corporate shield doctrine, however, provides a degree of protection for officers and directors by limiting the extent to which actions they performed in a corporate capacity may be used to exercise jurisdiction over them individually." **Askinazi, 2000 U.S. Dist. LEXIS 8740, 2000 WL 822449 at *3** {*10} (citing **Marine Midland Bank v. Miller, 664 F.2d 899, 902 (2d Cir. 1981)** and **PSC Prof'l. Servs. Group, Inc. v. American Digital Sys., Inc., 555 F. Supp. 788, 793 (E.D. Pa. 1983)**); see also **Sneberger v. BTI Americas, Inc., 1998 U.S. Dist. LEXIS 18844, 1998 WL 826992 (E.D. Pa. 1998), at *3** (referring to doctrine as "fiduciary shield"). "The rationale for this doctrine is the concern over forcing officers and directors to choose either to 'disassociate themselves from the corporation or defend the propriety of their conduct in a distant forum.'" **Askinazi 2000 U.S. Dist. LEXIS 8740, [WL] at *3** (quoting **PSC, 555 F. Supp. at 793**).

The protections of the corporate shield doctrine are not absolute. See **Fyk v. Roth, 1995 U.S. Dist. LEXIS 1633, Civ. A. No. 94-3826, 1995 WL 57487, at *2 (E.D. Pa. Feb. 10, 1995)**(Rendell, J.). Courts have refused to permit a corporate officer to invoke the shield when the officer was involved in tortious conduct for which he could be held personally liable. See **Elbeco Inc. v. Estrella de Plato, Corp., 989 F. Supp. 669, 676 (E.D. Pa. 1997)**; **Rittenhouse & Lee v. Dollars & Sense, Inc., 1987 U.S. Dist. LEXIS 3061, Civ. A. No. 83-5996, 1987 WL 9665, at *4 n. 6 (E.D. Pa. April 15, 1987)** {*11} (holding that one of the factors a court should consider in the jurisdictional inquiry is the "extent and nature of [the] corporate officer's personal participation in the tortious conduct"). The courts look to the following three factors to determine whether it is proper to consider the defendant's corporate contacts in the jurisdictional inquiry: (1) the defendant's "role in the corporate structure"; (2) "the nature and quality of the [defendant's] forum contacts"; and (3) "the extent and nature of [the defendant's] personal participation in the [allegedly wrongful] conduct." **Rittenhouse & Lee, 1987 U.S. Dist. LEXIS 3061, 1987 WL 9665, at *4 n.6**; see also **Elbeco, 989 F.Supp. 669, 676 (E.D. Pa.1997)** (applying the three factors); **Royal Gist-Brocades N.V. v. Sierra Prods. Ltd., 1997 U.S. Dist. LEXIS 20509, Civ. A. No. 97-1147, 1997 WL 792905, at *6 (E.D. Pa. Dec. 22, 1997)** (same); **Fyk, 1995 U.S. Dist. LEXIS 1633, 1995 WL 57487, at *2** (same). Here, Friedell's role in the corporation was as part of its senior management. He regularly visited Pennsylvania to directly supervise operations in this district. His personal participation in the alleged wrongful conduct engendered {*12} this suit.

Friedell argues that the corporate shield doctrine applies in this case because the entirety of his contacts with Pennsylvania were for the benefit of Tuttle or Strategic and not for his own personal gain. While he admits he occasionally visited the Cottman Avenue location to review its operations, meet salespeople and visit clients, he argues that these visits were for the sole benefit of the plaintiff and his contacts with the Commonwealth "were not purposeful."

In order to meet its burden of proving that Friedell has had sufficient contacts with Pennsylvania to establish personal jurisdiction, Strategic has submitted the affidavit of Theodore Angelus, Strategic's President. Angelus avers that Friedell came to Pennsylvania to personally establish and develop relationships to grow his own staffing business and to increase his own earnings capacity. (Angelus Affidavit P3.) He also asserts that Friedell received a percentage of Strategic's Pennsylvania gross sales based on his contractual agreement, that he regularly traveled to Pennsylvania, and received compensation with respect to his Pennsylvania activities. Id. P4. Friedell also maintained a desk at the Cottman {*13} Avenue location dedicated to his use. Id. P5.

