# EXHIBIT V

Not Reported in F.Supp.2d
(Cite as: 1999 WL 1073636 (E.D.Pa.))

Page   3

Only the Westlaw citation is currently available.

United States District Court, E.D. Pennsylvania.

**ELECTRO MEDICAL EQUIPMENT LTD.**
v.
**HAMILTON MEDICAL AG and HAMILTON MEDICAL, INC.,**

**No. CIV A 99-579.**

Nov. 16, 1999.

John P. Donohue, Jr., Laura Genovese Miller, Woodcock, Washburn, Kurtz, Mackiewicz & Norris, Philip S. Johnson, Woodcock, Washburn, Kurtz, Mackiewicz & Norris, Bonnie G. Klein, Woodcock, Washburn, Kurtz, Mackiewicz & Norris, LLP, Eric H. Vance, Woodcock Washburn Kurtz Mackiewicz & Norris, Phila, for E.M.E. (Electro Medical Equipment) Ltd., Plaintiffs.

David C. Franceski, Jr., Stradley Ronon Stevens & Young, Nicholas Deenis, Stradley, Ronon, Stevens & Young, Jonathan F. Bloom, Stradley, Ronon, Stevens & Young, LLP, Philadelphia, for Hamilton Medical AG, Hamilton Medical, Inc., Defendants.

## MEMORANDUM

O'NEILL, J.

**\*1** Presently before the Court is the Motion of defendants Hamilton Medical AG and Hamilton Medical. Inc. to: 1) dismiss the complaint against Hamilton Medical AG under Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction; 2) dismiss the complaint as to both defendants under Fed.R.Civ.P. 12(b)(3) for improper venue; 3) in the alternative, transfer the action to the United States District Court for the District of Nevada under 28 U.S.C. § 1404(a); 4) dismiss the complaint against Hamilton Medical AG under Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction; and, 5) dismiss plaintiff's breach of contract claim against Hamilton Medical, Inc. under Fed.R.Civ.P. 12(b)(6). For the reasons stated below, defendants' motion is DENIED, except that defendants' motion under Rule 12(b)(6) is DENIED WITHOUT PREJUDICE.

## BACKGROUND AND FINDINGS OF FACT

Plaintiff Electro Medical Equipment Ltd. ("EME") is a British company that manufactures the INFANT FLOW nCPAP, a medical device used in hospitals to assist the breathing of premature low birth-weight babies.

In 1994, EME entered into a contract with defendant Hamilton Medical AG ("Hamilton-Switzerland") for distribution of the INFANT FLOW system, EME's purpose being to obtain access to the U.S. market via defendant Hamilton Medical, Inc. ("Hamilton-Nevada"), a wholly owned subsidiary of Hamilton-Switzerland. [FN1] The agreement gave Hamilton-Switzerland the exclusive right to distribute the INFANT FLOW in the United States and in virtually every other industrialized nation. The agreement required that all goods be marked with EME's trademark, "INFANT FLOW," and that Hamilton-Switzerland diligently promote the mark. The agreement also allowed Hamilton-Switzerland to distribute a "Hamilton Version" of the product, including a product name chosen by it. The product distributed in the U.S. therefore bore the label "ALADDIN TM INFANT FLOW TM." EME was dissatisfied with the sales of the product, and did not renew the contract after its initial term. Thereafter, in October 1998 defendants began selling a new nCPAP system under the name ALADDIN II, which has been held out as the "next generation ALADDIN nCPAP."

> FN1. This statement should not be construed as a finding of fact or law regarding the applicability of the contract to Hamilton-Nevada.

On February 3, 1999, plaintiff filed the complaint in this action, alleging, inter alia, that the marketing and sale of the ALADDIN II constitutes trademark infringement, unfair competition, and false destination of origin under the Lanham Act. On March 26, 1999, plaintiff filed a motion for preliminary injunction. In turn, on March 31, 1999, defendants filed this Motion. The Court has deferred consideration of the motion for preliminary injunction pending resolution of the jurisdiction and venue issues.

In this Circuit, "[o]nce a jurisdictional defense has been properly raised, the plaintiff bears the burden of demonstrating contacts with the forum state

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Wo



sufficient to give the court in personam jurisdiction." Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 63 (3d Cir.1984), quoting Compagnie des Bauxites de Guinee v. L'Union, 723 F.2d 357, 362 (3d Cir.1983). The plaintiff must then "sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence." Id. at 66 n. 9. It is therefore appropriate for the Court to make findings of fact relevant to the personal jurisdiction issue based upon the evidence that has been submitted by all parties. [FN2] North Penn Gas Co. v. Corning Natural Gas Corp., 897 F.2d 687, 688 (3d Cir.1990) (per curiam).

> FN2. However, the findings of fact are made for the purposes of this Motion only, and parties are free to contest them at trial.

