# EXHIBIT W

DIRECTORY DIVIDENDS, INC. v. SBC COMMUNICATIONS, INC., SBC DIRECTORY OPERATIONS, INC., PACIFIC BELL DIRECTORY, PACIFIC TELESIS GROUP, AMERITECH PUBLISHING, INC., SOUTHWESTERN BELL YELLOW PAGES, INC., JAMES L. MOORE and GILFORD ASSOCIATES, INC.

CIVIL ACTION NO. 01-CV-1974

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

2003 U.S. Dist. LEXIS 12214

July 2, 2003, Decided

July 2, 2003, Filed

**SUBSEQUENT HISTORY:** Dismissed by, in part **Directory Dividends v. Sbc Communs., 2003 U.S. Dist. LEXIS 19560 (E.D. Pa., Oct. 23, 2003)**

**DISPOSITION:** {*1} Defendants' Renewed Motions to Dismiss denied.

**COUNSEL:** For DIRECTORY DIVIDENDS, INC., Plaintiff: PATRICK C. CAMPBELL, JR., PHILLIPS & CAMPBELL PC, BALA CYNWYD, PA.

For SBC COMMUNICATIONS, INC., SBC DIRECTORY OPERATIONS, INC., PACIFIC BELL DIRECTORY, PACIFIC TELESIS GROUP, AMERITECH PUBLISHING, INC., SOUTHWESTERN BELL YELLOW PAGES, INC., JAMES L. MOORE, Defendants: ANN BUCKLEY, JAY A. SUMMERVILLE, ARMSTRONG TEASDALE LLP, ST. LOUIS, MO.

For SBC COMMUNICATIONS, INC., SBC DIRECTORY OPERATIONS, INC., PACIFIC BELL DIRECTORY, PACIFIC TELESIS GROUP, AMERITECH PUBLISHING, INC., SOUTHWESTERN BELL YELLOW PAGES, INC., JAMES L. MOORE, Defendants: E. GRAHAM ROBB, WEBER, GALLAGHER, SIMPSON, FIRES & NEWBY, LLP, PHILADELHIA, PA.

For SBC COMMUNICATIONS, INC., SBC DIRECTORY OPERATIONS, INC., PACIFIC BELL DIRECTORY, PACIFIC TELESIS GROUP, AMERITECH PUBLISHING, INC., SOUTHWESTERN BELL YELLOW PAGES, INC., JAMES L. MOORE, Defendants: JOHN A. MACORETTA, SPECTOR, ROSEMAN & KODROFF, MICHAEL S. SAVETT, WEBER GOLDSTEIN GREENBERG & GALLAGHER {*2} LLP, PHILADELPHIA, PA.

For GILFORD ASSOCIATES, INC., Defendant: GARY SCHAFKOPF, NENNER & BURGESS, PHILADELPHIA, PA.

**JUDGES:** R. BARCLAY SURRICK, JUDGE.

**OPINION BY:** R. BARCLAY SURRICK

**OPINION: MEMORANDUM AND ORDER**

Presently before this Court are Defendant SBC Directory Operations, Inc.'s Renewed Motion to Dismiss (Doc. No. 34), Defendant Pacific Telesis Group's Renewed Motion to Dismiss (Doc. No. 35) and Defendant SBC Communications, Inc.'s Renewed Motion to Dismiss (Doc. No. 36). For the following reasons, Defendants' Renewed Motions to Dismiss will be denied.

**I. BACKGROUND**

This action arises out of a contract dispute between Plaintiff, Directory Dividends, Inc. ("Plaintiff"), a Pennsylvania corporation and Defendant, Pacific Bell Directory ("Pacific"), a California corporation. Plaintiff and Pacific entered into a contract (the Contract) under which Plaintiff agreed to manage one of Pacific's advertising programs. Plaintiff alleges that Pacific breached the Contract and that all of the Defendants conspired to defame Plaintiff and interfere with Plaintiff's other business contracts ultimately forcing Plaintiff out of business. Plaintiff filed a complaint in the Court of {*3} Common Pleas of Chester County, Pennsylvania alleging nine claims against the Defendants. n1 Defendants removed the action to this Court. Defendants, SBC Communications, Inc. (SBC), SBC Directory Operations, Inc. (Directory Operations), and Pacific Telesis Group (Telesis) contend that they have no connection to or contact with Pennsylvania and move for dismissal of the instant case under **F.R.C.P. 12(b)(2) and 12(b)(6)**. Defendant, James L. Moore (Moore) has also moved for dismissal under **F.R.C.P. 12(b)(2) and 12(b)(6)** which we will consider separately. Defendants, Ameritech Publishing, Inc. (Ameritech), Southwestern Bell Yellow Pages, Inc.

