## REDACTED – PUBLIC VERSION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DYSON TECHNOLOGY LIMITED<br>and DYSON, INC., | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-434-GMS |
| | ) | |
| MAYTAG CORPORATION, | ) | **CONFIDENTIAL –** |
| | ) | **FILED UNDER SEAL** |
| Defendant. | ) | |

## PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR LEAVE TO FILE A SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES AND SUPPLEMENTAL COUNTERCLAIMS

C. Barr Flinn  (No. 4092)
John W. Shaw (No. 3362)
Adam W. Poff (No. 3990)
Andrew A. Lundgren (No. 4429)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801
(302) 571-6600
jshaw@ycst.com

*Attorneys for Plaintiffs Dyson Technology*
  *Limited and Dyson, Inc.*

OF COUNSEL:

Garrard R. Beeney
Richard C. Pepperman, II
James T. Williams
Keith McKenna
Sullivan & Cromwell LLP
125 Broad Street
New York, New York  10004
(212) 558-4000

Steven F. Reich
Jeffrey S. Edelstein
Tamar Feder
Manatt, Phelps & Phillips, LLP
7 Times Square
New York, New York  10036
(212) 790-4500

Dated: December 13, 2006

## TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES ................................................................. ii

PRELIMINARY STATEMENT ............................................................1

NATURE AND STAGE OF THE PROCEEDING............................................4

SUMMARY OF ARGUMENT ............................................................5

STATEMENT OF FACTS ................................................................7

    A.    The Information Within Maytag's Possession
        When Maytag Originally Filed Its Counterclaims........................7

    B.    The Rule 26(f) Joint Status Report and Maytag's Early
        Discovery Efforts ........................................................8

    C.    Maytag Did Not Complain About Dyson's Legitimate
        Discovery Objections...................................................10

    D.    Maytag's Proposed Amended Complaint .....................................12

ARGUMENT ........................................................................14

I.    MAYTAG IGNORES THE GOOD CAUSE STANDARD THAT MUST
    BE SATISFIED TO PREVAIL ON A LATE-FILED MOTION TO
    AMEND........................................................................14

II.    THE DYSON PARTIES' DISCOVERY RESPONSES WERE
    PROPER AND APPROPRIATE. ...............................................17

III.    MAYTAG WILL SUFFER NO PREJUDICE IF ITS MOTION IS
    DENIED......................................................................20

IV.    MAYTAG HAS NOT MET ITS BURDEN TO DEMONSTRATE
    THAT ITS PROPOSED AMENDMENT IS NOT FUTILE.....................23

V.    THE COURT AND DYSON WILL BE PREJUDICED BY THE
    AMENDMENT BECAUSE SIGNIFICANT ADDITIONAL
    DISCOVERY WILL BE REQUIRED ..........................................26

CONCLUSION..........................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ajinomoto Co. v. Archer Daniels Midland Co.*,
  C.A. No. 95-218-SLR (D. Del. Feb. 21, 1996) .................................................... 23, 25

*Bancoult v. McNamara*,
  214 F.R.D. 5 (D.D.C. 2003) ............................................................................. 23

*Dimensional Commc'n., Inc. v. Oz Optics, Ltd.*,
  148 Fed. Appx. 82 (3d Cir. 2005) .................................................................... 14

*Fletcher v. Atex, Inc.*,
  68 F.3d 1451 (2d Cir. 1995) ............................................................................ 21

*Gangemi v. Moor*,
  268 F. Supp. 19 (D. Del. 1967) ....................................................................... 18

*Gonzalez v. Comcast Corp.*,
  C.A. No. 03-445-KAJ, 2004 U.S. Dist. LEXIS 17896 (D. Del. Aug. 25, 2004) .......... 14

*Hansen v. Neumueller GmbH*,
  163 F.R.D. 471 (D. Del. 1995) ........................................................................ 23

*Illinois Nat'l Bank & Trust Co. v. Gulf States Energy Corp.*,
  102 Ill. App. 3d 1113 (Ill. App. Ct. 2d Dist. 1981) ............................................ 25

*McCurdy v. Wedgewood Capital Mgmt. Co.*,
  C.A. No. 97-4304, 1998 U.S. Dist. LEXIS 18875  (E.D. Pa. Nov. 16, 1998) ............. 18

*McLaughlin v. Copeland*,
  455 F. Supp. 749 (D. Del. 1978) ................................................................. 16, 20

*Micro Motion, Inc. v. Kane Steel Co.*,
  894 F.2d 1318 (Fed. Cir. 1990) ....................................................................... 19

*Mylan Pharmaceuticals, Inc. v. Kremers Urban Dev.*,
  C.A. No. 02-1628-GMS, 2003 U.S. Dist. LEXIS 20665 (D. Del. Nov. 14, 2003) ...... 23

*Pennwalt Corp. v. Plough, Inc.*,
  85 F.R.D. 257 (D. Del. 1979) ..................................................................... 18, 19

*Pinkert v. John J. Olivieri, P.A.*,
  C.A. No. 99-380-SLR, 2001 U.S. Dist. LEXIS 8133 (D. Del. May 24, 2001) ............ 18

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
  233 F.R.D. 143 (D. Del. 2005) ........................................................................ 18

*Ranney-Brown Distribs., Inc. v. E. T. Barwick Indus., Inc.*,
  75 F.R.D. 3 (S.D. Ohio 1977) ......................................................................... 18

*Rothchild Int'l Corp. v. Liggett Group*, No. 6239,
  1981 Del. Ch. LEXIS 641 (Del. Ch. July 14, 1981) ............................................ 19

DB01:2252120.7                                                                063753.1002

*Sequa Corp. v. Gelmin*,
    C.A. No. 91 Civ. 8675 (DAB), 1995 U.S. Dist. LEXIS 9338
    (S.D.N.Y. July 6, 1995) .................................................................................................. 18

*Venoco, Inc. v. Marquez*,
    C.A. No. 02-1685-GMS, 2003 U.S. Dist. LEXIS 7593 (D. Del. May 5, 2003) ........... 25

**Statutes**

26 U.S.C. § 482 ................................................................................................................ 22

