# EXHIBIT N

**1**

*59*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

AJINOMOTO CO.,                     )
                                   )
            Plaintiff,             )
                                   )
     v.                            )   Civil Action No. 95-218-SLR
                                   )
ARCHER DANIELS MIDLAND             )
CO.,                               )
                                   )
            Defendant.             )

O R D E R

At Wilmington this ⟨21⟩ day of February, 1996, having
reviewed plaintiff's motion to amend its complaint (D.I. 17) and
defendant's opposition thereto (D.I. 24);

IT IS ORDERED that said motion (D.I. 17) is granted.

1.   Rule 15(a) of the Federal Rules of Civil Procedure
provides that leave to amend a complaint "shall be freely given
when justice so requires . . . ."

2.   Defendant asserts that amendment should be denied as
futile in this case because "[t]here does not appear to be any
basis to assert personal jurisdiction over ABP [International AB]
in Delaware . . . ."  (D.I. 24)

3.   Plaintiff responded by providing some basis to assert
personal jurisdiction over ABP.  (D.I. 26)  On the record presented

by the parties, the court is satisfied to allow amendment, without prejudice to the newly added defendant ABP to promptly contest jurisdiction.


_____
United States District Judge

2

**2**

EDWIN GONZALEZ, DONNA ANN MINOR, KARA PIETROWICZ and
ALBERINA ZIEMBA, Plaintiffs, v. COMCAST CORPORATION, a Pennsylvania
corporation, COMCAST CABLEVISION OF WILLOW GROVE, a Pennsylvania
corporation, COMCAST CABLE COMMUNICATIONS, INC., a Delaware corpo-
ration, SUZANE KEENAN, ALLEN R. PEDDRICK, RICHARD GERMANO,
JAMES SULLIVAN, E. MARK CONNELL, DINA GALEOTAFIORE, AL
CALHOUN, STEVE TREVISON, PHILIP ANNONE, JOHN MCGOWAN,
VINCENT JOHNSON, and MICHAEL A. DOYLE, Defendants.

Civil Action No. 03-445-KAJ

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

2004 U.S. Dist. LEXIS 17896

August 25, 2004, Decided

**SUBSEQUENT HISTORY:** Motion denied by
Gonzalez v. Comcast Corp., 2004 U.S. Dist. LEXIS
21868 (D. Del., Oct. 19, 2004)

**PRIOR HISTORY:** Gonzalez v. Comcast Corp., 2004
U.S. Dist. LEXIS 14989 (D. Del., July 30, 2004)

**DISPOSITION:** [*1] Plaintiffs' motion for leave to file
second amended complaint denied.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiffs moved for leave
to file a second amended complaint under Fed. R. Civ. P.
15. Plaintiffs sought to add a certain individual as a de-
fendant and to assert three additional state law claims.
Plaintiffs' motion was filed over seven months after the
deadline stated in the court's pretrial scheduling order.

**OVERVIEW:** Under Fed. R. Civ. P. 16(b), a pretrial
scheduling order could not be modified except upon a
showing of good cause and by leave of the district judge.
Here, to grant plaintiffs' motion would have required
substantial changes in other deadlines set forth in the
scheduling order, including the trial date. Therefore, un-
der Rule 16(b), plaintiffs were required to show good
cause why their motion should be granted. None of the
arguments proffered by plaintiffs established or even
attempted to attempted to establish the good cause re-
quired for modifying the deadlines in the scheduling or-
der. The untimeliness of plaintiffs' motion was also em-
phasized by the fact that the court had already ruled on a
summary judgment motion made by defendants. Grant-

ing plaintiffs' motion, which was filed after the discovery
deadline and only three months before the joint proposed
final pretrial order was due, would be unduly prejudicial
to defendants.

**OUTCOME:** The court denied plaintiffs' motion.

**CORE TERMS:** scheduling, good cause, deadline, state
law, pretrial

LexisNexis(R) Headnotes

*Civil Procedure > Pleading & Practice > Pleadings >*
*Supplemental Pleadings*
*Civil Procedure > Pretrial Matters > Conferences >*
*Pretrial Orders*
*Civil Procedure > Pretrial Matters > Conferences >*
*Scheduling Conferences*
[HN1] Fed. R. Civ. P. 16(b) provides that a pretrial
scheduling order shall not be modified except upon a
showing of good cause and by leave of the district judge.
Properly construed, "good cause" means that scheduling
deadlines cannot be met despite a party's diligent efforts.

**COUNSEL:** For EDWIN GONZALEZ, DONNA ANN,
KARA PIETROWICZ, ALBERINA ZIEMBA, plain-
tiffs: Victor F. Battaglia, Sr., Biggs & Battaglia, Wil-
mington, DE.

For  COMCAST  CORPORATION,  COMCAST
CABLEVISION OF WILLOW GROVE, COMCAST
CABLE COMMUNICATIONS, SUZANNE KEENAN,

ALLEN R. PEDDRICK, RICHARD GERMANO, JAMES SULLIVAN, E. MARK CONNELL, DINA GALEOTAFIORE, AL CALHOUN, STEVE TREVISON, PHILIP ANNONE, JOHN MACGOWAN, VINCENT JOHNSON, MICHAEL A. DOYLE, COMCAST CABLEVISION OF NEW CASTLE COUNTY LLC, defendants: Michael P. Kelly, McCarter & English, LLP, William M. Kelleher, Ballard, Spahr, Andrews & Ingersoll, LLP, Wilmington, DE.

**JUDGES:** Kent A. Jordan, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** Kent A. Jordan

**OPINION:**

### MEMORANDUM ORDER

On June 10, 2004, the plaintiffs filed a Motion for Leave to File a Second Amended Complaint pursuant to Rule 15 of the Federal Rules of Civil Procedure. (Docket Item ["D.I."] 165; the "Motion.") The plaintiffs seek to add Melanie Penna as a defendant (*id.* at 3) and to assert three additional claims based on Delaware state law, including claims for fraud and deceit (*id.* at 33-34), *prima facie* [*2] tort (*id.* at 34-35), and civil conspiracy (*id.* at 35-37).

[HN1] Rule 16 of the Federal Rules of Civil Procedure provides that a pretrial scheduling order "shall not be modified except upon a showing of *good cause* and by leave of the district judge ...." Fed. R. Civ. P. 16(b) (emphasis added). A scheduling order was issued in this case on August 19, 2003 and required that all motions to join other parties and to amend or supplement the pleadings be filed on or before December 1, 2003. (D.I. 31 at 2.) The plaintiffs' Motion was filed on June 10, 2004, over seven months after that deadline. To grant the plaintiffs' Motion would also require substantial changes in other deadlines set forth in the scheduling order, including the trial date. Therefore, under Rule 16, the plaintiffs

are required to show good cause why their Motion should be granted and such changes made.

The plaintiffs make several arguments in support of their Motion. None of them, however, establishes or even attempts to establish the good cause required for modifying the deadlines in the scheduling order. "Properly construed, 'good [*3] cause' means that scheduling deadlines cannot be met despite a party's diligent efforts." *Dilmar Oil Co. V. Federated Mut. Ins. Co.,* 986 F. Supp. 959, 980 (D.S.C. 1997), *aff'd* 129 F.3d 116 (4th Cir. 1997) (citing 6A Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice and Procedure § 1522.1 at 230-31 (2d ed. 1990)). Instead of focusing on why, despite diligent effort, plaintiffs could not have asserted their motion at an earlier time, within the scheduling order guidelines, the plaintiffs focus on why they believe the defendants will not be unduly prejudiced if their Motion is granted (D.I. 173 at 1-7) and why adding three more state law claims is not futile (D.I. 173 at 7-9). These arguments do not establish good cause, as defined above, for this remarkably late motion for leave to amend.

