REDACTED – PUBLIC VERSION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DYSON TECHNOLOGY LIMITED and DYSON INC., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 05-434-GMS |
| MAYTAG CORPORATION, | ) ) | |
| Defendant. | ) ) ) | **CONFIDENTIAL – FILED** **UNDER SEAL** |

**PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION TO DEFENDANT'S MOTION
FOR ENTRY OF A TEMPORARY RESTRAINING ORDER AND PRELIMINARY
INJUNCTION REGARDING IMPROPER ASSET TRANSFERS**

C. Barr Flinn  (No. 4092)
John W. Shaw (No. 3362)
Adam W. Poff (No. 3990)
Andrew A. Lundgren (No. 4429)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801
(302) 571-6600
jshaw@ycst.com

OF COUNSEL:

Garrard R. Beeney
Richard C. Pepperman, II
James T. Williams
Keith McKenna
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
(212) 558-4000

Steven F. Reich
Jeffrey S. Edelstein
Tamar Feder
Christopher A. Cole
MANATT, PHELPS & PHILLIPS, LLP
7 Times Square
New York, New York  10036
(212) 790-4500

Dated:  December 13, 2006

**TABLE OF CONTENTS**

Page

I.    NATURE AND STAGE OF THE PROCEEDING.......................................................1

II.   SUMMARY OF THE ARGUMENT .....................................................................2

III.  STATEMENT OF FACTS ...................................................................................4

    A.    Dyson's Success in the United States ...................................................5

    B.    The Dyson Entities' Separate Legal Existences ...................................6

    C.    Dyson's Transfer Pricing Arrangement ................................................8

    D.    Dyson Inc.'s Use of a Zero Balance Bank Account ...........................11

    E.    The Compensation and Dividends Paid to James Dyson.....................12

        1.    James Dyson's Compensation ................................................12

        2.    The Declarations of Dividends by Non-Party Dyson James Limited ....................................................................................14

        3.    The Return of Capital to James Dyson in 2006 from Dyson James Ltd. ................................................................................15

IV.   ARGUMENT ....................................................................................................16

    A.    MAYTAG IS NOT ENTITLED TO THE RELIEF SOUGHT IN ITS MOTION BECAUSE ITS COUNTERCLAIMS SEEK ONLY MONEY DAMAGES....................................................................................16

        1.    A Preliminary Injunction May Not Issue to Seize Funds to Satisfy a Future Judgment for Damages ............................................16

        2.    Maytag Did Not Pray for Equitable Relief in its Supplemented Counterclaims .......................................................................17

        3.    Maytag Cannot Seek Equitable Relief Because It Has an Adequate Remedy at Law ....................................................................19

        4.    The Purported Equitable Relief that Maytag Describes in its Motion Is a Claim for Damages.............................................20

    B.    THE INJUNCTION THAT MAYTAG SEEKS IN ITS MOTION IS UNAVAILABLE UNDER RULE 64 OR DELAWARE LAW........................21

    C.    MAYTAG IMPROPERLY SEEKS TO ENJOIN THE CONDUCT OF NON-PARTIES TO THIS ACTION................................................................22

    D.    MAYTAG HAS NOT ESTABLISHED ANY OF THE ELEMENTS FOR A TEMPORARY RESTRAINING ORDER OR PRELIMINARY INJUNCTION................................................................................23

**TABLE OF CONTENTS**
(continued)

Page

1. Maytag Is Not Likely to Succeed on the Merits of Its Lanham Act Claims .................................................................................. 23

    a. Maytag Has Not Established That the Challenged Claims Are Literally False or That They Misled Consumers ................. 23

        (1) Dyson's No Loss of Suction Claims Are Truthful and Substantiated ............................................................. 25

        (2) Dyson's Claims that its Vacuums Cleaners Do Not Rely Upon Filters Are Truthful and Substantiated .......... 27

        (3) Dyson's "Most Powerful Upright" Claims Are Truthful and Substantiated............................................. 28

    b. Maytag Cannot Prove That Any Improper Conduct by the Dyson Parties Caused Maytag's Loss of Revenue and Market Share .............................................................. 28

2. Maytag Will Not Suffer Irreparable Harm If Its Motion is Denied......... 32

3. Dyson Would Be Irreparably Harmed by the Entry of the Requested Restraining Order and Injunction........................................... 34

    a. The Third Circuit's Hoxworth Decision Compels the Conclusion that Dyson Would be Irreparably Harmed by Entry of the Requested Injunction_____ ....... 34

    b. The Requested Injunction is So Vague that the Legitimate Conduct of Dyson's Day-to-Day Business Activities would be Irreparably Harmed_____................... 35

4. Maytag's Delay Is Fatal to Its Claim for Preliminary Relief................... 36

5. The Public Interest Would not Be Served by Granting the Requested Relief................................................................. 37

V. CONCLUSION............................................................................. 37

# TABLE OF AUTHORITIES

Page

## CASES

*Alcan Int'l Ltd. v. S.A. Day Mfg Co.*,
  179 F.R.D. 398 (W.D.N.Y. 1998) ................................................................. 20

*Alpo Petfoods, Inc. v. Ralston Purina Co.*,
  913 F.2d 958 (D.C. Cir. 1990) ................................................................. 34

*American Cyanamid Co. v. Sterling Drug, Inc.*,
  649 F. Supp. 784 (D. N.J. 1986) ................................................................. 20

*Brown v. Consolidated Fisheries Co.*,
  17 F.R.D. 86 (D. Del. 1954) ........................................................... 3, 21, 22

*Bruce v. Sears, Roebuck & Co.*,
  343 F. Supp. 1333 (E.D. Pa. 1972) ................................................................. 18

*Burndy Corp. v. Teledyne Indus., Inc.*,
  748 F.2d 767 (2d Cir. 1984) ................................................................. 19

*Caesar's World, Inc. v. Venus Lounge, Inc.*,
  520 F.2d 269 (3d Cir. 1975) ........................................................... 20, 33

*Calloway Golf Co. v. Slazenger*,
  384 F.Supp.2d 735 (D.C. Del. 2005) ................................................................. 21

*Chase Manhattan Bank, USA, N.A. v. Freedom Card, Inc.*,
  333 F. Supp. 2d 239 (D. Del. 2004) ................................................................. 1

*Continental Group, Inc. v. Amoco Chemicals Corp.*,
  614 F.2d 351 (3d Cir. 1980) ................................................................. 32

*Dairy Queen, Inc. v. Wood*,
  369 U.S. 469 (1962) ........................................................... 3, 19, 20

*De Beers Consol. Mines, Ltd. v. United States*,
  325 U.S. 212 (1945) ................................................................. 32

*Dentsply Int'l, Inc. v. Kerr Manufacturing Co.*,
  42 F. Supp.2d 385 (D. Del. 1999) ........................................................... 3, 22

