**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **DYSON TECHNOLOGY LIMITED and DYSON, INC., Plaintiffs,** | ) | |
| **v.** | ) | **Civil Action No. 05-434 GMS** |
| **MAYTAG CORPORATION, Defendant.** | ) | **REDACTED FOR PUBLIC FILING** |

**DEFENDANT MAYTAG CORPORATION'S REPLY IN SUPPORT OF ITS MOTION FOR LEAVE TO FILE A SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES AND SUPPLEMENTAL COUNTERCLAIMS**

Francis DiGiovanni
Connolly Bove Lodge & Hutz
The Nemours Building
1007 N. Orange Street
Wilmington, DE 19899
Phone (302) 658-9141
Fax (302) 658-5614

Kimball R. Anderson
Stephen P. Durchslag
Winston & Strawn
Chicago, IL 60601
Phone (312) 558-5600
Fax (312) 558-5700

Ray L. Weber
Laura J. Gentilcore
Renner, Kenner, Greive, Bobak, Taylor & Weber
400 First National Tower
Akron, OH 44308
Phone (330) 376-1242
Fax (330) 376-9646

*Attorneys for Defendant Maytag Corporation*

Dated: December 20, 2006

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............ i

INTRODUCTION ............ 1

ARGUMENT ............ 3

I. Dyson UK And James Dyson Are Proper Parties ............ 3

C. Maytag Has Met The Correct Standard To Add Dyson UK And James Dyson ............ 9

II. This Court Has Personal Jurisdiction Over Dyson UK and James Dyson ............ 11

A.

B.

C.

D.

E.

F.

III. No Additional Discovery Will Be Required ............ 19

CONCLUSION ............ 20

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*Afros S.P.A. v. Krauss-Maffei Corp.*,
113 F.R.D. 127 (D. Del. 1986) ....................10, 11

*Allen v. Howmedica Leibinger, Inc.*,
197 F. Supp. 2d 101 (D. Del. 2002)....................7

*Asahi Metal Indust. Co. v. Superior Court*,
480 U.S. 102 (1987)....................17

*In re Burlington Coat Factory SEC Litig.*,
114 F.3d 1410 (3d Cir. 1997)....................10

*Callaway Golf Co. v. Slazenger*,
384 F. Supp. 2d 735 (D. Del. 2005)....................8

*Directory Dividends, Inc. v. SBC Communications, Inc.*,
No. 01-CV-1974, 2003 U.S. Dist. LEXIS 12214
(E.D. Pa. July 2, 2003)....................18, 19

*Donsco, Inc. v. Casper Corp.*,
587 F.2d 602 (3d Cir. 1978)....................16

*Electro Medical Equip. Ltd. v. Hamilton Medical AGE*,
No. CIV A 99-579, 1999 WL 1073636
(E.D. Pa. Nov. 16, 1999)....................17

*Enzo Life Sciences, Inc. v. Digene Corp.*,
295 F. Supp. 2d 424 (D. Del. 2003)....................7

*Fingles v. Goklany*,
No. 92-1080, 1992 U.S. Dist. LEXIS 19209
(E.D. Pa. Dec. 11, 1992)....................12, 16

*Foman v. Davis*,
371 U.S. 178 (1962)....................9, 10, 11

*Harris v. Sentry Title Co.*,
715 F.2d 941 (5th Cir. 1983)....................9, 16

*Hershey Pasta Group v. Vitelli-Elvea Co., Inc.*,
921 F. Supp. 1344 (M.D. Pa. 1996)....................17, 18

*McLaughlin v. Copeland*,
455 F. Supp. 749, 753 (D. Del. 1978)....10

*Moore v. Little Giant Industries, Inc.*,
513 F. Supp. 1043 (D. Del. 1981),
*aff'd*, 681 F.2d 806 (3d Cir. 1982)....15

*Mylan Pharmaceuticals, Inc. v. Kremers Urban Dev.*,
C.A. No. 02-1628-GMS, 2003 U.S. LEXIS 20665
(D. Del. November 14, 2003)....9, 11, 12

*Nasdaq Stock Market, Inc. v. Archipelago Holding, LLC*,
336 F. Supp. 2d 294 (S.D.N.Y 2004)....7

*North Penn Gas Co. v. Corning Natural Gas Corp.*,
897 F.2d 687 (3d Cir. 1990)....15

*Phoenix Canada Oil Co., Ltd. v. Texaco, Inc.*,
842 F.2d 1466 (3d Cit. 1988)....9

