# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

DYSON TECHNOLOGY LIMITED )
and DYSON, INC., )
      Plaintiffs, )
       )
v. )  **Civil Action No. 05-434 GMS**
       )
MAYTAG CORPORATION, )
      Defendant. )  **REDACTED FOR PUBLIC FILING**
       )

### [CORRECTED VERSION]
### DEFENDANT MAYTAG CORPORATION'S REPLY IN SUPPORT OF ITS MOTION FOR ENTRY OF A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION REGARDING IMPROPER ASSET TRANSFERS

Francis DiGiovanni
Connolly Bove Lodge & Hutz
The Nemours Building
1007 N. Orange Street
Wilmington, DE 19899
Phone (302) 658-9141
Fax (302) 658-5614

Kimball R. Anderson
Stephen P. Durchslag
Winston & Strawn
Chicago, IL 60601
Phone (312) 558-5600
Fax (312) 558-5700

Ray L. Weber
Laura J. Gentilcore
Renner, Kenner, Greive, Bobak,
  Taylor & Weber
400 First National Tower
Akron, OH 44308
Phone (330) 376-1242
Fax (330) 376-9646

*Attorneys for Defendant*
*Maytag Corporation*

Dated: December 20, 2006

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................. i

I.      INTRODUCTION ................................................................................................... 1

II.     BACKGROUND ...................................................................................................... 3

        A.

        B.

III.    ARGUMENT ........................................................................................................... 8

        A.      Maytag Has Requested Equitable Relief .................................................. 8

        B.

        C.

        D.      Maytag Has Satisfied The Requirements Of
                A TRO Or Preliminary Injunction ......................................................... 12

                1.      Dyson's Advertisements Are Literally False ............................. 12

                2.      Dyson's Claim That The Vacuums
                        Do Not Rely On Filters Is False .................................................. 13

                3.      Dyson's Most Powerful Upright Claims Are False .................... 14

                4.      Dyson's No Loss of Suction Claim Implicitly
                        Communicates A Cleaning Superiority Which
                        is Demonstrably False .................................................................. 14

                5.      Maytag Also Demonstrates Its Likelihood of
                        Success On the Merits Regarding The Relief Requested .......... 16

        E.      Maytag Will Suffer Irreparable Harm If No TRO
                Or Preliminary Injunction Is Issued ...................................................... 16

        F.      The Balance Of Harms Favors Maytag .................................................. 17

        G.      The Injunctive Relief Is In The Public Interest ..................................... 18

        H.      The Amount Subject To The Requested Injunctive Relief Is Appropriate ........... 18

IV.     CONCLUSION ...................................................................................................... 20

## TABLE OF AUTHORITIES

**Page**

### Cases

*BASF Corp. v. Old World Trading Co.,*
   41 F.3d 1081 (7th Cir. 1994) ........................................................................................9

*Dentsply Int'l Inc. v. Kerr Manufacturing Co.,*
   42 F. Supp. 2d 385 (D. Del. 1999)..............................................................................11

*Elliott v. Kiesewetter,*
   98 F.3d 47 (3d Cir. 1996)............................................................................................17

*Fairview Mach. & Tool Co. v. Oakbrook Int'l, Inc.,*
   77 F. Supp. 2d 199 (D. Mass 1999) ............................................................................11

*Golden State Bottling Co. v. NLRB,*
   414 U.S. 168 (1973).....................................................................................................11

*Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.,*
   527 U.S. 308 (1999).........................................................................................10, 11, 17

*Hoxworth v. Blinder, Robinson & Co., Inc.,*
   903 F.2d 186 (3d Cir. 1990).................................................................................18, 19

*Kirby v. United States Government, Dep't of Housing & Urban Dev.,*
   745 F.2d 204 (3d Cir. 1984).....................................................................................9, 10

*Marsellis-Warner Corp.,*
   51 F. Supp. 2d 508 (D.N.J. 1999) ...............................................................................17

*National Union Fire Ins. Co. v. Kozeny,*
   115 F. Supp. 2d 1243 (D. Colo. 2000)........................................................................11

