# EXHIBIT A

1

1          IN THE UNITED STATES DISTRICT COURT

2          IN AND FOR THE DISTRICT OF DELAWARE

3                   - - -

4   DYSON TECHNOLOGY LIMITED      :      Civil Action
    and DYSON, INC.,              :
5                                 :
             Plaintiffs,          :
6                                 :
        v.                        :
7                                 :
    MAYTAG CORPORATION,           :
8                                 :
             Defendant.           :      No. 05-434 (GMS)
9
                         - - -
10

                   Wilmington, Delaware
11               Thursday, December 7, 2006
                       2:00 p.m.
12               Telephone Conference

13                       - - -

14  BEFORE:  HONORABLE GREGORY M. SLEET, U.S.D.C.J.

15  APPEARANCES:

16          JOHN W. SHAW, ESQ., and
            C. BARR FLINN, ESQ.
17          Young Conaway Stargatt & Taylor, LLP
                      -and-
18          RICHARD C. PEPPERMAN, II, ESQ., and
            Sullivan & Cromwell LLP
19          (New York, N.Y.)
                      -and-
20          STEVEN F. REICH, ESQ.,
            CHRISTOPHER COLE, ESQ. (Washington, D.C.), and
21          TAMAR FEDER, ESQ. (Los Angeles, CA)
            Manatt, Phelps & Phillips, LLP
22          (New York, N.Y.)

23                      Counsel for Plaintiffs

24

25

2

```
 1     APPEARANCES CONTINUED:
 2
 3            FRANCIS DiGIOVANNI, ESQ.
              Connolly Bove Lodge & Hutz LLP
 4                   -and-
              STEPHEN DURCHSLAG, ESQ.,
 5            RONALD Y. ROTHSTEIN, ESQ.,
              ANTHONY DiSARRO, ESQ. (New York, N.Y.),
 6            LISA J. PARKER, ESQ., and
              JOSHUA GOLDBERG, ESQ.
 7            Winston & Strawn LLP
              (Chicago, Illinois)
 8                   -and-
              RAY L. WEBER, ESQ.
 9            Renner Kenner Greive Bobak Taylor & Weber, LPA
              (Akron, Ohio)
10
                     Counsel for Maytag/Hoover
11
                        -  -  -
12
13            THE COURT:  Counsel, good morning.  Who is on
14     the line for the plaintiff?
15            MR. SHAW:  Good morning, Your Honor.  John Shaw
16     at Young Conaway for the Dyson parties.  With me from my
17     office is Bart Flinn.  From the Sullivan & Cromwell firm
18     Rick Pepperman, and from the Manatt Phelps firm Steven
19     Reich, Chris Cole, and Tamar Feder.
20            THE COURT:  Good morning.
21            For the defendant.
22            MR. DiGIOVANNI:  Your Honor, Frank DiGiovanni
23     for Maytag.  Also on the line with the Renner Kenner firm is
24     Ray Weber.  And with Winston & Strawn we have Steve
25     Durchslag, Ron Rothstein, Anthony DiSarro, Lisa Parker and
```

46

1    we will get together with Mr. Cole and Mr. Reich and be able

2    to agree on a briefing schedule.

3                    THE COURT:  If you can, you can.

4                    Let's go to B.1.

5                    MR. COLE:  Your Honor, this issue relates to

6    discovery on Maytag's (inaudible) suction claim.

7                    As you know, Maytag -- this implicates the other

8    case as well.  I am not going to -- the fusion vacuum

9    cleaner that is being sold is being sold with a very

10   prominent advertising claim that the product offers no loss

11   of suction.  Now, earlier during this very call Your Honor

12   heard a significant amount of argument from counsel for

13   Maytag that the way that Dyson substantiates its no loss of

14   suction claim in other countries is directly relevant to

15   this lawsuit, they absolutely needed that discovery.

16                   During the course of discovery on this case,

17   however, Your Honor, Maytag's attorneys have resisted

18   producing any evidence or any discovery regarding Maytag's

19   own use of the very claim that they are challenging in our

20   case.  We think the way they substantiate that claim is

21   absolutely relevant to their argument that our claim is

22   false.  And we are seeking discovery on that.  It's

23   absolutely relevant, certainly calculated to lead to the

24   admission of admissible evidence.

