# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

DYSON, INC.,

　　　　　　Plaintiff,

　　　　　v.

　　　　　　　　　　　　　　　　　　Civil Action No. 06-CV-6576(DC)

MAYTAG CORPORATION,

　　　　　　Defendant.

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE

## TABLE OF CONTENTS

Page

I.      PRELIMINARY STATEMENT ........................................................................ 1

II.     RELEVANT FACTS AND PROCEDURAL HISTORY ................................. 1

        A.      The Claims Before This Court............................................................. 1

        B.      The Delaware Litigation. ..................................................................... 3

        C.      The NAD Cases Between the Parties.................................................... 3

III.    ARGUMENT.................................................................................................... 6

        Applicable Law. ............................................................................................. 6

        Factor 8: Dyson's Choice of Forum is Entitled to Great Weight and Should Not
              Be Disturbed. .................................................................................... 7

        Factors 1, 2, and 5: The SDNY is a More Convenient Forum for the Parties and
              Witnesses than the District of Delaware, and Witnesses are Equally
              Amenable to Process in SDNY............................................................ 8

        Factor 4: There is a Much Stronger Connection Between the Operative Facts in
              This Case to New York than Delaware.............................................. 10

        Factor 9: Consolidating This Action With the One Pending in Delaware Will Not
              Enhance Efficiency or Conserve Judicial Resources........................... 13

        Factor 7: The SDNY is a Leading Venue for Lanham Act Cases ................... 15

        Factor 3: More Documents and Evidence Are Located in New York than in
              Delaware .......................................................................................... 15

        Factor 6: The Parties are Equally Capable of Litigating in New York........................... 16

IV.     CONCLUSION.............................................................................................. 16

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE

Plaintiff Dyson, Inc. ("Dyson") opposes the Motion to Transfer Venue, filed by Defendant Maytag Corporation ("Maytag") on September 8, 2006. For the reasons set forth below, Maytag's motion should be denied.

## I.    PRELIMINARY STATEMENT

Maytag has not met its substantial burden in establishing that this case should be transferred from the Southern District of New York ("SDNY") to the U.S. District Court for the District of Delaware. Maytag's proposed transfer will neither conserve judicial resources nor enhance efficiency. Transfer to Delaware would be less convenient for the parties, less convenient for the witnesses, less convenient for the lawyers, and farther away from relevant documents and evidence. Moreover, transfer would in all likelihood delay proceedings on Dyson's request for preliminary injunctive relief.

Dyson chose Delaware as a forum for patent, but not false advertising claims against Maytag. The Lanham Act claims now pending there were asserted in counterclaims by Maytag against Dyson. Transferring the case to Delaware would in effect be honoring Maytag's forum of choice for the advertising litigation, not the forum for those issues chosen by Dyson.

## II.    RELEVANT FACTS AND PROCEDURAL HISTORY

### A.    The Claims Before This Court

On August 31, 2006, Dyson filed the instant complaint for injunctive relief, alleging that Maytag falsely claims on packaging and the Internet for its Hoover Fusion and Maytag Legacy vacuum cleaners that the vacuums provide "No Loss of Suction," *i.e.*, that the suction performance of these vacuum cleaners stays constant while consumers use them to clean their homes. Along with its Motion for Preliminary Injunction, Dyson proffered the results of product

testing by an independent laboratory showing that Maytag's two products lose suction by up to 35% during use. Dyson asserts that this testing disproves Maytag and Hoover packaging and advertising claims of "No Loss of Suction."

Also at issue before this Court is whether Maytag's miniscule disclaimer, printed in a footnote on product packaging and the Maytag website, adequately qualifies the No Loss of Suction claim. Dyson submitted consumer survey evidence in conjunction with its Motion for Preliminary Injunction, showing that the vast majority consumers do not see the footnote, and those that do, do not understand what it means. Thus, Dyson alleges, the footnote does nothing to cure the false No Loss of Suction claim.

Thus before this Court are straightforward allegations under the federal Lanham Act and the New York General Business Law that rest on a showing that a single claim, "No Loss of Suction," as it appears on packaging and Internet advertising for the Maytag Legacy and Hoover Fusion vacuum cleaners, is false.

