# EXHIBIT B

1

```
 1                IN THE UNITED STATES DISTRICT COURT

 2                IN AND FOR THE DISTRICT OF DELAWARE

 3                           - - -

 4    DYSON TECHNOLOGY LIMITED       :      Civil Action
      and DYSON, INC.,               :
 5                                   :
                  Plaintiffs,        :
 6                                   :
         v.                          :
 7                                   :
      MAYTAG CORPORATION,            :
 8                                   :
                  Defendant.         :      No. 05-434 (GMS)
 9
                             - - -
10
                        Wilmington, Delaware
11                   Thursday, December 7, 2006
                             2:00 p.m.
12                      Telephone Conference

13                           - - -

14    BEFORE:  HONORABLE GREGORY M. SLEET, U.S.D.C.J.

15    APPEARANCES:

16            JOHN W. SHAW, ESQ., and
              C. BARR FLINN, ESQ.
17            Young Conaway Stargatt & Taylor, LLP
                    -and-
18            RICHARD C. PEPPERMAN, II, ESQ., and
              Sullivan & Cromwell LLP
19            (New York, N.Y.)
                    -and-
20            STEVEN F. REICH, ESQ.,
              CHRISTOPHER COLE, ESQ. (Washington, D.C.), and
21            TAMAR FEDER, ESQ. (Los Angeles, CA)
              Manatt, Phelps & Phillips, LLP
22            (New York, N.Y.)

23                          Counsel for Plaintiffs

24

25
```

38

1  That case was filed later and in New York
2  because there was a pending NAD proceeding that is, as you
3  may know, an arbitration proceeding for advertising, pending
4  in New York. It was an attempt by us to resolve it
5  amicably, without the need for Court intervention. When
6  Hoover failed to comply with the NAD recommendation, we had
7  no choice but to bring separate preliminary injunction
8  actions.
9       THE COURT: Okay.
10      MR. ROTHSTEIN: Your Honor, that is a red
11 herring, respectfully. We think they were forum-shopping.
12 They think that they were weighing --
13      THE COURT: You think they didn't like me so
14 much. Is that what you are saying?
15      MR. ROTHSTEIN: Well, Your Honor, you said it, I
16 didn't.
17      THE COURT: That's okay. I have thick skin.
18      All right. Then we need a discovery and
19 briefing schedule?
20      MR. DiGIOVANNI: Your Honor, the particular
21 issue we have listed here relates to Dyson's motion for
22 preliminary injunction. The Judge in New York entered an
23 order. If that were to apply, Judge Cote has enumerated a
24 whole list of items that she had required, such as
25 (inaudible) facts, findings of fact and conclusions of law.

39

1       THE COURT: You are breaking up. Are you on a
2  speaker? You are cutting in and out.
3       MR. DiGIOVANNI: Is this better?
4       THE COURT: Yes.
5       That schedule is no longer operative, no.
6       MR. DiGIOVANNI: That is what we were looking
7  for, Your Honor, Your Honor's word on that, as well as, we
8  had proposed to submit our answering brief to the
9  preliminary injunction motion on December 22nd, and we
10 hadn't had agreement from Dyson's counsel.
11      THE COURT: Is this a matter that -- let's talk
12 about discovery first. Is there a separate issue there, as
13 to the motion for preliminary injunction?
14      UNIDENTIFIED SPEAKER: The motion for
15 preliminary injunction does set forth some discovery, a
16 discovery deadline. I don't believe there is an issue. I
17 will defer to Mr. DiSarro if there is an issue on the
18 preliminary injunction discovery.
19      THE COURT: So my colleague up in the Southern
20 District has already set a deadline that the parties are
21 comfortable with?
22      MR. DiGIOVANNI: Let me defer to Mr. DiSarro on
23 that issue.
24      MR. DiSARRO: Judge, on behalf of Maytag.
25      The only thing we need is a date to file our

