# TAB 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

FILED
JUN 13 2005
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

ALLERGAN, INC., and ALLERGAN SALES, LLC,

Plaintiffs,

v.

ALCON INC., ALCON LABORATORIES, INC., and ALCON RESEARCH, LTD.,

Defendants.

Civil Action No. 04-968 (GMS)

**ORDER**

1. Allergan, Inc. and Allergan Sales, LLC (collectively, "Allergan") filed the above-captioned action against Alcon Inc., Alcon Laboratories, Inc., and Alcon Research, Ltd. (collectively, "Alcon") on August 24, 2004. In its complaint, Allergan alleges that Alcon is infringing U.S. Patent No. 6,673,337 (the "'337 patent") and U.S. Patent No. 6,641,834 (the "'834 patent"). Presently before the court are the following motions: (1) Allergan's Motion to Strike Portions of Defendant's Summary Judgment Brief (D.I. 68); and (2) Allergan's Motion for Leave to File a Sur-Reply (D.I. 91).

2. In its motion to strike, Allergan asks the court to find that portions of Alcon's brief in support of its motion for summary judgment of invalidity are beyond the scope of issues which the court permitted Alcon to move for summary judgment. Specifically, Allergan contends that Alcon sought and was granted permission to move for summary judgment based on "whether the claims of the '834 patent violate the written description requirement of 35 U.S.C. § 112 because they use the percentage '0.15%.'" (D.I. 69, at 1.) According to Allergan, however, "[m]uch of Alcon's summary judgment motion . . . focuses . . . [on] whether there is support for the 0.15% (w/v) concentration

being 'therapeutically effective,' as recited in the preambles of the independent claims." (D.I. 69, at 1.)

3. In its motion for leave to file a sur-reply, Allergan requests the court to consider its short response to Alcon's reply brief in support of its summary judgment motion. Allergan also contends that Alcon violated Rule 7.1.3(c)(2) of the Local Rules for the District of Delaware by raising material arguments regarding a publicly available, abandoned continuation-in-part application ("CIP") filed by Allergan for the first time in its reply brief. Thus, in the alternative, Allergan requests the court to strike Alcon's argument regarding the CIP application.

4. After having considered the parties' submissions, the Scheduling Order, transcripts of the teleconferences during which Alcon requested to move for summary judgment, and the Delaware Local Rules, the court concludes that Alcon's summary judgment briefing on the issue of invalidity is outside the scope of the limited issue for which the court granted it permission to file its motion.[1]

---

[1] According to the Proposed Scheduling Order (D.I. 30) filed by the parties and granted by the court on February 11, 2005, Alcon's motion for summary judgment of invalidity of the '834 patent "shall be limited to . . . whether the claims of the '834 patent violate the written description requirement of 35 U.S.C. § 112 because they use the percentage '0.15%.'" (D.I. 30 ¶ 8a.) Thus, as evidenced by the Scheduling Order, Alcon did not request permission to file a motion for summary judgment of invalidity as to whether 0.15% (w/v) is a "therapeutically effective" amount of active ingredient. The transcripts from the November 22, 2004 and December 15, 2004 teleconferences with the court offer additional support for the court's conclusion. For example, at the November 22, 2004 teleconference, Alcon, in explaining to the court that the '834 patent is invalid based on "a straightforward lack of written description," stated that the '834 patent has:

> an upper limit on the amount of the active ingredient in the product. This product was previously sold at .2 percent, and when they [the inventors] canceled the claims they put a limit in and they claimed the use of the product with up to .15 percent. There is not a word in the specification that mentions .15 percent. There is not a word in the specification that mentions an upper limit.

