# UNREPORTED CASES

LEXSEE



Caution
As of: Dec 27, 2006

MICHAEL JORDAN, Plaintiff, v. CAPTAIN BELLINGER, et al., Defendants.

Civil Action No. 98-230-GMS

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

2000 U.S. Dist. LEXIS 19233

August 28, 2000, Decided
August 28, 2000, Filed

**DISPOSITION:** [*1] Defendants' Motion to Dismiss GRANTED IN PART. Plaintiff's claim that his constitutional right of access to courts violated by seizure of his legal documents and his constitutional right of due process violated by confiscation of his personal property by Defendants Bellinger, Tailor and Burton DISMISSED. Plaintiff's Motion to Amend GRANTED IN PART and DENIED IN PART.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** In plaintiff's suit arising from defendants prison officials' search of his cell and alleged destruction and seizure of his property, defendants filed a motion to dismiss plaintiff's due process, denial of access to the courts, and conversion claims; plaintiff moved to amend his complaint and to compel production of discovery; defendants moved for protective orders from the discovery requests.

**OVERVIEW:** Plaintiff prisoner filed a complaint alleging that defendants correctional officers violated his constitutional rights while conducting a search of his cell. He alleged violations of his U.S. Const. amend. IV rights, violations of due process, violations of his right to access to the courts, and conversion. Defendants filed a motion to dismiss, plaintiff filed a motion to amend and to compel discovery, and defendants filed a motion for protective orders from the discovery motion. The court found that, in light of favorable court rulings in his case, plaintiff failed to allege actual injury for his access to court claim. Also, he was granted a post-deprivation hearing regarding his seized property. The court there-

fore granted the motion to dismiss as to the access and due process claims. The court found defendants' immunity defense to the conversion claim was not applicable, so that claim, along with the U.S. Const. amend. IV claim, which defendants did not challenge, remained. The court allowed plaintiff to amend his complaint and granted the motion to compel where such allowance was not futile as a result of the court's dismissal rulings.

**OUTCOME:** The court granted: (1) the motion to dismiss the access to courts claim, finding plaintiff did not prove actual injury; (2) the motion to dismiss the due process claim, finding plaintiff was afforded a post-deprivation hearing; (3) plaintiff's motion to compel, finding, where the request was not made moot by defendants motion to dismiss, the information sought was relevant; the court denied the motion to dismiss the conversion claim.

**CORE TERMS:** prison, conversion, cell, seized, guards, legal documents, post-deprivation, chattel, inmate, motion to amend, denied access, amend, constitutional rights, summary judgment, matter of law, confiscated, constitutional right, confiscation, discovery, radio, injunctive relief, opening brief, deprived, revised, motion to dismiss, contraband, seizure, actual injury, property interest, correctional

**LexisNexis(R) Headnotes**

*Civil Procedure > Summary Judgment > Motions for Summary Judgment > General Overview*

*Civil Procedure > Summary Judgment > Opposition > General Overview*
*Civil Procedure > Summary Judgment > Supporting Materials > Discovery Materials*
[HN1] A Fed. R. Civ. P. 12(b)(6) motion can be converted into a motion for summary judgment when the parties attach materials outside of the pleadings to their papers.

*Civil Procedure > Summary Judgment > Standards > Legal Entitlement*
*Civil Procedure > Summary Judgment > Standards > Materiality*
[HN2] Under Fed. R. Civ. P. 56(c), the court can only grant summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. An issue is "genuine" if, given the evidence, a reasonable jury could return a verdict in favor of the non-moving party. A fact is "material" if, under the governing law, it might affect the outcome of the case.

*Civil Procedure > Summary Judgment > Burdens of Production & Proof > General Overview*
[HN3] On summary judgment, the court must look at the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences and resolving all reasonable doubts in favor of that party.

*Civil Rights Law > Section 1983 Actions > Scope*
[HN4] The plaintiff must demonstrate that his efforts to pursue a legal claim were actually hindered in asserting a 42 U.S.C.S. § 1983 action.

*Constitutional Law > Bill of Rights > Fundamental Rights > Procedural Due Process > Scope of Protection*
[HN5] An unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the United States Constitution if a meaningful post-deprivation remedy for the loss is available. For intentional deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable post-deprivation remedy.

*Torts > Intentional Torts > Conversion > Elements*
*Torts > Intentional Torts > Conversion > Remedies*
*Torts > Procedure > Commencement & Prosecution > General Overview*

[HN6] Under the common law, the tort of conversion is an act of willful interference with the dominion or control over a chattel, done without lawful justification, by which any person entitled to the chattel is deprived of its use and possession. The tort is predicated on the interference with dominion or control over the chattel incident to some general or special ownership rather than on damage to the physical condition of the chattel. A person not in lawful possession of a chattel may commit conversion by intentionally dispossessing the lawful possessor of the chattel by disposing of a chattel by an unauthorized sale with the intent to transfer a proprietary interest in it, or by refusing to surrender a chattel on demand to a person entitled to lawful possession.

*Torts > Intentional Torts > Conversion > Elements*
*Torts > Intentional Torts > Conversion > Remedies*
[HN7] The modern law remedy for conversion has emerged from the common law action of trover, which was premised on the theory that the defendant had appropriated the plaintiff's chattel for which he must pay. A plaintiff who proved conversion in a common law trover action was entitled to damages equal to the full value of the chattel at the time and place of the conversion.

*Torts > Intentional Torts > Conversion > Defenses*
*Torts > Public Entity Liability > Immunity > General Overview*
[HN8] The Delaware Tort Claims Act, Del. Code Ann. tit. 10, § 4011, expressly exempts willful or intentional acts from coverage. Del. Code Ann. tit. 10, § 4011(c).

*Civil Rights Law > Prisoner Rights > Search & Seizure*
*Criminal Law & Procedure > Criminal Offenses > Miscellaneous Offenses > Currency Smuggling > Elements*
*Criminal Law & Procedure > Search & Seizure > General Overview*
[HN9] Prison inmates do not retain a constitutionally-protected right of privacy in their prison cells, which can be searched at random at any time. Nevertheless, these searches must still be conducted in a reasonable manner.

*Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings > Leave of Court*
[HN10] Under Fed. R. Civ. P. 15(a), the court must freely grant leave to amend. In fact, under this liberal standard, the court can only deny a motion to amend under a limited number of circumstances.

*Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements*
*Civil Procedure > Pleading & Practice > Pleadings > Rule Application & Interpretation*
*Criminal Law & Procedure > Search & Seizure > General Overview*
[HN11] Fed. R. Civ. P. 8(a)(2) requires a plaintiff to set forth a short and plain statement showing that he is entitled to relief.

*Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements*
*Civil Procedure > Judgments > Relief From Judgment > General Overview*
[HN12] Fed. R. Civ. P. 8(a)(3) explains that the complaint must contain a demand for judgment for the relief sought.

**COUNSEL:** Michael Jordan, Plaintiff, Pro se, Smyrna, Delaware.

For Defendants: Ophelia M. Waters, Esquire, State of Delaware Department of Justice, Wilmington, Delaware.

**JUDGES:** Gregory M. Sleet, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** Gregory M. Sleet

**OPINION:**

**MEMORANDUM OPINION**

August 28, 2000.

Wilmington, Delaware.

**SLEET, District Judge.**

I. INTRODUCTION.

Michael Jordan is presently incarcerated at the Delaware Correctional Center ("DCC") which is located in Smyrna, Delaware. On May 1, 1998, he filed a complaint with this court alleging that several correctional officers at the prison violated his constitutional rights while conducting a search of his cell. *See* 42 U.S.C. § 1983 (1994). According to Jordan, these prison guards confiscated several of his legal papers. Jordan [*2] claims that these materials have not yet been returned to him. Jordan also alleges that the prison guards seized or destroyed a number of his personal possessions during the course of their search. Finally, Jordan claims that these guards acted unreasonably in conducting their search in violation of his Fourth Amendment rights. Jor-

dan seeks compensatory damages for these alleged wrongs as well as injunctive relief to prevent similar conduct from occurring in the future. n1 He also seeks to recover for the common law tort of conversion.

n1 The court presumes that Jordan is seeking monetary damages from the defendants in their personal capacity and injunctive relief against the defendants in their official capacity. To the extent that Jordan is seeking to recover damages against the defendants in their official capacities, the court will dismiss these claims because the defendants are entitled to sovereign immunity under the Eleventh Amendment. *See, e.g., Pena v. Gardner*, 976 F.2d 469, 472-73 (9th Cir. 1992) (citing, *inter alia, Edelman v. Jordan*, 415 U.S. 651, 663, 39 L. Ed. 2d 662, 94 S. Ct. 1347 (1974)); *Orum v. Haines*, 68 F. Supp. 2d 726, 729 (N.D. W.Va. 1999) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 105 L. Ed. 2d 45, 109 S. Ct. 2304 (1989)).

[*3]

On April 19, 1999, the defendants filed a motion to dismiss. n2 In it, they argue that Jordan has failed to show that his access to the courts was actually impeded by the confiscation of his legal papers. The defendants also contend that although a number of Jordan's possessions were seized during the search of his cell, he subsequently received a hearing on the matter. Thus, his constitutional right to due process was not violated. Jordan has opposed this motion in addition to moving to amend to assert his claims against two new defendants. He further asks this court to compel the defendants to respond to his numerous discovery requests.

n2 In light of this motion, the court will deny the motion for a default judgment which Jordan filed on May 26, 1999. *See* Fed. R. Civ. P. 55(a) (1999) (noting that the party must fail to plead or otherwise defend against the lawsuit).

While the court will grant the dispositive motion, this ruling does not dispose of all of Jordan's claims. Those alleging that the search [*4] conducted by the defendants was unreasonable and seeking to recover for the conversion of his property remain. In addition, while a large portion of Jordan's motion to amend will be denied as futile, the court will allow him to assert his due process claims against the officer who presided over his post-deprivation hearing. Finally, in light of these rulings, several of Jordan's discovery requests have become

moot. Nevertheless, others seem to request relevant information which appears to be either admissible or reasonably calculated to lead to the discovery of admissible evidence. For this reason, the court will grant Jordan's motion to compel in part. The following sections explain the reasons for this decision more thoroughly.

## II. STANDARD OF REVIEW.

Although the defendants filed a motion to "dismiss," they have attached materials outside of the pleadings to this submission. In opposition to this motion, Jordan has also submitted materials outside of the pleadings. He has further argued that when the record is viewed in the light most favorable to him, a reasonable jury could return a verdict in his favor. For these reasons, the court will treat the pending motion to dismiss [*5] as one for summary judgment. See Fed. Civ. P. 12(b) (1999) (noting that [HN1] a Rule 12(b)(6) motion can be converted into a motion for summary judgment when the parties attach materials outside of the pleadings to their papers); See also Neal v. Kelly, 295 U.S. App. D.C. 350, 963 F.2d 453, 455-56 (D.C. Cir. 1992) (emphasizing that the plaintiff must receive the opportunity to submit its own affidavits or other materials in opposition to the motion before it is converted into one for summary judgment) (citing Lewis v. Faulkner, 689 F.2d 100, 101 (7th Cir.1982)).

[HN2] Under Rule 56, he court can only grant summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c) (1999). An issue is "genuine" if, given the evidence, a reasonable jury could return a verdict in favor of the non-moving party. See, e.g., Robinson v. Klotz, 1995 U.S. Dist. LEXIS 717, Civ. A. No. 94-1993, 1995 WL 27479, at *1 (E.D. Pa. Jan 23, 1995) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)). A fact is "material" if, under the governing law, it might affect the outcome of the case. See id. [*6] (citing same). [HN3] On summary judgment, the court must look at the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences and resolving all reasonable doubts in favor of that party-- here, Jordan. See, e.g., Gutridge v. Chesney, 1998 U.S. Dist. LEXIS 6647, Civ. A. No. 97-3441, 1998 WL 248913, at *1 n.1 (E.D. Pa. May 8, 1998). With these standards in mind, the court turns to a discussion of the most relevant facts giving rise to this lawsuit.

## III. BACKGROUND.

In his complaint, Jordan alleges that three prison guards (Captain Bellinger, Lieutenant Tailor, and Lieutenant Burton) burst into his cell to conduct a search on November 11, 1997. At the time, Jordan claims, he was

using the toilet. He was immediately ordered to stand. He was then handcuffed. Jordan also alleges that he was subsequently subjected to a body cavity search, possibly in front of other inmates.

According to Jordan, the correctional officers then began removing all of the items from the cell, including the light fixtures. n3 When they failed to find any contraband, Jordan claims, "they began confiscating legal documents, pictures, [his] socks, and . . . items that [he had purchased] [*7] at the prison store." Jordan alleges that the guards were looking for "anything to make the search legitimate."

n3 Jordan contends that, in removing the fixtures, the defendants left several electrical wires exposed. As a result, Jordan claims, he was exposed to the possibility of electrocution in violation of his constitutional right against cruel and unusual punishment. There is no merit to this claim. In order to establish an Eighth Amendment violation, an inmate must show that prison guards or officials acted with deliberate indifference to or reckless disregard for a substantial risk of serious harm to the physical safety of an inmate. See, e.g., Farmer v. Brennan, 511 U.S. 825, 834, 128 L. Ed. 2d 811, 114 S. Ct. 1970 (1994). Here, Jordan only alleges that the defendants left exposed electrical wires in his cell. He has not claimed that he was actually harmed by these wires. Thus, while the situation in his cell may have been something of a nuisance, this minor inconvenience cannot serve as the basis for an Eighth Amendment claim. See Robinson v. Detella, 1996 U.S. Dist. LEXIS 10440, Civ. A. No. 95-4067, 1996 WL 422154, at *3 (N.D. Ill. Jul 24, 1996) (finding no cruel or unusual punishment where the plaintiff had not been seriously harmed by exposed wiring) (relying on Morissette v. Peters, 45 F.3d 1119, 1122 (7th Cir.1995); Harris v. Fleming, 839 F.2d 1232, 1235 (7th Cir.1988)).

[*8]

Jordan further claims that as these officers were in the process of seizing his legal papers, he told them that he was filing a motion for a rehearing in the Third Circuit Court of Appeals. According to Jordan, Lieutenant Burton responded by telling him "I don't give a damn. You're pissing me off now. Get out of my face." Jordan further alleges that his motion for a rehearing was denied by the Third Circuit as untimely even though his delay was caused by the confiscation of his legal materials.

