IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DYSON TECHNOLOGY LIMITED and DYSON, INC., Plaintiffs, v. MAYTAG CORPORATION, Defendant. | ) ) ) ) ) Civil Action No. 05-434 GMS ) ) ) REDACTED FOR PUBLIC FILING ) ) ) |

**DEFENDANT MAYTAG CORPORATION'S ANSWERING BRIEF
IN OPPOSITION TO DYSON'S MOTION FOR REARGUMENT**

Francis DiGiovanni
Connolly Bove Lodge & Hutz
The Nemours Building
1007 N. Orange Street
Wilmington, DE 19899
Phone (302) 658-9141
Fax (302) 658-5614

Kimball R. Anderson
Stephen P. Durchslag
Winston & Strawn
Chicago, IL 60601
Phone (312) 558-5600
Fax (312) 558-5700

Ray L. Weber
Laura J. Gentilcore
Renner, Kenner, Greive, Bobak,
  Taylor & Weber
400 First National Tower
Akron, OH 44308
Phone (330) 376-1242
Fax (330) 376-9646

*Attorneys for Defendant
Maytag Corporation*

Dated: January 5, 2007

## TABLE OF CONTENTS

STATEMENT OF NATURE AND STATE OF THE PROCEEDING ........................................ 1

SUMMARY OF THE ARGUMENT ................................................................................. 3

STATEMENT OF FACTS ................................................................................................ 3

ARGUMENT ..................................................................................................................... 6

    I.    Dyson Has Not Met The High Threshold For Reconsideration ........................ 6

    II.    The Discovery Is Not Relevant ......................................................................... 8

CONCLUSION ................................................................................................................. 12

# TABLE OF AUTHORITIES

**Cases**

*Above the Belt, Inc. v. Mel Bonhannan Roofing, Inc.*,
  99 F.R.D. 99 (E.D. Va. 1983) ................................................................................ 7

*American Home Products v. Johnson & Johnson*,
  654 F. Supp. 568 (SDNY 1987) ........................................................................... 10

*Ayers v. Kearney*,
  No. Civ.A. 03-281-GMS, 2005 WL 2148927 (D. Del. September 7, 2005) ......... 6

*Brambles USA, Inc. v. Blocker*,
  735 F. Supp. 1239 (D. Del. 1990) .......................................................................... 6

*Castrol, Inc. v. Pennzoil Co.*,
  987 F.2d 939 (3rd Cir. 1993) .................................................................................. 8

*Castrol, Inc. v. Quaker State Corp.*,
  977 F.2d 57, 63-4 (2nd Cir. 1992) .......................................................................... 9

*Gillette Co. v. Norelco Consumer Products Co.*,
  946 F. Supp. 115 (D. Mass. 1996) ......................................................................... 9

*Haagen-Dazs, Inc. v. Frusen Gladje, Ltd.*,
  493 F. Supp. 73 (S.D.N.Y. 1980) ......................................................................... 10

*Healthpoint Ltd v. Stratus Pharmaceuticals, Inc.*,
  273 F. Supp. 2d 769 (W.D. Tex. 2001) ................................................................ 10

*Karr v. Castle*,
  768 F. Supp. 1087 (D. Del. 1991) ...................................................................... 6, 7

*Kerr-McGee Chemical, LLC v. Kemira Pigments OY*,
  No. Civ.A. 03-191-GMS, 2004 WL 345463 (D. Del. February 24, 2004) ........... 6

*Max's Seafood Café by Lou-Ann, Inc. v. Quinteros*,
  176 F.3d 669 (3rd Cir. 1999) .............................................................................. 6, 7

*McNeil-P.C.C., Inc. v. Bristol-Myers Squibb Co.*,
  938 F.2d 1544 (2nd Cir. 1991) ............................................................................... 9

*Nike, Inc. v. Rubber Mfrs. Ass'n, Inc.*,
  509 F. Supp. 919 (SDNY 1981) .......................................................................... 10

*North River Ins. Co. v. CIGNA Reinsurance Co.*,
   52 F.3d 1194 (3rd Cir. 1995) .................................................................................. 6

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharmaceuticals Co.*,
   290 F.3d 578 (3rd Cir. 2002) .................................................................................. 8

*Pennwalt Corp. v. Plough, Inc.*,
   85 F.R.D. 257 (D. Del. 1979) ................................................................................ 10

