IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DYSON TECHNOLOGY LIMITED<br>and DYSON, INC., | )<br>)<br>) | |
| Plaintiffs, | )<br>) | |
| v. | )<br>) | Civil Action No. 05-434-GMS |
| MAYTAG CORPORATION, | )<br>)<br>) | |
| Defendant. | ) | |

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO
STRIKE THOSE PORTIONS OF THE FOLLOWING PAPERS FILED IN
VIOLATION OF LOCAL RULE 7.1.3(C)(2): (1) MAYTAG CORPORATION'S
REPLY BRIEF IN SUPPORT OF ITS MOTION FOR LEAVE TO FILE A
SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES AND
SUPPLEMENTAL COUNTERCLAIMS (D.I. 196); (2) MAYTAG
CORPORATION'S AFFIDAVIT OF JOSH GOLDBERG IN SUPPORT OF
MAYTAG'S MOTION FOR LEAVE TO FILE A SECOND AMENDED
ANSWER, AFFIRMATIVE DEFENSES AND SUPPLEMENTAL
COUNTERCLAIMS AND ACCOMPANYING EXHIBITS (D.I. 197); (3)
MAYTAG CORPORATION'S REPLY BRIEF IN SUPPORT OF ITS
MOTION FOR ENTRY OF A TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION REGARDING IMPROPER ASSET
TRANSFERS (D.I. 203), AND (4) MAYTAG CORPORATION'S AFFIDAVIT
OF JOSH GOLDBERG IN SUPPORT OF ITS MOTION FOR ENTRY
OF A TEMPORARY RESTRAINING ORDER AND PRELIMINARY
INJUNCTION REGARDING IMPROPER ASSET TRANSFERS (D.I. 204)**

C. Barr Flinn (No. 4092)
John W. Shaw (No. 3362)
Adam W. Poff (No. 3990)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
bflinn@ycst.com

*Attorneys for Plaintiffs Dyson Technology
Limited and Dyson, Inc.*

OF COUNSEL:

Garrard R. Beeney
Richard C. Pepperman, II
James T. Williams
Keith McKenna
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
(212) 558-4000

Steven F. Reich
Jeffrey S. Edelstein
Tamar Feder
Christopher A. Cole
MANATT, PHELPS & PHILLIPS, LLP
7 Times Square
New York, New York 10036
(212) 790-4500

Dated: January 12, 2006

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................

INTRODUCTION .......................................................................... 1

ARGUMENT

    I.    MAYTAG'S PROPOSED LEGAL STANDARD IS INCOMPLETE AND WRONG. ............................................... 3

    II.    MAYTAG PROVIDES NO EXCUSE FOR NOT DISCLOSING ITS EXPERT SUPPORT IN ITS OPENING BRIEF ......................... 5

    III.    MAYTAG'S FINANCIAL DOCUMENTS DISCUSSION MISSES THE POINT ............................................... 7

    IV.    MAYTAG ADMITS TO MAKING NEW ARGUMENTS ON PERSONAL JURISDICTION ............................. 8

    V.    MAYTAG'S ARGUMENTS ABOUT THE FEBRUARY 10 DEADLINE SHOULD HAVE BEEN MADE IN ITS OPENING BRIEF .................................................................... 9

    VI.    MAYTAG'S NEW FACTS SHOULD HAVE BEEN INCLUDED IN A FAULL AND FAIR OPENING BRIEF ............... 10

    VII.    MAYTAG CONCEDES SEVERAL KEY PORTIONS OF DYSON'S MOTION ........................................................... 11

    VIII.    MAYTAG'S ZEAL TO WIN SHOULD NOT OUTWEIGH A FAIR AND ORDERLY JUDICIAL PROCESS ............................ 11

CONCLUSION ............................................................................ 13

# TABLE OF AUTHORITIES

Page

**Cases**

Allergan, Inc. v. Alcon, Inc.,
   C.A. No. 04-968-GMS, Order
   (D. Del. June 13, 2005) .................................................................................. 3, 6, 7, 8

Elizabethtown Water Co. v. Hartford Cas. Ins. Co.,
   998 F. Supp. 447 (D.N.J. 1998) .................................................................................. 4

In re Fleming Cos.,
   316 B.R. 809 (Bankr. D. Del. 2004) ........................................................................... 4

