### REDACTED – PUBLIC VERSION

# YOUNG CONAWAY STARGATT & TAYLOR, LLP

THE BRANDYWINE BUILDING
1000 WEST STREET, 17TH FLOOR
WILMINGTON, DELAWARE 19801

JOHN W. SHAW
DIRECT DIAL: (302) 571-6689
DIRECT FAX: (302) 576-3334
jshaw@ycst.com

(302) 571-6600
(302) 571-1253 FAX
(800) 253-2234 (DE ONLY)
www.youngconaway.com

**BY HAND DELIVERY AND CM/ECF**
The Honorable Gregory M. Sleet
J. Caleb Boggs Federal Building
844 N. King Street, Room 4324, Lockbox 19
Wilmington, Delaware 19801

**FILED UNDER SEAL**

February 12, 2007

Re:    Dyson Technology Ltd. and Dyson, Inc. v. Maytag Corp., C.A. No. 05-434-GMS

Dear Judge Sleet:

We are counsel to Dyson Technology Limited and Dyson, Inc. (collectively, "Dyson") and write to oppose defendant Maytag Corporation's motion to compel the production of documents and information protected by the attorney-client and work-product privileges. Maytag's application ignores governing Federal Rules of Civil Procedure and controlling Third Circuit precedent. The Court should deny the motion.

On January 15, 2007, as required by Rule 26(a)(2)(A), Dyson disclosed James Widdowson, Product Performance Manager for Dyson Ltd., as a witness likely to offer technical or scientific testimony under Rule 702 and voluntarily provided Maytag with a report of his expected testimony, attached as Exhibit A ("Report").[1] As part of his regular job, Widdowson has extensive knowledge relating to Dyson's substantiation of its advertising claims and has communicated regularly over several years with both Dyson's in-house and outside attorneys regarding this subject. (See Declaration of James Widdowson, executed February 12, 2007, and attached as Exhibit B, ¶¶ 2, 4-7).[2] As set forth in the Report, Widdowson will testify primarily about testing Dyson conducted before this litigation as part of its regular advertising substantiation program, based on his first-hand knowledge of such facts. Such testimony necessarily involves scientific and technical matters and thus falls within the definition of "expert testimony." See Fed. R. Evid. 701, 702; see also Notes of Advisory Committee on 2000 Amendments to Rule 701. The relevant factual materials known to Widdowson were produced in discovery, and, in the Report, Widdowson identifies voluminous factual materials previously produced to Maytag that he relied on in reaching his opinions. Maytag already has deposed Widdowson as a fact and 30(b)(6) witness, and Dyson is making him available again to be deposed on the subject matter of his Report.

Maytag now claims that it "is entitled to all information and documents considered by Widdowson *before or in connection* with the formulation of his expert opinions, regardless of any claims of attorney-client privilege, work-product protection, or time limitations" – a demand that stretches back to *January 2001*, a full six years before his disclosure as a Rule 702 witness. (Mot. at 5; see Exhibit C (Maytag Ltr., dated Jan. 19, 2007); see also Exhibit D (Dyson Ltr., dated Jan. 25, 2007)[3] According to

---

[1] Dyson voluntarily served the Report in an effort to avoid a motion in limine on the eve of trial seeking to preclude Dyson from offering Widdowson's Rule 702 testimony.

[2] Widdowson's job responsibilities include organizing and analyzing testing required to substantiate claims made on Dyson product packaging and in Dyson marketing communications. (See Widdowson Dec. ¶ 2)

[3] While Maytag demands that Dyson produce every privileged communication that Widdowson has looked at in the past six years, Maytag itself has withheld production of privileged and other materials relating to the subject matter of its experts' reports. Indeed, with respect to Dyson's expert subpoenas, Maytag has objected "to the Subpoenas to the extent it seeks documents, objects, things and testimony

Young Conaway Stargatt & Taylor, LLP
The Honorable Gregory M. Sleet
Page 2

Maytag, by proffering Widdowson as a fact witness likely to offer expert testimony, Dyson has waived all applicable privileges as a result of the operation of Federal Rule of Civil Procedure 26(a)(2)(B). Maytag is wrong for two fundamental reasons.

