# EXHIBIT A

## REDACTED IN ITS ENTIRETY

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| DYSON TECHNOLOGY LIMITED | ) | |
| and DYSON, INC., | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No. 05-434-GMS |
| v. | ) | |
| | ) | |
| MAYTAG CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**DECLARATION OF JAMES WIDDOWSON**

I, JAMES WIDDOWSON, declare:

1.     I am employed as Product Performance Manager at Dyson, Ltd., a position I have held since November 2004. Prior to November 2004, I was employed at Dyson as Process Improvement Manager (February 2002-November 2004) and as a Design Quality Engineer (January 2001-February 2002).

2.     In my position as Product Performance Manager, I am involved in developing and organizing the testing-based substantiation for claims made on Dyson product packaging and in Dyson marketing communications. In that capacity, I act as Dyson's worldwide technical liaison with in-house and outside counsel for all marketing and advertising issues, challenges and lawsuits. I am also responsible for analyzing competitive products worldwide with respect to marketing strategy and legal challenges. Additionally, I serve as Dyson's representative to global performance testing standards organisations including IEC, ASTM, and CENELEC.

3.     I do not testify regularly as an expert witness for Dyson. In the past four years, I have testified in only two actions on behalf of Dyson, both times in European proceedings – *Dyson v. Philips* (Amsterdam, Netherlands, Case # 2005/1483) and *Dyson v. Electrolux*, 2006 (Viborg, Denmark, Case # B-1583-06).

4.      As part of the performance of my job duties, I regularly communicate with in-house counsel and outside counsel for Dyson entities worldwide to discuss Dyson's advertising claims and competitor advertising claims, among other topics. I am responsible for technical claim substantiation for all Dyson entities, including for the U.S. Dyson entities that are parties to the present action.

5.      It is my understanding that the law firm of Manatt, Phelps & Phillips LLP ("Manatt") serves as legal counsel to Dyson, Ltd., as well as to Dyson Technology Limited and Dyson, Inc.

6.      Specifically, Manatt has served as legal counsel to Dyson's U.S. and U.K. entities on advertising issues since May 2005. Manatt attorneys have provided Dyson entities in the U.S. and U.K. with legal counsel relating to Dyson and competitor advertising claims, including multiple lawsuits and advertising challenges. These lawsuits and advertising challenges have involved many of the same advertising claims and substantiation materials at issue in the present action. Since May 2005, I have had extensive communications with Manatt attorneys regarding these other lawsuits and advertising challenges, including Dyson's false advertising claim against Maytag Corporation, *Dyson Inc. v. Maytag Corp*, Civil Action No.: 06-654-GMS (D. Del. 2006).

7.      In the present case, I have served as the primary technical liaison between Manatt attorneys and the testing department at Dyson. As such, I have participated in extensive attorney-client communications regarding litigation strategy and have been privy to Manatt attorneys' mental impressions, conclusions, opinions, and legal theories. Manatt attorneys have asked me to answer specific technical questions, to interpret specific technical documents, to review draft litigation materials and to provide input on litigation strategies. A review of my email inbox shows literally hundreds of emails between myself and Manatt attorneys between

May 2005 and the present.

8.      I have previously been deposed in this case both as a fact witness and as a corporate representative pursuant to Federal Rule of Civil Procedure 30(b)(6).

9.      I was first asked to testify as an expert witness in the above captioned litigation on January 9, 2007. I agreed to testify on claim substantiation issues and to provide a report of such testimony as part of my regular employment, but I was not retained or specially employed to provide expert testimony. I was not offered and have not received any extra compensation for doing so.

10.     On January 15, 2007, I submitted a report of my proposed testimony in this litigation.

11.     As an attachment to my report, I included a list of over 200 bates-stamped documents that I considered in formulating the opinions contained in the report. This list was comprised of testing materials that substantiate Dyson's advertising claims at issue. All of these documents have been previously produced in this litigation or are publicly available.

12.     However, as I made clear in my report, because I am primarily responsible for technical claim substantiation at Dyson, in the course of my regular job performance, I have considered thousands of documents and materials over the course of several years that relate to the design, specifications, testing, and performance of Dyson's U.S. vacuum cleaners. Accordingly, it is impossible for me to itemize every document upon which I relied in formulating the claim substantiation opinions in my report. However, I believe that the substantiation documents I have identified are more than sufficient to establish that Dyson's advertising claims at issue in this litigation are truthful, accurate, and substantiated.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct, and that I executed this declaration on February 12, 2007.

James Widdowson

80385109.1

# EXHIBIT C

# WINSTON & STRAWN LLP

43 RUE DU RHONE
1204 GENEVA, SWITZERLAND

BUCKLERSBURY HOUSE
3 QUEEN VICTORIA STREET
LONDON, EC4N 8NH

333 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-1543

35 WEST WACKER DRIVE
CHICAGO, ILLINOIS 60601-9703

(312) 558-5600

FACSIMILE (312) 558-5700

www.winston.com

200 PARK AVENUE
NEW YORK, NEW YORK 10166-4193

21 AVENUE VICTOR HUGO
75116 PARIS, FRANCE

101 CALIFORNIA STREET
SAN FRANCISCO, CALIFORNIA 94111-5894

1700 K STREET, N.W.
WASHINGTON, D.C. 20006-3817

RONALD Y. ROTHSTEIN
(312) 558-7464
rrothstein@winston.com

January 19, 2007

**VIA EMAIL**

Christopher A. Cole
One Metro Center
700 12th Street, NW, Suite 1100
Washington, D.C. 20005

Re:     **Dyson's Expert, James Widdowson**

Dear Chris:

In view of the recent identification of James Widdowson as an expert witness for Dyson, it is our belief that Dyson has irrevocably waived its attorney-client privilege as to Widdowson.

Based upon the broad disclosure requirements contained in Federal Rule of Civil Procedure 26(a)(2)(B) as to expert witnesses, "litigants are no longer able to argue that materials furnished to their experts to be used in forming their opinions—whether or not ultimately relied upon by the expert—are privileged or otherwise protected from disclosure when such persons are testifying or being deposed." Fed. R. Civ. P. 26(a)(2), advisory committee notes, 1993 amendment; see also CP Kelco U.S. v. Pharmacia Corp., 213 F.R.D. 176, 178-179 (D. Del. 2003). Further, Rule 26(a)(2)(B) was crafted to so as to provide for the broad and encompassing discovery of *all* materials and information even remotely "considered" by the expert in developing his opinions. See Fed. R. Civ. P. 26(a)(2), advisory committee notes, 1993 amendment; Synthes Spin Co., L.P., v. Walden, 232 F.R.D. 460, 463 (E.D. Pa. 2005); Vitalo v. Cabot Corp., 212 F.R.D. 478, 474 (E.D. Pa. 2002); Monsanto Co. v. Aventis Cropscience, N.V., 214 F.R.D. 545, 546-49 (E.D. Mo. 2002). Rule 26(a)(2)(b), therefore, requires the "disclosure of *all information, whether privileged or not*, that a testifying expert generates, reviews, reflects upon, reads, and/or uses in connection with the formulation of his opinions, even if the testifying expert ultimately rejects the information." Synthes Spin Co., 232 F.R.D. at 464 (emphasis added); see also In re Pioneer Hi-Bred Int'l, Inc., 238 F.3d 1370, 1375-76 (Fed. Cir. 2001); CP Kelco U.S., Inc. v. Pharmacia Corp., 213 F.R.D. 176, 178-79 (D. Del. 2003); Cornell Research Found., Inc. v. Hewlett, 223 F.R.D. 55, 78-79 (N.D.N.Y. 2003); Vitalo, 212 F.R.D. at 479; Monsanto Co., 214 F.R.D. at 546-49.

WINSTON & STRAWN LLP

Christopher A. Cole
January 19, 2007
Page 2

Accordingly, pursuant to the expert discovery requests served on Dyson on January 16, 2007, we expect that Dyson will produce all documents responsive to Document Request Nos. 5-7, regardless of any claim of attorney-client privilege Dyson may have had prior to the introduction of James Widdowson as an expert witness. Further, we expect that the documents produced in response to the aforementioned document requests will date back to Widdowson's earliest evaluation of the substantiation of Dyson's advertising claims, prior to and regardless of his formal designation as an expert for Dyson, and will include all documents and materials, whether received from Dyson, Dyson's counsel, or other third-parties, that were reviewed, considered, studied, used, or looked at by him. If Dyson refuses to produce these documents, we will be forced to take this matter up with Judge Sleet in an expedited manner.