The Angelus Affidavit establishes that Friedell's contacts with Pennsylvania were not solely for the benefit of Strategic, but also for his own personal gain in two distinct respects. The complaint alleges that Friedell sabotaged Strategic's business in order to start a competing staffing business. The Angelus Affidavit

asserts that Friedell was acting on his own behalf in Pennsylvania in connection with that business. The Affidavit also shows that Friedell, even when he wasn't working exclusively to start his own competing concern, personally benefitted from his actions in Pennsylvania since he was entitled to a percentage of his legitimate activities for Strategic. Simply stated, since Friedell worked on commission, his own paycheck was affected by his forum related activities. Coupled with Friedell's admission that he was actually present in the forum, we conclude there are sufficient minimum contacts to exercise personal jurisdiction over Friedell. Defendant's motion, therefore, to the extent it argues this court lacks personal jurisdiction over him, must be denied. n1

- - -Footnotes- - -

n1 Because we conclude that there is personal jurisdiction over Friedell, his argument that venue is inappropriate must fail as well. Under 28 U.S.C. § 1391(a)(3), venue of a case brought under diversity jurisdiction is proper in a district "in which any defendant is subject to personal jurisdiction at the time the action is commenced."

- - -End Footnotes- - -
{*14}

In addition, we find the corporate shield doctrine is inapplicable because of the fraud exception. Friedell's argument that the exception does not apply, and thus the corporate shield doctrine prevents a finding of personal jurisdiction, is essentially the same as his **Rule 12(b)(6)** argument that Strategic cannot state a fraud claim. As we discuss below, Strategic has adequately pled its fraud claim.

(B) Legal Sufficiency of the Plaintiff's claims.

When determining a motion to dismiss pursuant to **Rule 12(b)(6)**, the court may look only to the facts alleged in the complaint and its attachments. **Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994)**. The court must accept as true all well-pleaded allegations in the complaint and view them in the light most favorable to the plaintiff. **Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir. 1985)**. However, the court "need not credit a complaint's 'bald assertions' or 'legal conclusions.'" **California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004)** (citing **Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997)**). {*15} A **Rule 12(b)(6)** motion will be granted when a Plaintiff cannot prove any set of facts, consistent with the complaint, which would entitle him or her to relief. **Ransom v. Marrazzo, 848 F.2d 398, 401 (3d Cir. 1988)**.

1. Breach of Contract.

Friedell maintains that the Complaint fails to state a claim for breach of contract because Strategic cannot establish that an oral employment contract existed. We agree that Strategic has failed to adequately plead a claim for breach of an oral employment contract.

Pennsylvania law recognizes oral contracts for employment, so long as the existence and terms of the oral contract and the parties' manifestation of an intent to be bound are established by "clear and precise" evidence. **Feret v. First Union Corp., 1999 U.S. Dist. LEXIS 570, Civ. A. No. 97-6759, 1999 WL 80374 at \*15 (E.D. Pa. 1999)** (citing **Martin v. Safeguard Scientifics, Inc., 17 F. Supp. 2d 357, 368 (E.D. Pa. 1998)**); **Browne v. Maxfield, 663 F.Supp. 1193,1197 (E.D. Pa. 1987)**(citing **Orchard v. Covelli, 590 F.Supp. 1548, 1556 (W.D. Pa. 1984)** and **Kassab v. Ragnar Benson, Inc., 254 F. Supp. 830, 832 (W.D. Pa. 1966)**). {*16} n2

- - -Footnotes- - -

n2 Under Pennsylvania law, where a contract does not specify the duration of employment it is presumed to be terminable at-will for any reason or no reason. **Cummings v. Kelling Nut Co., 368 Pa. 448, 84 A.2d 323, 325 (Pa. 1951)**; see also **Geary v. United States Steel Corp., 456 Pa. 171, 319 A.2d 174, 176 (Pa. 1974)**.

- - -End Footnotes- - -

Strategic has pled only the following terms of the alleged verbal agreement of employment: (1) Friedell would perform his duties in a professional manner in exchange for his compensation, (Compl. P7); and (2) Friedell's duties included reviewing invoices sent to customers to collect Strategic's fees (Compl. P8). These allegations are legally insufficient to establish the existence of an oral employment contract. The Complaint contains no allegations concerning the usual terms of an enforceable employment agreement, most notably duration and the rate of compensation. The Complaint alleges only that Friedell was to receive compensation. Accordingly, we conclude that {*17} the Complaint fails to state a claim for breach of contract upon which relief may be granted. Defendant's Motion is, therefore, granted with regard to this claim.