*2 The Court finds the following:

1. EME is a British corporation with its principal place of business in East Sussex, England. Comp. ¶ 7.

2. Hamilton-Nevada is a Nevada corporation with its principal place of business in Reno, Nevada. Thompson Dec. ¶ 2.

3. Hamilton-Switzerland is a Swiss corporation with its principal place of business in Rhazuns, Switzerland. Thompson Dec. ¶ 3.

4. Hamilton-Nevada is a wholly owned subsidiary of Hamilton-Switzerland. Thompson Dec. ¶ 3.

5. Hamilton-Nevada is a distributor of various medical devices throughout the United States. Thompson Dec. ¶ 5.

6. From its inception in 1984 to the present, Hamilton-Nevada has conducted and operated its distribution business from its offices in Reno, Nevada. Thompson Dec. ¶ 5.

7. Starting in August 1998, Hamilton-Nevada began to sell the ALADDIN II in the United States on behalf of Hamilton-Switzerland. Thompson Dec. ¶ 25.

8. Hamilton-Switzerland is responsible for labeling the ALADDIN II, and was also involved in naming the product. Thompson Dep. at 38, 57.

9. Since 1994, Hamilton-Nevada has employed seven sales representatives in cities throughout the United States, including Downingtown, Pennsylvania. Thompson Dec. ¶ 6.

10. The Hamilton-Nevada sales representative in Downingtown, Pamela Howard, is directly involved in the marketing and sale of the ALADDIN II in Pennsylvania. Howard Dep. at 16.

11. Hamilton-Nevada also has an independent distributor called Critical Care Concepts Inc. ("3CI") located in Ephrata, Pennsylvania. Denlinger Dep. at 23.

12. 3CI has the exclusive right to distribute Hamilton-Nevada's products in Pennsylvania east of Johnstown. Denlinger Dep. at 23.

13. The 3CI facility in Ephrata employs approximately 20 people, all of whom have been involved with the sale and marketing of the ALADDIN II at some point in time. Denlinger Dep. at 64.

14. Pamela Howard is directly involved in training 3CI personnel in how to use and sell the ALADDIN II. Howard Dep. at 91-92.

15. From August 1998 to the present, approximately 3% of Hamilton-Nevada's sales of the ALADDIN II occurred in the Eastern District of Pennsylvania. Thompson Dec. ¶ 26.

## DISCUSSION

A. Personal Jurisdiction

Under Fed.R.Civ.P. 4(k), a district court's personal jurisdiction is usually coextensive with that of courts of general jurisdiction in the state where the district court sits. See Fed.R.Civ.P. 4(k)(1)(A). See also Fed.R.Civ.P. 4(k)(1)(B), (C), (D), and 4(k)(2) (exceptions to the general rule of 4(k)(1)(A)) . [FN3] The Pennsylvania long-arm statute allows courts to assert jurisdiction to the fullest extent permitted by the Due Process Clause of the Fourteenth Amendment. See 42 Pa.C.S.A. § 5322(b); Mellon Bank (East) PSFS v. Farino, 960 F.2d 1217, 1221 (3d Cir.1992). Therefore, the Court may assert personal jurisdiction over Hamilton-Switzerland if has sufficient "minimum contacts" with Pennsylvania, such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945), quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)).

> FN3. Plaintiff has claimed in the alternative that personal jurisdiction over Hamilton-Switzerland exists under Fed.R.Civ.P. 4(k)(2). Rule 4(k)(2) only applies when jurisdiction over a defendant is "consistent with the Constitution and laws of the

(C) 2006 Thomson/West. No Claim to Orig. U.S. Govt. Wo



Not Reported in F.Supp.2d
(Cite as: 1999 WL 1073636, *2 (E.D.Pa.))

United States," but the defendant "is not subject to the jurisdiction of the courts of general jurisdiction of any state." Rule 4(k)(2) is irrelevant here because the Court holds that Hamilton-Switzerland is subject to jurisdiction in Pennsylvania, and because the defendant admits that it is amenable to jurisdiction in Nevada. See Defendants' Reply Mem. at 4.

**\*3** Courts have applied the International Shoe standard to find that personal jurisdiction is constitutional in two different situations. "General jurisdiction," i.e. jurisdiction for any purpose, exists when a defendant's contacts with the forum state are "continuous and systematic." Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984). "Specific jurisdiction" exists when a defendant's contacts with the forum state are not "continuous and systematic," but the cause of action "arises out of or relates to" the defendant's limited contacts. Id. at 414.

In this case, Hamilton-Switzerland's contacts with Pennsylvania are limited; defendant manufactures a product and maintains a wholly-owned subsidiary for the explicit purpose of marketing that product in the United States generally and Pennsylvania specifically. These limited contacts are not "continuous and systematic," and are therefore insufficient to maintain a finding of general jurisdiction. However, plaintiff's cause of action arises out of the marketing and sale of the ALADDIN II, which is manufactured by Hamilton-Switzerland and sold in Pennsylvania by the company's wholly-owned subsidiary, Hamilton-Nevada. Therefore, the Court may be able to assert specific jurisdiction.