(Southwestern), Gilford Associates, Inc. (Gilford) and Pacific, have consented to the jurisdiction of this court.

- - -Footnotes- - -

n1 Plaintiff's allegations include conspiracy, tortious interference with contracts and prospective economic relationship, prima facie tort, intentional tort, bad faith, breach of contract, defamation, false light and defamation per se in the form of commercial disparagement.

- - -End Footnotes- - -

{*4}

Plaintiff claims that we have jurisdiction over SBC, Directory Operations and Telesis based on an alter ego theory contending that SBC, Directory Operations, Telesis, Pacific, Southwestern and Ameritech are essentially one functioning entity, not six separate entities, and that the consent of Pacific, Southwestern and Ameritech to the jurisdiction of this Court is also the consent of SBC, Telesis and Directory Operations. Plaintiff contends that SBC owns and/or controls all the Defendants to the extent that each of the Defendant's actions may be imputed to the other. (Pl's. Resp. to Defs'. Renewed Mots. to Dismiss, Ex. "A", PP17, 67, 81-84, 87-90). Plaintiff also contends that although none of the Defendants are Pennsylvania citizens, they are subject to the jurisdiction of this court because in addition to SBC's ownership and/or control of the Defendants, SBC owns 60% of Cingular Wireless which conducts business throughout the United States, including Pennsylvania. (Pl. Resp. to Defs. Renewed Mots. to Dismiss, Ex. "O"). Plaintiff argues that SBC is subject to our jurisdiction because it has an interactive website that provides links to websites where Pennsylvania residents can buy {*5} Cingular Wireless phones and SBC products over the internet for use in Pennsylvania.

## II. Legal Standard

### A. F.R.C.P. 12(b)(2) - Lack of Personal Jurisdiction

**Federal Rule of Civil Procedure 4(e)** permits a district court to assert personal jurisdiction over a non-resident to the extent allowed under the law of the state where the court sits. "... Pennsylvania authorizes long-arm jurisdiction to the extent permitted by the due process clause [of the Constitution of the United States]". *Visual Security Concepts, Inc. v. KTV, Inc.,* **102 F. Supp.2d 601, 602 (E.D. Pa. 2000)**, 42 Pa. C.S. § 5322(b). "Under the due process clause, a court may not exercise personal jurisdiction over a non-resident defendant unless there are certain minimum contacts between the defendant and the forum state." *Time Share Vacation Club v. Atlantic Resorts, Ltd.,* **735 F.2d 61, 63 (3rd Cir. 1984))**(citing *World-Wide Volkswagen Corp. V. Woodson,* **444 U.S. 286, 292, 62 L. Ed. 2d 490, 100 S. Ct. 559 (1978))**. "A plaintiff may establish personal jurisdiction either by suing under a cause of action arising from minimum contacts with the forum state (specific {*6} jurisdiction), **42 Pa. C.S.A. § 5322**, or [by showing] that the defendant has 'continuous and systematic' contacts with the forum state, in which case the cause of action need not arise from those contacts (general jurisdiction),**42 Pa.C.S.A. § 5301**." *Star Creations Inv. Co., Ltd. v. Alan Amron Dev., Inc.,* 1995 U.S. Dist. LEXIS 11967, Civ. A. No. 95-4328, 1995 WL 495126* 11 (E.D. Pa. Aug. 18, 1995) (citing *Provident Nat'l. Bank v. California Fed. Sav. & Loan Assoc.,* **819 F.2d 434, 437 (3d Cir. 1987))**.