**Rules**

Federal Rule of Civil Procedure 15(a) ................................................................. 2, 14, 23

Federal Rule of Civil Procedure 16(b) ............................................................. 2, 5, 14, 28

Federal Rule of Civil Procedure 26(d) ....................................................................... 9

Federal Rule of Civil Procedure 26(f) ................................................................. passim

Federal Rule of Civil Procedure 37(g) ...................................................................... 10

**Other Authorities**

Robert F. Reilly, *Using Intercompany Transfer Price Analysis
    in Bankruptcy Valuations: Part I*, 23-I Amer. Bankr. Inst. J. 30 (Feb. 2004). ........... 22

## PRELIMINARY STATEMENT

Maytag's motion for leave join new parties fundamentally relies on the assertions that "Maytag did not learn of the true [Dyson corporate] structure until

that Maytag had "diligently sought to ascertain the true ownership" of Dyson Technology Limited and Dyson Inc. (the "Dyson parties"), *id.* at 3;

, and "obfuscation," *id.* at 9;

REDACTED

Maytag's rhetoric aside, the factual predicates for Maytag's motion are wrong. First, contrary to Maytag's assertion that it learned for the first time on November 8, 2006,

REDACTED

, Maytag in fact was aware of this information a full six months before the Court's February 10, 2006, deadline for motions to amend or join new parties. The Affidavit of James Dyson filed on July 29, 2005, in this case and listed as Docket Item 15, provides this allegedly withheld information:

> I am a Director and the majority shareholder of Dyson James Limited, which is the direct parent of plaintiff Dyson Technology Limited and the indirect parent of Dyson, Inc. (collectively, "Dyson") . . . .

Second, most of the information Maytag uses to support its allegations of raiding of corporate assets is found in the publicly available and audited annual financial statements filed by Dyson Limited and Dyson James Limited with Companies House pursuant to United

Kingdom laws and regulations. Maytag had or should have had this information long before the Court's February 10, 2006, deadline for motions to amend or join new parties.

Third, there has never been any mystery about Mr. Dyson or his role in the advertising challenged by Maytag in this litigation. James Dyson spoke many of the words seen on American television that Maytag now alleges were false, and James Dyson's picture, along with other advertising claims at issue in this litigation, appears on every box in which a Dyson vacuum cleaner is sold. Indeed, statements made by Mr. Dyson in the advertisements are discussed in Maytag's original counterclaims. *See* D.I. 22 at ¶¶ 10, 21, 27. It therefore is difficult to credit Maytag's assertion that it only recently learned of Mr. Dyson's involvement with Dyson's allegedly false advertising activities.

These are just a few examples of the significant factual errors in Maytag's brief. The motion to amend deadline passed nine months ago, and nothing in Maytag's brief satisfies the "good cause" required by Federal Rule of Civil Procedure 16(b) to justify granting a motion to amend nine months after the deadline for such amendments has passed. In fact, Maytag does not even satisfy the lesser Federal Rule of Civil Procedure 15(a) standard governing motions to amend. Dyson's discovery responses were entirely proper and went unchallenged by Maytag until November 16 of this year. At the same time, the information Maytag claims to have so desperately needed was either in its own hands or was publicly available before this litigation started. And there is nothing unlawful or improper about dividends and returns of capital made to Mr. Dyson based upon the worldwide profits of the entities he owns.

Finally, allowing this amendment will impose great costs upon the Court. Each of the proposed new parties has significant defenses to personal jurisdiction in this forum and

likely grounds for seeking summary relief. The amendment also will cause great expense due to the cost of "re-doing" almost the entirety of the document production for each of the newly proposed counterclaim defendants, a process which has consumed the existing counterclaim defendants for the past several months. Had Maytag acted with diligence and filed this motion even four months late in June 2006 – before document production began in earnest – at least these prejudices could have been ameliorated.

Maytag's motion should be denied.

DB01:2252120.7

063753.1002

## NATURE AND STAGE OF THE PROCEEDING

Dyson, Inc. and Dyson Technology Limited filed a patent infringement action against Maytag Corporation on June 27, 2005. D.I. 1. On July 19, 2005, Dyson, Inc. and Dyson Technology Limited filed a motion for preliminary injunction, D.I. 12, and supported that motion with several affidavits, including the Affidavit of James Dyson described above. D.I. 15.

On August 1, 2005, Maytag answered the complaint and filed false advertising claims against Dyson, Inc. and Dyson Technology Limited. D.I. 22. The parties conferred on November 18, 2005 pursuant to Fed. R. Civ. P. 26(f), agreed in the resulting Rule 16 Joint Status Report that joinder of additional parties was not anticipated, D.I. 37 at 8, and suggested a February 10, 2006 deadline for motions to amend or join parties, *id.* In accordance with the parties' request, the Court's Scheduling Order set February 10, 2006 as the deadline for the parties to file motions to amend pleadings or join parties. D.I. 46 ¶2.

Maytag served its first request for production of documents on December 27, 2005, five weeks after discovery opened. As a result, Dyson's response was due on January 26, 2006, just 15 days before the February 10 deadline for motions to amend or join parties. D.I. 37 ¶ 6. Nonetheless, neither party ever discussed, let alone requested, an extension of the February 10 deadline.

Maytag started producing documents at the same time as Dyson, and continued its document production after the November 4, 2006 document discovery cut-off. Maytag did not complain about Dyson's written discovery responses to Maytag's Document Request No. 1 until November 16, 2006.

## SUMMARY OF ARGUMENT

1.      Maytag fails to establish the necessary "good cause" required by Federal Rule of Civil Procedure 16(b) for missing the deadline for motions to amend or join new parties by almost ten months. A showing of "good cause" requires Maytag to affirmatively explain in its moving papers why it could not, with reasonable diligence, have met the Court's deadline.  Not only does Maytag's brief fail to mention this standard, it fails to allege the facts necessary to prove it.