The untimeliness of the plaintiffs' Motion is also emphasized by the fact that I have already ruled on a summary judgment motion made by the defendants. (D.I. 185.) Granting the plaintiffs' Motion, which was filed after the discovery deadline and only three months before the joint proposed final pretrial order is due on September 22, 2004 (D. [*4] I. 188 at 1) would indeed be unduly prejudicial to the defendants.

Accordingly, IT IS HEREBY ORDERED that the plaintiffs' Motion (D.I. 165) is DENIED.

Kent A. Jordan

UNITED STATES DISTRICT JUDGE

Wilmington, Delaware

August 25, 2004

**3**

LEXSEE

**Richard McCurdy, Trustee, Laborers' Industrial Pension Plan, Plaintiff, v. Wedgewood Capital Management Co., Inc., Defendant.**

CIVIL ACTION No. 97-4304

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

*1998 U.S. Dist. LEXIS 18875*

**November 16, 1998, Decided
November 16, 1998, Filed**

**DISPOSITION:** [*1] Defendant's Motion for Protective Order GRANTED in part and DENIED in part. Plaintiff and Defendant's Motions for sanctions DENIED.

**COUNSEL:** For RICHARD MCCURDY, TRUSTEE, LABORERS' INDUSTRIAL PENSION PLAN, PLAINTIFF: RICHARD KIRSCHNER, M. KAY GARTRELL, KIRSCHNER AND GARTRELL, P.C., WASHINGTON, DC USA.

For WEDGEWOOD CAPITAL MANAGEMENT CO., INC., DEFENDANT: DOUGLAS N. CANDEUB, ADELMAN, LAVINE, GOLD AND LEVINE, PHILA, PA USA.

For WEDGEWOOD CAPITAL MANAGEMENT CO., INC., DEFENDANT: MARK S. MILLER, POWELL, GOLDSTEIN, FRAZER & MURPHY, ATLANTA, GA USA.

For WEDGEWOOD CAPITAL MANAGEMENT CO., INC., DEFENDANT: MARK J. FOLEY, KLETT LIEBER ROONEY & SCHORLING, PHILADELPHIA, PA USA.

For POWELL, GOLDSTEIN, FRAZER & MURPHY LLP, MOVANT: W. SCOTT SORRELS, POWELL, GOLDSTEIN, FRAZER & MURPHY, ATLANTA, GA USA.

**JUDGES:** PETER B. SCUDERI, UNITED STATES MAGISTRATE JUDGE.

**OPINION BY:** PETER B. SCUDERI

**OPINION:**

**MEMORANDUM AND ORDER**

PETER B. SCUDERI
UNITED STATES MAGISTRATE JUDGE

November 16, 1998

Before the court is Defendant, Wedgewood [*2] Capital Management Co., Inc.'s ("Defendant") Motion for Protective Order and For Sanctions for alleged misuse of subpoenas (Doc. 19); Plaintiff, Richard McCurdy, Trustee, Laborers' Industrial Pension Plan's ("Fund" or "Plaintiff") Memorandum in Opposition thereto and Counter Motion to Compel Discovery and for Sanctions pursuant to *Fed. R. Civ. P. 26(c)* (Doc. 20); Defendant's Reply (Doc. 21); Plaintiff's Reply (Doc. 24); and Defendant's Sur-Reply thereto. (Doc. 27).

**I. FACTS AND PROCEDURAL HISTORY**

Plaintiff, a pension fund, instituted the present action against defendant, an investment manager of several million dollars of plaintiff's assets, under the Employee Retirement Income Security Act ("ERISA") claiming that Defendant breached its fiduciary duty by investing $ 950,000.00 of plaintiff's funds in a Limited Partnership whose only asset was certain "Purchased Mortgage Servicing Rights," allegedly an "esoteric, unmarketable investment consisting of pools of stripped mortgage rights." *29 U.S.C. §§ 1104*(a)(1)(B) & (C); n1 and

1109(a). n2 In a two count complaint, Plaintiff alleges that the investment, which was made in 1993, was a [*3] clear violation of fiduciary duties imposed by *29 U.S.C. §§ 1104*(a)(1)(B) (Count I) and 1104(a)(1)(C) (Count II) because it violated the parties' contract for Investment Services as well as Plaintiff's Investment Guidelines, incorporated therein, that restricted Defendant to investments in "fixed income securities which were highly marketable." (Doc. 20 at 6-7); (Doc. 19 at 2-3). In their brief in support of the instant motion, Plaintiff asserts that Defendant also breached its fiduciary duty when it (1) signed limited partnership agreements, and other partnership documents in plaintiff's name without legal authority; (2) became the General Partner in the very partnership in which it had made Plaintiff a limited partner; (3) issued misleading reports that failed to inform Plaintiff of facts related to its management of Plaintiff's money including the fact that Plaintiff had been made limited partner in two partnerships and that the partnerships were created for the purpose of dealing in highly-speculative investments and to fulfill Plaintiff's own obligation to another corporation, Universal Investment Services, Inc., rather than because they were thought to be a good and appropriate [*4] investment. (Doc. 20 at 7; Doc. 24 at 2-3). According to the Plaintiff, "If [Defendant] harmed the Plaintiff in order to line its own pockets or the individual pockets of its principals, or to benefit other clients, or to satisfy other of its obligations completely unrelated to Plaintiff, then Defendant has violated its duty of loyalty to Plaintiff." (Doc. 20 at 25).

n1 *29 U.S.C. § 1104*(a) is entitled "Prudent man standard of care" and provides,

(1) a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and--

(A) for the exclusive purpose of:
(I) providing benefits to participants and their beneficiaries; and
(ii) defraying reasonable expenses of administering the plan;

(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

(C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), *29 U.S.C. § 1001* et seq.

[*5]

n2 *29 U.S.C. § 1109*(a) provides: Liability for breach of fiduciary duty: (a) Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate,

including removal of such fiduciary. A fiduciary may also be removed for a violation of section 1111 of this title.

## 1. The Investment

In 1992, Plaintiff, a Taft-Hartley jointly administered pension fund governed by ERISA, retained the services of Defendant as an investment manager of $ 7,500,000.00 of its assets. The parties executed a contract for Investment Management Services incorporating a fee schedule and investment guidelines. (Plaintiff's Ex. E). The investment guidelines were particular to Plaintiff [*6] and limited the type of investments Defendant was permitted to make to "fixed income securities" which were "high quality, marketable securities." (Doc. 20 at 7, 9; Agreement paragraph 9).

On December 28, 1992, Defendant signed a "Letter of Intent" committing Defendant to purchase $ 15 million dollars worth of Purchased Mortgage Servicing Rights ("PMSR") from Universal Investment Services, Inc. ("Universal") that Defendant would then sell to its clients. On February 24, 1993, Universal notified Defendant that it was $ 11 million short on its payments for the PMSR portfolios and indicated that Universal was prepared to sue for the money.

On April 14, 1993, Defendant purchased a 49.5% interest in a Maryland Limited Partnership, known as "Purchased Mortgage Servicing Rights III, Limited Partnership" (PMSR III) with $ 950,000 of Plaintiff's assets. The PMSR III limited partnership purchased PMSRs as its only asset. (Pls. Mem. at 7 & Ex. F). Plaintiff later learned that the PMSR III limited partnership was, itself, a limited partner in a partnership in which the Dovenmuehle Mortgage Co. served as general partner (the "Dovenmuehle limited partnership"). (Doc. 24 at 4). The Dovenmuehle [*7] limited partnership, in turn, acquired "FNMA" purchased mortgage servicing rights. (Doc. 20 at 9). n3

n3 Plaintiff asserts "thus from the very inception of the 1993 investment, and unknown to plaintiff, there was a

three-tiered construct or pyramid; the Pension Fund and Pennsylvania State Workers' Insurance Fund limited partnership (PMSR III) which, in turn, had a limited partnership arrangement with Dovenmuehle, which, in turn, acquired FNMA purchased mortgage servicing rights." (Doc. 20 at 9).