*E.I. DuPont Nemours & Co. v. HEM Research, Inc.*,
  576 A.2d 635 (Del. Ch. 1989) ................................................................. 21

*Empressa Cubana Del Tabaco v. Culbro Corp.*,
  123 F. Supp.2d 203 (S.D.N.Y. 2000) ................................................................. 20

*F.T. Intern. Ltd v. Mason*,
  2000 WL 1514881 (E.D. Pa. Oct. 11, 2000) ................................................................. 32

*Fletcher v. Atex, Inc.*,
  68 F.3d 1451 (2d Cir. 1995) ................................................................. 11

*Foxtrap, Inc. v. Foxtrap, Inc.*,
  671 F.2d 636 (D.C. Cir. 1982) ................................................................. 34

**TABLE OF AUTHORITIES**
(continued)

Page

*G.A. Modefine S.A. v. Burlington Coat Factory Warehouse,*
  888 F. Supp. 44 (S.D.N.Y. 1995) ................................................................. 20

*Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.,*
  527 U.S. 308 (1999).......................................................................... passim

*Hickson Corp. v. Northern Crossarm Co., Inc.,*
  357 F.3d 1256 (11th Cir. 2004)............................................................... 25

*Hoxworth v. Blinder, Robinson & Co., Inc.,*
  903 F.2d 186 (3d Cir. 1990)......................................................... 32, 34, 37

*Ideal World Marketing, Inc. v. Duracell, Inc.,*
  997 F. Supp. 334 (E.D.N.Y. 1998) ........................................................... 20

*Johnson & Johnson Orthopaedics, Inc. v. Minnesota Mining & Manufacturing
  Co., Inc.,*
  715 F. Supp. 110 (D. Del. 1989).............................................................. 32

*Johnson & Johnson-Merck v. Rhone-Poulenc Rorer Pharm., Inc.,*
  19 F.3d 125 (3d Cir. 1994)...................................................................... 24

*Judice's Sunshine Pontiac, Inc. v. General Motors Corp.,*
  418 F. Supp. 1212 (D.N.J. 1976) ............................................................. 35

*Life Indus. Corp. v. Ocean Bio-Chem, Inc.,*
  827 F. Supp. 926 (E.D.N.Y. 1993) ........................................................... 33

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm.
  Co.,*
  290 F.3d 578 (3d Cir. 2002)..................................................................... 24

*P.C. Yonkers, Inc. v. Celebrations the Party and Seasonal Superstore, LLC,*
  428 F.3d 504 (3d Cir. 2005)..................................................................... 23

*Porous Media Corp. v. Pall Corp.,*
  110 F.3d 1329 (8th Cir. 1996) ................................................................. 33

*Reebok International, LTD v. Marnatech Enterprises,*
  970 F.2d 552 (9th Cir. 1992) ................................................................... 20

*Sandoz Pharm. Corp. v. Richardson-Vicks, Inc.,*
  902 F.2d 222 (3d Cir.1990)...................................................................... 24

*Schmidt v. Lessard,*
  414 U.S. 473 (1974)................................................................................ 35

*SEC v. Black,*
  163 F.3d 188 (3d Cir. 1998)..................................................................... 22

*The Daisy Group, Ltd. v. Newport News, Inc.,*
  999 F. Supp. 548 (S.D.N.Y. 1998) ........................................................... 20

*Todi v. Stursberg,*
  2001 WL 884718 (E.D. Pa. Aug 1, 2001) ................................................. 32

**TABLE OF AUTHORITIES**
(continued)

Page

*Toro Co. v. Textron, Inc.*,
499 F. Supp. 241 (D. Del. 1980) ........................................................................... 1

*Tribune Co. v. Hamid Abiola*,
66 F.3d 12 (2d Cir. 1995) .................................................................................... 18

*U-Haul Int'l, Inc. v. Jartran, Inc.*,
601 F.Supp.1140 (D. Ariz..1984), aff'd 793 F.2d 1034 (9th Cir.1986) ........................ 2, 3, 34

*United States v. Regan*,
858 F.2d 115 (2d Cir. 1988) ................................................................................. 22

*United States v. Saccoccia*,
354 F.3d 9 (1st Cir. 2003) ................................................................................... 22

*Vermont Pure Holdings v. Nestle Waters, N.A., Inc.*,
2006 WL 839486 (D. Mass. 2006) ........................................................................ 33

*Wilberger v. Joseph*,
2004 WL 1192692 (D. Del. 2004) ......................................................................... 17

*Wolfe v. Marsh*,
846 F.2d 782 (D.C. Cir. 1988) .............................................................................. 18

*Wood v. Prudential Ins. Co. of America*,
207 F.3d 674 (3d Cir. 2000) ................................................................................ 21

**STATUTES**

15 U.S.C. § 1117(a) ......................................................................................... 3, 18

26 U.S.C. § 482 ................................................................................................. 11

6 Del. C. § 2532(a) .............................................................................................. 1

Income and Corporation Taxes Act 1988 Schedule 28AA .......................................... 11

U.K. Companies Act of 1985 ................................................................................. 14

**RULES**

Fed. R. Civ. Proc. 64 ...................................................................................... 3, 17, 21

## I.    NATURE AND STAGE OF THE PROCEEDING

Plaintiffs-Counterclaim Defendants Dyson Technology, Inc. and Dyson Inc. (collectively, the "Dyson Parties") commenced this action in 2005 by asserting patent infringement claims against Defendant-Counterclaim Plaintiff Maytag Corporation ("Maytag"). Thereafter, Maytag filed counterclaims against the Dyson Parties under the Lanham Act and Delaware law,[1] alleging that the Dyson Parties' advertising misleads American consumers and that nearly every advertising claim that the Dyson Parties have made since Dyson entered the United States market in Fall 2002 is false and has damaged Maytag. In fact, as Maytag's own witnesses have admitted at deposition, significant missteps in the management of its own business that are unrelated to the challenged advertising caused Maytag's economic failures.

On December 2, 2006—one-and-a-half years after Maytag first brought its counterclaims—Maytag filed the instant motion for entry of a far-reaching temporary restraining order and preliminary injunction. The motion seeks to prohibit not only the Dyson Parties, but all of their parents, subsidiaries, and affiliates "from transferring, outside the normal course of business unless by Court order, any liquid cash funds that would result in [those entities] having less than $300 million or the equivalent in liquid cash funds in its corporate holdings." (Motion at 1.) Maytag seeks such an injunction in order to protect its "ability to collect a judgment for Dyson's false advertising." (Motion, p. 3.)