*Renner v. Lanard Toys Ltd.*,
33 F.3d 277 (3d Cir. 1994)....17

*Speakman Co. v. Harper Buffing Mach. Co.*,
583 F. Supp. 273 (D. Del. 1984)....15

*Strategic Staffing Group, Inc. v. Harris Friedell*,
No. 06-CV-1398, 2006 U.S. Dist. LEXIS 66106
(E.D. Pa. September 14, 2006)....16, 17

*Transportes Aeros De Angola v. Ronair, Inc.*,
544 F. Supp. 858 (D. Del. 1982)....14

*U.S. v. Pisani*,
646 F.2d 83 (3d Cir. 1981)....18

*Volkswagenwerk Aktiengesellschaft v. Shlunk*,
486 U.S. 694, 698 (1988)....20

*Zubik v. Zubik*,
384 F.2d 267 (3d Cir. 1967)....16

**Statutes**

15 U.S.C. § 1117(a) ........................................................ 8

15 U.S.C. § 1125(a) ........................................................ 7

Fed. R. Civ. P. 15(c)(2) ........................................................ 9

10 Del. C. Ann. § 3104(c) ........................................................ 15

20 U.S.T., TIAS No. 6638 ........................................................ 20

NOW COMES Maytag Corporation ("Maytag"), through its undersigned counsel, and respectfully submits this reply memorandum in support of its motion for leave to file a second amended answer, affirmative defenses and supplemental counterclaims. In support thereof, Maytag states as follows:

## INTRODUCTION

Buried in the morass of Dyson's mixed-issue response to Maytag's motion to add additional counterclaim defendants are the following simple facts:

These simple facts do not lead to issues of alter ego or veil piercing, as Dyson asserts, because Maytag does not seek to hold Dyson UK and James Dyson liable *for the acts of their*

*subsidiary Dyson, Inc.*

Maytag's opening brief set forth more than sufficient evidence showing good cause for why Dyson UK and James Dyson must be added as counterclaim defendants at this stage of the case. Moreover, as Dyson breathlessly admits in a footnote in its response, this Court has squarely held that such issues as personal jurisdiction are not a proper basis for denying a motion to amend.

Perhaps the analysis at this stage of the litigation will circumvent any more wasting of the Court's time with unnecessary and unfounded motions to dismiss once these necessary counterclaim defendants are added.

Accordingly, granting Maytag's proposed amendment will not require additional discovery or affect the trial schedule in this case.

The Court should grant Maytag leave to add Dyson UK and James Dyson as counterclaim defendants.

## ARGUMENT

Dyson, Inc's "success" in the U.S. (as characterized in Dyson's Answering Brief in Opposition to Maytag's Motion for a Temporary Restraining Order ("Dyson Resp.") [D.I. 188])[1] is the *sin qua non* of the good cause for Maytag's failure to name Dyson James Limited and Dyson Limited ("Dyson UK") and James Dyson originally as counterclaim defendants. Up until November of this year, Maytag had every reason to believe that U.S. subsidiary Dyson, Inc. was the sole false advertiser that damaged Maytag.

### I. Dyson UK And James Dyson Are Proper Parties.

Since the time that Dyson, Inc. defended Dyson's false advertisements before the U.S. National Advertising Division ("NAD") in the summer of 2005, until November this year, Maytag reasonably believed that Dyson, Inc. was the sole party responsible for Dyson's false ads in the U.S. Dyson's own submissions to the NAD in 2005, in which it defended the supposed veracity of the ads, did little to dispel this erroneous conclusion. (*See* Affidavit of Josh Goldberg in Support of Maytag's Reply for Leave to File a Second Amended Answer, Affirmative Defenses and Supplemental Counterclaims ("Goldberg Aff.") Ex. A at DYS012021)

[1] As Dyson recognizes in its response to Maytag's Motion to Amend, the issues raised in Maytag's Motion for a Temporary Restraining Order are relevant to this issue as well. (*See* Dyson Resp. at 17, fn 4) Accordingly, Maytag likewise will occasionally refer herein to its papers in support of its Motion for TRO.

A.