*Quantum Corp. Funding, Ltd. v. Assist You Home Health Care Serv.,*
   144 F. Supp. 2d 241 (S.D.N.Y. 2001).........................................................................11

*Reebok International, LTD v. Marnatech Enterprises,*
   970 F.2d 552 (9th Cir. 1992) .....................................................................................9

*Reliance Ins. Co., v. Mast Construction Co. et al.,*
   84 F.3d 372 (10th Cir. 1996) ...................................................................................11

*Slidell, Inc. v. Millennium Inorganic Chem., Inc.,*
   2002 WL 649086 (D. Minn. Apr. 17, 2002).................................................................11

*Texaco, Inc. v. Allied Chemical Corp.,*
   75 Civ. 327, 1975 U.S. Dist. LEXIS 16148,
   (S.D.N.Y. Sept. 17, 1975)............................................................................................11

i

*U-Haul International, Inc. v. Jartran, Inc.*,
    793 F.2d 1034 (9th Cir. 1986) ........................................................................9

*United States ex rel. Rahman v. Oncology Assoc.*,
    198 F.3d 489 (4th Cir. 1999) ...........................................................10, 11, 17

*Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*,
    494 F. Supp. 1246 (E.D. Pa. 1980) ...............................................................9

### Statutes

15 U.S.C. § 1117(a) ...............................................................................................8, 9

F.R.C.P. 54(c) .........................................................................................................10

F.R.C.P. 64 .........................................................................................................2, 10

NOW COMES Maytag Corporation ("Maytag"), through its undersigned counsel, and respectfully submits this reply memorandum in support of its motion for a temporary restraining order ("TRO") and preliminary injunction. In support thereof, Maytag states as follows:

## I.    INTRODUCTION

Plaintiffs/Counter-defendants Dyson Technology Limited's and Dyson, Inc.'s ("Dyson US")[1] scattershot response to Maytag's motion for a TRO and preliminary injunction fails to adequately rebut Maytag's establishment of the elements for a TRO or preliminary injunction. As discussed more fully in its opening brief, through recent discovery and depositions, Maytag has learned that:

Dyson US' response either ignores or severely plays down these facts, and instead creates a smokescreen with issues of alleged lack of equitable relief, the Court's ability to issue injunctions, and prejudgment attachment.

First, as discussed more fully herein, Maytag has requested equitable relief, as provided by the Lanham Act, and Maytag does not have an obligation to choose *ex ante* whether it should

---

[1] As in Mayag's opening brief, the Dyson entities in the United Kingdom, which includes Dyson Limited and Dyson James Limited ("DJL") among them, will be referred to hereafter as "Dyson UK." The term "Dyson" will refer to the entire Dyson corporate organization.

[2] All amounts are reported in dollars, using an exchange rate of $1 = 1.97 British pounds sterling (GPB). (*See* Affidavit of Josh Goldberg in Support of Reply to TRO Motion, filed herewith ("TRO Aff.") Ex. A).

receive damages or the equitable relief of Dyson's ill-gotten profits. Second, as discussed more fully in Maytag's reply in support of its motion for leave to file a second amended answer, affirmative defenses and supplemental counterclaims


Third, Dyson US's discussion of F.R.C.P. 64 and prejudgment attachment is not relevant because Maytag is not seeking a prejudgment attachment. Under Maytag's requested injunction,

Further, there is a reasonable relationship between the value of the requested relief and a judgment. Maytag is simply seeking to maintain the status quo and prevent irreparable harm in the immediate short-term, *i.e.*, before this litigation goes to trial in the spring of 2007.

Finally, Dyson US unsuccessfully tries to rebut Maytag's establishment of the criteria for a TRO or preliminary injunction. In its opening brief, Maytag met the standard for this Court to issue a TRO and preliminary injunction by showing, *inter alia*: (1) Maytag likely will succeed on its false advertising claims because Dyson's advertisements are literally false; (2) Maytag will be irreparably harmed if this motion is not granted

(3) the balance of harms weighs in Maytag's favor because James

and (4) it is in the public interest to impose such an appropriate remedy for Dyson's false advertising.