25                   In this case, I don't see any credible argument

47

1    that it is not relevant to this case.

2              THE COURT:  Okay.

3              MR. ROTHSTEIN:  Your Honor, on behalf of Maytag.

4    I have a number of remarks to make about that.

5              The first is, Your Honor, this is just an

6    end-run around the discovery process to obtain discovery and

7    get a free pass on discovery in the case that they

8    originally filed in New York and was subsequently

9    transferred to Delaware.

10             The claims at issue in that case are not at

11   issue in the case currently pending before Your Honor and

12   that we are on the call for here today.  And any suggestion

13   to the contrary would be disingenuous.

14             Your Honor, Dyson here is just seeking to obtain

15   discovery in that matter to attempt to bolster their

16   preliminary injunction motion that they have got pending

17   before Your Honor.  They have not moved on that preliminary

18   injunction.  They have never brought that preliminary

19   injunction motion to Your Honor's attention.  They have

20   really been hiding their heads in the sand on that issue.

21   And it was not until today, Your Honor, that Maytag forced

22   the issue to come up in front of Your Honor on their

23   preliminary injunction that that issue has even been

24   addressed in front of the Court.

25             And it's really incumbent on them, and we have

48

1  repeatedly stated to Dyson, if you think that those issues

2  are relevant in the present case, then you have got to seek

3  some sort of relief from the Judge.  But short of doing

4  that, it is our belief that they are just inappropriately

5  trying to get discovery on another case and just wasting

6  everybody's time trying to establish and carry their burden

7  of proof on a motion for preliminary injunction where we

8  have just gotten over that whole discussion.

9          We haven't even had our Rule 16 conference to

10  establish discovery timelines.

11          My final point, Your Honor, is every time we ask

12  them, why do you need this discovery, their response is,

13  because it's calculated to lead to the discovery of

14  admissible evidence.  That's all we get.  We don't get any

15  explanation beyond that.

16          And I would just like to say in my final remark

17  that the claims are different and they haven't demonstrated

18  the claims are the same in any respect whatsoever.  There is

19  some similar language, but there are some very vast

20  differences.

21          THE COURT:  So a request, and I think an

22  appropriate one, that if the information sought is

23  calculated to lead to admissible evidence, then you need to

24  be more specific than just stating that in conclusory

25  language.

49

1          MR. REICH:  Judge, let me give you a very

2   concrete reason why we need this evidence.  They are going

3   to stand in front of the jury with respect to our no loss of

4   suction claim, and they are going to attempt to undermine

5   the manner in which we substantiate that claim and the tests

6   on which we rely to substantiate that claim.  I need to be

7   able to, on our part of the case, or in cross-examination,

8   say to Maytag's witnesses, okay, Mr. Witness, you are

9   critical of how we substantiate our no loss of suction

10  claim.  You are critical of the testing that we rely on to

11  substantiate our no loss of suction claim.  How do you

12  substantiate your no loss of suction claim and what tests do

13  you rely on to substantiate your no loss of suction claim?

14  And wouldn't it be probative if they substantiated their no

15  loss of suction claim the way we did?  And wouldn't it be

16  probative if they relied on the same kind of testing that we

17  did?

18          I very much need that evidence in this case,

19  Your Honor.

20          THE COURT:  All right.

21          MR. ROTHSTEIN:  Your Honor, several points.

22  First of all, Maytag's advertising is not at issue in this

23  case.  And they are not claiming that it is.

24          The second thing is, it's not probative how

25  Maytag substantiates its advertising in the present case

1   because it's Dyson's burden to prove that they have got

2   appropriate substantiation for their own advertising claims

3   and that they had that substantiation at the time that they

4   decided to make those advertising claims, which was at least

5   in the United States over four years ago.

6           What Maytag does in its advertising is not

7   probative in any way whatsoever to how Dyson was conducting

8   itself as early as 2002 in the United States.

9           So it's obviously just a ruse to get discovery

10  for their preliminary injunction motion and avoid their

11  responsibilities, their procedural responsibilities that

12  they should go to.  They are ultimately going to get that

13  discovery, we have explained that to them in detail, when

14  they get their discovery in the transfer case.  But they

15  should wait for that opportunity and not burden the parties

16  with discovery that just has absolutely no bearing on the

17  ultimate issues in this case.