As filed, Dyson's Motion for Preliminary Injunction relies on the testimony of three witnesses: Gordon Thom (Dyson's President), Susan Goldsmith (Director of Inter Basic Resources, the company which tested Maytag's vacuums), and Michael Mazis (a consumer survey expert). It is Dyson's position that the motion can be decided without the need for discovery. Nevertheless, Maytag has asserted that it requires discovery to defend itself, and the parties have since agreed to a stipulated schedule providing for a roughly two month discovery period on the preliminary injunction motion. The parties have agreed to coordinate this discovery, to the extent possible, with the discovery already pending in Delaware.

## B.    The Delaware Litigation

The case that has been pending since June 27, 2005 in the United States District Court for

the District of Delaware (<u>Dyson Technology Ltd. and Dyson, Inc. v. Maytag Corp.</u>, Civ. No. 05-

434-GMS (D.Del.) (the "Delaware Case")) is more complicated than the case filed here, and the

degree of overlap between the issues in that case and the one pending here is not substantial.

The Delaware Case commenced with the filing by Dyson of four separate causes of action of

patent infringement against Maytag.  Maytag later asserted nine separate counterclaim

allegations of Lanham Act false advertising against Dyson.  (<u>See</u> Affidavit of Christopher A.

Cole ("Attorney Aff."), Exhibits ("Exs.") A and B.)  Maytag's Delaware Case counterclaims not

only challenge Dyson's advertising claims that Dyson vacuums do not lose suction, but also

Dyson's advertising claims regarding cleaning efficacy, design, performance, approval for

allergy sufferers, ability to spin dust out of the air, and technological innovation.  (<u>Id.</u>)  Dyson

itself has at no time asserted any claims of false advertising against Maytag in the Delaware

Case.

## C.    The NAD Cases Between the Parties

At the time of Dyson's June 27, 2005 filing of the Delaware patent litigation against

Maytag, the National Advertising Division of the Council of Better Business Bureaus ("NAD")

in New York had before it a challenge initiated by Maytag/Hoover against Dyson advertising.

Shortly *after* the filing the Delaware case, in July 2005, Dyson itself lodged an NAD advertising

challenge against Maytag.  The two New York NAD challenges between the parties proceeded at

least for a time on parallel, separate tracks.

The NAD, located in midtown Manhattan, is an industry-funded arbitration forum and

part of the Council of Better Business Bureaus, specifically designed to resolve advertising

disputes. Under NAD procedures, the parties make written submissions of evidence, and then individually may meet with the staff of NAD as part of the dispute resolution process. See http://www.nadreview.org/Procedures.asp?SessionID=1030167 (last visited 09/28/06).

In the Maytag NAD proceeding against Dyson, Maytag challenged various advertising claims by Dyson regarding suction and performance. In July 2005, Dyson submitted a substantive response to Maytag's challenge.

Nevertheless, following Dyson's June 27, 2005 filing of the patent case against Maytag in Delaware, Maytag decided to terminate its NAD challenge, so that it could re-assert all of those same allegations against Dyson as counterclaims in the Delaware court. The NAD responded by administratively closing the case. See Procedures for the National Advertising Division, §2.2B (see www.nadreview.org/Procedures.asp?SessionID=1029350 (last visited 9/28/06); (Attorney Aff., Exs. B and D.)

The Dyson NAD challenge against Maytag continued to proceed, however. In that challenge, Dyson argued, among other issues, that advertising for Maytag's "Hoover Fusion" vacuum cleaner, which included claims that the product has "No Loss of Suction," was false and unsubstantiated.

In a failed effort to avoid an adverse NAD decision regarding its No Loss of Suction claim, Maytag argued to the NAD that the NAD should decline to hear the Dyson challenge, because of the pending false advertising litigation that it had initiated in Delaware (brought by Maytag in its counterclaims to Dyson's patent allegations). Maytag argued to the NAD that the issues raised by Dyson's NAD challenge were intertwined with its counter claims in the Delaware case and that the NAD should therefore decline to hear the challenge. The NAD

4

disagreed with Maytag's argument, however, and continued to assert jurisdiction over Dyson's challenge to Maytag's advertising for the Hoover Fusion.