40

1  answering brief on the preliminary injunction. But we need
2  a separate schedule for merits discovery in the transfer
3  because there has been no discovery at all conducted in that
4  case.
5       THE COURT: Have you had that meet-and-confer o
6  this particular issue?
7       MR. DiSARRO: Well, we have, but it's -- it
8  hasn't worked because Dyson is of the view that the case
9  should track the same discovery schedule that has been
10 established in the case before Your Honor, and that's
11 frankly impossible because the discovery schedule is over.
12      THE COURT: Okay. So I take it we do have
13 separate and distinct issues in the 06-654 case, the New
14 York case.
15      MR. DiSARRO: Absolutely. There are claims
16 against Hoover's advertising claims, and they have asserted
17 claims for injunctive relief and for damages under the
18 Lanham Act, and there are some similarities. But there has
19 been no discovery whatsoever conducted in that case.
20      THE COURT: Does this also get into the other
21 side issue on the 654 case, that is, whether it should be
22 consolidated with the case that is currently pending?
23      MR. DiSARRO: Right. We believe that, frankly,
24 is impossible. It might have been a good idea at the very
25 beginning, but Dyson for whatever reason chose to file the

41

1  case in New York and then contest our effort to transfer the
2  case down to Your Honor. And we went through a lengthy
3  briefing schedule on a venue 1404 transfer motion, and Judge
4  Denise Cote was kind enough to give us a prompt resolution
5  of that.
6       But here we are, and we need discovery. Both
7  sides have not conducted any discovery on that case. And
8  it's just engaging in unreality to think it can be
9  consolidated with a case in which discovery is virtually
10 complete, expert discovery is about to begin and the parties
11 are ready to go to trial in May.
12      UNIDENTIFIED SPEAKER: The other aspect of it is
13 in that particular case, Your Honor, we are retaining our
14 right to summary judgment.
15      THE COURT: Who is speaking now?
16      MR. DURCHSLAG: Steve Durchslag again.
17      In that particular case, we are reserving our
18 right to summary judgment, whereas Your Honor knows in the
19 case before you in Delaware, we, both parties have agreed
20 not to seek summary judgment.
21      THE COURT: Okay. Who is going to speak on
22 these issues for Dyson?
23      MR. COLE: Your Honor, Chris Cole.
24      This is an instance of having your cake and
25 eating it, too.

**Page 42**

When we were in front of the Court in New York and we had a conference with Judge Cote, the parties specifically agreed to a discovery schedule that would permit discovery prior to the preliminary injunction, at the insistence of Maytag, I might add, who said they needed discovery before the preliminary injunction was ruled on.

The Judge said, asked them what kind of discovery do you think you need. Well, obviously, discovery of the experts. But moreover, they said, we need discovery because we think Dyson has unclean hands because they are advertising the loss of suction themselves.

So the Judge set up a discovery schedule, by agreement of the parties, that would permit the matter to be consolidated with the case in Delaware. The parties briefed the issue, and Maytag in their briefs on transfer said specifically to the Judge that we think the matter should be consolidated in Delaware. Having arrived at Delaware, they proceeded to ignore the discovery schedule set out by the Court. In fact, took depositions off calendar. They had calendared both of our experts. They said they no longer wanted them.

And they sort of hoped that this case would go away. We made everybody available on the schedule they wanted. We submitted document requests. We responded to document requests.

**Page 43**

So document discovery in our view is largely complete in our case.

It is a situation where they said one thing to the New York Court, Your Honor, and now they are saying something different once they have gotten the relief they wanted from New York.

THE COURT: Is that true, Maytag?

MR. DiSARRO: Your Honor, no, it is not. When we approached the Judge in New York on the basis for our transfer motion, we argued that the case was a potential candidate for coordinated or consolidated pretrial proceedings to avoid the fact of witnesses having to be deposed twice on identical issues. And Dyson opposed it, arguing that there were two separate cases and that there was no overlap or any overlap between the two cases was minimal.

What the Judge set was a discovery schedule in connection with the preliminary injunction motion. Not merits discovery, there was no discovery on damages. So the damages are irrelevant to a preliminary injunction motion.