(D.I. 24, at 7.) Alcon also stated that "[w]e simply want to look at the claim and spec. and say

The court also concludes that Alcon's reply brief reserves a new argument regarding the CIP application that should have been raised in its opening brief and, therefore, amounts to "impermissible 'sandbagging.'" *Rockwell Techs., LLC v. Spectra-Physics Lasers, Inc.*, No. Civ. A. 00-589 GMS, 2002 WL 53155, at *3 (D. Del. Mar. 26, 2002) (citing *Jordan v. Bellinger*, 2000 U.S. Dist. LEXIS 19233, at *18 (D. Del. April 28, 2000)); *see* D. Del. L.R. 7.1.3(c)(2) ("The party filing the opening brief shall not reserve material for the reply brief which should have been included in a full and fair opening brief.").

Therefore, IT IS HEREBY ORDERED that:

1. Allergan's Motion to Strike Portions of Defendant's Summary Judgment Brief (D.I. 68) is GRANTED.

2. Alcon's argument concerning the "therapeutically effective" issue will not be considered by the court.

3. Allergan's request to strike Alcon's argument regarding the CIP application (D.I. 91) from its reply brief in support of its motion for summary judgment is GRANTED.

4. Allergan's Motion for Leave to File a Sur-Reply is DENIED as moot.

Dated: June 13, 2005

UNITED STATES DISTRICT JUDGE

---

there is no support for these claims because nothing in the claim relates to the amount." (*Id.*) During the December 15, 2004 teleconference, Alcon informed the court that "[t]he second motion [for summary judgment] relates to an allegation of lack of written description about the term .15 percent. That is obviously a mathematical term. Everyone knows what .15 percent is. The question is whether or not the claimed limitations that use .15 percent are supported by the specification." (D.I. 31, at 3.) As demonstrated by the above examples, Alcon neither requested nor received permission to submit summary judgment briefing on the issue of whether 0.15% (w/v) is a "therapeutically effective" amount of active ingredient.

# TAB 2

LEXSEE 2005 U.S. DIST LEXIS 791



Analysis
As of: Jan 09, 2007

**WEBLOYALTY.COM, INC., Plaintiff, v. CONSUMER INNOVATIONS, LLC, Defendant.**

**Civil Action No. 04-90-KAJ**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

***2005 U.S. Dist. LEXIS 791; 73 U.S.P.Q.2D (BNA) 1898***

**January 13, 2005, Decided**

**SUBSEQUENT HISTORY:** Motion granted by *Webloyalty.com, Inc. v. Consumer Innovations, L.L.C., 2005 U.S. Dist. LEXIS 7344 (D. Del., Feb. 17, 2005)*

**DISPOSITION:** Defendant's Motion for Summary Judgment was denied and Plaintiff's Motion for Discovery was denied as moot.

**COUNSEL:** [*1] For WEBLOYALTY.COM INC., Plaintiff: Jack B. Blumenfeld, Morris, Nichols, Arsht & Tunnell, Wilmington, DE.

For CONSUMER INNOVATIONS, LLC, Defendant: Joseph S. Shannon, Daniel A. Griffith, Marshall, Dennehey, Warner, Coleman & Goggin, Wilmington, DE.

**JUDGES:** Kent A. Jordan, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** Kent A. Jordan

**OPINION:**

**MEMORANDUM ORDER**

**I. INTRODUCTION**

Presently before me is a Motion for Summary Judgment (Docket Item ["D.I."] 91) filed by defendant Consumer Innovations, LLC ("Consumer Innovations") and a Motion for Discovery on the Issue of Personal Jurisdiction (D.I. 27; "Motion for Discovery") filed by Webloyalty.com, Inc. ("Webloyalty"). Webloyalty filed this action on February 9, 2004 (D.I. 1) and subsequently filed a First Amended Complaint (the "Complaint") on May 26, 2004 (D.I. 52). Webloyalty alleges two counts in its Complaint. First, that Consumer Innovations infringed its copyright, Registration No. TX5842219, "by using strikingly or substantially similar sell pages in commerce ... without Webloyalty's permission, license or consent." (*Id.* at PP 20, 24, 25.) Second, that Consumer Innovations' "use in commerce of Webloyalty's advertisements [*2] is likely to cause confusion, mistake or deception as to both [Consumer Innovations'] affiliation, connection, or association with Webloyalty ... [and] the origin, sponsorship or approval of [Consumer Innovations'] goods, services, or commercial activities," such that Consumer Innovations' activities constitute "unfair competition and a false designation of origin in violation of the Lanham Act, *15 U.S.C. § 1125(a)*." (*Id.* at PP 31, 32, 33.) This court has jurisdiction pursuant to *28 U.S.C. § 1331*.