Jordan next claims that the officers confiscated his reading glasses, his knee and ankle braces, a mirror, a

pencil sharpener, his personal letters, a list of the telephone numbers and addresses of his family members, and several magazines. Jordan also alleges that the guards broke his watch during the conduct of their search.

According to Jordan, he filed a grievance but received no response. Later, he was apparently brought before a disciplinary committee which "found both [him and his cellmate] guilty" of possessing contraband. Jordan claims that although his cellmate's items were returned to him, he has yet to receive any of his possessions.

Jordan contends that this conduct violated [*9] his constitutional rights of access to the courts and due process. He also appears to be claiming that the search of his cell and his person was excessive and unreasonable. Finally, he contends that the defendants committed the common law tort of conversion by seizing his personal items. Jordan seeks to recover compensatory damages for his injuries as well as injunctive relief which the "court deem[s] just and proper."

IV. DISCUSSION.

In order to recover on the majority of his claims, Jordan must show that he was deprived of a constitutional right by a person acting under the color of state law. See 42 U.S.C. § 1983 (1994). Here, there is no question that the defendants were acting under the color of state law at the time that the alleged conduct occurred. See, e.g., Cespedes v. Coughlin, 956 F. Supp. 454, 465 (S.D.N.Y. 1997). Instead, the only questions raised by their dispositive motion is whether the defendants' violated any of Jordan's constitutional rights and, if so, whether he can recover against the defendants.

A. Jordan's Claim Concerning His Access To The Courts.

Jordan first claims that he was denied access to the court [*10] because the defendants confiscated his legal documents. As a result, he alleges, his motion for a rehearing was denied by the Third Circuit. The record, however, tells a different story.

After reviewing the materials which Jordan has attached to his pleadings, it is clear that the case to which he is referring is his appeal of the denial of his petition for a writ of habeas corpus as a second or successive petition. See Jordan v. Snyder, Civ. A. No. 97-385-SLR, slip op. at 1 (D. Del. July 1, 1997). Contrary to Jordan's allegations, the Third Circuit did not deny his motion for a rehearing in this case. Instead, the appellate court afforded him an additional thirty days to file his motion. See Jordan v. Snyder, Civ. A. No. 97-7458, slip op. at 1 (3d Cir. Nov. 12, 1997). While Jordan has stated that he

"surely did not expect to be granted an extension of time" because he "was just informing the court [of appeals] of what [had] happened" to his legal documents, he cannot deny that he was in fact granted an extension of time.

Furthermore, the Third Circuit ultimately reversed the ruling which Jordan was appealing, and the district court was instructed to "review the petition [*11] as if it were the first such filing." See Jordan v. Snyder, Civ. A. No. 97-7458, slip op. at 1 (3d Cir. Dec. 12, 1997) (relying on Christy v. Horn, 115 F.3d 201, 208 (3d Cir. 1997)). In light of these favorable rulings, the court cannot conclude that Jordan has suffered "some actual injury, that is, an instance in which [he] was actually denied access to the courts" before the Third Circuit. See Hudson v. Robinson, 678 F.2d 462, 466 (3d Cir. 1982); See also Lewis v. Casey, 518 U.S. 343, 351-52, 135 L. Ed. 2d 606, 116 S. Ct. 2174 (1996) (reaffirming the actual injury requirement). Therefore, the defendants' motion to dismiss (i.e., for summary judgment) will be granted on this claim.

Jordan also appears to claiming that he was denied access to the courts because his legal documents were seized while his "case was fully active in this court" once it was remanded by the Third Circuit. After reviewing the docket in this habeas proceeding, the court notes that Jordan's petition was dismissed. See Jordan v. Snyder, 2000 U.S. Dist. LEXIS 436, Civ. A. No. 97-385, 2000 WL 52152, at *1 (D. Del. Jan. 5, 2000). However, after the respondents submitted their answer to the petition [*12] and portions of the state court record for review, nearly eighteen months passed before the court issued a final ruling on the matter. During this time, Jordan did not submit one filing to the court. For example, he did not request copies of the documents which had been filed in his case. Cf. Johnson v. Coughlin, 1990 U.S. Dist. LEXIS 12905, Civ. A. No. 89-4237, 1990 WL 150469, at *5 (S.D.N.Y. 1990). Nor did he even ask the court for additional time to respond to the answer because his legal materials had been seized.

Moreover, in this litigation, Jordan has not pointed to any perceived point of error in the decision which dismissed his petition for a writ of habeas corpus. Nor has Jordan explained how the judge in that case might have reached a different result if the seized legal materials had been returned. In fact, the only basis for Jordan's claim that he was denied access to the courts is his contention in this lawsuit that the seizure of his legal materials prevented him from fully litigating his case.

However, this general allegation of harm cannot provide the basis for relief in this Section 1983 action, especially when Jordan has not come forward with more specific evidence that his [*13] access to the courts was actually impeded. See, e.g., Lewis, 518 U.S. at 351 (ex-

plaining that [HN4] the plaintiff must demonstrate that his efforts to pursue a legal claim were actually hindered; *Hudson, 678 F.2d at 466* (emphasizing the "actual injury" requirement).

For these reasons, Jordan cannot recover on his claim that he was denied access to the courts. Consequently, the court will grant this portion of the defendants' dispositive motion.

B. Jordan's Due Process Claim.

Jordan next claims that his constitutional right to due process was violated when his property was seized without first receiving notice and an opportunity to be heard on the matter. However, as the Supreme Court has held:

[HN5]
An unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause . . . . if a meaningful post-deprivation remedy for the loss is available. For intentional . . . deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable post-deprivation remedy.

See *Hudson v. Palmer, 468 U.S. 517, 533, 82 L. Ed. 2d 393, 104 S. Ct. 3194 (1984).* [*14]

In light of *Hudson*, Jordan's claim that he was entitled to a pre-deprivation hearing before his possessions were confiscated fails as a matter of law, especially since Jordan has admitted that he was afforded a post-deprivation hearing and that he was "found . . . guilty" of possessing prison contraband at this hearing.

Nevertheless, Jordan also contends that the officer who presided over his post-deprivation hearing (Lieutenant Reynolds) withheld ruling on the confiscation of a radio until it could be determined whether this item belonged to Jordan or another inmate. n4 Jordan further claims that, contrary to prison regulations, he was not afforded an opportunity to send his remaining contraband home. n5

n4 Apparently, prison regulations prohibit inmates from possessing items belonging to other inmates.

n5 While Jordan also claims that Reynolds promised to return his legal documents to him,

any claim based on this alleged promise fails as a matter of law. In short, given the court's earlier ruling on Jordan's claim that he was denied access to the courts, any failure to return Jordan's legal materials to him did not cause him to suffer an actual injury. *See* Section IV *supra*.

[*15]

Even if this conduct violated Jordan's constitutional rights, there is no indication that any of the three individuals who are currently named as defendants were involved in any these post-deprivation events. While the three correctional officers may have seized Jordan's items, there is no evidence that they were involved in the hearing which upheld the seizure. Because there is no indication that any of these three defendants were the proximate cause of the conduct which Jordan now claims violated his constitutional rights, the court will grant summary judgment in their favor on the due process claim. n6

n6 In any event, as the court will discuss, Jordan has brought conversion claims against these three defendants. Because a common law action for conversion provides an adequate post-deprivation remedy for an individual who may have been deprived of his property without notice or an opportunity to be heard, Jordan's due process claims against Bellinger, Tailor, and Burton fail as a matter of law. *See Austin v. Lehman, 893 F. Supp. 448, 454 (E.D. Pa. 1995)* ("To the extent he has any property interest in the . . . cigarettes he was denied, [the p]laintiff still has available a state court action for [this] deprivation. The existence of this remedy . . . forecloses [the p]laintiff's due process claim.") (citations omitted).

[*16]

C. Jordan's Conversion Claim.

Jordan also asserts a claim of conversion against Bellinger, Tailor, and Burton. Given Jordan's underlying federal claim, *42 U.S.C. § 1983*, the court may exercise supplemental jurisdiction over the state law claim. *See 28 U.S.C. § 1367 (1994).* As the Third Circuit has explained, [HN6] under the common law, the tort of conversion

is an act of willful interference with the dominion or control over a chattel, done without lawful justification, by which any person entitled to the chattel is deprived

of its use and possession. The tort is predicated on [the] interference with dominion or control over the chattel incident to some general or special ownership rather than on damage to the physical condition of the chattel. A person not in lawful possession of a chattel may commit conversion by intentionally dispossessing the lawful possessor of the chattel . . . , by disposing of a chattel by an unauthorized sale with [the] intent to transfer a proprietary interest in it, or by refusing to surrender a chattel on demand to a person entitled to lawful possession.

[HN7] The modern law remedy for conversion has [*17] emerged from the common law action of trover, which was premised on the theory that the defendant had appropriated the plaintiff's chattel for which he must pay. A plaintiff who proved conversion in a common law trover action was entitled to damages equal to the full value of the chattel at the time and place of [the] conversion.

See *Baram v. Farugia*, 606 F.2d 42, 43-44 (3d Cir. 1979) (footnotes and citations omitted).

Here, Jordan contends that the three defendants intentionally interfered with his property by seizing it during their search of his cell. In their opening brief, the only relevant defense which Bellinger, Tailor, and Burton raised to Jordan's conversion claim is that they should receive immunity for their actions under the Delaware Tort Claims Act. See Del. Code Ann. tit. 10, § 4011 (1999). n7 However, [HN8] this statute expressly exempts willful or intentional acts from coverage. Del. Code Ann. tit. 10, § 4011(c); *See also Farris v. Moeckel*, 664 F. Supp. 881, 896 (D. Del. 1987). As previously explained, according to Jordan, these three defendants acted intentionally when they confiscated his personal property and there is no evidence in the record [*18] to rebut this assertion. For this reason, the court cannot dismiss Jordan's conversion claim at this stage of the proceedings.

n7 Although the defendants also claim that the property which was seized was "in excess of what was allowable" under the prison rules and, therefore, confiscated pursuant to prison policy, this argument was not raised in the defendants' opening brief. Instead, it was included in their reply brief. However, under the Local Rules, "the

party filing the opening brief shall not reserve material for the reply brief which should have been included in a full and fair opening brief." *See* D. Del. L.R. 7.1.3(c)(2) (1995). Therefore, the court will not consider this argument at this time.

D. Jordan's Unreasonable Search Claim.

Finally, Jordan claims that the excessive or unreasonable manner by which the defendants conducted their search violated his constitutional rights. The defendants have not moved to dismiss this particular claim. Instead, their motion is limited only to Jordan's claims [*19] for denial of access to the courts and denial of due process. Furthermore, at this stage of the proceedings, the court cannot conclude that Jordan's allegations are otherwise frivolous, malicious, made in bad faith, or fail to state a claim upon which relief can be granted. *See* 28 U.S.C.A. § 1915(d) (1999).

Here, Jordan alleges that when the guards burst into his cell, they ordered him off the toilet and placed him in handcuffs. They then brought him to a common area where he was strip searched. According to Jordan, one of the officers conducted an anal cavity search.

As the Supreme Court has observed, "[a] detention facility is a unique place fraught with serious security dangers. Smuggling of money, drugs, drugs, weapons, and other contraband is all too common an occurrence." *See Bell v. Wolfish*, 441 U.S. 520, 559, 60 L. Ed. 2d 447, 99 S. Ct. 1861 (1978). For this reason, [HN9] prison inmates do not retain a constitutionally-protected right of privacy in their prison cells, which can be searched at random at any time. See *Hudson*, 468 U.S. at 527-29. Nevertheless, as the *Bell* Court emphasized, "these searches must [still] be conducted in a reasonable [*20] manner." 441 U.S. at 560. In *Bell*, the Court ultimately concluded that a visual body cavity search of an inmate could be conducted on less than probable cause given the legitimate security concerns of the institution. *Id.*

In this case, it is not clear whether a visual or physical inspection was conducted. Furthermore, it is not clear what cause the prison guards had to conduct their search in the first place. Because the record on these issues has not yet been developed, the court cannot rule on this claim at this stage of the litigation. *Cf. LeVoy v. Mills*, 788 F.2d 1437, 1439 (10th Cir. 1986) (reversing the dismissal of a complaint under 28 U.S.C. § 1915(d) because the plaintiff might be able to prove that his body cavity search was unreasonable under the circumstances and, thus, violated his rights under the Fourth Amendment).

E. Jordan's Motion To Amend.

After briefing on the defendants' dispositive motion closed, Jordan moved to amend his complaint. Through his proposed amendment, Jordan primarily seeks to name Reynolds and Robert Snyder (the warden of DCC) as defendants to his claim that he was denied access to [*21] the courts due to the seizure of his legal documents and his claim that he was denied due process during the proceedings which followed the confiscation of his radio. n8

n8 In this motion, Jordan also seeks to amend the answering brief which he submitted in opposition to the motion to dismiss. Specifically, Jordan seeks to raise new legal arguments that were not presented in his earlier opposition. Even though Jordan is proceeding *pro se*, the court cannot condone the manner in which his new arguments were raised. As the court previously explained, the Local Rules provide that "the party filing the opening brief shall not reserve material for the reply brief which should have been included in a full and fair opening brief." *See* D. Del. L.R. 7.1.3(c)(2). Likewise, a party should not be allowed to supplement an opposing brief by later moving to amend not only it but also the complaint. Nevertheless, because the arguments which Jordan raises in his motion to amend all fail on the merits, the court will comment on them briefly.

Jordan first argues that the defendants cannot turn his suit against them in their individual capacities to an official capacity suit in order to win a quick dismissal of his case. However, as stated at the outset of this opinion, the court has presumed that Jordan named the defendants in their individual or personal capacities for the purpose of obtaining monetary damages and in their officials capacities for the purposes of obtaining injunctive relief. *See* Note 1 *supra*. Thus, this argument raises a moot issue.

Next, Jordan contends that the defendants are not entitled to qualified immunity because they acted in "clear violation of established constitutional law." However, this argument raises a point which is not ripe for decision because the court has concluded that (1) Jordan's right of access to the courts was not violated and (2) the three named defendants were not personally involved in any of the events which occurred at Jordan's post-deprivation hearing and, thus, cannot be held liable for any due process violation which might have occurred during these proceedings. *See* Sections IV.A and IV.B *supra*.