*Quaker Alloy Casting v. Gulfco Industries, Inc.*,
   123 F.R.D. 282 (N.D. Ill. 1988) ........................................................................ 7, 9

*Sanderson v. Continental Casualty Corp.*,
   No. Civ.A. 01-606-GMS, 2003 WL 22078075 (D. Del. August 19, 2003) ............... 6

*Shering Corp. v. Amgen, Inc.*,
   25 F. Supp. 2d 293 (D. Del. 1998) .......................................................................... 6

*TI Group Automotive Systems (North America), Inc. v. VDO North America, LLC*,
   2002 U.S. Dist. LEXIS 1018 (D. Del. 2002),
   *rev'd on other grounds*, 375 F.3d 1126 ................................................................... 7

*Verizon Directories Corp. v. Yellow Book USA, Inc.*,
   338 F. Supp.2d 4222 (E.D.N.Y. 2004) ................................................................... 9

*Waters Technologies Corp. v. Applera Corp.*,
   No. C.A. 02-1285-GMS, 2004 WL 57217 (D. Del. January 13, 2004) ................... 6

**Statutes**

28 U.S.C. § 1404 .......................................................................................................... 2

85 F.R.D. at 258 ........................................................................................................ 11

**Other Authorities**

Lanham Act, 15 U.S.C. § 1125(a) ................................................................................ 2

Maytag Corporation ("Maytag") respectfully submits this answering brief in opposition to the motion by Plaintiffs/Counterclaim Defendants Dyson Technology Limited and Dyson, Inc. ("Dyson") for reconsideration of the Court's December 7, 2006 ruling denying Dyson's efforts to conduct discovery relating to matters that are the subject of the separate transferred action that is case number 06–CV–00654.

### STATEMENT OF NATURE AND STATE OF THE PROCEEDING

Dyson has specifically admitted that there is no relation between Maytag's no loss of suction claim and the present litigation before this Court. In Dyson's opposition to Maytag's Motion to Transfer Dyson's separate action to this Court, Dyson directly contradicted the position it takes in this motion:

> While on the surface, the allegation in this case that Maytag is falsely advertising that the Maytag Legacy and Hoover Fusion provide "No Loss of Suction" seems related to Maytag's counterclaim allegation regarding Dyson's own "constant suction" claims, there is no particular efficiency to be obtained by litigating the two sets of claims together. *Dyson has relied on an entirely different international testing standard than Maytag to substantiate its own claims that it vacuums do not lose suction. The Court need not compare the companies' use of competing standards to decide this case, nor need it determine that one standard is "better" than the other since the advertised claims by Maytag are monadic in nature – that is, Maytag's No Loss of Suction claim is not comparative. Put another way, the Court can determine whether Maytag's No Loss of Suction claim is true or false by reviewing testing on Maytag vacuums. It need not review tests of Dyson vacuums to reach a considered decision.*

(Dyson's September 29, 2006 Opposition to Maytag's Motion to Transfer Venue, attached as Exhibit A to the Affidavit of Josh Goldberg in Support of Maytag's Opposition to Dyson's Motion for Reargument, at 13) ("Goldberg Opp. Aff.") (emphasis added)

The present motion filed by Dyson is frivolous and is a waste of the Court's time. Dyson could not have been clearer when arguing to the court in the Southern District of New York that the claims in the two cases are vastly different and rely on entirely different testing as support for their truth or falsity. The entire basis of Dyson's motion is belied by the very statements it made

1

attempting to avoid transfer of the false advertising case it filed against Maytag in New York. To stand before this Court and allege that Maytag made significant misstatements of fact regarding the claims in both suits in a motion to reargue is outrageous.

In this patent infringement action, Maytag has asserted counterclaims, alleging that Dyson violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Maytag alleges that Dyson made various false advertising claims with respect to its upright vacuum cleaners, including its unqualified claim that Dyson vacuums "never lose suction." Maytag's Answer, Affirmative Defenses, and Supplemental Counterclaims [D.I. 125] at ¶ 21.

In August 2006—after the case had been pending for more than one year—Dyson sued Maytag in the Southern District of New York, alleging that certain Maytag advertising claims violated the Lanham Act. Dyson Compl. for Injunctive Relief ¶ 39. In October 2006, in response to Maytag's motion to change venue pursuant to 28 U.S.C. § 1404, the New York federal court transferred that case to this Court. October 11, 2006 Order.