Jordan v. Bellinger,
   C.A. No. 98-230-GMS, 2000 U.S. Dist. LEXIS 19233
   (D. Del. Aug. 28, 2000) ........................................................................................... 4, 8

Lang v. Kansas City Power & Light Co.,
   199 F.R.D. 640 (W.D. Mo. 2001) ............................................................................. 6, 7

Rockwell Techs., LLC v. Spectra-Physics Lasers, Inc.,
   C.A. No. 00-589-GMS, 2002 U.S. Dist. LEXIS 5180
   (D. Del. March 26, 2002) ............................................................................................ 8

Webloyalty.com, Inc. v. Consumer Innovations, LLC,
   C.A. No. 04-90-KAJ, 2005 U.S. Dist. LEXIS 791
   (D. Del. Jan. 13, 2005) ................................................................................................ 9

**Rules**

D. Del. LR. 7.1.3(c)(2) .................................................................................... passim

## INTRODUCTION

Maytag's answering brief opposing this motion to strike does not explain why the Court and Dyson are not prejudiced from the lack of adversarial presentation on Maytag's new facts and new arguments. Nor does Maytag's answering brief claim, with one minor exception, that Maytag's new facts and new arguments were unavailable when it filed its motions. And Maytag's answering brief does not attempt to distinguish the cases discussed in our opening brief or explain why those cases do not apply to the present facts.

Maytag's sole justification for its new facts and new arguments stems from New Jersey cases that purportedly authorize the use of new facts and new arguments in reply any time those new facts or new arguments explain a position taken in the opening brief or respond to an argument made in the answering brief. Maytag's New Jersey cases, however, are at best an incomplete reflection of Delaware law, as almost every new fact or new argument that has been stricken by a judge in this district also has explained a position taken in the opening brief or responded to an argument made in an answering brief. And it cannot possibly be the rule that, when a movant provides no evidence in its opening brief (as occurred in places with Maytag's briefs here), the movant can provide all of its evidence in reply under the guise of explaining its opening position or responding to the answering brief.

Local Rule 7.1.3(c)(2) and the Delaware cases consistently hold that movants cannot reserve for use in reply briefs facts or arguments that the movant could have included in a full and fair opening brief, regardless of whether those facts or arguments can be characterized as further explaining a position taken in the opening brief or as responding to a position taken in an answering brief. This standard – as set forth in our opening brief and as

Maytag does not dispute – ensures that the Court benefits from a full adversarial discussion of all key facts and issues.

Here, if Maytag were not afraid of an adversarial presentation on its new facts and arguments, it would not have withheld its new facts and arguments until its reply briefs and it would not be opposing the filing of a sur-reply now. Instead, Maytag wants the court to accept all of its late-filed facts and arguments without the benefit of the adversarial process. We respectfully submit that Maytag's sandbagging briefs and attempts to shield its arguments from the adversarial process should not be countenanced.

## ARGUMENT

### I. MAYTAG'S PROPOSED LEGAL STANDARD IS INCOMPLETE AND WRONG.

Under the interpretation of Local Rule 7.1.3(c)(2) urged by Maytag, any fact, any exhibit, and any argument is fair game to use in reply so as long as some cogent reason can be articulated as to why that new fact, exhibit or argument further explains a position taken in an opening brief or responds to a point made in the answering brief.

This interpretation of Local Rule 7.1.3(c)(2) would open the door for egregious sandbagging. Movants could merely allude to facts and evidence in their opening papers (as Maytag did here), while withholding extensive evidence for so-called "reply," thus depriving the non-movant of a fair opportunity to meet the evidence fairly.

This interpretation of Local Rule 7.1.3(c)(2) flies in the face of the weight of Delaware law, including all of the Delaware decisions cited in our opening brief. Thus, for example, under Maytag's interpretation of Local Rule 7.1.3(c)(2), the result in Allergan, Inc. v. Alcon, Inc., C.A. No. 04-968-GMS, Order (D. Del. June 13, 2005), should have been different. In that case, as we explained in our opening brief, the Court struck an argument about a related patent's prosecution history that was raised for the first time in a summary judgment reply brief. Id. at 2. The prosecution history and the arguments made about it certainly responded to the arguments made by the non-moving party and explained why the motion for summary judgment should have been granted; thus, under Maytag's proposed construction of the rule, these materials should not have been stricken. Nonetheless, the new document and the new arguments were stricken because no showing had been made that they could not "have been raised in [the] opening brief." Id. at 3.