*First*, Rule 26(a)(2)(B) does not apply to Widdowson. Rule 26(a)(2)(B) provides, in relevant part, that "a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony" shall produce a "written report" containing, *inter alia*, "the data or other information considered by the witness in forming the opinions." By its own terms, Rule 26(a)(2)(B) covers only three categories of expert witnesses ("retained," "specially employed," and employees who "regularly" testify as experts). Carved out are ordinary employees who do not regularly offer expert testimony and other unretained witnesses like Widdowson who nonetheless may testify under Rule 702. See DIRECTV, Inc. v. Pepe, 431 F.3d 162, 167 (3d Cir. 2005) (directing courts to look to plain language as basis for statutory interpretation). The 1993 Advisory Committee Notes confirm the meaning of the Rule's plain language: Rule 26(a)(2)(B) "applies only to those experts specially employed to provide such testimony in the case or whose duties as an employee of a party regularly involve the giving of such testimony."

Widdowson does not fall within any of the three enumerated categories. Widdowson was not "retained or specially employed" to act as an expert. To the contrary, he is involved on a day-to-day basis with Dyson's technical claim substantiation and has been a Dyson Ltd. employee performing services for all Dyson entities, including the Dyson plaintiffs, for six years. During this time, he has testified on Dyson's behalf exactly twice. Accordingly, Rule 26(a)(2)(B) and its disclosure obligations do not apply to Widdowson. See, e.g., Adams v. Gateway, Inc., No. 2:02 CV 106 TS, 2006 U.S. Dist. LEXIS 14413, at *11-12 (D. Utah Mar. 10, 2006) (ordinary employee proffering expert testimony was not retained, specially employed or regularly testifying expert witness subject to Rule 26(a)(2)(B) requirements).

Contrary to Maytag's contention, the law distinguishes between what is required of retained and unretained experts, and, further, the class of unretained experts includes more than the classic "treating physician." The Second Circuit, in Bank of China, New York Branch v. NBM LLC, 359 F.3d 171, 182 n.13 (2d Cir. 2004), confirms both points. Bank of China recognized that the requirements of Rule 26(a)(2)(B) do not apply to an unretained expert: "although defendants were entitled to *notice*, pursuant to 26(a)(2)(A), that Huang would testify as an expert, they were not entitled to an *expert report* under Rule 26(a)(2)(B)." Id. The Court reasoned that, because Huang – an employee of plaintiff with expertise concerning various international banking practices at issue in the case, id. at 182 – "was not specially retained to provide expert testimony, and his duties as an employee . . . do not regularly include giving expert testimony, Rule 26(a)(2)(B) does not apply." For its conclusion, the Second Circuit relied on the persuasive analysis of Kent v. Katz, No. 2:99 Civ. 189, 2000 WL 33711516, at *1 (D. Vt. Aug. 9, 2000), which had held: "The structure of Rule 26(a)(2) provides a clear distinction between the retained class of experts and the unretained class of experts. . . . This distinction protects experts from preparing reports when they are not retained to do so and when it is outside the scope of their regular duties."[4]

---

protected by the attorney-client privilege and/or work product doctrine." (See Exhibits E, F hereto) Thus, before it perceived a strategic advantage, Maytag "understood" the law differently from what it now argues and, in fact, still has not withdrawn its own objections to conform to the position it now takes with the Court.