If you have any questions regarding the above, please do not hesitate to contact me.

Regards,

Ronald Y. Rothstein

cc:    Kimball R. Anderson
       Stephen P. Durchslag
       Anthony DiSarro
       Lisa J. Parker
       Ray L. Weber
       Richard C. Pepperman II
       Keith McKenna
       Steven F. Reich
       Tamar Feder

# EXHIBIT D



**Tamar Feder**
Manatt, Phelps & Phillips, LLP
Direct Dial: (310) 312-4161
E-mail: tfeder@Manatt.com

January 25, 2007

Client-Matter: 27699-060

**BY E-MAIL RROTHSTEIN@WINSTON.COM**

Ronald Y. Rothstein, Esq.
Winston & Strawn LLP
35 W. Wacker Drive
Chicago, Illinois 60601-9703

      Re:    **Dyson v. Maytag (D.Del.) --- Expert Deposition Schedule**

Dear Ron:

      I write in response to your January 19, 2007 letter to my colleague, Chris Cole, regarding the report of James Widdowson. In your letter, you argue that because Dyson has designated Mr. Widdowson as an expert witness that Dyson must now produce all documents that "date back to Widdowson's earliest evaluation of the substantiation of Dyson's advertising claims, prior to and regardless of his formal designation as an expert for Dyson, and will include all documents and materials, whether received from Dyson, Dyson's counsel, or other third-parties, that were reviewed, considered, studies, used, *or looked at by him*." You base this supposed requirement on Federal Rules of Civil Procedure 26(a)(2) and 26(a)(2)(B). We disagree with your analysis and conclusions.

      Mr. Widdowson is not a Rule 26(a)(2)(B) expert to whom the disclosure requirements of Rule 26(a)(2)(B) apply. He was neither "retained" nor "specially employed by Dyson" to provide expert testimony in this case, nor do his "duties as an employee of [Dyson] regularly involve giving expert testimony . . . ." The disclosure requirements of Fed. R. 26(a)(2)(B) therefore do not apply to Mr. Widdowson. For that reason alone, the cases you cite in your letter that deal with disclosures required of experts under Rule 26(a)(2)(B) are completely inapposite.

      Mr. Widdowson is a Dyson employee involved on a day-to-day basis with technical claim substantiation and other matters. His trial testimony regarding Dyson's claim substantiation is likely to involve matters of a scientific and technical nature. Thus, his testimony will likely fall within the definition of expert testimony as defined by Rule 701 and 702, and his identity was disclosed under Rule 26(a)(2)(A). There is substantial authority that no expert reports are required of this type of witness. *See, e.g., ABB Automation Inc. v. Schlumberger Resource Management Servs., Inc.*, C.A. No. 01-077-SLR, Order at 1, Robinson, C.J. (D. Del. Feb. 13, 2003) (holding that employees offering expert testimony may testify without reports where "[t]he subject matter of their testimony is within their personal knowledge

# manatt

manatt | phelps | phillips

Ronald Y. Rothstein, Esq.
January 25, 2007
Page 2

and expertise, as opposed to knowledge acquired for purposes of this litigation"). However, because there is also authority indicating that Rule 26(a)(2)(B) applies to all persons giving expert testimony under Rules 701 and 702, we concluded that Mr. Widdowson should provide a report so that his testimony would not be subject to a motion to exclude by Maytag for failure to disclose. In addition to providing the report, Dyson also is making Mr. Widdowson available for a second day of deposition, as is required of all persons providing expert testimony at trial (whether or not they were required to provide a report) under Rule 26(b)(4)(A), and all of the documents on which Mr. Widdowson relies already have been produced or are publicly available. Nonetheless, providing such a report and supporting documents and making him available for deposition does not subject Mr. Widdowson to the disclosure requirements of Rule 26(a)(2)(B).

Courts considering the scope of disclosure required by employees who provide expert testimony have concluded that designation of employees as testifying "experts" does not waive attorney-client or attorney work-product privilege. For example, in the case of *United States v. American Electric Power Service Corp.*, 2006 U.S. Dist. LEXIS 93643 (S.D. Ohio Dec. 28, 2006), the court wrote:

> Especially for an employee who has reviewed a vast number of documents over the course of a long career, going back and ferreting out all documents related to the subject-matter of an expert opinion could be extremely burdensome and would likely produce an extraordinary amount of irrelevant or unhelpful information. Additionally, by deeming any privileges attaching to all such documents to have been waived, the Court would also intrude significantly upon the privilege involved. In fact, were such a rule to be applied in wholesale fashion, it might discourage an employer from ever designating an employee as a testifying expert because of the fear that all manner of privileged documents and communications would thereby be subject to disclosure simply because they relate in some way to the subject matter of the witness' testimony.

Other courts have agreed. In *Mushroom Associates v. Monterey Mushrooms, Inc.,* 1992 U.S. Dist. LEXIS 20640 (N.D. Cal. 1992), the court refused to compel production of all documents to which an employee testifying as an expert (and co-inventor of the patent at issue) had had access, "regardless of whether such documents were used in the formulation of his expert testimony." Id. at *5. Much like Maytag's requests in this case of Mr. Widdowson, the defendants seeking discovery in *Mushroom* "argue[d] that all documents pertaining to the '832 patent to which Ferguson has had access during the life of the patent are part of any testimony he

**manatt**

manatt | phelps | phillips

Ronald Y. Rothstein, Esq.
January 25, 2007
Page 3

would give, even if such documents were not actually reviewed for the purposes of his testimony." *Id.*

The court refused to compel production of "privileged documents that Ferguson has had access to during the life of the '832 patent, but not considered by him as a basis for his expert testimony . . . ." It went on to say, "In sum, this court finds that the naming of an employee as an expert does not result in a blanket waiver of all privilege with respect to every document that the employee has had access to during the course of his employment. The waiver only applies to those documents which the employee considered when formulating his expert testimony." *Id.* at *7.

Moreover, even if Mr. Widdowson falls within the scope of Rule 26(a)(2)(B), which he does not, binding Third Circuit precedent makes clear that a party does not waive work product protection by providing materials that would otherwise be immune from discovery to a testifying expert. In *Bogosian v. Gulf Oil Corp.*, 738 F.2d 587 (3d Cir. 1984), the United States Court of Appeals for the Third Circuit held that opinion work product was absolutely protected from discovery and that factual work product was discoverable only upon a showing of substantial need, even if disclosed to a testifying expert. *Id.* at 594-95. In the *Bogosian* case, the petitioners sought to protect from discovery the identification and production of documents prepared by their attorneys and shared with their testifying expert. *Id.* at 588-89. In ruling in the petitioners' favor, the Third Circuit reasoned that Rule 26(b)(3)'s protection of core attorney work product was not trumped by provisions of Rule 26 authorizing discovery relating to expert witnesses. *Id.* at 594. The Court concluded that an attorney's opinion work product included "interviews, statements, memoranda, correspondence, briefs, mental impressions [and personal beliefs" and that nothing in the Federal Rules abrogated the privilege accorded opinion work product. *Id.* at 592 (citing *Hickman v. Taylor*, 329 U.S. 495, 512 (1947)). *See also St. Mary's Area Water Auth. v. St. Paul Fire & Marine Ins. Co.*, No. 1:CV-04-1593, 2006 U.S. Dist. LEXIS 39639, at *4 (M.D. Pa. June 15, 2006) (citing to *Bogosian* for the holding that core attorney work-product was not discoverable even if it is disclosed to an expert); *Krisa v. Equitable Life Assurance Soc'y*, 196 F.R.D. 254, 260 (M.D. Pa. 2000) (affirming that *Bogosian* is still leading authority in Third Circuit).[1]

The propositions for which you cite cases in your letter on the scope of production (if required at all) are therefore simply not good law in the Third Circuit. The *Bogosian* holding, stating that work product is protected from disclosure, is binding on the United States District Court for the District of Delaware. As an aside, we note that your firm appears to have agreed

---

[1] 6 Moore's Federal Practice § 26.80[1][a] (2005) also takes the view that "nothing in the advisory committee notes to the 1993 amendments . . . suggests that Rule 26(b)(4)(A) was intended to abrogate the enhanced protection for opinion work product."