(2) Fraud.

Under Pennsylvania law, the elements of a fraud claim are: (1) a representation; (2) which is material; (3) that is falsely made "with knowledge of its falsity or recklessness as to whether it is true or false;" (4) made "with the intent of misleading another into relying on it;" (5) "justifiable reliance on the misrepresentation;" and (6) a resulting injury that is proximately caused by the reliance. **Argent Classic Convertible Arbitrage Fund L.P. v. Rite Aid Corp., 315 F. Supp. 2d 666, 686 (E.D.Pa. 2004)** (citing **Gibbs v. Ernst, 538 Pa. 193, 647 A.2d 882, 889 (Pa. 1994)** and **Sowell v. Butcher & Singer, Inc., 926 F.2d 289, 296 (3d Cir. 1991)**. The burden placed on the plaintiff when pleading fraud is high: the proof must be "clear, precise, and convincing." **Delahanty v. First Penn. Bank, 318 Pa. Super. 90, 464 A.2d 1243, 1252-3 (Pa. Super. Ct. 1983)** (citations omitted). Accordingly, a plaintiff must point to a specific statement that {*18} caused a particular harm. See, e.g., **Sun Co. v. Badger Design & Constructors, 939 F. Supp. 365, 369 (E.D. Pa. 1996)**. We find that Strategic has met this pleading requirement.

The Complaint alleges that Friedell falsely represented that he was complying with all his job requirements, including the sending of the invoices. (Compl. P23.) The Complaint alleges that this representation was material because, as COO, he was responsible for maintaining the fiscal integrity of the company. (Compl. P24.) The Complaint further alleges that this representation was false because unmailed invoices were found in Friedell's desk after he resigned from the company. (Compl. P15, 24.) The Complaint also alleges that Friedell intended to mislead Strategic's owner because he was planning to start a rival business. (Compl. P13, 14.) Strategic alleges that its reliance on the statement was reasonable because Friedell had been doing this work for a substantial time. (Compl. P26.) Finally, Strategic alleges that it was injured because customers failed to remit in excess of $ 600,000 in revenue within ninety days after the invoices were actually sent. (Compl. P21.)

Friedell contends that {*19} Strategic's fraud claim must fail because mere non-performance of an agreement or promise to perform does not constitute fraud. See **Oxford Indus. Inc. v. Luminco, Inc., 1991 U.S. Dist. LEXIS 7099, Civ. A. No. 86-6417, 1991 WL 87928 at *3 (E.D. Pa. 1991)**. We find, however, that Strategic is not merely alleging non-performance of a promise; it is alleging an affirmative misrepresentation of fact, i.e., that the invoices were properly sent to its customers. See **Krause v. Great Lakes Holdings, Inc., 387 Pa. Super. 56, 563 A.2d 1182, 1187 (Pa. Super. Ct. 1989)** (cause of action for fraud "must allege a misrepresentation of past or present material fact"). We find, therefore, that the Complaint alleges a claim for fraud upon which relief may be granted and Defendant's motion to dismiss is, accordingly, denied as to this claim. n3

- - -Footnotes- - -

n3 Friedell also argues that Strategic's fraud claim is "unsubstantiated" because it "presents no clear and convincing evidence that Defendant engaged in any action that rises to the level of fraud." He also argues he was never responsible for sending the invoices. Merely denying an allegation made by the plaintiff is not a proper argument on a **Rule 12(b)(6)** motion. Rather, we must take as true the well-pled allegations. In addition, a **Rule 12(b)(6)** motion is not a proper way to argue lack of evidence. Accordingly, we find that the fraud claim was properly pled and must survive the motion to dismiss.

- - -End Footnotes- - -
{*20}

An appropriate order follows.

**ORDER**

**AND NOW**, this 14th day of September, 2006, upon consideration of Defendant Harris Friedell's Motion to Dismiss (Docket Entry No. 3), and Plaintiff's Response thereto, **IT IS HEREBY ORDERED** that said Motion is **GRANTED IN PART AND DENIED IN PART**. The Motion is **GRANTED** to the extent it seeks dismissal of Plaintiff's claim for breach of contract. The Motion is **DENIED** in all other respects.

BY THE COURT:

John R. Padova, J.