Whether the assertion of specific jurisdiction is constitutional in this case requires the Court to consider the "somewhat murky" area of personal jurisdiction known as the "stream of commerce" theory. Hershey Pasta Group v. Vitelli-Elvea Co., Inc., 921 F.Supp. 1344, 1346-47 (M.D.Pa.1996).

1.

The first notable appearance of the stream of commerce theory was the Illinois Supreme Court's decision in Gray v. Am. Radiator & Standard Sanitary Corp., 176 N.E.2d 761 (Ill.1961). In that case, "the defendant's only contact with [Illinois was] that a product manufactured in Ohio was incorporated in Pennsylvania into a hot water heater which in the course of commerce was sold to an Illinois consumer." Id. at 764. The product, a safety valve, subsequently caused an explosion which injured the plaintiff, a Illinois resident. Id. at 762. The court concluded that the assertion of personal jurisdiction based upon that single connection with the forum state was consistent with the Due Process Clause. Id. at 766. As the court put it, "if a corporation elects to sell its products for ultimate use in another State, it is not unjust to hold it answerable there for any damage caused by defects in those products." Id.

The stream of commerce theory made its first appearance in the Supreme Court's jurisprudence in World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286 (1980), a case that began when a couple from New York purchased an Audi automobile from a local car dealership. Id. at 288. A year later, they decided to move from New York to Arizona. Id. While driving to that new home and passing through Oklahoma, their car was struck in the rear by another car, causing a fire that severely burned the wife and her two children. Id. The couple subsequently brought a products liability suit in Oklahoma against the manufacturer and distributors of the car. Id. The Court was therefore faced with the question of whether an Oklahoma court could assert jurisdiction over a defendant whose only connection to the forum state was that a car sold in New York to New York residents was involved in an accident in Oklahoma. Id. at 287.

**\*4** The Court concluded that jurisdiction did not exist, but in dicta gave support to the stream of commerce theory. The Court reasoned that while the defendant could foresee that the automobile might be driven to Oklahoma at some point, it could not reasonably foresee that such a contact would subject it to jurisdiction in the courts of that state. Id. at 295-96. However, the Court was careful to contrast that situation with the classic stream of commerce case in which the cause of action "arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its products in other States." Id. at 297. "The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." Id. at 297-98. The

(C) 2006 Thomson/West. No Claim to Orig. U.S. Govt. Wo



Not Reported in F.Supp.2d
**(Cite as: 1999 WL 1073636, \*4 (E.D.Pa.))**

Court then concluded this discussion by approvingly citing the Illinois Supreme Court's decision in Gray.

World-Wide Volkswagen appeared to endorse the steam of commerce theory, but the theory's constitutional pedigree remained uncertain because the relevant discussion was dicta. Unfortunately, the Court's next decision to address the stream of commerce theory did little to resolve the uncertainty. In Asahi Metal Indus. Co., Ltd. v. Superior Court of California, 480 U.S. 102 (1987), a tire valve manufactured by a company in Japan was sold to a company in Taiwan, who then incorporated the valve into a tire that was sold in the United States. Id. at 106. The tire allegedly caused an accident in California. Id. at 105-06. The accident victim sued the tire manufacturer, who then filed a cross-complaint seeking indemnification from the valve manufacturer. Id. at 106. The plaintiff's claims were eventually settled and dismissed, so all that remained for the trial court was the indemnification claim. Id. The Court framed the issue to be decided as whether "the mere awareness on the part of a foreign defendant that the components it manufactured, sold, and delivered outside the United States would reach the forum State in the stream of commerce" is a sufficient basis for personal jurisdiction. Id. at 105.

The Court unanimously agreed that personal jurisdiction did not exist, but evenly split on the viability of the stream of commerce theory. A plurality of four Justices, lead by Justice Brennan, accepted the stream of commerce theory wholeheartedly:

> A defendant who has placed goods in the stream of commerce benefits economically from the retail sale of the final product in the forum State, and indirectly benefits from the State's laws that regulate and facilitate commercial activity ... Accordingly, most courts and commentators have found that jurisdiction premised on the placement of a product into the stream of commerce is consistent with the Due Process Clause.

\*5 Id. at 117 (Brennan, J., concurring).

Another plurality of four Justices, led by Justice O'Connor, was less sympathetic to the stream of commerce theory. Justice O'Connor's plurality found that mere awareness that a product will wind up in a given state is not evidence of a purposeful intent to avail oneself of that state's laws. Id. at

109, citing Hanson v. Denckla, 357 U.S. 235, 253 (1958). Therefore, some "additional conduct" that evidences such an intent is necessary to make the assertion of jurisdiction constitutional:

> The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State. Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State.