A 12(b)(2) motion "requires resolution of factual issues, outside the pleadings, i.e. whether in personam jurisdiction actually lies." *Savin Corp. v. Heritage Copy Products, Inc.,* **661 F. Supp. 463, 466 (M.D.Pa. 1987)**(citing *Time Share Vacation Club v. Atlantic Resorts, Ltd.,* **735 F.2d 61, 66 (3rd Cir. 1984))**. When the defense of lack of personal jurisdiction is raised, the plaintiff must prove, by a preponderance of the evidence, that jurisdiction is proper. *IMO Industries, Inc. v. Kiekert AG,* **155 F.3d 254, 257 (3d. Cir. 1998)**. "It is well established that in deciding a motion to dismiss for lack of jurisdiction, a court is required {*7} to accept the plaintiff's allegations as true, and is to construe disputed facts in favor of the plaintiff." *Toys "R" Us, Inc. V. Step Two, S.A.,* **318 F.3d 446 (3d Cir. 2003)**(citing *Pinker v. Roche Holdings, Ltd.,* **292 F.3d 361, 368 (3d Cir. 2001))**. "Jurisdiction [will] lie over the subsidiary if it was shown that the parent was the subsidiary's alter ego." *Aamco Automatic Transmissions, Inc. v. Tayloe,* **368 F. Supp.1283, 1300 (E.D. Pa.1973)**(quoting *In re Puerto Rico Air Disaster Litig.* **340 F. Supp. 492, 496 (D.P.R. 1972))**.

### B. F.R.C.P. 12(b)(6) - Insufficiency of Claim

When considering a motion to dismiss, we must accept as true all facts alleged in the complaint and view all reasonable inferences to be drawn therefrom in favor of the non-moving party. *Markowitz v. Northeast Land Co.,* **906 F.2d 100, 103 (3d Cir. 1990)** (citing *Ransom v. Marrazzo,* **848 F.2d 398, 401 (3d Cir.1988))**; see *H.J. Inc. v. Northwestern Bell Tel. Co.,* **492 U.S. 229, 249-50, 106 L. Ed. 2d 195, 109 S. Ct. 2893 (1989)**; see also *Conley v. Gibson,* **355 U.S. 41, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)**. {*8} "However, we are not required to accept legal

conclusions alleged or inferred in the complaint." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A complaint will withstand a **Federal Rule of Civil Procedure 12(b)(6)** attack if the material allegations and inferences drawn from those allegations, provide a basis for recovery. *Menkowitz v. Pottstown Memorial Med. Ctr.*, 154 F.3d 113, 124-125 (3d Cir. 1998).

## III. DISCUSSION

### A. Jurisdiction Conferred by Alter-Ego Theory

SBC, Telesis and Directory Operations contend that they are not subject to the jurisdiction of this Court because they are separate corporate entities that are not Pennsylvania citizens and because they, in fact, have no contact whatsoever with Pennsylvania. n2 Plaintiff asserts an alter-ego theory in support of its position. "A subsidiary will be considered the alter-ego of its parent only if the parent exercises control over the activities of the subsidiary." *Clemens v. Gerber Scientific, Inc.*, 1989 U.S. Dist. LEXIS 376, Civ. A. No. 87-5949, 1989 WL 3480 (E.D. Pa. Jan. 13, 1989). To prevail under its alter ego theory, Plaintiff must demonstrate that "the degree of control exercised {*9} by the parent [is] greater than normally associated with common ownership and directorship." *In re Latex Gloves Products Liability Litig.*, 2001 U.S. Dist. LEXIS 12757, No. MDL 1148 (Aug. 22, 2001) 2001 WL 964105 *3 (E.D. Pa. 2001); *See also Visual Sec. Concepts, Inc. v. KTV, Inc.*, 102 F. Supp. 2d 601, 605 (E.D. Pa. 2000); *Arch v. American Tobacco Co., Inc.* 984 F. Supp. 830, 837 (E.D. Pa. 1997). "Plaintiffs must prove that the parent controls the day-to-day operations of the subsidiary such that the subsidiary can be said to be a mere department of the parent." *Latex Gloves*, 2001 U.S. Dist. LEXIS 12757, 2001 WL 964105, *3 (citing *Arch, supra.*). One may use "the alter ego doctrine to secure jurisdiction over nonresident corporations upon a finding that either the 'dominant' or 'subservient' corporation does business within the state." *Aamco Automatic Transmissions, Inc. v. Tayloe*, 368 F. Supp.1283, 1300 (E.D. Pa. 1973)(citing *In re Puerto Rico Air Disaster Litig.* 340 F. Supp. 492, 496 (D.P.R. 1972)). *See also Morse Typewriter Co., Inc. v. Samanda Ofc. Comm., Ltd.*, 629 F. Supp.1150, 1152 (S.D.N.Y. 1986).