2.      As early as July 2005, Maytag knew – from an affidavit submitted in this case – the Dyson corporate structure then in effect, including the relationship between the existing counterclaim defendants and the proposed counterclaim defendants.  Moreover, it goes without saying that from the moment Maytag viewed a Dyson advertisement containing the visage of James Dyson Maytag knew of Mr. Dyson's involvement in any allegedly false advertising activities.  Dyson's public filings also clearly indicated Mr. Dyson's relationship with the proposed counterclaim defendant, Dyson Limited, at the time that he appeared in such advertising, and any amounts paid to Mr. Dyson over the years.  Thus, the facts Maytag relies on to support its motion to amend have or should have been known to Maytag for months, if not years, before the filing of its motion.

4.      In relying on Dyson's purported "failure" to produce documents in response to Maytag's Document Request No. 1,  Maytag ignores the fact that Dyson timely objected to the request; that Maytag raised the same objection to discovery sought by Dyson; that Dyson's objections were proper and well-founded under the law; and that Maytag never moved to compel on this request.

5.      Maytag makes no showing that the existing counterclaim defendants are unable to satisfy a judgment.  Moreover, there is no evidence that the corporate form of the

5

existing counterclaim defendants has been disrespected in any way or that there has been any unlawful conduct or improper transfer of assets. Maytag's rhetoric aside, Maytag cites only to lawful dividends and returns of capital paid to Mr. Dyson by non-parties from the worldwide profits of many different Dyson entities.

6.    Maytag's motion is futile because Maytag has not alleged sufficient jurisdictional facts over the proposed counterclaim defendants to even justify obtaining jurisdictional discovery in advance of a hearing on whether actual personal jurisdiction exists.

7.    Both the Court and Dyson will be prejudiced by any amendment to join new parties at this late date. The filing of motions to dismiss and motions for summary judgment on behalf of the proposed counterclaim defendants has great potential to delay trial. Even if the motions are denied, the proposed counterclaims defendants will need to respond to the large number of discovery requests that have taken the existing Dyson parties months to respond to, at great disruption to their business and at great financial cost. By contrast, Maytag suffers no prejudice if its motion is denied, as nothing prevents Maytag from commencing a separate action to vindicate the rights it purports to assert in its present, untimely motion.

## STATEMENT OF FACTS

As set forth below, the objective discovery record demonstrates that during the last twelve months Maytag has not conducted a diligent search "to ascertain the true ownership" of Dyson Technology and Dyson, Inc. or to determine whether additional parties should be joined to this action.

**A.    The Information Within Maytag's Possession
When Maytag Originally Filed Its Counterclaims.**

Companies House, the Registrar of Companies in the United Kingdom, makes information available to the public about United Kingdom businesses like Dyson James Limited, including audited financial statements delivered to Companies House under the UK Companies Act and related legislation.    https://www.companieshouse.gov.uk/about/ functionsHistory.shtml.  This public information includes Dyson Limited's 2004 audited financial statement (App Exh. A), Dyson James Limited's 2004 audited financial statements (App. Exh. B), and other documents providing information about the stockholders of reporting companies, including Dyson James Limited (App. Exh. C) and other U.K. Dyson companies (App. Exh. D).

These public sources reveal the information Maytag claims to have learned for the first time in the fall of this year, including that James Dyson is the majority stockholder of Dyson James Limited, *compare* App. Exh. A at 3 *with* Op. Br. at 5; that Dyson James Limited is the ultimate parent of Dyson, Inc., *compare* App. Exh. A at 3 *with* Op. Br. at 5; and that James Dyson received a £34 million dividend, *compare* App. Exh. A at 6 *with* Op. Br. at 6.  All of these public sources were available before Maytag filed its counterclaims on August 1, 2005.

7

063753.1002

Just as there was no mystery before Maytag filed its counterclaims that James Dyson owned a majority interest in these UK reporting entities, there was no mystery that James Dyson was "the primary . . . spokesperson, founder and inventor", Op. Br. at 7, of Dyson vacuum cleaners. Mr. Dyson had appeared in United States television advertisements for Dyson vacuum cleaners before Maytag brought its counterclaims, and Mr. Dyson's likeness is printed on the packaging of each Dyson vacuum cleaner sold in the United States. Maytag even references these appearances in its original counterclaims.

Nor was anyone actively hiding or attempting to hide Mr. Dyson's stockholdings or the corporate ownership of the Dyson parties to the litigation. Mr. Dyson was asked to provide an affidavit about his inventions to support the motion for preliminary injunction filed by the Dyson parties at the outset of the litigation. In paragraph one of that declaration, Mr. Dyson repeated the information already found in the UK Companies House filings:

> I am a Director and the majority shareholder of Dyson James Limited, which is the direct parent of plaintiff Dyson Technology Limited and the indirect parent of Dyson, Inc. (collectively, "Dyson") . . . .

D.I. 15, ¶1.

### B.     The Rule 26(f) Joint Status Report and Maytag's Early Discovery Efforts

The parties conducted the Rule 26(f) discovery planning conference on November 18, 2005. By that date, Maytag knew or should have known all of the information described above about James Dyson's role in Dyson, Inc.'s US advertising, the existence of Dyson James Limited, Dyson James Limited's status as a direct parent of one of the Dyson parties and the indirect parent of the other, and the details about James Dyson's 2004 compensation contained in the audited financials of Dyson Limited available from Companies House.

8

Armed with this information, Maytag nonetheless expressly told the Court in the Rule 26(f) Joint Status Report that no joinder of any other parties was anticipated:

> **7.    Joinder of Parties**
>
> The parties do not anticipate the need to join any additional parties. The parties agree that all motions to join parties shall be filed on or before February 10, 2006.

D.I. 37 at 8. Maytag made a similar agreement as to motions to amend:

> **6.    Amendment of Pleadings**
>
> The parties agree that all motions to amend their pleadings shall be filed on or before February 10, 2006.

*Id.*

Maytag also did not identify the ownership of the Dyson parties as an anticipated area for discovery, as required by paragraph 8 of the Court's Rule 16 Joint Status Report order. *See id.* D.I. 36 ¶ 8 (requiring the Joint Status Report to address the "[d]iscovery contemplated by each party"). The Scheduling Order entered by the Court adopted the parties' proposed February 10, 2006 date for motions to amend or to join parties. D.I. 46 ¶ 2.