Plaintiff alleges, further, that Defendant signed the PMSR III limited partnership agreement on behalf of both limited partners of PMSR III, Plaintiff and Pennsylvania State Workers' Insurance Fund ("Pa.SWIF"). (Doc. 20 at 8 n. 8, 16). While Plaintiff paid $ 950,000 for 46.5% of PMSR III its co-limited partner, Pa.SWIF, paid only $ 899,999 for a 49.5% interest in PMSR III; (Doc. 20 at 22). In 1994, Defendant succeeded Universal Equity Funding, Inc. as general partner of PMSR III. (Doc. 20 at 8, n. 8).

In 1996, the PMSR [*8] investment was sold for $ 363,433.16. This action was filed in July, 1997. n4 On June 3, 1998, Plaintiff issued and served a subpoena on the City of Philadelphia and its Board of Pensions and Retirement, a non-party former client of the Defendant, without concurrent notice to Defendant's attorney of record. n5 (Def. Mem at 3). The subpoena commands the City of Philadelphia and its Board of Pensions and Retirement to "produce and permit inspection and copying" of "all records related to investments made, administered, or sold by Defendant Wedgewood Capital Management Company, Inc. pursuant to its investment management contract with either the City of Phila. and/or the Board of Pensions and Retirement, excluding documents protected by attorney-client privilege or as work product." (Doc. 19, Ex. A). The records were to be produced on "June 19, 1998" at "10 a.m." (Doc. 19, Ex. A).

n4 The complaint was amended in December, 1997.

n5 Defendant's attorney of record is Douglas N. Candeub, Esq., of Adelman, Lavine, Gold, and Levin. Def. Mem at 3.

[*9]

On June 17, 1998, two days prior to the date set for

producing the documents, the Defendant was notified of the subpoena during a telephone conversation with Plaintiff's counsel. (Doc. 19 at 4).

On June 24, 1998, plaintiff's counsel received the requested documents which had been forwarded by the City of Philadelphia on June 23, 1998 in response to the subpoena. (Doc. 19, Ex. C) (Letter from Judith E. Ryan, Esq.).

During the June 17, 1998, telephone conversation notifying Defendant of the subpoena, plaintiff's counsel explained that the failure to provide Defendant with a copy of the subpoena earlier was "inadvertent." (Doc. 19 at 4). In a letter dated June 17, 1998, counsel for Plaintiff Laborers Fund forwarded a copy of the subpoena to Defendant and explained, again, that the copy had "inadvertently" not been sent to him. (Doc. 19, Ex. B). The letter and copy of the subpoena enclosed therewith was not received by counsel for Defendant until July 23, 1998. Def. Ex. B (notation: "received 7/23/98"). Thus, far, Plaintiff has also issued or will issue subpoenas to the following persons or entities:

(1) Dovenmuehle Mortgage Company, L.P., the limited partnership in which Dovenmuehle [*10] Mortgage Company, Inc., was the General Partner and in which PMSR III was a limited partner. With the Pension Fund's $ 950,000 Wedgewood bought in the Fund's name a 49.5% limited partnership interest in the PMSR III Limited Partnership, which then was itself made a limited partner in the Dovenmuehle Mortgage Company Limited Partnership;

(2) Dovenmuehle Mortgage Co., Inc.;

(3) James Casselberry, former President of Wedgewood, brought in by Wedgewood in part to deal with the "servicing rights" problem investments, including that of PMSR III;

(4) Michael Lucas, former Vice-President of Wedgewood, who expressed grave concerns about the limited partnership investments, including PMSR III;

(5) Nora Bustamonte, former Vice President of Wedgewood, who dealt with "servicing rights" such as those owned by the PMSR III limited partnership in which the Pension Fund was a limited partner;

(6) Universal Equity Funding, Inc., c/o Jeffrey Kosow, which was the General Partner in the PMSR III partnership to which the Fund belonged as a limited partner;

(7) Universal Investment Services, Inc., an affiliate of Universal Equity Funding, Inc., which secured the 1992 "Letter of Intent" from Wedgewood [*11] to buy the mortgage servicing rights, which were subsequently purchased by PMSR III;

(8) Frank Tibbs, Asset Management Advisors, L.C., who was an independent consultant brought in by Wedgewood specifically in regard to the "servicing rights" investments of PMSR III and other limited partnerships which Wedgewood invested in for other, similarly situated, pension funds;

(9) Daryl C. Dennis, former President and Chief Investment Officer of Wedgewood who signed the PMSR III agreement on behalf of the Pension Fund, and also on behalf of the only other limited partner, the Pennsylvania State Workers' Insurance Fund (Pa.SWIF);

(10) Powell, Goldstein, et al. (Former counsel to Wedgewood) who advised plaintiff's counsel that it was in close contact with defendant Wedgewood and was in fact awaiting Wedgewood's responses so that it could determine which documents it would withhold on the basis of privilege; n6 (Doc. 20, Ex.L) and

(11) Malcolmn Pryor, individually, and as the principal in four financial adviser/broker entities in which he is an owner (in addition to Defendant). (Doc 20 Ex. B). n7

(Doc. 20 at 5-6). Discovery must be completed by February 8, 1999.

n6 The subpoena was quashed on July 22, 1998, but the Powell firm produced documents in response to an identical subpoena issued from federal district court in the District of Columbia, where the law

firm also has offices. (Doc. 20 at 6).

[*12]

n7 Defendant was established and owned by Pryor, McClendon, Counts & Co., Inc. ("PMC"), a Philadelphia Brokerage firm/investment banker, and/or by the individual principals of PMC, all of whom served as directors of Defendant and, at various times, officers as well.

## II. STANDARD OF REVIEW

Defendant has filed the instant Motion for a Protective Order n8 pursuant to *Fed. R. Civ. P. 26(c)* n9 based on Plaintiff's failure to give Defendant prior notice of serving subpoenas as required by *Fed. R. Civ. P. 45*. n10 Rule 26(c) provides that a person or party from whom discovery is sought may move the court, for good cause shown, to issue an order protecting the person or party from "annoyance, embarrassment, oppression, or undue burden or expense." *Fed.R.Civ. P. 26(c)*. This rule authorizes the court to order that certain matter not be inquired into, or that the scope of the disclosure or discovery be limited to certain matters. *Moore's Federal Practice 3d, § 26.105*[5] (1998). The court is authorized to issue a protective order only after a showing that good cause exists for the protection [*13] of the material. Id. The party requesting the protective order has the burden of demonstrating good cause. *Glenmede Trust Co. v. Thompson, 56 F.3d 476, 483 (3d Cir. 1995)* (stating party seeking protective order must demonstrate that good cause exists for protection of particular material and holding that parties failed to sustain burden of demonstrating specific injury from public dissemination of privileged documents). "Good cause" is established when it is specifically demonstrated that disclosure will cause a clearly defined and serious injury. Id. In determining whether "good cause" exists for the issuance of a protective order, courts apply a balancing of interests standard. see *In re Eli Lilly & Co. Proza Prod. Liab. Lititig., 142 F.R.D. 454, 460 (S.D.Ind. 1992)* (motion by drug manufacturer for entry of protective order redacting names from documents); *Arenson v. Whitehall Convalescent & Nursing Home, Inc., 161 F.R.D. 355, 358 (N.D.Ill. 1995)* (information sought had significant probative value and privacy interests were sufficiently protected by redaction of names). Irrelevancy satisfies the

good cause requirement. *Smith v. Dowson, 158 F.R.D. 138, 140* [*14] *(D.Minn. 1994)* (granting protective order on ground that actions taken by arresting officers in subsequent investigations, after release of erroneously arrested individual, is wholly irrelevant to plaintiff's claim that his arrest and detainer was without probable cause and in violation of his civil rights); *Hall v. Harleysville Ins. Co., 164 F.R.D. 172, 173 (E.D.Pa. 1995)* (although contents of consumer credit reports were relevant to action, names and other identifying information were not and were subject to redaction).