Maytag's Motion does not begin to explain how the Court can exercise personal jurisdiction over non-parties spread across the globe, nor does Maytag come close to satisfying

---

[1] Delaware Uniform Deceptive Trade Practices Act, 6 Del. C. § 2532(a) and Delaware unfair competition law are co-extensive with the Lanham Act. *See, e.g., Toro Co. v. Textron, Inc.,* 499 F. Supp. 241, 249 n. 17 (D. Del. 1980); *Chase Manhattan Bank, USA, N.A. v. Freedom Card, Inc.,* 333 F. Supp. 2d 239, 244-45 n. 13 (D. Del. 2004). For this reason, we address only Maytag's Lanham Act claims in this Opposition.

the high standard required for the extraordinary relief it seeks.  The proposed injunction is fatally overbroad and beyond the scope of the Court's equitable powers since Maytag seeks only damages in its counterclaims.  Moreover, Maytag's Motion lacks evidentiary support.  Maytag has not submitted any evidence of the literal falsity of the challenged advertising, or of customer confusion created by the advertising to prove that it is likely to succeed on the merits.  Nor has Maytag submitted any evidence to support its $300 million claim, which exceeds the largest *ever* false advertising award of actual damages by more than ten times.  *See U-Haul Int'l, Inc. v. Jartran, Inc.*, 601 F.Supp.1140 (D. Ariz.1984), *aff'd* 793 F.2d 1034 (9th Cir. 1986) (awarding plaintiff $40 million based on a finding of $20 million in actual damages).

# REDACTED

The parties submitted for the Court's approval an agreed-upon briefing schedule that called for the submission of Dyson's opposition to the motion on December 13, 2006.  Maytag has not moved the Court for expedited consideration of its motion for emergency relief, nor did Maytag ask for expedited briefing or an expedited hearing.

## II.    SUMMARY OF THE ARGUMENT

Maytag's Motion should be denied in its entirety because Maytag fails to meet the high standard required for the extraordinary relief it seeks.

1.    Maytag's Motion should be denied because Maytag's counterclaims seek only money damages, and it is well-settled that an injunction cannot issue to restrain a litigation opponent's assets in order to satisfy a possible future damages award.  *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999).  Maytag's counterclaims contain no claim for equitable monetary relief.  Moreover, Maytag has failed to establish that an

equitable award of the Dyson Parties' profits would be proper under the Lanham Act, 15 U.S.C. § 1117(a), because money damages under the Lanham Act would be a fully adequate remedy. Accordingly, even if its counterclaims contained such a request, Maytag would not be able to obtain equitable monetary relief. *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 478 (1962).

    2.    The injunction that Maytag seeks is unavailable under Rule 64 of the Federal Rules of Civil Procedure and Delaware law. Neither Rule 64 nor Delaware law provides for prejudgment attachments simply to preserve assets that might satisfy a possible future judgment. *See, e.g., Brown v. Consolidated Fisheries Co.*, 17 F.R.D. 86 (D. Del. 1954).

    3.    Maytag has not shown that the Court should exercise jurisdiction over affiliates of the Dyson Parties that are not parties to this action through the requested injunction, that the interests of the non-parties would be adequately represented in this litigation, or that an injunction properly can issue to restrain the conduct of non-parties, particularly with respect to assets that the non-parties derived from sources wholly independent of the parties to this lawsuit. *See, e.g., Dentsply Int'l, Inc. v. Kerr Manufacturing Co.*, 42 F. Supp.2d 385, 393 (D. Del. 1999).

    4.    Maytag has failed to establish a likelihood of success on the merits. In particular, the advertising claims challenged by Maytag are truthful and substantiated, and Maytag has submitted no evidence in support of its Motion to show that consumers are misled by the advertising. Nor has Maytag made any effort to prove that its damages in this case could possibly reach the $300 million that Maytag claims. In light of the *U-Haul v. Jartran* decision discussed *supra*, such a figure would be unprecedented in a Lanham Act case, and Maytag has not submitted any evidence to show that a recovery of that magnitude is remotely possible here or, equally importantly, that the Dyson Parties are responsible for any losses that Maytag may have suffered.

5.    Maytag has not established that it will suffer irreparable harm.  Contrary to its assertions that there is imminent danger of dissipation of the Dyson Parties' assets, Maytag delayed in bringing this motion – which, by Maytag's own admission, is based on facts that have been largely available to the general public and which could have been discovered by Maytag at any time.  Maytag fails to present any evidence of exigent circumstances requiring emergency relief.  To the extent that Maytag relies upon discovery conducted in this litigation, it obtained the vast majority of the responses and deposition testimony upon which it relies well before the filing of its motion.

6.    The Dyson Parties and other Dyson Group entities that are not parties to this action will suffer irreparable harm if the motion is granted.

REDACTED

7.    Because Maytag cannot establish a likelihood of success on the merits, or any irreparable harm, there is no public benefit to an injunction freezing Dyson's assets and preventing it from operating its business in the ordinary course.

III.    **STATEMENT OF FACTS**

Maytag's failure to carry its legal burden to establish any of the elements prerequisite to the issuance of a preliminary injunction – especially one of the magnitude proposed here – is discussed *infra* at pages 23 to 36.  Before turning to that legal analysis, however, we must first dispel the factually incorrect assertions that Maytag makes in its Motion about Dyson, and

demonstrate that the business practices that Maytag attack are authorized and/or required by law, and are routinely employed by similar, highly sophisticated global companies.

### A.    Dyson's Success in the United States

Maytag's decision to challenge Dyson's advertising arises from Maytag's failed efforts to meet the demands of modern competition in the upright vacuum cleaner market.

REDACTED

Maytag's efforts to emulate Dyson are understandable. The Dyson success story has been widely covered in the press and elsewhere. In 1978, while vacuuming his home, James Dyson, the founder of Dyson, became frustrated by the poor performance of his traditional bag-and-filter vacuum cleaner, which clogged and lost suction. (Rutenberg Decl., ¶ 3, Ex. 2, James Dyson Ex. 22.) Mr. Dyson concluded that vacuum cleaners that rely upon bags and filters to separate dirt from air were inherently flawed because the bags and filters clog with dirt every time the vacuum cleaner is used, thereby restricting the airflow through the vacuum cleaner and causing it to lose suction with each successive use. Mr. Dyson developed and marketed a cyclonic vacuum cleaner to address that inherent flaw. (*Id.*) Unlike a traditional vacuum cleaner, Dyson vacuum cleaners rely upon cyclonic technology to separate dirt from air rather than bags and filters. (*Id.*)

REDACTED

063753.1002

) Dyson's innovative technology and unique design re-energized the high-end upright vacuum cleaner market in the United States, creating new demand in the market for upright vacuum cleaners at a premium price point.