Dyson's response papers utterly fail to address the following essential facts:

15 U.S.C. 1125(a); *Allen v. Howmedica Leibinger, Inc.*, 197 F. Supp. 2d 101, 107-8 (D. Del. 2002) (holding that a Lanham Act plaintiff is required to prove by a preponderance of the evidence that: (1) defendant made false or misleading statements as to its product, or those of the plaintiff; (2) there was actual deception or at least a tendency to deceive a substantial portion of the intended audience; (3) the deception was material in that it is likely to influence purchasing decisions; (4) the advertised goods traveled in interstate commerce; and (5) there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc.); *see also Enzo Life Sciences, Inc. v. Digene Corp.*, 295 F. Supp. 2d 424, 427 (D. Del. 2003) (denying summary judgment to parent corporation regarding Lanham Act counterclaims brought against parent in patent infringement suit brought by parent's subsidiary); *Nasdaq Stock Market, Inc. v. Archipelago Holding, LLC*, 336 F. Supp. 2d 294, 305 (S.D.N.Y 2004).

Upon a finding of false advertising, the Lanham Act allows for the recovery of the plaintiff's lost profits as a result of the injury, the defendant's unjust enrichment profits, or both if the defendant's conduct was willful, as well as costs of the action.  15 U.S.C. 1117(a); *see also Callaway Golf Co. v. Slazenger*, 384 F. Supp. 2d 735, 740 (D. Del. 2005) (sustaining jury award of unjust enrichment damages to golf ball manufacturer plaintiff where competitor defendant manufacturer falsely advertised its golf ball as "the Longest Ball on the Tour").

This serves as another basis for making it a counterclaim defendant, but not, as Dyson would argue, because of alter ego or veil piercing.  Were Maytag primarily proceeding here under an alter ego theory, it would be seeking damages from the Dyson parent for the acts of the subsidiary.

. *See Phoenix Canada Oil Co., Ltd. v. Texaco, Inc.*, 842 F.2d 1466, 1473 (3d Cit. 1988), *quoting Harris v. Sentry Title Co.*, 715 F.2d 941, 950 (5th Cir. 1983) ("Profits, no matter how large, do not constitute unjust enrichment unless they equitably belong to another person.")

**C. Maytag Has Met The Correct Standard To Add Dyson UK And James Dyson.**

This very Court has granted motions to amend without relying on the "magic words" of Rule 16. *See Mylan Pharmaceuticals, Inc. v. Kremers Urban Dev.*, C.A. No. 02-1628-GMS, 2003 U.S. LEXIS 20665 (D. Del. November 14, 2003) (holding that the factors set forth in *Foman v. Davis*, 371 U.S. 178, 182 (1962) govern when determining whether leave to amend should be granted) (Goldberg Aff. Ex. O).[4]

While Fed. R. Civ. P. 15(c)(2) discusses such a duty for motions to add parties by mistake of identity, such is not the case, as here, when a party makes a sufficient showing that

there has been no undue delay, bad faith or dilatory motive in seeking to add new parties, and the amendment would not be futile. *Foman*, 371 U.S. at 182; *see also In re Burlington Coat Factory SEC Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (citations omitted)

Again, Dyson's argument here confuses the facts that may have been known early in this litigation with the new facts that Maytag did not obtain until November 2006.

In any event, Dyson's objections were wholly improper. *See Afros S.P.A. v. Krauss-Maffei Corp.*, 113 F.R.D. 127, 132 (D. Del. 1986). In *Afros*, the plaintiff sued Delaware corporation KMC for patent infringement. 113 F.R.D. at 129. *Id.* Afros also moved to compel KMC to produce documents relating to the alleged infringing item – documents that were in the control and custody of the German parent, who was not a party. *Id.* The *Afros* court held:

[5] Dyson's citation to *McLaughlin v. Copeland*, 455 F. Supp. 749, 753 (D. Del. 1978) to allege that Maytag sought discovery to support future claims is inapposite. (Dyson Resp. at 20) In that case, the plaintiff sought additional discovery to bolster his case in the face of a motion to dismiss for failure to state a claim. *Id.* at 753. The issue here is not failure to state a claim, but the request for leave to add parties because discovery in the last two months has established liability as to those additional parties. There is no question that Maytag has sufficiently stated its Lanham Act claims and now only seeks to add necessary parties.

> The 'nature of the relationship' between the party over whom the court has jurisdiction and the non-party with possession of the documents will determine whether a motion to compel discovery should be granted. Three factors are of paramount importance in ascertaining this relationship: first, the corporate structure encompassing the different parties; second, the non-party's connection to the transaction at issue; third, to what degree will the non-party receive the benefit of any award in the case.