Dyson's tortured explanations as to why its advertising claims are true, while an exercise in semantics, are not credible or reasonable. Further, as discussed below, the equitable relief Maytag seeks, which is explicitly allowed under the Lanham Act, is not simply a proxy for damages, but a method of disgorging the unjust profits Dyson gained.

## II.    BACKGROUND

However, as Maytag only recently learned in discovery,

3

Dyson attaches the affidavits of John Shipsey, a director and the CFO of DJL, and Sean

Foley, a Principal with KPMG,

As a result of this significant omission, the

Shipsey and Foley affidavits provide no support whatsoever [1]

A.

For the year ending December 31, 2005, DJL's Profit

Before Taxes ("PBT") was $202.6 million and its Net Current Assets were $330.5 million. (*See*

TRO Aff. Ex. D at 6, 8)

4

5 While Dyson makes much of the fact the DJL's financial statement for 2005 was publicly available on the UK government website,

**B.**

are exactly the dubious actions that Maytag seeks to enjoin, because it will suffer irreparable harm if they are allowed to continue.

## III.    ARGUMENT

### A.    Maytag Has Requested Equitable Relief

Dyson argues throughout its response that Maytag cannot seek a TRO or preliminary injunction because it has not requested equitable relief in its counterclaim. This is simply not true. First, Maytag asserted in each counterclaim that it did not have an adequate remedy at law. (*See* Answer/Supplemented Counterclaims at ¶¶ 63, 68, and 73). Maytag seeks its damages, "both compensatory and *statutory*, by reason of Plaintiff's false advertising and unfair competition" (*See id.* at 23) The Lanham Act clearly allow for equitable relief in the form of the defendant's ill-gotten profits. *See* 15 U.S.C. § 1117(a) (when a violation under 43(a) is established, a plaintiff is allowed "subject to the principles of equity, to recover: (1) defendant's profits, (2) any damages sustained by plaintiffs, and (3) the costs of the action.") Among the equitable relief Maytag seeks in its Counterclaim (in addition to injunctive relief and orders to have Dyson recall packaging and publish corrective advertising), is the statutory recovery

afforded by the Lanham Act. Plaintiffs' failed attempt to limit Maytag's relief is not supported by the facts.

Dyson US' arguments that the lost profits are a legal remedy is also unavailing.

Second, Dyson US' unsubstantiated claim that Maytag's lost sales "would be more than adequate" is an issue for the Court. *See* 15 U.S.C. § 1117(a) (allowing the court to treble plaintiff's damages or adjust the recovery based on profits, at its discretion). In fact, in one of the cases that Plaintiffs cite, the circuit court noted that they "have held that it is a *per se* abuse of discretion to fail to award relief under § 1117 that is adequate to make willful trademark infringement unprofitable." *Reebok International, LTD v. Marnatech Enterprises*, 970 F.2d 552, 559 (9th Cir. 1992).

Finally, Dyson's argument that Maytag cannot seek injunctive relief because it did not choose the relief allowed under the Lanham Act is unavailing. There is no requirement to elect remedies available by statute. In various circuits, plaintiffs have presented multiple methods to calculate damages. *See U-Haul International, Inc. v. Jartran, Inc.*, 793 F.2d 1034, 1041-42 (9th Cir. 1986) (plaintiff presented two methods of damages calculation to the court: revenue projections and corrective advertising); *BASF Corp. v. Old World Trading Co.*, 41 F.3d 1081, 1092-96 (7th Cir. 1994) (relying on market share method to calculate plaintiff's damages rather than disgorgement or loss of sales, both of which plaintiff presented to the court); *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 494 F. Supp. 1246, 1254 (E.D. Pa. 1980) (antitrust case) (plaintiff offered four alternative methods of calculating lost profits); *see also Kirby v. United States Government, Dep't of Housing & Urban Dev.*, 745 F.2d 204, 207 (3d Cir. 1984) (holding

---

[6] The cases Plaintiffs rely on to argue that the damages are legal and not equitable almost exclusively deal with the parties' right to a jury trial and are inapposite.

under F.R.C.P. 54(c), that as long as plaintiffs have stated a claim for relief, it is court's obligation to grant relief to which the prevailing party is entitled, whether it has been specifically demanded or not).