18          MR. REICH:  Judge, if they are going to attack

19  the reasonableness of our substantiation, and if they are

20  going to attack the reasonableness of our testing, our

21  position is that a reasonable juror, if a reasonable juror

22  heard that their substantiation methods were the same or

23  similar to ours, or that their testing were the same or

24  similar to ours, that reasonable juror could find that our

25  substantiation of that same claim or our testing of that

51

1    same claim was also reasonable and therefore could refuse to

2    return a verdict in favor of Maytag.

3                    THE COURT:  There is a no loss of suction claim

4    in the 434 case?

5                    UNIDENTIFIED SPEAKER:  Yes.

6                    MR. ROTHSTEIN:  It is a different claim, Your

7    Honor.  It is a qualified claim.  The language is entirely

8    different from any of the claims that are being made by

9    Dyson in the current case.

10                   THE COURT:  So you don't expect it to come up in

11   the context that Mr. Reich suggests?

12                   MR. ROTHSTEIN:  I didn't follow you, Your Honor.

13                   THE COURT:  In other words, the concern that Mr.

14   Reich articulates, you submit, is a straw person or straw

15   man?

16                   MR. ROTHSTEIN:  I absolutely do, Your Honor.

17   Quite frankly --

18                   THE COURT:  Or red herring, whatever colloquial

19   term you want to use.

20                   MR. ROTHSTEIN:  I do, Your Honor.  Quite

21   frankly, what Hoover does, or is doing currently, or is not

22   doing currently, is not a proxy for what Dyson is or was

23   required to do back in 2002 when they came to the United

24   States.

25                   THE COURT:  I agree.  I am going to deny the

1    request.

2              No. 2.   Scope of waiver of attorney-client

3    privilege in defense of willful infringement.

4              MR. SHAW:  Your Honor, I believe this presents a

5    very discrete legal issue for Your Honor, one you have

6    probably seen before.

7              The question here, Maytag has relied on opinions

8    of counsel on noninfringement and some aspects of invalidity

9    to defend our claim of willful infringement in the patent

10   case.  The dispute between the parties is a very discrete

11   one:  what is the scope of waiver that attends that opinion?

12             It is Dyson's position that the waiver is of the

13   subject matter of the opinion and goes to all communications

14   between counsel and client as to those subjects, and also as

15   to the work product and other things that the client who

16   received that bear on the reasonableness of the client's

17   state of mind after receiving the opinion.

18             Your Honor's last writing on this that I have

19   been able to find is from, I believe, the Mosel-Vitelic

20   case.  It appears to be consistent with the rulings that

21   Judge Farnan and Judge Robinson have rendered as recently as

22   this summer, and also with the Federal Circuit's opinion in

23   the In Re EchoStar case from May, that the scope of waiver

24   does extend to the entire subject matter of the opinion.

25             Maytag, as I understand it, is relying on what I

# EXHIBIT B



# EXHIBIT C

# From vacuuming carpet to scrubbing hard floors …
## the latest from Hoover exclusively at WAL★MART

**Only**
**$128.88**

**Hoover® Fusion™ Cyclonic Bagless Upright Vacuum**
*Model U5180-900*

Hoover and Wal-Mart make cyclonic technology affordable!

- **No Loss Of Suction* —** Cyclonic technology offers powerful cleaning with no loss of suction.*

- **No Filters To Replace —** Permanent washable filters last the life of your vacuum.

**Only**
**$134.88**

**Hoover® FloorMate™ Hard-Floor Cleaner**
*Model H3000*

First vac-wash-dry cleaning system designed to clean most hard-floor surfaces.

- **Vac-Wash-Dry —** Vacuums, washes and dries, leaving floors clean and virtually dry.

- **Removable Patented SpinScrub™ Brushes —** Do the work for you using a continuous supply of fresh water and cleaning solution for a more thorough clean made easy.

*Suction stays constant for up to 10 ounces of dirt, as tested by an independent laboratory using ASTM F558 test method and a dirt composition comprised of 75% mineral and 20% cellulose dust and 10% illinois material.



**Clean To The Highest Power.™**

**WAL★MART**

# EXHIBIT D

## REDACTED IN ITS ENTIRETY

DB01:2257193.1                                               063753.1002

# EXHIBIT E

## REDACTED IN ITS ENTIRETY