Following a lengthy, contested proceeding in which both parties submitted extensive evidence, the NAD ruled in April 2006 that Maytag had not substantiated its No Loss of Suction claim and recommended that Maytag discontinue advertising that the Fusion has No Loss of Suction. (Attorney Aff., Ex. E at 33-34.). This recommendation, and the facts underpinning it, form precisely the basis of the causes of action now pending in this Court.

Maytag did not comply with this NAD recommendation, choosing instead to launch a copycat vacuum called the Maytag Legacy with the same No Loss of Suction claim. This prompted Dyson to lodge a compliance challenge before the NAD in June 2006.

In August 2006, the NAD ruled in the compliance challenge that Maytag was not in compliance with its prior recommendations and that the No Loss of Suction claim should be discontinued. Maytag declined to comply with this NAD ruling as well, prompting NAD to refer the matter to the Federal Trade Commission. (Attorney Aff., Ex. F.) Dyson filed this case on September 1.

Having lost the NAD challenge and the subsequent compliance proceeding in New York, and facing a lawsuit in New York, Maytag now seeks to forum-shop the dispute to Delaware, its chosen forum for the advertising case.

For its part, Dyson has always tried to keep all of the advertising disputes between the parties in New York. For example, Dyson filed a substantive response to Maytag's June 2005 NAD challenge in New York. (Attorney Aff. Ex. D.) It was Maytag that sought to terminate that challenge in favor of litigating the issues in Delaware. And, in Dyson's Answer to Maytag's false advertising counterclaims later lodged in the Delaware Case, Dyson asserted and

affirmative defense asking the Delaware court to stay proceedings on the false advertising

counterclaims in Delaware in order to enable those claims to be decided in New York before the

NAD. (Attorney Aff. Ex. H).

## III.    ARGUMENT

**Applicable Law**

Maytag bears a substantial burden of establishing that transfer is warranted. Nieves v.

American Airlines, 700 F.Supp. 769, 772 (S.D.N.Y. 1988), quoting Motown Record Corp. v.

Mary Jane Girls, Inc., 660 F.Supp. 174, 175 (S.D.N.Y. 1987); IBM v. Fair Isaac Corp., 2006

U.S. Dist. LEXIS 11949, No. 05 Civ. 10296 (DLC), at *3 (Mar. 23, 2006); SEC v. KPMG, LLP,

2003 U.S. Dist. LEXIS 5669, No. 03 Civ. 671 (DLC), 2003 WL 1842871, at *2 (Apr. 9, 2003).

The Court should give great weight and due deference to the plaintiff's choice of forum.

Reliance Ins. Co. v. Six Star, Inc., 115 F.Supp. 2d 49, 56-57 (S.D.N.Y. 2001).

The standard for a motion to transfer is set forth in 28 U.S.C. § 1404 and is well

established. This statute provides that "for the convenience of the parties and witnesses, in the

interest of justice, a district court may transfer any civil action to any other district or division

where it might have been brought. 28 U.S.C. § 1404(a). The Court must first determine whether

the case could have been properly brought in the court to which the moving party proposes

transfer. Berman v. Informix Corp., 30 F.Supp. 2d 653, 656 (S.D.N.Y. 1998). (Dyson does not

contest that the case could have been brought in Delaware.) If the transferee court has

jurisdiction over this case, then this Court must next consider whether the transfer is appropriate

based upon several factors:

(1) The convenience of the witnesses;

(2) The convenience of the parties;

(3) The location of relevant documents and the relative ease of access to sources of proof;

(4) The locus of operative facts;

(5) The availability of process to compel the attendance of unwilling witnesses;

(6) The relative means of the parties;

(7) The forum's familiarity with the governing law;

(8) The weight accorded the plaintiff's choice of forum; and

(9) Trial efficiency and the interest of justice, based on the totality of the circumstances.

Id. at 657.