As for that limited discovery, one of the witnesses was a Susan Goldsmith that had been an affiant on Dyson's motion for preliminary injunction. Well, that woman has already been deposed in this case.

So some of the discovery that was needed to

**Page 44**

combat the motion for preliminary injunction has been taken. But that was never intended to be merits discovery. We have gotten no information on what damages they are seeking. W have gotten no Rule 26 mandatory disclosures on that case.

This case is not virtually complete.

THE COURT: Hold on. Same counsel for Maytag in both matters?

UNIDENTIFIED SPEAKER: Yes, Your Honor. On th advertising side, that's true.

THE COURT: Okay. All right. Difficult to impose, for me to impose at this distance a schedule. We have very different positions being taken on what was said before the Southern District Court. And so, difficult for me to divine where I should be. So I am going to opt to at this point conclude that the 654 case should take its normal course in Delaware, that you need to have a meet-and-confer You will be notified to prepare a joint status report. That is my practice down here/ and we will bring you in for A.116 conference.

MR. COLE: Your Honor, from Dyson. Will that conference deal with the scheduling of the preliminary injunction, which has been sitting for some time, since September, Your Honor?

THE COURT: And it will continue to sit until we have our 16. Okay.

**Page 45**

MR. REICH: Your Honor, also for Dyson. It is not uncommon for judges in different districts to speak with one another --

THE COURT: Not uncommon at all.

MR. REICH: For Dyson's part, we would encourag Your Honor to contact Judge Cote to find out what her recollection is of the position that Maytag took on the issue of consolidation.

THE COURT: You know, if I just had miscellaneous time laying around to do that and didn't have other things to do, I might be inclined to do that, counsel. But given the posture of this case, the amount of time that this case and these parties have already absorbed of this Court's limited resources, I am not -- I am going to decline the invitation. But I have, and please believe me, in the past, talked to my colleagues.

I reserve the right to change my mind, by the way, on that. If I do have time, I will dial up my colleague and see what the truth of the matter is. But right now, I don't think I am going to choose to do that.

Let's go on to B.1 -- before we leave, counsel, are you unable to agree -- maybe we should just leave 6 until the Court gets back in touch with you. Okay? You can't seem to agree on a briefing schedule, either.

MR. DURCHSLAG: I think we will, yes. I think

**Page 46**

1  we will get together with Mr. Cole and Mr. Reich and be able
2  to agree on a briefing schedule.
3  　　　　THE COURT: If you can, you can.
4  　　　　Let's go to B.1.
5  　　　　MR. COLE: Your Honor, this issue relates to
6  discovery on Maytag's (inaudible) suction claim.
7  　　　　As you know, Maytag -- this implicates the other
8  case as well. I am not going to -- the fusion vacuum
9  cleaner that is being sold is being sold with a very
10 prominent advertising claim that the product offers no loss
11 of suction. Now, earlier during this very call Your Honor
12 heard a significant amount of argument from counsel for
13 Maytag that the way that Dyson substantiates its no loss of
14 suction claim in other countries is directly relevant to
15 this lawsuit, they absolutely needed that discovery.
16 　　　　During the course of discovery on this case,
17 however, Your Honor, Maytag's attorneys have resisted
18 producing any evidence or any discovery regarding Maytag's
19 own use of the very claim that they are challenging in our
20 case. We think the way they substantiate that claim is
21 absolutely relevant to their argument that our claim is
22 false. And we are seeking discovery on that. It's
23 absolutely relevant, certainly calculated to lead to the
24 admission of admissible evidence.
25 　　　　In this case, I don't see any credible argument