For the reasons that follow, Consumer Innovations' Motion for Summary Judgment (D.I. 91) will be denied and Webloyalty's Motion for Discovery (D.I. 27) will be denied as moot. n1

n1 Webloyalty filed its Motion for Discovery in response to Consumer Innovations' Motion to Dismiss (D.I. 16). Webloyalty sought discovery "only if the Court determined that [its] opposition to Consumer Innovations' motion to dismiss for lack of in personam jurisdiction is not sufficient by itself to result in denial of [Consumer Innovations'] motion." (*Id.* at 1.) On September 2, 2004, Consumer Innovations filed a Notice of Withdrawal of its Motion to Dismiss. (D.I. 84.) Based on Consumer Innovations' withdrawal of its motion, I consider Webloyalty's Motion for Discovery (D.I. 16) to be moot.

[*3]

**II. BACKGROUND** n2

n2 The following rendition of background information does not constitute findings of fact and is cast in the light most favorable to the non-moving party, the plaintiff.

Webloyalty and Consumer Innovations are businesses engaged in the marketing of online membership clubs to consumers. (D.I. 92 at 3; D.I. 94 at 3.) Consumers purchasing memberships are able to purchase goods and/or services offered through the clubs at a discount. (D.I. 94 at 3.) One of the ways in which Webloyalty markets these club memberships is by contracting with other companies ("partner companies"), who sell goods and services on line, to place a banner on the partner company's sale confirmation web page. (D.I. 94 at 3.) Generally, the marketing of each parties' club memberships occurs in the following manner:

> 1. A consumer completes an online purchase from the partner company and is then directed to the partner company's "confirmation page."
> 2. The confirmation page has a "banner advertisement" with [*4] an offer from Webloyalty or Consumer Innovations.
> 3. If the consumer clicks on the banner advertisement, the consumer is then transferred to the "sell page" on the website for Webloyalty or Consumer Innovations depending on whose banner ad appeared.
> 4. The sell page offers the consumer the opportunity to become a member of the particular discount program. It contains the material terms of the program, the offer details, and a description of the program. The sell page also allows the consumer to return to the partner company's website by clicking on a link.

(See D.I. 92 at 4.)

In October 2002, n3 Webloyalty entered into a contract with a company called Walter Drake to promote its services on the Walter Drake confirmation page in the manner described above. (D.I. 94 at 3.) From that time until August of 2003, Webloyalty was the only company to offer these services through Walter Drake. (*See id.* at 4.) In August of 2003, Walter Drake ran a test to determine whether its consumers preferred the services of Webloyalty or those of one of its competitors, InQ. (*Id.* at 3-4.) At the end of the test period, the Webloyalty banner was again placed on all of the Walter Drake confirmation [*5] pages. (*Id.* at 4.)

n3 Drawing all reasonable inferences in favor of the non-moving party for the purposes of this motion, I will accept Webloyalty's statement that the date of contract was October, 2002, although Consumer Innovations stated that it was in or about November, 2002. (D.I. 94 at 3.)

In December 2003, n4 Consumer Innovations entered into a deal with a broker n5 pursuant to which it would offer its "Traveler Innovations" service on the Walter Drake confirmation page. (D.I. 94 at 4.) The purpose of this arrangement was to test Consumer Innovations' program against Webloyalty's "Reservation Rewards" program. (*Id.*) In this arrangement, customers would alternatively be directed by Walter Drake to either the Consumer Innovations or Webloyalty sell page. (*Id.*) As part of the agreement between Walter Drake and Webloyalty, and the agreement between Walter Drake and Consumer Innovations, consumers joining either the "Reservation Rewards" or "Travelers Innovations" program would be given a $ 10 credit [*6] toward their next Walter Drake purchase. (D.I. 92 at 5.)