Finally, Jordan contends "there must be some merit to [his] claims" because defense counsel went so far as to consult an insurance agent before filing the motion to dismiss. The defendants, however, introduced an affidavit from the State's risk manager to show that Delaware has not insured itself against these types of actions. As a result, the State has not waived its sovereign immunity for these types of claims. *See Turnbull v. Fink*, 668 A.2d 1370, 1376 (Del. 1995) (explaining that 18 Del. Code § 6511 "provides for the waiver of sovereign immunity only as to risks or losses covered by the State Insurance Coverage Program").

While Jordan contends that the DCC could purchase this type of insurance coverage with the $ 17.5 million which the State has allocated to the prison over the last three years, the fact remains that this type of coverage has not been purchased. Consequently, Delaware has not waived its sovereign immunity against these claims.

Thus, after considering the additional arguments which Jordan has raised in his motion to amend, the court finds them to be without merit. As a result, they fail to provide a basis for successfully opposing the motion to dismiss.

[*22] [HN10]

Under Rule 15 of the Federal Rules of Civil Procedure, this court must freely grant leave to amend. Fed. R. Civ. P. 15(a) (1999). In fact, under this liberal standard, the court can only deny a motion to amend under a limited number of circumstances. *See Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962) (explaining that such a motion should only be denied in the face of undue delay, bad faith, unfair prejudice, a repeated failure to cure deficiencies in the pleadings, or futility). Given the court's previous findings, the majority of Jordan's proposed amendments are futile. n9 Therefore, his motion will be denied in large part. *See Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir.1988) (denying leave to amend because the proposed amendment would not survive a motion to dismiss); *Satellite Fin. Planning Corp. v. First Nat'l Bank of Wilmington*, 646 F. Supp. 118, 120 (D. Del. 1986) (same).

n9 Here, Jordan has moved to amend at a fairly early stage in these proceedings. Thus, the court cannot conclude that he has acted with undue delay. Nor can the court conclude that he has a dilatory motive since it does not appear as if he

is inserting new legal theories into this case that are based on entirely different facts solely for the purpose of drawing out these proceedings. Instead, it seems that Jordan is simply seeking to assert his current claims against two new defendants. The court also cannot conclude that Jordan has acted in bad faith since his motion to amend appears to address some of the deficiencies of his earlier pleading. For all of these reasons, the court cannot conclude that any of the defendants will be prejudiced to the extent that the court allows the amendment. *See Howze v. Jones & Laughlin Steel Corp., 750 F.2d 1208, 1212 (3d Cir. 1984)* (noting that prejudice is the "touchstone" of this inquiry) (citing *Cornell & Co., Inc. v. Occupational Safety and Health Review Comm'n, 573 F.2d 820, 823 (3d Cir. 1978));* *Hill v. Equitable Bank, N.A., 109 F.R.D. 109, 112 (D. Del. 1985)* (same).

[*23]

1. The claim alleging denial of access to the courts.

As the court has previously explained, Jordan's claim that he was denied access to the courts as a result of the seizure of his legal materials fails as a matter of law because, given the underlying facts of this case, Jordan cannot prove that he suffered an actual injury, that is, an instance where he was actually denied access to the courts. *See* Section IV.A *supra*. Given the futility of the proposed amendment, the court will denial this portion of Jordan's motion to amend.

2. The claim alleging denial of due process.

It is does not appear that Jordan is attempting to assert his due process claim against Snyder. Instead, all of Jordan's allegations concerning Snyder involve the previous claim of denial of access to the courts. n10 To the extent that he is attempting to assert his due process claim against Snyder, Jordan has utterly failed to allege any facts which would indicate that the warden was personally involved in or aware the confiscation of Jordan's personal property or the events which occurred at the subsequent hearing. Because this claim would effectively be an attempt to hold Snyder liable purely on a [*24] *respondeat superior* basis, this portion of his motion to amend will be denied as futile. *See Gay v. Petsock, 917 F.2d 768, 771 (3d Cir. 1990); Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).*

---

n10 For example, in the motion to amend, Jordan states that he is "hereby charging . . . Snyder and . . . Reynolds with violating [his] First Amendment right of access to the courts." Jordan also contends that because the warden was named as a party in the habeas action, he "was mailed a copy of every motion filed . . . challenging [Jordan's] confinement." Therefore, Jordan contends, Snyder was "well aware of [his] concern[s about] his legal process" yet "did nothing to stop officials from violating" his constitutional rights.

Jordan also seeks leave to bring a due process claim against Reynolds. As previously explained, Jordan alleges that Reynolds withheld ruling on the confiscation of his radio until it could be determined whether the radio belonged to Jordan or another [*25] inmate. It is not clear whether this radio was ever returned. In any event, Jordan appears to be seeking damages for the time period during which he was deprived of his property interest in the item. Jordan has also claimed that, contrary to prison regulations, he was not afforded an opportunity to send his remaining contraband home.

However, even if the radio belonged to Jordan and even if Reynolds deprived Jordan of his property interest in this item without first affording him due process, Jordan has an adequate post-deprivation remedy. Specifically, he may bring a common law action for conversion against Reynolds. *See Austin, 893 F. Supp. at 454* ("To the extent he has any property interest in the . . . cigarettes he was denied, the plaintiff still has available a state court action for [this] deprivation. The existence of this remedy . . . forecloses [the p]laintiff's due process claim.") (citations omitted); *See also Murphy v. Collins, 26 F.3d 541, 543-44 (5th Cir. 1994)* (concluding that a prison's violation of its own notice and hearing policies did not violate an inmate's right to due process because he could bring an action for conversion [*26] in state court). Therefore, his due process claim fails as a matter of law. Consequently, while the court will allow Jordan to amend his complaint to assert a claim for conversion against Reynolds, the portion of Jordan's motion to amend which seeks to assert a due process claim against this individual will be denied as futile.

3. The amended complaint.

Finally, because the defendants have objected to the manner in which Jordan has moved to amend, the court will afford him fifteen days to file a revised amended pleading which plainly sets forth the basis for his unreasonable search and seizure claim against Bellinger, Burton, and Tailor as well as his conversion claim against these three defendants and Reynolds. *Cf.* [HN11] *Fed. R. Civ. P. 8(a)(2) (2000)* (requiring a plaintiff to set forth a "short and plain" statement showing that he is entitled to relief). In this revised pleading, Jordan shall also set forth the specific declaratory, monetary, and injunctive relief that he is seeking in this action. *See* [HN12] *Fed.*

R. Civ. P. 8(a)(3) (explaining that the complaint must contain a demand for judgment for the relief sought). The court will afford the defendants thirty days to answer or [*27] otherwise respond to Jordan's revised pleading.

F. Jordan's Discovery Requests.

Finally, Jordan has made a number of discovery requests. Given the nature of the court's ruling, several of these requests have become moot. n11 Therefore, the defendants' motion for a protective order will be granted in part. Nevertheless, substantial portions of Jordan's document requests and interrogatories seem directed at relevant and admissible evidence. At a minimum, these discovery requests appear to be reasonably calculated to lead tot he discovery of admissible evidence. *See* Fed. R. Civ. P. 26(b)(1) (2000).

> n11 For example, Jordan requests for "a copy of all of the steps that are being taken to provide [him] with the . . . legal documents" that were allegedly seized during the search of his cell. He also asks why the prison guards unscrewed the light fixtures in his cell when they conducted their search. He further seeks the identity of the person who "authorized the defendants to seize [his] legal documents."

[*28]

For example, Jordan asks for an official copy of the standard operating procedures which govern the conduct of correctional officers at the DCC. He has also asked for a copy of the disciplinary write up filled out by Burton and a copy of the list of items that were confiscated from his cell during the November 11, 1997 search. He further requests information concerning the radio which was seized during this search. In addition, he seeks information concerning how many boxes of personal items he is allowed to keep in his cell. Jordan has also propounded a number of interrogatories that relate to the manner in which his cell and his person were searched.

Because these discovery requests seek information which appears to be relevant and admissible or, at the very least, reasonably calculated to lead tot he discovery of admissible evidence, the court will deny this portion of the defendants' motion for a protective order. Nevertheless, given the volume of Jordan's discovery requests, the court will afford the defendants sixty days to respond.

V. CONCLUSION.

Jordan has failed to demonstrate that the seizure of his legal documents actually deprived him of his constitutional right [*29] of access to the courts. Therefore,

this particular claim will be dismissed and this portion of Jordan's motion to amend will be denied. Furthermore, because Jordan was afforded a post-deprivation hearing and because he still has available to him an action for the common law tort of conversion, his due process claim against Bellinger, Burton, and Tailor fails as a matter of law. Finally, the court cannot rule on Jordan's claims of unreasonable search and seizure at this stage of the proceedings since the record on this point is not fully developed. Consequently, the court will continue to exercise jurisdiction over this claim and supplemental jurisdiction over Jordan's common law claims of conversion. The court, however, will require Jordan to file an amended complaint which plainly sets forth these claims and the relief sought so that the defendants are properly put on notice of the causes of action which have been brought against them. Likewise, the court will require the defendants to respond to Jordan's discovery requests that seek information concerning the search of his cell and the items that were seized. The court will issue an order to this effect in conjunction with this [*30] opinion.

### ORDER

For the reasons stated in the court's memorandum opinion of this date, IT IS HEREBY ORDERED that:

1. The Defendants' Motion to Dismiss (D.I. 16) is GRANTED IN PART;

2. Plaintiff's claim that his constitutional right of access to the courts was violated by the seizure of his legal documents is DISMISSED;

3. Plaintiff's claim that his constitutional right of due process was violated by the confiscation of his personal property by Defendants Bellinger, Tailor, and Burton is DISMISSED;

4. Plaintiff's Motion to Amend (D.I. 26) is GRANTED IN PART and DENIED IN PART;

5. Within fifteen (15) days of the date of this order, Plaintiff shall file a revised amended complaint which, in accordance with Federal Rule of Civil Procedure 8(a), plainly sets forth the basis for his unreasonable search and seizure claim against Defendants Bellinger, Burton, and Tailor as well as his conversion claim against these three defendants and Reynolds;

6. Plaintiff's revised amended complaint shall also set forth the specific declaratory, monetary, and injunctive relief that Plaintiff is seeking in this action;

7. Within thirty (30) days of the date of this submission, Defendants [*31] shall answer or otherwise respond to the revised amended complaint;

8. Within sixty (60) days of the date of this order, Defendants shall file their responses to Item Nos. 1-8,

2000 U.S. Dist. LEXIS 19233, *

11, 13-15, 17-19, 21-23, 26-32 contained in Plaintiff's discovery request of March 29, 1999 (D.I. 14); and

9. Within sixty (60) days of the date of this order, Defendants shall file their responses to Item Nos. 1-12, 14, 16-27 contained in Plaintiff's discovery request of April 2, 1999 (D.I. 15).

Date: August 28, 2000

Gregory M. Sleet

UNITED STATES DISTRICT JUDGE



FILED
CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE 2000 PM 3: 35

NOVARTIS PHARMACEUTICALS          :
CORPORATION                       :
                                  :
          Plaintiff,              :
                                  :
     v.                           :
                                  :
ABBOTT LABORATORIES,              :     Civil Action No. 00-784-JJF
                                  :
          Defendant.              :
                                  :
                                  :
                                  :

## O R D E R

WHEREAS presently pending before the Court is a Motion To Strike Novartis' Responsive Claim Construction Brief, Or In The Alternative, Motion For Leave To File A Surreply Claim Construction Brief (D.I. 138) filed by Defendant Abbott Laboratories (hereinafter "Abbott") and a Motion For Leave To File A Reply Brief In Response To Defendant Abbott's Responsive And Surreply Claim Construction Briefs (D.I. 143) filed by Plaintiff Novartis Pharmaceuticals Corporation's (hereinafter "Novartis");

WHEREAS, the Court concludes that additional disputed terms are now in dispute;

WHEREAS, the parties have filed their proposed "Surreply" and "Reply" briefs as exhibits to their respective Motions (D.I. 138, Ex. A; D.I. 144, Ex. A) in violation of Local Rule 7.1.2 (c);

NOW THEREFORE, IT IS HEREBY ORDERED this _30_ day of February, 2002 that:

1) Abbott's Motion To Strike Novartis' Responsive Claim Construction Brief (D.I. 138-1) is **DENIED**;

2) Abbott's Motion For Leave To File A Surreply Claim Construction Brief (D.I. 138-2) is **GRANTED**;

3) Novartis' Motion For Leave To File A Reply Brief In Response To Defendant Abbott's Responsive And Surreply Claim Construction Briefs (D.I. 143) is **GRANTED**;

4) Abbott and Novartis shall formally file their respective "Surreply" and "Reply" briefs with the Court within ten (10) days of the date of this Order;

5) No further claim construction briefing will be permitted.


UNITED STATES DISTRICT JUDGE

LEXSEE



Caution
As of: Dec 27, 2006

**ROCKWELL TECHNOLOGIES, LLC, Plaintiff, v. SPECTRA-PHYSICS LASERS, INC. and OPTO POWER CORPORATION, Defendants.**

**C.A. No. 00-589 GMS**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

**2002 U.S. Dist. LEXIS 5180**

**March 26, 2002, Decided**

**DISPOSITION:** [*1] Plaintiff's motion for partial summary judgement was granted in part and denied in part. Plaintiff's request to file a further motion for summary judgment on inequitable conduct was denied.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff sued defendants, alleging that defendants infringed plaintiff's patented process for forming an epitaxial film of semiconductors, but defendants asserted that the patent was invalid based on the inequitable conduct of plaintiff in the prosecution of the patent application. Plaintiff moved for summary judgment with regard to the issue of inequitable conduct.

**OVERVIEW:** Defendants contended that the inventor and plaintiff's patent attorney failed to disclose material references to patented prior art which were cited by foreign patent offices in addressing plaintiff's foreign patent applications. Defendants' admitted that neither plaintiff itself, as a corporate entity, nor the declaration filed by the inventor during the patent process, were subject to allegations of inequitable conduct. However, factual issues required resolution concerning whether the undisclosed references were material and whether the inventor and the attorney had the requisite knowledge and intent to support a finding of inequitable conduct. Despite plaintiff's allegation that the inventor and the attorney were unaware of the prior art references, the citation of the references by the foreign patent offices raised at least inferences that the references were material and that the failure to disclose them was intentional.