At a December 7, 2006 teleconference for the instant litigation, this Court rightly recognized that "we do have separate and distinct issues in the [transferred case], the New York case." (Goldberg Opp. Aff. Ex. B at 40:12-14) Dyson itself acknowledged in the New York federal court that the "degree of overlap between the issues in that case and the one pending here is not substantial." (*Id.* Ex. A at 3) This Court thus appropriately held that the transferred case should not be consolidated with this case and instead "should take its normal course in Delaware," with a Rule 16 conference to be held to schedule briefing and discovery in that action. (*Id.* Ex. B at 44:10-25) During the same conference, Dyson requested that it be allowed to conduct discovery in this case on the veracity of Maytag's advertising claims that are at issue in the transferred case. (*Id.* at 46:5-47:1) After hearing Dyson's strained arguments as to why

discovery of matters at issue in that action should be taken in this case, the Court rejected Dyson's request to conduct such discovery. (*Id.* at 51:3-52:1) Dyson now seeks to reargue this discovery ruling.

## SUMMARY OF THE ARGUMENT

1.  Dyson is not entitled to rehash arguments already fully heard by the Court. Because it cannot meet the high threshold for reconsideration, its motion should be denied. Dyson presents no change in controlling law or new facts, and the Court was under no misapprehension as to any factual or legal issue that would result in "manifest injustice" here. Dyson's attempt to obtain discovery on Maytag's ad claims is a thinly veiled attempt to obtain preemptory discovery for the transferred case.

2.  Dyson's motion must be denied because the requested discovery is irrelevant. Dyson's and Maytag's advertising claims are fundamentally different. Where Dyson's no loss of suction claim is unqualified and not tied to any appropriately substantiated claim of cleaning efficacy, Maytag's claim is carefully qualified and is made in conjunction with a cleaning efficacy claim that it is soundly based on industry-accepted laboratory testing. Dyson cannot rely upon Maytag's advertising claim to justify its own advertising.

## STATEMENT OF FACTS

According to Dyson's ads, its upright vacuum "spin[s] dirt out of the air so nothing gets clogged, ever" (Goldberg Opp. Aff. Ex. E); "doesn't lose suction" (*id.* Ex. F); and maintains constant suction "room after room after room" (*id.* Ex. G) These statements of permanence and timelessness are unqualified in any way, as if

3

Dyson's vacuum could maintain suction *ad infinitum*.

Moreover, Dyson's claim is based on IEC testing standards, which have no industry-wide acceptance in the United States. (*See id.* Ex. A at 13) ("Dyson has relied on an entirely different international testing standard than Maytag to substantiate its own claims that it [*sic*] vacuums do not lose suction");

Fact discovery on the veracity of Dyson's ad claims is virtually complete, and the parties are currently engaged in extensive expert discovery. Trial is set for May 2007. Maytag's advertising claim is the subject of a separate action that was transferred from the New York federal court to this Court. That case is still in its infancy. No Rule 16 conference has been held yet and initial disclosures under Rule 26 have not been exchanged. No depositions have been taken in that case.

As Dyson argued in the litigation it instituted in the New York federal court, "[t]he Court need not compare the companies' use of competing standards to decide this case, nor need it determine that one standard is 'better' than the other since the advertised claims by Maytag are monadic in nature – that is, Maytag's No Loss of Suction claim is not comparative." (Goldberg Opp. Aff. Ex. A at 13) Dyson correctly points out the distinct differences between its claim and Maytag's claim. "Put another way, the Court can determine whether Maytag's No Loss of Suction claim is true or false by reviewing testing on Maytag vacuums. It need not review tests

of Dyson vacuums to reach a considered decision." (*Id.*) Again, Dyson's logic is equally applicable in the present case, and discovery into Maytag's claim and testing to support it claim in the present case is highly unwarranted.

## ARGUMENT

### I.  Dyson Has Not Met The High Threshold For Reconsideration

The Third Circuit has declared that district courts should only grant motions to reconsider where:

> (1) there has been an intervening change in the controlling law; (2) there is newly discovered evidence which was not available to the moving party at the time of judgment; or (3) there is a need to correct a legal or factual error which has resulted in a manifest injustice. *See Max's Seafood Café by Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3rd Cir. 1999) (relying on *North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3rd Cir. 1995)).