3

Likewise, the result in Jordan v. Bellinger, C.A. No. 98-230-GMS, 2000 U.S. Dist. LEXIS 19233 (D. Del. Aug. 28, 2000), should have been different under Maytag's interpretation of the rule. In that case, the court struck a factual theory raised by the movant in its reply brief as further support for its motion for summary judgment. Id., at *18 n.7. The new factual theory in Jordan further explained why the movant should win its motion, just like Maytag's new facts and arguments here; under Maytag's proposed construction of the rule, this new factual theory also should have been permitted. Nonetheless, the Court declined to address this new factual theory.

It is perhaps for this reason that Maytag relies on only one case from Delaware. Even that case, however, does not apply the rule as Maytag proposes. Rather, in that case the party moving to strike had "fail[ed] to direct the court's attention to any arguments, authorities or other evidence in the reply memorandum that are not included in the plaintiff's opening brief," In re Fleming Cos., 316 B.R. 809, 815 n.3 (Bankr. D. Del. 2004), and thereby did not even come close to invoking the rule. Maytag's other cases are from other districts, and one of those cases, Elizabethtown Water Co. v. Hartford Cas. Ins. Co., 998 F. Supp. 447, 458 (D.N.J. 1998), actually supports Dyson's motion. See, e.g., id. (quoting Seventh Circuit case for proposition that "[a]rguments withheld until the reply brief ordinarily will not be considered" and striking a new factual argument that further supported the relief sought in the motion because it was not mentioned in the opening brief).

It should therefore be evident that the standard is not as Maytag urges but rather whether materials used in reply could have been raised in the opening brief so as to give the party opposing the motion a full and fair opportunity to respond to those materials. This interpretation of Local Rule 7.1.3(c)(2) provides for a process that provides the court with a

4

fuller and more complete record as it ensures a full and fair adversarial discussion will occur on all motions.[1]

Finally, the rule as discussed and applied in our opening brief is not so narrow that it would preclude all fair replies, as Maytag asserts. Certainly it is within the bounds of a fair reply to explain how an opponent's evidence was mischaracterized or is irrelevant to the issue at hand. Likewise, it is well within the bounds of a fair reply to explain why the non-movant's characterization of the movant's arguments or evidence is wrong or misguided. And it is well within the bounds of a fair reply to explain why the opponent's cases are inapplicable, are less relevant than the movant's cases, or do not support denial of the motion. In each of these circumstances, there may be times where it is appropriate to add evidence or to cite additional cases to compare, contrast, and explain.

Maytag did not use its new facts or arguments in any of these ways, however, and, if it had, this motion would not have been filed. Indeed, this motion does not seek to strike all of Maytag's replies. Rather, this motion addresses the parts of Maytag's reply briefs that basically started over with new facts and new arguments to support the relief sought.

## II.    MAYTAG PROVIDES NO EXCUSE FOR NOT DISCLOSING ITS EXPERT SUPPORT IN ITS OPENING BRIEF.

Even though Maytag had the burden of production and the burden proof on each point for which it used expert reports in reply – e.g., that it is likely to recover $300 million in damages, that it is likely to succeed on the merits of its false advertising claims, and that its customers were misled – Maytag claims that it is acceptable to make a minimal showing

---

[1]   To further illustrate why Maytag's proposed interpretation of Local Rule 7.1.3(2)(c) is wrong, consider other similar, commonly applied rules in the district. Rebuttal cases at trial, for example, are commonly limited to testimony that could not have been reasonably anticipated to have been needed during a party's case in chief.

5

(or no showing at all) in its opening brief, have Dyson respond to that minimal showing, and then add new expert testimony in reply to which no one is allowed to respond. Maytag makes this argument even though it does not dispute that it could have included these expert materials in its opening brief.

Maytag provides no case law to support its actions, and its actions fly in the face of cases like Allergan, where new material was stricken even though it explained and supported the original arguments made. Moreover, in Lang v. Kansas City Power & Light Co., 199 F.R.D. 640 (W.D. Mo. 2001), a party took Maytag's approach and had its expert support stricken from its reply. In Lang the movants – like Maytag here – advanced "[n]umerically-based facts... in the motion itself" and only alluded to statistical evidence in their opening brief. Id. at 651. Then, in the reply, the movants included expert reports to substantiate the movants' numerical facts and statistical claims. The court struck the expert materials from the reply, holding that the movants could not cure their lack of evidence in the opening brief by introducing expert support, for the first time, in reply. Id. at 652.