[4] Other courts agree. See Bowling v. Hasbro, No. 05-229S, 2006 WL 2345941, at *2 (D.R.I. Aug. 10, 2006) (enforcing "unambiguous procedural rule" as "written"); Adams, 2006 U.S. Dist. LEXIS 14413, at

YOUNG CONAWAY STARGATT & TAYLOR, LLP

The Honorable Gregory M. Sleet
Page 3

    Indeed, this Rule reflects Congress' policy decision to permit a party's most knowledgeable employees to testify as experts without the wholesale waiver of attorney-client or work-product privileges. By excluding unretained experts from Rule 26(a)(2)(B), Congress struck the proper balance: these individuals may testify on expert matters *and* consult with counsel without fear of compromising the fundamental attorney-client or work product privileges. Absent such a balance, either parties to litigation would be deprived of the assistance of employees most knowledgeable in relevant technical areas, since communications with them would not be protected, or courts and juries would be deprived of the benefit of hearing from party employees most familiar with factual and technical matters at issue. Congress chose not to put a party to that choice. Indeed, the 2000 amendments to Rule 701, which for the first time brought persons like Widdowson within the ambit of "expert testimony," see Notes of Advisory Committee on 2000 Amendments to Fed. R. Evid. 701, fail to even hint that the amendments were intended to work the broad and previously unknown waiver of privileges Maytag seeks here. Had such a broad waiver been intended, surely Congress would have made some mention of the waiver.

    Maytag cannot show otherwise. It fails to analyze Rule 26(a)(2)'s language, or even provide the Rule to the Court. (See Mot. at 3-4) Instead, Maytag relies on decisions that incorrectly ignore the exclusion of unretained experts from Rule 26(a)(2)(B) by doing exactly what the Third Circuit prohibits: rejecting the Rule's plain language and relying instead on broad policy statements pertaining to general disclosure requirements of trial expert witnesses. Maytag's heavy reliance on Day v. Consol. Rail Corp., No. 95 Civ. 968 (PKL), 1996 U.S. Dist. LEXIS 6596, at *4-5 (S.D.N.Y. May 15, 1996), is particularly egregious, as Day does not survive the Second Circuit's subsequent Bank of China decision. Maytag's other cases are no more persuasive. KW Plastics v. U.S. Can Co., 199 F.R.D. 687, 689 (M.D. Ala. 2000), relied overwhelmingly on the discredited Day decision, and Super Film of America, Inc. v. UCB Films, Inc., 219 F.R.D. 649, 658-59 (D. Kan. 2004), failed entirely to analyze the terms of the Rule, including the categories of experts that it covers.

    Maytag asks the Court to construe Rule 26(a)(2) as requiring *all* witnesses designated as experts to comply with the Rule – despite the fact that the Rule says exactly the opposite. See Fed R. Civ. P. 26(a)(2)(A), (B); see also Fed. R. Civ. P. 26(b)(4) (confirming that certain witnesses are not required to provide reports by providing that "*[i]f* a report from the expert is required under subdivision (a)(2)(B), the deposition shall not be conducted . . . .") (emphasis added).[5] That is not the law. Rule 26(a)(2)(B) does not apply to Widdowson.

---

*10 ("plain language of the rule facilitates a party's use of an employee for expert witness testimony without the burden of a formal report"); Duluth Lighthouse for the Blind v. C.G. Bretting Mfg. Co., 199 F.R.D. 320, 325 (D. Minn. 2000) (district courts "are not empowered to modify the plain language of the Federal Rules" to require unretained experts to submit reports); Navajo Nation v. Norris, 189 F.R.D. 610, 613 (E.D. Wash. 1999) ("Those who drafted FRCP 26(a)(2)(B) could simply have required reports from all employee-experts if that is what they had intended."); Kansas-Nebraska Natural Gas Co. v. Marathon Oil Co., 109 F.R.D. 12, 16 (D. Neb. 1983) ("retained or specially employed . . . implies something more than simply the assignment of a current employee to a particular problem raised by current litigation").