**manatt**

manatt | phelps | phillips

Ronald Y. Rothstein, Esq.
January 25, 2007
Page 4

with this conclusion, because we have identified instances where your attorneys have redacted correspondence within the disclosures Maytag provided on behalf of its own Rule 26(a)(2)(B) experts. Your firm also appears to have taken the position that with respect to Rule 26(a)(2)(B) experts with whom Maytag has had a prior relationship, the disclosure requirements of Rule 26(a)(2)(B) attach only once the expert begins work as a testifying expert. This is inconsistent with the position you are taking with respect to James Widdowson.

We trust this letter adequately sets forth our position regarding the applicable law. If there is any legal authority to the contrary of which you aware, please advise us of same and we will be happy to consider it. If you would like to discuss this further, we would be happy to do so.

Sincerely,

Tamar Feder

41080527.1

# EXHIBIT E

# WINSTON & STRAWN LLP

| | | |
|---|---|---|
| 43 RUE DU RHONE<br>1204 GENEVA, SWITZERLAND | 35 WEST WACKER DRIVE<br>CHICAGO, ILLINOIS 60601-9703 | 200 PARK AVENUE<br>NEW YORK, NEW YORK 10166-4193 |
| 99 GRESHAM STREET<br>LONDON EC2V 7NG | (312) 558-5600 | 25 AVENUE MARCEAU<br>75116 PARIS, FRANCE |
| 333 SOUTH GRAND AVENUE<br>LOS ANGELES, CALIFORNIA 90071-1543 | FACSIMILE (312) 558-5700 | 101 CALIFORNIA STREET<br>SAN FRANCISCO, CALIFORNIA 94111-5894 |
| | www.winston.com | 1700 K STREET, N.W.<br>WASHINGTON, D.C. 20006-3817 |

312/558-3203
Lparker@winston.com

December 29, 2006

**FACSIMILE AND U.S. MAIL**

Steven F. Reich, Esquire
Manatt, Phelps & Phillips, LLP
7 Times Square
New York, NY 10036
212-790-4500

        Re:    **Dyson Technology Ltd., et al. v. Maytag Corporation**

Dear Mr. Reich:

        I write you regarding the five non-party subpoenas (the "Subpoenas") for documents issued to Mohan Rao, John Balough, Yoram Wind, Ronald Battema, and Lewis Migliore (collectively, "the experts") on December 26, 2006, by your clients, the Plaintiffs in the above-referenced litigation (the "Litigation").    Defendant Maytag Corporation and the experts (collectively, "Respondents") submit the following objections to the Subpoenas.

## General Objections

1.      Respondents object to the Subpoenas to the extent they seek confidential and/or proprietary information.

2.      Respondents object to the Subpoenas to the extent they do not seek information relevant to the subject matter of the Litigation and/or are not reasonably calculated to lead to the discovery of admissible evidence.

3.      Respondents object to the Subpoenas to the extent they seek documents, things and testimony protected by the attorney-client privilege and/or work product doctrine.

WINSTON & STRAWN LLP
S. Reich
December 29, 2006

4.      Respondents object to the Subpoenas to the extent they seek to impose obligations beyond those imposed by the Federal Rules of Civil Procedure governing expert discovery and discovery generally.

5.      Respondents object to the document requests to the extent they call for production of documents that have already been produced by a party or third party in this litigation.

6.      Respondents object to the document requests to the extent that they are overly broad, unduly burdensome, calculated to harass, or designed to obtain irrelevant materials.

7.      Respondents object to the document requests to the extent that they are vague and ambiguous.

8.      Respondents object to the document requests to the extent they request documents or things not in the experts' possession, custody, or control, or that do not exist.

9.      A response to a request which states that the experts will produce documents is not a representation that such documents exist or ever have existed, but instead is a representation that to the extent that such documents do exist and are in the possession, custody, or control of the experts, they will be produced in accordance with the terms of the Respondents' response to the specific request.

10.     Respondents object to the Subpoenas because they fail to allow for or even specify a reasonable, discernable time for compliance, calling for the production of documents "forthwith" after service.

11.     Respondents expressly reserve the right to supplement these objections with additional objections or information as such information becomes available to Respondents in the course of this litigation.

These General Objections are incorporated by reference into each of Respondents' specific responses below.

### Specific Objections to the Documents Requested of the experts

**1. Any and all documents provided to you in connection with the litigation.**

**Response:**   Subject to and without waiver of the General Objections set forth above, Respondents further object to this request on the grounds that it is overly broad, unduly burdensome and seeks information not relevant to this Litigation and/or is not reasonably calculated to lead to the discovery of admissible evidence as mandated by the Federal Rules of

2

WINSTON & STRAWN LLP
S. Reich
December 29, 2006

Civil Procedure.  Many documents that would be technically responsive to this request are wholly unrelated to this Litigation, are irrelevant to the issues in this case, or have nothing to do with the experts' reports and opinions expressed therein.  Respondents further object to this request as it calls for the provision of confidential and/or proprietary information, and it seeks information more readily obtainable through other sources and parties to the Litigation. Respondents also object to this request on the grounds that it exceeds the scope of discovery permitted by Federal Rule of Civil Procedure 26(a)(2).  Respondents further object to the request to the extent that it calls for drafts or documents related to drafts of the expert reports. Additionally, Respondents object to this request on the grounds that it is vague, ambiguous, and seeks information that may be protected by the attorney-client privilege and work product doctrine.  Respondents also object to this request to the extent that it calls for the production of documents outside of their possession, custody, and/or control.  Respondents further object to the extent the expenses Respondents will incur in responding to the requests outweigh any possible benefit that will be received by Plaintiffs.  Respondents further object to this request on the ground that it is duplicative of the other document requests.   Subject to these objections, Respondents will produce documents responsive to this request, to the extent such documents exist and are in the possession, custody, or control of the experts.

**2.  Any and all documents reviewed by you in connection with the litigation.**

**Response:**  Subject to and without waiver of the General Objections set forth above, Respondents further object to this request on the grounds that it is overly broad, unduly burdensome and seeks information not relevant to this Litigation and/or is not reasonably calculated to lead to the discovery of admissible evidence as mandated by the Federal Rules of Civil Procedure.  Many documents that would be technically responsive to this request are wholly unrelated to this Litigation, are irrelevant to the issues in this case, or have nothing to do

WINSTON & STRAWN LLP
S. Reich
December 29, 2006

with the experts' reports and opinions expressed therein. Respondents further object to this request as it calls for the provision of confidential and/or proprietary information, and it seeks information more readily obtainable through other sources and parties to the Litigation. Respondents also object to this request on the ground that it exceeds the scope of discovery permitted by Federal Rule of Civil Procedure 26(a)(2). Respondents further object to the request to the extent that it calls for drafts or documents related to drafts of the expert reports. Additionally, Respondents object to this request on the grounds that it is vague, ambiguous, and seeks information that may be protected by the attorney-client privilege and work product doctrine. Respondents also object to this request to the extent that it calls for the production of documents outside of their possession, custody, and/or control. Respondents further object to the extent the expenses Respondents will incur in responding to the requests outweigh any possible benefit that will be received by Plaintiffs. Respondents further object to this request on the ground that it is duplicative of the other document requests. Subject to these objections, Respondents will produce documents responsive to this request, to the extent such documents exist and are in the possession, custody, or control of the experts.

3.  **Any and all documents considered by you related to the Litigation.**

**Response:**  Subject to and without waiver of the General Objections set forth above, Respondents further object to this request on the grounds that it is overly broad, unduly burdensome and seeks information not relevant to this Litigation and/or is not reasonably calculated to lead to the discovery of admissible evidence as mandated by the Federal Rules of Civil Procedure. Many documents that would be technically responsive to this request are wholly unrelated to this Litigation, are irrelevant to the issues in this case, or have nothing to do with the experts' reports and opinions expressed therein. Respondents further object to this request as it calls for the provision of confidential and/or proprietary information, and it seeks

4

WINSTON & STRAWN LLP
S. Reich
December 29, 2006

information more readily obtainable through other sources and parties to the Litigation. Respondents also object to this request on the ground that it exceeds the scope of discovery permitted by Federal Rule of Civil Procedure 26(a)(2). Respondents further object to the request to the extent that it calls for drafts or documents related to drafts of the expert reports. Additionally, Respondents object to this request on the grounds that it is vague, ambiguous, and seeks information that may be protected by the attorney-client privilege and work product doctrine. Respondents also object to this request to the extent that it calls for the production of documents outside of their possession, custody, and/or control. Respondents further object to the extent the expenses Respondents will incur in responding to the requests outweigh any possible benefit that will be received by Plaintiffs. Respondents further object to this request on the ground that it is duplicative of the other document requests. Subject to these objections, Respondents will produce documents responsive to this request, to the extent such documents exist and are in the possession, custody, or control of the experts.