Id. at 112.

Although there was an even split as to the viability of the stream of commerce theory, [FN4] the Court nonetheless determined that personal jurisdiction over Asahi was unconstitutional. Id. at 115-16. The Court reasoned that even if the stream of commerce theory were sufficient to establish minimum contacts, the exercise of personal jurisdiction must be "reasonable." Id. at 113. The determination of reasonableness rests on several factors, including the burden on the defendant, the interests of the forum state, and the plaintiff's interest in obtaining relief. Id. at 114. The Court found that the burden on Asahi was great because of the "unique burdens placed upon one who must defend oneself in a foreign legal system." Id. In addition, the interests of the forum state were slight because all that remained was an indemnification claim between two foreign corporations. Id. Therefore, the assertion of personal jurisdiction was unreasonable and unconstitutional.

> FN4. The holdout was Justice Stevens, who refused to join either plurality's discussion of the stream of commerce theory because the determination that jurisdiction was "unreasonable" was sufficient to decide the case. Id. at 121.

Asahi further confused an already unsettled area of the law. In the wake of Asahi, three different approaches have developed for applying the stream of commerce theory. Some courts have explicitly adopted the view of Justice Brennan's plurality. See Barone v. Rich Bros. Interstate Display Fireworks, 25 F.3d 610, 613-15 (8th Cir.1994); Ruston Gas

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Wo



Not Reported in F.Supp.2d

(Cite as: 1999 WL 1073636, *5 (E.D.Pa.))

Page   7

Turbines, Inc. v. Donaldson Co., Inc., 9 F.3d 415, 420 (5th Cir.1993) (rejecting Justice O'Connor's "stream-of-commerce-plus" theory); Dehmlow v. Austin Fireworks, 963 F.2d 941, 947 (7th Cir.1992). Other courts have explicitly adopted the view of Justice O'Connor's plurality. See Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 683 (1st Cir.1992); Tobin v. Astra Pharm. Prods. Inc., 993 F.2d 528, 543 (6th Cir.1993). Other courts have avoided a definitive ruling on the issue. See Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1566 (Fed.Cir.1994); Vermeulen v. Renault, U.S.A., Inc., 985 F.2d 1534, 1548 (11th Cir.1993).

*6 The Third Circuit is among the last group of courts. In Renner v. Lanard Toys Ltd., 33 F.3d 277 (3d Cir.1994), the Court surveyed the post-Asahi cases and declined to choose between Justice Brennan's and Justice O'Connor's plurality. Instead, the Court laid down two principles to guide the application of the stream of commerce theory: 1) there must be some evidence of "purposeful availment" by the defendant of the forum state; and 2) the absence of direct sales or shipments into the forum is not dispositive. Id. at 282.

2.

The stream of commerce theory establishes that this Court has personal jurisdiction over Hamilton-Switzerland.

As a preliminary matter, it should be noted that although Gray, World-Wide Volkswagen, and Asahi were products liability cases, they apply with equal force to the facts of this case. In Max Daetwyler Corp. v. R. Meyer, 762 F.2d 290, 298 (3d Cir.1985), the Court noted that the stream of commerce theory "evolved to sustain jurisdiction in products liability cases" and it is "debatable whether similar public policies are at stake" in other contexts. However, other courts--including other panels of the Third Circuit--have applied the stream of commerce theory to intellectual property disputes without hesitation. See Horne v. Adolph Coors, Co., 684 F.2d 255, 260 (3d Cir.1982) (applying the stream of commerce theory to a patent infringement suit); Beverly Hills, 21 F.3d at 1566-67 (same); Dakota Indus., Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1390-91 (8th Cir.1991) (applying the stream of commerce theory to a trademark infringement suit); Stabilisierungsfonds Fur Wein v.

Kaiser Stuhl Wine Distribs. Pty. Ltd., 647 F.2d 200, 203 (D.C.Cir.1981) (same); Honeywell Inc. v. Metz Apparatewerke, 509 F.2d 1137, 1142 (7th Cir.1975) (applying the stream of commerce theory to a patent infringement suit and finding there is "no effective legal or theoretical difference" between patent infringement and the tortious act committed in Gray ); Hershey Pasta Group v. Vitelli-Elvea Co., Inc., 921 F.Supp. 1344, 1350 (M.D.Pa.1996) (applying the stream of commerce theory to a Lanham Act suit); Allen Organ Co. v. Kawai Musical Instruments Mfg. Co., 593 F.Supp. 107 (E.D.Pa.1984) (applying the stream of commerce theory to a patent infringement suit).

Moreover, the Court need not decide which of the plurality opinions in Asahi represents the rule for this case because Hamilton-Switzerland is amenable to personal jurisdiction in this Court under either standard. Cf. Beverly Hills, 21 F.3d at 1566 ("We need not join [the debate over which Asahi plurality governs] since we find that, under either version of the stream of commerce theory, plaintiff made the required jurisdictional showing.").