- - -Footnotes- - -

n2 In affidavits submitted by authorized officers of SBC, Telesis and Directory Operations, they each contend that:

1) they do not offer goods or services to the public and do not transact regular business activities in Pennsylvania; 2) they operate as separate entities, are separately, are separately incorporated and have their own board of directors, officers and employees; 3) they have no Pennsylvania officers or employees who live, work or are assigned any business-related activities in Pennsylvania; 4) they have no relationship with Plaintiff and never directed, authorized or entered into any business arrangement with Plaintiff; 5) they never employed Moore as an employee or agent; and 6) that they did not cause any harm to Plaintiff inside or outside Pennsylvania.

- - -End Footnotes- - -
{*10}

The factors to consider when determining if a subsidiary is an alter-ego or agent of the parent are: 1) ownership of all or most of the stock of the subsidiary; 2) common officers and directors; 3) a common marketing image; 4) common use of a trademark or logo; 5) common use of employees; 6) an integrated sales system; 7) interchange of managerial and supervisory personnel; 8) subsidiary performing business functions which the principal corporation would normally conduct through its own agents or departments; 9) subsidiary acting as marketing arm of the principal corporation, or as an exclusive distributor; and 10) receipt by the officers of the related corporation of instruction from the principal corporation. The inquiry should also "encompass whether there is a single functional and organic identity." *Latex Gloves*, 2001 U.S. Dist. LEXIS 12757, 2001 WL 964105, *3-4. The Court "should examine all relevant factors that relate to the intimacy of the relationship between the parent and subsidiary to assess whether the contacts of the subsidiary [with the forum] should be imputed to the parent." *Arch*, **984 F. Supp. at 837** (stating that the test "perforce incorporates all the factors {*11} that have been historically used in determining whether a subsidiary is an alter ego or agent of the parent"). n3

- - -Footnotes- - -

n3 The *Arch* test is commonly relied on in this District. *See Latex Gloves*, 2001 U.S. Dist. LEXIS 12757, 2001 WL 964105, *3 n.10 (citing cases).

- - -End Footnotes- - -

Initially, we would note that Plaintiff's assertion that SBC and its subsidiaries are one functioning entity

appears to be on target. n4 SBC is the parent corporation of Southwestern Bell Yellow Pages, Inc., SBC Directory Operations, Inc., Pacific Bell Directory, Pacific Telesis Group and Ameritech Publishing Company, Inc. An SBC press release dated December 10, 2002, stated:

- - -Footnotes- - -

n4 Defendants concede that Southwestern, Ameritech and Pacific are "highly integrated" with a "single marketing target" and "are treated as a single profit center." (Defs.' Reply Mem. In Supp. Of Renewed Mot. To Dismiss at 10).

- - -End Footnotes- - -
{*12}

To further establish itself as a national telecommunications leader, SBC Communications, Inc. (NYSE: SBC) today announced it will move to a single national brand - SBC. Use of the SBC brand will provide a more unified presence in the marketplace, making it easier for customers to find and do business with SBC companies across geographic boundaries and product lines. The move to a single national brand will unify offerings previously marketed through regional brands such as SBC Southwestern Bell, SBC Pacific Bell, SBC Nevada Bell and SBC Ameritech. SBC companies will continue to offer wireless service nationwide through Cingular Wireless, SBC's joint venture with BellSouth. 'Adopting a single, unified SBC brand underscores our transformation from a collection of regional companies with separate identities into a national telecommunications leader with a single identity,' said Edward E. Whitacre, Jr. Chairman and CEO, SBC Communications, Inc.