Maytag did not serve its initial document requests until December 27, 2005, even though Federal Rule of Civil Procedure 26(d) permitted service of discovery immediately after the conclusion of the November 18 Rule 26(f) discovery planning conference. At this point, Dyson's responses were due only on January 26, 2006, 15 days before the cut-off for motions to amend or join parties.

Maytag's slow service of written discovery was matched by its lack of desire to begin the discovery process. Before the Court set the Rule 16 Scheduling Conference, Dyson invited Maytag to participate in the discovery planning process as contemplated by Rules

9

26(f) and 37(g).[1]  App. Exh. E.  Maytag refused, stating that it had no obligation to engage in

a discovery planning conference until the Court set the scheduling conference.  App. Exh. F.

### C.  Maytag Did Not Complain About Dyson's Legitimate Discovery Objections.

When Maytag requested information "sufficient to show the ownership and control of

all Dyson entities" and information about the financial records of non-parties to this

litigation, the Dyson parties timely objected and stated that they would not produce

documents from their corporate parents or about the complete Dyson corporate family.  The

Dyson parties made these objections because Maytag's requests sought documents that are

not discoverable under Rule 26.  *See infra* text at 17-19 (discussing case law holding that

subsidiaries are not required to provide discovery from parent corporations simply upon

demand and that parties cannot take discovery concerning ability to satisfy a future possible

judgment).

When Maytag received these objections, the February 10, 2006, deadline for motions

to amend or join parties was just 15 days away.  Maytag, however, did not ask Dyson or the

Court to extend the deadline for motions to amend or join parties.  Maytag did not send a

letter to complain about Dyson's objections.  Maytag did not telephone Dyson's lawyers to

---

[1]     Rule 26(f) provides that:

> [t]he parties must, as soon as practicable and in any event at least 21 days before a scheduling conference is held or a scheduling order is due under Rule 16(b), confer to consider . . .

Rule 37(g) provides a sanction for parties that refuse to participate in a Rule 26(f) discovery planning conference.  Advisory Committee Note to 1980 Federal Rule of Civil Procedure 37(g) Amendment ("New Rule 26(f) imposes a duty on parties to participate in good faith in the framing of a discovery plea by agreement upon the request of any party.") (emphasis added).

initiate a meet and confer process.  Maytag did not seek to schedule a discovery dispute teleconference.

Maytag did, however, act like Dyson's objections were reasonable and appropriate. Indeed, Maytag itself has made similar objections to Dyson's discovery requests.

REDACTED

> The obvious purpose of this agreement was to provide each side with knowledge of the extent of the other side's document review . . . .

REDACTED

After receiving these materials, Maytag again made no complaint about the adequacy of Dyson's production or written discovery responses, even though the organization charts Dyson provided clearly did not include information on the corporate structure and ownership of all Dyson entities.  The parties then engaged in several more months of efforts to reach agreement on the scope of electronic discovery.  *See generally* App. Exh. I.  After much discussion, on June 15, 2006, Maytag "propose[d] that we ask the Court to extend our fact discovery cut-off by one month until October 2, 2006," "[i]n light of the magnitude of the e-discovery."  App. Exh. J.  Absent from Maytag's request, however, was any mention of

---

[2]    Maytag itself ignored this agreed exchange and did not produce its own organization charts at the agreed time.  App. Exh. G at 2, 3.

extending the already long-passed deadline for motions to amend or join new parties or any indication that the upcoming discovery might yield further motions to amend or join parties.

Finally, in late August Maytag again requested that Dyson consent to approaching the Court for an extension of the discovery schedule, this time permitting document discovery to close on November 3. The resulting stipulation was relatively detailed and addressed several issues, but once again Maytag did not broach changing the deadline for motions to amend or join parties. Nor did Maytag justify its request for an extension due to any alleged need for more time to discover the corporate ownership of the Dyson parties or any alleged "responsibility" for advertising by Dyson, Inc. *See* D.I. 133.

Maytag finally complains that Dyson "dumped" all of its documents on Maytag at the close of document discovery, and that "Maytag has supplemented its document productions to Dyson on a regular basis." Op. Br. at 5. Maytag's brief fails to reveal, however, that the timing of Dyson's production was mutually agreed; that the parties started document production at almost the same time; and that Maytag produced a significant number of documents after the deadline, including 30,000 pages on November 27, 2006. App. Exh. K. The parties' document production dates are set forth in the attached Appendix Exhibit L.

**D.    Maytag's Proposed Amended Complaint.**

Maytag's brief contains wide-ranging (and, in our view, reckless) allegations of corporate misconduct by the existing parties to this litigation. Notably, however, Maytag's proposed amended counterclaims are silent on this topic. Instead, the proposed amended counterclaims state only that Dyson James Limited, Dyson Limited, and James Dyson committed acts of false advertising. D.I. 166 Exh. 1. There are no claims about "apparent efforts of late to funnel copious sums of its assets to James Dyson personally," Op. Br. at 10,

12

or any of the other similar, unfounded allegations found in Maytag's brief, which are discussed further below, *see infra* at 19-21, and in great detail in Dyson's answering brief in opposition to Maytag's motion for preliminary injunction.

DB01:2252120.7                                                                                                063753.1002

**ARGUMENT**

I.    **MAYTAG IGNORES THE GOOD CAUSE STANDARD THAT MUST BE
SATISFIED TO PREVAIL ON A LATE-FILED MOTION TO AMEND.**

To prevail on a motion to amend or join parties after the deadline set in the

Scheduling Order, a litigant must meet not only the requirements of Rule 15(a), but also the

more stringent good cause standard of Rule 16(b) that the deadline "cannot reasonably be

met despite the diligence of the party seeking the extension." *See, e.g.*, Advisory Committee

Notes to 1983 Amendment to Federal Rule of Civil Procedure 16(b); *see generally*

*Dimensional Commc'n., Inc. v. Oz Optics, Ltd.*, 148 Fed. Appx. 82, 85 (3d Cir. 2005)

(affirming denial of motion to amend due to failure to satisfy Rule 16(b) "good cause"

standard); *Gonzalez v. Comcast Corp.*, C.A. No. 03-445-KAJ, 2004 U.S. Dist. LEXIS 17896,

at *3 (D. Del. Aug. 25, 2004) (holding mere demonstration of lack of prejudice and lack of

futility insufficient to establish good cause under Rule 16(b).