n8 Defendant asserts that the June 3, 1998, subpoena was served by Plaintiff "without notice to Defendant's attorney of record" and is "so broad categorically as to encompass everything bearing on [Defendant]" and "stands to interfere detrimentally with their business relations with . . . former or current clients." Def. Mem at 3, 5. Defendant claims that "If [they] had received advance notice of the subpoena served on the City of Philadelphia, they would have moved for a protective order with respect to the discovery sought thereby."

n9 *Fed. R. Civ. P. 26(c)* governing "Protective Orders" provides,

Upon motion by a party or by the person from whom discovery is sought, accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court in which the action is pending . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or

more of the following:

(1) that the disclosure or discovery not be had;

(2) that the disclosure or discovery may be had only on specified terms and conditions, including a designation of the time or place;

(3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery;

(4) that certain matters not be inquired into, or that the scope of the disclosure or discovery be limited to certain matters;

(5) that discovery be conducted with no one present except persons designated by the court;

(6) that a deposition, after being sealed, be opened only by order of the court;

(7) that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way;

(8) that the parties simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court.

[*15]

n10 *Fed. R. Civ. P. 45(b)(1)* provides that,

. . . Service of a subpoena upon a person named therein shall be made by delivering a copy thereof to such person . . . Prior notice of any commanded production of documents and things or inspection of premises before trial shall be served on each party in the manner prescribed by Rule 5(b)."

*Fed. R. Civ. P. 5(b)* provides,

Service shall be made upon the attorney . . . by delivering a copy to the attorney or party or by mailing it to the attorney or party at the attorney's or party's last known address or, if no address is known, by leaving it with the clerk of court.

In the event that a Motion for Protective Order is granted, *Fed. R. Civ. P. 26(c)* provides that sanctions may be imposed in accordance with the provisions of *Fed. R. Civ. P. 37(a)(4)*, which sanctions may include, but are not limited to, reasonable attorney's fees. n11 *Cuthbertson v. Excel Industries, Inc. 179 F.R.D. 599, 1998 WL 237687* at *6 (D. Kan. 1998).

n11 The provisions of *Fed. R. Civ. P. 37(a)(4)* "Expenses and Sanctions" apply to the award of expenses incurred in relation to a Motion for Order Compelling Disclosure or a Motion for Protective Order filed pursuant to *Fed. R. Civ. P. 26(c)*. Rule 37(a)(4)(A), (B), & (C) provides,

(A) If the Motion [for Order Compelling Disclosure] is granted, or if the disclosure or requested discovery is provided after the motion was filed, the court shall, after affording an opportunity to be heard, require the party or deponent whose conduct necessitated the Motion or

Case 1:05-cv-00434-GMS    Document 199-7    Filed 12/20/2006    Page 15 of 24

Page 7
1998 U.S. Dist. LEXIS 18875, *15

the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion, including attorney's fees, unless the court finds that the motion was filed without the movant's first making a good faith effort to obtain the disclosure or discovery without court action, or that the opposing parties non disclosure, response, or objection was substantially justified, or that other circumstances make an award of expenses unjust.
(B) If the Motion [for Order Compelling Disclosure] is denied, the court may enter any protective order authorized under Rule 26(c) and shall, after affording an opportunity to be heard, require the moving party or the attorney filing the motion or both of them to pay to the party or deponent who opposed the motion, the reasonable expenses incurred in opposing the motion, including attorney's fees, unless the court finds that the making of the motion was substantially justified or that other circumstances make an award of expenses unjust.
(C) If the Motion [for Order Compelling Disclosure] is granted in part and denied in part, the court may enter a protective order authorized under 26(c) and may, after

affording an opportunity to be heard, apportion the reasonable expenses incurred in relation to the motion among the parties and persons in a just manner.

[*16]

As a result of the alleged misuse of the subpoena by Plaintiff, Defendant requests that this court enter an order imposing the following sanctions for repeated failure to provide notice to Defendant prior to serving subpoenas on third parties: (1) limiting fund to discovery into matters pertaining to Plaintiff's dealings with Defendant and not matters concerning other current or former clients; (2) directing Plaintiff to give adequate advance notice to Defendant before serving subpoenas on third party witnesses; (3) directing Plaintiff to pay Defendant's reasonable attorney's fees incurred in filing the Motion and that Plaintiff be prohibited from utilizing or disclosing the City of Philadelphia records or any information obtained from them and return any copies received to the custodian of records of the City of Philadelphia.

In the instant Motion, Defendant does not object to all information sought by the Plaintiff nor does Defendant object, on relevance grounds, to every subpoena issued by the Plaintiff. Instead, Defendant objects only to (1) "third party discovery sought from the City of Philadelphia;" (2) discovery from "other present or former clients;" and (3) "to subpoenas [*17] directed to various entities in which [defendant's] director Malcolmn Pryor is involved for purposes of fishing into a 'piercing the corporate veil argument'." (Doc. 27 at 5).

Plaintiff has responded to Defendant's Motion by filing a Counter Motion to Compel Discovery pursuant to *Fed. R. Civ. P. 37(a)(2)(B)*. Rule 37(a)(2)(B) provides that "If a party fails to make a disclosure required by Rule 26(a), any other party may move to compel disclosure and for appropriate sanctions . . . The motion must include a certification that the movant has in good faith conferred or attempted to confer with the party not making the disclosure in an effort to secure the disclosure without court action." *Fed. R. Civ. P. 34(b)* requires that a request for documents must "describe each item and category with reasonable particularity." Moreover, "a

party seeking discovery must demonstrate a real, practical need for the information." *Consolidated Rail Corp. v. United States, 812 F.2d 1444, 1463 (3d Cir. 1987).*

Plaintiff argues that this court should dismiss Defendant's Motion for Protective Order because the documents sought and obtained pursuant to the subpoena served on the City of Philadelphia [*18] City Employees Pension Fund, a public city agency, were discoverable under either state or city right-to-know laws, *65 P.S. § 66.1* et seq. n12 and Section 5-1104 n13 of the Philadelphia Home Rule Charter. n14 Plaintiff also moves to compel discovery pursuant to *Fed.R.Civ.P. 26(a)* n15 and *26(c)* n16 seeking an order that: (1) Defendant produce within seven (7) days, unredacted copies documents already produced and any requested, relevant documents withheld in their entirety or, in the alternative that, Defendant submit any allegedly undiscoverable documents for review by this court in camera with written explanations as to why the entire document or portions thereof are protected from discovery and allowing Plaintiff an opportunity to respond thereto; and (2) Defendant reimburse Plaintiff for reasonable attorney's fees expended in filing the Motion to Compel document production pursuant to *Fed. R. Civ. P. 26(c)* which states in relevant part:

> If the motion for protective order is denied in whole or in part, the court may, on such terms and conditions as are just, order that any party or other person provide or permit discovery. The provisions of Rule 37(a)(4) apply to the [*19] award of expenses incurred in relation to the motion.

n12 Plaintiff claims that "Plaintiff McCurdy and Laborers' Local 57 Industrial Pension Fund [Fund] are clearly citizens within the meaning of the state statute, and documents requested were clearly public records." *PG Pub. Co. v. County of Washington, 638 A.2d 422, 162 Pa. Commw. 196 (1994).*

n13 Plaintiff also claims that "Sec. 5-1104 of the Philadelphia Home Rule Charter clearly entitled plaintiff to the

city's records."