REDACTED

**B.     The Dyson Entities' Separate Legal Existences**

REDACTED

# THIS PAGE REDACTED

# IN ITS ENTIRETY

REDACTED

Maytag's Motion seeks sweeping injunctive relief against the entire Dyson Group of entities, including an order restraining the assets of many Dyson entities that are not parties to this action. Even more broadly, the injunction seeks to reach assets of Dyson businesses that do not even derive from parties to this action. Notably, Maytag named two Dyson entities – Dyson Inc. and Dyson Technology Limited – as counterclaim defendants in this action.[3] Maytag's counterclaims contain no allegation that corporate formalities within the Dyson family of companies are not observed. Likewise, Maytag makes no "alter ego" allegations or other efforts in its counterclaims to pierce the corporate veil. Given that, Maytag's present request to restrain assets of Dyson entities that are not parties to this action is unfounded. Indeed, Maytag never explains the legal basis for restraining the assets of non-party Dyson entities anywhere in its Motion. Rather, Maytag simply lumps all of the Dyson entities under the heading "Dyson" without distinguishing between the Dyson entities that are before the Court and those that are not.

REDACTED

---

[3] Maytag recently moved to amend its Supplemented Counterclaims to add other Dyson entities and James Dyson personally as counterclaim defendants in this action. The motion for leave to amend remains pending as of the filing of this opposition to the motion for injunctive relief.

# THIS PAGE REDACTED
# IN ITS ENTIRETY

# THIS PAGE REDACTED
# IN ITS ENTIRETY

# THIS PAGE REDACTED
# IN ITS ENTIRETY

# THIS PAGE REDACTED
# IN ITS ENTIRETY

# THIS PAGE REDACTED
# IN ITS ENTIRETY

# THIS PAGE REDACTED
# IN ITS ENTIRETY

# THIS PAGE REDACTED
# IN ITS ENTIRETY

REDACTED

IV.  **ARGUMENT**

A.  **MAYTAG IS NOT ENTITLED TO THE RELIEF SOUGHT IN ITS MOTION BECAUSE ITS COUNTERCLAIMS SEEK ONLY MONEY DAMAGES**

1.  **A Preliminary Injunction May Not Issue to Seize Funds to Satisfy a Future Judgment for Damages**

Maytag's Motion seeks relief – an asset freeze to secure a possible future damages award – that is unavailable as a matter of law.  The United States Supreme Court has held that federal courts have no common law authority to freeze a defendant's funds through the use of a preliminary injunction to ensure satisfaction of a future money judgment.  *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 331-32 (1999).

In *Grupo Mexicano*, investors in a holding company involved in toll road construction sought a preliminary injunction restraining the company from transferring its assets.  *Id.* at 310-12.  Plaintiffs sought the injunction to satisfy any future damages award because they believed that defendant was almost or already insolvent.  *Id.* at 312.  The Supreme Court held that plaintiffs had no right at law or in equity in the property of a defendant before judgment was

063753.1002

entered, and that the equitable powers of federal courts do not include the power to create new equitable remedies. *Id.* at 330-32. The Court noted that the requested remedy would render Federal Rule of Civil Procedure 64, which specifies the circumstances under which property of persons or entities may be seized, "a virtual irrelevance." *Id.* at 330-31.

The Supreme Court further observed that "[e]ven when sitting as a court in equity, we have no authority to craft a 'nuclear weapon' of the law like the one advocated here." *Id.* at 332. The Court concluded its opinion with a simple admonition: "[b]ecause such a remedy was historically unavailable from a court of equity, we hold that the District Court had no authority to issue a preliminary injunction preventing petitioners from disposing of their assets pending adjudication of respondents' contract claim for damages." *Id.* at 333. *See also Wilberger v. Joseph,* 2004 WL 1192692 at *1 (D. Del. 2004) (Robinson, C.J.) (holding, based on *Grupo Mexicano,* that "this court has no authority to issue a preliminary injunction preventing [defendant] from disposing of [his] assets, pending adjudication of [plaintiff's] claim for money damages") (internal citations omitted).

In view of this clear United States Supreme Court authority, Maytag attempts to recast its prayer for damages in this case as a request for equitable relief. No such request for relief, however, is found in Maytag's counterclaims, and *Grupo Mexicano* therefore bars a preliminary injunction to ensure satisfaction of a future claim for damages.

### 2. Maytag Did Not Pray for Equitable Relief in its Supplemented Counterclaims

Maytag asserts that it seeks "restitution of Dyson's profits from false advertising, plus any damages Maytag has suffered." (Motion, p. 11.) Maytag further claims that "preliminary relief is essential to maintain the status quo pending a likely judgment on Maytag's equitable claims and receipt of equitable remedies." (Motion, p. 22.) Contrary to these assertions,

Maytag's counterclaims in this action contain no claim for unjust enrichment, no prayer for restitution or disgorgement of Dyson's profits to Maytag, and no prayer for an accounting or any other equitable monetary relief.[4]  Because Maytag cannot seek by motion what it failed to request in its supplemented counterclaims, the instant request to restrain assets of parties and non-parties should be denied.

Maytag's counterclaims clearly set forth the monetary relief that Maytag seeks, none of which is equitable in nature.  Maytag prays for a judgment:  (1) "Ordering Plaintiff to pay Maytag its damages, trebled, and Maytag's lost profits . . .;" (2) "Ordering Plaintiff to pay Maytag punitive damages;" and (3) "Ordering Plaintiff to pay Maytag its damages, both compensatory and statutory, by reason of Plaintiff's false advertising and unfair competition." (Supplemented Counterclaims at 23.)

Maytag's counterclaims thus plainly request legal damages.  *See Bruce, Inc. v. Sears, Roebuck & Co.*, 343 F. Supp. 1333, 1348 (E.D. Pa. 1972) ("[b]y the term 'damages' we mean all injury to a plaintiff proximately caused by a defendant's infringement, such as lost profits, loss of good will, injury to reputation, expenses incurred in preventing consumers from being deceived, etc.").  Maytag makes no claim for restitution or disgorgement, and does not even pray for damages in accordance with 15 U.S.C. § 1117(a).  Simply stated, Maytag cannot obtain preliminary relief based upon equitable relief not requested in its supplemented counterclaims. *Tribune Co. v. Abiola*, 66 F.3d 12, 19 (2d Cir. 1995); *Wolfe v. Marsh*, 846 F.2d 782, 783-84 (D.C. Cir. 1988).

---

[4] The supplemented counterclaims do seek to enjoin advertising claims of Dyson that are alleged to be false, but obviously that request would not support a request to freeze any of Dyson's assets.

063753.1002

The legal nature of the relief sought by Maytag is further reflected in Maytag's request for a jury trial on all of its counterclaims. (Supplemented Counterclaims, p. 23.) It is black letter law that equitable claims are not entitled to be tried before a jury. If Maytag's position now is that its claim for monetary relief sounds in equity and not law, it is not entitled to a jury trial on that issue. Maytag cannot have it both ways.