*Id.* at 130. The court held that all three factors weighed in favor of the defendant and granted the motion to compel. *Id.* Here, Dyson confuses the *Afros* question of "whether a party *controls documents*" with the question of parent-subsidiary control for purposes of jurisdiction. *Id.* at 131 ("Defendant argues the dismissal of [the German parent] as a defendant for lack of personal jurisdiction should govern the issue of control under Rule 34. KMC's argument is flawed, however, because the jurisdiction issue rested on a minimum contacts analysis, while the present question requires the Court to analyze the relationship between [the German parent] and KMC.")

In sum, Dyson's contradictory argument is that (1) Maytag did not act diligently in seeking the information that led Maytag to seek leave to amend, but (2) Maytag was not entitled to that very same information (in the control and custody of Dyson UK).

## II. This Court Has Personal Jurisdiction Over Dyson UK and James Dyson.

Even though *Mylan* makes personal jurisdiction irrelevant for the purposes of deciding this motion, Maytag here will address the issue to avoid any future wasting of the Court's or the parties' time with unfounded motions to dismiss for lack of personal jurisdiction.

*See* discussion of *Fingles v. Goklany*, No. 92-1080, 1992 U.S. Dist. LEXIS 19209 (E.D. Pa. Dec. 11, 1992) at 17 *infra* (holding that nonresident defendant's advertising activities in the forum were sufficient to meet the minimal contacts standard).

13

In determining whether the Court may exercise personal jurisdiction over Dyson UK and James Dyson, the Court must inquire whether Delaware would permit its own courts to exercise jurisdiction under its long-arm statute, and, if so, whether the exercise would satisfy due process. *Transportes Aeros De Angola v. Ronair, Inc.*, 544 F. Supp. 858, 864 (D. Del. 1982).

*See North Penn Gas Co. v. Corning Natural Gas Corp.*, 897 F.2d 687, 689 (3d Cir. 1990) (vacating and remanding grant of motion to dismiss for lack of personal jurisdiction).

The Delaware long-arm statute in pertinent part allows for jurisdiction over any nonresident who:

> (3) Causes tortious injury in the State by an act or omission in this State;
> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State . . . .

10 Del. C. Ann. § 3104(c).  The Court must construe the section broadly so as to confer jurisdiction to the maximum extent permitted by due process. *Speakman Co. v. Harper Buffing Mach. Co.*, 583 F. Supp. 273, 275 (D. Del. 1984)  The due process clause, in turn, permits suit against a nonresident defendant if the defendant maintained such "minimum contacts" with the forum state that the exercise of jurisdiction over the defendant would not offend "traditional notions of fair play and substantial justice." *Moore v. Little Giant Industries, Inc.*, 513 F. Supp. 1043, 1048 (D. Del. 1981), *aff'd*, 681 F.2d 806 (3d Cir. 1982).

*See Fingles v. Goklany*, 1992 U.S. Dist. LEXIS 19209 (Goldberg Aff. Ex. T).                    There, the plaintiff filed a medical malpractice claim against multiple parties, including APFU, a California corporation offering treatment to persons suffering from eating disorders.  The court rejected APFU's motion to dismiss for lack of personal jurisdiction, concluding that it possessed in personam jurisdiction over APFU by virtue of its advertising activities in Pennsylvania. *Id.* at *4. The Court found that APFU's advertising activities were related to the plaintiff's claim, since they induced her to enroll in APFU's program, and that these activities constituted sufficient contact between APFU and Pennsylvania that APFU should have anticipated being haled into court in the state. *Id.*

*Donsco, Inc. v. Casper Corp.*, 587 F.2d 602, 606 (3d Cir. 1978); *Zubik v. Zubik*, 384 F.2d 267, 275 (3d Cir. 1967).  Third Circuit courts apply three factors to determine if an officer's corporate contacts should be considered for personal jurisdiction over the officer: (1) the officer's role in the corporate structure; (2) the quality of the officer's contacts; and (3) *the nature and extent of the officer's role in the alleged tortious conduct. See Strategic Staffing Group, Inc. v. Harris Friedell*, No. 06-CV-1398, 2006 U.S. Dist. LEXIS 66106, at *11 (E.D. Pa. Sept. 14, 2006) (rejecting the fiduciary shield doctrine

defense where the officer's role in the corporation was as part of its senior management, the officer regularly visited the forum to directly supervise operations, and *the officer personally participated in the alleged wrongful conduct*) (emphasis added) (Goldberg Aff. Ex. U).