    **B.**

    As Maytag discussed in its opening brief, Maytag is not seeking a prejudgment attachment under F.R.C.P. 64, but temporary injunctive relief to maintain the status quo

                                                            Maytag

seeks the TRO or preliminary injunction under the Court's inherent authority. Consequently, Plaintiffs' arguments regarding F.R.C.P. 64 are irrelevant to this Court's issuance of an injunction.

                                               16-17) a TRO, or

preliminary injunction would not run afoul the Supreme Court's decision in *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999) because there is a sufficient nexus between the equitable claims                                *See United States ex rel. Rahman v. Oncology Assoc.*, 198 F.3d 489, 496-97 (4th Cir. 1999). Here, the equitable claim under the Lanham Act allows for disgorgement of defendant's profits,

        *Grupo Mexicano* held that District Courts do not have the authority to issue a preliminary injunction preventing the transfer of assets pending the adjudication of purely legal claims seeking only monetary damages. *See* 527 U.S. at 333. As discussed above, Maytag's Counterclaims not only contain legal claims seeking monetary damages, but equitable relief as

well.  After *Grupo Mexicano*, lower courts have continued to enter preliminary injunctions predicated on equitable claims and remedies.[7]  Injunctive relief is appropriate here.

### C.    The Injunctive Relief Could Properly Issue

Dyson US attempts to avoid the TRO and preliminary injunction

Courts have concluded that an injunction properly binds non-parties beyond the language in F.R.C.P. 65(d), including those identified with the named parties in interest, in privity with them, represented by them, or subject to their control.  *Dentsply Int'l Inc. v. Kerr Manufacturing Co.*, 42 F. Supp. 2d 385, 393 (D. Del. 1999) (citing *Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 179 (1973)).  The non-parties can also be bound when there is "a showing of something akin to alter ego, collusion, or identify of interest."  *Reliance Ins. Co., v. Mast Construction Co. et al.*, 84 F.3d 372, 377 (10th Cir. 1996).  In that vein, the interpretation of Rule 65(d) has allowed for injunctions to issue to non-party subsidiaries of a parent corporation.  *See Texaco, Inc. v. Allied Chemical Corp.*, 75 Civ. 327, 1975 U.S. Dist. LEXIS 16148, *7 (S.D.N.Y. Sept. 17, 1975) (allowing the injunction to issue against the non-party subsidiaries because the personnel of the parent company were directly involved in the activities of the subsidiaries, and provided them with advertising and promotional materials).

---

[7] *See e.g., Rahman, supra; Slidell, Inc. v. Millennium Inorganic Chem., Inc.*, 2002 WL 649086 (D. Minn. Apr. 17, 2002); *Quantum Corp. Funding, Ltd. v. Assist You Home Health Care Serv.*, 144 F. Supp. 2d 241 (S.D.N.Y. 2001); *National Union Fire Ins. Co. v. Kozeny*, 115 F. Supp. 2d 1243, 1250 (D. Colo. 2000); *Fairview Mach. & Tool Co. v. Oakbrook Int'l, Inc.*, 77 F. Supp. 2d 199, 202-05 (D. Mass 1999). Unpublished cases are attached at TRO Aff. Ex. P.

**D.**    **Maytag Has Satisfied The Requirements Of A TRO Or Preliminary Injunction**

      **1.**    **Dyson's Advertisements Are Literally False**

The evidence of record shows that that Dyson's advertisements are literally false.

Dyson's attempt to put an *ex post* spin on their false advertising claims is belied

                                          It is neither.