Maytag has not carried its burden as to any of these factors, much less a majority of them.

### Factor 8: Plaintiff Dyson's Choice of Forum is Entitled to Great Weight and Should Not be Disturbed.

Maytag argues that Dyson's choice of forum should be entitled to little weight, because of the allegedly retaliatory nature of this lawsuit. In effect, Maytag argues that Dyson chose New York as a means of inconveniencing Maytag, with little other substantive nexus to this forum. Maytag urges that "the circumstances in this case are identical to the circumstances described by this court" in IBM v. Fair Isaac Corp., 2006 U.S. Dist. LEXIS 11949, No. 05 Civ. 10296 (DLC) (Mar. 23, 2006), in which the Court transferred a patent case brought by IBM to a forum in which related litigation between the parties was already pending. See Maytag's Memorandum at 11. This case is not like Fair Isaac, and Maytag's argument is misplaced.

In Fair Isaac, two related patent cases were filed in different jurisdictions within three months of one another. The first case was filed by Fair Issac in the United States District Court for the District of Minnesota against IBM and involved allegations of breach of contract, infringement of one of Fair Issac's patents by IBM, and a misappropriation of trade secrets. Id.

7

at *1. The Court noted that the parties had previously done business with one another over a period of nine years, and that the litigation had sprung out of the acrimonious termination of that relationship. Id.

The second case, a patent infringement case, was filed three months later by IBM against Fair Isaac in the Southern District of New York. The Court was unsparing in its description of IBM's actions – stating that IBM had searched its library of old patents and dredged up two patents upon which to sue Fair Isaac. Id. at *2. The Court concluded that IBM had sued Fair Isaac "essentially in retaliation" for Fair Isaac's prior filing in Minnesota. Id. at *7. The Court further noted that, until the filing of its lawsuit in the SDNY, IBM had never previously advised Fair Isaac that it was infringing any IBM patent during the entire nine-year contractual relationship between the parties.

Dyson did not "retaliate" against Maytag by filing the false advertising case here. The instant case arises after a lengthy and contested proceeding between the parties in New York, which concluded in August 2006, after Dyson exhausted its recourse before NAD.

Thus, this factor weighs strongly in favor of New York, and against transfer to Delaware, as a forum for this case.

### Factors 1, 2, and 5: The SDNY is a More Convenient Forum for the Parties and Witnesses than the District of Delaware, and Witnesses are Equally Amenable to Process in SDNY.

New York is undoubtedly a better forum when the convenience of the witnesses and parties is considered. With respect to Dyson's witnesses, they would either travel from Dyson's international headquarters in Malmesbury, England, or its United States headquarters in Chicago, Illinois. Dyson also anticipates using expert witnesses from other jurisdictions, including

Michigan and Washington, D.C.  No witnesses for Dyson are located in Delaware.

On Defendant's side, Maytag has indicated that it will solicit testimony from Dan Miller of North Canton, Ohio and Dave Baker of Louisville, Ohio.  Thus, no witnesses for Maytag are apparently located in or near to Delaware.

New York is unquestionably an easier locale to reach by plane from all of the jurisdictions in which witnesses for the case work and reside.  A search of public travel website www.orbitz.com shows that there are no direct flights from either Akron or Cleveland, Ohio to Wilmington, Delaware.  For example, the only published departures on December 18, 2006 (the date of this Court's proposed preliminary injunction hearing) from Akron, Ohio to Wilmington, Delaware, would take over five hours, require at least one stop, and cost over $350.  (Attorney Aff., Ex. G).  In contrast, flights on that same date from Akron to LaGuardia Airport start at $168, and are 90 minutes long.  Id.

Similarly, also on December 18, selected itineraries show the availability of 90 minute nonstop flights from Cleveland (about 40 miles north of Akron) to LaGuardia Airport in New York for under $500.  Id.  In contrast, the shortest flights from Cleveland to Wilmington take about five hours, require one stop, and cost over $700.  Id.  It cannot therefore be seriously argued that it is easier for Hoover's anticipated witnesses to get to Wilmington than New York.