**Page 47**

1  that it is not relevant to this case.
2  　　　　THE COURT: Okay.
3  　　　　MR. ROTHSTEIN: Your Honor, on behalf of Maytag.
4  I have a number of remarks to make about that.
5  　　　　The first is, Your Honor, this is just an
6  end-run around the discovery process to obtain discovery and
7  get a free pass on discovery in the case that they
8  originally filed in New York and was subsequently
9  transferred to Delaware.
10 　　　　The claims at issue in that case are not at
11 issue in the case currently pending before Your Honor and
12 that we are on the call for here today. And any suggestion
13 to the contrary would be disingenuous.
14 　　　　Your Honor, Dyson here is just seeking to obtain
15 discovery in that matter to attempt to bolster their
16 preliminary injunction motion that they have got pending
17 before Your Honor. They have not moved on that preliminary
18 injunction. They have never brought that preliminary
19 injunction motion to Your Honor's attention. They have
20 really been hiding their heads in the sand on that issue.
21 And it was not until today, Your Honor, that Maytag forced
22 the issue to come up in front of Your Honor on their
23 preliminary injunction that that issue has even been
24 addressed in front of the Court.
25 　　　　And it's really incumbent on them, and we have

**Page 48**

1  repeatedly stated to Dyson, if you think that those issues
2  are relevant in the present case, then you have got to seek
3  some sort of relief from the Judge. But short of doing
4  that, it is our belief that they are just inappropriately
5  trying to get discovery on another case and just wasting
6  everybody's time trying to establish and carry their burden
7  of proof on a motion for preliminary injunction where we
8  have just gotten over that whole discussion.
9  　　　　We haven't even had our Rule 16 conference to
10 establish discovery timelines.
11 　　　　My final point, Your Honor, is every time we ask
12 them, why do you need this discovery, their response is,
13 because it's calculated to lead to the discovery of
14 admissible evidence. That's all we get. We don't get any
15 explanation beyond that.
16 　　　　And I would just like to say in my final remark
17 that the claims are different and they haven't demonstrated
18 the claims are the same in any respect whatsoever. There is
19 some similar language, but there are some very vast
20 differences.
21 　　　　THE COURT: So a request, and I think an
22 appropriate one, that if the information sought is
23 calculated to lead to admissible evidence, then you need to
24 be more specific than just stating that in conclusory
25 language.

**Page 49**

1  　　　　MR. REICH: Judge, let me give you a very
2  concrete reason why we need this evidence. They are going
3  to stand in front of the jury with respect to our no loss of
4  suction claim, and they are going to attempt to undermine
5  the manner in which we substantiate that claim and the tests
6  on which we rely to substantiate that claim. I need to be
7  able to, on our part of the case, or in cross-examination,
8  say to Maytag's witnesses, okay, Mr. Witness, you are
9  critical of how we substantiate our no loss of suction
10 claim. You are critical of the testing that we rely on to
11 substantiate our no loss of suction claim. How do you
12 substantiate your no loss of suction claim and what tests do
13 you rely on to substantiate your no loss of suction claim?
14 And wouldn't it be probative if they substantiated their no
15 loss of suction claim the way we did? And wouldn't it be
16 probative if they relied on the same kind of testing that we
17 did?
18 　　　　I very much need that evidence in this case,
19 Your Honor.
20 　　　　THE COURT: All right.
21 　　　　MR. ROTHSTEIN: Your Honor, several points.
22 First of all, Maytag's advertising is not at issue in this
23 case. And they are not claiming that it is.
24 　　　　The second thing is, it's not probative how
25 Maytag substantiates its advertising in the present case

50

1  because it's Dyson's burden to prove that they have got
2  appropriate substantiation for their own advertising claims
3  and that they had that substantiation at the time that they
4  decided to make those advertising claims, which was at least
5  in the United States over four years ago.
6      What Maytag does in its advertising is not
7  probative in any way whatsoever to how Dyson was conducting
8  itself as early as 2002 in the United States.
9      So it's obviously just a ruse to get discovery
10 for their preliminary injunction motion and avoid their
11 responsibilities, their procedural responsibilities that
12 they should go to. They are ultimately going to get that
13 discovery, we have explained that to them in detail, when
14 they get their discovery in the transfer case. But they
15 should wait for that opportunity and not burden the parties
16 with discovery that just has absolutely no bearing on the
17 ultimate issues in this case.
18     MR. REICH: Judge, if they are going to attack
19 the reasonableness of our substantiation, and if they are
20 going to attack the reasonableness of our testing, our
21 position is that a reasonable juror, if a reasonable juror
22 heard that their substantiation methods were the same or
23 similar to ours, or that their testing were the same or
24 similar to ours, that reasonable juror could find that our
25 substantiation of that same claim or our testing of that