n4 Drawing all reasonable inferences in favor of the non-moving party for the purposes of this motion, I will accept Webloyalty's statement that the agreement was made in December, 2003, although Consumer Innovations stated that it was in or about January, 2004. (D.I. 94 at 4.)

n5 Webloyalty alleges that the agreement was between Consumer Innovations and a "broker," whereas Consumer Innovations alleges that the agreement was made between it and Walter Drake. (D.I. 94 at 4; D.I. 92 at 5.) Either way, the result, as described above, was the same.

The present dispute centers on Consumer Innovations' sell page. Webloyalty alleges that Consumer Innovations created its sell page by copying portions of Webloyatly's sell page. (*See* D.I. 92 at 4-5.) Several portions of Webloyalty's and Consumer Innovations' sell pages contained identical verbiage. (D.I. 52, Ex. E at 1-2.) Examples of such identical verbiage include: n6 "Try all the benefits for the next [*7] 30 days FREE and see how much you save! There's no obligation to continue. If you are completely satisfied, do nothing and you'll enjoy ongoing savings for only n7 a month;" "For your convenience n8 will use the contact and credit or debit card information you provided to Walter Drake today for billing and benefit processing;" and "To thank you for your purchase at Walter Drake today, click YES below to get your $ 10.00 Cash Back Gift ... on your next Walter Drake purchase plus sign up for all the money-saving benefits of , n9 our ... online travel ... discounts ... program!" (*Id.*)

n6 Although the full extent of Webloyalty's copyright is not disclosed in the record, the phrases listed above are representative of the information presented on Webloyalty's and Consumer Innovations' sell pages.

n7 In Webloyalty's sell page, the cost is $ 9 a month whereas on Consumer Innovations' sell page, the cost is $ 7 a month. (D.I. 52, Ex. E at 1-2.)

n8 The blank contains the program name, "Reservation Rewards" in Webloyalty's sell page, and "Traveler Innovations" in Consumer Innovations' sell page. (D.I. 52, Ex. Eat 1-2.)

[*8]

n9 The blank contains the program names as in footnote 8.

Consumer Innovations has since modified its sell page. (D.I. 92 at 4-5.) Webloyalty admits that Consumer Innovations' modified sell page does not infringe its copyright. (*Id.* at 5.)

## III. STANDARD OF REVIEW

Pursuant to *Federal Rule of Civil Procedure 56(c)*, a party is entitled to summary judgment if a court determines from its examination of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56(c)*. In determining whether there is a triable issue of material fact, a court must review the evidence and construe all inferences in the light most favorable to the non-moving party. *Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976)*. However, a court should not make credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 147 L. Ed. 2d 105, 120 S. Ct. 2097 (2000)*. [*9] To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986)* (internal citation omitted). The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Fed. R. Civ. P. 56(c)*. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Inds. Co., Ltd., 475 U.S. at 587* (internal citation omitted). Accordingly, a mere scintilla of evidence in support of the non-moving party is insufficient for a court to deny summary judgment. *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)*.

## IV. DISCUSSION

Webloyalty alleges that Consumer Innovations infringed its copyright (D.I. 52 at PP 20, 24, 25) and that

Consumer Innovations' activities constitute unfair competition (*id.* at 31, 32, 33).

A. Copyright Infringement

To prove copyright infringement, a plaintiff must establish that it owns a valid copyright [*10] and that the copyrighted material was copied by the defendant. *Dam Things from Denmark, a/k/a Troll Company ApS v. Russ Berrie & Co., Inc., 290 F.3d 548 at 561 (3d Cir. 2002)* (citing *Whelan Assocs., Inc. v. Jaslow Dental Lab., Inc., 797 F.2d 1222, 1231 (3d Cir. 1986)*). Certificates of registration issued by the U.S. Copyright Office constitute *prima facie* evidence of the validity of the copyright and ownership of the material. *Ford Motor Co. v. Summit Motor Products, Inc., 930 F.2d 277 at 290-91 (3d Cir. 1991)* (internal citations omitted). Consumer Innovations concedes that Webloyalty's "ownership of the copyrighted property is undisputed" and that, therefore, the question is whether it copied protectible material from the Webloyalty sell page. (D.I. 92 at 8.)