**OUTCOME:** Plaintiff's motion for summary judgment was granted in part with regard to the alleged inequitable conduct on the part of the corporate plaintiff or the inventor's declaration, but the motion was denied with regard to the alleged inequitable conduct of the inventor and plaintiff's attorney.

**CORE TERMS:** patent, inequitable conduct, summary judgment, materiality, genuine, in-house, issues of material fact, reply brief, non-moving, inventor, partial, clear and convincing evidence, reasonable jury, moving party, reserved, procedural history, corporate entity, presently, prosecute, assessing

**LexisNexis(R) Headnotes**

*Civil Procedure > Summary Judgment > Standards > Legal Entitlement*
*Civil Procedure > Summary Judgment > Standards > Materiality*
*Civil Procedure > Summary Judgment > Supporting Materials > Affidavits*
[HN1] The court may grant summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

*Civil Procedure > Summary Judgment > Standards > Materiality*

[HN2] The court may grant summary judgment only if the moving party shows that there are no genuine issues of material fact that would permit a reasonable jury to find for the non-moving party. A fact is material if it might affect the outcome of the suit. An issue is genuine if a reasonable jury could possibly find in favor of the non-moving party with regard to that issue. In deciding the motion, the court must construe all facts and inferences in the light most favorable to the non-moving party.

*Patent Law > Inequitable Conduct > Effect, Materiality & Scienter > Effect of Inequitable Conduct*
[HN3] Patent applicants and their legal representatives have a duty to prosecute applications with candor, good faith, and honesty. Breach of this duty can lead to a finding that the applicant engaged in inequitable conduct before the United States Patent and Trademark Office. The effect of such inequitable conduct is to render the affected patent unenforceable.

*Evidence > Procedural Considerations > Burdens of Proof > Clear & Convincing Proof*
*Patent Law > Inequitable Conduct > Burdens of Proof*
*Patent Law > Inequitable Conduct > Effect, Materiality & Scienter > General Overview*
[HN4] In order to prove inequitable conduct, the defendants bear the burden of providing clear and convincing evidence that: (1) omitted or false information was material; (2) the applicant had knowledge of the existence and material nature of the information; and (3) the applicant intended to deceive the United States Patent and Trademark Office. Materiality and intent to deceive are distinct factual inquiries, and each must be shown by clear and convincing evidence. Information is considered material when there is a substantial likelihood that a reasonable examiner would have considered the information important in deciding whether to allow the application to issue as a patent. The court may infer intent from the facts and circumstances surrounding the applicant's overall conduct. However, in making its inferences, the court must be aware that, although the intent element of fraud or inequitable conduct may be proven by a showing of acts the natural consequence of which were presumably intended by the actor, this requires the fact finders to evaluate all the facts and circumstances in each case. Such an evaluation is rarely enabled in summary proceedings.

*Patent Law > Inequitable Conduct > Effect, Materiality & Scienter > General Overview*

[HN5] The failure to cite to the United States Patent and Trademark Office a material reference cited elsewhere in the world justifies a strong inference that the withholding was intentional.

**COUNSEL:** For ROCKWELL AUTOMATION TECHNOLOGIES, LLC, plaintiff: Steven J. Balick, Steven T. Margolin, Ashby & Geddes, Wilmington, DE.

For SPECTRA-PHYSICS LASERS, INC., OPTO POWER CORPORATION, defendants: William J. Marsden, Jr., Fish & Richardson, P.C., Wilmington, DE.

For ROCKWELL AUTOMATION TECHNOLOGIES, LLC, counter-defendant: Steven J. Balick, Steven T. Margolin, Ashby & Geddes, Wilmington, DE.

For SPECTRA-PHYSICS LASERS, INC., OPTO POWER CORPORATION, counter-claimants: William J. Marsden, Jr., Fish & Richardson, P.C., Wilmington, DE.

**JUDGES:** Gregory M. Sleet, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** Gregory Moneta Sleet

**OPINION:**

### MEMORANDUM AND ORDER

### I. INTRODUCTION

The plaintiff, Rockwell Technologies, LLC ("Rockwell") filed the above-captioned action against Spectra-Physics Lasers, Inc. ("Spectra") and Opto Power Corporation ("Opto") on June 16, 2000. In its complaint, Rockwell alleges that Spectra and Opto are infringing U.S. Patent No. 4,368,098 ("the '098 patent"). [*2]

Presently before the court is Rockwell's motion for partial summary judgment. In this motion, Rockwell asks the court to find that the '098 patent is not invalid due to alleged inequitable conduct that occurred in the prosecution of the patent application. For the reasons that follow, the court will grant this motion in part and deny it in part.

### II. STANDARD OF REVIEW

[HN1] The court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c); *see also Boyle v. County of Allegheny, Pennsylvania, 139 F.3d 386, 392*

2002 U.S. Dist. LEXIS 5180, *

(3d Cir. 1998). Thus, [HN2] the court may grant summary judgment only if the moving party shows that there are no genuine issues of material fact that would permit a reasonable jury to find for the non-moving party. *See Boyle*, 139 F.3d at 392. A fact is material if it might affect the outcome of the suit. *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)). [*3] An issue is genuine if a reasonable jury could possibly find in favor of the non-moving party with regard to that issue. *Id.* In deciding the motion, the court must construe all facts and inferences in the light most favorable to the non-moving party. *Id.; see also Assaf v. Fields*, 178 F.3d 170, 173-174 (3d Cir. 1999).

With these standards in mind, the court will describe the facts and procedural history that led to the motion presently before the court.

### III. BACKGROUND

#### A. Prosecution of the '098 Patent

The patent-in-suit relates to a process for forming "an epitaxial film of group III-V semiconductor disposed on a single crystal substrate." Dr. Harold Manasevit ("Manasevit") developed the process described in the '098 patent. On February 13, 1968, Rockwell filed a patent application with the United States Patent and Trademark Office ("PTO"). As the application contained both process and product claims, the PTO required that Rockwell choose one to proceed with first. Rockwell elected to give precedence to the product claims.

In 1978, Rockwell retained the law firm of Staas and Halsey to prosecute the Manasevit patent application [*4] with respect to the process claims. Jack Staas ("Staas") was the Staas and Halsey attorney primarily responsible for this prosecution. On April 7, 1978, Rockwell filed a divisional application seeking a patent for the process claims. This application issued as the '098 patent on January 11, 1983. It expired on January 11, 2000.

#### B. Alleged Prior Art

In 1957, Thomas R. Scott obtained patents from Japan (the "Japanese Scott patent") and the United Kingdom (the "UK Scott patent"). Spectra and Opto allege that the UK Scott patent came to the attention of Rockwell's in-house patent attorneys while Rockwell was prosecuting the Manasevit process patent application in Great Britain. In response to that application, the UK Patent Office identified the UK Scott patent and five other prior art references. The UK Patent Office directed Rockwell's attention to those references.

Rockwell's UK patent counsel informed Rockwell's in-house patent counsel Robert Rogers ("Rogers") of the UK Scott patent and the five other references on September 29, 1972. In response to the UK patent counsel's request on how to respond to that information, Rockwell employee Martin E. Gerry prepared [*5] detailed instructions for amending Rockwell's claims to avoid the cited references. The UK patent counsel subsequently informed Rogers that it was removing from the application the original prior art cited in the application because the UK Scott patent and the other references constituted "the closest prior art."

Rockwell also applied for a Japanese patent on Manasevit's invention. On that application, Rockwell listed Frederick Hamann ("Hamann") as its representative. Hamann supervised Rockwell's in-house patent department from 1970 to 1995. As in the prosecution of the UK patent application, Scott's work was cited against the Japanese patent application.

On June 18, 1974, the Japanese patent office issued a rejection against the pending claims in Rockwell's Japanese patent application. n1 Rockwell's Japanese patent counsel sent the rejection to Hamann on July 6, 1974, along with a discussion of the Japanese Scott patent. The Japanese counsel also sent Hamann a copy of this patent. Rockwell's in-house patent counsel G. Donald Weber ("Weber") responded by asking for an English abstract of the Japanese Scott patent. The Japanese patent counsel complied on August 8, 1974. Weber [*6] subsequently sent them instructions on how to amend Rockwell's Japanese claims in light of the Scott patent.

> n1 Spectra and Opto allege that the claims in Rockwell's Japanese patent application were substantively the same as the claims in the '098 patent.

#### C. Procedural History

On August 30, 1993, Rockwell brought an action against the United States in the United States Court of Federal Claims. In May 1995, Rockwell initiated an action against Spectra in the Northern District of California. Spectra then intervened in the Court of Federal Claims action as a third-party defendant. The Northern District of California stayed its action pending a resolution of that action.

In 1998, the United States and Rockwell settled. This settlement deprived the Claims Court of jurisdiction over the dispute between Rockwell and Spectra. Thus, on January 13, 1999, the Northern District of California court lifted its stay and reopened the matter. On July 24, 2001, the court denied Rockwell's motion for partial [*7] summary judgment on the issue of inequitable conduct.

Rockwell brought the present infringement action on June 16, 2000.

## IV. DISCUSSION

Spectra and Opto assert that the inventor, Dr. Harold M. Manasevit, and Rockwell's attorney Jack Staas were guilty of inequitable conduct by failing to disclose material references to the PTO. n2

n2 Spectra and Opto deny basing their inequitable conduct claims on the Rule 132 Declaration that Manasevit filed with the PTO (the "Manasevit Declaration") Further, in their opposition papers, Spectra and Opto state that they do not oppose the portion of Rockwell's summary judgment motion directed to the Manasevit Declaration. Likewise, they deny alleging that Rockwell itself, as a corporate entity, could be liable for inequitable conduct. Accordingly,

As an initial matter, Rockwell argues for the first time in its reply brief that Spectra and Opto failed to plead inequitable conduct with particularity in their answer to the complaint and have thus waived [*8] their right to assert this affirmative defense. However, Rockwell's tactic of reserving new arguments for its reply brief amounts to impermissible "sandbagging." See _Jordan v. Bellinger, 2000 U.S. Dist. LEXIS 19233,_ *18 (D. Del. April 28, 2000) (declining to address new arguments reserved for the reply brief); see also D. DEL. L.R. 7.1.3(c)(2) (1995). Accordingly, the court declines to address Rockwell's arguments on this issue and will turn instead to the substantive merits of the motion.

[HN3] Patent applicants and their legal representatives have a duty to prosecute applications with candor, good faith, and honesty. See _Molins PLC v. Textron, Inc., 48 F.3d 1172, 1178 (Fed. Cir. 1995)._ Breach of this duty can lead to a finding that the applicant engaged in inequitable conduct before the PTO. See _Life Tech., Inc. v. Clontech Lab., Inc., 224 F.3d 1320, 1324 (Fed. Cir. 2000)._ The effect of such inequitable conduct is to render the affected patent unenforceable. See _id._

[HN4] In order to prove inequitable conduct, the defendants bear the burden of providing clear and convincing evidence that: (1) omitted or false information was [*9] material; (2) the applicant had knowledge of the existence and material nature of the information; and (3) the applicant intended to deceive the PTO. See _Molins, 48 F.3d at 1178._ "Materiality and intent to deceive are distinct factual inquiries, and each must be shown by clear and convincing evidence." _Life Tech, 224 F.3d at 1324._ Information is considered material "when there is a substantial likelihood that a reasonable examiner would have considered the information important in deciding whether to allow the application to issue as a patent." _Molins, 48 F.3d at 1179._ The court may infer intent from the facts it is undisputed that only Manasevit's and counsel for Rockwell's conduct is at issue. and circumstances surrounding the applicant's overall conduct. See _Merck & Co. v. Danbury Pharmacal, Inc., 873 F.2d 1418, 1422 (Fed. Cir. 1989)._ However, in making its inferences, the court must be aware that "although the intent element of fraud or inequitable conduct may be proven by a showing of acts the natural consequence of which were presumably intended by the actor, this requires the fact finders to evaluate all [*10] the facts and circumstances in each case. Such an evaluation is rarely enabled in summary proceedings." _KangaROOS U.S. A., Inc. v. Caldor, Inc., 778 F.2d 1571, 1577 (Fed. Cir. 1985)_ (citation omitted).

In its moving papers, Rockwell declines to address the materiality of the Scott references. The Scott patents, however, were cited by foreign patent offices against Manasevit's process. This raises at least an inference that the references are material. See _Molins, 48 F.3d at 1180._ Further, Rockwell amended the claims in its foreign patents to overcome the Scott references. Accordingly, the court finds that there is a triable issue of fact with regard to the materiality of the Scott patents.

The court likewise concludes that granting summary judgment on the issue of intent would be improvident. Rockwell submits that Manasevit and Staas have each stated that they were unaware of the Scott patents. The Federal Circuit has stated, however, that [HN5] "failure to cite to the PTO a material reference cited elsewhere in the world justifies a strong inference that the withholding was intentional." _Molins, 48 F.3d at 1182._ Moreover, the court [*11] expresses concern over Rockwell's argument that the named inventor of the '098 patent, who is also the named inventor of the British and Japanese patents that were amended in light of the Scott patents, was not aware of the Scott patents.

When faced with a similar motion for summary judgment based on inequitable conduct with regard to these

parties, the District Court for the Northern District of California explicitly reserved judgment on whether the actions of Staas and his fellow Rockwell attorneys were inequitable. n3 See *Rockwell v. SDL, Inc.*, No. C-95-1729, at 12, n. 11 (N. D. Cal. July 24, 2000). That court further expressed a concern identical to that which the court has in the present case arising from Manasevit's failure to disclose the Scott patents to the PTO.

> n3 Based on the California court's denial of summary judgment on a similar issue, Spectra and Opto argue that Rockwell is now collaterally estopped from further litigating this issue. The court must disagree because a determination that there remain genuine issues of material fact is not a "final decision." *See* *Johnson v. Jones*, 515 U.S. 304, 313, 132 L. Ed. 2d 238, 115 S. Ct. 2151 (1995); *see also* *Whitford v. Boglino*, 63 F.3d 527, 530 (7th Cir. 1995) (stating that the denial of summary judgment is not a final judgement, but rather an interlocutory order in the *res judicata* context.)

[*12]

While mindful of the heavy burden the defendants bear, the court is persuaded that there remain substantial questions regarding Manasevit's and Staas's knowledge and intent that are better left to trial. *See* *Baker Oil Tools, Inc. v. Geo Vann, Inc.*, 828 F.2d 1558, 1566 (Fed. Cir. 1988) (noting that, "if the facts of materiality or intent are reasonably disputed the issue is not amenable to summary disposition.")