*Ayers v. Kearney*, No. Civ.A. 03-281-GMS, 2005 WL 2148927 (D. Del. September 7, 2005); *Sanderson v. Continental Casualty Corp.*, No. Civ.A. 01-606-GMS, 2003 WL 22078075 (D.Del. August 19, 2003).[1] This Court has repeatedly considered, and denied, motions for reconsideration for failure to meet this exacting standard. *See, e.g., Ayers*, 2005 WL 2148927 at 1; *Kerr-McGee Chemical, LLC v. Kemira Pigments OY*, No. Civ.A. 03-191-GMS, 2004 WL 345463 (D. Del. February 24, 2004); *Waters Technologies Corp. v. Applera Corp.*, No. C.A. 02-1285-GMS, 2004 WL 57217 (D. Del. January 13, 2004); *Sanderson*, 2003 WL 22078075 at *1.

As the Court has explained, motions for reconsideration should be granted only "sparingly," *Karr v. Castle*, 768 F. Supp. 1087, 1090 (D. Del. 1991), and only if it appears that the court has "patently misunderstood a party." *See, e.g., Shering Corp. v. Amgen, Inc.*, 25 F. Supp. 2d 293, 295 (D. Del. 1998); *Brambles USA, Inc. v. Blocker*, 735 F. Supp. 1239, 1240 (D. Del. 1990) (citing *Above the Belt, Inc. v. Mel Bonhannan Roofing, Inc.*, 99 F.R.D. 99 (E.D. Va.

---

[1] All unpublished cases cited in this brief are attached as Goldberg Opp. Aff. Ex. L.

6

1983)); *see also Karr*, 768 F. Supp. at 1090 (citing same). Motions for reconsideration "should not be used to rehash arguments already briefed." *TI Group Automotive Systems (North America), Inc. v. VDO North America, LLC*, 2002 U.S. Dist. LEXIS 1018 (D. Del. 2002), *rev'd on other grounds*, 375 F.3d 1126; *see also Quaker Alloy Casting v. Gulfco Industries, Inc.*, 123 F.R.D. 282, 288 (N.D. Ill. 1988.) Dyson's motion to reconsider fails the Third Circuit's rigorous test. Dyson's motion sets forth no new facts and presents no intervening change in controlling law. Moreover, nothing in the record demonstrates that the Court made any legal or factual error, let alone one that results in manifest injustice. *Max's Seafood*, 176 F.3d at 677.

Dyson's main argument is that the Court was under some sort of misapprehension about the differences between the parties' no loss of suction claims due to alleged misrepresentations by Maytag's counsel. This contention is sheer fantasy. Dyson pretends that the December 7 teleconference was an *ex parte* proceeding at which only Maytag's counsel was present. The truth is squarely to the contrary, and the Court gave Dyson a full and fair opportunity to be heard on why Maytag's qualified no loss of suction claim should be discoverable in the pending case. Counsel for Dyson argued that alleged similarities between the two claims warranted discovery of Maytag's advertising in this case. The Court disagreed. For this reason alone, Dyson's motion should be denied.

Dyson selectively quotes from the December 7 teleconference transcript to suggest that the Court only heard Maytag's side of the story. (Dyson Mot. [D.I. 209] at 2 ¶ 2) In truth, Dyson fully argued that it should be entitled to discovery of Maytag's substantiation of Maytag's own "no loss of suction claim" because such material was "relevant, certainly calculated to lead to the admission of admissible evidence." (Goldberg Opp. Aff. Ex. B at 46:5-24) Dyson's counsel asserted:

> Judge, if they are going to attack the reasonableness of our substantiation and they are going to attack the reasonableness of our testing, our position is that ... if a reasonable juror heard that their substantiation methods were the same or similar to ours, or that their testing was the same or similar to ours, that reasonable juror could find that our substantiation of that same claim or our testing of that same claim was also reasonable and therefore could refuse to return a verdict in favor of Maytag.

(*Id.* at 50:18-25)

Counsel for Maytag responded that Dyson's request was not relevant to this case, but instead was a disguised end-run to conduct discovery for the transferred case. (*Id.* at 47:5-48:20) Even Dyson's counsel had to admit that its request "implicates [Dyson's recently transferred] case as well." (*Id.* at 46:7-8) Moreover, counsel for Maytag also argued that Maytag's advertising claim is different from Dyson's because it is expressly qualified. (*Id.* at 48:17-20) ("[T]he claims are different and [Dyson has not] demonstrated the claims are the same in any respect whatsoever."); (*Id.* at 51:6-9) ("It is a different claim, Your Honor. It is a qualified claim. The language is entirely different from any of the claims that are being made by Dyson in the current case.")