Maytag has done the same thing here. For example, Maytag's opening preliminary injunction brief contained just one sentence about its alleged $300 million of damages and provided no support at all for this number. After Dyson's answering brief highlighted this failure of proof, Maytag, in reply, for the first time attempted to provide alleged support through its expert, Dr. Rao. Dr. Rao's new report is no different than the stricken prosecution history in Allergan, and Maytag's use of Dr. Rao's report is identical to the improper expert usage in Lang.

Likewise, Maytag's opening brief failed to provide any evidence that consumers were misled by Dyson's alleged false advertising. Dyson's answering brief pointed out that

Maytag could at best only demonstrate success on the merits of its motion with regard to claims of literal falsity because the party seeking to prove implied falsity also has the burden of showing customer confusion. In reply, Maytag then submitted an expert report on consumer confusion so that it could make implied falsity claims. Again, this report is no different than the stricken prosecution history in Allergan, and Maytag's use of the report is identical to the improper expert usage in Lang.

Finally, Maytag claims that Mr. Battema's report is merely a response to Dyson's answering brief and an explanation of Maytag's opening positions. But can a litigant at trial put on the bare minimum amount of evidence on an issue for which it has the burden of proof, wait for its opponent's case, and then for the first time put an expert witness on the stand? Of course the answer to that question is no, because the expert testimony could and should be part of a full and fair opening case so as to allow the opponent a fair opportunity to rebut the evidence. The same result should occur under Local Rule 7.1.3(c)(2), and Maytag should not be permitted to hold back expert testimony for reply that it could – and should – have disclosed in its opening brief.

### III. MAYTAG'S FINANCIAL DOCUMENTS DISCUSSION MISSES THE POINT.

Maytag's explanation for making a new argument about Dyson's profitability is also unavailing. Maytag admits that its original argument was about transfer pricing and that Dyson refuted that argument. Maytag Ans. Br. (D.I. 219) at 7. Maytag then asserts that it was permissible to inject a new argument about the amount of Dyson, Inc.'s profits because the "relevant issue under the Lanham Act is the *amount* of profits from sales . . ." Id. (emphasis in original).

7

If this is so, why did Maytag not fully address Dyson's profits in its opening brief and provide all of the evidence that it wanted to use on this subject? As in the Jordan decision, Maytag made one argument in its opening brief and then changed it – and submitted new evidentiary materials – in its reply brief. A full and fair opening brief should have included these materials so that Dyson could have presented adversarial argument on the meaning of those materials.[2]

## IV. MAYTAG ADMITS TO MAKING NEW ARGUMENTS ON PERSONAL JURISDICTION.

Maytag admits that its opening brief in support of its motion to amend attempted to make the showing of personal jurisdiction required to join new parties. Maytag then claims that its reply brief merely "explained the basis" of its opening positions in 8 new pages of argument and facts. Maytag Ans. Br. (D.I. 219) at 9.

Maytag does not, however, claim that any of its 8 new pages of argument or facts were unavailable when it filed its opening brief. Nor could it. Maytag also makes no effort to explain why these 8 pages of new facts and argument are any different than the stricken facts and argument in decisions like Allergan, Inc. v. Alcon, Inc., C.A. No. 04-968-GMS, Order at 3 (D. Del. June 13, 2005) (striking discussion and argument about public document available at time opening brief was filed), Rockwell Techs., LLC v. Spectra-Physics Lasers, Inc., C.A. No. 00-589-GMS, 2002 U.S. Dist. LEXIS 5180, *17-*18 (D. Del. March 26, 2002) (striking new argument in favor of motion for summary judgment that was not mentioned in opening brief), and Webloyalty.com, Inc. v. Consumer Innovations, LLC, C.A.

---

[2] We note that Maytag improperly uses 2 full pages of its answering brief on this motion to argue the merits of its financial analysis. Should the Court not strike the improper reply materials and instead grant the motion for sur-reply, Dyson will explain why these improper arguments also do not support Maytag's positions.