[5] Maytag's focus on Widdowson's employment by Dyson Ltd. is a red herring. In addition to the fact that Widdowson has performed services for the Dyson plaintiffs for years, nothing in Rule 702 or Rule 26(a)(2)(A) requires that Widdowson be employed directly by a party to qualify as an unretained expert under Rule 26(a)(2)(A). Nor is there authority for the proposition that an unretained expert becomes subject to the disclosure requirements of Rule 26(a)(2)(B) by virtue of the voluntary submission of a report outlining his proposed testimony.

YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Honorable Gregory M. Sleet
Page 4

*Second*, even if Widdowson were subject to all of Rule 26(a)(2)(B)'s requirements, Maytag has provided no authority showing that Dyson has waived *all* attorney-client or core work-product privileges, and, indeed, Maytag ignores law in this Circuit to the contrary. In Bogosian v. Gulf Oil Corp., 738 F.2d 587 (3d Cir. 1984), the Third Circuit considered whether the designation of an individual as an expert waives the qualified work-product privilege on materials actually "considered" by the expert. After closely analyzing Rules 26(b)(3) and (b)(4), the Court unequivocally concluded that, at least with respect to core work product, it does not. Id. at 594. Bogosian remains the law in this Circuit and is fatal to Maytag's motion.

In Bogosian, a litigant demanded production of an attorney's memorandum, which summarized key aspects of the case and had been provided to the party's expert. Id. at 589-90. The Third Circuit reviewed Rule 26(b)(3), which codifies the work-product doctrine, and distinguished between the protections afforded noncore and core attorney work product. It considered Rule 26(b)(4), which permits certain expert discovery, and held that Rule 26(b)(3), permits production only of *noncore* work product (*i.e.*, work product that does not reveal an attorney's "mental impressions, conclusions, opinions or legal theories") provided to a testifying expert. Id. at 594-95. The Court explained that, while the language of Rule 26(b)(3) explicitly makes the protection afforded noncore work product "subject to" a party's right to obtain expert discovery under Rule 26(b)(4), it does not similarly condition the additional protection afforded *core* work product. Therefore, the Court concluded that Rule 26(b)(3) protects from production core work product provided to a testifying expert. Bogosian even expressly holds that all facts provided to the expert must be produced (just as Rule 26(a)(2)(B) requires), and that a party may not shield fact materials from production simply by including them in a letter from a lawyer. See Bogosian, 738 F.2d at 595. This is precisely the problem that the 1993 amendments to Rule 26(a)(2)(B) were intended to solve, as previously litigants had attempted to interlace facts with work product in order to avoid production of the facts considered by their experts.

The Third Circuit recently cited Bogosian approvingly, relying on it directly for the proposition that "attorney opinion work product shown to experts . . . was not discoverable" and reaffirming its reasoning. In re Cendant, 343 F.3d 658, 665 (3d Cir. 2003). This makes sense. While the 1993 amendments to the federal rules amended Rule 26(a), *they made no change to Rule 26(b)(3)* – leaving intact that part of Rule 26 on which the Third Circuit based its conclusion in Bogosian. If Congress had meant to alter its careful balancing of work-product protection and expert discovery, it would have said so, either in Rule 26(a)(2)(B) (newly added in the 1993 amendments), by amending Rule 26(b)(3) or by expressly disavowing Bogosian in the Official Comments, as usually occurs when Rule changes overrule appellate precedent. It did none of these.

District courts within this Circuit also have continued to follow Bogosian. See St. Mary's Area Water Auth. v. St. Paul Fire & Marine Ins. Co., No. 1:CV-04-1593, 2006 U.S. Dist. LEXIS 39639, at *6 (M.D. Pa. June 15, 2006) (relying on Bogosian to deny production of core work product materials; "In re: Cendant Corp. makes it clear that Bogosian's holding is still binding on lower courts"); Krisa v. Equitable Life Assurance Soc'y, 196 F.R.D. 254, 260 (M.D. Pa. 2000) (Bogosian remains viable; Rule 26(b)(3) protection of core attorney-work product does not yield to Rule 26(a)(2)); cf. United States v. Dentsply Int'l, Inc., 187 F.R.D. 152, 155-56 (D. Del. 1999) (relying on Bogosian for proposition that "one party may discover relevant *facts* known or available to the other party") (emphasis added)).