   **4. Any and all documents relied upon by you in connection with any opinion formed by you related to the litigation.**

**Response:** Subject to and without waiver of the General Objections set forth above, Respondents further object to this request on the grounds that it is overly broad, unduly burdensome and seeks information not relevant to this Litigation and/or is not reasonably calculated to lead to the discovery of admissible evidence as mandated by the Federal Rules of Civil Procedure. Many documents that would be technically responsive to this request are wholly unrelated to this Litigation, are irrelevant to the issues in this case, or have nothing to do with the experts' reports and opinions expressed therein. Respondents further object to this request as it calls for the provision of confidential and/or proprietary information, and it seeks information more readily obtainable through other sources and parties to the Litigation. Respondents also object to this request on the ground that it exceeds the scope of discovery

WINSTON & STRAWN LLP
S. Reich
December 29, 2006

permitted by Federal Rule of Civil Procedure 26(a)(2). Respondents further object to the request

to the extent that it calls for drafts or documents related to drafts of the expert reports.

Additionally, Respondents object to this request on the grounds that it is vague, ambiguous, and

seeks information that may be protected by the attorney-client privilege and work product

doctrine. Respondents also object to this request to the extent that it calls for the production of

documents outside of their possession, custody, and/or control. Respondents further object to the

extent the expenses Respondents will incur in responding to the requests outweigh any possible

benefit that will be received by Plaintiffs. Respondents further object to this request on the

ground that it is duplicative of the other document requests. Subject to these objections,

Respondents will produce documents responsive to this request, to the extent such documents

exist and are in the possession, custody, or control of the experts.

5. **Any and all documents related to any opinion formed by you in the litigation, including without limitation drafts of your expert report, notes and work papers related to your expert report, and communications with Maytag or its representatives regarding preparation of your trial or deposition testimony. [request Number 5 as in subpoenas to John Balough, Yoram Wind, Ronald Battema, and Lewis Migliore]**

   **Any and all documents related to any opinion formed by you in the litigation, including without limitation drafts of your expert report and communications with Maytag or its representatives regarding preparation of your trial or deposition testimony. [request number 5 from subpoena to Mohan Rao]**

**Response:** Subject to and without waiver of the General Objections set forth above,

Respondents further object to these requests on the grounds that they are overly broad, unduly

burdensome and seek information not relevant to this Litigation and/or are not reasonably

calculated to lead to the discovery of admissible evidence as mandated by the Federal Rules of

Civil Procedure. Many documents that would be technically responsive to these requests are

wholly unrelated to this litigation, are irrelevant to the issues in this case, or have nothing to do

with the experts' reports and opinions expressed therein. Respondents further object to these

WINSTON & STRAWN LLP
S. Reich
December 29, 2006

requests as they call for the provision of confidential and/or proprietary information, and they seek information more readily obtainable through other sources and parties to the Litigation. Respondents also object to these requests on the grounds that they exceed the scope of discovery permitted by Federal Rule of Civil Procedure 26(a)(2). Respondents further object to the requests to the extent that they call for drafts or documents related to drafts of the expert reports. Additionally, Respondents object to these requests on the grounds that they are vague, ambiguous, and seek information that may be protected by the attorney-client privilege and work product doctrine. Respondents also object to these requests to the extent that they call for the production of documents outside of the experts' possession, custody, and/or control. Respondents further object to the extent the expenses Respondents will incur in responding to the requests outweigh any possible benefit that will be received by Plaintiffs. Respondents further object to these requests on the ground that they are duplicative of the other document requests. Subject to these objections, Respondents will produce documents responsive to these requests, to the extent such documents exist and are in the possession, custody, or control of the experts.

6. **All publications by you since January 1, 1997.**

**Response:** Respondents object to this request as being overbroad, unduly burdensome, irrelevant, and not calculated to lead to the discovery of admissible evidence. Respondents also object to this request as vague and ambiguous. Respondents further object to this request to the extent that it requires the production of documents protected by the attorney-client privilege or attorney work product doctrine. Respondents also object to this request to the extent that it calls for the production of documents outside of the experts' possession, custody, and/or control. In addition, Respondents object to this request to the extent that it seeks the production of confidential or proprietary information. Subject to, and without waiver of, these objections

**WINSTON & STRAWN** LLP

S. Reich
December 29, 2006

Respondents will produce, to the extent that they exist and are in the custody, possession and/or control of the experts, documents upon which the experts have relied in connection with the preparation of the expert reports.

7. **Any and all transcripts of any prior testimony given in a case in which you were designated or qualified as an expert.**

In addition to the General Objections, Respondents object to this request on the ground that it exceeds the scope of discovery permitted by Federal Rule of Civil Procedure 26(a)(2). Respondents also object to the request to the extent it seeks confidential or proprietary information or information prohibited from disclosure pursuant to a protective order in separate litigation unrelated to the parties in this case. Without waiving the foregoing general and specific objections, the experts will produce documents responsive to Request For Production No. 7, if any, in its possession or control concerning testimony given within the past four years.

Sincerely,

Lisa J. Parker

LJP:lks

cc:     Kimball R. Anderson
        Stephen P. Durchslag
        Ray L. Weber
        Richard C. Pepperman II
        Tamar Feder
        Anthony DiSarro
        Keith McKenna
        Ronald Y. Rothstein

8

# EXHIBIT F

# WINSTON & STRAWN LLP

43 RUE DU RHONE
1204 GENEVA, SWITZERLAND

99 GRESHAM STREET
LONDON EC2V 7NG

333 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-1543

35 WEST WACKER DRIVE
CHICAGO, ILLINOIS 60601-9703

(312) 558-5600

FACSIMILE (312) 558-5700

www.winston.com

200 PARK AVENUE
NEW YORK, NEW YORK 10166-4193

25 AVENUE MARCEAU
75116 PARIS, FRANCE

101 CALIFORNIA STREET
SAN FRANCISCO, CALIFORNIA 94111-5894

1700 K STREET, N.W.
WASHINGTON, D.C. 20006-3817

WRITER'S DIRECT DIAL NUMBER

312/558-3203
Lparker@winston.com

February 8, 2007

**FACSIMILE AND U.S. MAIL**

Steven F. Reich, Esquire
Manatt, Phelps & Phillips, LLP
7 Times Square
New York, NY 10036
212-790-4500

Re:  **Dyson Technology Ltd., et al. v. Maytag Corporation**

Dear Mr. Reich:

I write you regarding the non-party subpoena (the "Subpoena") for documents issued to John Balough ("the expert") on January 25, 2007, by your clients, the Plaintiffs in the above-referenced litigation (the "Litigation"). Defendant Maytag Corporation and the expert (collectively, "Respondents") submit the following objections to the Subpoena.

**General Objections**

1.    Respondents object to the Subpoena to the extent it seeks confidential and/or proprietary information.

2.    Respondents object to the Subpoena to the extent it does not seek information relevant to the subject matter of the Litigation and/or is not reasonably calculated to lead to the discovery of admissible evidence.

3.    Respondents object to the Subpoena to the extent it seeks documents, objects, things and testimony protected by the attorney-client privilege and/or work product doctrine.

4.    Respondents object to the Subpoena to the extent it seeks to impose obligations beyond those imposed by the Federal Rules of Civil Procedure governing expert discovery and discovery generally.

S. Reich
February 8, 2007

5.     Respondents object to the document and objects requests to the extent they call for production of documents that have already been produced by a party or third party in this litigation.

6.     Respondents object to the document and objects requests to the extent that they are overly broad, unduly burdensome, calculated to harass, or designed to obtain irrelevant materials.

7.     Respondents object to the document and objects requests to the extent that they are vague and ambiguous.

8.     Respondents object to the document and object requests to the extent they request documents or things not in the expert's possession, custody, or control, or that do not exist.

9.     Respondents object to the document and object requests to the extent they request documents or things in the possession of non-parties and not the expert.

10.    A response to a request which states that the expert will produce documents or objects is not a representation that such documents or objects exist or ever have existed, but instead is a representation that to the extent that such documents or objects do exist and are in the possession, custody, or control of the expert, they will be produced in accordance with the terms of the Respondents' response to the specific request.