Hamilton-Switzerland concedes that it manufactures the ALADDIN II, a product that is marketed and sold in Pennsylvania. In fact, approximately 3% of the U.S. sales of the product occur in the geographic area of the Eastern District of Pennsylvania. Plaintiff alleges that those marketing activities and sales violate the Lanham Act. As Justice Brennan put it in his concurring opinion in Asahi, the defendant has placed goods in the stream of commerce and "benefits economically from the retail sale of the final product in the forum State." Asahi, 480 U.S. at 117. According to Justice Brennan's plurality, this alone is enough to justify personal jurisdiction in this Court.

*7 Justice O'Connor's plurality would require the Court to also find additional conduct that shows defendant purposefully directed the product toward this state. Id. at 112. The record is replete with evidence of such additional conduct. For example, Justice O'Connor's plurality suggested that "designing the product for the market in the forum State" would constitute additional conduct. Id. Here, defendants concede that Hamilton-Switzerland, not Hamilton-Nevada, was responsible for labeling the ALADDIN II, and was involved in naming the product. Justice O'Connor also suggested that

(C) 2006 Thomson/West. No Claim to Orig. U.S. Govt. Wo



Not Reported in F.Supp.2d
(Cite as: 1999 WL 1073636, *7 (E.D.Pa.))

Page   8

"marketing the product through a distributor who has agreed to serve as the sales agent in the forum State" would constitute additional conduct. Id. Here, Hamilton-Switzerland's conduct is similar, but more strongly evidences an intent to serve the relevant market than Justice O'Connor's example. Hamilton-Switzerland maintains a wholly owned subsidiary, Hamilton-Nevada, explicitly for the purpose of serving the U.S. market. That subsidiary employs a sales representative, Pamela Howard, with a home-office in Pennsylvania. The subsidiary also has an independent distributor, 3CI, in Ephrata, Pennsylvania.    3CI employs approximately 20 people, all of whom have been involved in the marketing and sale of the ALADDIN II at some point in time. The fact that Hamilton-Switzerland markets the ALADDIN II through a subsidiary rather than through a distributor (as Justice O'Connor suggested) strengths its ties with Pennsylvania. This is sufficient "additional conduct" to justify personal jurisdiction under the "stream-of-commerce-plus" test.

It is also clear that under the standards set out by the Asahi Court, asserting personal jurisdiction over Hamilton-Switzerland is reasonable in light of the minimum burden on the defendant, the strong interests of the forum state, and the plaintiff's interest in obtaining relief.

In Asahi, the Court found the burden on the defendant to be great because the "unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." Id. at 114. In this case, however, the defendant has stipulated that it is amenable to personal jurisdiction in Nevada. See Defendants' Reply Mem. at 4. Therefore, it concedes that it will have to undergo the "unique burden" of defending itself in a foreign court regardless of whether the Court finds it is amenable to personal jurisdiction here. Although the incremental burden of defending itself in Pennsylvania versus Nevada is relevant to the motion for transfer under 28 U.S.C. § 1404(a), discussed below, it is not relevant to a due process inquiry of whether jurisdiction is "reasonable."

Moreover, this Court agrees with the court in Hershey Pasta. [FN5] In that case, the court used the ' 'stream-of-commerce-plus" theory to assert

personal jurisdiction over foreign defendants who were accused of violating the Lanham Act. The court found that "because the unfair competition is alleged to have occurred in Pennsylvania, the Commonwealth has an interest [in] having the litigation occur here." Hershey Pasta, 921 F.Supp. at 1350. Similarly, plaintiff has a strong interest in obtaining relief because "[t]he Lanham Act was created to provide a special and limited unfair competition remedy for business competitors." Id. Therefore, this Court may reasonably and constitutionally assert jurisdiction over Hamilton-Switzerland.

> FN5. Hershey Pasta has been cited by both plaintiff and defendants in this case as support for their respective positions. However, it is clear that Hershey Pasta supports the Court's holding that it has personal jurisdiction over Hamilton-Switzerland. Like this Court, the court in Hershey Pasta concluded that because the Lanham Act claims arose out of the sale and marketing of a product in this state, the court should look to the stream of commerce theory of personal jurisdiction. After surveying Asahi, Renner, and other stream of commerce cases, the court applied the "stream of commerce plus" approach and found that the defendants had engaged in the additional conduct necessary to evidence an intent to avail itself of the Pennsylvania market. The additional conduct in that case was, in essence, manufacturing and labeling its product for sale in the United States and participating in the defense of U.S. co-defendants during a preliminary injunction hearing. Hershey Pasta, 921 F.Supp. at 1349. Like the defendants in Hershey Pasta, Hamilton-Switzerland also labels its product for the U.S. market. Additionally, it maintains a wholly owned subsidiary in the United States in order to effect sales in this country, and utilizes an independent distributor and an employee of the subsidiary to make sales in Pennsylvania. Therefore, the additional conduct here is greater than in Hershey Pasta.