(*See* http://www.sbc.com/press-room/1,5932,31,00.html?query=2370). The statement of SBC's CEO, Edward Whitacre makes clear that SBC subsidiaries are no longer "a collection of regional companies with separate identities. {*13} " Rather they have been transformed "into a national telecommunications leader with a *single identity*" and "SBC companies will continue to offer wireless service nationwide through Cingular Wireless." Moreover, the statement that the companies are combining under SBC makes it "easier for customers to find and do business with SBC companies across geographic boundaries and product lines" together with the fact that SBC, through its website, provides products and services in every state indicates that Pennsylvania certainly is one of SBC's target markets. In addition, SBC's "Global Company Fact Sheet" states that SBC has 200,000 employees. n5 (Pl.'s Mot. To Strike, Exh. "A"). SBC's representation that it has been transformed from a collection of regional companies into a single national identity with 200,000 employees supports Plaintiff's assertion that SBC and its subsidiaries operate as one large company not separate entities.

- - -Footnotes- - -

n5 Despite having a human resources department responsible for all of the SBC subsidiaries and the Global Company Fact Sheet that says SBC has 200,000 employees, SBC claims it has no employees. (Defs'. Mem. of Law in Opp'n. To Pl.'s Mot. To Strike, Exh. "D", Organizational Chart at 2).

- - -End Footnotes- - -
{*14}

The record also reflects that SBC in fact owns one hundred percent of the stock of Directory Operations and Telesis. Telesis in turn owns one hundred percent of the stock of Pacific and Ameritech. And SBC owns all but three shares of Southwestern. Those three shares are owned by Telesis. (Joint Reply Mem. In Supp. of Defs. SBC, Directory Operations and Telesis Renewed Separate Mots. To Dismiss at 6-7). Moreover, there is considerable overlap in the officers and directors of the Defendants. Eight officers of SBC are also officers and/or directors of Ameritech, Pacific and/or Telesis. (*Id.*; Joint Reply Mem. In Supp. of Defs. SBC, Directory Operations and Telesis Renewed Separate Mots. To Dismiss at 6-7). There are eleven individuals who serve as officers and/or directors not only of Pacific, but also of Telesis and Ameritech. (Pl's. Mem. of Law in Supp. Of Mot. To Strike, Exh. "G"). This stock ownership and the overlapping management has obviously enabled SBC to become "a national telecommunications leader with a single identity."

SBC contends that each subsidiary has its own trademark and website (Defs. Reply Mem. in Supp. of Renewed Mots. to Dismiss at 10). However, it is now {*15} apparent that the Defendants formerly known as SBC Ameritech, SBC Pacific Bell Directory and SBC Pacific Bell are now known simply as SBC. Evidently, SBC decided that dropping the "brand name" labels

would advance its goal of being viewed as a single company serving the nation as a whole rather than several regional companies serving different areas of the country. Significantly, it appears that Pacific, Ameritech and Southwestern do not have their own websites. When one attempts to access the former websites of Pacific, Ameritech or Southwestern, a link is provided that reads either "SBC Pacific Bell is now SBC", "SBC Ameritech is now SBC", or "SBC Southwestern Bell is now SBC", and one is taken directly to the SBC website. (*See* http://www02.sbc.com/http://www05.sbc.com and http://www01.sbc.com). The SBC Ameritech link also provides the following information "SBC's familiar products and services are now under one name, on one site." "You will find the same reliable products and services online at www.sbc.com. You will automatically be redirected to the new home page." http://www05.sbc.com. Moreover, the products of SBC subsidiaries can only be accessed through SBC's website. {*16} The SBC website uses the SBC logo in its advertising and selling its products for SBC subsidiaries in different regions of the country, including Pennsylvania. Clearly, SBC is presenting more than just a common marketing image. It is presenting itself and its subsidiaries as one. This is compelling evidence that the subsidiaries are the alter ego of SBC. *Cali v. East Coast Aviation Services, Ltd.*, 178 F. Supp.2d 276, 287 (E.D.N.Y. 2001).