Maytag does not mention Rule 16(b) or explain why its motion satisfies the good

cause standard. This failure alone should warrant denial of Maytag's motion. *See* D. Del. L.

R. 7.1.3(c)(2) ("The party filing the opening brief shall not reserve material for the reply

brief which should have been included in a full and fair opening brief.").

Moreover, Maytag's motion does not satisfy Rule 16(b). As the facts described

above demonstrate, Maytag reasonably could have met the February 10, 2006, deadline had

it acted upon the information it already knew. For example, Maytag knew even before this

case was filed that James Dyson appeared in the print and television advertisements for

Dyson vacuum cleaners in the United States. Maytag also knew from Mr. Dyson's affidavit,

D.I. 15 ¶ 1, and Dyson Limited's public financial statements, App. Exh. A at 3, filed before

Maytag filed its counterclaims, that Dyson James Limited was the ultimate parent of Dyson,

14

Inc. and Dyson Technology Limited. Maytag also knew, from those same sources, that Mr. Dyson was a director and the majority stockholder of Dyson James Limited. All of the information from the allegedly late-produced organization chart highlighted in Maytag's brief was contained in these sources.

And, of course, information publicly available from Companies House in the United Kingdom at least as early as October 31, 2005 described Dyson Limited and many of the financial transactions discussed at Mr. Dyson's November 8 deposition. We also know that Maytag had in its possession at least the 2004 audited financial statements for Dyson Limited from Companies House; Maytag attached Dyson Limited's 2004 audited financial statement and Dyson James Limited's 2005 audited financial statements as support for its motion for a preliminary injunction, D.I. 173, Exhs. E, F, and used the 2004 audited financial statement at Mr. Dyson's deposition.[3]

And if more information were necessary, Maytag did not act with reasonable diligence to obtain it. Maytag refused to conduct the Rule 26(f) discovery planning conference until almost the last date permitted under the Federal Rules of Civil Procedure. Maytag then did not serve its written discovery requests until more than five weeks after the Rule 26(f) discovery planning conference. Maytag did not complain about Dyson's discovery responses until November 16, 2006, almost ten months after Dyson served its allegedly deficient discovery responses and over nine months after the deadline to join new

---

[3]     Even if these documents were within the scope of documents Dyson was obligated to produce (which they are not, *see infra* text at 17-19), the documents are publicly available, and both Maytag and Dyson objected to producing documents also in the public domain. In any event, because Dyson is a major competitor of Maytag, it would surprising if Maytag did not have these documents shortly after the documents were received by Companies House.

15

parties. And Maytag did not ask to extend the deadline before or after the deadline passed, until it filed this motion.

Maytag also did not act with reasonable diligence to obtain the material it uses in footnote 4 of its brief to impute liability for Dyson, Inc.'s U.S. advertising to the proposed counterclaim defendants. Maytag's supposed "discovery" of this information, however, must be viewed in the context of Maytag's failure, before Mr. Dyson's deposition, to pursue any discovery relating to such liability (as opposed to the finances of the proposed counterclaim defendants or their relationship with the existing Dyson parties). Had Maytag attempted to take this discovery earlier, the Dyson parties could and would have objected on grounds that a litigant "is not entitled to discovery for the purpose of determining whether or not there may be a factual basis for a claim he has not made." *McLaughlin v. Copeland*, 455 F. Supp. 749, 753 (D. Del. 1978). Moreover, Dyson should not be penalized for abiding by this court's discovery rules that counsel may not instruct deponents not to answer questions posed during a deposition on the basis of relevancy. Had Maytag acted with reasonable diligence on this front, the propriety of discovery in this area could have been addressed

16

much earlier and, in the unlikely event Maytag were permitted to proceed, this motion might even have been filed before the deadline.[4]

It is therefore incorrect for Maytag to state that it "has not been derelict in failing to add James Dyson, Dyson James Limited and Dyson Limited previously," Op. Br. at 8, and it is unfair to accuse Dyson with obfuscation or any eleventh-hour production of the information on which Maytag now relies.

## II.    THE DYSON PARTIES' DISCOVERY RESPONSES WERE PROPER AND APPROPRIATE.

Maytag contends that its ability to make this motion was impeded by the Dyson parties' objections to Maytag's Document Request No. 1 and to requests seeking financial information about their corporate parents. Op. Br. at 4 and n.1. Maytag even goes so far as to call these objections "yet another example of [Dyson's] abuse of discovery and its desire to frustrate Maytag's legitimate attempts to determine which culpable Dyson entity will have sufficient assets to satisfy any judgment Maytag may obtain." Id.

These accusations have no merit. First, Maytag's Document Request No. 1 sought "[d]ocuments sufficient to show the ownership and control of Plaintiffs," and Dyson

---

[4]    In any event, the two statements Maytag cites are a slim reed on which to build a case for liability. A less selective reading of Maytag's lengthy line of irrelevant and improper questioning (e.g., "So you take personal responsibility, or do you deny you have taken any responsibility?", Tr. at 288:17-19 (App. Exh. M)) reveals that Maytag has taken Mr. Dyson's testimony completely out of context. Read in its entirety, this line of the testimony demonstrates that Mr. Dyson testified only that,

REDACTED

[7]d. at 287-93. And, of course, Maytag already knew that Mr. Dyson was a director of Dyson James Limited through the public record available from Companies House. At no point did Mr. Dyson agree that he or Dyson James Limited was personally liable for the allegedly false advertising activities of Dyson, Inc, despite Maytag's repeated and improper attempts to get him to adopt such a position.

17

properly objected to these overbroad requests. Maytag, in fact, has insisted upon similar restrictions on discovering information from Whirlpool, its corporate parent.