> Section 5-1104. Public right to Inspection. City records, the disclosure of which would invade a person's right to privacy, hinder law enforcement, endanger the public safety, or breach a legally recognized duty of confidence, or the nondisclosure of which is legally privileged, or which have been prepared for or by the Law Department for use in actions or proceedings to which the City is or may be a party, shall not be available for public inspection. Except as herein provided, all other City records shall be open for public inspection but the officer, department, board, or commission or other governmental agency of the City having the care and custody of such records may make reasonable regulations governing the time, place, and manner of their inspection and for the purposes of archival preservation, copies of City records may be substituted in lieu of original records.

[*20]

n14 Plaintiff also contends that the Defendant's Motion should be dismissed for failure to comply with the requirements of Rule 26(c) and Local Rule 26.1(f) providing that all discovery motions include a "Certificate" reciting that counsel made a "reasonable effort" to resolve the discovery dispute. Defendant's Motion [for Protective Order] must be accompanied by a certification that the

movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. *Fed.R. Civ. P. 26(c)*; Local Rule 26.1(f)("No motion or other application pursuant to the Federal Rules of Civil Procedure governing discovery or pursuant to this rule shall be made unless it contains a certification of counsel that the parties, after reasonable effort, are unable to resolve the dispute."). Because Defendant has attached the proper certification reciting efforts made by counsel to resolve this dispute to his Motion for Protective Order, we reject this argument as meritless.

> n15 *Fed.R.Civ.P. 26(a)* provides:
> (1) Initial Disclosures. Except to the extent otherwise stipulated or directed by order or local rule, a party shall, without awaiting a discovery request, provide to the other parties"
> (A) the name and, if known, the address and telephone number of each individual likely to have discoverable information relevant to disputed facts alleged with particularity in the pleadings identifying the subjects of the information;
> (B) a copy of, or a description by category and location of, all documents, data compilations, and tangible things in the possession, custody or control of the party that are relevant to disputed facts alleged with particularity in the pleadings;
> (C) a computation of any category of damages claimed by the disclosing party making available for

> inspection and copying as under Rule 34 the documents or other evidentiary material, not privileged or protected from disclosure on such computation is based, including materials bearing on the nature and extent of injuries suffered; and
> (D) for inspection and copying as under Rule 34 any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment.

[*21]

> n16 *Fed.R.Civ.P. 26(c)* provides that
> If the motion for protective order is denied in hole or in part, the court may, on such terms and conditions as are just, order that any party of other person provide or permit discovery. The provisions of Rule 37(a)(4) apply to the award of expenses incurred in relation to the motion.

*Federal Rule of Civil Procedure 26(b)(1)* n17 provides that the scope of discovery need not be confined to matters of admissible evidence, but may encompass that which appears "reasonably calculated to lead to the discovery of admissible evidence." *Fed.R.Civ.P. 26(b)(1)*. The burden of showing that the requested discovery is not relevant is on the party resisting discovery. see *In re Bell Atlantic Securities Litigation, 1993 WL 514408 (E.D.Pa. 1993)*(unreported).

n17 Fed. R. 26(b)(1) provides as follows:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, the information sought need not be admissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

[*22]

Relevancy is to be broadly construed and is not limited to the precise issues set out in the pleadings or to the merits of the case. *Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351, 57 L. Ed. 2d 253, 98 S. Ct. 2380 (1978)*. Instead, discovery requests may be deemed relevant if there is any possibility that the information may be relevant to the general subject matter of the action. Id. The relevance standard will depend on the context of the particular action, and the determination of relevance is within the district court's discretion. *Thompson v. Glenmeade Trust, 1995 WL 752422*, at *2 n.4 (E.D.Pa. 1995) ("district courts are empowered with broad discretion to manage discovery").

### III. DISCUSSION

### 1. THE PHILADELPHIA SUBPOENA: Prior Notice to Parties

Defendant alleges that Plaintiff violated *Fed. R. Civ. P. 45(b)(1)* when it issued and served a subpoena for production of documents on third party, City of Philadelphia and Board of Pensions and Retirement (City Employees Pension Fund), without prior notice to Defense counsel. Under Rule 45(b)(1), prior notice of any demand for production of documents before trial must be served on each party [*23] pursuant to Rule 5(b), the Rule covering service and filing of pleadings and other

papers. n18

n18 Before the 1991 amendments to *Fed.R.Civ.P. 45*, the only way to collect documentary evidence from non-parties was through a subpoena duces tecum as authorized by Rule 45(b). But such a subpoena could not be issued independently of a deposition of the custodian of the documentary evidence. In 1991, Rule 45 was revised to "authorize the issuance of a subpoena to compel a non-party to produce evidence independent of any deposition." 1991 Amendment Notes of Advisory Committee on Rules. As noted, the Rule also adopted a special notice requirement in these circumstances. "Prior notice of any commanded production of documents and things or inspection of premises before trial shall be served on each party in the manner prescribed by Rule 5(b)." *Fed.R.Civ.P. 45(b)(1)*.

A party issuing a subpoena to a nonparty for the production of documents during discovery must provide prior notice to all parties to the litigation. Fed. R. [*24] Civ. P. 45(b)(1) ("Prior notice of any commanded production of documents and things . . . shall be served on each party in the manner prescribed by Rule 5(b)."); *Spencer v. Steinman, 179 F.R.D. 484, 487 (1998)*. Rule 5(b) provides that a party can make service either by delivery or mail to the opposing parties attorney. *Fed.R.Civ.P. 5(b)*. When service is by mail, it is complete upon mailing. *Fed. R. Civ. P. 5(b)*. The term "prior notice" has been interpreted to mean notice prior to service of the subpoena on the nonparty rather than prior to document production. See e.g. *Biocore Medical Technologies, Inc. v. Khosrowshahi, 181 F.R.D. 660, 1998 U.S. Dist. LEXIS 16169, 1998 WL 724003* at *5 (D.Kan. 1998). The purpose of prior notice is to afford other parties an opportunity to object to the production or inspection and to obtain the materials at the same time as the party who served the subpoena. Id. (citing *Fed.R.Civ.P. 45* committee note, 1991 amendments and *Seewald v. IIS Intelligent Information Sys., Ltd., 1996 WL 612497* at *4 (E.D.N.Y. 1996)).

In the instant case, Fund failed to provide notice to

Defendant until June 17, 1998, approximately two weeks after the subpoena was issued and [*25] served (June 3, 1998), two (2) days prior to the date set for producing the documents (June 19, 1998), and seven (7) days prior to actual receipt of the requested documents (June 24, 1998). Def. Exhibits A & C. n19 Therefore, the Plaintiff violated Rule 45(b)(1) by giving Defendant late notice of the subpoena. It also appears to be undisputed that Plaintiff's counsel has served at least seven (7) additional subpoenas on third parties and failed to serve any of the subpoenas on Defendant's counsel prior to the time they were served on third parties. (Doc. 19 at 5; Doc. 21 at 2-3; Doc 27 at 2; Doc. 24 at 7). However, Defendant concedes that, unlike in the case of the Philadelphia subpoena, Defendant "independently learned of [at least] six of these subpoenas soon after they were issued" and no harm resulted from the additional violations of Rule 45(b)(1) by the Plaintiff. (Doc. 19 at 5).

n19 Although the letter and copy of the subpoena enclosed therewith was not received by counsel for Defendant until July 23, 1998, Def. Ex. B (notation: "received 7/23/98"), as noted, when service is by mail, it is complete upon mailing. *Fed. R. Civ. P. 5(b)*.