### 3. Maytag Cannot Seek Equitable Relief Because It Has an Adequate Remedy at Law

Even if Maytag had sought equitable relief in the prayer section of its counterclaims, its effort to obtain an equitable remedy would be barred because Maytag has an adequate remedy at law. "The necessary prerequisite to the right to maintain a suit [for any] equitable remedy . . . is the absence of an adequate remedy at law." *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 478 (1962). Maytag cannot argue that it has an inadequate remedy at law because the damages it seeks, whether measured by Maytag's lost sales or Dyson's profits, would be more than adequate to compensate Maytag if it were to succeed on its counterclaims in this action. This is particularly true because the disgorgement remedy Maytag claims in its motion "is rarely granted and appears to have been limited to situations in which the defendant's profits represent unjust enrichment derived from diversion of business *that clearly would otherwise have gone to the plaintiff*, such as in instances where the defendant palmed off goods as made by the plaintiff or otherwise infringed the plaintiff's rights *rather than engaged simply in false advertising of the defendant's own product*." *Burndy Corp. v. Teledyne Indus., Inc.*, 748 F.2d 767, 772 (2d Cir. 1984) (emphasis added).

Here, Maytag has failed to explain why any gain to Dyson necessarily must have come at Maytag's expense. In any event, where a party seeks defendant's profits as a rough proxy measure of its damages (*see* Motion, p. 21), the remedy is "fundamentally compensatory and

legal in nature." *The Daisy Group, Ltd. v. Newport News, Inc.*, 999 F. Supp. 548, 552 (S.D.N.Y. 1998).

### 4. The Purported Equitable Relief that Maytag Describes in its Motion Is a Claim for Damages

Even if Maytag had included a prayer for disgorgement of Dyson's profits in its supplemented counterclaims, the Court might nevertheless have interpreted that request to be one for damages under the Lanham Act. In the Third Circuit, the term "damages" under the Lanham Act has been interpreted broadly to reach both actual damage suffered by plaintiff and the actual profits of the infringer. *See Caesar's World, Inc. v. Venus Lounge, Inc.*, 520 F.2d 269, 274 (3d Cir. 1975).

In determining whether claims under the Lanham Act for a defendant's profits are equitable or legal, numerous courts have drawn a distinction between claims for defendant's profits that are based on a theory of unjust enrichment and claims for defendant's profits that are compensatory in nature, holding that the former constitute equitable remedies while the latter are legal remedies. *See, e.g.*; *The Daisy Group, Ltd. v. Newport News, Inc.*, 999 F. Supp. 548, 552 (S.D.N.Y. 1998); *Alcan Int'l Ltd. v. S.A. Day Mfg Co.*, 179 F.R.D. at 403; *Empressa Cubana Del Tabaco v. Culbro Corp.*, 123 F. Supp.2d 203, 206-08 (S.D.N.Y. 2000); *American Cyanamid Co. v. Sterling Drug, Inc.*, 649 F. Supp. 784, 788-89 (D. N.J. 1986).[5]

---

[5] As this discussion makes clear, some courts have found claims for disgorgement under the Lanham Act to be equitable in nature. *See*, e.g., *Reebok International, LTD v. Marnatech Enterprises*, 970 F.2d 552, 559-60 (9th Cir. 1992); *G.A. Modefine S.A. v. Burlington Coat Factory Warehouse*, 888 F. Supp. 44, 45-46 (S.D.N.Y. 1995). But other courts have disagreed and held that what appear to be equitable claims for relief actually are claims for damages. *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 477 (1962); *Alcan Int'l Ltd. v. S.A. Day Mfg Co.*, 179 F.R.D. 398, 401 (W.D.N.Y. 1998); *Ideal World Marketing, Inc. v. Duracell, Inc.*, 997 F. Supp. 334, 339 (E.D.N.Y. 1998).

Here, the prayer for relief in Maytag's supplemented counterclaims clearly reflects that the remedy Maytag seeks is legal and not equitable. (Supplemental Counterclaims, p. 23.) The supplemented counterclaims contain no prayer for equitable monetary relief, do not allege an unjust enrichment theory of recovery, do not seek disgorgement, and do not request an accounting. Put simply, Maytag's counterclaims do not seek the disgorgement remedy discussed in Maytag's Motion. Maytag's damage claims are fundamentally compensatory in nature and, as such, should be deemed legal claims for relief that bar the instant request to restrain assets in support of a possible future judgment.[6]

## B.    THE INJUNCTION THAT MAYTAG SEEKS IN ITS MOTION IS UNAVAILABLE UNDER RULE 64 OR DELAWARE LAW

Similarly, the restraint of assets that Maytag seeks is not available under Federal Rule of Civil Procedure 64. Rule 64 states that all remedies providing for seizure of property for the purpose of securing satisfaction of a judgment ultimately to be entered in an action are available under the circumstances and in the manner provided by the law of the state in which the district court sits.

Although courts in some jurisdictions are authorized by statute to attach a defendant's property to preserve assets that might satisfy a future judgment, that is not the law in Delaware. *E.I. DuPont Nemours & Co. v. HEM Research, Inc.*, 576 A.2d 635, 639 n.2 (Del. Ch. 1989). Delaware courts have held that the main purpose of attachment proceedings is to compel appearance of the defendant and not to preserve money for future judgments. *Brown v. Consolidated Fisheries Co.*, 17 F.R.D. 86, 88 (D. Del. 1954). The *Brown* court rejected

---

[6] The two cases cited by Maytag for the proposition that its claims for relief sound in equity do not support Maytag's position. *Wood v. Prudential Ins. Co. of America*, 207 F.3d 674, 686 (3d Cir. 2000), did not involve claims under the Lanham Act at all, and, in *Calloway Golf Co. v.*

plaintiff's attempt to attach defendant's property to secure a future judgment, noting: "[i]n effect, the application of the plaintiff seeks to make the 'lis pendens' doctrine applicable to an ordinary action seeking the recovery of money and without reference to any real estate, negotiable instrument, or to any particular res. This I think cannot be done." *Id.*

## C. MAYTAG IMPROPERLY SEEKS TO ENJOIN THE CONDUCT OF NON-PARTIES TO THIS ACTION

Maytag seeks to restrain the assets of Dyson entities that are not parties to this action. In so doing, Maytag offers no argument or evidence to establish how or why the Court could gain jurisdiction over these non-parties and thereafter enjoin their conduct. The Motion glosses over this problem by lumping various parties and non-parties together and calling them "Dyson."

REDACTED

. Thus, Maytag never provides a basis to think that a restraint of the assets of these companies would be lawful. *Dentsply Int'l, Inc. v. Kerr Manufacturing Co.*, 42 F. Supp. 2d 385, 393 (D. Del. 1999).