*See Asahi Metal Indust. Co. v. Superior Court*, 480 U.S. 102 (1987); *Renner v. Lanard Toys Ltd.*, 33 F.3d 277, 279 (3d Cir. 1994); *see also Electro Medical Equip. Ltd. v. Hamilton Medical AGE*, No. CIV A 99-579, 1999 WL 1073636, at * 6 (E.D. Pa. Nov. 16, 1999) (holding that the theory established personal jurisdiction over Swiss corporation in Lanham Act trademark infringement suit) (Goldberg Aff. Ex. V); *Hershey Pasta Group v. Vitelli-Elvea Co., Inc.*, 921 F. Supp. 1344, 1350 (M.D. Pa. 1996) (same). In *Hershey Pasta*, the court asserted personal jurisdiction over foreign defendants who were accused of Lanham Act violations because "[t]he Lanham Act was created to provide a special and limited unfair competition remedy for business competitors. *Id.* The court found that "because the [Lanham Act] violation is alleged to have occurred in Pennsylvania, the Commonwealth has an interest [in] having the litigation occur here." *Id.*

This Court should vindicate the same interest as that recognized by the *Hershey Pasta* court.

The factors the Court should consider in making this determination include "failure to observe corporate formalities, non-payment of dividends, the insolvency of the debtor corporation at the time, siphoning of funds of the corporation by the dominant stockholder, non-functioning of other officers or directors, absence of corporate records, and the fact that the corporation is merely a facade for the operations of the dominant stockholder or stockholders." *U.S. v. Pisani*, 646 F.2d 83, 88 (3d Cir. 1981); *see also Directory Dividends, Inc. v. SBC Communications, Inc.*, No. 01-CV-1974, 2003 U.S. Dist. LEXIS 12214, at *10 (E.D. Pa. July 2, 2003) (imputing personal jurisdiction over the subsidiary to the parent where the parent's 100-

percent ownership of the subsidiary and overlapping management proved that parent and subsidiary were one functioning entity) (Goldberg Aff. Ex. W).

**III. No Additional Discovery Will Be Required.**

Finally, despite Dyson's protestations to the contrary, neither the Court nor Dyson will be prejudiced by adding these additional counterclaim defendants.

Absent necessary material for further briefing and/or hearing on the issue of personal jurisdiction over the Dyson UK entities and James Dyson, Maytag will seek no further production from Dyson. As soon as Dyson performs its outstanding discovery obligations, Maytag will be ready for trial. No changes to this Court's trial schedule will be necessary.

**CONCLUSION**

WHEREFORE, the Court should grant Maytag's motion to amend.[11]

Dated: December 20, 2006

Respectfully submitted,

MAYTAG CORPORATION

/s/ Francis DiGiovanni
Francis DiGiovanni (#3189)
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 N. Orange Street
Wilmington, DE 19899
Phone (302) 658-9141
Fax (302) 658-5614

Kimball R. Anderson
Stephen P. Durchslag
Winston & Strawn LLP
Chicago, IL 60601
Phone (312) 558-5600
Fax (312) 558-5700

Ray L. Weber
Laura J. Gentilcore
Renner, Kenner, Greive, Bobak,
Taylor & Weber
400 First National Tower
Akron, OH 44308
Phone (330) 376-1242
Fax (330) 376-9646

[11] In the event the Court grants the motion, Maytag will served its Amended Counterclaims on Dyson UK and James Dyson pursuant to the Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters. 20 U.S.T., TIAS No. 6638 ("Hague Convention"); *Volkswagenwerk Aktiengesellschaft v. Shlunk*, 486 U.S. 694, 698 (1988).

**CERTIFICATE OF SERVICE**

I, Francis DiGiovanni, hereby certify that on December 20, 2006, copies of the foregoing document were served on the following counsel of record in the manner indicated:

**BY HAND DELIVERY AND E-MAIL:**

C. Barr Flinn
John W. Shaw
Adam Poff
Young Conaway Stargatt & Taylor LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801

**BY UNITED STATES MAIL AND E-MAIL:**

Garrard R. Beeney
Richard C. Pepperman, II
James T. Williams
Keith McKenna
Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004

Steven F. Reich
Jeffrey S. Edelstein
Manatt, Phelps & Phillips, LLP
7 Times Square
New York, NY 10004

/s/ Francis DiGiovanni
Francis DiGiovanni (#3189)