The ASTM

Test Method F558 is the only industry-recognized test method for evaluating suction of vacuum

cleaners in the United States (and only ASTM standards are approved by the American National

Standards Institute). (TRO Opening Br. at 16-17)

Nor did Dyson US discuss the National Advertising Division

of the Better  Business Bureau's ("NAD's") rejection of Dyson's preference of IEC testing

standards. (TRO Opening Br. at 13)

### 2. Dyson's Claim That The Vacuums Do Not Rely On Filters Is False

It is inconceivable how this would not constitute reliance. However, Plaintiffs then state

that these filters are not relied on by Dyson vacuum cleaners "to separate dust from air." That is

tantamount to saying that their vacuums do not rely on the filters *in the same way* that other

vacuums do, but it does not mean that their vacuum cleaners do not rely on filters. Further,

whether Dyson's assertion regarding the purpose for their filters is true is irrelevant, because the

13

fact is that the false advertising simply states that Dyson vacuum cleaners do not rely on filters. Period. Those advertisements are literally false.

### 3.    Dyson's Most Powerful Upright Claims Are False

Like its "no loss of suction" and non-reliance on filter claims, Dyson's claim that its vacuums are the "most powerful upright" vacuums is literally false. (TRO Opening Br. at 13-15)

### 4.    Dyson's No Loss of Suction Claim Implicitly Communicates A Cleaning Superiority Which is Demonstrably False

Dyson has admitted repeatedly that its no loss of suction claim is intended to communicate and does in fact communicate cleaning superiority to consumers (See e.g., Mtn. to Amend Reply Goldberg Aff. Ex. A at DYS012026) ("Maytag's argument boils down to two points: (1) NAD precedent dictates that claims of suction power superiority are likely to be interpreted by consumers as claims of superior cleaning performance ... Dyson does not dispute Maytag's first point ... (Opening TRO Goldberg Aff. Ex. C at 133:8-134 9

Maytag will likely succeed on the merits of claims regarding the misleading nature of Dyson's advertisements,

In a Hall & Partner's report dated July, 2005, (TRO Aff. Ex. O at HAL000283, 236) and commissioned by Dyson, consumers were asked what the main message was of the add regarding "no loss of suction." The report showed the correlation of Dyson's claim with consumers' impressions that it meant "Better cleaning; More efficient cleaning; Won't stop sucking; and Won't clog, among others." (*Id.*)

15

This is strong evidence to show a likelihood of success on the merits.

**5.    Maytag Also Demonstrates Its Likelihood of Success On the Merits Regarding The Relief Requested**

**E.    Maytag Will Suffer Irreparable Harm If No TRO Or Preliminary Injunction Is Issued**

Maytag will suffer irreparable harm if no TRO or preliminary injunction is issued

(*see* TRO Opening Brief at

16

20-22)   The irreparable harm results                                        there is a

sufficient nexus between the assets Maytag seeks to enjoin and the equitable relief it is entitled to

under the Lanham Act. *See Rahman*, supra, and discussion of *Grupo Mexicano, supra.*


the irreparable harm is immediate, constant and

continuing.

### F.      The Balance Of Harms Favors Maytag

Maytag has shown that it will be irreparably harmed if the injunctive relief is not granted.

So the issue becomes whether Maytag's irreparable harm outweighs any harm to Dyson caused

by the injunctive relief.   It does.   Courts routinely conclude that defendants will not suffer

irreparable harm                                        especially when the consequences

from such an order were brought on by [the defendant's] own conduct. *See Marsellis-Warner*

*Corp.*, 51 F. Supp. 2d 508, 532 (D.N.J. 1999); *see also Elliott v. Kiesewetter*, 98 F.3d 47, 59 (3d

Cir. 1996).


As the December 31, 2005

financial statement for DJL shows (TRO Aff. Ex. D at 8), as of December 31, 2005, DJL had Net

Current Assets[8] of 168,248,000 GBP, or $296,116,480 (using the January 1, 2006 exchange rate of 1 GPB = $1.76, as shown in TRO Aff. Ex. A).  It is evident that Dyson did not suffer any harm by carrying those Net Current Assets of $296 million as of December 31, 2005,

the TRO or preliminary injunction will only be effective until trial, which is to begin in less than five months.  This short time period weighs in favor of granting injunctive relief.