Furthermore, the depositions of key party witnesses, including Mr. Miller and Mr. Baker, are already scheduled to take place in Ohio, which makes Maytag's arguments regarding the convenience of witnesses favoring Delaware considerably less persuasive.

New York is also more convenient than Delaware for the parties' respective counsel. Counsel for both Dyson and Maytag have substantial offices in New York, but neither company's primary counsel have offices in Delaware.  Finally, there is no reason to believe the witnesses

9

will be less amenable to service from the SDNY than Delaware. Maytag has not argued that this
is the case.

If, as Maytag states, the convenience of party and non-party witnesses may be the single
most important factor in the analysis of whether one forum is more important than another,
Dyson prevails. See Beckerman v. Heiman, 2006 U.S. Dist. LEXIS 39865, at *11. The SDNY
is a more convenient forum for all such witnesses. Maytag has provided no evidence to suggest
that Delaware is more convenient in this regard than New York. Thus, this factor weighs
strongly in favor of New York, and against transfer to Delaware, as a forum for this case.

### Factor 4: There is a Much Stronger Connection Between the Operative Facts in This Case to New York than Delaware

The locus of operative facts is more closely related to New York than Delaware. In
evaluating locus, the plaintiff's choice is generally accorded more deference where there is a
"material connection" or significant contact between the forum state and the underlying events
allegedly underlying the claim. Orb Factory, Ltd. v. Design Science Toys, Ltd., 6 F.Supp. 2d
203, 210 (S.D.N.Y. 1998); see also GlaxoSmithKline Consumer Healthcare, L.P. v. Merix
Pharmaceutical Corp., 2005 WL 1116318 (D.N.J. 2005).

Here, Dyson does have material contact with the state of New York, based on its
relatively high percentage of national sales in the state. As shown by the declaration of Maria
Tryan, Vice President of Finance and Operations for Dyson, during the first two quarters of
2006, Dyson sold at least 9446 units from five major retail chains within New York State,
roughly five times more than from those stores in Delaware during the same period.
(Declaration of Maria Tryan, ("Tryan Dec."), ¶ 6.)

Sales at Sears in New York comprise 4.5% of total Dyson unit sales, while sales at

Delaware Sears stores comprise only 0.78% of sales. (Id., ¶ 10.) At New York Kohls and Target stores, sales of Dyson vacuum cleaners represent 3.6% and 3.2% of total U.S. unit sales, as compared with only 1% and 0.3%, respectively, at those stores in Delaware. (Id., ¶¶8, 11.) At New York Best Buy and Lowes, unit sales total 2.9% and 1.3% of total U.S. sales as compared with only 0.6% and 0.8%, respectively in Delaware. (Id., ¶¶7, 9.)

Based on these sales figures, it can be reasonably assumed that Maytag also has a comparably higher level of sales in New York, although discovery would be required to prove this. Certainly, Maytag has not argued or provided any evidence to show that it sells more vacuums in Delaware than New York. Nor has it argued or provided evidence to show that its New York sales are insubstantial. Uncontradicted evidence therefore shows that Dyson has a higher level of sales in New York than in Delaware. A larger proportion of New York consumers would be adversely affected by Maytag's point of sale false advertising, and, accordingly, there exists a stronger connection between New York and the underlying events.

The circumstances of this case are like those in GlaxoSmithKline Consumer Healthcare, L.P. v. Merix Pharmaceutical Corp., 2005 WL 1116318 (D.N.J. 2005). In Merix, a case involving false advertising wherein the parties had also previously been before the NAD, the Court found that defendant Merix's 4.5% of its total U.S. sales in New Jersey constituted "substantial sales" and was enough to establish a "material connection" between the New Jersey forum sufficient to defeat Merix's motion to transfer the case out of the New Jersey federal district court. Merix, 2005 WL 1116318 at *5, 7. As further evidence of "material connection" to the forum state, the Court also noted that several retailers in New Jersey carried a Merix product at issue in the case and presumably displayed the packaging in their stores. 2005 WL 1116318 at *7. The Merix Court considered these contacts, among others, to be significant, and

held that the underlying false advertising dispute had a sufficient connection to New Jersey.