51

1  same claim was also reasonable and therefore could refuse to
2  return a verdict in favor of Maytag.
3      THE COURT: There is a no loss of suction claim
4  in the 434 case?
5      UNIDENTIFIED SPEAKER: Yes.
6      MR. ROTHSTEIN: It is a different claim, Your
7  Honor. It is a qualified claim. The language is entirely
8  different from any of the claims that are being made by
9  Dyson in the current case.
10     THE COURT: So you don't expect it to come up in
11 the context that Mr. Reich suggests?
12     MR. ROTHSTEIN: I didn't follow you, Your Honor.
13     THE COURT: In other words, the concern that Mr.
14 Reich articulates, you submit, is a straw person or straw
15 man?
16     MR. ROTHSTEIN: I absolutely do, Your Honor.
17 Quite frankly --
18     THE COURT: Or red herring, whatever colloquial
19 term you want to use.
20     MR. ROTHSTEIN: I do, Your Honor. Quite
21 frankly, what Hoover does, or is doing currently, or is not
22 doing currently, is not a proxy for what Dyson is or was
23 required to do back in 2002 when they came to the United
24 States.
25     THE COURT: I agree. I am going to deny the

52

1  request.
2      No. 2. Scope of waiver of attorney-client
3  privilege in defense of willful infringement.
4      MR. SHAW: Your Honor, I believe this presents a
5  very discrete legal issue for Your Honor, one you have
6  probably seen before.
7      The question here, Maytag has relied on opinions
8  of counsel on noninfringement and some aspects of invalidity
9  to defend our claim of willful infringement in the patent
10 case. The dispute between the parties is a very discrete
11 one: what is the scope of waiver that attends that opinion?
12     It is Dyson's position that the waiver is of the
13 subject matter of the opinion and goes to all communications
14 between counsel and client as to those subjects, and also as
15 to the work product and other things that the client who
16 received that bear on the reasonableness of the client's
17 state of mind after receiving the opinion.
18     Your Honor's last writing on this that I have
19 been able to find is from, I believe, the Mosel-Vitelic
20 case. It appears to be consistent with the rulings that
21 Judge Farnan and Judge Robinson have rendered as recently a
22 this summer, and also with the Federal Circuit's opinion in
23 the In Re EchoStar case from May, that the scope of waiver
24 does extend to the entire subject matter of the opinion.
25     Maytag, as I understand it, is relying on what I

53

1  will call the Judge McKelvie rule, which was first
2  articulated in the Thorn v. EMI case, and which Your Honor
3  had rejected in Elonex, and which currently Judge Jordan
4  still ascribes to. That is where will the dichotomy, which
5  is the appropriate scope of the waiver, is it Your Honor's
6  Elonex and the more recent opinions from Judge Farnan and
7  Judge Robinson? Or is it Judge McKelvie's view of the very
8  narrow scope of waiver?
9      THE COURT: You are right, Mr. Shaw. This
10 subject has been -- this has been the subject of discussion
11 and much consideration by this Court and others, other
12 Judges on this Court.
13     I have not changed my view.
14     MR. DiGIOVANNI: Your Honor, if I may.
15     THE COURT: Yes.
16     MR. DiGIOVANNI: The Judge Jordan opinion in
17 Ampex v. Eastman Kodak, which came out this summer, I woul
18 submit it does not go straight -- does not adopt Judge
19 McKelvie's position identically. What Judge McKelvie has
20 done is looked at precisely what Dyson is looking for here,
21 and that is litigation documents such as strategy documents
22 that are not in the form of an opinion of counsel or
23 actually providing advice regarding infringement or
24 invalidity. So if a document merely mentions
25 noninfringement or infringement or invalidity or validity or