Copying is a "shorthand reference to the act of infringing any of the copyright owner's five exclusive rights set forth at *17 U.S.C. § 106*." *Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc., 307 F.3d 197, 206 (3d Cir. 2002)* (quoting *Ford Motor, 930 F.2d at 291*.) Because it is rarely possible to prove copying [*11] through direct evidence, *Roth Greeting Cards v. United Card Co., 429 F.2d 1106, 1110 (9th Cir. 1970)*, "copying may be proven inferentially by showing that the defendant had access to the allegedly infringed copyrighted work and that the allegedly infringing work is substantially similar to the copyrighted work." *Whelan Assocs., 797 F.2d at 1231-32* (internal citations omitted). The test for "substantial similarity" has two considerations: extrinsic and intrinsic. *Dam Things from Denmark, 290 F.3d at 562*. Extrinsically, experts "may be called upon to determine whether there is sufficient similarity between the works so as to conclude that the alleged infringer 'copied' the work." *Id.* (citing *Whelan Assocs., 797 F.2d at 1232*.) Intrinsically, the fact-finder is to determine whether a "lay-observer" would "believe that the copying was of protectible aspects of the copyrighted work." *Id.* (citing *Whelan Assocs., 797 F.2d at 1232*.) These two considerations have been described as whether "the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard [*12] their aesthetic appeal as the same." n10 *See id.* (quoting *Folio Impressions, Inc. v. Byer California, 937 F.2d 759, 765 (2d Cir. 1991)*).

n10 In *Dam Things From Denmark*, the Third Circuit noted that it had previously adopted the Second Circuit's test for substantial similarity, as described in *Arnstein v. Porter, 154 F.2d 464, 468-69 (2d Cir. 1946)*. *Dam Things From Denmark, 290 F.3d at 562*. This test consists of two considerations: "'actual copying' which focuses on access in conjunction with 'probative' similarity, and 'actionable copying' which considers whether there is 'substantial' similarity between the alleged infringing work and the *protectible elements* of the original work." *Dam Things from Denmark, 290 F.3d at 562* (internal citations omitted). The test for actual copying can be established by direct evidence or inferred by evidence of access and "similarities that are probative of copying between the works, and expert testimony." *Id.* (internal citations omitted).

The Supreme Court, however, has explained that "not all copying ... is copyright infringement." *Feist Pub'lns., Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361, 113 L. Ed. 2d 358, 111 S. Ct. 1282 (1991)*. Therefore, the trial court must consider, "whether the copying is actionable, viewing the item through the lay person's eyes, focusing on whether the substantial similarities relate to protectible material." *Dam Things From Denmark, 290 F.3d at 562* (internal citation omitted.) This test makes clear that "it is only after actual copying is established that one claiming infringement then proceeds to demonstrate that the copying was improper or unlawful by showing that the second work bears 'substantial similarity' to protected expression in the earlier work." *Id.* (internal quotation omitted).

[*13]

Consumer Innovations makes two arguments as to why there is no genuine issue of material fact. First, it argues that the language common to both Consumer Innovations' and Webloyalty's sell pages is not protectible under the *Copyright Act of 1976* because the language is merely functional or standard in the industry and therefore, was not originally created by Webloyalty. (D.I. 92 at 9-10.) Second, it argues that the common language was made up of common expressions which may be

lawfully appropriated under the merger and scenes-a-faire doctrines. (*Id.* at 10-13.)