Finally, Rockwell requests leave to file a further motion for summary judgment on inequitable conduct. Rockwell contends that this is appropriate because it was waiting for Spectra's and Opto's expert reports assessing the materiality of additional prior art references that were allegedly not disclosed to the PTO. However, as Spectra and Opto argue, the references at issue are articles that Manasevit himself wrote. Manasevit's and Rockwell's own experts were surely capable of assessing the materiality of Manasevit's work. Accordingly, the court declines to grant Rockwell additional time to file a motion that could have been filed with the instant motion for summary judgment.

## V. CONCLUSION

The parties do not dispute that the corporate [*13] entity Rockwell is not being accused of inequitable conduct. Nor do they dispute that the charges of inequitable conduct are not based on the Manasevit Declaration. Thus, the court will grant Rockwell's motion with regard to these issues. However, there remain genuine issues of material fact with regard to the remaining inequitable conduct allegations.

For these reasons, IT IS HEREBY ORDERED that:

1. Rockwell's motion for partial summary judgement (D. I. 149) is GRANTED in part and DENIED in part.

2. Rockwell's request to file a further motion for summary judgment on inequitable conduct (D. I. 149) is DENIED.

Date: March 26, 2002

    Greogry M. Sleet

    UNITED STATES DISTRICT JUDGE

LEXSEE



Positive
As of: Dec 27, 2006

In Re: STUDENT FINANCE CORPORATION, Debtor. STUDENT FINANCE
CORPORATION, Plaintiff, v. ROYAL INDEMNITY CO., Defendant.

Civil Action No. 03-507 JJF

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

2004 U.S. Dist. LEXIS 4952

March 23, 2004, Decided

**PRIOR HISTORY:** [*1] Chapter 11, Bankruptcy Case
No. 02-11620, Adversary Proceeding No. No. 02-6803
LK.

**DISPOSITION:** Defendant's motion to dismiss granted
in part and denied in part.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff bankruptcy
debtor brought an adversary proceeding against defen-
dant insurer alleging, inter alia, fraud, negligent misrep-
resentation, breach of the duty of good faith and fair
dealing, and unjust enrichment and seeking rescission
and declaratory relief. The insurer moved to dismiss un-
der Fed. R. Civ. P. 9(b) and 12(b)(6).

**OVERVIEW:** The insurer provided the debtor with
credit risk insurance. The insurer announced that it was
leaving the credit risk insurance business but allegedly
assured the debtor that the insurer would issue one last
policy. The insurer then allegedly told the debtor that it
would issue the policy if the debtor provided the insurer
with promissory notes covering forbearance payments to
a third party. The debtor claimed that it complied with
the request but that the insurer did not issue the policy.
The court found that the fraud and negligent misrepre-
sentation claims did not satisfy Fed. R. Civ. P. 9(b), as
neither the speaker of the alleged misrepresentations nor
the facts allegedly withheld were identified. The debtor
did state a claim for fraud and negligent misrepresenta-
tion; the alleged assertions constituted more than mere
opinions as to probable future results. The debtor alleged

bad faith in negotiation, so there could be no breach of
the duty of good faith and fair dealing. As the debtor
sought to rescind the promissory notes, it adequately
pleaded unjust enrichment, and the complaint adequately
stated claims for rescission and declaratory relief based
on fraudulent inducement.

**OUTCOME:** The insurer's motion to dismiss was
granted as to the claims for fraud, negligent misrepresen-
tation, and breach of the duty of good faith and fair deal-
ing. The motion was otherwise denied.

**CORE TERMS:** sfc, justifiable reliance, misrepresenta-
tion, fraudulent, unjust enrichment, fair dealing, omis-
sions, inducement, pled, negligent misrepresentation,
particularity, funding, speaker, insurance policy, securiti-
zation, facts sufficient, declaratory judgment, motion to
dismiss, insurance business, rescission, forbearance, al-
legations of fraud, standard of review, written contract,
borrow money, reply brief, disclosure, retention, scienter,
survive

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Pleadings >
Heightened Pleading Requirements > Fraud Claims*
[HN1] Fed. R. Civ. P. 9(b) requires a party alleging fraud
or mistake to plead with particularity the circumstances
constituting its claims. The intent behind Rule 9(b) is to
give defendants notice of the claims against them and to
reduce the number of frivolous actions. Rule 9(b) does
not require the recitation of every material detail of the

fraud such as date, location and time; however, plaintiffs must use alternative means of injecting precision and some measure of substantiation into their allegations of fraud.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims*
[HN2] A motion to dismiss tests the legal sufficiency of the complaint. In reviewing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), courts must accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom. A court will grant a motion to dismiss only when it appears that a plaintiff could prove no set of facts that would entitle him or her to relief.

*Civil Procedure > Pleading & Practice > Pleadings > Heightened Pleading Requirements > General Overview*
[HN3] Fed. R. Civ. P. 9(b) requires, at a minimum, that the plaintiff identify the speaker of the fraudulent statements.

*Civil Procedure > Pleading & Practice > Pleadings > Heightened Pleading Requirements > General Overview*
*Torts > Business Torts > Fraud & Misrepresentation > Negligent Misrepresentation > Elements*
[HN4] Although courts cannot expect plaintiffs to have access to information sufficient to satisfy a detailed application of Fed. R. Civ. P. 9(b) in all cases, where a plaintiff does not contend that information it needs to satisfy Rule 9(b)'s particularity requirements is exclusively within the defendant's control, the plaintiff gives the court no reason to relax the normally rigorous particularity rule based upon lack of knowledge or control.

*Civil Procedure > Pleading & Practice > Motion Practice > Content & Form*
*Governments > Courts > Rule Application & Interpretation*
[HN5] See U.S. Dist. Ct., D. Del, R. 7.1.3.

*Civil Procedure > Pleading & Practice > Motion Practice > Content & Form*
[HN6] The practice of reserving arguments for reply briefs amounts to impermissible "sandbagging."

*Torts > Business Torts > Fraud & Misrepresentation > Negligent Misrepresentation > General Overview*
*Torts > Negligence > Defenses > Contributory Negligence > Limits on Application > Intentional Torts*
[HN7] Under Delaware law, to state a claim of common law fraud a plaintiff must plead: (1) a false representation made by the defendant, usually one of fact; (2) the defendant's knowledge or belief that the statement was false; (3) an intent to induce the plaintiff to act; (4) the plaintiff's justifiable reliance upon the representation; and (5) damage to the plaintiff as a result. The only difference between an action for fraud and negligent misrepresentation is that, with a claim of negligent misrepresentation, the plaintiff need not plead that the defendant knew or believed that his or her statement was false or that he or she proceeded in a reckless disregard for the truth.

*Torts > Business Torts > Fraud & Misrepresentation > General Overview*
[HN8] Under Delaware law, opinions and statements as to probable future results are not generally fraudulent even though they relate to material matters.

*Torts > Business Torts > Fraud & Misrepresentation > General Overview*
[HN9] In order to plead justifiable reliance based on a statement of intention, a plaintiff must allege facts demonstrating that the intention is material and the recipient has reason to believe that it will be carried out.

*Governments > Fiduciary Responsibilities*
*Torts > Business Torts > Fraud & Misrepresentation > Negligent Misrepresentation > General Overview*
[HN10] In Delaware, a duty to speak may arise from circumstances other than a fiduciary or confidential relationship.

*Governments > Fiduciary Responsibilities*
*Torts > Business Torts > Fraud & Misrepresentation > General Overview*
[HN11] A party to a business transaction has a duty to exercise reasonable care to disclose: (1) information known due to the existence of a confidential or fiduciary relationship; (2) information that if undisclosed will cause its partial statements of facts to be misleading; or (3) facts basic to the transaction if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those

facts. A duty to speak may arise from a pre-existing relationship between the parties or from a partial disclosure of facts that requires further disclosure to prevent a misleading impression.

*Contracts Law > Contract Interpretation > Good Faith & Fair Dealing*
*Contracts Law > Types of Contracts > Covenants*
[HN12] Delaware courts recognize an implied covenant in contracts requiring the parties to act with good faith toward the other party with respect to their contract. A party must act reasonably to fulfill the intent of the parties to the agreement.

*Contracts Law > Contract Interpretation > Good Faith & Fair Dealing*
[HN13] Complaints about a defendant's bad faith in bargaining or negotiation do not fall within the scope of the duty of good faith and fair dealing in contracts. The duty of good faith is not imposed on parties until they have reached agreement and does not bind them during their earlier negotiations.

*Contracts Law > Remedies > Equitable Relief > General Overview*
[HN14] Under Delaware law, unjust enrichment is the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience. The elements of unjust enrichment are: (1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and the impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law.

*Contracts Law > Defenses > Fraud & Misrepresentation > General Overview*
*Contracts Law > Remedies > Rescission & Redhibition > General Overview*
[HN15] Delaware law recognizes fraudulent inducement as one means by which a party may rescind an agreement. The elements of fraudulent inducement are (1) a false statement or misrepresentation; (2) that the defendant knew was false or made with reckless indifference to the truth; (3) the statement induced the plaintiff to enter the agreement; (4) the plaintiff's reliance was reasonable; and (5) the plaintiff was injured as a result.

**COUNSEL:** L. Jason Cornell, Esquire of FOX ROTHSCHILD LLP, Wilmington, Delaware.

Of Counsel: Hal Baume, Esquire of FOX ROTHSCHILD LLP, Lawrenceville, New Jersey.

David A. Gradwohl, Esquire, Andrew W. Bonekemper, Esquire, and Anthony P. DeMichele, Esquire of FOX ROTHSCHILD LLP, Lansdale, Pennsylvania, Attorneys for Plaintiff/Debtor Student Finance Corporation.

Lawrence C. Ashby, Esquire, Philip Trainer, Jr., Esquire, and Gregory A. Taylor, Esquire of ASHBY & GEDDES, Wilmington, Delaware. Of Counsel: Michael H. Barr, Esquire, Peter D. Wolfson, Esquire, and Kenneth J. Pfaehler, Esquire of SONNENSCHEIN NATH & ROSENTHAL, New York, New York.

Alan S. Gilbert, Esquire of SONNENSCHEIN NATH & ROSENTHAL, Chicago, Illinois, Attorneys for Defendant Royal Indemnity Company.

**JUDGES:** JOSEPH [*2]  J. FARNAN, JR., UNITED STATES DISTRICT JUDGE.

**OPINION BY:** JOSEPH J. FARNAN, JR.

**OPINION:** Wilmington, Delaware

**Farnan, District Judge.**

Presently before the Court is Defendant Royal Indemnity Company's ("Royal") Motion To Dismiss. (D.I. 6.) n1 For the reasons set forth below, the Court will grant in part and deny in part Royal's Motion.

> n1 The docket item numbers referenced herein are the docket items in the adversary proceeding Student Finance Corporation v. Royal Indemnity Co., Adversary Proceeding Number 02-06803 LK.

**BACKGROUND**

This is an adversary proceeding arising from the Chapter 11 bankruptcy filing In re Student Finance Corporation. The parties to this adversary proceeding stipulated to the withdrawal of the reference to the bankruptcy court, which was granted by Chief Judge Robinson. The instant action was subsequently assigned to this Court.

Student Finance Corporation ("SFC") engages in the origination and purchasing of student loans, primarily for truck driving school students. [*3]  n2 SFC, along with its affiliates, obtained funds to purchase and originate student loans from warehouse lines of credit provided by the Wilmington Trust Co. and PNC Bank. Once SFC exhausted these warehouse lines of credit, SFC and its

affiliates packaged loans it purchased or originated into portfolios and sold them on the secondary market (the "securitizations") to financial institutions or insurance companies. To continue selling its portfolios on the secondary market, SFC required credit risk insurance which it obtained from AIG. In 1999, AIG discontinued this line of insurance. Thereafter, SFC obtained credit risk insurance from Royal.

> n2 As the instant motion is a motion to dismiss, the Court has taken the facts from SFC's Complaint.

Royal continued to provide SFC with credit risk insurance for its securitizations through November of 2001. In December of 2001, SFC alleges that Royal verbally agreed to issue it one more credit risk insurance policy. In February of 2002, Royal was told by its parent company [*4] to discontinue issuing credit risk insurance. Royal subsequently announced that it was exiting the credit risk insurance business; however, SFC alleges that Royal assured it that Royal would issue one last policy. SFC alleges that Royal later stated that it would only consider doing so if SFC executed two promissory notes (the "Notes") whereby SFC agreed to borrow approximately twelve million dollars from Royal that would be used to make forbearance payments to Wells Fargo, who was the trustee of the securitizations. All the proceeds of the Notes went directly to Wells Fargo.

SFC alleges that after it complied with Royal's request Royal never issued SFC the credit risk insurance policy as promised. SFC alleges that, in reliance on Royal's promises, it continued to approve and fund student loans. In its Complaint (D.I. 1), SFC asserts six claims against Royal. This is Royal's Motion to Dismiss Counts I and II pursuant to Rule 9(b) and Counts I-VI pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### STANDARDS OF REVIEW

#### I. Rule 9(b)

Rule 9(b) [HN1] requires a party alleging fraud or mistake to plead with particularity the circumstances [*5] constituting its claims. Fed. R. Civ. P. 9(b). The intent behind Rule 9(b) is to give defendants notice of the claims against them and to reduce the number of frivolous actions. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1418 (3d Cir. 1997). Rule 9(b) does not require the recitation of "every material detail of the fraud such as date, location and time[; however,] plaintiffs must use 'alternative means of injecting precision and some measure of substantiation into their allegations

of fraud.'" In re Rockefeller Ctr. Props. Secs. Litig., 311 F.3d 198, 216 (3d Cir. 2002) (quoting In re Nice Sys., 135 F. Supp. 2d 551, 557 (D. N.J. 2001)).

#### II. Rule 12(b)(6)

[HN2] A motion to dismiss tests the legal sufficiency of the complaint. Conley v. Gibson, 355 U.S. 41, 45, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957). In reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, courts "must accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom." Langford v. City of Atlantic City, 235 F.3d 845, 847 (3d Cir. 2000). [*6] A court will grant a motion to dismiss only when it appears that a plaintiff could prove no set of facts that would entitle him or her to relief. Id.