Thus, the Court heard both sides of this issue and made its decision. In fact, the Court indicated that it was familiar with Dyson's allegations in the transferred case about Maytag's suction claim and still denied Dyson's request. (*Id.* at 51) There is no basis for reargument here.

**II.   The Discovery Is Not Relevant**

The issue in the instant litigation is the veracity of Dyson's advertising claims. *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharmaceuticals Co.*, 290 F.3d 578, 586 (3rd Cir. 2002). Because Dyson's advertising claim represents that it is based on testing, it is an "establishment claim." *See Castrol, Inc. v. Pennzoil Co.*, 987 F.2d 939, 943-4 (3rd Cir. 1993) (holding that competitor's claims of superiority were literally false where competitor's product failed to meet accepted standards); *Castrol, Inc. v. Quaker State Corp.*, 977 F.2d 57, 63-

4 (2nd Cir. 1992) (holding that "[w]here a plaintiff challenges a test-proven superiority advertisement, the defendant must identify the cited tests."); *see also Gillette Co. v. Norelco Consumer Products Co.*, 946 F. Supp. 115, 121 (D.Mass. 1996) ("An establishment claim is one that says, in substance, that 'tests or studies prove' a certain fact.")

On an establishment claim, the advertiser must "identify the tests that purportedly support the claim and the challenger must show that either (a) the tests are not sufficiently accepted or reliable to permit one to conclude with reasonable certainty that they establish the advertising claim or (b) the tests, even if reliable, do not support the claim." *Quaker State*, 977 F.2d at 62–63; *McNeil-P.C.C., Inc. v. Bristol-Myers Squibb Co.*, 938 F.2d 1544, 1549 (2nd Cir. 1991).

Accordingly, Dyson's liability under the Lanham Act will turn on the acceptance and reliability of its own testing methods and whether the results of these tests support a sweeping and unlimited claim that its vacuums "never lose suction." Maytag's advertising, or tests it uses to support those advertising claims, have no bearing on the truth or falsity of Dyson's claims. (*See* Goldberg Opp. Aff. Ex. A at 13) ("Put another way, the Court can determine whether Maytag's No Loss of Suction claim is true or false by reviewing testing on Maytag vacuums. *It need not review tests of Dyson vacuums to reach a considered decision.*") (emphasis added)

Dyson's assertion that Maytag's no loss of suction claim is relevant to an "unclean hands" defense is flatly erroneous. (Dyson Mot. at 5 ¶ 9) Dyson again hangs itself when arguing this proposition to the court in the Southern District of New York when attempting to avoid venue transfer:

> [T]here is little merit to the defense Maytag says it will assert to the preliminary injunction – unclean hands – in the context of a false advertising campaign that causes injury to the public. *See Verizon Directories Corp. v. Yellow Book USA, Inc.*, 338 F. Supp.2d 4222, 430 (E.D.N.Y. 2004) ("The defense of unclean hands does not apply to either the issue of liability or an injunction.") Irrespective of whether *Dyson's* own suction claim is true, the Court would act in the pubic

> interest by enjoining a false advertising claim by Maytag directed to the consuming public. *See, e.g., American Home Products v. Johnson & Johnson*, 654 F. Supp. 568, 590-91 (SDNY 1987) ("There is a strong pubic interest in the prevention of misleading advertisements.... Where the advertising in question is misleading, this interest prevails over the advertiser's right of commercial speech." (citations omitted)); *Nike, Inc. v. Rubber Mfrs. Ass'n, Inc.*, 509 F. Supp. 919, 926 (SDNY 1981) (defense of unclean hands can be established only by "clear, unequivocal and convincing" evidence).
>
> Therefore, whether Dyson's own suction claim is true need not be addressed by this Court in order to resolve the dispute placed before it. While there are obvious strategic reasons why Maytag counsel would want to tie these two cases together, resolving the truth of the Dyson advertising here would be costly and inefficient sideshow that would bring this Court no closer to a determination regarding whether Maytag's No Loss of Suction claim is true.