8

No. 04-90-KAJ, 2005 U.S. Dist. LEXIS 791 (D. Del. Jan. 13, 2005) (striking reply where the reply brief made the majority of the party's arguments). All of Maytag's new personal jurisdiction arguments and facts (listed on page 10 of our opening brief, D.I. 214) fall squarely within the examples of these cases and therefore should be stricken.

Maytag also makes no effort to explain why it is fair or equitable to deprive the Court from an adversarial presentation on Maytag's new facts and arguments. No page limits prevented Maytag from including these new facts and new arguments in its opening brief (Maytag's entire motion to amend opening brief was 12 pages long). No lack of discovery prevented Maytag from including these new facts and new arguments in its opening brief.

In short, had Maytag included those new arguments and facts in its opening brief, Dyson could – and would – have refuted them all. Instead, Maytag did not file a full and fair opening brief and now opposes even filing a sur-reply brief, thereby depriving the Court of a full adversarial showing on whether Maytag in fact has even a colorable basis to assert that personal jurisdiction exists.

### V.   MAYTAG'S ARGUMENTS ABOUT THE FEBRUARY 10 DEADLINE SHOULD HAVE BEEN MADE IN ITS OPENING BRIEF.

Maytag defends its new arguments about the February 10 deadline with rhetoric like "baseless" and "nonsense" and claims that its new discussion of the February 10 deadline was simply a "response." Maytag Ans. Br. (D.I. 219) at 10.

The fact of the matter is that Maytag had an obligation in its opening brief on the motion to amend to explain why it could not, through reasonable diligence, have met the February 10 deadline. See D.I. 186 at 14 (discussing Maytag's burdens). Maytag instead focused its opening brief on allegedly late-produced discovery, but never addressed whether it could, through reasonable diligence, have uncovered the same information before the

9

February deadline. After we demonstrated that Maytag could and probably had done so, Maytag made a completely unfounded and wrong assertion about the nature of the February 10 deadline in order to excuse its failures. Again, Maytag's new excuse is nothing more than a new factual theory that Dyson would – and could – have squarely refuted had Maytag bothered to address the correct legal standard in its opening brief.

## VI. MAYTAG'S NEW FACTS SHOULD HAVE BEEN INCLUDED IN A FULL AND FAIR OPENING BRIEF.

Maytag next argues that it is permissible to cite completely new portions of depositions from which it previously cited. The problem, however, comes from the use Maytag seeks to make of these new deposition citations. Maytag does not use these new citations to show that Dyson took evidence out of context or to show the "meaning and significance" of the testimony cited in Maytag's opening briefs, as Maytag alleges. Rather, after Dyson demonstrated that Maytag's original evidence was unhelpful, Maytag simply added new citations to the record, all of which say essentially the same thing as the original citations. Because this was done on reply, Dyson is prevented from showing why these new citations also do not support Maytag's position. Again, Dyson, as the opposing party, should have been given a full and fair opportunity to respond.[3]

---

[3] Maytag complains that its reply exhibit B on the motion to amend does mention Dyson Limited. Reply exhibit C, however, as noted in Dyson's opening brief on this motion, does not mention any of the proposed new parties. Moreover, the reply exhibit B further proves our point – if Maytag needs to rely on the fact that Dyson Limited's name appears in this document, why should Dyson not have been given an opportunity to explain what was truly going on in its answering brief?

10

## VII. MAYTAG CONCEDES SEVERAL KEY PORTIONS OF DYSON'S MOTION.

Even if Maytag were correct about the issues it does address, Maytag did not discuss or attempt to justify the use of many of the items that were raised in Dyson's motion to strike. These include:

- A Hall & Partners report (D.I. 204 Exh. O) and the discussion thereof in Maytag's preliminary injunction reply brief (D.I. 203 at 14), see Dyson's Op. Br. (D.I. 214) at 8;

- A financial statement of Dyson Technology Limited (D.I. 204 Exh. E) and the discussion thereof in Maytag's preliminary injunction reply brief (D.I. 203 at 5), see Dyson's Op. Br. (D.I. 214) at 8;

- A publicly available Dyson James Limited financial statement (D.I. 204 Exh. D) and the discussion thereof in Maytag's preliminary injunction reply brief (D.I. 203 at 4), see Dyson's Op. Br. (D.I. 214) at 8-9;

- An internal Dyson marketing report (D.I. 204 Exh. I) and the discussion thereof in Maytag's preliminary injunction reply brief (D.I. 203 at 6), see Dyson's Op. Br. (D.I. 214) at 9; or

- Citations to an additional witness and the discussion thereof in Maytag's preliminary injunction reply brief (D.I. 203 at 6), see Dyson's Op. Br. (D.I. 214) at 9.