Maytag never confronts Bogosian's analysis and instead leaps to the conclusion that the 1993 enactment of 26(a)(2)(B) rendered Bogosian's pre-amendment discovery decision obsolete. (Mot. 1-2) Principally relying on CP Kelco U.S. Inc. v. Pharmacia Corp., 213 F.R.D. 176 (D. Del. 2003), Maytag argues that "the disclosure requirements of Rule 26(a)(2)(B) trump all claims of privilege and work

Young Conaway Stargatt & Taylor, LLP

The Honorable Gregory M. Sleet
Page 5

product protection with regard to client information furnished to or considered by a testifying expert in formulating his opinions." (Mot. 2)  This is not so.  Kelco dealt with the provision of attorney-client information to an *independent* testifying expert.  See id. at 177, 179.[6]  The district court held only that the affirmative act of disclosing attorney-client communications to a third party, with whom no confidential attorney-client relationship existed, waived the privilege.  Id. at 179.[7]  Not only has Dyson *not* turned over privileged communications to a third party as in Kelco, but Kelco does not at all address the Third Circuit holding or reasoning in Bogosian.  It provides no basis to evade Bogosian or require Dyson to produce privileged communications of any nature.[8]

Finally, the compelling policy behind Bogosian of protecting attorneys' mental processes and the "freedom of thought essential to carefully reasoned trial preparation," 738 F.2d at 593, applies more forcefully to the protection of ordinarily inviolate attorney-client communications. Disclosure here of the hundreds of privileged communications between Widdowson and Dyson's counsel over the course of the past six years also would work a manifest injustice, since almost all of these communications occurred well before Dyson disclosed Widdowson, as Rule 26(a)(2)(A) required it to do, if not to communications made before the commencement of this litigation.  Indeed "going back and ferreting out all the documents" related to Widdowson's testimony – while eviscerating the attorney-client privilege – would "be extremely burdensome" and "likely produce an extraordinary amount of irrelevant or unhelpful information" that would have no bearing on an effective cross-examination of him.  United States v. American Electric Power Serv. Corp., Nos. 2:99-cv-1182, 2:99-cv-1250, 2006 U.S. Dist. LEXIS 93643, at *11 (S.D. Ohio Dec. 28, 2006).

For these reasons, we respectfully request that the Court deny Maytag's motion.

Respectfully submitted,

/s/ *John W. Shaw*

John W. Shaw (No. 3362)

cc:    Clerk of the Court (By CM/ECF)
       Francis DiGiovanni, Esquire (By Hand Delivery)
       Ray L. Weber, Esquire (By E-mail)
       Laura J. Gentilcore, Esquire (By E-mail)
       Kimball R. Anderson, Esquire (By E-mail)
       Stephen P. Durchslag, Esquire (By E-mail)

---

[6] The original brief in Kelco also makes clear that core work product – and thus the viability of Bogosian – was not at issue.  (See Exhibit G at 5).

[7] This accords with Third Circuit law holding that a party waives the attorney-client privilege "*only* when he or she 'has made the decision and taken the affirmative step in the litigation to place the advice of the attorney in issue.'"  U.S. Fire Ins. Co. v. Asbestosspray, Inc., 182 F.3d 201, 212 (3d Cir. 1999) (emphasis added) (citations omitted).

[8]  The other cases Maytag cites (Mot. 1-2) likewise fail to examine the underlying rationale of Bogosian or its continued viability following the 1993 amendments.  To the contrary, these courts relied on policy grounds (like the need for cross-examination) that the Bogosian court itself considered and rejected.