11.    Respondents object to the Subpoena because it fails to allow for or even specify a reasonable, discernable time for compliance, calling for the production of documents and objects "forthwith" after service.

12.    Respondents expressly reserve the right to supplement these objections with additional objections or information as such information becomes available to Respondents in the course of this litigation.

These General Objections are incorporated by reference into each of Respondents' specific responses below.

## Specific Objections to the Documents and Objects Requested of the Expert

**1. Any and all documents provided to you and/or IBR in connection with the litigation.**

**Response:**   Subject to and without waiver of the General Objections set forth above, Respondents further object to this request on the grounds that it is overly broad, unduly burdensome and seeks information not relevant to this Litigation and/or is not reasonably

2

S. Reich
February 8, 2007

calculated to lead to the discovery of admissible evidence as mandated by the Federal Rules of Civil Procedure. Further, respondents object to the over breadth of the requests which seek documents wholly unrelated to this Litigation, documents that are irrelevant to the issues in this case, or have nothing to do with the expert's report and opinions expressed therein. Respondents further object to this request as it calls for the provision of confidential and/or proprietary information, and it seeks information more readily obtainable through other sources and parties to the Litigation. Respondents also object to this request on the grounds that it exceeds the scope of discovery permitted by Federal Rule of Civil Procedure 26(a)(2). Respondents further object to the request to the extent that it calls for drafts or documents related to drafts of the expert reports. Additionally, Respondents object to this request on the grounds that it is vague, ambiguous, and seeks information that may be protected by the attorney-client privilege and work product doctrine. Respondents also object to this request to the extent that it calls for the production of documents outside of their possession, custody, and/or control. Respondents also object to this request to the extent it seeks documents from non-parties, not the expert. Respondents further object to the extent the expenses Respondents will incur in responding to the request outweigh any possible benefit that will be received by Plaintiffs. Respondents further object to this request on the ground that it is duplicative of the other document requests. Subject to these objections, Respondents will produce documents responsive to this request, to the extent such documents exist and are in the possession, custody, or control of the expert.

2. **Any and all documents reviewed by you and/or IBR in connection with the litigation.**

**Response:** Subject to and without waiver of the General Objections set forth above, Respondents further object to this request on the grounds that it is overly broad, unduly burdensome and seeks information not relevant to this Litigation and/or is not reasonably calculated to lead to the discovery of admissible evidence as mandated by the Federal Rules of

S. Reich
February 8, 2007

Civil Procedure. Further, respondents object to the over breadth of the requests which seek documents wholly unrelated to this Litigation, documents that are irrelevant to the issues in this case, or have nothing to do with the expert's report and opinions expressed therein. Respondents further object to this request as it calls for the provision of confidential and/or proprietary information, and it seeks information more readily obtainable through other sources and parties to the Litigation. Respondents further object to this request as it calls for the provision of confidential and/or proprietary information, and it seeks information more readily obtainable through other sources and parties to the Litigation. Respondents also object to this request on the grounds that it exceeds the scope of discovery permitted by Federal Rule of Civil Procedure 26(a)(2). Respondents further object to the request to the extent that it calls for drafts or documents related to drafts of the expert reports. Additionally, Respondents object to this request on the grounds that it is vague, ambiguous, and seeks information that may be protected by the attorney-client privilege and work product doctrine. Respondents also object to this request to the extent that it calls for the production of documents outside of their possession, custody, and/or control. Respondents also object to this request to the extent it seeks documents from non-parties, not the expert. Respondents further object to the extent the expenses Respondents will incur in responding to the request outweigh any possible benefit that will be received by Plaintiffs. Respondents further object to this request on the ground that it is duplicative of the other document requests. Subject to these objections, Respondents will produce documents responsive to this request, to the extent such documents exist and are in the possession, custody, or control of the expert.

3. **Any and all documents considered by you and/or IBR in connection with the litigation.**

**Response:** Subject to and without waiver of the General Objections set forth above, Respondents further object to this request on the grounds that it is overly broad, unduly

4

S. Reich
February 8, 2007

burdensome and seeks information not relevant to this Litigation and/or is not reasonably calculated to lead to the discovery of admissible evidence as mandated by the Federal Rules of Civil Procedure. Further, respondents object to the over breadth of the requests which seek documents wholly unrelated to this Litigation, documents that are irrelevant to the issues in this case, or have nothing to do with the expert's report and opinions expressed therein. Respondents further object to this request as it calls for the provision of confidential and/or proprietary information, and it seeks information more readily obtainable through other sources and parties to the Litigation. Respondents also object to this request on the grounds that it exceeds the scope of discovery permitted by Federal Rule of Civil Procedure 26(a)(2). Respondents further object to the request to the extent that it calls for drafts or documents related to drafts of the expert reports. Additionally, Respondents object to this request on the grounds that it is vague, ambiguous, and seeks information that may be protected by the attorney-client privilege and work product doctrine. Respondents also object to this request to the extent that it calls for the production of documents outside of their possession, custody, and/or control. Respondents also object to this request to the extent it seeks documents from non-parties, not the expert. Respondents further object to the extent the expenses Respondents will incur in responding to the request outweigh any possible benefit that will be received by Plaintiffs. Respondents further object to this request on the ground that it is duplicative of the other document requests. Subject to these objections, Respondents will produce documents responsive to this request, to the extent such documents exist and are in the possession, custody, or control of the expert.

**4. Any and all documents relied upon by you and/or IBR in forming any opinion described in the expert report you submitted in this litigation.**

**Response:** Subject to and without waiver of the General Objections set forth above, Respondents further object to this request on the grounds that it is overly broad, unduly burdensome and seeks information not relevant to this Litigation and/or is not reasonably

S. Reich
February 8, 2007

calculated to lead to the discovery of admissible evidence as mandated by the Federal Rules of Civil Procedure. Further, respondents object to the over breadth of the requests which seek documents wholly unrelated to this Litigation, documents that are irrelevant to the issues in this case, or have nothing to do with the expert's report and opinions expressed therein. Respondents further object to this request as it calls for the provision of confidential and/or proprietary information, and it seeks information more readily obtainable through other sources and parties to the Litigation. Respondents also object to this request on the grounds that it exceeds the scope of discovery permitted by Federal Rule of Civil Procedure 26(a)(2). Respondents further object to the request to the extent that it calls for drafts or documents related to drafts of the expert reports. Additionally, Respondents object to this request on the grounds that it is vague, ambiguous, and seeks information that may be protected by the attorney-client privilege and work product doctrine. Respondents also object to this request to the extent that it calls for the production of documents outside of their possession, custody, and/or control. Respondents also object to this request to the extent it seeks documents from non-parties, not the expert. Respondents further object to the extent the expenses Respondents will incur in responding to the request outweigh any possible benefit that will be received by Plaintiffs. Respondents further object to this request on the ground that it is duplicative of the other document requests. Subject to these objections, Respondents will produce documents responsive to this request, to the extent such documents exist and are in the possession, custody, or control of the expert.

5. **Any and all documents created by you and/or IBR in connection with the litigation.**

**Response:** Subject to and without waiver of the General Objections set forth above, Respondents further object to this request on the grounds that it is overly broad, unduly burdensome and seeks information not relevant to this Litigation and/or is not reasonably calculated to lead to the discovery of admissible evidence as mandated by the Federal Rules of

S. Reich
February 8, 2007

Civil Procedure.  Further, respondents object to the over breadth of the requests which seek documents wholly unrelated to this Litigation, documents that are irrelevant to the issues in this case, or have nothing to do with the expert's report and opinions expressed therein.  Respondents further object to this request as it calls for the provision of confidential and/or proprietary information, and it seeks information more readily obtainable through other sources and parties to the Litigation.  Respondents also object to this request on the grounds that it exceeds the scope of discovery permitted by Federal Rule of Civil Procedure 26(a)(2).  Respondents further object to the request to the extent that it calls for drafts or documents related to drafts of the expert reports.  Additionally, Respondents object to this request on the grounds that it is vague, ambiguous, and seeks information that may be protected by the attorney-client privilege and work product doctrine.  Respondents also object to this request to the extent that it calls for the production of documents outside of their possession, custody, and/or control.  Respondents also object to this request to the extent it seeks documents from non-parties, not the expert. Respondents further object to the extent the expenses Respondents will incur in responding to the request outweigh any possible benefit that will be received by Plaintiffs.  Respondents further object to this request on the ground that it is duplicative of the other document requests.  Subject to these objections, Respondents will produce documents responsive to this request, to the extent such documents exist and are in the possession, custody, or control of the expert.