*8  Hamilton-Switzerland argues unpersuasively that the corporate veil insulates it from personal jurisdiction in this Court. Since this is the crux of defendants' argument, the Court will quote it at length:

Hamilton-Switzerland did not sell its products into Pennsylvania. Hamilton-Switzerland sold its products to Hamilton-Nevada in Reno, who in



turn sold products to its independent distributor in Pennsylvania, and then the independent distributor sold the products to end-users such as medical facilities. Indeed, all of Hamilton-Switzerland's sales of ALADDIN II products in the United States were to Hamilton-Nevada in Reno, Nevada E.M.E. also relied on other activities of Hamilton-Nevada, not of Hamilton-Switzerland, such as employing seven sales representatives throughout the United States, one of whom resides and works in Downingtown, Pennsylvania; and using a Pennsylvania distributor, 3CI, to sell ALADDIN II--to support its personal jurisdiction argument. These facts, while perhaps indicative of personal jurisdiction over Hamilton-Nevada, have no bearing on whether personal jurisdiction exists over Hamilton-Switzerland.
Defendants' Reply Mem. at 5-6.

Hamilton-Switzerland provides no support for its sweeping conclusion that actions undertaken by its wholly-owned subsidiary "have no bearing" on whether it is amenable to personal jurisdiction in this Court. Although not cited by the defendants, there is a line of cases that deal with the relationship between a corporate parent and subsidiary when a plaintiff seeks general jurisdiction over the parent based solely upon the presence of the subsidiary in the forum and/or the service of process on the subsidiary. See Gallagher v. Mazda Motor of Am., Inc., 781 F.Supp. 1079, 1082-84 (E.D.Pa.1992) (discussing three circumstances under which a court can "impute the jurisdictional contacts of the subsidiary to the parent" in such cases). See also 4 Wright & Miller, Federal Practice and Procedure 2d § 1069 (1987). Those cases do not apply to this situation because the stream of commerce theory is a species of specific jurisdiction (not general jurisdiction), and because Hamilton-Switzerland has been served in its own right pursuant to the Hague Convention. See Plaintiff's Mem. at 2 (Exhibit 1). Moreover, even if those cases did apply, the corporate veil is not inviolate in those situations. The jurisdictional contacts of the subsidiary may, for example, be imputed to the parent if "the subsidiary was either established for, or engaged in, activities that, but for the existence of the subsidiary, the parent would have to undertake itself." Gallagher, 781 F.Supp. at 1084. Such activities include marketing and distributing a product on behalf of the parent. Id. at 1084-85 (citing examples). If those cases were relevant, this

exception would clearly apply, and jurisdiction over Hamilton-Switzerland would be appropriate.

Moreover, there is substantial authority that would hold Hamilton-Switzerland's corporate organization and distribution system completely irrelevant to the jurisdictional inquiry. See Allen Organ, 593 F.Supp. at 112 ("[T]he fairness requirements of due process do not extend so far as to permit a manufacturer to insulate itself from the reach of the forum state's longarm rule by using an intermediary or by professing ignorance of the ultimate destination of its products."); Copiers Typewriters Calculators, Inc. v. Toshiba Corp., 576 F.Supp. 312, 320 (D.Md.1983) ("Due Process does not require that the contacts [the foreign] manufacturer has with the forum state be directly created and maintained by the manufacturer."); Lasky v. Continental Prods. Corp., 569 F.Supp. 1225, 1227 (E.D.Pa.1983) ("The fact that Nissan conducts its marketing and distribution in the United States through an independent distribution system does not shield it from the imposition of in personam jurisdiction in Pennsylvania."); United States v. Toyota Motor Corp., 561 F.Supp. 354, 359 (C.D.Cal.1983) ("Recent decisions ... emphasize that purposeful exploitation of the forum's market rather than the means through which this is carried out is the relevant fact."); Graco, Inc. v. Kremlin, Inc., 558 F.Supp. 188, 193 (N.D.Ill.1982) ("Because SKM receives substantial economic benefit from its regular activity within the state, it can be said to be 'doing business' here even though its dealings here are indirect."). See also Renner, 33 F .3d at 282 ("[T]he absence of direct sales or shipments into the forum is not dispositive."); 42 Pa.C.S.A. § 5322(a)(1)(iii) ("shipping of merchandise directly or indirectly into or through this Commonwealth" is a basis for personal jurisdiction) (emphasis added); Murray E. Knudsen, Comment, Jurisdiction Over a Corporation Based on the Contacts of a Related Corporation: Time for a Rule of Attribution, 92 Dick. L.Rev. 917, 934 (1998) ("The Supreme Court decision in World-Wide Volkswagen Corp. v. Woodson caused many courts to finally realize that the means through which business is conducted is irrelevant for jurisdictional purposes."); Id. at 939 ("The manufacturer's economic relationship with a state does not differ depending on whether it distributes its products through a company division, a subsidiary, or an independent distributor, and nor

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Wo



Not Reported in F.Supp.2d
**(Cite as: 1999 WL 1073636, *8 (E.D.Pa.))**

should its amenability to suit.").