In addition to the foregoing, there is significant common use of employees and interchange of managerial and supervisory personnel among the Defendants. The depositions of Joy Rick, James Moore, Donna Bell were taken as part of the jurisdictional discovery. Based upon these depositions, there appears to be considerable confusion as to who works for whom in this organization. However, it is clear that both Pacific and Southwestern employees have supervised people in the other companies. (Defs'. Mem. of Law in Opp'n. To Pl.'s Mot. To Strike, Exh ."D", Guide to Organizational Structure at 7). Moreover, employees from both Pacific and Southwestern are authorized to use the Directory Operations name. (*Id.*). The business cards and letterhead {*17} of employees that work on a national level include the names of Directory Operations, Southwestern and Pacific. (*Id.* at 9 and 12). While James Moore was employed by Southwestern as General Manager of National Direct Advertising, he flew to Pennsylvania to meet with Plaintiff on behalf of Pacific. (Pl's. Mem. of Law in Supp. Of Mot. To Strike, Exh. "I", Dep. Of James L. Moore at 8:18-24; 10:17-23). James Moore's supervisor was the Executive Director of National Sales and an Ameritech employee who used the Directory Operations title on his letterhead and business cards. (*Id.* at 17-20). Apparently when an employee uses the name Directory Operations this means that the employee is representing Pacific, Ameritech and Southwestern. When an employee uses the name SBC on letterhead and business cards, it means that the employee is representing all of the subsidiaries. (*Id.* at 19-20). Directory Operations contends that it is a shell company which houses a management team to provide management services to SBC subsidiaries, including Pacific, for a fee. (*See* Pl.'s Mot. for Leave to File a Sur Reply to Defs'. Renewed Mots. to Dismiss, Ex. "C"). The affidavit of Donna Bell, Assistant {*18} Secretary of Directory Operations, indicates that Directory Operations does not conduct business or generate revenue and has no employees. (Directory Operations Renewed Mot. to Dismiss, Ex. "A" at P 3). Donna Bell is also the Manager of Legal and External Affairs at Southwestern. She is also the Assistant Secretary for Pacific and Ameritech. (Pl.'s. Mem. of Law in Supp. Of Mot. To Strike, Exh. "D", Dep. Of Donna Bell at 6). Bell testified that she works directly for SBC on certain matters (*Id.* at 23) and that she deals with SBC "because certain matters are coordinated with them. They sometimes handle things for us ... to save cost." (Bell Dep. at 24). Bell also transacts with SBC's Financial Department regarding banking matters on behalf of the directory companies. (Bell Dep. at 24-25). Despite Donna Bell's testimony that Directory Operations does not conduct business, generate revenue or have employees, she also testified that Directory Operations has one Legal Department that serves Pacific, Ameritech and Southwestern but is paid only by Southwestern. (Pl's. Mem. of Law in Supp. Of Mot. To Strike, Exh. "D", Dep. Of Donna Bell at 23). Notwithstanding the existence of the Directory {*19} Operations Legal Department, the SBC Legal Department handles legal work when it needs to be done for "many of the affiliates" at the same time. With regard to legal representation, it is significant that the same attorneys represent all of the Defendants in the instant litigation with the exception of Gilford Associates. *Genesis Bio Pharmaceuticals, Inc. v. Chiron Corp.*, 27 Fed. Appx. 94, 2002 WL 27261 *4 (3d Cir. 2002)(not precedential)(representation by same attorney indicates that parent and wholly owned subsidiary are acting as a single entity). SBC also controls the banking of its subsidiaries. (Bell Deposition at 22-26).

Joy Rick is the Vice President and Secretary of SBC. She indicates that the SBC Human Resources Department has a Senior Executive Vice President, Karen Jennings, (Jennings) who has "overall responsibility for all of human resources throughout all of our affiliates." (Defs'. Mem. of Law in Opp'n. To