Second, it is black letter law that Maytag may not obtain discovery of the Dyson parties' ability to satisfy a possible future judgment. *See, e.g., McCurdy v. Wedgewood Capital Mgmt. Co.*, C.A. No. 97-4304, 1998 U.S. Dist. LEXIS 18875, at *37 (E.D. Pa. Nov. 16, 1998) ("Rule 26 will not permit the discovery of facts concerning a defendant's financial status, or ability to satisfy a judgment, since such matters are not relevant, and cannot lead to the discovery of admissible evidence"); *Pinkert v. John J. Olivieri, P.A.*, C.A. No. 99-380-SLR, 2001 U.S. Dist. LEXIS 8133, at *22 (D. Del. May 24, 2001) ("The Federal Rules of Civil Procedure do not permit pre-trial discovery of a defendant's finances unless a triable issue of material fact is raised as to punitive damages.").[5]

Third, it is also black letter law that a litigant is not entitled to discover information from corporate parents and other stockholders merely upon request. *See, e.g., Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 233 F.R.D. 143, 145 (D. Del. 2005) ("Although parent corporations have been required to produce documents held by their subsidiaries, . . . the converse is not true. A subsidiary, by definition, does not control its parent corporation. Further, the separate and distinct corporate identities of a parent and its subsidiary are not readily disregarded") (granting motion to quash subpoena for information

---

[5]     *See also Gangemi v. Moor*, 268 F. Supp. 19, 22 (D. Del. 1967); *Ranney-Brown Distribs., Inc. v. E. T. Barwick Indus., Inc.*, 75 F.R.D. 3, 5 (S.D. Ohio 1977) ("Rule 26 will not permit the discovery of facts concerning a defendant's financial status, or ability to satisfy a judgment, as such matters are not relevant, and cannot lead to the discovery of admissible evidence"); *Sequa Corp. v. Gelmin*, C.A. No. 91 Civ. 8675 (DAB), 1995 U.S. Dist. LEXIS 9338, at *6-*7 (S.D.N.Y. July 6, 1995) ("As a general rule, discovery concerning an adversary party's assets . . . is properly reserved for post-judgment proceedings, when a judgment creditor seeks the information necessary to permit it to enforce the judgment.").

18

held by non-U.S. parent) (internal citations omitted); *Pennwalt Corp. v. Plough, Inc.*, 85 F.R.D. 257, 263 (D. Del. 1979) (holding that it is inappropriate to order parties to produce documents and information belonging to non-parties absent circumstances evincing a level of "control" tantamount to having "identical Boards of Directors" or where "their respective business operations are so intertwined as to render meaningless their separate corporate identities") (Schwartz, J.) (sister corporations); *Rothchild Int'l Corp. v. Liggett Group*, No. 6239, 1981 Del. Ch. LEXIS 641, at \*12 (Del. Ch. July 14, 1981) ("[T]he general rule on the subject . . . [is] that since a subsidiary corporation by definition does not control the parent corporation, it cannot be compelled through the discovery process to produce documents and information possessed solely by the parent.") (denying motion to compel discovery of parent aimed at subsidiary). Had Maytag truly wanted this information it could – and should – have used the third-party discovery processes to obtain it. *Pennwalt*, 85 F.R.D. at 263.

Maytag does not even attempt to show that the current parties exercise any control over their parent corporations. Maytag makes no allegations of fraud or inequity in the use of the corporate form, even though Maytag has now deposed Dyson, Inc., its former CEO, its current CFO, and other Dyson, Inc. employees. Maytag also makes no effort to marshal the facts needed to prove that the parent stockholder corporations "are so intertwined" with the existing parties "as to render meaningless their separate corporate identities." *Pennwalt Corp.*, 85 F.R.D. at 263. Ten months after receiving Dyson's objections, Maytag now mentions only perfectly legitimate financial transactions between stockholders – that Maytag knew or should have known about when it served these discovery requests – to support its overbroad requests.

19

Lastly, Maytag is not permitted, under the Federal Rules of Civil Procedure, to take discovery to support claims that it hopes to make in the future but that it has not included in any pleading. *See, e.g., Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1327-28 (Fed. Cir. 1990) (holding that litigant may not engage in "fishing expedition" in guise of relevant discovery) (reversing district court's denial of non-party's motion to quash subpoena); *McLaughlin v. Copeland*, 455 F. Supp. 749, 753 (D. Del. 1978) ("While a plaintiff is entitled to a full opportunity to adduce evidence in support of the cognizable claims set out in his complaint, he is not entitled to discovery for the purpose of determining whether or not there may be a factual basis for a claim he has not made") (motion to dismiss), *aff'd without opinion*, 595 F.2d 1213 (3d Cir. 1979).

In short, Maytag was never entitled to discovery concerning the existing counterclaim defendants' ability to satisfy a judgment, and Maytag should never have received such discovery in the first place. Any delay by Dyson in providing discovery on these subjects therefore could not possibly excuse Maytag's failure to comply with the Court-ordered deadline. Simply stated, it cannot be said that Dyson proceeded in bad faith by any measure in making its objections.

## III. MAYTAG WILL SUFFER NO PREJUDICE IF ITS MOTION IS DENIED.

Maytag wrongly contends that it should be permitted to join additional parties now because the existing counterclaim defendants may be "unable to satisfy any verdict against

20

Dyson in this case."  Op. Br. at 10.[6]

Presumably, Maytag is referring to three issues that it raised in the briefing supporting its motion for preliminary injunction.  The first concerns the cash management system by which the revenues of Dyson, Inc. and other Dyson affiliates .

REDACTED

REDACTED

.  Should the Court require further information, the Dyson parties

---

6

REDACTED

21

discuss the operation of this cash management system in the Declaration of John Shipsey (¶¶16-20) filed in support of the Dyson parties' answering brief opposing Maytag's motion for preliminary injunction.

The second issue concerns the transfer pricing arrangement between Dyson, Inc. and the affiliate that procures the vacuum cleaners Dyson, Inc. sells. D.I. 171 at 6-7.