[*26]

Courts generally respond to Rule 45(b)(1) violations by striking the subpoenas, *Biocore Medical Technologies v. Khosrowshahi, 181 F.R.D. 660, 1998 U.S. Dist. LEXIS 16169, 1998 WL 724003* at *5 (D.Kan 1998)(citing *Santiago-Lugo, 904 F. Supp. 43, 47 (D.P.R. 1995))*, or allowing opposing counsel an opportunity to object. *Biocore Medical Technologies v. Khosrowshahi, 181 F.R.D. 660, 1998 U.S. Dist. LEXIS 16169, 1998 WL 724003* at *5 (D.Kan 1998)(citing *Callanan v. Riggers and Erectors, Inc. 149 F.R.D. 519, 519 (D.VI. 1992))*. In this case, such remedies are inadequate because the documents sought by the Philadelphia subpoena have already been obtained by the Plaintiff.

The potential harm arising from such violations was addressed by the court in *Spencer v. Steinman, 179 F.R.D. 484, 489 (E.D.Pa. 1998)*, where the court stated:

The risks attached to misuse of the subpoena power are great. Under this delegation of public power, an attorney is licenced to access, through a nonparty with no interest to object, the most personal and sensitive information about a party. By failing to receive prior notice of the information sought from the nonparty, a party is deprived of its greatest safeguard under [*27] the Rule, i.e., the ability to object to the release of the information prior to its disclosure. Therefore, the loss of the opportunity to object prior to the release of the information caused injury to Defendant. Moreover, misuse of the subpoena power is not limited to the harm it inflicts upon the parties, it also compromises the integrity of the court's processes. When the power is misused, public confidence in the integrity of the judicial process is eroded. Therefore, the failure to provide prior notice to Defendant of the subpoenas cause[s] injury to the public. n20

n20 "Abuse of the subpoena power is not only a violation of the Federal Rules of Civil Procedure, but potentially exposes offending counsel to discipline under the Pennsylvania Rules of Professional Conduct as a violation of the rights of third parties." *Spencer v. Steinman, 179 F.R.D. 484, 489 n. 7 (E.D.Pa. 1998)* (citing Pa. Rules of Professional Conduct 4.4). "Such abuse may also be actionable as a tort." Id. (citing Fed. R.Civ.P. committee note, 1991 amendment; *Santiago-Lugo, 904 F. Supp. at 48))*.

[*28]

Courts have held, however, that when opposing counsel have notice and sufficient time to object, they are not prejudiced by a violation of Rule 45 notice requirement. *Seewald v. IIS Intelligent Info. Sys. Ltd., 1998 U.S. Dist. LEXIS 7458, 1996 WL 310763 (E.D. Pa. 1998); Biocore Medical Technologies v. Khosrowshahi, 181 F.R.D. 660, 1998 U.S. Dist. LEXIS 16169, 1998 WL 724003* at *5 (D.Kan 1998) (ten days sufficient). Although the instant Defendant did receive actual notice of the subpoena prior to the date set for document

1998 U.S. Dist. LEXIS 18875, *28

production, the Plaintiff does not argue nor can this court conclude that two days constitutes a sufficient opportunity for Defendant to object thereto.

However, I find that Defendant, in this case, suffered little, if any, actual prejudice as a result of Plaintiff's violation of the notice requirement because the parties appear to concede that much of the information covered by the challenged Philadelphia subpoena could have been obtained pursuant to Pennsylvania statute, and since Defendant has not demonstrated that they would be entitled to entry of a protective order even if they had been given proper notice. Therefore, this court will not impose sanctions on Plaintiff at this time. n21 However, [*29] Plaintiff shall be placed on notice that any future failure to comply with the Federal Rules will meet with proof preclusive sanctions or an order directing Plaintiff to pay counsel fees incurred by Defendant in bringing the violation to the attention of the Court.

n21 Because the parties appear to concede that much of the information covered by the challenged Philadelphia subpoena could have been obtained pursuant to Pennsylvania statute, and since Defendant has not demonstrated that they would be entitled to entry of a protective order even if they had been given proper notice, I find that imposition of sanctions would be out of proportion to the culpability of defendants and the prejudice suffered by plaintiffs.

Defendant does not explicitly dispute Plaintiff's claim that they would be entitled to much of the information covered by the subpoena pursuant to the Pennsylvania "Right-to-Know" law, *65 Pa.C.S.A. § 66.1* et seq., or § 5-1104 of the Philadelphia Home Rule Charter. (Doc. 20 at 3-4). Instead, Defendant only conclusorily asserts that the scope of the subpoena is greater than that of the statute and baldly cites *65 P.S. § 66.1* which defines "public records" of which Pennsylvania citizens have a right to know. (Doc. 21 at 4) (quoting statute). In any event, we can not conclude that Defendant would have been entitled to a protective order precluding Plaintiff from

obtaining the documents sought from the City of Philadelphia Municipal Employees Pension Fund. Defendant alleges that they would have successfully sought a protective order in connection with the document request pursuant to *Fed. R. Civ. P. 26(c)* because (1) the subpoena sought irrelevant information and was unlimited as to (a) time, (b) written investment guidelines similar to those of Plaintiff and (c) type of investment; and (2) would interfere with the business relations between Defendant and its current or former clients, Def. Mem. at 5; (Doc. 19 at 8). Defendant states that their "dealings with the City of Philadelphia, or other former customers is not relevant to the subject matter presented in this action" . . . and will "interfere with the business relations between [Defendant] and its current or former clients." (Doc. 21 at 5); see *In re Bell Atlantic Securities Litigation, 1993 WL 514408 (E.D.Pa. 1993)*(unreported) ("The burden of showing that the requested discovery is not relevant is on the party resisting discovery . . . the party objecting to discovery must state with specificity how each request is not relevant or is unduly burdensome, overly broad or oppressive"). There is at least a reasonable possibility that the request for production here, from another client of the Defendant, a pension fund possibly with similar investment guidelines and identical breaches thereof, is relevant to the subject matter involved in the pending action, if not the specific claims themselves. As such, and because Defendant does not appear to have met the burden of demonstrating with specificity that the requests are oppressive or unduly burdensome, see *In re Bell Atlantic Securities Litigation, 1993 WL 514408 (E.D.Pa.1993)*(unreported)("the fact that answering the [requests] will . . . interfere with defendant's business operations . . . is not alone sufficient reason for disallowing them"), we can not conclude that the Defendant's Motion for Protective Order would have been granted.