To obtain jurisdiction over non-parties, Maytag is required to show, *inter alia,* that the non-party can be said "to have had its day in court with respect to the validity of the injunction." *Id.* at 394.

REDACTED

. The motion nowhere purports to argue that the rights of these non-parties are represented in this action.

In analogous situations, courts have recognized that the assets of non-culpable third parties may not be frozen. *See, e.g., SEC v. Black*, 163 F.3d 188, 196-97 (3d Cir. 1998) (in

_____

*Slazenger*, 384 F.Supp.2d 735, 744 (D.C. Del. 2005), plaintiff was not seeking compensatory

063753.1002

securities case, court may not grant order freezing assets unless assets are property, or deemed property, of defendant or culpable third party); *United States v. Saccoccia*, 354 F.3d 9 (1st Cir. 2003) (in RICO action, government may not reach third party's untainted assets as substitute for tainted assets); *see also United States v. Regan*, 858 F.2d 115, 121 (2d Cir. 1988) ("[o]rders directed at third parties are strong medicine and should not be used where measures that are adequate and less burdensome on third parties are available").

Maytag's Motion addresses none of these serious concerns. There is thus no justification for an order freezing the assets of non-parties where there is no evidence that the non-parties obtained the assets from the named counterclaim defendants, or that the non-parties have engaged in otherwise culpable conduct.

### D. MAYTAG HAS NOT ESTABLISHED ANY OF THE ELEMENTS FOR A TEMPORARY RESTRAINING ORDER OR PRELIMINARY INJUNCTION

The Court may grant the "extraordinary remedy" of a temporary restraining order or a preliminary injunction only if: (1) plaintiff is likely to succeed on the merits; (2) denial will result in clear, immediate irreparable harm to plaintiff; (3) granting the injunction will not result in irreparable harm to defendant; and (4) granting the injunction is in the public interest. *P.C. Yonkers, Inc. v. Celebrations the Party and Seasonal Superstore, LLC*, 428 F.3d 504, 508 (3d Cir. 2005). The burden lies with plaintiff to establish every element. *Id.* At 508. Here, Maytag has not satisfied any of these elements.

---

damages but rather was proceeding on an unjust enrichment theory of recovery.

063753.1002

1. **Maytag Is Not Likely to Succeed on the Merits of Its Lanham Act Claims**

   a. **Maytag Has Not Established That the Challenged Claims Are Literally False or That They Misled Consumers**

Maytag contends that it likely will prove at trial that the Dyson Parties have engaged in a "calculated pattern of deception" through false advertising that Dyson vacuum cleaners are "the most powerful upright vacuum cleaners; that they don't have filters; don't clog; don't lose suction; and clean carpet better than all other upright vacuum cleaners." (Motion, p. 12-13.) Maytag's argument relies upon both liberal paraphrasing and misquotes of Dyson's actual advertising. Rather than trying to disprove the literal meaning of Dyson's actual advertising claims, Maytag erects straw men from advertising claims that have not been made by Dyson. For example, Maytag complains at length that Dyson has advertised the apparent implied claim that Dyson vacuum cleaners "clean carpet better than all other upright vacuum cleaners." (Motion, pp. 12-13.) Yet, Dyson has never made this claim in any advertising, and Maytag cannot point to any language even close to it in any Dyson advertisement.

Elsewhere, Maytag argues that the other challenged advertisements are all literally false (as opposed to being literally true but misleading). Maytag presumably does so because the burden on a plaintiff seeking to prove that an advertising claim is literally false is lower than if the advertising claim is alleged only to be misleading. If an advertisement is literally false, plaintiff does not have to prove actual consumer deception. *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578, 586 (3d Cir. 2002). In contrast, if an advertisement is literally true but misleading, plaintiff must prove actual deception by a preponderance of the evidence. *Id.* at 590. Put another way, if plaintiff alleges that an advertisement is literally true but misleading, it "cannot obtain relief by arguing how consumers could react; it must show how consumers actually do react.'" *Id.* (quoting *Sandoz Pharm. Corp.*

*v. Richardson-Vicks, Inc.*, 902 F.2d 222, 228-29 (3d Cir.1990)) ("[p]laintiff bears the burden of proving actual deception by a preponderance of the evidence. Hence, it cannot obtain relief by arguing how consumers could react; it must show how consumers actually do react").

Accordingly, the Court cannot grant preliminary injunctive relief as to alleged implied claims absent extrinsic evidence of consumer deception. Such evidence of implied claims is typically presented through consumer surveys. "Public reaction is the measure of a commercial's impact . . . [and] the success of the claim usually turns on the persuasiveness of a consumer survey." *Johnson & Johnson-Merck v. Rhone-Poulenc Rorer Pharm., Inc.*, 19 F.3d 125, 129-30 (3d Cir. 1994) (internal citations omitted). Maytag has not presented any such evidence in conjunction with its Motion, and its request for a restraining order and injunctive relief therefore fails as a matter of law if Maytag cannot establish that the advertising claims are literally false.

     (1) **Dyson's No Loss of Suction Claims Are Truthful and Substantiated**

Dyson has advertised  REDACTED that the vacuum cleaners it sells in the United States do not lose suction. The claim means that its vacuum cleaners offer constant suction performance over time, *i.e.*, that the suction that a consumer experiences when using a Dyson vacuum cleaner does not decline over time as the consumer vacuums in the home.

Maytag's Motion offers no evidence that the No Loss of Suction claim is literally false.

REDACTED

063753.1002

Maytag also attempts to undermine Dyson's No Loss of Suction claim by attacking the testing underlying it.  But Maytag cannot prevail under the Lanham Act simply by attacking the substantiation relied on by Dyson.  It must produce evidence affirmatively disproving the claim. *Hickson Corp. v. Northern Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004).  Maytag offers no such evidence in its motion.  Moreover, to substantiate its No Loss of Suction claim, Dyson relies on industry consensus standard tests, performed under standards published by the International Electrotechnical Commission ("IEC"), an industry organization in which Maytag or Hoover engineers and consultants have actively and extensively participated for many years.

REDACTED

Maytag also challenges the No Loss of Suction claim on grounds that it contains an allegedly implied claim that Dyson vacuums pick up more dirt from carpet than other vacuum cleaners.  (Motion, p. 14.)  Maytag asserts that this claim can be logically construed from the purported fact that consumers buy vacuum cleaners solely to clean carpet.

REDACTED

063753.1002

REDACTED

     (2)    **Dyson's Claims that its Vacuums Cleaners Do Not Rely Upon Filters Are Truthful and Substantiated**

    Maytag attacks as literally false the purported Dyson advertising claim that its vacuum cleaners do not contain filters.  (Motion, p. 11.)  This argument fails on its face because there is no such Dyson advertising claim.

REDACTED

    Thus, Dyson's advertising is literally true.