G.       **The Injunctive Relief Is In The Public Interest**

Maytag put forth its reasons that the injunctive relief is in the public interest in its opening brief, which includes ensuring that Dyson is held accountable for its false advertising. Plaintiffs' only argument against is that the amount sought to be enjoined simply creates a burden on Dyson.  This is insufficient.

H.       **The Amount Subject To The Requested Injunctive Relief Is Appropriate**

citing *Hoxworth v. Blinder, Robinson & Co., Inc.*, 903 F.2d 186, 198 (3d Cir. 1990). *Hoxworth* states that while a court must make some attempt to relate the value of the assets encumbered to the value of the expected judgment, it need not "make an extended effort to match the value of the assets encumbered to the expected value of the judgment dollar for dollar." 903 F.2d 199.  Further, Maytag stated that it has estimated that the recovery it is entitled

---

[8] Net Current Assets as of December 31, 2005 are defined as Stocks (31,878,000 GPB), Debtors: amounts falling due within one year (96,864,000 GPB) and Cash at hand in bank (116,685,000 GPB) less Creditors: amounts falling due within one year (77,178,000 GPB).  The conversion to dollars here uses an exchange rate of  1 GPB to $1.76, which is shown by the graph as of January 1, 2006.  At current exchange rates as of December 18, 2006, in which 1 GPB = $1.97, the December 31, 2005 Net Current Assets would be $332,062,300.

18

to, as a result of Dyson's false advertising, is in excess of $300 million. Maytag does have support for the $300 million dollar figure

Consequently, the amount of profits to Dyson as a result of the false advertising,

is rationally related to the amount that Maytag seeks to have enjoined.

Finally, *Hoxworth* actually supports Maytag's position regarding imposing a TRO or preliminary injunction on Dyson. First, although the Third Circuit did find that the injunction at issue in *Hoxworth* was overly broad, it remanded to the trial court so that the trial court could make the attempt to reasonably relate the encumbered assets' and expected judgment's values. (*Id.* at 208) In doing so, the Third Circuit held that it was in the trial court's discretion to tailor the scope of the injunctive relief. (*Id.*) The same applies here. Unlike Dyson's assertion that the Court should use *Hoxworth* to find irreparable harm to Dyson, this Court can exercise its discretion,                                             to tailor the injunctive relief Maytag seeks. In any event, Maytag has again established the criteria necessary for this Court to issue a TRO or a preliminary injunction, which can be tailored in the Court's discretion.

19

## IV.    CONCLUSION

WHEREFORE, for the reasons stated herein, and for the reasons stated in Maytag's opening brief for this motion, Maytag respectfully requests that this Court grant a TRO or preliminary injunction to

Respectfully submitted,

MAYTAG CORPORATION

/s/ Francis DiGiovanni
Francis DiGiovanni (#3189)
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 N. Orange Street
Wilmington, DE  19899
Phone (302) 658-9141
Fax (302) 658-5614

Kimball R. Anderson
Stephen P. Durchslag
Winston & Strawn LLP
35 West Wacker Drive
Chicago, IL  60601
Phone (312) 558-5600
Fax (312) 558-5700

Ray L. Weber
Laura J. Gentilcore
Renner, Kenner, Greive, Bobak,
Taylor & Weber
400 First National Tower
Akron, OH  44308
Phone (330) 376-1242
Fax (330) 376-9646

## CERTIFICATE OF SERVICE

I, Francis DiGiovanni, hereby certify that on December 21, 2006, copies of the foregoing

document were served on the following counsel of record in the manner indicated:

**BY HAND DELIVERY AND E-MAIL:**

C. Barr Flinn
John W. Shaw
Adam Poff
Young Conaway Stargatt & Taylor LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801

**BY UNITED STATES MAIL AND E-MAIL:**

Garrard R. Beeney
Richard C. Pepperman, II
James T. Williams
Keith McKenna
Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004

Steven F. Reich
Jeffrey S. Edelstein
Manatt, Phelps & Phillips, LLP
7 Times Square
New York, NY 10004

/s/ Francis DiGiovanni
Francis DiGiovanni (#3189)

511642_1