Dyson has significant unit sales in the New York as compared with Delaware. For instance, New York sales of Dyson vacuums in Sears stores is 4.5%. In all of the sales data for five separate retail stores described in the Tryan Declaration, New York sales are roughly 3% of total national sales, and consistently higher in New York than in Delaware. Dyson and Maytag, like Merix, have carried their products in New York stores and displayed their packaging in such stores.

Maytag cites to <u>Invivo Research, Inc. v. Magnetic Resonance Equipment Corp. and Medrad, Inc.</u>, 119 F.Supp.2d 433 (S.D.N.Y. 2000) as support for the proposition that "where a party's products are sold in may states, sales alone are insufficient to establish a material connection to the forum and to override other factors favoring transfer." <u>Id.</u> at 439-440. The case is distinguishable, however. In <u>Invivo</u>, the party resisting transfer had only 1% of sales in the forum state and could not establish any other nexus to the forum state. Moreover, in <u>Invivo</u>, the forum state to which transfer was sought had a more material connection to the dispute. In contrast here, Delaware is not better connected in any way to the underlying dispute. Rather, its suggestion as an alternative forum rests entirely on the pendency of other litigation between the parties there.

There is a material connection between New York and the operative facts in this case, and a greater nexus between those facts and New York than Delaware. Thus, this factor weighs strongly against transfer to Delaware.

**Factor 9: Consolidating This Action With the One Pending in Delaware Will Not Enhance Efficiency or Conserve Judicial Resources**

While on the surface, the allegation in this case that Maytag is falsely advertising that the Maytag Legacy and Hoover Fusion provide "No Loss of Suction" seems related to Maytag's counterclaim allegation regarding Dyson's own "constant suction" claims, there is no particular efficiency to be obtained by litigating the two sets of claims together. Dyson has relied on an entirely different international testing standard than Maytag to substantiate its own claims that it vacuums do not lose suction. The Court need not compare the companies' use of competing standards to decide this case, nor need it determine that one standard is "better" than the other since the advertised claims by Maytag are monadic in nature – that is, Maytag's No Loss of Suction claim is not comparative. Put another way, the Court can determine whether Maytag's No Loss of Suction claim is true or false by reviewing testing on Maytag vacuums. It need not review tests on Dyson vacuums to reach a considered decision.

Moreover, there is little merit to the defense Maytag says it will assert to the preliminary injunction – unclean hands – in the context of a false advertising campaign that causes injury to the public. See Verizon Directories Corp. v. Yellow Book USA, Inc., 338 F.Supp.2d 422, 430 (E.D.N.Y. 2004) ("The defense of unclean hands does not apply to either the issue of liability or an injunction.") Irrespective of whether *Dyson's* own suction claim is true, the Court would act in the public interest by enjoining a false advertising claim by Maytag directed to the consuming public . See, e.g. American Home Products v. Johnson & Johnson, 654 F.Supp. 568, 590-91 (SDNY 1987) ("There is a strong public interest in the prevention of misleading advertisements . . . . Where the advertising in question is misleading, this interest prevails over the advertiser's right of commercial speech." (citations omitted)); Nike, Inc. v. Rubber Mfrs.

**Factor 6: The Parties are Equally Capable of Litigating in New York**

There is no argument that Maytag is any less capable of litigating the case in New York than Delaware. This factor does not favor transfer to Delaware.

## IV.    CONCLUSION

For the foregoing reasons, this Court should deny Defendant Maytag's motion to transfer venue.

Dated:    New York, New York
          September 29, 2006

Respectfully submitted,

Steven F. Reich (SFR0723)
Christopher A. Cole
Jeffrey S. Edelstein (JSE1463)
Gregory W. Fortsch
MANATT PHELPS & PHILLIPS, LLP
7 Times Square
New York, New York 10036
Telephone: (212) 790-4500
Facsimile: (212) 790-4545
SReich@manatt.com
CCole@manatt.com
JEdelstein@manatt.com
GFortsch@manatt.com

*Attorneys for Plaintiff Dyson, Inc.*

30191552.2