Webloyalty counter-argues that Consumer Innovations has failed to show that no genuine issues of material fact exist and, therefore, summary judgment for Consumer Innovations is not appropriate. First, Webloyalty notes that evidence of its copyright registration is *prima facie* evidence of originality. (D.I. 94 at 6.) Webloyalty argues that Consumer Innovations has failed to overcome this presumption of originality because there is no evidence that Webloyalty's sell page was copied from prior similar works. (*Id.* at 6-7.) Second, Webloyalty argues that the doctrines of merger and scenes-a-faire do not apply because [*14] there are "a number of ways" to express the idea of "a $ 10 incentive for joining a membership club and for instructing individuals how to join." (*Id.* at 11.)

Webloyalty is correct that there are genuine issues of material fact that require denial of Consumer Innovations' Motion for Summary Judgment. Consumer Innovations has failed to rebut the *prima facie* case of originality established by Webloyalty's copyright registration. Certificates of registration constitute *prima facie* evidence of originality. *Blendingwell Music, Inc. v. Moor-Law, Inc., 612 F. Supp. 474, 480 (D. Del. 1985)* (internal citations omitted). Consumer Innovations' argument as to lack of originality is entirely unsupported. n11 Consumer Innovations argued that the common language of both sell pages was "standard in the industry" or consisted of "functional instructions" such that it was not protectible. (D.I. 92 at 9-10.) Consumer Innovations, however, does not provide any evidentiary or legal support for this argument. Even if Consumer Innovations had such evidence, a defendant cannot offer evidence of prior similar works without evidence that plaintiff copied those works. 3 Melville [*15] B. Nimmer & David Nimmer, *Nimmeron Copyright § 12.11[B][1]*. Furthermore, "unless the originality vel non of a copyrighted work is determinable as a matter of law, it becomes a question of fact for the fact finder to resolve." *Scientist, Inc. v. Lindsey, 1996 U.S. Dist. LEXIS 7099, No. CIV. A. 95-7960, 1996 WL 278778, at *3 n.7 (D. Del. May 22, 1996)* (quoting *Modern Publ'g v. Landoll, Inc., 849 F. Supp. 22, 24 (S.D.N.Y. 1994)*).

n11 Consumer Innovations seems to imply that the common language of the sell pages was standard in the industry because the individual who wrote the sell page for Webloyalty, and the individual who allegedly wrote the sell page for Consumer Innovations, were both previously employed by Trilegiant, a company that also used sell pages to conduct business. (D.I. 92 at 9.) Consumer Innovations noted that it was "more than a little ironic" that both men had the same former employer. (*Id.*) Consumer Innovations, however, has failed to present evidence that Webloyalty personnel copied the sell page from the Trilegiant sell page or any other sell page, or, for that matter, whether the Trilegiant sell page was even created before Webloyalty's.

[*16]

It is not until Consumer Innovations' Reply Brief in support of its Motion for Summary Judgment that it moves past its lack of originality argument and argues that any substantial similarity between the two sell pages is not actionable. (D.I. 98 at 6-8.) It admits, however, as it must, that the determination of the cause of the substantial similarity, "is a question of fact." (*Id.* at 7 (quoting *Whelan, 797 F.2d at 1232 n.23.*)) Therefore, it is clear that Consumer Innovations has not rebutted the *prima facie* case of originality nor has it established that there are no genuine issues of material fact relating to the originality of the work at issue or the determination of substantial similarity.

Consumer Innovations' second argument is that the functional nature of the language and the cash back feature are "external factors" which limit the number of ways to express the ideas conveyed on the sell page such that the doctrines of merger or scenes-a-faire prevent Webloyalty from claiming an exclusive right to the common language of the sell pages. (D.I. 92 at 10-13.) Under the doctrine of scenes-a-faire, copyright protection is denied "to those expressions that [*17] are standard, stock, or common to a particular topic or that necessarily follow from a common theme or setting." *Dun & Bradstreet Software Servs., Inc., 307 F.3d at 215* (quoting *Gates Rubber Co. v. Bando Chem. Indus., 9 F.3d 823, 838* (10th cir. 1993)). Scenes-a-faire are "incidents, characters or settings which are as a practical matter indispensable ... in the treatment of a given topic." *Whelan Assocs., 797 F.2d at 1236* (quoting *Atari, Inc. v. N. Am. Philips Consumer Elecs. Corp., 672 F.2d 607, 616 (7th Cir. 1982), cert. denied, 459 U.S. 880, 74 L. Ed. 2d 145, 103 S. Ct. 176 (1982)*). The scenes-a-faire

doctrine denies copyright protection to an idea that is capable of expression only in a stereotyped form. *Atari, Inc., 672 F.2d at 616.*