### DISCUSSION

#### I. Whether SFC Has Pled With Particularity Fraud And Negligent Misrepresentation

Royal contends that Counts I, negligent misrepresentation, and II, fraud, of SFC's Complaint should be dismissed because SFC has failed to plead these claims with particularity as required by Rule 9(b). Royal contends that SFC's Complaint does not identify the speaker of the alleged misrepresentations nor, with one exception, to whom the false statements were made. Royal also contends that SFC asserts only generalized and conclusory descriptions of misrepresentations made by Royal. SFC responds that the Rule 9(b) standard is generous in the Third Circuit and that its allegations of fraud and negligent misrepresentation satisfy Rule 9(b)'s requirements. In addition, SFC requests, in the event the Court agrees with Royal, that it be granted leave to amend its Complaint.

After reviewing the Complaint in light of the Rule 9(b) standards recited above, the Court concludes that SFC has failed to satisfy the pleading requirements of [*7] Rule 9(b). Nowhere in its Complaint does SFC identify the speaker of Royal's alleged misrepresentations. This is a failure to satisfy the particularity requirements of Rule 9(b). See Klein v. Gen. Nutrition Co., Inc., 186 F.3d 338, 345 (3d Cir. 1999)(stating that Rule 9(b) [HN3] "requires, at a minimum, that the plaintiff identify the speaker of the fraudulent statements.") Although SFC contends that, according to Brown v. SAP America, Inc., 1999 U.S. Dist. LEXIS 15525, 1999 WL 803888 (D. Del. Sept. 13, 1999), a plaintiff need not identify the speaker of the alleged misrepresentation to satisfy Rule 9(b)'s requirements, to the extent Brown's holding conflicts with Klein v. General Nutrition Co., Inc., the Court declines to extend Brown to the facts in this case. See also FDIC v. Bathgate, 27 F.3d 850, 876

(3d Cir. 1994)(holding that a failure to identify the speaker of alleged misrepresentations amounted to a failure to satisfy Rule 9(b)); Liafail, Inc. v. Learning 2000, Inc., 2002 U.S. Dist. LEXIS 22620, 2002 WL 31667861, at *4 (D. Del. Nov. 25, 2002).

The Court also concludes that SFC's allegations of material omissions fail to satisfy Rule 9(b)'s pleading requirements. [*8] SFC bases, in part, its fraud and negligent misrepresentation claims on material omissions by Royal, yet never identifies what facts withheld by Royal induced SFC to act. Moreover, [HN4] although courts cannot expect plaintiffs to have access to information sufficient to satisfy a detailed application of Rule 9(b) in all cases, in the instant case, SFC does not contend that information it needs to satisfy Rule 9(b)'s particularity requirements is exclusively within Royal's control. See FDIC, 27 F.3d at 876. Therefore, SFC has given the Court no reason to relax "the normally rigorous particularity rule" based upon lack of knowledge or control. Burlington, 114 F.3d at 1418. Accordingly, to the extent Counts I and II of SFC's Complaint are based on material omissions by Royal, the Court concludes that SFC has failed to satisfy Rule 9(b). n3

n3 Royal also contends that Brug v. The Enstar Group, Inc., 755 F. Supp. 1247 (D. Del. 1991), and Brown v. The Buschman Co., 2002 U.S. Dist. LEXIS 4087, 2002 WL 389139 (D. Del. 2002), compel the Court to dismiss Counts I and II of SFC's Complaint for failure to adequately plead scienter. Because the Court concludes that Brug and Brown are distinguishable from the facts in this case, the Court disagrees. The plaintiffs in Brug and Brown made only general averments, without any supporting facts, of intent or scienter. Brug, 755 F. Supp. at 1254-55; Brown, 2002 U.S. Dist. LEXIS 4087, 2002 WL 389139, at *8. Therefore, the Brug and Brown courts concluded that they had no choice but to dismiss the plaintiffs' claims. In this case, however, SFC has identified facts by which the Court infers intent. In paragraphs 31 and 33 of its Complaint (D.I. 1), SFC alleges that Royal indicated that it would extend additional credit risk insurance following its announcement that it was leaving the credit risk insurance business if SFC would agree to borrow money from Royal to be used in making forbearance payments to Wells Fargo. SFC alleges that it complied with Royal's condition, but that Royal never extended additional credit risk insurance. The Court concludes that these facts are sufficient by which to infer intent or scienter.

[*9]

In sum, the Court concludes that Counts I and II of SFC's Complaint fail to satisfy the pleading requirements of Rule 9(b). n4

n4 In its reply brief (D.I. 18), Royal contends for the first time that all of SFC's claims are based on allegations of fraud, and therefore, if the Court finds that SFC has failed to properly plead Counts I and II, then all of SFC's claims must be dismissed. Without addressing the merits of Royal's arguments, the Court concludes that Royal is not entitled to dismissal of the remaining claims of SFC's Complaint on Rule 9(b) grounds.

Rule 7.1.3 of the Local Rules for the District of Delaware ("Local Rule 7.1.3") provides that [HN5] "the party filing the opening brief shall not reserve material for the reply brief which should have been included in a full and fair opening brief." D. Del. L.R. 7.1.3(c)(2). [HN6] The practice of reserving arguments for reply briefs "amounts to impermissible 'sandbagging.'" Rockwell Techs. LLC v. Spectra-Physics Lasers, Inc., 2002 U.S. Dist. LEXIS 5180, 2002 WL 531555 (D. Del. March 26, 2002)(quoting Jordan v. Bellinger, 2000 U.S. Dist. LEXIS 19233, *18 (D. Del. April 28, 2000)). By waiting until its reply brief to assert that all of SFC's claims should be dismissed pursuant to Rule 9(b), Royal has violated Local Rule 7.1.3. Accordingly, the Court rejects Royal's attempt to dismiss SFC's remaining claims under Rule 9(b).

[*10]

## II. Whether Counts I-VI State A Claim Upon Which Relief May Be Granted

A. Counts I And II, Negligent Misrepresentation And Fraud

[HN7] Under Delaware law, to state a claim of common law fraud a plaintiff must plead: 1) a false representation made by the defendant, usually one of fact; 2) the defendant's knowledge or belief that the statement was false; 3) an intent to induce the plaintiff to act; 4) the plaintiff's justifiable reliance upon the representation; and 5) damage to the plaintiff as a result. Stephenson v. Capano Dev., Inc., 462 A.2d 1069, 1074 (Del. 1983). The only difference between an action for fraud and negligent misrepresentation is that, with a claim of negligent misrepresentation, the plaintiff need not plead that the defendant knew or believed that his or her statement was false or that he or she proceeded in a reckless disregard

for the truth. Id. By its Motion, Royal seeks to dismiss Counts I and II for failure to plead elements 1, 4, and 5.

1. Statement Of A Material Fact

Royal contends that SFC has not adequately pled the existence of a material fact because the statements SFC alleges were false or negligent concern future [*11] undertakings. (D.I. 7 at 8.) SFC responds that the Court should not be persuaded by Royal's arguments because a claim for fraud may be based upon statements of future results.

[HN8] Under Delaware law, "opinions and statements as to probable future results are not generally fraudulent even though they relate to material matters." Esso Standard Oil Co. v. Cunningham, 35 Del. Ch. 210, 114 A.2d 380, 383 (Del. Ch. 1955); Craft v. Bariglio, 1984 Del. Ch. LEXIS 421, 1984 WL 8207, at *8 (Del. Ch. March 1, 1984). Applying this principle and the Rule 12(b)(6) standard of review to the allegations in SFC's Complaint, the Court concludes that it would be premature to dismiss Counts I and II for failure to plead a material fact.

In its Complaint, SFC alleges that after Royal made a public announcement that it was leaving the credit risk insurance business, "Royal continued to represent to SFC that one more policy would be issued to SFC." (D.I. 1 at P 31) (emphasis added). Further, SFC alleges that Royal contacted SFC's CEO and "told him that Royal would consider providing credit risk insurance for another securitization if SFC agreed to borrow money from Royal to be used to make 'forbearance [*12] payments' to Wells Fargo." Id. at P 33. Taken as true, SFC's assertions constitute more than mere "opinions and statements as to probable future results." See Esso Standard, 114 A.2d at 383. Thus, the Court concludes that the combined effect on SFC of Royal's statements of intent to issue a new policy suffice, for the purposes of this Motion, to plead the existence of misstatements or negligent misrepresentations made to induce SFC to borrow money from Royal.

2. Justifiable Reliance

Royal contends that SFC has not pled justifiable reliance because, in the circumstances of this case, a reasonable person would not have relied upon a verbal commitment that Royal would issue an additional credit risk insurance policy. In response, SFC contends that its reliance upon Royal's misrepresentations was justifiable because, unlike the precedent relied upon by Royal, in this case there was no written agreement between the parties that made Royal's oral assurances unworthy of SFC's reliance.

Delaware courts follow the Restatement's definition of justifiable reliance. See Lock v. Schreppler, 426 A.2d 856, 863 (Del. Super. 1981), superceded by statute [*13] in part on other grounds as stated in, Amato & Stella Assoc. v. Florida North Inv., Ltd., 678 F. Supp. 445, 448 (D. Del. 1988). [HN9] In order to plead justifiable reliance based on a statement of intention, a plaintiff must allege facts demonstrating that "the intention is material and the recipient has reason to believe that it will be carried out." Restatement (Second) of Torts § 544 (1977). Applying these standards to SFC's Complaint, the Court concludes that SFC has adequately pled justifiable reliance in order to survive dismissal.

Royal directs the Court to Debakey Corp. v. Raytheon Service Co., 2000 Del. Ch. LEXIS 129, 2000 WL 1273317 (Del. Ch. Aug. 25, 2000), for support of its contention that SFC failed to adequately plead justifiable reliance. n5 In Debakey, the plaintiff sued for fraudulent inducement because of an oral promise by defendants that they would provide funding in excess of $ 2 million to the parties' joint venture. 2000 Del. Ch. LEXIS 129, 2000 WL 1273317, at *22. A subsequent written contract, however, stated that the defendants had the right to unilaterally decide not to extend funding once the $ 2 million limit was reached. [*14] Id. Once the $ 2 million limit was reached, the defendants declined to extend the plaintiffs additional funding. Id.

n5 Royal does not contest that the statements at issue are material.

Following a bench trial, the Debakey court concluded that the written contract precluded the plaintiff from establishing justifiable reliance. Id. The court reasoned that reliance on the defendants' prior oral representations that they would provide funding in excess of $ 2 million when a subsequent express contract "unambiguously" permitted the defendants to terminate the joint venture "once the $ 2 million funding limit was reached" was unreasonable. Id.

The Court concludes that Debakey is both factually and procedurally distinguishable from the instant case. Here, unlike Debakey, there is no express contract that would make SFC's reliance on Royal's oral representations unjustifiable. Further, the Debakey court reached its conclusions after a bench trial and post-trial briefing, clearly not [*15] subject to the liberal 12(b)(6) standard of review. When reviewing SFC's Complaint under the correct standard of review, the Court concludes that SFC has adequately pled justifiable reliance. As noted above, SFC alleges that Royal made two statements to it indicating Royal's intent to issue a new credit risk insurance policy. (D.I. 1 at P 31, 33.) Further, SFC alleges that Royal made these two representations following Royal's public announcement that it was exiting the credit risk

insurance business (D.I. 1 at P 29), thereby justifying SFC's belief that Royal would issue one more policy despite its announcement.

Based on these allegations, the Court cannot conclude that SFC could prove no set of facts establishing justifiable reliance. See Langford, 235 F.3d at 47. Accordingly, the Court will deny Royal's Motion to Dismiss Counts I and II for failure to plead justifiable reliance.

3. Damages

The Court is not persuaded by Royal's contention that SFC has failed to plead damages as a result of Royal's allegedly fraudulent and negligent misrepresentations. In paragraph 36, SFC alleges that it borrowed over $ 12 million from Royal "that provided no benefit to SFC. [*16] " (D.I. 1.) Further, in paragraph 45, SFC alleges that based on Royal's misrepresentations, Royal continued to receive pecuniary benefits that it was not entitled to from SFC's business. Id. Based on these allegations, the Court concludes that SFC has pled damages that are a consequence of Royal's alleged misrepresentations and false statements.

4. Duty To Speak

Royal also contends that SFC has failed to state a claim of fraud or negligent misrepresentation because, to the extent SFC bases Counts I and II on material omissions by Royal, SFC has not alleged that Royal had a duty to speak. [HN10] In Delaware, a duty to speak may arise from circumstances other than a fiduciary or confidential relationship. See Matthews Office Designs, Inc. v. Taub Invs., 1994 Del. LEXIS 182, [reported in full-text format at] 647 A.2d 382 (Del. 1993) (relying on the Restatement (Second) of Torts § 551(2) (1976) for the circumstances in which a duty to speak may arise). In relevant part, the Restatement (Second) of Torts § 551 provides that [HN11] a party to a business transaction has a duty to exercise reasonable care to disclose: 1) information known due to the existence of [*17] a confidential or fiduciary relationship; 2) information that if undisclosed will cause its partial statements of facts to be misleading; or 3) facts basic to the transaction "if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts." Id.; see also Mentis v. Delaware Am. Life Ins. Co., 1999 Del. Super. LEXIS 419, 1999 WL 744430 (Del. Super. July 28, 1999) (holding that a duty to speak may arise from a pre-existing relationship between the parties or from a partial disclosure of facts that requires further disclosure to prevent a misleading impression) (citations omitted).

Royal moves to dismiss Counts I and II only on the basis that SFC has not alleged the existence of a confidential or fiduciary relationship between the parties. Therefore, the Court will deny Royal's Motion because Royal has not established, under all the circumstances articulated by Section 551 of the Restatement (Second) of Torts, that SFC has failed to plead facts sufficient to establish a duty [*18] to speak.

B. Count III, Breach of the Duty Of Good Faith And Fair Dealing

Royal contends that Count III of SFC's Complaint, breach of the duty of good faith and fair dealing, should be dismissed because there was no contract by which a covenant of good faith and fair dealing may be implied. In response, SFC contends that it has alleged facts sufficient to support its breach of the duty of good faith and fair dealing claim because the case Royal relies upon implied a covenant of good faith and fair dealing before the execution of any written contract. Further, SFC contends that part of its good faith and fair dealing claim involves actions that took place after the Notes were executed.