(Goldberg Opp. Aff. Ex. A at 13-14)

Dyson cannot have it both ways. These are judicial admissions that must bind Dyson. Dyson has set the standard by which it expects these cases to be governed and to allow discovery on an unclean hands defense would cause a manifest injustice. As Dyson has recognized, it is well settled that if an advertiser's claims are found to be false and misleading, the defense of unclean hands will not bar relief because it will only serve to increase the harm to the buying public from the deception. *Healthpoint Ltd v. Stratus Pharmaceuticals, Inc.*, 273 F. Supp. 2d 769 (W.D. Tex. 2001).[2]

Dyson conveniently failed to cite the same cases it relied on before the New York court in the present motion. Dyson's only cited case for the proposition that Maytag's substantiation of its advertising would be relevant to assessing the appropriateness of Dyson's substantiation for its advertising is *Pennwalt Corp. v. Plough, Inc.*, 85 F.R.D. 257, 260-61 (D.Del. 1979) (Schwartz, J). (Dyson Mot. at 4-5 ¶ 9) *Pennwalt* involved "a complaint and *a substantially*

---

[2] Dyson's citation to *Haagen-Dazs, Inc. v. Frusen Gladje, Ltd.*, 493 F. Supp. 73, 76 (S.D.N.Y. 1980) is inapposite. (Dyson Mot. At 5 ¶ 9) The issue in *Haagen-Dazs* was whether a preliminary injunction should issue, which is an entirely different situation from one in which a definitive finding has been made that the ads are false.

*identical counterclaim* in which [the plaintiff and defendant] charge each other with false, misleading and deceptive advertising of their respective athlete's foot remedies." 85 F.R.D. at 258 (emphasis added). *Pennwalt* is inapposite because this case involves only Dyson's advertising. Unlike *Pennwalt*, Dyson's false advertising claims against Maytag are the subject of the entirely separate action.

Dyson said it best when it argued that allowing an unclean hands defense to proceed "would be costly and inefficient sideshow that would bring this Court no closer to a determination regarding whether [the] No Loss of Suction claim is true." (Goldberg Opp. Aff. Ex. A at 14) Dyson would attempt to reopen depositions, seek extensive document discovery and propound voluminous interrogatories and requests for admission when fact discovery is closed with the exception of a few depositions to take place in the U.K. Dyson would then attempt to make the trial before the jury about Maytag's advertising and consume enormous amounts of time attempting to prove the falsity of Maytag's claim.

Dyson chose, of its own free will, to file a separate lawsuit concerning Maytag's no loss of suction claim. Dyson is merely attempting to put Maytag on trial in the present case hoping the jury will nullify Dyson's own substantial liability for false advertising. This is an illegitimate attempt to prejudice Maytag and will be a substantial waste of time and resources.

## CONCLUSION

Dyson's requested discovery is little more than an effort to obtain preemptory discovery for its recently transferred false advertising case against Maytag. This abuse of the discovery process cannot be countenanced by the Court. The Court should deny Dyson's motion for reargument.

Dated: January 5, 2007

Respectfully submitted,

MAYTAG CORPORATION

*/s/ Francis DiGiovanni*
Francis DiGiovanni (#3189)
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 N. Orange Street
Wilmington, DE 19899
Phone (302) 658-9141
Fax (302) 658-5614

Kimball R. Anderson
Stephen P. Durchslag
Winston & Strawn LLP
Chicago, IL 60601
Phone (312) 558-5600
Fax (312) 558-5700

Ray L. Weber
Laura J. Gentilcore
Renner, Kenner, Greive, Bobak,
Taylor & Weber
400 First National Tower
Akron, OH 44308
Phone (330) 376-1242
Fax (330) 376-9646

## CERTIFICATE OF SERVICE

I, Francis DiGiovanni, hereby certify that on January 9, 2007, copies of the foregoing document were served on the following counsel of record in the manner indicated:

**BY HAND DELIVERY AND E-MAIL:**

C. Barr Flinn
John W. Shaw
Adam Poff
Young Conaway Stargatt & Taylor LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801

**BY UNITED STATES MAIL AND E-MAIL:**

Garrard R. Beeney
Richard C. Pepperman, II
James T. Williams
Keith McKenna
Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004

Steven F. Reich
Jeffrey S. Edelstein
Manatt, Phelps & Phillips, LLP
7 Times Square
New York, NY 10004

              /s/ *Francis DiGiovanni*
              Francis DiGiovanni (#3189)

CHI:1843004.1