At least as to these items – as to which Maytag makes no argument – the Court should grant Dyson's motion.

## VIII. MAYTAG'S ZEAL TO WIN SHOULD NOT OUTWEIGH A FAIR AND ORDERLY JUDICIAL PROCESS.

Maytag filed its two motions very near the close of discovery and then chose to raise nearly 2¾ inches of new factual material in its reply briefs – at a time when it knew that Dyson could not respond. Moreover, Maytag's two motions seek drastic relief. In the first, Maytag seeks in essence a pre-judgment attachment on $300 million of Dyson, Inc.'s assets. In the second, Maytag seeks to join three United Kingdom citizens who are indirect

stockholders of Dyson, Inc. – including James Dyson personally – so that it can accuse these indirect stockholders of false advertising in the United States.

These are serious motions, yet Maytag sought to carry its evidentiary burdens by holding back significant new materials for reply (Maytag's reply on the motion to amend, for example, cites 19 new exhibits in reply versus 4 in its opening brief), thereby depriving the Court of adversarial discussion on those exhibits and the related arguments. Now, Maytag even objects to a full adversarial presentation to the Court on its motions on grounds that a sur-reply will cause "further delay." Any delay and any prejudice from a full adversarial process on Maytag's motions falls squarely at Maytag's feet, however, as it was Maytag that failed to provide the full support for its motions until its reply briefs. Maytag chose the timing of its motions, not Dyson. Maytag could have filed them earlier, or later, but sought the precise timing for obvious tactical reasons. There would be no prejudice to Maytag at all in providing Dyson with a sur-reply, as Maytag makes only lawyer-argument to substantiate its claims of prejudice.[4]

---

[4] Maytag also takes Dyson to task for including a very few substantive examples of the points it would make in a sur-reply. A few minimal examples of the mischief being made by Maytag's briefing tactics was, of course, necessary to avoid an argument from Maytag that this motion was much ado about nothing. There are important, substantive responses to Maytag's new arguments and new evidence that would be articulated in detail should the Court grant the motion for leave to file a sur-reply rather than striking Maytag's new evidence and arguments.

## CONCLUSION

For the reasons discussed in detail above and in their opening brief, Dyson, Inc. and Dyson Technology Limited respectfully request the Court to grant this motion to strike and to enter the order attached to Dyson's motion.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ John W Shaw

C. Barr Flinn (No. 4092)
John W. Shaw (No. 3362)
Adam W. Poff (No. 3990)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
bflinn@ycst.com

*Attorneys for Plaintiffs Dyson Technology Limited and Dyson, Inc.*

OF COUNSEL:

Garrard R. Beeney
Richard C. Pepperman, II
James T. Williams
Keith McKenna
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
(212) 558-4000

Steven F. Reich
Jeffrey S. Edelstein
Tamar Feder
Christopher A. Cole
MANATT, PHELPS & PHILLIPS, LLP
7 Times Square
New York, New York 10036
(212) 790-4500

Dated: January 12, 2006

13

## CERTIFICATE OF SERVICE

I, John W. Shaw, hereby certify that on January 12, 2007, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Francis DiGiovanni, Esquire
> James D. Heisman, Esquire
> CONNOLLY BOVE LODGE & HUTZ LLP
> The Nemours Building – 8th Floor
> 1007 N. Orange Street
> Wilmington, DE 19801

I further certify that on January 12, 2007, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following in the manner indicated:

**BY E-MAIL AND FEDERAL EXPRESS**

> Ray L. Weber, Esquire
> Laura J. Gentilcore, Esquire
> RENNER, KENNER, GREIVE, BOBAK,
>   TAYLOR & WEBER
> 400 First National Tower
> Akron, OH 44308

> Kimball R. Anderson, Esquire
> Stephen P. Durchslag, Esquire
> WINSTON & STRAWN LLP
> 35 W. Wacker Drive
> Chicago, IL 60601-9703

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____
C. Barr Flinn (No. 4092)
John W. Shaw (No. 3362)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
jshaw@ycst.com

*Attorneys for Dyson Technology Limited and Dyson, Inc.*