6.  **Any and all documents related to any opinion formed by you and/or IBR in connection with this the litigation, including without limitation drafts, notes, work papers, laboratory notebooks, protocols, methodologies, and underlying data.**

**Response:**  Subject to and without waiver of the General Objections set forth above, Respondents further object to this request on the grounds that it is overly broad, unduly burdensome and seeks information not relevant to this Litigation and/or is not reasonably calculated to lead to the discovery of admissible evidence as mandated by the Federal Rules of

S. Reich
February 8, 2007

Civil Procedure. Further, respondents object to the over breadth of the requests which seek documents wholly unrelated to this Litigation, documents that are irrelevant to the issues in this case, or have nothing to do with the expert's report and opinions expressed therein. Respondents further object to this request as it calls for the provision of confidential and/or proprietary information, and it seeks information more readily obtainable through other sources and parties to the Litigation. Respondents also object to this request on the grounds that it exceeds the scope of discovery permitted by Federal Rule of Civil Procedure 26(a)(2). Respondents further object to the request to the extent that it calls for drafts or documents related to drafts of the expert reports. Additionally, Respondents object to this request on the grounds that it is vague, ambiguous, and seeks information that may be protected by the attorney-client privilege and work product doctrine. Respondents also object to this request to the extent that it calls for the production of documents outside of their possession, custody, and/or control. Respondents also object to this request to the extent it seeks documents from non-parties, not the expert. Respondents further object to the extent the expenses Respondents will incur in responding to the request outweigh any possible benefit that will be received by Plaintiffs. Respondents further object to this request on the ground that it is duplicative of the other document requests. Subject to these objections, Respondents will produce documents responsive to this request, to the extent such documents exist and are in the possession, custody, or control of the expert.

7. **Any and all documents related to any testing performed by you and/or IBR in connection with this litigation, including without limitation drafts, notes, work papers, laboratory notebooks, protocols methodologies, underlying data, and documents concerning the composition of any dust considered or used in such testing.**

**Response:** Subject to and without waiver of the General Objections set forth above, Respondents further object to this request on the grounds that it is overly broad, unduly burdensome and seeks information not relevant to this Litigation and/or is not reasonably

S. Reich
February 8, 2007

calculated to lead to the discovery of admissible evidence as mandated by the Federal Rules of Civil Procedure. Further, respondents object to the over breadth of the requests which seek documents wholly unrelated to this Litigation, documents that are irrelevant to the issues in this case, or have nothing to do with the expert's report and opinions expressed therein. Respondents further object to this request as it calls for the provision of confidential and/or proprietary information, and it seeks information more readily obtainable through other sources and parties to the Litigation. Respondents also object to this request on the grounds that it exceeds the scope of discovery permitted by Federal Rule of Civil Procedure 26(a)(2). Respondents further object to the request to the extent that it calls for drafts or documents related to drafts of the expert reports. Additionally, Respondents object to this request on the grounds that it is vague, ambiguous, and seeks information that may be protected by the attorney-client privilege and work product doctrine. Respondents also object to this request to the extent that it calls for the production of documents outside of their possession, custody, and/or control. Respondents also object to this request to the extent it seeks documents from non-parties, not the expert. Respondents further object to the extent the expenses Respondents will incur in responding to the request outweigh any possible benefit that will be received by Plaintiffs. Respondents further object to this request on the ground that it is duplicative of the other document requests. Subject to these objections, Respondents will produce documents responsive to this request, to the extent such documents exist and are in the possession, custody, or control of the expert.

**8. Samples of all types of dust considered or used in connection with any testing performed by you and/or IBR related to the litigation.**

**Response:** Subject to and without waiver of the General Objections set forth above, Respondents further object to this request on the grounds that it is overly broad, unduly burdensome and seeks information not relevant to this Litigation and/or is not reasonably

S. Reich
February 8, 2007

calculated to lead to the discovery of admissible evidence as mandated by the Federal Rules of Civil Procedure. Further, respondents object to the over breadth of the requests which seek documents wholly unrelated to this Litigation, documents that are irrelevant to the issues in this case, or have nothing to do with the expert's report and opinions expressed therein. Respondents further object to this request as it calls for the provision of confidential and/or proprietary information, and it seeks information more readily obtainable through other sources and parties to the Litigation. Respondents also object to this request on the grounds that it exceeds the scope of discovery permitted by Federal Rule of Civil Procedure 26(a)(2). Additionally, Respondents object to this request on the grounds that it is vague, ambiguous, and seeks information that may be protected by the attorney-client privilege and work product doctrine. Respondents also object to this request to the extent that it calls for the production of objects outside of their possession, custody, and/or control. Respondents also object to this request to the extent it seeks documents from non-parties, not the expert. Respondents further object to the extent the expenses Respondents will incur in responding to the request outweighs any possible benefit that will be received by Plaintiffs. Subject to these objections, Respondents will produce objects responsive to this request, to the extent such objects exist and are in the possession, custody, or control of the expert.

9.  **The vacuum cleaners considered or used in connection with any testing performed by you and/or IBR related to the litigation.**

**Response:** Subject to and without waiver of the General Objections set forth above, Respondents further object to this request on the grounds that it is overly broad, unduly burdensome and seeks information not relevant to this Litigation and/or is not reasonably calculated to lead to the discovery of admissible evidence as mandated by the Federal Rules of Civil Procedure. Further, respondents object to the over breadth of the requests which seek objects wholly unrelated to this Litigation, objects that are irrelevant to the issues in this case, or

S. Reich
February 8, 2007

have nothing to do with the expert's report and opinions expressed therein. Respondents further object to this request as it calls for the provision of confidential and/or proprietary information, and it seeks information more readily obtainable through other sources and parties to the Litigation. Respondents also object to this request on the grounds that it exceeds the scope of discovery permitted by Federal Rule of Civil Procedure 26(a)(2). Additionally, Respondents object to this request on the grounds that it is vague, ambiguous, and seeks information that may be protected by the attorney-client privilege and work product doctrine. Respondents also object to this request to the extent that it calls for the production of objects outside of their possession, custody, and/or control. Respondents also object to this request to the extent it seeks objects from non-parties, not the expert. Respondents further object to the extent the expenses Respondents will incur in responding to the request outweighs any possible benefit that will be received by Plaintiffs. Subject to these objections, Respondents will produce objects responsive to this request, to the extent such objects exist and are in the possession, custody, or control of the expert.

**10. All publications by you since January 1, 1997.**

**Response:** Respondents object to this request as being overbroad, unduly burdensome, irrelevant, and not calculated to lead to the discovery of admissible evidence. Respondents also object to this request as vague and ambiguous. Respondents further object to this request to the extent that it requires the production of documents protected by the attorney-client privilege or attorney work product doctrine. Respondents also object to this request to the extent that it calls for the production of documents outside of the expert's possession, custody, and/or control. Respondents also object to this request to the extent it seeks documents from non-parties, not the expert. In addition, Respondents object to this request to the extent that it seeks the production of confidential or proprietary information. Subject to, and without waiver of, these objections

11

S. Reich
February 8, 2007

Respondents will produce, to the extent that they exist and are in the custody, possession and/or control of the expert, documents upon which the expert has relied in connection with the preparation of the expert reports.

**11. Any and all transcripts of any prior testimony given by you in a case in which you were designated or qualified as an expert.**

**Response:** In addition to the General Objections, Respondents object to this request on the ground that it exceeds the scope of discovery permitted by Federal Rule of Civil Procedure 26(a)(2). Respondents also object to the request to the extent it seeks confidential or proprietary information or information prohibited from disclosure pursuant to a protective order in separate litigation unrelated to the parties in this case. Without waiving the foregoing general and specific objections, the expert will produce documents responsive to Request For Production No. 11, if any, in the expert's possession or control concerning testimony given within the past four years.

**12. Any and all transcripts of any prior expert testimony given by any IBR personnel who participated in the testing described in the expert report you submitted in this litigation.**

**Response:** In addition to the General Objections, Respondents object to this request on the ground that it exceeds the scope of discovery permitted by Federal Rule of Civil Procedure 26(a)(2). Respondents also object to the request to the extent it seeks confidential or proprietary information or information prohibited from disclosure pursuant to a protective order in separate litigation unrelated to the parties in this case. Respondents also object to this request to the extent it seeks documents from non-parties, not the expert. Without waiving the foregoing general and specific objections, the expert will produce documents responsive to Request For Production No. 12, if any, in the expert's possession or control concerning testimony given within the past four years.