*9 Asahi dramatically illustrates this point. Justice Brennan's plurality found that personal jurisdiction over Asahi was constitutional even though the company sold its tire valves to an independent third party in Taiwan who incorporated the valves into tires in that country and later sold the tires in the United States. Compared to Asahi, Hamilton-Switzerland's conduct is more directly focused on the forum because: 1) the ALADDIN II is manufactured whole, not designed for incorporation into another product; 2) the ALADDIN II is sold to a wholly owned subsidiary, not an independent third party; and, 3) Hamilton-Switzerland ships the product directly to the United States. Similarly, Justice O'Connor's plurality suggested that additional conduct necessary to justify the assertion of personal jurisdiction includes "marketing the product through a distributor who has agreed to serve as the sales agent in the forum state." Asahi, 480 U.S. at 112. Instead, Hamilton-Switzerland markets the product through a wholly-owned subsidiary who has agreed to serve as a sales agent in the forum state.

If the Court allowed Hamilton-Switzerland to invoke the corporate veil to evade the stream of commerce analysis, foreign corporations would have an easy shield against amenability to suit in the courts of this country. Companies could limit their amenability to jurisdiction to a single state by establishing a corporate subsidiary and making sure that all of the products flow through that subsidiary, as Hamilton-Switzerland has done here. In fact, taken to its logical extreme, Hamilton-Switzerland's position would allow a foreign manufacturer to avoid jurisdiction in this country entirely if the hand-off from parent to subsidiary happened outside of the United States. That result was contemplated and rejected in Asahi, and is incompatible with the modern trend in personal jurisdiction cases.

Personal jurisdiction raises due process concerns because a defendant should be able to order his affairs in such a way as to avoid jurisdiction in a particular forum if he so desires. Cf. World-Wide Volkswagen, 444 U.S. at 297 ("When a corporation purposefully avails itself of the privilege of conducting activities within the forum State ... it has clear notice that it is subject to suit there, and can act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to customers, or, if the risks are too great, severing its connection with the State."). If Hamilton-Switzerland wanted to avoid personal jurisdiction in the Commonwealth of Pennsylvania, it could have directed its wholly-owned subsidiary to break ties with the independent distributor who sells the ALADDIN II in Pennsylvania, fire the employee who lives and works here, and cease directing products into this market. Instead, it has maintained Hamilton-Nevada for the explicit purpose of selling products into the United States generally and Pennsylvania specifically.

*10 Rather than placing its products into the "stream of commerce," Hamilton-Switzerland has used its wholly-owned subsidiary to create a "canal of commerce" into this state. In so doing, it has rendered itself amenable to suit in this Court.

B. Venue

Since both defendants are amenable to personal jurisdiction in this Court, [FN6] the question of venue is relatively straightforward. The general venue statute provides that "a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time action is commenced." See 28 U.S.C. § 1391(c). Therefore, both defendants are said to reside in this district (and hence this state) and venue here is proper under 28 U.S.C. § 1391(b)(1), which provides that a non-diversity case may be brought in "a judicial district where any defendant resides, if all defendants reside in the same State."

> FN6. Hamilton-Nevada has not contested its amenability to personal jurisdiction in this Court, and the previous analysis would clearly make it at least as amenable as Hamilton-Switzerland.

C. Transfer to the U.S. District Court for the District of Nevada

In the alternative, defendants have moved the Court to transfer this case to the U.S. District Court for the District of Nevada under 28 U.S.C. § 1404(a), which provides that: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

(C) 2006 Thomson/West. No Claim to Orig. U.S. Govt. Wo



The defendant bears the burden of proof in establishing the necessary factors for a transfer under Section 1404(a). See Plum Tree, Inc. v. Stockment, 488 F.2d 754, 756 (3d Cir.1973). This burden is usually met through "affidavits, depositions, stipulations, or other documents." Id. Examples of such documents include:

> [A] list of the names and addresses of witnesses whom the moving party plans to call and affidavits showing the materiality of the matter to which these witnesses will testify, statements by the moving parties of the business difficulties or personal hardships that might result from their having to defend against the suit in the district where it was originally brought, affidavits concerning the relative ease of access to sources of documentary evidence, and other materials where appropriate.

Id. n. 2.