Pl.'s Mot. To Strike, Exh. "C", Dep. Of Joy Rick at 11-12). Apparently Jennings prepared and distributed a Code of Business Conduct Policy to all the subsidiaries that was a mandatory policy to be implemented by all of the subsidiaries. (*Id.* at 67-69). In addition, {*20} Linda Legg, the Vice-President, General Counsel and Secretary of Directory Operations within SBC created an Organizational Structure which provides: "WE NEED TO UNDERSTAND AND FOLLOW THE SBC GENERAL GUIDELINES on the use of corporate names and branding." (Defs'. Mem. of Law in Opp'n. To Pl.'s Mot. To Strike, Exh. "D", Guide to Organizational Structure at 2). The SBC guidelines are a directive on how to handle all forms of corporate communication, business cards and stationery, service agreements, contracts and customer bills. (*Id.* at 3). SBC has determined that it is necessary for the subsidiaries to follow its guidelines "to minimize legal, tax and labor risks which could potentially arise because of external use of various corporate legal as well as brand names." (*Id.*).

SBC and Telesis contend that they are really separate holding companies and that they do not conduct business other than owning investments. It is true that "where a holding company is nothing more than an investment mechanism - a device for diversifying risk through corporate acquisitions- the subsidiaries conduct business not as [the holding company's] agent, but as its investments. The business of the {*21} parent is the business of investment, and that business is carried out entirely at the parent level." ***Poe v. Badcock International, plc, et al.,* 662 F. Supp. 4, 6 (M.D. Pa. 1985)**. However, it is apparent that SBC is more than an investment mechanism. It controls business at the subsidiary level. After SBC acquired Telesis, Directory Operations began to manage Pacific. During this time Moore, a Southwestern employee, was directed to handle the business of Pacific, a Telesis-owned company. SBC requires its subsidiaries to adhere to the aforementioned Code of Business Conduct and Guidelines prepared by SBC concerning everything from letterhead to labor. Moreover, the SBC website advertises and sells all of its subsidiaries' products and as discussed above, SBC handles the banking and legal matters for its subsidiaries. Based upon the discovery thus far it is apparent that the business of SBC is more than just investment.

Viewing the evidence in the light most favorable to the Plaintiff, it is clear that SBC and all of the subsidiaries are heavily integrated both horizontally and vertically. It is also clear that SBC has created a completely unified marketing image, {*22} marketing all of the products and services of the subsidiaries exclusively through SBC. Based upon the jurisdictional discovery that Plaintiff has been able to conduct to date, we are satisfied that Plaintiff has established that Defendants are not really separate entities and that the subsidiaries' contacts with this jurisdiction may be imputed to the parent and to each other. n6

- - -Footnotes- - -

n6 Three subsidiaries consent to our jurisdiction. At least one of the consenting subsidiaries, Pacific, had clear contacts with Pennsylvania by virtue of its contract with the Plaintiff.

- - -End Footnotes- - -

### B. The SBC Website Confers Jurisdiction

A website targeted at a particular jurisdiction will likely give rise to personal jurisdiction. ***S. Morantz, Inc. v. Hang & Shine Ultrasonics, Inc.,* 79 F. Supp.2d 537, 540 (E.D. Pa. 1999)**. "Minimum contacts may be found where there is something more to indicate that the defendant purposefully (albeit electronically) directed his activity in a substantial way to the forum state." {*23} *Id.* (Citation omitted). Moreover, jurisdiction may be found when the decision to buy a product or service is the result of active solicitation of business in the forum state. *Zubyk v. LPBOC Hotel, Ltd. P'Ship,* 2002 U.S. Dist. LEXIS 9671, Civ. A. No. 00-971, 2000 WL 963168 (E.D. Pa. June 27, 2000). The Third Circuit has determined that when a company conducts business over the internet, such as executing contracts, that company may be subject to jurisdiction wherever the contract is made. ***Accuweather, Inc. v. Total Weather, Inc.,* 223 F. Supp.2d 612, 615 (M.D. Pa. 2002)**. A sliding scale analysis is used when deciding if maintenance of a website confers jurisdiction. *Id.* At one end of the sliding scale is a passive website that provides information only. At the other end of the scale is a fully interactive website through which negotiations may be conducted, contracts executed and daily business generally operated. *Id.* "If a defendant web site operator intentionally targets the site to the forum state, and/or knowingly conducts business with forum state residents via the site, then the "purposeful availment requirement is satisfied." ***Toys "R" Us, Inc. V. Step Two, S.A.,* 318 F.3d 446, 452 (3d Cir. 2003)**. {*24} "When a defendant makes a conscious choice to conduct business with the residents of a forum state, 'it has clear notice that it is subject to suit there.' ... If the defendant had not wanted to be amenable to jurisdiction in Pennsylvania, ... it could have chosen not to sell its services in Pennsylvania." *Id.* (quoting ***Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* 952 F. Supp.**

1119, 1126-27 (citing *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1978)).