REDACTED

.[7] The Declaration of John Shipsey (¶¶8-15) addresses this subject as well, and should the Court have any concerns about this subject, Sean F. Foley, a Principal in the Economic and Valuation Services practice group of KPMG LLP has submitted a Declaration which explains the Dyson parties' transfer pricing arrangements in support of the Dyson parties' answering brief opposing Maytag's motion for preliminary injunction.

REDACTED

---

[7]     "Transfer pricing refers to the pricing of goods and services within a multi-divisional organization, particularly in regard to cross-border transactions. For example, . . . goods from a parent company may be sold to a foreign subsidiary, with the choice of the transfer price affecting the division of the total profit among the parts of the company." (Definition available at http://en.wikipedia.org/wiki/Transfer_pricing). Transfer pricing arrangements specifically are regulated by the Internal Revenue Service pursuant to 26 U.S.C. § 482 and by the U.S. Treasury Department pursuant to regulations issued under that section. "These transfer price regulations have been interpreted by the IRS and practitioners for decades. Likewise, these regulations – and the specified transfer price methods – have been tested in/interpreted by the federal courts for decades." Robert F. Reilly, *Using Intercompany Transfer Price Analysis in Bankruptcy Valuations: Part I*, 23-I Amer. Bankr. Inst. J. 30 (Feb. 2004).

22

REDACTED

Maytag cites no evidence that the cash management system, the transfer pricing mechanism, or the payment of dividend payments or capital repayments to Mr. Dyson were in any way unlawful, inappropriate, or having the effect of leaving the existing counterclaim defendants unable to satisfy a judgment.

## IV.     MAYTAG HAS NOT MET ITS BURDEN TO DEMONSTRATE THAT ITS PROPOSED AMENDMENT IS NOT FUTILE.

When a movant has been unable to come forward with competent evidence of facts showing a basis for personal jurisdiction over proposed new parties, federal courts have not permitted the movant to proceed to jurisdictional discovery or a hearing on personal jurisdiction, but have denied leave to join the proposed parties. *See Bancoult v. McNamara*, 214 F.R.D. 5, 10 (D.D.C. 2003) (denying motion to amend complaint to add party and jurisdictional discovery where movant failed to substantiate its conclusory claim of personal jurisdiction over the party following prior dismissal and substantial discovery in the action); *Ajinomoto Co. v. Archer Daniels Midland Co.*, C.A. No. 95-218-SLR (D. Del. Feb. 21, 1996) (Order) (granting motion to amend to join new party under Rule 15(a) because movant had provided "some basis to assert personal jurisdiction," but "without prejudice to the newly added defendant ABP to promptly contest jurisdiction"); *cf. Hansen v. Neumueller GmbH*, 163 F.R.D. 471, 475 (D. Del. 1995) (holding "[t]here must be some competent

evidence to demonstrate that personal jurisdiction over the defendant might exist before allowing discovery to proceed").[8]

Here, Maytag has not made even the minimal showing of personal jurisdiction over the proposed counterclaim defendants that might warrant jurisdictional discovery, briefing and a hearing on personal jurisdiction. For example, Maytag contends that it "has <u>no reason to believe</u> that Dyson James Limited and Dyson Limited <u>have not</u> transacted business and committed the acts complained of in Maytag's Counterclaims to the same degree as the subsidiaries." Op. Br. at 11-12 (emphasis added). This statement turns the burdens on their head. Maytag must have a good faith belief that the proposed counterclaim defendants transacted business in Delaware or otherwise took action that falls within the scope of the Delaware long arm statute and the scope of the due process clause. It eventually must substantiate its beliefs with evidence. Merely stating, however, that it has no reason to believe that the proposed new parties <u>have not</u> transacted business in Delaware is not even sufficient to warrant jurisdictional discovery.

Maytag also notes that the proposed new parties are direct or indirect stockholders of existing parties in the case. Op. Br. at 11 ("Regardless of James Dyson's citizenship or residency – or Dyson James Limited's or Dyson Limited's place of incorporation or principal place of business – British subsidiary Dyson Technology, Inc. and U.S. subsidiary Dyson, Inc. already have availed themselves of the jurisdiction of the Court."). But owning

---

[8]    We note that this Court has held from time to time that lack of personal jurisdiction is not a sufficient basis on which to deny a motion to amend. *See, e.g., Mylan Pharmaceuticals, Inc. v. Kremers Urban Dev.*, C.A. No. 02-1628-GMS, 2003 U.S. Dist. LEXIS 20665, at *11-12 (D. Del. Nov. 14, 2003) (personal jurisdiction challenge "not a proper basis for denying [plaintiff's motion for] leave to amend the complaint"). Should the Court follow this route, Dyson James Limited, Dyson Limited, and James Dyson intend promptly to file motions to dismiss for lack of personal jurisdiction.

24

stock – even 100% of a corporation's stock – does not equate to personal jurisdiction over a parent corporation in the State of Delaware, especially where the stock that is owned is not even stock in a Delaware corporation, but rather stock in an Illinois corporation (Dyson, Inc.) and a United Kingdom corporation (Dyson Technology Limited). *See, e.g., Venoco, Inc. v. Marquez*, C.A. No. 02-1685-GMS, 2003 U.S. Dist. LEXIS 7593, at *8 (D. Del. May 5, 2003) (holding that "it is well-established that ownership of stock is not sufficient to establish personal jurisdiction consistent with due process") (citing *In re DaimlerChrysler AG Securities Litig.*, 197 F. Supp 2d 86, 98 (D. Del. 2002)); *Illinois Nat'l Bank & Trust Co. v. Gulf States Energy Corp.*, 102 Ill. App. 3d 1113, 1121 (Ill. App. Ct. 2d Dist. 1981) (holding that trial court lacked personal jurisdiction and stating that "[t]he mere fact that a corporation by which a nonresident is employed, or in which he is a *stockholder* is itself subject to Illinois jurisdiction does not subject that nonresident to jurisdiction") (emphasis added).