[*30]

## II. RELEVANCY OF OTHER INFORMATION SOUGHT BY THE PLAINTIFF PLAINTIFF'S MOTION TO COMPEL

Defendant argues that certain additional information to which Plaintiff claims to be entitled is not subject to discovery because it is sought by the Plaintiff for an irrelevant purpose. Rule 26(c) authorizes the court to order that certain matters not be inquired into, or that the scope of the disclosure or discovery be limited to certain matters. *Fed. R.Civ.P. 26(c)(4)*; see, e.g., *Johnson v. Mortham, 164 F.R.D. 571, 572 (N.D.Fla. 1996)* (protective order may be used to limit the scope of discovery to just those issues that are left to be decided in case); *Chemical Bank v. Dana, 149 F.R.D. 11, 13 (D.Conn. 1993)* (in action brought on guaranty, court limited discovery to documents containing information relating to defendant's general business affairs, and specified company and property, and excluded inquiries regarding other litigation and business and personal interests). A protective order that limits the scope of discovery, like all Rule 26(c) protective orders, requires a showing of good cause. *Smith v. Dowson, 158 F.R.D. 138, 140 (D. Minn. 1994)* (protective order in civil [*31] fights litigation). As noted, a showing of irrelevancy of the proposed discovery can satisfy the good cause requirement for a protective order. *Smith v. Dowson, 158 F.R.D. 138, 140 (D.Minn. 1994)* (granting protective order on ground that actions taken by arresting officers in subsequent investigations, after release of erroneously arrested individual, is wholly irrelevant to plaintiff's claim that his arrest and detainer was without probable cause and in violation of his civil rights); *Navel Orange Admin. Comm. V. Exeter Orange Co., 722 F.2d 449, 454 (9th Cir. 1983)* (not error for trial court to grant protective order barring defendants from discovering matters related to affirmative defenses that are not cognizable in enforcement proceeding because such discovery is irrelevant).

Accordingly, we must determine whether Plaintiff seeks any information for an irrelevant purpose. Under *Federal Rule of Civil Procedure 26(b)(1)*, parties may obtain discovery regarding "any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense

of any other [*32] party" n22 Under Rule 26(b)(1) "the information sought need not be admissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence."

> n22 Thus, *Fed. R. Civ. P. 26(b)(1)* sets forth a two step process in determining the scope of discovery; first, whether the information sought is relevant and, if so, whether the information is privileged. In the instant case, Defendant does not assert that the undisclosed information sought by the plaintiff is privileged. Rather, Defendant asserts only that the information is irrelevant.

Relevancy is to be broadly construed and is not limited to the precise issues set out in the pleadings. *Surety Association of America v. Republic Insurance Company, 388 F.2d 412, 414 (2d Cir. 1967)*. Relevancy has been defined, for purposes of discovery, as encompassing "any matter that could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund Inc. v.* [*33] *Sanders, 437 U.S. 340, 351, 57 L. Ed. 2d 253, 98 S. Ct. 2380 (1978)*. However, "practical considerations dictate that the parties should not be permitted to roam in shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so." *Surety, 388 F.2d at 414*.

A party seeking a protective order on the ground that the documents sought are irrelevant "must demonstrate to the court that the requested documents either do not come within the broad scope of relevance defined pursuant to [*Federal Rule of Civil Procedure] 26(b)(1)* or else are of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Myrin v. Federal Ins. Co., 1996 U.S. Dist. LEXIS 8560, No. 95-7903, 1996 WL 355347* at *3 (E.D. Pa. June 19, 1996)(Yohn, J.) (quoting *Musicom Int'l. Inc. v. Serubo, 1994 U.S. Dist. LEXIS 15245, No. 94-1920, 1994 WL 590619* at *2 (E.D. Pa. Oct. 27, 1994)(Hutton,J.). Thus, the party resisting production of discovery ordinarily bears the burden of establishing lack of relevancy. *Thompson v. Glenmede Trust Co., 1995 U.S. Dist. LEXIS 18780, No. 92-5233, 1995 WL 752443* at *2 (E.D. Pa.

Dec. 19, 1995). Since the [*34] precise boundaries of the Rule 26 relevance standard will depend on the context of the particular action, the determination of relevance is within the district court's discretion. See *DeMasi v. Weiss, 669 F.2d 114, 121 (3d Cir. 1982)*.

## 1. PIERCING THE CORPORATE VEIL

To the extent that Defendant objects "to subpoenas directed to various entities in which Malcolmn Pryor, a member of Defendant's Board of Directors, is involved for purposes of fishing into a piercing the corporate veil argument," (Doc. 27 at 5), this court finds the information to be irrelevant and will grant the Motion for Protective order. Plaintiff asserts that such information is relevant to their claim that various corporate entities should be disregarded and treated as a single entity, and that the Defendant corporation is merely an alter ego of the individual owners thereof, Malcolm D. Pryor, Raymond McClendon, Allen Counts, and Daryl Dennis. (Doc. 20 at 22). In support of this allegation, Plaintiff asserts that the same attorney represents Defendant, Malcolmn Pryor, individually, and the following firms in which Pryor is a principal: Pryor, McClendon, Counts & Co., Inc., ("PMC"), Pryor, Counts [*35] Capital Markets, LLC, and PMC Financial Markets, Inc. (Doc. 20 at 22). The mere allegation that corporations were not operated as independent entities and that various entities were represented by the same attorney is insufficient to support discovery of the financial information sought by the Plaintiff. Plaintiff's have not shown any basis for believing that the corporation and the owners thereof are so interrelated that their status as independent entities should be disregarded. In the absence of such a showing, to compel discovery of the information would be to authorize an unwarranted fishing expedition based on pure speculation. See e.g. *Electromatic Ltd. V. Rad-O-Lite of Philadelphia, Inc., 90 F.R.D. 182, 183 (E.D.Pa. 1981)* (allegation that corporations were not operated as independent entities insufficient to support discovery, but where a party demonstrates interrelated transactions and other connections, this is "enough to support further discovery on the relationships among the various defendants.").

## 2. DEFENDANT'S LIABILITY INSURANCE

Plaintiff seeks information as to the existence and contents of all insurance policies that relate to the relevant time [*36] period. Plaintiff claims that Defendant has not produced any policy that relates to April 13, 1993, the date on which the initial fiduciary breach occurred. Rule 26(d) permits discovery of the existence and contents of liability insurance agreements covering any 1993 breach of fiduciary duty by the Defendant. Accordingly, Defendant will be ordered to produce any liability insurance agreement covering April, 1993, within seven (7) days. However, Plaintiff also claims to be entitled to the production of policies that cover "1993 to the present," based on their contention that "the fiduciary breaches and prohibited transactions (occurring at least in 1994) are continuing in their nature and effect." (Doc.24 at 8). Plaintiff has alleged that fiduciary breaches and prohibited transactions occurred in April, 1993, the month in which the challenged investment was made, and in 1994, the year Plaintiff claims that Defendant illegally installed itself as General Partner of the PMSR III partnership. Moreover, Plaintiff has alleged that the breaches involved in this case are of a continuing nature. Because disclosure is required when the insurer "may" be liable on part or all of the judgment and, [*37] consistent with Plaintiff's allegations of "continuing" breaches of fiduciary duties, Defendant may be liable for breaches occurring in 1994, 1995, or 1996, the year in which the challenged investment was sold, Defendant will also be ordered to disclose insurance agreements for those years.