    Maytag further contends that Dyson has admitted that its vacuums' pre-motor filter will clog (and therefore presumably lose suction).

REDACTED

063753.1002

REDACTED

We are unaware of any product manufacturer that warrants that its product will perform as advertised if it is used contrary to the manufacturer's instructions. Dyson is entitled to advertise its products on the understanding that the claims made hold true under ordinary conditions of consumer use, when the product is used according to product instructions.

(3)    **Dyson's "Most Powerful Upright" Claims Are Truthful and Substantiated**

Finally, Maytag attacks Dyson's advertising claims that its vacuums are the "most powerful upright" vacuums.

REDACTED

Maytag's Motion does not present any evidence to the contrary. Maytag instead quibbles with whether the testing underlying the claim was performed correctly (Motion, p. 17), but this is not the sort of argument that lends itself to Maytag's sweeping request for preliminary relief. Indeed, Maytag does not provide any affirmative evidence that this claim is false. Those issues should be resolved before a jury at trial and not on a motion to freeze Dyson's assets.

b.    **Maytag Cannot Prove That Any Improper Conduct by the Dyson Parties Caused Maytag's Loss of Revenue and Market Share**

Dyson's allegedly false advertising did not cause Maytag's loss of revenue and market share. Maytag's motion simply *assumes* that its losses were caused by Dyson, but that assumption is contradicted by the evidence in the record,

# THIS PAGE REDACTED

# IN ITS ENTIRETY

**THIS PAGE REDACTED**

**IN ITS ENTIRETY**

# THIS PAGE REDACTED

# IN ITS ENTIRETY

REDACTED

### 2.    Maytag Will Not Suffer Irreparable Harm If Its Motion is Denied

The burden on Maytag to show irreparable injury is particularly high in this circuit. As the Third Circuit has explained, "[t]his Court has held that more than a risk of irreparable harm must be demonstrated. The requisite for injunctive relief has been characterized as a clear showing of *immediate* irreparable injury." *Continental Group, Inc. v. Amoco Chemicals Corp.,* 614 F.2d 351, 359 (3d Cir. 1980) (internal quotation omitted) (emphasis added); *see also Johnson & Johnson Orthopaedics, Inc. v. Minnesota Mining & Manufacturing Co., Inc.,* 715 F. Supp. 110, 112 (D. Del. 1989). A failure to prove irreparable injury alone is sufficient to require the denial of injunctive relief. *Johnson & Johnson,* 715 F. Supp. at 112.

Maytag's request for an injunction freezing assets that could not be reached after trial is fatally overbroad. *See De Beers Consol. Mines, Ltd. v. United States,* 325 U.S. 212, 220 (1945) (court may only grant intermediate relief "of same character" as may be awarded finally). Moreover, although Maytag concedes that the Court may only encumber a defendant's assets in an amount "reasonably" related to the value of its purported equitable claim (Motion, p. 24), Maytag has not submitted any evidence that the order it seeks freezing the assets of the entire Dyson group of entities is even remotely related to the value of its purported equitable claim.

*See Hoxworth v. Blinder, Robinson & Co., Inc.*, 903 F.2d 186, 198 (3d Cir. 1990).[7]  Here, Maytag cannot simply claim Dyson's profits as its measure of damages.  Maytag must show actual harm and causation, "such as a diversion of business that clearly would otherwise have gone to the plaintiff." *Vermont Pure Holdings v. Nestle Waters, N.A., Inc.*, 2006 WL 839486 at *15 (D. Mass. 2006).  In a Lanham Act suit, "where a defendant misrepresented its own product but did not specifically target a competing product, plaintiff may be only one of many competitors, and without proof of causation and specific injury each competitor might receive a windfall unrelated to its own damage." *Porous Media Corp. v. Pall Corp.*, 110 F.3d 1329, 1336 (8th Cir. 1997).  Maytag has failed to submit any such proof as part of its motion.

Indeed, one searches Maytag's Motion in vain for any actual evidence relating to the damages it allegedly suffered.  To obtain damages, Maytag is required to put in evidence of its actual damages from false advertising or the Dyson Parties' actual profits from false advertising. *Caesar's World, Inc. v. Venus Lounge, Inc.*, 520 F.2d 269, 274 (3d Cir. 1975).  Moreover, if Maytag had pled the unjust enrichment theory it now says it did, it would have been required to

---

[7] In *Hoxworth,* the Third Circuit vacated a district court's injunction freezing defendant's assets pending trial on plaintiff's securities fraud and civil RICO claims. *Hoxworth,* 904 F.2d 186. However, in dicta, the court stated that under certain circumstances federal courts were empowered to issue an injunction freezing defendant's assets in anticipation of a future damages award. As discussed in Section IV(A)(1), *supra,* in *Grupo Mexicano,* the United States Supreme Court held that federal courts have no common law authority to issue an injunction freezing a defendant's funds to ensure satisfaction of a future money judgment. *Grupo Mexicano,* 527 U.S. at 331-32. *Grupo Mexicano,* however, left undisturbed *Hoxworth's* holding that a defendant is irreparably harmed by an injunction freezing assets that is not reasonably related to the value of plaintiff's equitable claim. *Hoxworth,* 903 F.2d at198; *see also Todi v. Stursberg,* 2001 WL 884718 *6 (E.D. Pa. Aug 1, 2001) (denying request for order freezing defendant's assets and requiring court approval for transactions over $1000 as "fatally overbroad" in relation to plaintiff's claim for equitable trust); *F.T. Intern. Ltd. v. Mason,* 2000 WL 1514881*1 (E.D. Pa. Oct. 11, 2000) (holding that a court may not freeze assets to secure a future damages award, and "[a] court also has no authority in any event to freeze assets in an amount which exceeds that recoverable in the underlying action").

show that but for Dyson's alleged false advertising, Maytag's sales would not have gone to Dyson, and that Dyson acted willfully. *Life Indus. Corp. v. Ocean Bio-Chem, Inc.*, 827 F. Supp. 926, 933 (E.D.N.Y. 1993).

Maytag has presented no evidence to support its damages claim.. The only reference to the issue in Maytag's Motion is the conclusory assertion that "Maytag has estimated its damages as a result of Dyson's false advertising at more than $300 million."[8]  (Motion, p. 24.)  This hardly satisfies Maytag's burden. On this record, the Court cannot possibly determine what "the likely value of the expected judgment" in this case could be, and therefore cannot determine the extent of Dyson's assets that reasonably could be encumbered to meet that expected judgment. Indeed, it is well established that a false advertising plaintiff cannot as a total judgment obtain more than three times its actual damages. *Alpo Petfoods, Inc. v. Ralston Purina Co.*, 913 F.2d 958 (D.C. Cir. 1990); *see also Foxtrap, Inc. v. Foxtrap, Inc.*, 671 F.2d 636, 642 (D.C. Cir. 1982) (damage award under Lanham Act must be carefully scrutinized to prevent windfall to plaintiff). In fact, the largest damages award on record in a false advertising case under the Lanham Act is $40 million dollars, and that award was based on actual damages of only $20 million. *U-Haul Int'l, supra*, 601 F.Supp.1140, aff'd 793 F.2d 1034. Maytag has not submitted any evidence relating to actual damages and it therefore cannot establish irreparable harm.