The doctrine of merger applies where there is a merger of idea and expression, such that a given idea is inseparably tied to a particular expression. *Educ. Testing Servs. v. Katzman, 793 F.2d 533, 539 (3d Cir. 1986).* "The idea and the expression will coincide when the expression provides nothing new or additional over the idea." *Midway Mfg. Co. v. Bandai-America, Inc., 546 F. Supp. 125, 148 (D.N.J. 1982)* [*18] (internal citation omitted). Under such circumstances, protecting the expression would entail protecting the idea itself, which is impermissible under copyright law. *Atari, Inc., 672 F.2d at 612.*

Consumer Innovations' arguments based on these doctrines are also insufficient to establish that summary judgment is appropriate. For either doctrine to apply, Consumer Innovations must establish that there is a limited, if not singular, manner to express the ideas presented on the sell page. It has not made any such showing. The evidence presented by Consumer Innovations, if anything, proves the opposite. Consumer Innovations provides two examples of sell pages that offer a $ 10 incentive for joining a membership club and inform the reader how to join. (D.I. 92 at Ex. I; D.I. 95 at Ex. 14, Dec. Anne M. Sterba.) These sell pages clearly show that there are other ways in which those ideas can be expressed. Neither of these sell pages uses the same text or arrangement as Webloyalty's copyrighted page. While, the "external factors" described by Consumer Innovations may provide the central ideas, there apparently are a number of ways to express them. n12 Therefore, Consumer Innovations [*19] has not established that either doctrine supports their argument for summary judgment on this record.

n12 For instance, Webloyalty submitted seven examples of sell or enrollment pages embodying a cash back offer which it admits do not utilize the same text or same look and feel as Webloyalty's sell page. (D.I. 96 at Ex. A, Dec. Tamra Lichtman.)

Because Consumer Innovations has failed to satisfy its burden of proving that no genuine issues of material fact exist as to the issue of copyright infringement, its Motion for Summary Judgment is denied.

B. Unfair Competition

Consumer Innovations' entire argument for summary judgment on Webloyalty's unfair competition claim in its Opening Brief in support of its Motion for Summary Judgment is contained in two sentences. First, Consumer Innovations states that: "Because the elements common to the Reservation Rewards sell page and the Travelers Innovations sell page relate only to the non-copyrightable language, plaintiff's claims for infringement, unfair competition, [*20] and trade dress must be dismissed as a matter of law." (D.I. 92 at 8.) Then Consumer Innovations concludes with a request for "Summary Judgment in favor of Consumer Innovations, LLC, dismissing all claims against it with prejudice." (D.I. 92 at 15.) In its Reply Brief in support of its Motion for Summary Judgment (D.I. 98; "Reply Brief"), however, Consumer Innovations dedicated nearly 10 pages to its argument for why it is entitled to summary judgment on Webloyalty's unfair competition claim. Consumer Innovations' explanation for why it did not earlier address Webloyalty's unfair competition claim was that Webloyalty did not provide any evidence to establish any of the elements of its unfair competition claim throughout discovery. (D.I. 98 at 11-12.)