[HN12] Delaware courts recognize an implied covenant in contracts requiring the parties to act with good faith toward the other party with respect to their contract. Katz v. Oak Indus. Inc., 508 A.2d 873, 880 (Del. Ch. 1986)(citing Restatement (Second) of Contracts, § 205 (1981)). A party must "act reasonably to fulfill the intent of the parties to the agreement." Gloucester Holding Corp. v. U.S. Tape & Sticky Prods., LLC, 832 A.2d 116, 128 (Del. Ch. 2003) [*19] (quoting Kelly v. McKesson HBOC, Inc., 2002 Del. Super. LEXIS 39, 2002 WL 88939 at *10 (Del. Super. Jan. 16, 2002)). Applying these principles to the allegations in SFC's Complaint, the Court will grant Royal's Motion to Dismiss SFC's claim for breach of the duty of good faith and fair dealing.

SFC contends that it has sufficiently alleged a claim for breach of the duty of good faith and fair dealing because it alleged in its Complaint that "at the time the parties negotiated the Notes, SFC reasonably expected Royal to issue the new policy based on Royal's misrepresentations and omissions." (D.I. 14 at 21.) SFC alleges that its reasonable expectations are based upon Royal's representations to SFC's CEO that Royal would consider providing additional credit risk insurance for another securitization if SFC executed the Notes that Royal would use to make forbearance payments to Wells Fargo. (D.I. 1 at P 33.) SFC further alleges that it executed the Notes requested by Royal, but that Royal never fulfilled its promise to issue a new credit risk insurance policy. Id. at P 59-60.

The Court concludes that SFC's allegations are [HN13] complaints about Royal's bad faith in bargaining or negotiation, and [*20] therefore, do not fall within the scope of the duty of good faith and fair dealing in contracts. See Restatement (Second) of Contracts § 205 comment (c) (1981). "The duty of good faith is ... not imposed on parties until they have reached agreement and does not bind them during their earlier negotiations." E. Allen Farnsworth, 2 Farnsworth on Contracts § 7.17 (2d ed. 2001). SFC's allegations involve contract invalidating claims dealing with fraudulent inducement or fraud, not breach of the duty of good faith and fair dealing. Accordingly, the Court will grant Royal's Motion to Dismiss Count III of SFC's Complaint for failure to state a claim upon which relief may be granted on grounds of breach of the duty of good faith and fair dealing.

C. Count IV, Unjust Enrichment

Royal contends that Count IV, unjust enrichment, should be dismissed because payment of the loan proceeds was carried out as contemplated by the parties. Further, Royal contends that because unjust enrichment is a quasi-contract claim, it is not available when, as here, an express contract covers the same subject matter. SFC responds that it has sufficiently pled [*21] an action for unjust enrichment because actions for unjust enrichment are permitted when the validity of a contract is challenged, as in the instant case.

[HN14] "Unjust enrichment is 'the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience." Total Care Physicians, P.A. v. O'Hara, 798 A.2d 1043, 1056 (Del. Super. 2001)(quoting Fleer Corp. v. Topps Chewing Gum, Inc., 539 A.2d 1060, 1062 (Del. 1988)). "'The elements of unjust enrichment are: (1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and the impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law.'" Id. (quoting Jackson Nat'l Life Ins. Co. v. Kennedy, 741 A.2d 377, 393 (Del. Ch. 1993). Applying these principles to the facts alleged in SFC's Complaint, the Court concludes that SFC has adequately alleged facts in support of its unjust enrichment claim to survive Royal's Motion to Dismiss.

The Court is not persuaded by Royal's contention that SFC may not maintain a claim for unjust enrichment [*22] because the parties executed documents, i.e. the Notes, providing for payment to Wells Fargo. Although the Court agrees with the general contract principle cited by Royal, in this case, SFC alleges that the Notes should be rescinded because of fraudulent statements and omissions made by Royal. Therefore, accepting SFC's factual allegations, the Court concludes that SFC's unjust en-

richment claim must survive the instant motion because if the Notes are rescinded due to fraudulent conduct or omissions, there is no valid contract that would preclude SFC's unjust enrichment theory.

Further, the Court rejects Royal's assertion that SFC has failed to allege that Royal received any unjust retention of a benefit. Royal contends that because the parties specifically contemplated that the proceeds from the Notes would be paid to Wells Fargo, SFC cannot now complain of any unfairness that may have resulted from that agreement. SFC is not, however, merely complaining that Wells Fargo received the benefit of the proceeds of the Notes; instead, SFC asserts that Royal was unjustly enriched because Royal induced SFC to act by making promises Royal never intended to keep. Accordingly, the Court will [*23] deny Royal's Motion to Dismiss Count IV.

D. Counts V, Rescission, and VI, Declaratory Judgment

Royal contends that Counts V, rescission, and VI, declaratory judgment, should be dismissed because these claims are based upon previous paragraphs in the Complaint that are defective for reasons it stated with respect to Counts I-IV. The Court disagrees.

[HN15] Delaware law recognizes fraudulent inducement as one means by which a party may rescind an agreement. Norton v. Poplos, 443 A.2d 1, 4 (Del. 1982). The elements of fraudulent inducement are 1) a false statement or misrepresentation; 2) that the defendant knew was false or made with reckless indifference to the truth; 3) the statement induced the plaintiff to enter the agreement; 4) the plaintiff's reliance was reasonable; and 5) the plaintiff was injured as a result. Lord v. Souder, 748 A.2d 393, 402 (Del. 2000) (citing Stephenson, 462 A.2d at 1074.

The Court concludes that SFC has alleged facts sufficient to support its claim for rescission due to fraudulent inducement. In its Complaint, SFC alleges that Royal knew that representations and omissions it made to SFC were false, that [*24] it acted reasonably in reliance on these representations, and that it was injured. (D.I. 1 at P 30-36.) These allegations support a claim for rescission due to fraudulent inducement. n6

n6 As noted above, the Court has concluded that SFC's Complaint, for the purposes of the Rule 12(b)(6) Motion, alleges a material fact, justifiable reliance, and the damages elements of an action for fraud.

The Court also concludes that SFC has alleged facts sufficient to support its declaratory judgment claim. Count VI of SFC's Complaint asserts that SFC is entitled to a declaratory judgment that the Notes are null and void because it was fraudulently induced into their execution. As the Court has concluded, SFC has alleged facts adequate to support a claim for fraudulent inducement, and therefore, the Court will deny Royal's Motion to Dismiss Count VI of SFC's Complaint.

### CONCLUSION

For the reasons discussed, the Court concludes that Counts I and II of SFC's Complaint do not satisfy Rule 9(b)'s pleading requirements, [*25] and therefore, must be dismissed. Further, the Court concludes that Count III of SFC's Complaint must be dismissed pursuant to Rule 12(b)(6). The Court also concludes that Counts I, II, and IV-VI state a claim for which relief may be granted.

An Order consistent with this Opinion will be entered.

### ORDER

At Wilmington, this 23rd day of March, 2004, for the reasons discussed in the Opinion issued this date;

NOW THEREFORE, IT IS HEREBY ORDERED that:

1) Royal Indemnity Co.'s ("Royal") Motion to Dismiss (D.I. 6) Counts I and II of Student Finance Corporation's ("SFC") Complaint pursuant to Rule 9(b) is **GRANTED;**

2) Royal's Motion to Dismiss (D.I. 6), pursuant to Rule 12(b)(6), with respect to:

a) Count III of SFC's Complaint is **GRANTED;**

b) Counts I, II, IV-VI of SFC's Complaint is **DENIED.**

3) SFC shall file an Amended Complaint within twenty (20) days of this Order.

JOSEPH J. FARNAN, JR.

UNITED STATES DISTRICT JUDGE

LEXSEE



Analysis
As of: Dec 27, 2006

UNITED STATES OF AMERICA, -against- STEVEN ROBINSON, a/k/a Wise, Defendant.

01-CR-131 (LEK)

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
NEW YORK

303 F. Supp. 2d 231; 2004 U.S. Dist. LEXIS 791

January 22, 2004, Decided

**PRIOR HISTORY:** United States v. Robinson, 2003
U.S. Dist. LEXIS 8016 (N.D.N.Y. May 14, 2003)

**DISPOSITION:** [**1] Government's Motion for Reconsideration was denied.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** The United States Government filed a motion asking the federal district court which presided over defendant's trial to reconsider its judgment granting defendant's motion for a new trial, in part, and ordering a new trial on charges that defendant was guilty of using a firearm in furtherance of a conspiracy to distribute and possess marijuana, and causing the death of another in the course of using a firearm.

**OVERVIEW:** Defendant was charged with conspiracy to distribute and possess with the intent to distribute more than 100 kilograms of marijuana, in violation of 21 U.S.C.S. § 846, two counts of using a firearm in furtherance of the conspiracy, in violation of 18 U.S.C.S. § 924(c), and causing the death of another in the course of using a firearm, in violation of 18 U.S.C.S. § 924(j) A jury found defendant guilty of all charges, but the court which presided over his trial granted his motion for a new trial, in part, and ordered a new trial on one count alleging that he used a firearm in furtherance of the conspiracy and on the charge that he caused the death of another. The Government asked the court to reconsider its ruling. The court (1) rejected the Government's argument that it lacked jurisdiction under Fed. R. Crim. P. 33

to grant defendant's motion because it granted the motion after it granted defendant's second request for an extension of time to file the motion; and (2) held that the Government had not shown that the court abused its discretion when it found that the evidence presented during defendant's trial was insufficient to sustain the convictions that were overturned.

**OUTCOME:** The court denied the Government's motion for reconsideration.

**CORE TERMS:** new trial, post-trial, extension of time, seven-day, deadline, sentencing, judgment of acquittal, scheduled, marijuana, firearm, shooter, manifest injustice, jury verdict, presently, reconsider, conspiracy, unproven, jurisdiction to entertain, witness credibility, lacked jurisdiction, extensions of time, time limitation, innocent person, guilty verdict, new evidence, clear error, dispositive, furtherance, credibility, distribute

**LexisNexis(R) Headnotes**

_Civil Procedure > Judgments > Relief From Judgment
> Motions for New Trials_
_Criminal Law & Procedure > Trials > Judicial Discretion_
_Criminal Law & Procedure > Appeals > Standards of
Review > Abuse of Discretion > New Trial_
[HN1] A federal district court may reconsider its prior decision in the same case if there has been an intervening change in controlling law, there is new evidence, or a

Case 1:05-cv-00434-GMS    Document 227-2    Filed 01/10/2007    Page 34 of 38

303 F. Supp. 2d 231, *; 2004 U.S. Dist. LEXIS 791, **

need is shown to correct a clear error of law or to prevent manifest injustice.

*Criminal Law & Procedure > Postconviction Proceedings > Motions for New Trial*
[HN2] See Fed. R. Crim. P. 33.

*Criminal Law & Procedure > Trials > Judicial Discretion*
*Criminal Law & Procedure > Trials > Motions for Acquittal*
*Criminal Law & Procedure > Postconviction Proceedings > Motions for New Trial*
[HN3] The ultimate test on a Fed. R. Crim. P. 33 motion is whether letting a verdict stand would be a manifest injustice. The trial court must be satisfied that competent, satisfactory, and sufficient evidence in the record supports the jury's verdict. The district court must examine the entire case, take into account all facts and circumstances, and make an objective evaluation. There must be a real concern that an innocent person may have been convicted. Generally, the trial court has broader discretion to grant a new trial under Rule 33 than to grant a motion for acquittal under Fed. R. Crim. P. 29, but it nonetheless must exercise its Fed. R. Crim. P. 33 authority sparingly and in the most extraordinary circumstances.

*Criminal Law & Procedure > Witnesses > Credibility*
*Criminal Law & Procedure > Postconviction Proceedings > Motions for New Trial*
*Criminal Law & Procedure > Appeals > Standards of Review > Harmless & Invited Errors > General Overview*
[HN4] When considering a motion of a new trial under Fed. R. Crim. P. 33, a federal district court may weigh the evidence and credibility of witnesses. However, the court must take care not to usurp the role of the jury. Because courts generally must defer to a jury's resolution of conflicting evidence and assessment of witness credibility, it is only where exceptional circumstances can be demonstrated that the trial judge may intrude upon the jury function of credibility assessment.

*Criminal Law & Procedure > Sentencing > Corrections, Modifications & Reductions > Time Limitations*
*Criminal Law & Procedure > Postconviction Proceedings > Motions for New Trial*
*Criminal Law & Procedure > Appeals > Standards of Review > Plain Error > General Overview*

[HN5] Fed. R. Crim. P. 33(b) states that any motion for a new trial grounded on any reason other than newly discovered evidence must be filed within seven days after the verdict or finding of guilty, or within such further time as the court sets during the seven-day period. Fed. R. Crim. P. 45(b) provides that the court may not extend the time to take any action under Fed. R. Crim. P. 29, 33, 34, and 35, except as stated in those rules.

*Criminal Law & Procedure > Postconviction Proceedings > Motions for New Trial*
*Governments > Courts > Authority to Adjudicate*
*Governments > Legislation > Statutes of Limitations > Extension & Revival*
[HN6] The United States Court of Appeals for the Second Circuit has not ruled on the issue of whether district courts can grant subsequent extensions of the period which a defendant has to file a motion for a new trial, pursuant to Fed. R. Crim. P. 33, when the extension is requested after the seven-day period following a jury's verdict but within the deadline established by the court's original extension. The Second Circuit has stated only that the seven-day period may be extended, but only if an extension is granted within that seven-day period. These time limitations are jurisdictional; if the motion is not timely filed, the court lacks power to consider it.

**COUNSEL:** For Steven Robinson aka: WISE, Defendant: Frederick Rench, Pelagalli, Weiner & Rench, LLP, Clifton Park, NY USA.