S. Reich
February 8, 2007

\*          \*          \*

Finally, without waiving any of the general objections or responses set forth above to Subpoena requests number 8 and 9 seeking samples of all types of dust and vacuum cleaners used by the expert and IBR in testing, Respondents do agree to make available for inspection the dust samples and vacuum cleaners used for testing performed in conjunction with preparation of the expert's report. The inspection will occur at a time and place to be mutually agreed upon by the parties and IBR.

Sincerely,

Lisa J. Parker

LJP:lks

cc:  Kimball R. Anderson
     Stephen P. Durchslag
     Ray L. Weber
     Richard C. Pepperman II
     Tamar Feder
     Anthony DiSarro
     Keith McKenna
     Ronald Y. Rothstein
     Christopher Cole

13

# EXHIBIT G

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------- X
                                                                 :
CP Kelco U.S., Inc.,                                             :
                                                                 :
                           Plaintiff,                            :
                                                                 :
            v.                                                   :   Civil Action No.01-240-###
                                                                 :   (MPT)
Pharmacia Corporation,                                           :
                                                                 :
                           Defendants,                           :
            v.                                                   :
                                                                 :
Lehman Brothers Merchant Banking Partners II, L.P.,              :
Hercules Incorporated and Hercules 2000, LLC,                    :
                                                                 :
                           Third Party Defendants.               :
                                                                 :
---------------------------------------------------------------- X

FILED
CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE
2002 JUL 10 PM 4:30

## OPENING MEMORANDUM OF CP KELCO U.S., INC., AS TO OUTSTANDING DISCOVERY OBLIGATIONS OF PHARMACIA CORPORATION

Plaintiff CP Kelco U.S., Inc. ("CP Kelco") submits this memorandum pursuant to the Court's order of June 27, 2002, seeking directions or orders as to outstanding discovery obligations of Defendant Pharmacia Corporation ("Pharmacia").

I:       **Depositions**

Continued Deposition of Francisco Diaz

Pharmacia terminated the deposition of Francisco Diaz, the general manager of the Biogums Business at the time of its sale to CP Kelco, after only 5 hours of questioning. The scheduling order provided that depositions shall not exceed 10 hours. As set out in the summary judgment papers, Mr. Diaz was responsible for the misinformation given to CP Kelco, including the financial information. He was responsible for the manipulation of Kelco's financial

numbers. He ordered Kelco employees to keep crucial information hidden from CP Kelco in the week before closing.[1]

Mr. Diaz, a Pharmacia employee, was deposed on January 10, 2002. He attended without subpoena and was represented by Mr. Reich of Fox Rothschild. At 4:39 PM, after 5 hours of questioning on the record, Mr. Reich twice stated "Your time is up." (Exhibit A. Diaz Tr. at 196:21, 197:2). Mr. Diaz, who lives in St. Louis, had indicated he had a plane to catch. Mr. Massengill, counsel for CP Kelco, stated "on the record, I think it has been insufficient time, but I understand the witness has to go and so we will have time to fight." (Exhibit A. Diaz Tr. at 197:16-19).

CP Kelco seeks, within the time limits established by the Scheduling Order, to question Mr. Diaz about topics counsel was unable to cover at all, or in sufficient depth, such as:

- The source and basis for the financial projections in the Confidential Memorandum, and Mr. Diaz' involvement in the process by which those projections were created;

- Sales pull-forwards that the Biogums Business engaged in prior to the divestiture, at the direction and encouragement of Mr. Diaz;

- Financial forecasts, budgets, and projections generated at the request of Mr. Diaz, for use by himself and other members of management of the Biogums Business;

- Mr. Diaz' communications with the Buyers; and

- Mr. Diaz' involvement in the preparation of the offering memoranda, and all supporting materials and information, for the financing of the transaction by the Buyers.

Judge McKelvie's Scheduling Order, dated July 2, 2001, provides:

> 4. b.    Limitation on Hours for Deposition Discovery.    Depositions upon oral examination shall be limited to a total of 350 hours in the aggregate. No deposition shall exceed ten hours duration without the consent of the other parties or leave of Court.
> (Exhibit B).

---

[1]    *See* CP Kelco's Answering Brief in Opposition to Pharmacia's Motion for Summary Judgment.

WP3:786191.1                                                                                    57845.1001

The limitation of 5 hours on questioning was created by counsel for Pharmacia at the time of Dana Mesic's deposition, when both sides actively questioned. Counsel for Pharmacia then unilaterally imposed that limitation on all subsequent depositions. Counsel for CP Kelco tolerated this limit in most depositions, since it was usually possible to cover the necessary ground in five hours of questioning. But when the Pharmacia imposed limit was too short, counsel for CP Kelco stated so on the record.

Of those shortened depositions, the only deposition that CP Kelco is raising with this court is that of Mr. Diaz. He is one of the most important witnesses in this case, and Pharmacia has designated him as a live trial witness. There is no justification for terminating his deposition after only 5 hours of questioning.[2]

Deposition of Tammy Serati

In the draft Pre-Trial Order submitted to Judge McKelvie in May, Pharmacia listed Tammy Serati as a witness who will be called live at trial by Pharmacia. Ms. Serati is a Pharmacia employee. In light of the fact that Ms. Serati will be a trial witness for Pharmacia, CP Kelco has requested available dates for her deposition. Pharmacia has resisted on the basis that CP Kelco did not make a request for Ms. Serati's deposition prior to the February 15, 2002 discovery cut-off date fixed by Judge McKelvie.

CP Kelco did not request the deposition of Ms. Serati prior to February 15, because it was not apparent from the documents produced by Pharmacia, or the testimony of other witnesses in this case, that Ms. Serati was likely to have any significant information relevant to the case, or was likely to be called as a trial witness. Such a prioritizing decision was particularly necessary in light of the compressed discovery schedule in this case. Now that Pharmacia has specifically

---

[2]    As far as CP Kelco is aware, the 350 hour aggregate limit is not under any threat.

WP3:786191.1                                                                                    57845.1001

designated Ms. Serati as one of its trial witnesses, it would be procedurally unfair if CP Kelco were not permitted the opportunity to depose her. Pharmacia has not suggested that deposing Ms. Serati now, rather than deposing her prior to February 15, will impose any substantial additional burden upon Ms. Serati, or prejudice Pharmacia. Accordingly, CP Kelco requests an order compelling Pharmacia to produce Ms. Serati for deposition, on a date mutually convenient to Ms. Serati and the parties.

Deposition of Scott Anderson

Both CP Kelco and Pharmacia wish to take the deposition of Scott Anderson, who is not employed by any of the parties in this case. Pharmacia and CP Kelco agreed to defer Mr. Anderson's deposition until after the February 15 discovery cut-off date. Pharmacia subpoenaed Mr. Anderson's deposition some time ago, but more than one scheduled date was unilaterally aborted by counsel for Pharmacia. Mr. Anderson's deposition has now been noticed for July 19. If the deposition proceeds on that date, or alternatively on a date that is mutually convenient to Mr. Anderson and the parties, no direction will be required from the Court, but counsel for CP Kelco otherwise requests leave to seek directions or orders from the Court as necessary.

Deposition of Michael Harley

Michael Harley is a former employee of Pharmacia, who has resisted CP Kelco's deposition requests. CP Kelco will seek Mr. Harley's deposition separately, by motion or other means.

Continued Depositions of Joseph Manko and Lawrence Schnapf

Pharmacia has offered expert reports by Joseph M. Manko, Esq. and Lawrence P. Schnapf, Esq. relating to CP Kelco's claim for damages suffered as a result of Pharmacia's failure to disclose a significant environmental problem with a plant owned by the Biogums Business located in Okmulgee, Oklahoma. As we described in more detail in the draft Pre-Trial

4

Order, Pharmacia improperly offered these so-called "rebuttal" environmental experts, despite the fact that their opinions do not "contradict or rebut evidence on the same subject matter" identified by any of CP Kelco's expert reports, thereby breaching Judge McKelvie's scheduling order. (Exhibit B, Scheduling Order, ¶ 4.e.).