Moreover, although the district court is not always required to make findings of fact in support of the motion to transfer, the court should "set forth the factors upon which the court relied in deciding the motion." Id., quoting Solomon v. Continental Am. Life Ins. Co., 472 F.2d 1043, 1048 (3d Cir.1972).

The defendants have clearly failed to meet the burden of establishing that a transfer is appropriate in this case. First, defendants have, in effect, tried to shift the burden of proof to the plaintiff on the transfer issue. See, e.g., Defendants' Reply Mem. at 14 ("E.M.E. Has Failed to Demonstrate Why the Action, if Not Dismissed for Improper Venue, Should Remain in This District."). Second, defendants have submitted no affidavits, depositions, stipulations or other documents in support of their motion for transfer. Instead, they have relied on the fact that Hamilton-Nevada "maintains all of its core employees, except for certain of its sales staff, in Reno, and all of the company's documents are located in its offices in Reno." See Defendants' Mem. at 16. This fact weighs in favor of transfer, but on the present record the Court cannot determine whether it is likely that any of the employees in Nevada will be called as witnesses, or what volume of documents would need to be copied and transferred here.

**\*11** Defendants have failed to meet their burden of proving that transfer is appropriate; therefore, the

motion under 28 U.S.C. § 1404(a) will be denied.

### D. Subject Matter Jurisdiction

Defendants next argue that the Court lacks subject matter jurisdiction because plaintiff is attempting to apply the Lanham Act extraterritorially. Defendants explain this argument as follows:

> E.M.E. brings this action under the Lanham Act for alleged infringement concerning sales of the ALADDIN II. Plaintiff's complaint by its terms, however, is not restricted to sales occurring in the United States ... Because the operative facts complained of in E.M.E.'s complaint as to Hamilton-Switzerland are not limited to acts occurring in this country, but might be construed as alleging extraterritorial violations, E.M.E. has no standing in this or any other federal forum to sue Hamilton-Switzerland under either the Lanham Act or state law for such alleged violations.

See Defendants' Mem. at 17.

This argument fails for three reasons. First, as plaintiff points out, the complaint makes no facial claim for relief based upon extraterritorial behavior; therefore, this argument is conjectural and irrelevant to the facts at hand. Second, there is no basis for denying subject matter jurisdiction based on how the complaint "might be construed." Plaintiffs are obviously under no obligation to affirmatively disavow every counterfactual that would render the complaint jurisdictionally defective. Finally, defendants ignore the fact that the Lanham Act can often be applied extraterritorially. See Steele v. Bulova, 344 U.S. 280, 288 (1952) (holding there is no "blanket immunity [for] trade practices which radiate unlawful consequences here, merely because they were initiated or consummated outside the territorial limits of the United States"); American Rice, Inc. v. Arkansas Rice Growers Coop, Ass'n, 701 F.2d 408, 414 (5th Cir.1983) (discussing the factors relevant to the determining when the Lanham Act can be applied extraterritorially); Vanity Fair Mills, Inc. v. T. Eaton Co., 234 F.2d 633, 642 (2d Cir.1956) (same).

The Court does not read the complaint as making any claim based upon extraterritorial conduct. If such claims do arise after discovery, then defendants may move for summary judgment on such claims, consistent with the tests enunciated in Bulova,

(C) 2006 Thomson/West. No Claim to Orig. U.S. Govt. Wo



Not Reported in F.Supp.2d
(Cite as: 1999 WL 1073636, *11 (E.D.Pa.))

American Rice, and Vanity Fair. In the meantime, defendants' motion under Rule 12(b)(1) will be denied.

### E. Failure to State a Claim for Breach of Contract

Finally, defendants have moved the Court to dismiss the breach of contract claim as it applies to defendant Hamilton-Nevada because it was not a named party to the contract between EME and Hamilton-Switzerland. See Defendants' Mem. at 22. Plaintiff responds that, under common law agency principles, a disclosed principal can be liable on the contracts made by an agent, even if the principal is not a party to the agreement. See Plaintiff's Mem. at 19.

**\*12** The parties have not briefed the Court on what body of substantive law governs the contract claim, a question that is particularly difficult since all three parties to this case come from different nations. The Court is reluctant to rule on the sufficiency of the contract claim without full briefing on the choice of law issue. Defendants' motion under Rule 12(b)(6) will therefore be denied without prejudice subject to renewal as a motion for summary judgment at the appropriate time and with the appropriate briefing.

An appropriate Order follows.

### ORDER

AND NOW this 15 day of November, 1999, in consideration of defendants' Motion and plaintiffs' response thereto, and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that defendants' Motion is DENIED. IT IS FURTHER ORDERED that defendants' motion under Rule 12(b)(6) is DENIED WITHOUT PREJUDICE subject to renewal as a motion for summary judgment at the appropriate time and with appropriate briefing on choice of law.

1999 WL 1073636 (E.D.Pa.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Wo