Although the Plaintiff's cause of action is not related to and does not arise out of SBC's internet contact with Pennsylvania, SBC specifically targets Pennsylvania with its website by providing services tailored to the needs of Pennsylvania residents. See *Star Creations Inv. Co., Ltd. v. Alan Amron Dev., Inc.,* 1995 U.S. Dist. LEXIS 11967, Civ. A. No. 95-4328, 1995 WL 495126, *11 (E.D. Pa. Aug. 18, 1995)(citing *Provident Nat'l. Bank v. California Fed. Sav. & Loan Assoc.,* 819 F.2d 434, 437 (3d Cir. 1987)). When a Pennsylvania resident accesses the SBC website to view SBC services available in Pennsylvania, this search may be accomplished in one of {*25} two ways - either by clicking "Pennsylvania" on a pull down menu or by entering a Pennsylvania zip code. Either search method yields a list of SBC products offered in Pennsylvania. The SBC website offers the following SBC products and services available for purchase over the internet in Pennsylvania: **Phone Services:** SBC Phone Solution Plus; SBC Phone Solution; and Cingular Wireless (SM) and **Internet and Business Services:** SBC Prodigy DSL; SBC Yahoo! Dial; Web Hosting; PremierSERV Solutions; Business Networking; SmartPages; and SBC Affiliate Network. n7 (Pl.'s Resp. to Defs'. Renewed Mots. to Dismiss, pp. 10-17). This specifically intended internet contact with Pennsylvania is sufficiently systematic and continuous that the website alone may be used as the basis for a finding of general personal jurisdiction. *Toys "R" Us, Inc. V. Step Two, S.A.,* 318 F.3d 446, 452 (3d Cir. 2003); *Zubyk v. LPBOC Hotel, Ltd. P'Ship,* 2002 U.S. Dist. LEXIS 9671, Civ. A. No. 00-971, 2000 WL 963168 (E.D. Pa. June 27, 2000). The ability of Pennsylvania residents to purchase SBC products and services for use in Pennsylvania over the SBC website subjects SBC to the jurisdiction of this Court. {*26}

- - -Footnotes- - -

n7 Plaintiff demonstrated that SBC has targeted Pennsylvania by purchasing a Cingular Wireless cellular phone via a link to the Cingular Wireless website from the SBC website. (*See* Declaration of Lisa Reardon Rouillard, Exh. "J", Pl.'s Resp. to Renewed Mots. to Dismiss).

- - -End Footnotes- - -

Based upon the foregoing we are satisfied that this Court has jurisdiction over SBC and its subsidiaries. SBC and its subsidiaries operate as a single functional and organic identity with the subsidiaries being mere departments of the parent. SBC's website specifically targets Pennsylvania by providing products and services that are tailored to the needs of Pennsylvania residents. Accordingly, Defendants Renewed Motions to Dismiss will be denied.

An appropriate Order follows.

**ORDER** - ENTERED JUL 3 2003

AND NOW, this 2nd day of July, 2003, upon consideration of Defendant SBC Directory Operations, Inc.'s Renewed Motion to Dismiss (Doc. No. 34), Defendant Pacific Telesis Group's Renewed Motion to Dismiss (Doc. No. 35) and Defendant {*27} SBC Communications, Inc.'s Renewed Motion to Dismiss (Doc. No. 36) and all papers filed in support thereof and in opposition thereto it is ORDERED as follows:

> 1. Defendant SBC Directory Operations, Inc.'s Renewed Motion to Dismiss is DENIED; 2. Defendant Pacific Telesis Group's Renewed Motion to Dismiss is DENIED; and 3. Defendant SBC Communications, Inc.'s Renewed Motion to Dismiss is DENIED.

BY THE COURT:

R. BARCLAY SURRICK, JUDGE