Maytag also notes in its brief that Dyson, Inc. and Dyson Technology Limited brought patent litigation in Delaware, but that too is not a sufficient basis on which to ground the exercise of personal jurisdiction over their indirect parent corporation and the indirect parent's majority stockholder absent some reason to pierce the corporate veil. Filing the patent litigation was the independent action of Dyson, Inc. and Dyson Technology Limited, and Maytag has not made any veil piercing or alter ego allegations in its proposed pleadings (or in its brief) that would justify disregarding the corporate structure so as to attribute the filing of the patent litigation to the any proposed new parties. Finally, as to James Dyson, Maytag provides no basis for the assertion of personal jurisdiction whatsoever. *Compare Ajinomoto Co. v. Archer Daniels Midland Co.*, C.A. No. 95-218-SLR (D. Del. Feb. 21,

25

1996) (Order) (granting motion only because movant had provided "some basis to assert personal jurisdiction").

## V. THE COURT AND DYSON WILL BE PREJUDICED BY THE AMENDMENT BECAUSE SIGNIFICANT ADDITIONAL DISCOVERY WILL BE REQUIRED.

Maytag next claims that there will be no undue prejudice because "no additional discovery other than what is outstanding will be required" and because "the legal and factual questions presented by this litigation will not change." Op. Br. at 8. This carefully chosen language, however, suggests that Maytag will insist, if its motion is granted, that all of the new parties produce all documents in their possession, custody, and control that are responsive to Maytag's existing discovery requests, thus resulting in a wholesale widening and continuation of discovery.[9]  Had Maytag launched this motion before the deadline for motions to amend or join parties, or even last June before electronic discovery began in earnest, the expense of repeating document discovery could have been avoided.  The prejudice to Dyson is great.[10]

There is also potential prejudice to the Court.  The proposed new defendants are United Kingdom citizens and, as noted above, none of them are likely subject to personal jurisdiction in the State of Delaware.  This threshold issue may take several months to sort out and potentially could result in additional discovery.

Moreover, while Maytag's complaint states only a cause of action for direct statements made by the proposed new parties, to defend these claims the proposed new

---

[9]      Maytag has already attempted to secure this discovery when it raised production of the documents and information from the parents of the existing parties during the December 7, 2006 discovery dispute conference.

[10]     Should the Court grant this motion, this expense should, we respectfully submit, be borne by Maytag.

26

parties will present facts not previously in the case and in response to those facts Maytag will undoubtedly claim either unfair surprise or seek to exclude those facts as untimely disclosed. And, should Maytag attempt to go beyond the words it uses in its proposed new pleading and attempt to prove that the proposed new parties are alter egos or induced or contributed to the allegedly false statements, then significant new information likely would be required by Maytag to prove its claims.[11]

Finally, there is prejudice to the proposed new parties due to Maytag's delay in bringing its motion. Each of these parties have strong grounds for summary judgment, yet the remaining trial schedule does not include time to seek permission to file and, if granted file, summary judgment motions. Each of the proposed new parties have strong factual arguments on the merits to counter Maytag's claims. Because Maytag waited to bring its motion until after the existing parties agreed to not file motions for summary judgment, the proposed new parties are left without a summary judgment remedy.

There is, in any event, no prejudice to Maytag because Maytag can file a separate action if its proposed new claims have true merit rather than tactical value. A separate action will allow matters like personal jurisdiction, document discovery, and summary judgment relief to proceed in due course, without the time pressures of the trial set to commence in this action on May 29, 2007.

---

[11]    Additionally, it took roughly four months for both parties to complete document production after agreeing on electronic discovery protocols. Starting electronic production anew likely will take the same amount of time from the date this motion is decided, even if personal jurisdiction were not contested and this motion were resolved by January 1, 2007.

## CONCLUSION

Maytag knew or should have known about James Dyson's appearance in U.S. advertising and about the existence and ownership of Dyson James Limited and Dyson Limited from the very outset of this litigation. Coupled with Maytag's written admission in the Joint Status Report that Maytag did not anticipate joining any other parties (filed just two months before the amendment and joinder deadline) and with Maytag's failure to complain about Dyson's document objections until November 17, 2006, Maytag has not satisfied its burden of establishing good cause under Rule 16(b).

In these circumstances, we respectfully submit that Maytag's motion should be denied.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

C. Barr Flinn (No. 4092)
John W. Shaw (No. 3362)
Adam W. Poff (No. 3990)
Andrew A. Lundgren (No. 4429)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
jshaw@ycst.com

*Attorneys for Plaintiffs Dyson Technology*
*Limited and Dyson, Inc.*

OF COUNSEL:

Garrard R. Beeney
Richard C. Pepperman, II
James T. Williams
Keith McKenna
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
(212) 558-4000

28

DB01:2252120.7

063753.1002

Steven F. Reich
Jeffrey S. Edelstein
Tamar Feder
MANATT, PHELPS & PHILLIPS, LLP
7 Times Square
New York, New York  10036
(212) 790-4500

Dated:  December 13, 2006

DB01:2252120.7                                                                                              063753.1002

## CERTIFICATE OF SERVICE

I, John W. Shaw, hereby certify that on December 20, 2006, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Francis DiGiovanni, Esquire
> James D. Heisman, Esquire
> CONNOLLY BOVE LODGE & HUTZ LLP
> The Nemours Building – 8th Floor
> 1007 N. Orange Street
> Wilmington, Delaware 19801

I further certify that on December 20, 2006, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following in the manner indicated:

> **BY E-MAIL ON DECEMBER 20, 2006 AND**
> **FEDERAL EXPRESS ON DECEMBER 21, 2006**
>
> Ray L. Weber, Esquire
> Laura J. Gentilcore, Esquire
> RENNER, KENNER, GREIVE, BOBAK,
>   TAYLOR & WEBER
> 400 First National Tower
> Akron, OH 44308
>
>
> Kimball R. Anderson, Esquire
> Stephen P. Durchslag, Esquire
> WINSTON & STRAWN LLP
> 35 W. Wacker Drive
> Chicago, IL 60601-9703

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____

C. Barr Flinn  (No. 4092)
John W. Shaw (No. 3362)
Adam W. Poff (No. 3990)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801
(302) 571-6600
jshaw@ycst.com

*Attorneys for Dyson Technology Limited
 and Dyson, Inc.*

063753.1001