## 3. "INSOLVENCY OF WEDGEWOOD"

Plaintiff also moves to compel discovery of facts concerning Defendant's financial status in order to determine Defendant's "ability to satisfy a judgment." (Doc. 20 at 23). However, Plaintiff is not entitled to access to such information. Although discovery of the existence and contents of liability insurance agreements is permitted, "Rule 26 will not permit the discovery of facts concerning a defendant's financial status, or ability to satisfy a judgment, since such matters are not relevant, and cannot lead to the discovery of admissible evidence." See e.g. *Ranney-Brown Distributors, Inc. V.E.T. Barwick Industries, Inc. 75 F.R.D. 3, 4 (S.D.Ohio 1977); Renshaw v. Ravert, 82 F.R.D. 361, 363 (E.D.Pa. 1979)* (inquiry into Defendant's personal financial status is not ordinarily permitted)(citing, 8 Wright & Miller, Federal Practice & Procedure § [*38] 2010, at 93 (1970)); *Bogosian v. Gulf Oil Corp., 337 F. Supp. 1228 (E.D.Pa. 1971)*(Deposition questions with respect to antitrust plaintiff's net worth and his ability to satisfy judgment for costs in the event defendants prevailed were not relevant to the subject

matter of lawsuit); *Blount v. Wake Electric Membership Corporation, 162 F.R.D. 102, 104 (E.D. N.C. 1993)*(Evidence of defendant's financial condition was not subject to discovery in personal injury case unless plaintiff made factual showing that viable claim for punitive damages existed); *U.S. v. General Electric Company, 158 F.R.D. 161, 163 (D.Oregon 1994)* (corporate tax returns and financial statements of plaintiff, contractor, were not discoverable because financial condition was not relevant to issue of whether contractor was fully compensated for work it performed). Accordingly, such information does not become relevant prior to judgment with execution unsatisfied. n23 Therefore, plaintiffs are not entitled to Defendant's financial information at this time and Plaintiff's Motion to Compel will be denied. n24

> n23 Moreover, a party seeking discovery must also demonstrate a real and practical need for the information. *Consolidated Rail Corp. v. United States, 812 F.2d 1444, 1463 (3d Cir. 1987)*. We merely note that Plaintiff, in this case, cannot reasonably argue that it has a need for irrelevant financial information.

[*39]

> n24 Although Defendant also objects to discovery from "other present or former clients," this issue is not before the court as Plaintiff has only issued a subpoena for documents from one former client, the City of Philadelphia.

## 4. RICO

Plaintiff also contends that it is seeking material relevant only to an unpleaded claim pursuant to the Racketeer Influenced Corrupt Organizations Act (RICO), *18 U.S.C. §§ 1961*-1968. This court finds that disclosing information relevant only to a prospective claim exceeds the scope of the subject matter of the present action. A complaint is not "a hunting license to discover whether, in fact, a viable claim may be alleged . . . The discovery rules are designed to support a properly pleaded cause of

action and to prepare defenses to charges made-not to discover whether a claim exists." *American Communications Ass'n. Local 10, I.B.T. v. Retirement Plan for Employees of RCA Corp. and Subsidiary Cos., 488 F. Supp. 479, 484 (S.D.N.Y., aff'd without opinion, 646 F.2d 559 (2d Cir. 1980); McLaughlin v. Copeland, 455 F. Supp. 749, 753 (D.Del. [*40] 1978)*, aff'd, *595 F.2d 1213 (3d Cir. 1979)*(table) (dismissing complaint for failure to state a claim stating that "while a plaintiff is entitled to a full opportunity to adduce evidence in support of the cognizable claims set out in his complaint, he is not entitled to discovery for the purpose of determining whether or not there may be a factual basis for a claim he has not made"); See also *Cardio-Medical Ass'n v. Crozer Chester Medical Center, 536 F. Supp. 1065, 1071 (E.D.Pa. 1982)* (citing American Communications with approval). Consequently, Plaintiff is not entitled to discovery merely to determine whether or not additional, unasserted claims might exist. Discovery, in this case, will be limited accordingly. Indeed, courts have recognized that the need to reasonably limit the scope of discovery is acute for claims under the RICO statute. See e.g., *PMC v Ferro Corporation, 131 F.R.D. 184, 186 (C.D. Cal. 1990)* ("The Supreme Court has recognized that the breadth of the RICO language encourages attempts to turn business disputes into federal racketeering charges . . . thus the risk that a party will attempt to use discovery to conduct a 'fishing expedition' is a significant [*41] concern").

## 5. REDACTED AND WITHHELD DOCUMENTS

This court understands that Plaintiff has produced redacted copies of documents and withheld other documents into their entirety. (Doc. 20 at 11). n25 Plaintiff contends that the improperly withheld and redacted documents include partnership agreements to which they have "a clear legal right as a member of two limited partnerships-the PMSR III limited partnership and the Dovenmuehle Mortgage Co, L.P." (Doc. 20 at 11). The documents sought by the Plaintiff are specifically listed in Document number 20 at pages 11-19.

> n25 Plaintiff contends that, Defendant has "withheld entire documents, e.g. partnership agreements . . . [to which] plaintiff has a clear legal right as a member of two limited partnerships-the PMSR III limited partnership and the

Dovenmuehle Mortgage Co, L.P . . ., and has also produced heavily redacted and expurgated partnership documents." (Doc. 20 at 11).

Defendant, however, does not oppose production of "many" of the documents identified [*42] by the Plaintiff in this submission. (Doc. 21 at 13) (stating that "[Defendant] does not disagree that Plaintiff should be entitled to many of the documents described in Plaintiff's list of documents allegedly 'withheld in their entirety by Defendant'. . . But it does disagree as to some"). Defendant states further that:

> There is no dispute that alleged breaches of Defendant's fiduciary duty to Plaintiff are an allowable area of discovery. Indeed, Defendant would further concede that discovery into possible prohibited transactions in connection with the handling of Plaintiff's funds would be permissible, even though it is not alleged in the complaint . . . Defendant [only] objects to the third party discovery which Plaintiff sought from the City of Philadelphia, which Plaintiff suggests it may seek from other present or former clients, . . .[and] to subpoenas directed to various entities in which [Defendant]'s director, Malcolmn Pryor is involved, for purposes of fishing into a "piercing the corporate veil" argument.

(Doc. 21 at 7; Doc 27 at 4-5). Accordingly, Defendant will be ordered to produce those documents it concedes to be subject to discovery to Plaintiff [*43] within 10 days.

Moreover, because both parties suggest that the Court review any contested documents in camera, this Motion will be granted in order to determine whether Defendant properly redacted or withheld the documents. Accordingly, Defendant will be ordered to produce one set of the "redacted documents" with an accompanying memorandum setting forth its reasons for each redaction and one set of the "withheld documents" in our chambers by December 4, 1998, for in camera inspection. The supporting memorandum referred to above shall be submitted to Plaintiff no later than November 30, 1998,

so that Plaintiff can submit a reply to this court by December 4, 1998. See e.g., *Tetratec Corp. v. E.I. Dupont De Nemours & Co., 1992 U.S. Dist. LEXIS 12101, 1992 WL 202169 (E.D.Pa. 1992).*

The parties' request for sanctions is denied.

**ORDER** - ENTERED: 11-17-98

PETER B. SCUDERI
UNITED STATES MAGISTRATE JUDGE

AND NOW, this 16th Day of November, 1998, upon consideration of Defendant Wedgewood Capital Management Co.'s Motion for Protective Order and for Sanctions, and Plaintiff's response thereto, and Plaintiff Richard McCurdy, Trustee, Laborers' Industrial Pension Plan's Counter Motion to Compel Discovery, [*44] and Defendant's response thereto, it is hereby ORDERED as follows:

1. Defendant's Motion for Protective Order is GRANTED, in part, and DENIED, in part.

2. Parties and their counsel must provide prior notice to opposing counsel on all future subpoenas.

3. The Plaintiff and Defendant's Motions for sanctions are DENIED.

4. Defendant is ORDERED to produce those documents identified by the Plaintiff that Defendant concedes to be subject to discovery as well as a copy of any liability insurance policy covering April of 1993, 1994, 1995, and 1996 to Plaintiff within 10 days from the date of this order.

5. Defendant is further ORDERED to produce one set of the redacted or withheld documents with an accompanying memorandum setting forth its reasons for each redaction in my chambers by December 4, 1998 for in camera inspection. The supporting memorandum referred to above shall be submitted to Plaintiff no later than November 30, 1998, so that it can submit a reply by December 4, 1998.

BY THE COURT:

PETER B. SCUDERI

UNITED STATES MAGISTRATE JUDGE