### 3.    Dyson Would Be Irreparably Harmed by the Entry of the Requested Restraining Order and Injunction

Maytag does not address the harm that the Dyson entities (both those that are parties to this suit and those that are not) would suffer if the requested relief were granted.  As shown below, the Dyson entities would suffer irreparable harm if the requested relief were granted.

a.    **The Third Circuit's *Hoxworth* Decision Compels the Conclusion that Dyson Would be Irreparably Harmed by Entry of the Requested Injunction**

The Third Circuit's *Hoxworth* decision, *supra*, compels a finding that Dyson would be irreparably harmed by the proposed injunction. As discussed above, Maytag has not substantiated its damages claim. On this record, the Court cannot conclude that the request to restrain Dyson's assets is proportionate to any reasonable outcome of this litigation, and under *Hoxworth*, "a defendant . . . is harmed more than necessary by an injunction encumbering far more of its assets than are at stake in the underlying litigation." *Hoxworth*, 903 F.2d at 198. For this reason, Dyson would be irreparably harmed if the relief sought in Maytag's motion were granted.

b.    **The Requested Injunction is So Vague that the Legitimate Conduct of Dyson's Day-to-Day Business Activities would be Irreparably Harmed**

It is black-letter law that an injunction must be "specific" in outlining the terms of the relief granted, and describe in "reasonable detail" the act or acts sought to be restrained. *Schmidt v. Lessard,* 414 U.S. 473, 476 (1974) ("[s]ince an injunctive order prohibits conduct under threat of judicial punishment, basic fairness requires that those enjoined receive explicit notice of precisely what conduct is outlawed"). A request for injunctive relief that is so vague and overbroad as to "place the entire conduct of [defendant's] business under the jeopardy of punishment for contempt for violating the injunction" must be denied. *Judice's Sunshine Pontiac, Inc. v. General Motors Corp.,* 418 F. Supp. 1212, 1223 (D.N.J. 1976).

---

[8] Again, Maytag refers to legal "damages," not restitution or other equitable relief. Since Maytag admits it seeks $300 million in damages, the Court should simply deny the motion under the United States Supreme Court precedent in *Grupo Mexicano, supra*.

The scope of the injunction sought by Maytag is breathtaking.  Maytag seeks to prevent parties and non-parties alike from "transferring, outside the normal course of business unless by Court order, any liquid case funds that would result in Dyson having less than $300 million or the equivalent in liquid case funds in its corporate holdings."  (Proposed Order at 1.)  The Proposed Order expressly prohibits "transfers in the form of dividends, salaries, bonuses, distributions, or any other transactions."  (Proposed Order at 1.)

REDACTED

The Proposed Order's lack of specificity and vagueness -- and the conflict with the argument in Maytag's Motion -- fail to put Dyson on adequate notice of exactly what conduct Maytag seeks to enjoin.

REDACTED

REDACTED

### 4.   Maytag's Delay Is Fatal to Its Claim for Preliminary Relief

Maytag's request for relief should also be denied because Maytag waited too long to ask for this extraordinary remedy. In large part, the Motion relies upon documents that Maytag says it obtained from the Internet (Motion, p. 8), which it could have obtained long ago. Moreover, Maytag relies on testimony taken during depositions that were, almost exclusively, taken too long ago to justify a temporary restraining order. For example, the deposition of Martin McCourt, a senior Dyson UK official was taken on November 2. The deposition of Caroline Errington, a U.S. employee of Dyson, was taken on November 3. And the deposition of Dyson founder James Dyson was taken on November 8. Maytag waited nearly a month after these depositions to seek its TRO, a fact that undermines its claim for emergency relief. It is also significant that Maytag has still not requested any preliminary injunction against the allegedly false claims that have appeared in the United States continuously for four years.

### 5.   The Public Interest Would not be Served by Granting the Requested Relief

"[T]he public interest is hardly served by the sheer *in terrorem* effect of allowing plaintiffs to impose (or even threaten to impose) burdens on defendants above and beyond those necessary to protect plaintiffs' otherwise unsatisfiable claims." *Hoxworth*, 903 F.2d at 198 (italics in original). That is precisely what is happening here. Maytag's request for attachment is designed to create an *in terrorem* effect, which is not in the public interest.

V.    **CONCLUSION**

For the foregoing reasons, Maytag's motion should be denied.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____

C. Barr Flinn  (No. 4092)
John W. Shaw (No. 3362)
Adam W. Poff (No. 3990)
Andrew A. Lundgren (No. 4429)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801
(302) 571-6600
jshaw@ycst.com

OF COUNSEL:                          *Attorneys for Plaintiffs Dyson Technology Limited*
                                     *and Dyson Inc.*

Garrard R. Beeney
Richard C. Pepperman, II
James T. Williams
Keith McKenna
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
(212) 558-4000

Steven F. Reich
Jeffrey S. Edelstein
Tamar Feder
Christopher A. Cole
MANATT, PHELPS & PHILLIPS, LLP
7 Times Square
New York, New York  10036
(212) 790-4500

Dated:  December 13, 2006

## CERTIFICATE OF SERVICE

I, John W. Shaw, hereby certify that on December 20, 2006, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Francis DiGiovanni, Esquire
> James D. Heisman, Esquire
> CONNOLLY BOVE LODGE & HUTZ LLP
> The Nemours Building – 8th Floor
> 1007 N. Orange Street
> Wilmington, Delaware 19801

I further certify that on December 20, 2006, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following in the manner indicated:

> ### BY E-MAIL ON DECEMBER 20, 2006 AND FEDERAL EXPRESS ON DECEMBER 21, 2006
>
> Ray L. Weber, Esquire
> Laura J. Gentilcore, Esquire
> RENNER, KENNER, GREIVE, BOBAK,
>   TAYLOR & WEBER
> 400 First National Tower
> Akron, OH 44308
>
> Kimball R. Anderson, Esquire
> Stephen P. Durchslag, Esquire
> WINSTON & STRAWN LLP
> 35 W. Wacker Drive
> Chicago, IL 60601-9703

YOUNG CONAWAY STARGATT & TAYLOR, LLP

C. Barr Flinn  (No. 4092)
John W. Shaw (No. 3362)
Adam W. Poff (No. 3990)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801
(302) 571-6600
jshaw@ycst.com

*Attorneys for Dyson Technology Limited
and Dyson, Inc.*

2