Delaware Local Rule 7.1.3(c)(2) pertains to Reply Briefs and states: "The party filing the opening brief shall not reserve material for the reply brief which should have been included in a full and fair opening brief. ..." Therefore, if Consumer Innovations had an argument to make as to why summary judgment on Webloyalty's unfair competition claim was appropriate, it should have been raised in their opening brief, unless it was responding [*21] to an argument made by Webloyalty in its Answering Brief (D.I. 94). Consumer Innovations, however, was not responding to an argument raised in Webloyalty's Answering Brief because Webloyalty's entire argument, presented in its "Summary of Argument," consisted of the following: "Although [Consumer Innovations'] motion formulaically requests dismissal "of any and all claims against it" ... [Consumer Innovations'] Opening Brief ... does not even mention Webloyalty's allegations of unfair competition under the Lanham Act *15 U.S.C. § 1125(a)* ... and contains no arguments as to why Count II should be dismissed." (D.I. 94 at 2.)

Because Consumer Innovations' arguments presented

on pages 11 through 20 of its Reply Brief should have been presented in its Opening Brief for proper consideration pursuant to Local Rule 7.1.3(c)(2), its Motion for Summary Judgment as to Webloyalty's unfair competition claim is also denied.

**V. CONCLUSION**

Accordingly, it is hereby ORDERED that Consumer Innovations' Motion for Summary Judgment (D.I. 91) is DENIED and Webloyalty's Motion for Discovery (D.I. 27) is DENIED as moot.

Kent A. Jordan

UNITED STATES DISTRICT JUDGE

Wilmington, [*22] Delaware
January 13, 2005

# TAB 3

# TABLE OF AUTHORITIES

**Page No.**

**Cases**

Allergan, Inc. v. Alcon, Inc.,
C.A. No. 04-968-GMS, Order (D. Del. June 13, 2005) .................................... 5

Jordan v. Bellinger,
C.A. No. 98-230-GMS, 2000 U.S. Dist. LEXIS 19233 (D. Del. April 28, 2000) .......... 5

Novartis Pharms. Corp. v. Abbott Laboratories,
C.A. No. 00-784-JJF, Order (D. Del. Feb. 20, 2002) .................................... 11, 13

Rockwell Techs., LLC v. Spectra-Physics Lasers, Inc.,
C.A. No. 00-589-GMS, 2002 U.S. Dist. LEXIS 5180 (D. Del. March 26, 2002) .......... 5

Student Finance Corp. v. Royal Indemnity Co.,
C.A. No. 03-507-JJF, 2004 U.S. Dist. LEXIS 4952 (D. Del. March 23, 2004) ............. 6

Webloyalty.com, Inc. v. Consumer Innovations, LLC,
C.A. No. 04-90-KAJ, 2005 U.S. Dist. LEXIS 791 (D. Del. Jan. 13, 2005) ................... 6

**Rules**

District of Delaware Local Rule 7.1.3(c)(2) .................................... passim

4952, * 9 n.4 (D. Del. March 23, 2004) (applying Local Rule 7.1.3 and rejecting new arguments made for the first time in reply brief); Webloyalty.com, Inc. v. Consumer Innovations, LLC, C.A. No. 04-90-KAJ, 2005 U.S. Dist. LEXIS 791 (D. Del. Jan. 13, 2005) (denying motion for summary judgment on unfair competition claim pursuant to Local Rule 7.1.3 where defendant's entire argument was saved for the reply brief).

* * *

Maytag's reply briefs on the two pending motions marshal a large number of additional facts and legal arguments that Maytag could and should have discussed in its two opening briefs, and Maytag for the most part ignores the facts and legal arguments raised in its opening briefs. Indeed, Maytag's reply briefs spend hardly any time explaining why, based on the record presented in the opening and answering briefs, Maytag should prevail.

These brief-writing tactics prejudice both Dyson and the Court. Dyson is prejudiced because it has not had the opportunity to explain why Maytag's newly marshaled facts and newly cited case law is inapplicable or incorrectly described in Maytag's papers. The Court, in turn, is prejudiced in two ways. First, it must decide Maytag's motions without the benefit of the adversarial process on all of Maytag's arguments. Second, precious time and judicial resources are being expended to adjudicate this motion, something that would not have been necessary had Maytag followed the rules.

As a result, Maytag's newly marshaled facts and case law discussions should be stricken from the record.