U. S. Attorneys: Paul D. Silver, Office of United States Attorney, Albany, NY.

**JUDGES:** HONORABLE LAWRENCE E. KAHN, United States District Judge.

**OPINION BY:** LAWRENCE E. KAHN

**OPINION:**

[*232]    **MEMORANDUM-DECISION AND ORDER**

### I. Background

On November 18, 2002, Defendant Steven Robinson ("Robinson") was found guilty by a jury of (i) conspiracy to distribute and possess with the intent to distribute more than one hundred kilograms of marijuana, in violation of 21 U.S.C. § 846; (ii) two counts of using a firearm in furtherance of the marijuana conspiracy, in violation of 18 U.S.C. § 924(c); and (iii) causing the death of another in the course of using a firearm, in violation of 18 U.S.C. § 924(j). Following that verdict, Robinson

Case 1:05-cv-00434-GMS    Document 227-2    Filed 01/10/2007    Page 35 of 38

303 F. Supp. 2d 231, *; 2004 U.S. Dist. LEXIS 791, **

moved for a judgment of acquittal pursuant to Fed. R. Crim. P. 29(c) or, in the alternative, for a new trial pursuant to Fed. R. Crim. P. 33. In a Memorandum-Decision [**2] and Order dated May 14, 2003, this Court granted Robinson's motion for a new trial as to count 4 (use of a firearm in furtherance of the marijuana conspiracy on October 11, 2000) and count 5 (causing the death of another in the course of using the firearm on October 11, 2000). See United States v. Robinson, 2003 U.S. Dist. LEXIS 8016, 2003 WL 21095584 (N.D.N.Y. 2003). Presently before the Court is the Government's Motion for Reconsideration of that May 14, 2003 Memorandum-Decision and Order. For the reasons set forth below, the Government's motion is denied.

## II. Discussion

### (a) Standard of Review

[HN1] The Court may reconsider its prior decision in the same case if "there has been an intervening change in controlling law, there is new evidence, or a need is shown to correct a clear error of law or to prevent manifest injustice." U.S. v. Sanchez, 35 F.3d 673, 677 (2d Cir. 1994). The Government contends that in granting Robinson's motion for a new trial, the Court (1) abused its discretion in rejecting certain testimony, and (2) lacked jurisdiction to grant the motion at the time it was made.

### (b) Whether the Court Abused its Discretion

The Government claims that the [**3] Court "usurped the jury's role" by rejecting [*233] the testimony of a particular witness in its decision to grant Robinson's motion for a new trial. Government's Memorandum at 2. In its May 14, 2003 Order, the Court found that Government witness Auckland Dubery's "dubious testimony [was] exceedingly weak support for the jury's finding of guilt." Robinson, 2003 U.S. Dist. LEXIS 8016, [WL] at *4. The Court listed a number of reasons for its finding, including that: (1) Dubery's testimony was uncorroborated by the other witnesses present at the scene; (2) Dubery admitted to smoking three marijuana cigars in the six hours prior to the shooting; (3) immediately after the shooting, Dubery told police that he did not know who the shooter was; (4) a few days later, while Dubery was recovering in the hospital, Dubery again told a detective that he did not know who the shooter was; (5) Dubery changed his story and identified Robinson as the shooter only after his girlfriend, Rachel, discussed the potential benefits that he could receive in exchange for his identification of the shooter; and (6) Dubery's testimony was vague and left many holes.

In granting Robinson's Rule 33 motion, the Court was well aware of the high standard [**4] that must be met for such a motion to succeed. Rule 33 states that [HN2] "the court may vacate any judgment and grant a

new trial if the interest of justice so requires." Fed. R. Crim. P. 33. In a recent decision, the Second Circuit explained how a court's review of a Rule 33 motion is governed:

> [HN3] The ultimate test on a Rule 33 motion is whether letting a verdict stand would be a manifest injustice. The trial court must be satisfied that competent, satisfactory and sufficient evidence in the record supports the jury verdict. The district court must examine the entire case, take into account all facts and circumstances, and make an objective evaluation. There must be a real concern that an innocent person may have been convicted. Generally, the trial court has broader discretion to grant a new trial under Rule 33 than to grant a motion for acquittal under Rule 29, but it nonetheless must exercise the Rule 33 authority sparingly and in the most extraordinary circumstances.

United States v. Ferguson, 246 F.3d 129, 134 (2d Cir. 2001) (internal quotation marks and citations omitted).

The Court also considered the way in [**5] which this high standard has been applied specifically to the issue of witness credibility. [HN4] When considering a Rule 33 motion, "the court may weigh the evidence and credibility of witnesses." United States v. Autuori, 212 F.3d 105, 120 (2d Cir. 2000) (citation omitted). However, the Court must take care not to usurp the role of the jury. Ferguson, 246 F.3d at 133. "Because the courts generally must defer to the jury's resolution of conflicting evidence and assessment of witness credibility, 'it is only where exceptional circumstances can be demonstrated that the trial judge may intrude upon the jury function of credibility assessment.'" Id. at 133-34 (quoting United States v. Sanchez, 969 F.2d 1409, 1414 (2d Cir. 1992)).

In its May 14, 2003 decision, the Court, while recognizing that the grant of a new trial is extraordinary and that the Court should only exercise its discretion to set aside a verdict in those rare occasions when the prosecution has clearly failed to meet its burden of proving guilt beyond a reasonable doubt, still found that judicial intervention was necessary in this case to prevent a manifest injustice. [**6] The Government does not claim that there has been a change in controlling law or that new evidence has come to light. Rather, the Government simply rehashes the facts of the case and disagrees with the Court's analysis [*234] of those facts. The Court found

Case 1:05-cv-00434-GMS    Document 227-2    Filed 01/10/2007    Page 36 of 38

303 F. Supp. 2d 231, *; 2004 U.S. Dist. LEXIS 791, **

that the evidence against Robinson on counts 4 and 5 was far too flimsy to support a conviction and that, given the very real concern that an innocent person may have been convicted, a new trial was compelled under the circumstances. The Government has not shown this decision to be clear error.

### (c) Jurisdiction

The Government also contends that Robinson's motion for a new trial was untimely and that the Court lacked jurisdiction to grant Robinson a second extension of time within which to file his post-trial motions. As stated above, the jury rendered a guilty verdict on November 18, 2002. On November 26, 2002, the Court granted a request by Robinson for an extension of time until December 19, 2002 to file his post-trial motions. In a letter dated December 18, 2002, Robinson requested a second extension of time until January 3, 2003 to file his post-trial motions, which the Court granted on December 20 with the Government's consent. [**7] The Government now claims that the Court was without jurisdiction to grant this December 20, 2002 extension of time and that the Court must reconsider, and deny, Robinson's motion for a new trial due to the motion's untimeliness and the Court's resulting lack of jurisdiction to entertain it.

Fed. R. Crim. P. 33(b) [HN5] states that "any motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 7 days after the verdict or finding of guilty, or within such further time as the court sets during the 7-day period." Fed. R. Crim. P. 45(b) provides that "the court may not extend the time to take any action under Rules 29, 33, 34, and 35, except as stated in those rules." How these rules apply to a situation such as that presently before the Court has not been settled.

At the outset, it is plain that to reconsider a decision in which this Court was so struck by the injustice of a conviction that it was willing to employ the rare and extraordinary measure of granting a new trial, and to do so on the grounds suggested by the Government, would represent a horrible miscarriage [**8] of justice. It is undisputed that the Court could have, on November 26, granted Robinson a single extension until January 3, or even longer, to file his motion for a new trial. However, the Government contends that because the Court granted two extensions (an initial extension and then a subsequent extension), which lapsed on that *very same date,* it should now subject Robinson to a life sentence in prison for a charge that the Court has held to be unproven. As Robinson's attorney points out in his papers, Robinson would in effect "be faced with the reinstatement of an unproven murder conviction because an additional request for an extension of time was made by defense counsel." Robinson's Memorandum at 8.

When faced with almost the exact same situation in United States v. Reinhold, 20 F. Supp.2d 541 (S.D.N.Y. 1998), the court found that it did have jurisdiction to entertain post-trial motions filed by the defendants after successive extensions of time had been granted. In that case, the jury rendered its verdict on April 22, 1998. Immediately thereafter, the court granted all defendants until May 22 to file post-verdict motions. With Government consent, all defendants [**9] but one then sought and obtained, beyond the initial seven-day limit but prior to the May 22 deadline, further extensions of the date for filing the post-trial motions. The Government also sought and obtained two extensions of time to file its response. Id. at 547.

[*235] In rendering its decision in Reinhold that jurisdiction was proper, the court quoted an Eleventh Circuit opinion stating that "it would appear that the trial court is in the best position to consider the need for the extension, and to perhaps continue an extension if done before it expires. The rule seems to contemplate unlimited discretion in the trial judge, since no outside time limitation is fixed for the extension." Id. at 548 (quoting United States v. DiBernardo, 880 F.2d 1216, 1224 n. 3 (11th Cir. 1989). The court also quoted the Seventh Circuit decision in United States v. Hocking, 841 F.2d 735 (7th Cir. 1988), which stated that the purpose of the time limitations contained in the relevant rules "is to ensure that the motion comes promptly after the verdict, in order to avoid ... imposition of sentence in advance of resolution of dispositive [**10] motions." Id. at 736. Then, having noted that all requests for extensions subsequent to the original extension were made within the relevant deadlines and with the consent of the Government, and that the motions were fully submitted approximately one month in advance of the scheduled sentencing date for all the moving defendants, the court decided to address the merits of the motions, as to reject the motions on the procedural grounds urged by the Government would "elevate form over substance." Reinhold, 20 F. Supp.2d at 548 (citing United States v. Glagano, 281 F.2d 908, 912 (2d Cir. 1960), for the proposition that in applying Federal Rules of Criminal Procedure, courts should not "exalt form over substance").

The Court agrees with the Reinhold analysis. That analysis becomes even more compelling when considering that the court in Reinhold was addressing the jurisdiction issue prior to rendering its decision on the defendants' post-trial motions (which were ultimately denied), while this Court is faced with the issue after having already determined that Robinson is entitled to a new trial. Further, while the motions in [**11] Reinhold were fully submitted approximately one month in advance of

Case 1:05-cv-00434-GMS    Document 227-2    Filed 01/10/2007    Page 37 of 38

303 F. Supp. 2d 231, *; 2004 U.S. Dist. LEXIS 791, **

Robinson's scheduled sentencing date, the motions in this case were submitted over two months prior to Robinson's scheduled sentencing date of March 11, 2003.

Other courts have reached a different conclusion than was reached in Reinhold. For instance, the Hocking Court, cited by Reinhold for the proposition that the purpose of the relevant rules is to ensure that the post-trial motions are filed promptly after the verdict and that the motions are decided prior to the imposition of a sentence, ultimately ruled that the defendant had no right to ask, and the district court no right to grant, a second extension more than seven days after the jury's verdict. In that case, however, the district court had granted a second extension to file post-trial motions until just seven days prior to the defendant's scheduled sentencing, a date that was "too close ... to permit the prosecutor to respond and the judge to study the papers." Hocking, 841 F.2d at 737.

Within the Second Circuit, other district court decisions have also held that the relevant rules forbid the court from granting subsequent [**12] extensions outside of the seven days following a jury verdict. See, e.g., United States v. Piervinanzi, 765 F. Supp. 156 (S.D.N.Y. 1991); United States v. Padilla, 1998 U.S. Dist. LEXIS 398, 1998 WL 23550 (S.D.N.Y. 1998). [HN6] The Second Circuit, however, has not ruled on the issue of whether district courts can grant subsequent extensions after the seven days following the jury verdict but within the deadline established by the original extension. For instance, the Second Circuit has stated only that "the seven-day period may be extended, but only if an extension is granted within that seven-day period. These time limitations [*236] are jurisdictional; if the motion is not timely filed, the court lacks power to consider it." United States v. Mayo, 14 F.3d 128, 132 (2d Cir. 1994). Mayo dealt with a situation in which the defendant made his motion for a new trial more than seven days after the verdict and had not asked for any extensions at all. The Second Circuit then stated that the district court had properly denied that motion for lack of jurisdiction. The present case, conversely, involves a defendant who did in fact make a timely request for an extension of time [**13] to file his post-trial motions and had that request granted by the Court. And, as stated above, the Court could have fashioned that initial extension, granted within the seven-day period, until January 3, or even longer.

The Supreme Court has not issued a dispositive ruling on this issue, either. In Carlisle v. United States, 517 U.S. 416, 134 L. Ed. 2d 613, 116 S. Ct. 1460 (1996), the Court dealt with the question whether a district court has authority to grant a post-trial motion for judgment of acquittal filed one day outside the time limit prescribed by Fed. R. Crim. P. 29(c). n1 The district court in that case retroactively extended the deadline to file a post-

trial motion for acquittal when it received that motion after the initial 7-day deadline had already passed. The Supreme Court rejected the district court's decision, holding that "there is simply no room in the text of Rules 29 and 45(b) for the granting of an untimely postverdict motion for judgment of acquittal, regardless of whether the motion is accompanied by a claim of legal innocence, is filed before sentencing, or was filed late because of attorney error." Id. at 421. [**14]

n1 Rule 29(c) provides that a defendant may move for a judgment of acquittal or renew such a motion "within 7 days after a guilty verdict or after the court discharges the jury, whichever is later, or within any other time the court sets during the 7-day period." The language is nearly identical to the language in Rule 33(b).

As in Mayo, the petitioner in Carlisle had filed his post-trial motion after the seven-day deadline had passed but without having asked for an extension of time to do so. Thus, the decision in Carlisle is also inapplicable to the action presently before this Court. Again, in this case, Robinson asked for and received an extension of time within the initial seven-day period to file his post-trial motions. The Court undoubtedly had the unlimited discretion to grant that extension until whenever it deemed appropriate, as the Rules do not impose an outside time limitation. Thus, the only difference between the extension of time until January 3 that the Government contends was unlawful [**15] and an extension of time until January 3 to which the Government would have no objection is that the Court issued two extensions rather than one. Given that the Government requests that this extremely narrow reading of the Rules form the basis of a decision by this Court to send Robinson to prison for life on an unproven murder charge, the Court simply cannot agree with the Government's interpretation. Under the totality of the circumstances in this case, the Court finds that to disregard both the substance and purpose of Rules 33 and 45 in favor of the Government's reading of the statute would be to perpetrate an injustice that simply could not have been contemplated by the Rules' drafters.

## III. Conclusion

Accordingly, it is hereby

ORDERED, that the Government's Motion for Reconsideration is **DENIED**; and it is further

[*237] ORDERED, that the Clerk serve a copy of this order on all parties by regular mail.

IT IS SO ORDERED.

303 F. Supp. 2d 231, *; 2004 U.S. Dist. LEXIS 791, **

DATED: January 22, 2004                          United States District Judge

HONORABLE LAWRENCE E. KAHN