Pharmacia then failed to produce the documents that these "rebuttal" experts relied on in forming their opinions until *after* their depositions. Even then the production was incomplete. On February 7, CP Kelco asked Pharmacia to produce the documents required by Fed. R. Civ. P. 26 (Exhibit C):

Joseph Manko
1. All drafts of Mr. Manko's opinion letter;
2. A list of all documents reviewed by Mr. Manko in forming his opinion, and the documents themselves;
3. All documents relating to this action reviewed by Mr. Manko after preparing his opinion; and
4. All correspondence between Mr. Manko and Pharmacia or its counsel relating to this action or Mr. Manko's testimony.

Lawrence Schnapf
1. All documents relied upon by Mr. Schnapf in forming his opinion; and
2. All documents relating to this action reviewed by Mr. Schnapf after preparing his opinion.

This request was repeated on February 13. Nothing was produced. At his deposition several days later, Mr. Schnapf testified that his opinion was based on documents viewed at Fox Rothschild's offices, including what he believed to be the Data Room documents from the sale of the Biogums Business, and certain government reports, none of which he was able to properly identify. (Exhibit D. Schnapf Tr. at 21:19-24:12). CP Kelco demanded copies of all documents shown to Mr. Schnapf, and advised our intention to continue Mr. Schnapf's deposition once the requested documents were produced. (Exhibit D. Schnapf Tr. at 226:16-23).

On February 19, we repeated the request, as to Mr. Manko, for compliance with Rule 26(a)(2)(B). (Exhibit E). We repeated our request again on March 5. On March 7, Fox

Rothschild produced a list of documents reviewed by Mr. Manko, but did not provide any correspondence with Mr. Manko nor a list of publications authored by Mr. Manko in the past ten years. On March 8, we requested that Mr. Manko comply with Fed. R. Civ. P. 26(a)(2)(B). Fox Rothschild responded that Mr. Manko "is not in any publications" and "did not review the data room documents before authoring the letter." (Exhibit F).

But, at Mr. Manko's deposition on April 12, he testified that:

- He has authored numerous publications in the past ten years (Exhibit G. Manko Tr. at 139:3-20);
- He reviewed binders 20 to 27 from the Data Room (Exhibit G. Manko Tr. at 278:15-19) and
- He did not discuss Fed. R. Civ. P. 26 with Fox Rothschild until the day before his deposition (Exhibit G. Manko Tr. at 133:1-9).

CP Kelco then repeated its demand, and stated its intention to continue his deposition once the materials were provided. (Exhibit H). Pharmacia provided some documents in response to CP Kelco's request, including Data Room binders 20 to 27. Pharmacia provided a list of articles authored by Mr. Manko. Pharmacia has not produced the other documents requested, including correspondence between Mr. Manko and Fox Rothschild or drafts of his report. (Exhibit I). Accordingly, CP Kelco seeks an order compelling Pharmacia to produce the remaining documents, and then produce these witnesses for continuations of their respective depositions.

II:    **Data Room documents**

Following Mr. Manko's revelation that he reviewed certain Data Room documents relating to the sale of the Biogums Business, at the offices of Fox Rothschild, we have asked Pharmacia to explain why it did not produce in response to CP Kelco's requests for production of

documents – at any time during the course of this litigation – the Data Room binders.[3] (Exhibit J). Pharmacia said that non-parties to the litigation, namely Weil Gotshal & Manges and Simpson, Thacher & Bartlett (representing CP Kelco and the bank lenders), produced copies of documents that these two law-firms had been given from the Data Room. Pharmacia's position is that since non-parties produced documents, Pharmacia was not obliged to produce the Data Room documents in its possession. (Exhibit K).

This is a disclosure case. Pharmacia relies heavily on the documents in the Data Room for its claim that all relevant facts were disclosed. Pharmacia cannot be allowed to refuse to produce the very documents that form a key part of Pharmacia's defense. Pharmacia claims CP Kelco was given a full set of the Data Room documents. But CP Kelco has no way of knowing if that is true, because Pharmacia has refused to produce the actual documents from the Data Room. Accordingly, CP Kelco seeks an order compelling Pharmacia to produce a complete set of the Data Room documents in its possession.[4]

### III:    Documents shown to Pharmacia's expert, Arthur Andersen

Pharmacia retained Arthur Andersen as its expert on various issues in this case, and Arthur Andersen submitted an expert report and a reply report. In both reports, Arthur Andersen represented that in forming its opinions it "reviewed documents from the collections produced from Pharmacia Corporation, CP Kelco ApS, Ernst & Young LLP, Lehman Brothers Merchant Banking Group *and the personal files of Dana Mesic*." (emphasis added) Exhibit B to the

---

[3]    Pharmacia produced Data Room binders 20 to 27 *after* Mr. Manko's deposition, but has not produced any other Data Room binders.

[4]    Recently, in response to our further request, Fox Rothschild suggested that if CP Kelco wants to receive the Data Room documents, it should pay the duplicating costs. (Exhibit L). The first step is to allow CP Kelco to review those documents. After that has happened, the parties can determine whether the standard practice in this case, in which parties have borne their own costs of producing documents, should be varied for this particular instance.

7

Expert Witness Report of Arthur Andersen LLP, November 19, 2001; Exhibit A to the Reply Report of Arthur Andersen, December 17, 2001.

Arthur Andersen designated Mr. Anthony Creamer as its representative available to be deposed about Arthur Andersen's report. When Mr. Creamer was deposed on February 15, 2002, he testified that in the course of preparing the report "[Arthur Andersen] received copies of Dana Mesic's files before they were bates stamped." (Exhibit M. Creamer Tr. 26:22-23).

Dana Mesic was the Director of Financial Planning & Analysis for the Biogums Business, and her documents are important in this case. Arthur Andersen's expert reports, and the testimony of Mr. Creamer, clearly state that Arthur Andersen reviewed personal files of Dana Mesic that were not Bates Stamped. But Ms. Mesic was employed by CP Kelco until early 2001, well after the dispute underlying this litigation arose. Ms. Mesic's office files were owned by CP Kelco, and were produced in this litigation by CP Kelco, bearing CP Kelco Bates numbers.

Thus, according to sworn testimony, Arthur Andersen was shown Dana Mesic documents that did not come from CP Kelco, and were not produced by Pharmacia or any other party in this litigation. Following Mr. Creamer's deposition, CP Kelco requested a complete list of documents reviewed by Arthur Andersen. Pharmacia responded by providing a "Document Wave Summary" which does not list the files of Dana Mesic. (Exhibit N).

In response to another request for a list of the Dana Mesic documents reviewed, counsel for Pharmacia wrote that "any documents 'from the personal files' of Dana Mesic originated from CP Kelco, not from Pharmacia or any other source." (Exhibit L). However, that response is plainly contradicted by Mr. Creamer's testimony that he saw documents from Dana Mesic's files without Bates stamps, and the fact that all documents from Ms. Mesic's files produced by CP Kelco were Bates numbered. Moreover, the description in Arthur Andersen's reports refers

8

to Dana Mesic's *personal files*, which by itself suggests that these are different files than those kept by Ms. Mesic at her office at CP Kelco.

Pharmacia's obligations under Fed. R. Civ. P. 26(a)(2)(B) are clear. It must disclose "the data or other information considered by the [expert] witness in forming the opinions", which includes the documents reviewed by the expert. Pharmacia has not complied with its obligation to do so. CP Kelco seeks a detailed list of all documents from Dana Mesic's files that were provided by Fox Rothschild to Arthur Andersen in connection with this engagement, and copies of those documents, together with copies of any other documents from Dana Mesic's files that are in Pharmacia's possession. In addition, CP Kelco seeks a list and copies of any other documents that Arthur Andersen reviewed when preparing its reports but failed to list.

YOUNG CONAWAY STARGATT & TAYLOR, LLP


David McBride (No. 0408)
Josy W. Ingersoll (No. 1088)
John W. Shaw (No. 3362)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
P.O. Box 391
Wilmington, Delaware 19802
Telephone: 302-571-6600
Telecopy:  302-571-1253


SIMPSON THACHER & BARTLETT
David E. Massengill
Joseph F. Wayland
Edward D. Hassi
425 Lexington Avenue
New York, NY 10017-3954
Telephone:  (212) 455-2000
Facsimile:  (212) 455-2502

Dated: July 10, 2002

Attorneys for Plaintiff CP Kelco U.S., Inc.

WP3:786191.1

57845.1001