IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DYSON TECHNOLOGY LIMITED and )
DYSON, INC., )
                                   )
            Plaintiffs, )
                                   )
      v. )      C.A. No. 05-434-GMS
                                   )
MAYTAG CORPORATION, )
                                   )
            Defendant. )
                                   )

## JOINT PROPOSED FINAL JURY INSTRUCTIONS (PATENT)

C. Barr Flinn (No. 4092)
John W. Shaw (No. 3362)
Adam W. Poff (No. 3990)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
apoff@ycst.com

Garrard R. Beeney
Richard C. Pepperman, II
James T. Williams
Adam R. Brebner
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
(212) 558-4000

Steven F. Reich
Jeffrey S. Edelstein
John F. Libby
Tamar Feder
Christopher C. Cole
MANATT, PHELPS & PHILLIPS, LLP
7 Times Square
New York, New York 10036
(212) 790-4500

*Attorneys for Plaintiffs Dyson
Technology Limited and Dyson, Inc.*

April 2, 2007

Francis DiGiovanni (No. 3189)
Stephanie O'Byrne (No. 4446)
CONNOLLY BOVE LODGE & HUTZ LLP
The Nemours Building
1007 N. Orange Street
Wilmington, Delaware 19899
(302) 658-9141
fdigiovanni@cblh.com

Kimball R. Anderson
Anthony DiSarro
Stephen P. Durchslag
Ronald Y. Rothstein
Lisa J. Parker
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
(312) 558-5600

Ray L. Weber
Laura J. Gentilcore
RENNER, KENNER, GREIVE, BOBAK,
TAYLOR & WEBER
400 First National Tower
Akron, Ohio 44308
(330) 376-1242

*Attorneys for Defendant Maytag Corporation*

# TABLE OF CONTENTS

1.    General Instructions ................................................................................................ 1

    1.1    Introduction and Jurors' Duties ............................................................... 1

    1.2    Burdens of Proof ...................................................................................... 3

    1.3    Evidence Defined ...................................................................................... 4

    1.4    Direct and Circumstantial Evidence ......................................................... 5

    1.5    Statements of Counsel .............................................................................. 6

    1.6    Depositions as Substantive Evidence ....................................................... 7

    1.7    Demonstrative Evidence Not Admitted ..................................................... 8

    1.8    Consideration of Evidence ........................................................................ 9

    1.9    Credibility of Witnesses .......................................................................... 10

    1.10    Bias ........................................................................................................ 12

    1.11    Number of Witnesses ............................................................................. 13

    1.12    Improper Considerations ........................................................................ 14

    1.13    Expert Testimony .................................................................................... 15

    1.14    Stipulated Facts ...................................................................................... 16

2.    The Parties and Their Contentions ......................................................................... 17

    2.1    The Parties and Their Contentions .......................................................... 17

    2.2    Summary of Patent Issues ....................................................................... 18

3.    Infringement .......................................................................................................... 19

    3.1    Infringement—Generally ........................................................................ 19

    3.2    Claim Infringement ................................................................................. 20

    3.3    Construction of Claims ........................................................................... 21

    3.4    Independent and Dependent Claims ........................................................ 22

    3.5    Open Ended or "Comprising" Claims ..................................................... 23

3.6     Means-plus-Function Claim Limitations ............................................................ 24

3.7     Construction of the Claims at Issue ................................................................... 27

3.8     Infringement—Every Claim Limitation Must Be Present, Either Literally or Under the Doctrine of Equivalents ................................................................... 30

3.9     Infringement—Means-plus-Function Claim Limitations .................................... 32

3.10    Infringement—Elements at Issue ....................................................................... 33

3.11    Infringement—Intent to Infringe is Immaterial ................................................. 37

3.12    Determination of Infringement .......................................................................... 38

4.      Damages ....................................................................................................................... 39

4.1     Generally ............................................................................................................ 39

4.2     Compensatory Patent Damages in General ........................................................ 40

4.3     Reasonable Certainty .......................................................................................... 41

4.4     Reasonable Royalty as a Measure of Damages .................................................. 42

4.5     Factors for Determining Reasonable Royalty ..................................................... 43

5.      Willful Infringement .................................................................................................... 45

6.      Deliberation and Verdict ............................................................................................. 48

## FINAL INSTRUCTIONS

1.     **General Instructions**

   1.1     **Introduction and Jurors' Duties**

   Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case.

   Each of you has been provided a copy of these instructions.  You may read along as I deliver them if you prefer; however, I would encourage you to focus your attention on me while the instructions are being read.  You will be able to take your copies with you into your deliberations and refer to them at that time, if necessary.

   I will start by explaining your duties and the general rules that apply in every civil case.

   Then I will explain some rules that you must use in evaluating particular testimony and evidence.

   I will explain the positions of the parties and the law you will apply in this case.

   Finally, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.

   Please listen very carefully to everything I say.

   Members of the jury, it is important that you bear in mind the distinction between your duties and my duties.  You have two main duties as jurors.  The first one is to decide what the facts are from the evidence that you saw and heard here in court.  You are the sole judges of the facts.  It is your judgment, and your judgment alone, to determine what the facts are, and nothing I have said or done during this trial was meant to influence your decisions about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide if, by the evidentiary standards I give you, the defendant is liable.

Now, as far as my duty is concerned, I have the duty of advising you about the law that you should apply to the facts as you find them. You are not to consider whether the principles I state to you are sound or whether they accord with your own views about policy. You are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. You must accept them despite how you feel about their wisdom. This includes both the instructions that I gave you before and during the trial, and these instructions. All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

_Authority_: Sample Miscellaneous Jury Instructions (Sleet, J.) (rev. January 18, 2006).

### 1.2     Burdens of Proof

Dyson has the burden to prove its claims of patent infringement and damages by a preponderance of the evidence.  That means Dyson must produce evidence that, when considered in light of all of the facts, leads you to believe that what Dyson claims is more likely true than not.  To put it differently, if you were to put Dyson's and Hoover's evidence on the opposite sides of a scale, the evidence supporting Dyson's claims would have to make the scales tip somewhat on Dyson's side.

In addition, Dyson must prove its claim of willful infringement by clear and convincing evidence and not by a preponderance of the evidence, the standard that applies to Dyson's other claims in this case.  Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a fact is highly probable.

Finally, keep in mind that "proof beyond a reasonable doubt" does not play any part in this case and you therefore should not consider it at all in your deliberations.

*Authority*:  Preliminary Jury Instructions—Patent (Sleet, J.) (rev. January 18, 2006); Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware § 1.3 (March 1993).

### 1.3    Evidence Defined

You must make your decision based only on the evidence that you saw and heard here in court.  Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath, the exhibits that I allowed into evidence, and the stipulations to which the lawyers agreed.

Nothing else is evidence.  The lawyers' statements and arguments are not evidence.  The arguments of the lawyers are offered solely as an aid to help you in your determination of the facts.  Their questions and objections are not evidence.  My legal rulings are not evidence.  My comments and questions are not evidence.

During the trial, I may have not let you hear the answers to some of the questions the lawyers asked.  I may also have ruled that you could not see some of the exhibits that the lawyers wanted you to see.  You must completely ignore all of these things.  Do not speculate about what a witness might have said or what an exhibit might have shown.  These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

Make your decision based only on the evidence, as I have defined it here, and nothing else.

_Authority_:  Sample Miscellaneous Jury Instructions (Sleet, J.) (rev. January 18, 2006).

**1.4     Direct and Circumstantial Evidence**

You have heard the terms direct and circumstantial evidence.

Direct evidence is evidence like the testimony of an eyewitness which, if you believe it, directly proves a fact. If a witness testified that she saw it raining outside, and you believed her, that would be direct evidence that it was raining.

Circumstantial evidence is a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence. The law makes no distinction between the weight that you should give to either one, nor does it say that one is any better than the other. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

_Authority_:  Sample Miscellaneous Jury Instructions (Sleet, J.) (rev. January 18, 2006).

**1.5      Statements of Counsel**

A further word about statements and arguments of counsel.  The attorneys' statements and arguments are not evidence.  Instead, their statements and arguments are intended to help you review the evidence presented.  If you remember the evidence differently from the attorneys, you should rely on your own recollection.

The role of attorneys is to zealously and effectively advance the claims of the parties they represent within the bounds of the law.  An attorney may argue all reasonable conclusions from evidence in the record.  It is not proper, however, for an attorney to state a personal opinion as to the truth or falsity of any testimony or evidence.  What an attorney personally thinks or believes about the testimony or evidence in a case is not relevant, and you are instructed to disregard any personal opinion or belief concerning testimony or evidence that an attorney has offered during opening or closing statements, or at any other time during the course of the trial.

_Authority_:  Sample Miscellaneous Jury Instructions (Sleet, J.) (rev. January 18, 2006).

**1.6     Depositions as Substantive Evidence**

During this trial, you have heard testimony from the playing of videotape excerpts or the reading of written excerpts from depositions. A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded.

Deposition testimony is entitled to the same consideration and is to be judged, insofar as possible, in the same way as if the witness testified in person here in the courtroom.

_Authority_:  Fed. R. Civ. P. 32; 4 Leonard B. Sand _et al._, _Modern Federal Jury Instructions_, Inst. 74-14 (2006).

**1.7     Demonstrative Evidence Not Admitted**

Some charts, summaries and graphics used by the parties during the trial were not admitted into evidence. These were shown to you in order to make the other evidence more meaningful and to aid you in considering the evidence. They are no better than the testimony or the documents upon which they are based, and are not themselves independent evidence. Therefore, you are to give no greater consideration to these charts, summaries and graphics than you would give to the evidence upon which they are based.

It is for you to decide whether the charts, summaries and graphics correctly present the information contained in the testimony and exhibits on which they were based. You are entitled to consider the charts, summaries and graphics if you find that they are of assistance to you in analyzing and understanding the evidence.

<u>Authority</u>: 4 Leonard B. Sand *et al.*, *Modern Federal Jury Instructions*, Inst. 74-12 (2006).

**1.8     Consideration of Evidence**

You should use your common sense in weighing the evidence.  Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves.  If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

_Authority_:  Sample Miscellaneous Jury Instructions (Sleet, J.) (rev. January 18, 2006); Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware § 1.5 (March 1993).

**1.9    Credibility of Witnesses**

You are the sole judges of each witness's credibility.  You should consider each witness's means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness's biases, prejudices, or interests; the witness's manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

If you find the testimony to be contradictory, then it is your duty and privilege to believe the testimony, if any, that, in your judgment, is believable and disregard any testimony that, in your judgment, is not believable.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there is evidence tending to prove that the witness testified falsely about some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony he or she gave at trial.  You have the right to distrust such witness's testimony in other particulars, and you may reject all or some of the testimony of that witness or give it such credibility as you may think it deserves.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth.  People may tend to forget some things or remember other things inaccurately.  If a witness has made a misstatement, you must consider

whether it was simply an innocent lapse of memory or an intentional falsehood, and that may

depend upon whether it concerns an important fact or an unimportant detail.

    This instruction applies to all witnesses.

<u>*Authority*</u>:  Sample Miscellaneous Jury Instructions (Sleet, J.) (rev. January 18, 2006).

**1.10    Bias**

In deciding whether to believe a witness, you should consider any evidence of hostility or affection which the witness may have towards one of the parties, or other interest or motive the witness may have in cooperating with a particular party.

It is your duty to consider whether the witness has permitted any such bias or interest to color his or her testimony.  In short, if you find that a witness is biased, you should view his or her testimony with caution, weigh it with care and subject it to close and searching scrutiny.

_Authority_:  4 Leonard B. Sand _et al._, _Modern Federal Jury Instructions_, Inst. 76-2 (2006).

**1.11    Number of Witnesses**

One more point about the witnesses.  Sometimes jurors wonder if the number of witnesses who testified makes any difference.

Do not make any decisions based only on the number of witnesses who testified. What is more important is how believable the witnesses were, and how much weight you think their testimony deserves.  Concentrate on that, not the numbers.

_Authority_:  Sample Miscellaneous Jury Instructions (Sleet, J.) (rev. January 18, 2006).

**1.12    Improper Considerations**

Also, let me remind you that it would be improper for you to consider any personal feelings you may have about the national origin or race of the parties or witnesses.

The parties to this case are entitled to a trial free from prejudice.  Our judicial system cannot work unless you reach your verdict through a fair and impartial consideration of the evidence.

_Authority_:  4 Leonard B. Sand _et al._, _Modern Federal Jury Instructions_, Inst. 71-9 (2006).

**1.13    Expert Testimony**

Expert testimony is testimony from a person who has a special skill or knowledge in some science, profession or business.  This skill or knowledge is not common to the average person but has been acquired by the expert through special study or experience.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness.  Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case.

_Authority_:  Sample Miscellaneous Jury Instructions (Sleet, J.) (rev. January 18, 2006).

**1.14    Stipulated Facts**

Dyson and Hoover have stipulated — that is, they have agreed — that certain facts are as counsel have read into the record.  You therefore should treat those facts as having been proved to be true.

## 2.    The Parties and Their Contentions

### 2.1    The Parties and Their Contentions

Before I instruct you on the law that you will apply in this case, let me explain the positions of the parties and their contentions.

As I stated at the outset of this trial, the parties to this case are the plaintiffs, Dyson Technology Limited and Dyson, Inc. (collectively, "Dyson"), and the defendants, Maytag Corporation and [INSERT ADDED PARTIES, IF ANY] (collectively, "Hoover").

Dyson accuses Hoover of infringing certain claims of three patents:  (i) claim no. 14 of the '515 patent; (ii) claim nos. 15, 16 and 17 of the '748 patent; and (iii) claim nos. 1, 2, 3, 7, 11, 23, 24 and 25 of the '008 patent.  The product accused of infringement in this case is the Hoover Fusion vacuum cleaner.  You have seen the accused product during the course of this trial.  Dyson seeks damages in the form of a reasonable royalty for Hoover's infringing use of Dyson's inventions.  Dyson also seeks a finding from you that Hoover's infringement of its patents was willful.

Hoover is the defendant in this case.  It denies that the Hoover Fusion vacuum cleaner infringes any of these claims and therefore contends that Dyson is not entitled to any damages.  It also denies that any infringement was willful.

**2.2    Summary of Patent Issues**

In this case, you must decide the following three things according to the instructions that I am now providing to you:

(1)    whether Dyson has proven by a preponderance of the evidence that the Hoover Fusion infringes any of the twelve asserted claims of the three patents in suit;

(2)    if you find infringement, whether Dyson has proven its measure of damages by a preponderance of the evidence; and

(3)    if you find infringement, whether Dyson has proven by clear and convincing evidence that such infringement by Hoover was willful.

I will now give you more detailed instructions about each of these issues and the patent laws as they specifically relate to this case.  If you would like to review my instructions at any time during your deliberations, they will be available to you in the jury room.

**3.      Infringement**

**3.1      Infringement—Generally**

As I stated before, Dyson alleges that Hoover infringes claim no. 14 of the '515 patent, claim nos. 15, 16, and 17 of the '748 patent, and claim nos. 1, 2, 3, 7, 11, 23, 24, and 25 of the '008 patent.  If any person makes, uses, sells or imports what is covered by a patent claim without the patent owner's permission, that person is said to infringe the patent.

*Authority*:  35 U.S.C. § 271(a).

**3.2     Claim Infringement**

To decide whether Hoover has infringed Dyson's patent, you will have to understand the patent "claims." As I told you at the beginning of the trial, the claims of a patent are the numbered paragraphs at the end of a patent. The claims describe the invention made by the inventor. This is what the patent owner owns and what the patent owner may prevent others from making, selling or importing.

Only the claims of the patent can be infringed. A patent also includes drawings and discussion of examples of the invention, but the drawings and examples cannot be infringed. You should not compare Hoover's product with any specific drawing or example set out in the '515, '748, or '008 patent or with any Dyson product. The only correct comparison is with the language of the claims themselves, with the meaning I will give you.

Each separate claim of a patent represents separate patent protection given to a patent owner. The law does not require infringement of all the claims in a patent. Each of the claims must be considered individually, and to show infringement of a patent, Dyson need only establish that one of the claims of that patent has been infringed.

<u>Authority</u>:  Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware § 3.1 (March 1993); ABA, *Model Jury Instructions: Patent Litigation*, § 7.1 (2005).

- 20 -

**3.3     Construction of Claims**

In deciding whether or not an accused product infringes a patent, the first step is to understand the meaning of the words used in the patent claims.

It is my job to determine what the patent claims mean and to instruct you about that meaning. You must accept the meanings I give you and use them when you decide whether or not the patent is infringed.

Before I instruct you about the meaning of the words of the claims, I will explain to you the different types of claims that are at issue in this case.

It may be helpful to refer to the copy of the patents that you have been given as I discuss the claims at issue here. The claims are found at the end of each patent. The verdict form that will be provided to you when I conclude my instructions will list the claims at issue.

_Authority_:  _Markman_ v. _Westview Instruments, Inc._, 517 U.S. 370 (1996); ABA, _Model Jury Instructions: Patent Litigation_ § 6.1 (2005).

### 3.4     Independent and Dependent Claims

Patent claims may exist in two forms, referred to as independent claims and dependent claims. An independent claim does not refer to any other claim of the patent. Thus, it is not necessary to look at any other claim to determine what an independent claim covers. Claim 14 of the '515 patent, claim 15 of the '748 patent and claims 1 and 23 of the '008 patent are independent claims.

A dependent claim refers to at least one other claim in the patent. A dependent claim includes each of the limitations of the other claim or claims to which it refers, as well as the additional limitations recited in the dependent claim itself. Therefore, to determine what a dependent claim covers, it is necessary to look at both the dependent claim and the other claim or claims to which it refers.

For example, claim 2 of the '008 patent is a dependent claim. It refers to claim 1. To determine what dependent claim 2 covers, the words of that claim and the words of claim 1 must be read together.

You are not to imply the limitations or words of the dependent claims into the independent claims if the independent claims do not include the same limitations.

_Authority_: 35 U.S.C. § 112 ¶ 4; ABA, _Model Jury Instructions: Patent Litigation_ § 6.2 (ABA 2005); Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware § 3.3 (March 1993).

### 3.5    Open Ended or "Comprising" Claims

The beginning portion, or preamble, of all the claims at issue use the words "comprising" or "including." "Comprising" is interpreted the same as "including," and both mean "including" or "containing." A claim that uses the word "comprising" or "including" is not limited to products having only the elements that are recited in the claim, but also covers products that add additional elements. For example, a claim to a table comprising the three elements of a (1) tabletop, (2) legs and (3) glue would be infringed by a table with those elements and additional structures, such as a leaf or wheels on the table's legs not claimed in the patent.

Authority:  ABA, *Model Jury Instructions: Patent Litigation* § 6.5.1 (2005); *Hewlett-Packard Co.* v. *Repeat-O-Type Stencil Mfg. Corp.*, 123 F.3d 1445, 1451 (Fed. Cir. 1997) ("The claim term 'including' is synonymous with 'comprising' thereby permitting the inclusion of the unnamed components.")

3.6     **Means-plus-Function Claim Limitations**

[**Dyson proposes:**  Some patent claim limitations may describe a "means" for performing a function, rather than describing the structure that performs the function.  For example, let's assume a patent describes a table where the legs are glued to the tabletop.  One way to claim the table is to recite the tabletop, four legs and glue between the legs and the tabletop.  Another way to claim the table is to recite the tabletop and the legs, but, rather than recite the glue, recite a "means for securing the legs to the tabletop."  This second type of claim limitation is called a "means-plus-function" limitation.  It describes a means for performing the function of securing the legs to the tabletop, rather than expressly reciting the glue.

When a claim limitation is in means-plus-function form, it covers the structures described in the patent specification for performing the function stated in the claim, as well as any structure that is equivalent to the described structures.  In our example, the claim covers a table using glue to secure the legs to the tabletop, as described in the patent, and any equivalent structure that performs the function of securing the legs to the tabletop, such as nailing the legs to the tabletop.

Claim 14 of the '515 patent includes a means-plus-function limitation.  In instructing you about the meaning of the means-plus-function claim limitation, I will tell you, first, the function that the means-plus-function claim limitation performs, and, second, the structure disclosed in the patent specification that corresponds to the means-plus-function limitation.]

[**Maytag proposes:**  Some patent claim limitations may be written in what is known as a "means-plus-function" format.  A means-plus-function element is a claim element that claims a means for performing a specific function.  For example, a table could be claimed in

a patent as being a tabletop, legs and means for attaching the legs to the tabletop. The means-plus-function element would cover structures described in the specification that perform the required function of "attaching the legs to the tabletop."

I will now explain the special rules that apply to this type of claim language. First, the accused device must perform the specified function. Second, if Defendant's accused product does not perform the required function, you must identify the structure in Defendant's accused product that actually performs this function. Finally, you must determine whether that accused structure is the same as or equivalent to the structure identified in the patent for performing the required function. If the structure of the accused device is the same as, or equivalent to, the structure in the patent, then the means-plus-function element of the claim is present.

Two structures are equivalent if a person of ordinary skill in the art would consider the differences between them to be insubstantial. One way to determine this is to look at whether or not the accused structure performs the identical function in substantially the same way to achieve substantially the same result.]

**[Dyson submits that Maytag's proposed instruction does not provide the jury with sufficient specific guidance. Dyson's proposed language is a neutral description of the law based on the ABA model instructions.]**

**[Maytag submits that Dyson's proposal is prejudicial in suggesting that, for example, nailing and glueing are equivalents—when any cabinet maker would know that they are not. Dyson also fails to address the insubstantial difference assessment. Maytag submits that its instructions are complete, clear and concise and are based on the Uniform**

**Jury Instructions for Patent Cases for the United States District Court for the District of Delaware, 2004.]**

*Authority*:  U.S.C. § 112 ¶ 6; ABA, *Model Jury Instructions: Patent Litigation* § 6.4 (2005).

**3.7     Construction of the Claims at Issue**

I have now instructed you as to the types of claims at issue in this case.  As I stated at the outset, it is the Court's duty under the law to define what the claims at issue mean.  I have made my determinations and I will now instruct you on the meaning of certain words, terms and phrases used in the asserted claims.  You must use the meanings that I give you to make your decisions if the claims in this suit are infringed.

1.     The term "dirty air inlet [to outer container]" means a "passage by which dirty air flows into the outer container of the cleaning apparatus."

2.     The term "oriented for supplying dirt laden air into the container tangentially to the interior surface of the outer container" means "oriented for supplying dirt laden air into the container generally in a direction perpendicular to the radius of the interior surface of the outer container."

3.     The term "which has a circular cross section" means "the outer container has a circular cross section."

4.     The term "maintaining its velocity to a cone opening smaller in diameter than the diameter of the upper end of the cyclone" means "the frusto-conical shape of the cyclone assists in keeping the air flow moving as it makes its way from the air inlet at the top of the cyclone to the smaller cone opening at the bottom of the cyclone."

5.     The term "the air inlet being oriented for supplying air tangentially to the surface" means "the air inlet being oriented for supplying air generally in a direction perpendicular to the radius of the surface."

- 27 -

6.     The term "means for generating airflow" **[Dyson proposes:** as used in claim

no. 14 of the '515 patent**]** is a means plus function claim as I described to you a

few moments ago.  The function of the term is "generating an airflow."  The

corresponding structure is "a motor driven fan unit positioned vertically above

and immediately adjacent to the cyclone outlet port," and any equivalent structure

that performs the function of "generating an airflow."  **[Dyson proposes:**

Although the '748 and '008 patents also use the terms "means for generating

airflow," there is no dispute that that claim element is satisfied for purposes of

those patents.  So keep in mind that this construction applies only to the '515

patent.**]  [The parties disagree as to the scope of the Court's construction of**

**"means for generating airflow," and that issue will be subject to a Dyson**

**motion _in limine_.  The parties agree that if Dyson is successful, the proposed**

**language will be used, and if not, it will not.]**

7.     The term "a disc means provided on the outside of the cyclone intermediate the

receiving chamber and the air outlet of the container and around to the

longitudinal axis of the cyclone" means "a disc on the outside of the cyclone

intermediate the receiving chamber and air outlet of the container and around the

longitudinal axis of the cyclone."  Although the claim language uses the phrase

"disc means," I have determined that this is not a "means plus function" claim and

that a "disc means" is a "disc."

8.     The term "a shroud means mounted on and around the outer surface of the

cyclone and having opposed ends along the longitudinal axis and providing

for outlet air from the container into the air inlet to the cyclone" means "a shroud

that provides for outlet air from the container into the air inlet to the cyclone, which is mounted on and around the outer surface of the cyclone and has opposed ends along the longitudinal axis."  Although the claim language uses the phrase "shroud means," I have determined that this is not a "means plus function" claim and that a "shroud means" is a "shroud."

The other terms of the claims at issue have not been construed by me.  You should give those words and phrases their plain and ordinary English language meaning.

<u>Authority</u>:  *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996); *U.S. Surgical Corp.* v. *Ethicon, Inc.*, 103 F.3d. 1554, 1568-69 (Fed. Cir. 1997); ABA, *Model Jury Instructions: Patent Litigation* § 6.6 (2005); 4 Leonard B. Sand *et al.*, *Modern Federal Jury Instructions*, Inst. 86-8 (2006).

**3.8     Infringement—Every Claim Limitation Must Be Present, Either Literally or Under the Doctrine of Equivalents**

In order to infringe a patent claim, a product must include every limitation or element of the claim.  If Hoover's product omits even a single element recited in a claim, then you must find that Hoover has not infringed that claim.  If, however, Hoover's product includes each element of a claim, then you must find that Hoover infringed that claim.  You must consider each of the patent claims separately.

A claim limitation may be present in an accused product in one of two ways: either literally or under what is known as the doctrine of equivalents.  A claim limitation is literally present if it exists in the accused product just as it is described in the claim language, either as I have explained that language to you or, if I did not explain it, as you understand it.

A claim limitation is present in an accused product under the doctrine of equivalents if the differences between the claim limitation and a comparable element of the accused product are insubstantial.  One way to determine whether there is infringement under the doctrine of equivalents is to look at whether or not the accused product performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed invention.

Another way to determine whether the differences are insubstantial is to consider whether or not people of ordinary skill in the field of the invention believe that the element found in the accused product and the element recited in the patent claim limitation are interchangeable.  A person of ordinary skill is a person with average education and training in the field.  The belief of such a person must be based on what was known at the time of the activities that constitute the alleged infringement, and not what was known at the time the patent application was filed or

when the patent issued.  Thus, the inventor need not have foreseen, and the patent need not

describe, all potential equivalents to the invention covered by the claims.  Also, slight changes in

technique or improvements made possible by technology developed after the patent application

is filed may still be considered equivalent for the purposes of the doctrine of equivalents.  You

may not find infringement under the doctrine of equivalents if even one limitation of a claim or

its equivalent is missing from the accused device.

<u>Authority</u>:  ABA, *Model Jury Instructions: Patent Litigation* § 7.3 (2005) (citing cases).

### 3.9     Infringement—Means-plus-Function Claim Limitations

As I told you, one element of **[Dyson proposes:  one of]** the claims at issue is a means-plus-function limitation.

To prove that an accused product includes a structure that is literally covered by a means-plus-function limitation, a patent owner must prove two things by a preponderance of the evidence.  First, that the accused product contains a structure that performs the identical function to the function recited in the means-plus-function limitation.  Second, that the structure of the accused product that performs that function is either the same or equivalent to the corresponding structure disclosed in the patent specification.

One way of determining whether the structure of the accused product is equivalent to the structure disclosed in the specification is to determine whether or not the accused structure performs the identical function, in substantially the same way, to achieve substantially the same result, as the structure disclosed in the specification.  Your inquiry here should be restricted to a consideration of the way the disclosed structure and the accused structure perform the function recited in the claim.  You should not be influenced by the manner in which the structures perform other extraneous functions.

In this case, for infringement **[Dyson proposes:  of the '515 patent,]** one of the things you must determine is whether the accused product contains a structure that performs the function of "generating an airflow," and, if so, whether the structure that performs that function is equivalent to "a motor driven fan unit positioned vertically above and immediately adjacent to the cyclone outlet port."

<u>Authority</u>:  ABA, *Model Jury Instructions: Patent Litigation* § 7.6 (2005); *Applied Medical Res. Corp*. v. *U.S. Surgical Corp.*, 448 F.3d 1324, 1334 (Fed. Cir. 2006); *J&M Corp.* v. *Harley-Davidson, Inc.*, 269 F.3d 1360, 1367 (Fed. Cir. 2001); *IMS Tech., Inc.* v. *Haas*

### 3.10   Infringement—Elements at Issue

Only certain elements of the patents at issue in this case are disputed. Thus, you need to consider only certain elements of the patents. Hoover does not dispute that all of the other elements of the claims at issue of these three patents are met by the Hoover Fusion vacuum cleaner. In other words, Dyson is deemed to have met its burden of proof with respect to those elements of the patent claims not disputed by Hoover.

First, for infringement of all the claims at issue, you need to determine whether the Hoover Fusion includes all of the following elements common to all claims of the three patents in suit:

1.      "a dirty air inlet [to outer container]," which is "a passage by which dirty air flows into the outer container of the cleaning apparatus";

2.      whether that "dirty air inlet" is "oriented for supplying dirt laden air into the container tangentially to the interior surface of the outer container," meaning "oriented for supplying dirt laden air into the container generally in a direction perpendicular to the radius of the interior surface of the outer container";

3.      "an air outlet from the container"; and

4.      a "cyclone air inlet . . . in air communication with the air outlet of the container."

[5.      *See* 4 in next section.]

[**Dyson Proposes:**  If the Hoover Fusion has all of these elements, you then need to consider elements specific to the claims of the individual patents at issue.]  [**Maytag Proposes:**  If the Hoover Fusion does not have all of these elements, then it does not infringe any

*Automation, Inc.*, 206 F.3d 1422, 1435-37 (Fed. Cir. 2000).

of the patent claims and you need not consider the issue of infringement any further.  However, if the Hoover Fusion has all of these elements, you then need to consider elements specific to the claims of the individual patents at issue.]  **[Dyson submits that Maytag's proposed language is prejudicial and invites the jury to shortcut its analysis.] [Maytag submits that this instruction is consistent with the all-elements rule and follows a rational course of assessment.]**  For claim 14 of the '515 patent to be infringed, you must determine whether the Hoover Fusion includes the following additional elements:

    1.      a "dirty air inlet at an upper portion of the outer container";

    2.      a dirt receiving and collecting chamber with a "minimum diameter . . . furthest from the cone opening [of the cyclone] of 3 times the diameter of the cone opening." This element must be met as a matter of literal infringement.;

    3.      a ring seal between "the [dirt receiving and collecting] chamber and [the] outer container";

    4.      [an equivalent structure to "a motor driven fan unit positioned vertically above and immediately adjacent to the cyclone outlet port" that performs the function of "generating an airflow."]  **[Dyson intends to submit a motion in limine to clarify that the Court's construction of "means for generating airflow" applies only to the '515 patent.  If the Court rules in favor of Dyson, the parties agree that the dispute with respect to this element applies only to the '515 patent.  If the Court rules in favor of Maytag, this will be a fifth common element and made No. 5, above.]**

        If you find that Dyson has proven by a preponderance of the evidence that the Hoover Fusion vacuum cleaner contains all of these elements, you should find for Dyson on infringement of claim 14 of the '515 patent.  On the other hand, if you find that Dyson has failed

to prove that the Hoover Fusion contains all of these elements, you should find for Hoover on infringement of claim 14 of the '515 patent.

For infringement of claims of the '748 patent, in addition to the [four] [five] common elements I discussed before, you must determine whether the Hoover Fusion also includes the following additional elements:

1.    "a dirty air inlet at an upper portion of the outer container";

2.    a "disc . . . provided on the outside of the cyclone intermediate the receiving chamber and the air outlet of the container"; and

3.    that the disc "retards long strands in the dirt from clogging the air outlet and retains the strands in the container."

If you find that Dyson has proven by a preponderance of the evidence that the Hoover Fusion vacuum cleaner contains all of these elements, you should find for Dyson on infringement of claim nos. 15, 16, and 17 of the '748 patent.  If you do not find that Dyson has proven by a preponderance of the evidence that the Hoover Fusion vacuum cleaner contains all of these elements, you should find for Hoover on infringement of all of the asserted claims of the '748 patent.

For infringement of the claims of the '008 patent, in addition to the [four] [five] common elements I mentioned before (page 32), you must determine whether the Hoover Fusion also includes the following additional elements:

1.    a shroud "mounted at one end below the air inlet to the cyclone";

2.    "perforations [on the shroud] adjacent to the position intermediate to the cone opening for the flow of air from the outer container to the cyclone inlet";

3.      a disc "provided on the shroud means at a lower longitudinal extent of the shroud means and the air inlet of the cyclone and around the axis of the cyclone"; and

4.      that the disc "aids in dirt removal in the first container by preventing some of the dirt from flowing into the air inlet to the cyclone."

If you find that Dyson has proven by a preponderance of the evidence that the Hoover Fusion vacuum cleaner contains all of these elements, you should find for Dyson on infringement of claim nos. 1, 2, 3, 7, 11, 23, 24, and 25 of the '008 patent. If you do not find that Dyson has proven by a preponderance of the evidence that the Hoover Fusion vacuum cleaner contains all of these elements, you should find for Hoover on infringement of all of the asserted claims of the '008 patent.

**3.11     Infringement—Intent to Infringe is Immaterial**

One other point on infringement, whether or not a party knew what it was doing was an infringement does not matter.  A person or entity may infringe a patent even if the person or entity believed in good faith that what it was doing was not an infringement of any patent.  A person or entity may infringe a patent even if the person or entity did not know of the patent.

Authority:  ABA, *Model Jury Instructions: Patent Litigation* § 7.1 (2005); *see also* Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware § 3.5 (March 1993).

**3.12    Determination of Infringement**

In short, taking each asserted claim of the three patents in suit separately, if you find that Dyson has proven by a preponderance of the evidence that each element of any one or more of the asserted claims is present in the Hoover Fusion, either literally or under the doctrine of equivalents, then you must find that the Hoover Fusion infringes that claim.  Similarly, if you find that Dyson has failed to prove the presence of any claim element in the Hoover Fusion, either literally or under the doctrine of equivalents, then you must find that the Hoover Fusion does not infringe that claim.

_Authority_:  ABA, _Model Jury Instructions: Patent Litigation_ § 7.7 (2005).

**4.      Damages**

**4.1      Generally**

I have now instructed you as to the law governing Dyson's claims of patent infringement.  If you find that Hoover has infringed a claim of one of the patents in suit, then you must determine what damages Hoover must pay to Dyson for that infringement.  If, on the other hand, you find that Hoover has not infringed a claim of any patent, then Dyson is not entitled to any damages, and you should not make any findings about damages.

_Authority_:  ABA, _Model Jury Instructions: Patent Litigation_ § 11.1 (2005).

**4.2     Compensatory Patent Damages in General**

Patent law provides that in the case of infringement of a patent claim, the owner of the patent is entitled to damages adequate to compensate for the infringement, but in no event less than what a reasonable royalty would be for the use made of the invention by the infringer.

_Authority_:  35 U.S.C. § 284.

**4.3     Reasonable Certainty**

If you find that Dyson prevails on its contentions of infringement, Dyson is entitled to all damages it has proven by a preponderance of evidence with "reasonable certainty." On one hand, reasonable certainty does not require proof of damages with mathematical precision. Mere difficulty in ascertaining damages is not fatal to Dyson's right to recover. On the other hand, Dyson is not entitled to speculative damages; that is, you should not award any amount of reasonable royalty that, although possible, is wholly remote or left to conjecture and/or guess. You may base your evaluation of reasonable certainty on opinion evidence.

Finally, any doubts regarding the computation of the amount of damages should be resolved against Hoover.

*Authority*:  Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware § 6.3 (March 1993); *DSU Medical Corp.* v. *JMS Co., Ltd.,* 471 F.3d 1293, 1309 (Fed. Cir. 2006); *Sensonics, Inc.* v. *Aerospace Corp.,* 81 F.3d 1566, 1572 (Fed. Cir. 1996); *Kaufman Co., Inc.* v. *Lantech, Inc.,* 926 F.2d 1136, 1141 (Fed. Cir. 1991); *Ryco, Inc.* v. *Ag-Bag Corp.,* 857 F.3d 1418, 1428 (Fed. Cir. 1988); *Lam, Inc.* v. *Johns-Manville Corp.,* 718 F.2d 1056, 1065-66 (Fed. Cir. 1983).

**4.4     Reasonable Royalty as a Measure of Damages**

In this case, Dyson is asking for damages in the amount of a reasonable royalty for Hoover's sales.

A royalty is an amount of money that someone pays a patent owner to be able to use the patented invention. A reasonable royalty in this case is the amount of money that would have been agreed to in a hypothetical arms' length negotiation between Dyson and Hoover with both operating on the understanding that the negotiated patent is valid and would be infringed by the accused products.

You are to decide what a reasonable royalty would be based on circumstances as of the time before infringement would begin. In this case, that would be around May 2005, just before Hoover began selling the Fusion.

In the hypothetical arms' length negotiation, you must assume that both parties are willing participants. You must assume that the person negotiating on behalf of Hoover was willing to take a license and would have known that the asserted claims were valid, enforceable and infringed by Hoover. You should also assume that Dyson would have been willing to grant a license. Finally, you must assume that both Dyson and Hoover knew all pertinent information at the time of the hypothetical negotiations.

Having that in mind, you may consider any relevant evidence in determining the reasonable royalty for Hoover's use of the patented invention, including the opinion testimony of experts.

_Authority_:  ABA, _Model Jury Instructions: Patent Litigation_ § 11.9.1; Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware § 6.10 (March 1993).

**4.5    Factors for Determining Reasonable Royalty**

I will list for you a number of factors you may consider in deciding what is a reasonable royalty. This is not a list of every possible factor, but it will give you an idea of the kinds of things to consider in determining a reasonable royalty:

1.    The royalties received by Dyson for licenses granted to others under the '515, '748 and '008 patents;

2.    The rates paid by Dyson and Hoover or others for the use of other patents comparable to the '515, '748 and '008 patents;

3.    The nature and scope of the license, as exclusive or non-exclusive, or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold;

4.    Dyson's established policy and marketing program to maintain its patent exclusivity by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that exclusivity;

5.    The commercial relationship between Dyson and Hoover, such as whether they are competitors;

6.    The effect of selling the patented product in promoting sales of other products of Hoover;

7.    The duration of the patent and the length of the licenses;

8.    The profitability of the product made using the patent, and whether or not it is commercially successful or popular;

9.    The advantages and benefits of using the patented inventions over products not using the invention;

- 43 -

10.     The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by Dyson, and the benefits to those who have used the invention;

11.     The extent to which Hoover has made use of the invention, and any evidence that shows the value of that use;

12.     The portion of the profit or percentage of the selling price that may be customary in the vacuum cleaner business or in comparable businesses to allow for the use of patented inventions comparable to the inventions claimed in the patent;

13.     The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by Hoover; and

14.     Expert opinion as to what would be a reasonable royalty.

You may also consider any other economic factor that a normally prudent business person would, under similar circumstances, take into consideration in negotiating the hypothetical license between Dyson and Hoover.

You may consider any evidence regarding these factors, but neither Dyson nor Hoover is required to submit evidence on all these factors.

Authority:  ABA, *Model Jury Instructions: Patent Litigation* § 11.9.1; Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware § 6.11 (March 1993); *Tec Air, Inc.* v. *Denso Mfg. Mich., Inc.*, 192 F.3d 1253, 1362 (Fed. Cir. 1999); *Fonar Corp.* v. *Gen. Elec. Co.*, 107 F.3d 1543, 1552-53 (Fed. Cir. 1997); *Mahurkar* v. *C.R. Bard, Inc.*, 79 F.3d 1572, 1579-81 (Fed. Cir. 1996); *Maxwell* v. *J. Baker, Inc.*, 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); *Rite-Hite Corp.* v. *Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (*en banc*); *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 116 (S.D.N.Y. 1970).

**5.     Willful Infringement**

Dyson also contends that Hoover has willfully infringed the patent claims at issue in this case.  If you find on the basis of the evidence and the law as I have explained it that Hoover infringed one or more claims of one of the three patents in suit, you must then decide whether or not Hoover's infringement was willful.

When a company becomes aware that a patent may have relevance to a product it intends to make and sell, that company has a duty to exercise due care and investigate whether or not its proposed activities infringe any valid claim of the patent.  If that company does not do this and is found to have infringed any of the patent claims, then the infringement was willful.

The issue of willful infringement is not relevant to your decision of whether or not there is infringement or what is a reasonable royalty.  Rather, a finding of willful infringement may, in certain circumstances, entitle the patent owner to increased damages.  If you decide that Hoover willfully infringed any of the patent claims, then it is my job to decide whether or not to award increased damages to Dyson.

Although, as I explained before, Dyson must prove infringement by the more probable than not standard, Dyson must prove that Hoover willfully infringed by the higher burden of clear and convincing evidence.

To establish willful infringement, Dyson must prove two things with clear and convincing evidence:

1.     Dyson must prove that Hoover was aware of the patents it infringed.  Here, it is not disputed that Hoover was aware of the three patents in suit.  Thus, Dyson must be deemed to have satisfied this element.

- 45 -

2.      Second, Dyson must prove that Hoover proceeded to make and sell the Hoover

Fusion without a reasonable, good-faith belief that the patent was invalid or that

the patent was not infringed.

To determine whether Hoover acted with a reasonable, good-faith belief or

whether Hoover willfully infringed claims at issue in this case, you must consider all of the

circumstances, including the following:

1.      When Hoover became aware of the patents, whether Hoover formed a

good-faith belief that the patent was invalid or that the patent was not infringed, including

whether Hoover obtained and followed the good-faith advice of a competent lawyer.  The

obtaining and following of counsel's good-faith advice, if competent, may be evidence that

infringement was not willful.

In evaluating Hoover's reliance on the advice of a lawyer, you should consider

when Hoover obtained the advice, the quality of the information Hoover provided to the lawyer,

the competence of the lawyer's opinion, and whether or not Hoover relied upon the advice.

Advice is competent if it was based upon a reasonable examination of the facts and law relating

to validity and infringement issues, consistent with the standards and practices generally

followed by competent lawyers.  You can also consider whether the opinion was conclusory in

nature or provides a thorough analysis of the relevant issues.  You may also consider whether the

lawyer was motivated to reach a particular result or otherwise biased in favor of a particular

result.

2.      Another factor you should consider in determining willfulness is whether

or not, in designing the Hoover Fusion, Hoover intentionally copied the disclosures of the patents

in suit or whether Hoover instead tried to "design around" the patents by designing a product that

Hoover believed did not infringe these claims.  Evidence of copying the invention of a patent is evidence of willful infringement; on the other hand, evidence of a good-faith effort to "design around" the claims is evidence that the infringement was not willful.

Keep in mind that a determination by you that Hoover has infringed the '515, '748, and '008 patents does not automatically mean that the infringement was willful.  As I have explained, the infringement is not willful if Hoover had a good-faith belief that it did not infringe or that the patents were invalid, and if its belief was reasonable under all the circumstances.

*Authority*:  ABA, *Model Jury Instructions: Patent Litigation* § 8 (2005); 35 U.S.C. § 284; *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GHMB* v. *Dana Corp.*, 383 F.3d 1337, 1342-48 (Fed. Cir. 2004) (*en banc*); *Golden Blount, Inc.* v. *Robert H. Peterson Co.,* 438 F.3d 1354, 1367-70 (Fed. Cir. 2006); *Read Corp.* v. *Portec, Inc.*, 970 F.2d 816, 826-27 (Fed. Cir. 1992); *Rolls Royce Ltd.* v. *GTE Valeron Corp.*, 800 F.2d 1101, 1110 (Fed. Cir. 1986); *Underwater Devices, Inc. v. Morrison-Knudsen Co.*, 717 F.2d 1380, 1389-90, 219 U.S.P.Q. 569 (Fed. Cir. 1983).

**6.     Deliberation and Verdict**

That concludes the part of my instructions explaining the law that governs your deliberations over the patent issues in this case.  Now let me finish up by explaining some things about how to conduct your deliberations in the jury room.

How you conduct your deliberations is up to you.  But, however you conduct those deliberations, please remember that your verdict must represent the considered judgment of each juror.

It is your duty, as jurors, to consult with one another and to deliberate with a view toward reaching an agreement, if you can do so without violence to your individual judgment.  Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors.  In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous.  But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict.  Remember at all times that you are not partisans.  You are judges — judges of the facts, not me.  Your sole interest is to seek the truth from the evidence in the case.

In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict.  Your verdict must be unanimous.

A form of verdict has been prepared for you.  You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form.  You will then return to the courtroom, your foreperson will give the form to my Deputy Clerk and your verdict shall be announced.

It is proper to add the caution that nothing said in these instructions, and nothing in the form of a verdict, is meant to suggest or convey in any way or manner any intimation as to what verdict I think you should find. What the verdict shall be is your sole and exclusive duty and responsibility.

That concludes the part of my instructions explaining the rules for considering the testimony and evidence. Now let me finish up by explaining how you may communicate questions or messages to the Court if you have any.

Once you start deliberating, do not talk to the Jury Officer, to my Deputy Clerk, or to me, or to anyone else except each other about the case. If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the Jury Officer. The question will be given to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you. Any questions or messages normally are sent to me through the foreperson, who by custom of this Court is Juror Number 1.

One more thing about messages. Do not ever write down or tell anyone else how you stand on your votes. For example, do not write down or tell anyone else that you are split 6-2, or 4-4, or whatever your vote happens to be. That should stay secret until you are finished.

Let me finish by repeating something I said to you earlier.  Nothing that I have said or done during this trial was meant to influence your decision in favor of either party.  You must decide the case yourselves based on the evidence presented and, as I have already said, your verdict in this case must be unanimous.

*Authority*:  Sample Miscellaneous Jury Instructions (Sleet, J.) (rev. January 18, 2006).

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DYSON TECHNOLOGY LIMITED and ) 
DYSON, INC., )
 )
Plaintiffs, )
 )
v. )    C.A. No. 05-434-GMS
 )
MAYTAG CORPORATION, )
 )
Defendant. )

**JOINT PROPOSED FINAL JURY INSTRUCTIONS (COUNTERCLAIMS)**

C. Barr Flinn (No. 4092)
John W. Shaw (No. 3362)
Adam W. Poff (No. 3990)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
1000 West Street, 17th Floor
Wilmington, Delaware  19801
(302) 571-6600
apoff@ycst.com

Garrard R. Beeney
Richard C. Pepperman, II
James T. Williams
Adam R. Brebner
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
(212) 558-4000

Steven F. Reich
Jeffrey S. Edelstein
John F. Libby
Tamar Feder
Christopher C. Cole
MANATT, PHELPS & PHILLIPS, LLP
7 Times Square
New York, New York  10036
(212) 790-4500

*Attorneys for Plaintiffs Dyson*
*Technology Limited and Dyson, Inc.*

April 2, 2007

Francis DiGiovanni (No. 3189)
Stephanie O'Byrne (No. 4446)
CONNOLLY BOVE LODGE & HUTZ LLP
The Nemours Building
1007 N. Orange Street
Wilmington, Delaware  19899
(302) 658-9141
fdigiovanni@cblh.com

Kimball R. Anderson
Anthony DiSarro
Stephen P. Durchslag
Ronald Y. Rothstein
Lisa J. Parker
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois  60601
(312) 558-5600

Ray L. Weber
Laura J. Gentilcore
RENNER, KENNER, GREIVE, BOBAK,
TAYLOR & WEBER
400 First National Tower
Akron, Ohio  44308
(330) 376-1242

*Attorneys for Defendant Maytag Corporation*

## Proposed Final Jury Instructions Regarding Counterclaims

## TABLE OF CONTENTS

**Page**

Introduction and Jurors' Duties ................................................................ 1

Evidence Defined .................................................................................... 3

Direct and Circumstantial Evidence ........................................................ 4

Statements of Counsel ............................................................................. 5

Consideration of Evidence ....................................................................... 6

Credibility of Witnesses........................................................................... 7

Number of Witnesses ............................................................................... 8

Improper Considerations .......................................................................... 9

Stipulated Facts ..................................................................................... 10

Corporations – Foreign Corporations ..................................................... 11

Common Counsel ................................................................................... 12

What Is and Is Not Evidence................................................................... 13

Direct and Circumstantial Evidence........................................................ 14

Inference Defined .................................................................................. 15

Effect of Inference on Burden of Proof • Inference Against Dyson Does Not Shift
    Burden of Proof.............................................................................. 17

Impeachment by Prior Inconsistent Statements........................................ 19

Summaries and Charts Admitted as Evidence .......................................... 21

Demonstratives: Charts, Schedules and Summaries Not Admitted as Evidence ............... 23

Interrogatories....................................................................................... 25

Depositions............................................................................................ 27

Uncalled Witness Not Equally Available ................................................. 28

Bias ...................................................................................................... 30

Expert Witness – Generally .................................................................... 31

Conflicting Expert Testimony ................................................................. 32

Challenged Claims.................................................................................. 33

Number of Challenged Claims ................................................................ 35

False Advertising – Elements of the Claim .............................................. 37

Lanham Act – False Advertising – Dyson's Position................................. 39

Elements for Each of Hoover's Claims .................................................... 41

Lanham Act - Burden of Proof ................................................................ 45

Lanham Act - Burden of Proof ................................................................ 47

Lanham Act – Opinions/Puffery.............................................................. 49

Lanham Act – Meaning of Commercial Advertising or Promotion ............ 51

Lanham Act – Difference Between False and Misleading........................... 53

Lanham Act – Literal Falsity in Context.................................................. 55

Lanham Act – Materiality....................................................................... 57

Lanham Act – Establishment Claim ......................................................... 59

Lanham Act – Establishment Claim – Industry Standards......................... 61

Lanham Act – Misleading Claims............................................................ 63

Lanham Act – Actual Deception .............................................................. 68

## TABLE OF CONTENTS
(continued)

**Page**

**Lanham Act – The Meaning of Substantial**................................................................**70**

**Delaware Deceptive Trade Practices Act – Elements**..............................................**72**

**Delaware Common Law of Unfair Competition – Elements** ................................**74**

**Delaware Deceptive Trade Practices Act – Co-Extensive with the Lanham Act** ..............**76**

**Delaware Common Law of Unfair Competition – Codified by Statute**..............**78**

**Multiple Defendants – Multiple Claims**..................................................................**80**

**Damages Generally**........................................................................................................**82**

**Calculation of Past and Future Damages** ................................................................**87**

**Lanham Act – Damages – Dyson's Profits** ..............................................................**89**

**Lanham Act – Damages – Corrective Advertising** ................................................**91**

**Lanham Act – Consider Damages Only if Necessary**............................................**93**

**Lanham Act – Nominal Damages** ..............................................................................**95**

**Willfulness – Burden of Proof and Standard** ........................................................**99**

**Willfulness – Burden of Proof and Standard** ........................................................**101**

**Instruction for Special Interrogatory Pursuant to FRCP 39(c)**........................**103**

**Laches** ..............................................................................................................................**105**

**Unclean Hands**..............................................................................................................**107**

**Equitable Estoppel**........................................................................................................**109**

**Waiver**..............................................................................................................................**111**

**Acquiescence** ..................................................................................................................**113**

**PROPOSED INSTRUCTION NO. 1 (JOINTLY SUBMITTED)**

<u>Introduction and Jurors' Duties</u>[1]

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case.

Each of you has been provided a copy of these instructions.  You may read along as I deliver them if you prefer; however, I would encourage you to focus your attention on me while the instructions are being read.  You will be able to take your copies with you into your deliberations and refer to them at that time, if necessary.

I will start by explaining your duties and the general rules that apply in every civil case.

Then I will explain some rules that you must use in evaluating particular testimony and evidence.

I will explain the positions of the parties and the law you will apply in this case.

Finally, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.

Please listen very carefully to everything I say.

Members of the jury, it is important that you bear in mind the distinction between your duties and my duties.  You have two main duties as jurors.  The first one is to decide what the facts are from the evidence that you saw and heard here in court.  You are the sole judges of the facts.  It is your judgment, and your judgment alone, to determine what the facts are, and nothing I have said or done during this trial was meant to influence your decisions about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide if, by the evidentiary standards I give you, the defendant is liable.

Now, as far as my duty is concerned, I have the duty of advising you about the law that you should apply to the facts as you find them.  You are not to consider whether the principles I

_____
[1] Authority:  Sample Miscellaneous Jury Instructions (Sleet, J.) (rev. January 18, 2006).

1

state to you are sound or whether they accord with your own views about policy.  You are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them.  You must accept them despite how you feel about their wisdom.  This includes both the instructions that I gave you before and during the trial, and these instructions.  All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly.  Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

## PROPOSED INSTRUCTION NO. 2 (JOINTLY SUBMITTED)

### Evidence Defined[2]

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath, the exhibits that I allowed into evidence, and the stipulations to which the lawyers agreed.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. The arguments of the lawyers are offered solely as an aid to help you in your determination of the facts. Their questions and objections are not evidence. My legal rulings are not evidence. My comments and questions are not evidence.

During the trial, I may have not let you hear the answers to some of the questions the lawyers asked. I may also have ruled that you could not see some of the exhibits that the lawyers wanted you to see. You must completely ignore all of these things. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

Make your decision based only on the evidence, as I have defined it here, and nothing else.

_____

[2] Authority:  Sample Miscellaneous Jury Instructions (Sleet, J.) (rev. January 18, 2006).

**PROPOSED INSTRUCTION NO. 3 (JOINTLY SUBMITTED)**

<u>Direct and Circumstantial Evidence</u>[3]

You have heard the terms direct and circumstantial evidence.

Direct evidence is evidence like the testimony of an eyewitness which, if you believe it, directly proves a fact. If a witness testified that she saw it raining outside, and you believed her, that would be direct evidence that it was raining.

Circumstantial evidence is a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence. The law makes no distinction between the weight that you should give to either one, nor does it say that one is any better than the other. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

---

[3] Authority: Sample Miscellaneous Jury Instructions (Sleet, J.) (rev. January 18, 2006).

**PROPOSED INSTRUCTION NO. 4 (JOINTLY SUBMITTED)**

<u>Statements of Counsel</u>[4]

A further word about statements and arguments of counsel. The attorneys' statements and arguments are not evidence. Instead, their statements and arguments are intended to help you review the evidence presented. If you remember the evidence differently from the attorneys, you should rely on your own recollection.

The role of attorneys is to zealously and effectively advance the claims of the parties they represent within the bounds of the law. An attorney may argue all reasonable conclusions from evidence in the record. It is not proper, however, for an attorney to state a personal opinion as to the truth or falsity of any testimony or evidence. What an attorney personally thinks or believes about the testimony or evidence in a case is not relevant, and you are instructed to disregard any personal opinion or belief concerning testimony or evidence that an attorney has offered during opening or closing statements, or at any other time during the course of the trial.

---

[4] Authority: Sample Miscellaneous Jury Instructions (Sleet, J.) (rev. January 18, 2006).

**PROPOSED INSTRUCTION NO. 5 (JOINTLY SUBMITTED)**

<u>Consideration of Evidence[5]</u>

You should use your common sense in weighing the evidence.  Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves.  If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

---

[5] Authority:  Sample Miscellaneous Jury Instructions (Sleet, J.) (rev. January 18, 2006); Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware § 1.5 (March 1993).

**PROPOSED INSTRUCTION NO. 6 (JOINTLY SUBMITTED)**

<u>Credibility of Witnesses</u>[6]

You are the sole judges of each witness's credibility.  You should consider each witness's means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness's biases, prejudices, or interests; the witness's manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

If you find the testimony to be contradictory, then it is your duty and privilege to believe the testimony, if any, that, in your judgment, is believable and disregard any testimony that, in your judgment, is not believable.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there is evidence tending to prove that the witness testified falsely about some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony he or she gave at trial.  You have the right to distrust such witness's testimony in other particulars, and you may reject all or some of the testimony of that witness or give it such credibility as you may think it deserves.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth.  People may tend to forget some things or remember other things inaccurately.  If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

This instruction applies to all witnesses.

_____

[6] Authority:  Sample Miscellaneous Jury Instructions (Sleet, J.) (rev. January 18, 2006).

**PROPOSED INSTRUCTION NO. 7 (JOINTLY SUBMITTED)**

Number of Witnesses[7]

One more point about the witnesses.  Sometimes jurors wonder if the number of witnesses who testified makes any difference.

Do not make any decisions based only on the number of witnesses who testified.  What is more important is how believable the witnesses were, and how much weight you think their testimony deserves.  Concentrate on that, not the numbers.

---

[7] Authority:  Sample Miscellaneous Jury Instructions (Sleet, J.) (rev. January 18, 2006).

**PROPOSED INSTRUCTION NO. 8 (JOINTLY SUBMITTED)**

Improper Considerations[8]

Also, let me remind you that it would be improper for you to consider any personal feelings you may have about the national origin or race of the parties or witnesses.

The parties to this case are entitled to a trial free from prejudice. Our judicial system cannot work unless you reach your verdict through a fair and impartial consideration of the evidence.

---

[8] Authority: 4 Leonard B. Sand *et al.*, *Modern Federal Jury Instructions*, Inst. 71-9 (2006).

**PROPOSED INSTRUCTION NO. 9 (JOINTLY SUBMITTED)**

<u>Stipulated Facts</u>

Dyson and Hoover have stipulated — that is, they have agreed — that certain facts are as counsel have read into the record. You therefore should treat those facts as having been proved to be true.

**PROPOSED INSTRUCTION NO. 10 (JOINTLY SUBMITTED)**

<u>Corporations – Foreign Corporations</u>[9]

In this case, both of the defendants are corporations.  The mere fact that the defendants are corporations does not mean they are entitled to any lesser consideration by you.  All litigants are equal before the law, and corporations, big or small, are entitled to the same fair consideration as you would give any other individual party.

In addition, your verdict must be based solely on the evidence developed at this trial or the lack of evidence.  It would be improper for you to consider any personal feelings you may have about the fact that one or more of the parties may be a foreign corporation.  The parties in this case are entitled to a trial free of prejudice.  Our judicial system cannot work unless you reach your verdict through a fair and impartial consideration of the evidence.

---

[9] Cite 4 <u>Modern Federal Jury Instructions</u> §72-01 (Lexis Nexis 2006)

**PROPOSED INSTRUCTION NO. 11 (JOINTLY SUBMITTED)**

<u>Common Counsel</u>[10]

Although the defendants in this trial are being represented by the same counsel, you are not to treat them as one person or entity.  Each defendant is entitled to your separate consideration.  The question of whether liability has been proven is an individual one with regard to each defendant and must be decided by you as to each defendant individually.  Similarly, if you find liability, you must decide the amount of damages separately as to each defendant.

---

[10] Authority:  4 Modern Federal Jury Instruction §77-2 (Lexis Nexis 2006); *Bailey v. Bould of County Comm's*, 956 F.2d 1112, 1129-30 (11th Cir. 1992), *cert. denied* 506 U.S. 832 (1992)

**PROPOSED INSTRUCTION NO. 12 (JOINTLY SUBMITTED)**

<u>What Is and Is Not Evidence</u>

The evidence in this case is the sworn testimony of the witnesses, the exhibits received in evidence, stipulations, and any judicially noticed facts.

By contrast, the question of a lawyer is not to be considered by you as evidence.  It is the witnesses' answers that are evidence, not the questions.  At times, a lawyer on cross-examination may have incorporated into a question a statement which assumed certain facts to be true, and asked the witness if the statement was true.  If the witness denied the truth of a statement, and if there is no direct evidence in the record proving that assumed fact to be true, then you may not consider it to be true simply because it was contained in the lawyer's question.

Testimony that has been stricken or excluded is not evidence and may not be considered by you in rendering your verdict.  Also, if certain testimony was received for a limited purpose – such as for the purpose of assessing a witness' credibility – you must follow the limiting instructions I have given.

Finally, statements which I may have made concerning the quality of the evidence do not constitute evidence.

It is for you alone to decide the weight, if any, to be given to the testimony you have heard and the exhibits you have seen.

## PROPOSED INSTRUCTION NO. 13 (JOINTLY SUBMITTED)

### Direct and Circumstantial Evidence

There are two types of evidence which you may properly use in reaching your verdict.

One type of evidence is direct evidence. Direct evidence is when a witness testifies about something he knows by virtue of his own senses--something he has seen, felt, touched, or heard. Direct evidence may also be in the form of an exhibit where the fact to be proved is its present existence or condition.

Circumstantial evidence is evidence which tends to prove a disputed fact by proof of other facts. There is a simple example of circumstantial evidence which is often used in this courthouse.

Assume that when you came into the courthouse this morning the sun was shining and it was a nice day. Assume that the courtroom blinds were drawn and you could not look outside. As you were sitting here, someone walked in with an umbrella which was dripping wet. Then a few minutes later another person also entered with a wet umbrella. Now, you cannot look outside of the courtroom and you cannot see whether or not it is raining. So you have no direct evidence of that fact. But on the combination of facts which I have asked you to assume, it would be reasonable and logical for you to conclude that it had been raining.

That is all there is to circumstantial evidence. You infer on the basis of reason and experience and common sense from one established fact the existence or non-existence of some other fact.

Circumstantial evidence is of no less value than direct evidence; for, it is a general rule that the law makes no distinction between direct evidence and circumstantial evidence but simply requires that your verdict must be based on all the evidence presented.

14

**DYSON PROPOSED INSTRUCTION NO. 14**

<u>Inference Defined</u>[11]

During the trial you have heard the attorneys use the term "inference," and in their arguments, they have asked you to infer, on the basis of your reason, experience, and common sense, from one or more established facts, the existence of some other fact.

An inference is not a suspicion or a guess. It is a reasoned, logical conclusion that a disputed fact exists on the basis of another fact which has been shown to exist.

There are times when different inferences may be drawn from facts, whether proved by direct or circumstantial evidence. Maytag asks you to draw one set of inferences, while Dyson asks you to draw another. It is for you, and you alone, to decide what inferences you will draw.

The process of drawing inferences from facts in evidence is not a matter of guesswork or speculation. An inference is a deduction or conclusion which you, the jury, are permitted to draw • but not required to draw • from the facts which have been established by either direct or circumstantial evidence. In drawing inferences, you should exercise your common sense.

So, while you are considering the evidence presented to you, you are permitted to draw, from the facts which you find to be proven, such reasonable inferences as would be justified in light of your experience.

_____

[11] 4 <u>Modern Federal Jury Instructions</u> §75-1 (Lexis Nexis 2006); *EEOC v. Greyhound Line*, 635 F.2d 188 (3d Cir. 1980).

**HOOVER'S OBJECTIONS TO DYSON'S PROPOSED INSTRUCTION NO. 14**

Hoover also objects to Dyson's Proposed Instruction No. 14 to the extent that it inaccurately identifies the counterclaim plaintiff as "Maytag," rather than "Hoover."

Hoover also objects on the ground that this instruction is not supported by the evidence or the law. There are no legal inferences in the case.

Hoover does not proposed an alternate instruction.

**DYSON PROPOSED INSTRUCTION NO. 15**

<u>Effect of Inference on Burden of Proof • Inference Against
Dyson Does Not Shift Burden of Proof</u>[12]

The mere existence of an inference against a party does not relieve the party entitled to the inference of the burden of establishing an element of its case or defense by a preponderance of the evidence or clearly and convincingly, depending on the element to be established. If a party is to obtain a verdict, you must still believe from the credible evidence that the party has sustained the burden cast upon it. If it has failed, then your verdict must be for the other party.

If you should find that all of the evidence is evenly balanced, then Maytag has failed to sustain its burden of proof and your verdict should be for Dyson.

---

[12] Authority: 4 <u>Modern Federal Jury Instructions</u> §75-2; *United States v. Cherasky Meat Co.*, 259 F.2d 89 (3d Cir. 1947); *Eckenrode R. Co. v. Pennsylvania R.Co.,* 164 F.2d 996 (3d Cir. 1947).

**HOOVER'S OBJECTIONS TO DYSON'S PROPOSED INSTRUCTION NO. 15**


Hoover also objects on the ground that this instruction is not supported by the evidence or the law. There are no legal inferences in the case. Moreover, this instruction is redundant with the burden of proof instruction and it ignores that Dyson has the burden of proof on its affirmative defenses.

**DYSON PROPOSED INSTRUCTION NO. 16**

<u>Impeachment by Prior Inconsistent Statements</u>[13]

You have heard evidence that at some earlier time a witness has said or done something which counsel argues is inconsistent with the witness' trial testimony.  Evidence of a prior inconsistent statement given under oath and subject to the penalty of perjury at a trial hearing or other proceeding, or in a deposition, may be considered by you as affirmative evidence in determining liability.

However, evidence of a prior inconsistent statement that was not given under oath and subject to the penalty of perjury at a trial hearing or other proceeding, or in a deposition, is not to be considered by you as affirmative evidence in determining liability.  Evidence of such a prior inconsistent statement was placed before you for the more limited purpose of helping you decide whether to believe the trial testimony of the witness who contradicted himself.  If you find that the witness made such earlier statement that conflicts with his trial testimony, you may consider that fact in deciding how much of his trial testimony, if any, to believe.

In making this determination, you may consider whether the witness purposely made a false statement or whether it was an innocent mistake; whether the inconsistency concerns an important fact, or whether it had to do with a small detail; whether the witness had an explanation for the inconsistency, and whether that explanation appealed to your common sense.

It is exclusively your duty, based upon all the evidence and your own good judgment, to determine whether the prior statement was inconsistent, and if so how much, if any, weight to give to the inconsistent statement in determining whether to believe all or part of the witness' testimony.

---

[13] Authority:  4 <u>Modern Federal Jury Instructions</u> §76-15; Fed. R. Evid 801; See also *Saladino v. Walker*, 609 F.2d 1211 (7th Cir. 1979).

**HOOVER'S OBJECTIONS TO DYSON'S PROPOSED INSTRUCTION NO. 16**

Hoover objects to this instruction as erroneous as a matter of law with respect to the use of prior inconsistent statements at trial. *See* Fed. R. Evid. 801(d)(1)(B) and (C).

Hoover does not propose an alternate instruction on this topic.

**DYSON'S PROPOSED INSTRUCTION NO. 17**

<u>Summaries and Charts Admitted as Evidence</u>

All of the parties have presented exhibits in the form of charts and summaries. I decided to admit some of these summaries and charts in place of the underlying documents that they represent in order to save time and avoid unnecessary inconvenience. You should consider these summaries and charts as you would any other evidence.

**HOOVER'S OBJECTIONS TO DYSON'S PROPOSED INSTRUCTION NO. 17**

Hoover objects because the instruction is not based on any evidence the parties have identified for trial.

Hoover does not proposed an alternate instruction.

**DYSON'S PROPOSED INSTRUCTION NO. 18**

<u>Demonstratives: Charts, Schedules and Summaries Not Admitted as Evidence</u>

Some charts, schedules and summaries that were not admitted as evidence were shown to you in order to make other evidence more meaningful and to aid you in considering the evidence. They are no better than the testimony or the documents upon which they are based, and are not themselves independent evidence.  Therefore, you are to give no greater consideration to these charts, schedules or summaries than you would give to the evidence upon which they are based.

It is for you to decide whether the charts, schedules or summaries correctly present the information contained in the testimony and in the exhibits on which they are based.  You are entitled to consider the charts, schedules and summaries if you find that they are of assistance to you in analyzing the evidence and understanding the evidence.

**HOOVER'S OBJECTIONS TO DYSON'S PROPOSED INSTRUCTION NO. 18**

Hoover objects because the instruction is not based on any evidence the parties have identified for trial.

Hoover does not proposed an alternate instruction.

**DYSON'S PROPOSED INSTRUCTION NO. 19**

<u>Interrogatories</u>

You have heard and seen evidence in this case which is in the form of interrogatories.

Interrogatories are written questions posed by one side which call for written answers under oath from the other side. Both the questions and answers are made prior to trial after the case has begun in what is called pretrial discovery, and each side is entitled to seek such discovery from the other.

You may consider a party's answers to interrogatories as evidence against a party who made the answer, just as you would any other evidence which has been admitted in this case.

In this regard, you are not required to consider a party's answers to interrogatories as true, nor are you required to give them more weight than any other evidence. It is up to you to determine what weight, if any, should be given to the interrogatory answers which have been admitted as evidence.

**HOOVER'S OBJECTIONS TO DYSON'S PROPOSED INSTRUCTION NO. 19**

Hoover objects because the instruction is not based on any evidence the parties have identified for trial.

Hoover does not proposed an alternate instruction.

**PROPOSED INSTRUCTION NO. 20 (JOINTLY SUBMITTED)**

Depositions

Some of the testimony before you is in the form of depositions which have been received as evidence. A deposition is a procedure where the attorneys for one side may question a witness or an adversary party under oath before a court stenographer prior to trial. This is part of the pretrial discovery, and each side is entitled to take depositions. You may consider the testimony of a witness given at a deposition according to the same standards you would use to evaluate the testimony of a witness given at trial.

**DYSON PROPOSED INSTRUCTION NO. 21**

<u>Uncalled Witness Not Equally Available</u>[14]

You have heard evidence about several witnesses who have not been called to testify. Both counsel for Maytag and Dyson have argued that these witnesses could have given material testimony in this case, and that the other party was in the best position to produce this witness.

If you find that (1) a person could have been called as a witness by one of the parties; (2) that party was in the best position to produce the witness; and (3) the witness would have given important testimony, then you are permitted, but not required, to infer that the testimony of this witness would have been unfavorable to the party that was in the best position to produce the witness.

In deciding whether to draw this inference, you should consider whether this witness's testimony would merely have repeated other testimony and evidence already before you. You may also consider whether the party had a reason for not calling this witness which was explained to your satisfaction.

Any inference you decide to draw should be based on all of the facts and circumstances in this case.

---

[14] 4 <u>Modern Federal Jury Instructions</u> §75-3; *Cromling v. Pittsburgh and Lake Erie R.R. Co.*, 327 F.2d 142, 148 (3d Cir. 1963).

**HOOVER'S OBJECTIONS TO DYSON'S PROPOSED INSTRUCTION NO. 21**

Hoover objects because the instruction is not based on any evidence the parties have identified for trial.

Hoover does not proposed an alternate instruction.

**PROPOSED INSTRUCTION NO. 22 (JOINTLY SUBMITTED)**

<u>Bias</u>

In deciding whether to believe a witness, you should specifically note any evidence of hostility or affection which the witness may have towards one of the parties. Likewise, you should consider evidence of any other interest or motive that the witness may have in cooperating with a particular party.

It is your duty to consider whether the witness has permitted any such bias or interest to color his testimony. In short, if you find that a witness is biased, you should view his testimony with caution, weigh it with care and subject it to close and searching scrutiny.

**PROPOSED INSTRUCTION NO. 23 (JOINTLY SUBMITTED)**

<u>Expert Witness – Generally</u>

In this case, I have permitted certain witnesses to express their opinions about matters that are in issue.  A witness may be permitted to testify to an opinion on those matters about which he or she has special knowledge, skill, experience and training.  Such testimony is presented to you on the theory that someone who is experienced and knowledgeable in the field can assist you in understanding the evidence or in reaching an independent decision on the facts.

In weighing this opinion testimony, you may consider the witness' qualifications, his or her opinions, the reasons for testifying, as well as all of the other considerations that ordinarily apply when you are deciding whether or not to believe a witness' testimony.  You may give the opinion testimony whatever weight, if any, you find it deserves in light of all of the evidence in this case.  You should not, however, accept opinion testimony merely because I allowed the witness to testify concerning his or her opinion.  Nor should you substitute it for your own reason, judgment and common sense.  The determination of the facts in this case rests solely with you.

## PROPOSED INSTRUCTION NO. 24 (JOINTLY SUBMITTED)

### Conflicting Expert Testimony

You have heard testimony of two or more expert witnesses who have been called by both sides to give their opinion about a particular issue. The expert witnesses who testified in this case did so in order to assist you in reaching a decision on that particular issue.

The testimony of these expert witnesses may be in conflict. You must remember that you are the sole trier of the facts and their testimony relates to a question of fact, so, it is your job to resolve any conflict or disagreement.

The way you resolve a conflict between expert witnesses is the same way that you decide other conflicts in evidence. In addition, since they gave their opinions, you should consider the soundness of each opinion, reasons for the opinion and the witness' motive, if any, for testifying.

You may give the testimony of the expert witnesses such weight, if any, that you think it deserves in the light of all the evidence. You should not permit a witness' opinion testimony to be a substitute for your own reason, judgment and common sense.

You may reject the testimony of any expert witness in whole or in part, if you conclude the reasons given in support of an opinion are unsound or, if you, for other reasons, do not believe the witness. The determination of the facts in this case rests solely with you.

**DYSON PROPOSED INSTRUCTION NO. 25**

<u>Challenged Claims</u>

Maytag contends that Dyson made certain advertising claims in violation of the Lanham Act, the Delaware Uniform Deceptive Trade Practices Act and Delaware's law of unfair competition, all of which will be described below.   In deciding whether Maytag has met its burden of establishing that Dyson has violated one or all of these laws, you will be asked to consider the following categories of Dyson claims challenged by Maytag:

1.      Claims about Dyson vacuum cleaners having constant suction;

2.      Claims about the suction power of Dyson vacuum cleaners;

3.      Claims about Dyson vacuum cleaners' reliance on filters;

4.      Claims about Dyson vacuum cleaners not clogging;

5.      Claims about Dyson vacuum cleaners' pick-up of larger dirt and debris;

6.      Claims about whether other vacuum cleaners work properly;

7.      Claims about being approved for allergy sufferers;

8.      Force-of-gravity claims;

9.      Claims about Dyson dirt cups being hygienic;

10.     Claims about invention of cyclonic technology and the integral hose;

11.     Claims about the United Kingdom patent infringement lawsuit.

**HOOVER'S OBJECTIONS TO DYSON'S PROPOSED INSTRUCTION NO. 25**

Hoover objects to Dyson's Proposed Instruction No. 25 in its entirety because it is unsupported by any citation of supporting authority, as required by the Court's online Final Pretrial Order form (http://www.ded.uscourts.gov/GMSmain.htm) at 4, fn 8 ("All instructions, including objections, shall be in writing *and include citations of supporting authorities*) (emphasis added)

Hoover objects to this instruction to the extent that it inaccurately identifies the counterclaim plaintiff as "Maytag," rather than "Hoover."

Hoover also objects to this proposed instruction as unnecessary and duplicative of prior instructions.

Hoover does not propose an alternate instruction.

**DYSON PROPOSED INSTRUCTION NO. 26**

Number of Challenged Claims

As you have heard, Maytag has alleged that a total of 52 Dyson advertising claims violate the Lanham Act, the Delaware Deceptive Trade Practices Act and Delaware's law of unfair competition. The sheer number of claims accused by Maytag does not make it any more or less likely that an individual Dyson statement violates one or all of these laws. You will be asked to determine whether Maytag has met its burden of proof, which I will explain in a moment, with respect to each of Dyson's claims. You should do so without reference to or consideration of the total number of claims.

**HOOVER'S OBJECTIONS TO DYSON'S PROPOSED INSTRUCTION NO. 26**

Hoover objects to Dyson's Proposed Instruction No. 26 in its entirety because it is unsupported by any citation of supporting authority, as required by the Court's online Final Pretrial Order form (http://www.ded.uscourts.gov/GMSmain.htm) at 4, fn 8 ("All instructions, including objections, shall be in writing *and include citations of supporting authorities*) (emphasis added)

Hoover also objects to this instruction to the extent that it inaccurately identifies the counterclaim plaintiff as "Maytag," rather than "Hoover."

Hoover also objects to this proposed instruction as unnecessary and duplicative of prior instructions.

Hoover does not propose an alternate instruction.

## DYSON PROPOSED INSTRUCTION NO. 27

<u>False Advertising – Elements of the Claim</u>[15]

A claim of false or misleading advertising is sometimes called a "Lanham Act" claim because it is based on a federal statute called the Lanham Act.   Maytag has charged Dyson with false advertising under the Lanham Act based on the claims listed in Instruction No. 27.  Maytag contends that each of those claims constitutes a false and misleading description of fact in advertising and promotion, which misrepresents the performance capabilities of the US DC07, DC14 and DC15 upright vacuum cleaners, and actually deceives a substantial portion of Maytag's potential customers for upright vacuum cleaners.

In order for Maytag to prevail on a false advertising claim under the Lanham Act, Maytag must prove by a preponderance of the evidence each and every one of the following elements:

(1)    that Dyson made a false and misleading statement of fact in a commercial advertisement about its own product or Maytag's product;

(2)    that the statement actually deceived a substantial portion of its intended audience;

(3)    that the deception was material in that it was likely to influence purchasing decisions;

(4)    that the advertised goods were placed into interstate commerce; and

(5)    that Maytag has been or is likely to be injured as a result of the statement, either by direct diversion of sales to Dyson or by a lessening of goodwill associated with Maytag's products.

---

[15] Authority: *Callaway v. Dunlop*, C. A. No. 01-669 (KAJ), Jury Instruction 3.1; *Johnson & Johnson-Merck Consumer Pharms. Co. v. Rhone-Poulenc Rorer Pharms., Inc.*, 19 F.3d 125, 129 (3d Cir. 1994); *U.S. Healthcare, Inc. v. Blue Cross of Greater Phila.,* 898 F.2d 914, 922 (3d Cir. 1990); *Parkway Baking Co. v. Freihofer Baking Co.,* 255 F.2d 641, 648 (3d Cir. 1958); *Synopsis, Inc. v. Magma Design Automation*, C.A. No. 05-701 (GMS), 2006 U.S. Dist. LEXIS 33751 (D. Del. May 25, 2006); *Enzo Life Scis., Inc. v. Digene Corp.*, 295 F. Supp. 2d 424, 427 (D. Del. 2003)

### HOOVER'S OBJECTIONS TO DYSON'S PROPOSED INSTRUCTION NO. 27

Hoover objects to this instruction to the extent that it inaccurately identifies the counterclaim plaintiff as "Maytag," rather than "Hoover."

Hoover also objects to Dyson's Proposed Instruction No. 27 because it is argumentative and improperly states the instruction for the elements of a Lanham Act claim as being "Maytag's Position." Issues relating to the parties and their contentions is addressed in other sections of the instructions and need not be repeated here. Moreover, the statement of the elements of a legal claim cannot be characterized as one parties' "position."

Hoover also objects to Dyson's statement of the second element of a Lanham Act claim because it does not comport with current law in the Third Circuit by failing to include the "had the tendency to deceive a substantial segment of its audience" language of the element.

Hoover also objects to this proposed instruction as unnecessary and duplicative of prior instructions.

Hoover does not propose an alternate instruction.


### DYSON'S RESPONSE TO MAYTAG'S OBJECTION

Maytag must prove actual deception to obtain an award of damages. *See US Healthcare, Inc. v. Blue Cross of Greater Phila.*, 898 F.2d 914, 922 (3d Cir. 1990); *Parkway Baking Co. v. Freihofer Baking Co.*, 255 F.2d 641, 643 (3d Cri. 1958). "Tendency to deceive" is the standard for imposition of an injunction, which is not for the jury to decide.

**DYSON PROPOSED INSTRUCTION NO. 28**

<u>Lanham Act – False Advertising – Dyson's Position</u>

Dyson contends that none of the advertising claims identified in Instruction No. 25 violates the Lanham Act.  In particular, Dyson claims that:

(1)     not all the challenged claims have been used in commercial advertising or promotion;

(2)     those challenged claims that are used in commercial advertisements or promotions are literally true or are non-actionable statements of opinions or puffery;

(3)     to the extent challenged claims used in commercial advertisements or promotions are literally false, such challenged claims are not likely to influence a consumer's purchasing decision;

(4)     to the extent challenged claims used in commercial advertisements or promotions are literally true, but convey an implied message that is misleading to consumers, consumers are not actually deceived;

(5)     to the extent challenged claims used in commercial advertisements or promotions are literally true, but convey an implied message that is misleading to consumers, such challenged claims are not likely to influence a consumer's purchasing decision;

(6)     to the extent challenged claims used in commercial advertisements or promotions are literally false or actually deceived a substantial portion of its intended audience, Maytag has not been directly harmed as a result of any false or misleading claim;

(7)     Maytag cannot show any monetary damage that was not caused by other salient business factors; and

(8)     Maytag's claims are barred by Maytag's failure to bring its claim in a timely manner.

**HOOVER'S OBJECTIONS TO DYSON'S PROPOSED INSTRUCTION NO. 28**

Hoover objects to Dyson's Proposed Instruction No. 28 in its entirety because it is unsupported by any citation of supporting authority, as required by the Court's online Final Pretrial Order form (http://www.ded.uscourts.gov/GMSmain.htm) at 4, fn 8 ("All instructions, including objections, shall be in writing *and include citations of supporting authorities*) (emphasis added)

Hoover also objects to this instruction to the extent that it inaccurately identifies the counterclaim plaintiff as "Maytag," rather than "Hoover."

Hoover also objects to Dyson's Proposed Instruction No. 28 because it is unnecessary and argumentative. The instruction improperly characterizes itself as an instruction relating to False Advertising and as "Dyson's Position." Issues relating to the parties and their contentions is addressed in other sections of the instructions and need not be repeated here. Accordingly, this instruction is not based on any jury charge supported by any authority, and merely seeks to inject Dyson's argument into the jury instructions.

Hoover also objects to this proposed instruction as unnecessary and duplicative of prior instructions.

Hoover does not propose an alternate instruction.

## HOOVER'S PROPOSED ISSUES INSTRUCTION NO. 29

<u>Elements for Each of Hoover's Claims</u>

I will now turn to Hoover's specific claims against the Dyson Defendants. Hoover has alleged three separate claims of alleged wrongdoing, known as counts, as follows:

Count I -- False Advertising Prohibited By The United States Lanham Act

Count II – Deceptive Trade Practices Prohibited By The Delaware Deceptive Trade Practice Act.

Count III—Unfair Competition Under Delaware common law.

I now will explain the elements of these counts to you.

<u>Count I</u>

As for Count I, false advertising is prohibited by a United States statute known as the Lanham Act. To establish its Lanham Act claim, Hoover must prove by a preponderance of the evidence the following[16]:

(1) Dyson made a false or misleading statement of fact or representation of fact in a commercial advertisement about its own or another's product;

(2) the misrepresentation was material, in that it was likely to influence the purchasing decision;

(3) the misrepresentation actually deceived substantial segment of its audience; and

(4) the advertised goods traveled in interstate commerce; and

(5) Hoover was or is likely to be injured as a result of Dyson's false or misleading advertisement, either by direct diversion of sales or by' a lessening of goodwill associated with its products.

With respect to the fourth element, whether the advertised goods are in interstate

---

[16] 15 U.S.C. 1125; *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer*, 290 F.3d 578, 586 (3rd Cir. 2002); *Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 171 (3rd Cir. 2001)**;** *Warner-Lambert Co. v. Breathasure, Inc.*, 204 F.3d 87, 91 (3rd Cir. 2000); Johnson & Johnson-Merck Consumer Pharmaceuticals Co. v. Rhone-Poulene Rorer Pharm., Inc., 19 F.3d 125, 129 (3d Cir. 1994).

commerce, I instruct you that the goods were in interstate commerce as a matter of law, as the advertisements were shipped or later viewed in numerous states throughout the country.

If you find after considering all the evidence that Hoover has proven these elements, then your verdict should be for Hoover.  However, if Hoover has failed to prove any one of these elements, then your verdict should be for Dyson.

<u>Count II</u>

Turning now to Count II, deceptive trade practices are prohibited by the Delaware Deceptive Trade Practices Act.  Under that Act, a party engages in a deceptive trade practice when, in the course of a business, it, among other things[17]:

(1)     represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have, or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have; or

(2)     represents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; or

(3)     disparages the goods, services, or business of another by false or misleading representation of fact; or

(4)     advertises goods or services with the intent not to sell them as advertised; or

(5)     engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

If, after consideration of all the evidence, you find that Hoover has proven that Dyson has engaged in one or more of the foregoing prohibited acts, then your verdict should be for Hoover. However, if you find that Hoover has not proven that Dyson has engaged in any of the foregoing prohibited acts, then your verdict should be for Dyson.

---

[17] 6 *Del. C.* § 2532(a)-(b); *Grand Ventures, Inc. v. Whaley*, 632 A.2d 63, 67 (Del. 1993)

## Count III

Turning now to Count III, unfair competition is prohibited under Delaware law. Under Delaware law, unfair competition occurs when a party falsely markets its products in a way that was reasonably calculated to deceive the average buy under the ordinary conditions prevailing in the particular trade. [18]

If, after consideration of all the evidence, you find that Hoover has proven that Dyson has engaged in unfair competition as defined above, then your verdict should be for Hoover. However, if you find that Hoover has not proven that Dyson engaged in unfair competition, then your verdict should be for Dyson.

---

[18] *State ex rel. Brady v. Wellington Homes, Inc.,* 2003 WL 22048231, at *2 (Del. Super. 2003); *Kellam Energy, Inc. v. Duncan*, 668 F. Supp. 861, 879 (D. Del. 1987); *Coca-Cola Co. v. Nehi Corporation,* 36 A.2d 156, 165 (Del. 1944).

**DYSON'S OBJECTIONS TO HOOVER'S PROPOSED INSTRUCTION NO. 29**

Dyson objects to this instruction on the grounds that the jury should be instructed on each of Maytag's claims separately, so that the jury can more fully understand the elements that Maytag must prove, how Maytag can or must prove those elements, and what those elements mean. Maytag's attempt to divorce these instructions from the instruction on the elements themselves is misleading, confusing to the jury, and prejudicial.

Dyson further objects to this instruction on the grounds that the reference to Hoover renders it unintelligible. Maytag is the only counterclaimant.

Dyson objects to Maytag's instruction, "Count I," on the grounds that it is misleading and confusing to the jury. Dyson's Proposed Instruction No. 29 provides better context for the jury to understand the elements of the cause of action. Dyson further objects that Maytag's instruction fails to inform the jury that they must find that Maytag proved the elements of "Count I" by a preponderance of the evidence.

Dyson objects to Maytag's instruction, "Count II," on the grounds that it should be given in connection with any other instructions on the Delaware Deceptive Trade Practices Act. Dyson's Proposed Instruction No. 29 provides better context for the jury to understand Maytag's claim and what Maytag must prove.

Dyson objects to Maytag's instruction, "Count III," on the grounds that it should be given in connection with any other instructions on common law unfair competition. Dyson's Proposed Instruction No. 29 provides better context for the jury to understand Maytag's claim and what Maytag must prove.

**HOOVER PROPOSED INSTRUCTION NO. 30**
<u>Lanham Act - Burden of Proof</u>[19]

     This is a civil case in which Hoover alleges that Dyson engaged in false or misleading advertising. Hoover has the burden of proving its claim by what is called a preponderance of the evidence. That means Hoover has to produce evidence which, when considered in light of all of the facts, leads you to believe that what Hoover claims is more likely true than not. To put it differently, if you were to put Hoover's and Dyson's evidence on the opposite sides of a scale, the evidence supporting Hoover's claim would have to make the scales tip somewhat on its side.

     Those of you who are familiar with criminal cases will have heard the term "proof beyond a reasonable doubt." That burden does not apply in a civil case and you should, therefore, put it out of your mind in considering whether or not the parties have met their burden of proof.

---

[19] *Callaway v. Dunlop*, C.A. No. 01-669 (KAJ), Jury Instruction No. 1.3

**DYSON'S OBJECTIONS TO HOOVER'S PROPOSED INSTRUCTION NO. 30**

Dyson objects to the reference to "Hoover" as rendering the instruction unintelligible. Hoover is not a party.  Dyson further objects to the deletion of the sentence "Dyson does not need to introduce evidence that its claims are true and accurate."  The omission renders the proposed instruction incomplete.  *Johnson & Johnson-Merck Consumer Pharm. Co. v. Rhone-Poulenc Rorer Pharm.,* 19 F.3d 125, 129 (3d Cir. 1994) (plaintiff must prove the claim is false, not merely unsubstantiated).

**DYSON PROPOSED INSTRUCTION NO. 31**

Lanham Act - Burden of Proof[20]

Maytag has the burden of proving its claims under the Lanham Act by a preponderance of the evidence.  That means that Maytag is required to introduce affirmative evidence that persuades you that it is more likely than not that Dyson's claims are false or misleading.  Dyson does not need to introduce evidence that its claims are true and accurate.

---

[20] Authority:  *Callaway v. Dunlop*, C.A. No. 01-669 (KAJ), Jury Instruction No. 1.3

47

**HOOVER'S OBJECTIONS TO DYSON'S PROPOSED INSTRUCTION NO. 31**

Hoover also objects to this instruction to the extent that it inaccurately identifies the counterclaim plaintiff as "Maytag," rather than "Hoover."

Finally, Hoover objects to this instruction as incomplete and erroneous as a matter of law.

**DYSON PROPOSED INSTRUCTION NO. 32**

<u>Lanham Act – Opinions/Puffery</u>[21]

A statement in an advertisement cannot be false or misleading in violation of the Lanham Act if you find that it expresses an opinion rather than a fact. Additionally, a statement will not constitute false advertising if you find that it is mere "puffery." Puffery includes statements of opinion that are not capable of measurement and exaggerated statements contained in an advertisement, often made in a blustering or boastful manner. Exaggerated negative comments made about the products of a competitor may also be considered puffery if you conclude that no reasonable consumer would rely on the exaggerated claims.

---

[21] Authority: *Castrol, Inc. v. Pennzoil Co.*, 987 F.2d 939, 945 (3d Cir. 1993); *Gillette Co. v. Norelco Consumer Prods. Co.*, 946 F. Supp. 115, 130-31 (D. Mass. 1996)

**HOOVER'S OBJECTIONS TO DYSON'S PROPOSED INSTRUCTION NO. 32**

Hoover objects to Dyson's Proposed Instruction No. 32 in its entirety as erroneous as a matter of law and because it asks for the jury to make a ruling of law, which is outside the province of the jury's duty.

Hoover also objects to this proposed instruction as unnecessary and duplicative of prior instructions.

Hoover does not propose an alternate instruction.

**DYSON PROPOSED INSTRUCTION NO. 33**

<u>Lanham Act – Meaning of Commercial Advertising or Promotion</u>[22]

For any statement to be considered commercial advertising or promotion, it must be part of an organized campaign to penetrate the relevant market. Normally, this requires proof of widespread dissemination within the relevant industry.

_____

[22] Authority: *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 56-58 (2d Cir. 2002)

**HOOVER'S OBJECTIONS TO DYSON'S PROPOSED INSTRUCTION NO. 33**

Hoover objects to Dyson's Proposed Instruction No. 33 in its entirety as erroneous as a matter of fact and law and as unnecessary.  All of the challenged advertising claims in this litigation came from Dyson's print, television, point-of-purchase, Internet, brochure, packaging and other appropriate advertisements.

Hoover also objects to this proposed instruction as unnecessary and duplicative of prior instructions.

Hoover does not propose an alternate instruction.

**DYSON PROPOSED INSTRUCTION NO. 34**

<u>Lanham Act – Difference Between False and Misleading</u>[23]

A Lanham Act claimant must prove actual falsity, not just a lack of pre-existing substantiation for the challenged advertising. If you decide that Maytag has met its burden of showing that one or more of the challenged claims is literally false, Maytag is not required to introduce evidence that the challenged claim or claims actually misled consumers. There is a presumption that the claims or claims misled consumers.

If you decide that Maytag has not shown that any of the challenged claims are literally false, you must then decide whether the claim or claims considered in the context of the advertisement in which it appeared nevertheless mislead consumers. Under these circumstances, you may not assume that the claim or claims actually misled consumers. Instead, you must decide whether Maytag has proved, by a preponderance of the evidence, that the claim or claims made by Dyson actually misled consumers. Maytag cannot prove that a literally true claim is misleading simply by arguing how consumers could react to the challenged advertising. It must prove how consumers actually do react to it.

---

[23] Authority: *Callaway v. Dunlop*, C. A. No. 01-669 (KAJ), Jury Instruction No. 3.2 (D.Del. 2005); *Sandoz Pharm. Corp. v. Richardson-Vicks, Inc.,* 902 F.2d 222, 228-229 (3d Cir. 1990); *Johnson & Johnson-Merck Consumer Pharm. Co. v. Rhone-Poulenc Rorer Pharm.,* 19 F.3d 125, 129-30 (3d Cir. 1994).

**HOOVER'S OBJECTIONS TO DYSON'S PROPOSED INSTRUCTION NO. 34**

Hoover objects to Dyson's Proposed Instruction No. 34  because it is erroneous as a matter of law, vague and confusing.  Specifically, the first sentence of Dyson's instruction is inconsistent with the law relating to establishment claims.  Moreover, the last two sentences of Dyson's instruction are vague and confusing.

Hoover also objects to this instruction to the extent that it inaccurately identifies the counterclaim plaintiff as "Maytag," rather than "Hoover."

Hoover also objects to this proposed instruction as unnecessary and duplicative of prior instructions.

**DYSON PROPOSED INSTRUCTION NO. 35**

<u>Lanham Act – Literal Falsity in Context</u>[24]

A determination of literal falsity rests on an analysis of the challenged claim in the context of the commercial advertisement or promotion in which it appears. Only an unambiguous message can be literally false. If the challenged claim is susceptible to more than one reasonable interpretation, Maytag cannot establish literal falsity.

---

[24] Authority*: Johnson & Johnson-Merck Consumer Pharm. Co. v. Rhone-Poulenc Rorer Pharm., Inc.*, 19 F.3d 125, 129 (3d Cir. 1994) ("A determination of literal falsity rests on an analysis of the message in context."); *Pharmacia Corp. v. GlaxoSmithKline Consumer Healthcare, L.P.*, 292 F.Supp.2d 594, 599 (D.N.J. 2003).

**HOOVER'S OBJECTIONS TO DYSON'S PROPOSED INSTRUCTION NO. 35**

Hoover objects to Dyson's Proposed Instruction No. 35  because it is erroneous as a matter of law.  If a challenged claim in this litigation is false, then Hoover has met its burden of proof as to that element of the Lanham Act, and Dyson's advertising cannot be resuscitated by otherwise truthful statements within the same advertisement.

Hoover also objects to this instruction to the extent that it inaccurately identifies the counterclaim plaintiff as "Maytag," rather than "Hoover."

Hoover also objects to this proposed instruction as unnecessary and duplicative of prior instructions.

Hoover does not propose an alternate instruction


**DYSON RESPONSE TO MAYTAG OBJECTION**

Maytag's position that context is irrelevant to literal falsity is completely contrary to well established law under the Lanham Act.  *See Johnson & Johnson-Merck Consumer Pharm. Co. v. Rhone-Poulenc Rorer Pharm., Inc.*, 19 F.3d 125, 129 (3d Cir. 1994) ("A determination of literal falsity rests on an analysis of the message in context."); *see also S.C. Johnson & Son, Inc. v. Clorox Co.*, 241 F.3d 232, 238 (2d Cir. 2001) ("[f]undamental to any task of interpretation is the principle that text must yield to context") (internal quotation marks, citations and alterations omitted); *Avis Rent A Car System, Inc. v. The Hertz Corp.*, 782 F.2d 381, 385 (2d Cir. 1986) (the "text must yield to context").

**DYSON PROPOSED INSTRUCTION NO. 36**

<u>Lanham Act – Materiality</u>[25]

Even if Maytag proves that a challenged claim is literally false, however, Maytag still must prove that the literally false claim is material, i.e., likely to influence a consumer's purchasing decision.

Materiality is a separate inquiry from actual deception because materiality considers whether the false or misleading statement is likely to make a difference to purchasers. Thus, even when a statement is literally false materiality must be demonstrated in order to show that the misrepresentation was likely to influence consumers' purchasing decisions.

---

[25] Authority: *3M Innovative Properties Co. v. Dupont Dow Elastomers LLC*, 361 F. Supp. 2d 958, 971 (D. Minn. 2005); *see also Mylan Pharma. Inc. v. Proctor and Gamble Co.*, 443 F. Supp.2d 453, 462 (S.D.N.Y. 2006); *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1250 (11th Cir. 2002) ("The materiality requirement is based on the premise that not all deceptions affect consumer decisions."); *S.C. Johnson & Son, Inc. v. Clorox Co.*, 241 F.3d 232, 238 (2d Cir. 2001) (holding that the plaintiff must establish materiality even when a court finds that a defendant's advertisement is literally false); *Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.*, 284 F.3d 302, 311 (1st Cir. 2002).

**HOOVER'S OBJECTIONS TO DYSON'S PROPOSED INSTRUCTION NO. 36**

Hoover objects to this instruction to the extent that it inaccurately identifies the counterclaim plaintiff as "Maytag," rather than "Hoover."

Hoover also objects to this proposed instruction as unnecessary and duplicative of prior instructions.

Hoover does not propose an alternate instruction

## DYSON'S PROPOSED INSTRUCTION NO. 37

<u>Lanham Act – Establishment Claim</u>[26]

Establishment claims are claims that explicitly or implicitly represent that the claim is proven by scientific tests or studies.  Maytag can prove that Dyson's establishment claims are false by demonstrating that they are not supported by the scientific studies on which they rely, or that the underlying scientific tests or studies are not sufficiently reliable to permit a conclusion, with reasonable certainty, that they establish the claims.

---

[26] *Castrol Inc. v. Quaker State Corp.*, 977 F.2d 57, 63 (2d Cir. 1992); *McNeil-P.C.C., Inc. v. Bristol-Myers Squibb Co*., 938 F.2d 1544, 1549 (2d Cir. 1991).

**HOOVER'S OBJECTIONS TO DYSON'S PROPOSED INSTRUCTION NO. 37**

Hoover objects to this instruction to the extent that it inaccurately identifies the counterclaim plaintiff as "Maytag," rather than "Hoover."

Hoover also objects to this proposed instruction as unnecessary and duplicative of prior instructions.

**DYSON'S PROPOSED INSTRUCTION NO. 38**

<u>Lanham Act – Establishment Claim – Industry Standards</u>[27]

In deciding whether Hoover has met its burden, you should consider all relevant circumstances, including the state of the testing art, the existence and feasibility of superior procedures, the objectivity and skill of the persons conducting the tests, the accuracy of their reports, and the results of other pertinent tests.

Hoover cannot meet its burden of proof by merely exposing the weaknesses of defendant's tests or by simply alleging that the tests are unpersuasive. Rather, Hoover must prove, by a preponderance of the evidence, that the flaws were sufficiently material so as to render Dyson's reliance on these tests objectively unreasonable.

---

[27] Authority: *Castrol, Inc. v. Pennzoil Quaker State Co.*, 169 F. Supp. 2d 332, 336 (D.N.J. 2001), *citing McNeil-P.C.C., Inc. v. Bristol-Myers Squibb Co*., 938 F.2d 1544, 1549 (2d Cir. 1991); *S.C. Johnson & Son, Inc. v. Clorox Co.*, 930 F. Supp. 753, 780 (E.D.N.Y. 1996); *Castrol*, 987 F.2d 939, 944 (3d Cir. 1993); *Lenscrafters, Inc. v. Vision World, Inc.*, 943 F. Supp. 1481, 1502 (D. Minn. 1996); *L&F Products v. P&G Co.*, 845 F. Supp. 984, (S.D.N.Y. 1994), *aff'd* 45 F.3d 709 (2d Cir. 1995).

**HOOVER'S OBJECTIONS TO DYSON'S PROPOSED INSTRUCTION NO. 38**

Hoover objects to this instruction to the extent that it inaccurately identifies the counterclaim plaintiff as "Maytag," rather than "Hoover."

Hoover also objects to this proposed instruction as unnecessary and duplicative of prior instructions.

**DYSON PROPOSED INSTRUCTION NO. 39**

Lanham Act – Misleading Claims[28]

Earlier, I told you that both literally false and impliedly false advertising claims are actionable under the Lanham Act.

If Maytag cannot show that an advertising claim made by Dyson is literally false, in order to recover under the Lanham Act, it must prove that the advertisement claim conveyed an impliedly false message that was misleading to consumers. To do this, Maytag must prove, by evidence of actual consumer reaction that the representation actually deceived a substantial portion of the intended audience. Additionally, because materiality is a separate inquiry from deception, even when Maytag proves a statement is misleading, Maytag must still show that the misrepresentation was likely to influence consumers.

---

[28] Authority:  *Johnson & Johnson-Merck Consumer Pharm. Co. v. Rhone-Poulenc Rorer Pharm., Inc.*,19 F.3d 125, 129 (3d Cir. 1994); *AstraZeneca LP v. Tap Pharmaceutical Products, Inc.*, 444 F.Supp.2d 278, 295-96 (D. Del. 2006) *citing Sandoz Pharma. Corp v. Richardson-Vicks, Inc.*, 902 F.2d 222, 228-29 (3d. Cir. 1990); *Sandoz Pharma. Corp v. Richardson-Vicks, Inc.*, 735 F.Supp. 597, 600 (D. Del. 1989).

**HOOVER'S OBJECTIONS TO DYSON'S PROPOSED INSTRUCTION NO. 39**

Hoover objects to this instruction to the extent that it inaccurately identifies the counterclaim plaintiff as "Maytag," rather than "Hoover."

Hoover also objects to this proposed instruction as unnecessary and duplicative of prior instructions.

Hoover does not propose an alternate instruction.

## HOOVER'S ADDITIONAL PROPOSED INSTRUCTIONS REGARDING ITS LANHAM ACT CLAIM NO. 40

If you decide that the advertising statements made by Dyson are literally false, the party asserting the false or misleading advertising claim is not required to introduce evidence on the issue of the impact the statements had on consumers. Instead, you should assume the statements actually misled consumers.

However, if the advertising statements are ambiguous or literally true, you may not assume the statements actually misled consumers. Instead, under these circumstances, you must decide whether the statements actually misled consumers.[29]

Some of Dyson's advertising claims are known as establishment claims. Establishment claims are claims that explicitly or implicitly represent that the claim is proven by scientific tests or studies. Establishment claims are literally false if they are not supported by the scientific studies on which they rely, or that the underlying scientific tests or studies are not sufficiently reliable to permit a conclusion, with reasonable certainty, that they establish the claims.[30]

Hoover also contends that this is an exceptional case. You may find that this is an exceptional case if you determine by clear and convincing evidence that Dyson's false advertising amounted to culpable conduct such as bad faith, fraud, malice, or knowing, willful or deliberate false advertising.[31]

---

[29] *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer*, 290 F.3d 578, 587 (3rd Cir. 2002); *Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 171 (3rd Cir. 2001); *Warner-Lambert Co. v. Breathasure, Inc.*, 204 F.3d 87, 92 (3rd Cir. 2000).

[30] *Castrol Inc. v. Quaker State Corp.*, 977 F.2d 57, 63 (2d Cir. 1992); *McNeil-P.C.C., Inc. v. Bristol-Myers Squibb Co*., 938 F.2d 1544, 1549 (2d Cir. 1991).

[31] 15 U.S.C. 1117(a); *Callaway Gold Co. v. Slazenger*, 284 F. Supp. 2d 735, 747-8 (D.C. Del. 2005); *Ferrero U.S.A., Inc. v. Ozak Trading, Inc.,* 952 F.2d 44, 47 (3d Cir. 1991) (internal citations omitted).

**DYSON'S OBJECTIONS TO HOOVER'S PROPOSED INSTRUCTION NO. 40**

Dyson objects to the reference to "Hoover." Hoover is not a party; Maytag is the counterclaimant.

Dyson further objects to this instruction, which conflates the disparate legal issues presented in Dyson's Proposed Instructions Nos. 27, 31, 34 to 39, 41 and 42. Dyson further objects to this instruction as misleading, erroneous, and prejudicial. Maytag's instruction contains material omissions or misstatements of law in each of its paragraphs.

Dyson objects to paragraph one on the grounds that it is erroneous as a matter of law and misleading insofar as it suggests that Maytag is not required to prove materiality for literally false claims. (*See* Authorities cited in support of Dyson's Proposed Instruction No. 36.)

Dyson objects to paragraph two on the grounds that it is an inaccurate and incomplete statement of law regarding implied claims. Dyson's Proposed Instruction Nos. 34, 39, 41 and 42 are more accurate and complete.

Dyson objects to paragraph three on the grounds that it is an inaccurate and incomplete statement of law regarding establishment claims. Dyson's Proposed Instruction Nos. 37 and 38 are more accurate and complete.

Dyson objects to paragraph four on the grounds that the determination of an "exceptional case" for purposes of awarding attorneys' fees is a question for the Court not the jury. *Villafane Elec. Corp. v. Reliance Ins. Co.*, Nos. No. 02 Civ. 2682, 03 Civ. 4645, 2004 WL 385041, at *2 (S.D.N.Y. 2004) ("usually the issue of statutory attorneys' fees awards to prevailing parties is an issue for the court and not a jury"); *see also Resolution Trust Corp. v. Marshall*, 939 F.2d 274, 280 & n.2 (5th Cir. 1991) (noting Seventh Amendment does not attach to attorneys fee award and citing principle that "in federal courts attorneys fees authorized by statute are properly awarded by the court as a post-judgment matter collateral to the decision on the merits"); *see also Perricone v. Medicis Pharmaceutical Corp.* 432 F.3d 1368, *1380 -1381 (Fed. Cir. 2005) ("After presiding over the preparation and trial of the case, the trial judge can best weigh the

relevant considerations, such as the closeness of the case, the tactics of counsel, the flagrant or good faith character of the parties' conduct, and any other factors contributing to imposition of punitive sanctions or to fair allocation of the burdens of litigation.") (*citing Modine Mfg. Co. v. Allen Group Inc.*, 917 F.2d 538, 543 (Fed. Cir. 1990); *S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc.*, 781 F.2d 198, 201 (Fed. Cir. 1986)).

Dyson further objects to paragraph four on the grounds that, if given, the instruction should be given in connection with the other damages instructions, and because it is one-sided and erroneous as a matter of law.  Maytag's Proposed Instruction No. 40 erroneously instructs the jury that it may find an "exceptional case" if Dyson engaged in false advertising that was "deliberate."  Maytag's Proposed Instruction No. 40 also fails to instruct on a determination of whether this is an "exceptional case" in the event Dyson prevails, in whole or in part, on the false advertising claims.  Finally, if any instruction on an "exceptional case," is to be given, Dyson's Proposed Instruction No. 54 is more accurate and complete.

**DYSON PROPOSED INSTRUCTION NO. 41**

<u>Lanham Act – Actual Deception</u>[32]

Whether an advertising claim actually deceives consumers is measured by the public reaction to the advertising.  Maytag cannot obtain relief by arguing how consumers could react.  It must show how consumers actually do react.

The success of a false advertising claim usually turns on the persuasiveness of a consumer survey.  Consumer surveys supply context to determine what message is actually conveyed to consumers.  The proponent of a survey must establish that it was conducted in accordance with accepted principles of survey research.

---

[32] Authority:  *Sandoz Pharma. Corp v. Richardson-Vicks, Inc.*, 902 F.2d 222, 228-29 (3d. Cir. 1990); *Pittsburgh Press Club v. United States*, 579 F.2d 751, 758 (3d Cir. 1978); *Johnson & Johnson-Merck Consumer Pharm. Co. v. SmithKline Beecham Corp.*, 960 F.2d 294, 298 (2d Cir. 1992).

**HOOVER'S OBJECTIONS TO DYSON'S PROPOSED INSTRUCTION NO. 41**

Hoover objects to Dyson's Proposed Instruction No. 41  because it is erroneous as a matter of law because a plaintiff may provide as evidence of deception a survey or "some other surrogate." *Sandoz Pharma. Corp v. Richardson-Vicks, Inc.*, 902 F.2d 222, 228-29 (3d. Cir. 1990) (holding that "a plaintiff must produce consumer surveys *or some surrogate* therefore [sic] to prove whether consumers expect an advertising claim to be substantiated and whether they expect the level of substantiation to be greater than that which the defendant has performed") (emphasis added)

Hoover objects to this instruction to the extent that it inaccurately identifies the counterclaim plaintiff as "Maytag," rather than "Hoover."

Hoover also objects to this proposed instruction as unnecessary and duplicative of prior instructions.

Hoover does not propose an alternate instruction.

**DYSON RESPONSE TO MAYTAG OBJECTION**

*Sandoz Pharma. Corp v. Richardson-Vicks, Inc.*, 902 F.2d 222, 228-29 (3d. Cir. 1990) does not rebut Dyson's proposed instruction (or the well-established principle) that "The success of a false advertising claim usually turns on the persuasiveness of a consumer survey."  Rather, *Sandoz* supports Dyson's contention, and its passing reference to "surrogate" proof, which neither *Sandoz* nor any other court has ever defined, does not warrant a different instruction.

**DYSON PROPOSED INSTRUCTION NO. 42**

<u>Lanham Act – The Meaning of Substantial</u>[33]

If you conclude that a survey is a valid and reliable indicator of the general population of upright vacuum cleaner purchasers, and you further conclude that 20 percent or more of survey respondents were deceived by one or more accused statements, that is generally considered substantial under the Lanham Act, depending on your evaluation of the survey and its methodology in view of all the evidence.

---

[33] Authority:  *Callaway v. Dunlop*, C. A. No. 01-669 (KAJ), Jury Instruction No. 3.3 (D.Del. 2005)

**HOOVER'S OBJECTIONS TO DYSON'S PROPOSED INSTRUCTION NO. 42**

Hoover objects to Dyson's Proposed Instruction No. 42  because it is erroneous as a matter of law because a plaintiff may provide as evidence of deception a survey or "some other surrogate."  *Sandoz Pharma. Corp v. Richardson-Vicks, Inc.*, 902 F.2d 222, 228-29 (3d. Cir. 1990) (holding that "a plaintiff must produce consumer surveys *or some surrogate* therefore [sic] to prove whether consumers expect an advertising claim to be substantiated and whether they expect the level of substantiation to be greater than that which the defendant has performed") (emphasis added).

Hoover also objects to this proposed instruction as unnecessary and duplicative of prior instructions.

Hoover does not propose an alternate instruction.

## DYSON PROPOSED INSTRUCTION NO. 43

Delaware Deceptive Trade Practices Act – Elements[34]

Maytag also contends that Dyson's advertising claims violate the Delaware Trade Practices Act.  In order for Dyson to be liable under the Delaware Trade Practices Act, Maytag is required to prove, by a preponderance of the evidence, that, in the course of Dyson's business, vocation, or occupation, Dyson:

(1)     represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have;

(2)     represents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

(3)     disparages the goods, services, or business of another by false or misleading representation of fact;

(4)     advertises goods or services with intent not to sell them as advertised; or

(5)     engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

---

[34] Authority:  6 Del. C. § 2531

**HOOVER'S OBJECTIONS TO DYSON'S PROPOSED INSTRUCTION NO. 43**

In the introductory paragraph of its proposed instruction, Dyson misstates Hoover's claims; <u>Dyson</u> is accused of violating the Delaware Deceptive Trade Practices Act, not "Dyson's advertising claims."  The <u>actor</u> (Dyson) is being accused, not the <u>action</u>.

Dyson also fails to include critical proof points expressly set forth in the statute and reiterated by the Delaware Supreme Court.  *See* 6 Del. C. § 2532 (b) ("In order to prevail in an action under this chapter, a complainant need not prove competition between the parties or actual confusion or misunderstanding."); 6 Del. C. § 2533 ("Proof of monetary damage, loss of profits, or intent to deceive, is not required.") *Grand Ventures, Inc. v. Whaley*, 632 A.2d 63, 67 n.1 (Del. 1993) ("Examples of the common law restrictions deleted by the Act are proof of competition between the parties or proof of secondary meaning (6 Del. C. §  2532(b)), monetary damages or intent to deceive (6 Del. C. §  2533)).")

Hoover also objects to this instruction to the extent that it inaccurately identifies the counterclaim plaintiff as "Maytag," rather than "Hoover."

Hoover also objects to this proposed instruction as unnecessary and duplicative of prior instructions.

Hoover does not propose an alternate instruction.

## DYSON PROPOSED INSTRUCTION NO. 44

Delaware Common Law of Unfair Competition – Elements[35]

Maytag also contends that Dyson's advertising claims violate the Delaware common law of unfair competition.  In order for Dyson to be liable under the Delaware common law of unfair competition, Maytag is required to prove, by a preponderance of the evidence, that, Dyson's advertising was grounded in deception.   It also must prove, by a preponderance of the evidence, that it suffered injury directly resulting from the unfair competition.  If Maytag proves such injury, then it is entitled to money damages sufficient to compensate it for such injury.

Maytag may prove damages based on circumstantial evidence, but you may not award damages based on speculation or conjecture.  If Maytag produces evidence providing a reasonable basis for damages, Dyson has the burden to prove that causes unrelated to the unfair competition caused Maytag's decline in profits or other injury.

_____

[35] Authority:  *Kellam Energy, Inc. v. Duncan,* 668 F. Supp. 861, 879 (D. Del. 1987); *Dionisi v. DeCampli,* 1995 398536 at * 17 (Del. Ch.)

**HOOVER'S OBJECTIONS TO DYSON'S PROPOSED INSTRUCTION NO. 44**

Dyson ignores governing Delaware law pertaining to unfair competition.   Dyson also causes unnecessary confusion by combining the damages instruction with the "elements" instruction."

Hoover also objects to this instruction to the extent that it inaccurately identifies the counterclaim plaintiff as "Maytag," rather than "Hoover."

Hoover also objects to this proposed instruction as unnecessary and duplicative of prior instructions.

Hoover does not propose an alternate instruction.

**DYSON PROPOSED INSTRUCTION NO. 45**

Delaware Deceptive Trade Practices Act – Co-Extensive with the Lanham Act [36]

The protections afforded Maytag under the Delaware Deceptive Trade Practices Act are no greater than those afforded by the Lanham Act, which we already have discussed.  Therefore, if Dyson is found not to have violated the Lanham Act, it likewise cannot be liable under the Delaware Trade Practices Act.  If you return a verdict in favor of Dyson on the Lanham Act claim, you must return a verdict in favor of Dyson on the Delaware Deceptive Trade Practices Act claim.

---

[36] Authority:  *Toro Co. v. Textron*, 499 F. Supp. 241, 249, n. 17 (D. Del. 1980); *Chase Manhattan Bank, USA, N.A. v. Freedom Card, Inc.*, 333 F. Supp.2d 239, 244-245 n.13 (D. Del. 2004); *see also Monsanto Company v. Syngenta Seeds, Inc.* , 2006 U.S. Dist. LEXIS 54515 at *14 (D. Del. August 4, 2006).

**HOOVER'S OBJECTIONS TO DYSON'S PROPOSED INSTRUCTION NO. 45**

Dyson's proposed instruction misstates the law.  It is evident from the text of both statutes that the Delaware Deceptive Trade Practices Act specifies different conduct than does the Lanham Act.  Whether the Delaware Deceptive Trade Practices Act provides more protections for a particular type of conduct can only be made on a case-by-case (i.e., fact-specific) determination.  As such, the broad statement of this unprecedented jury instruction is improper.  The caselaw supports this:

In the lead case cited by Dyson, *Toro Co. v. Textron*, 499 F. Supp. 241, 249, n. 17 (D. Del. 1980), the Court merely stated:  "I have concluded that, <u>in this case</u>, Toro is entitled to no greater relief for common law unfair competition or disparagement or for violation of the Deceptive Trade Practices Act than for violation of the Lanham Act. Accordingly, I shall limit my discussion to the Lanham Act claim."  (Emphasis added).  Dyson also cites *Chase Manhattan Bank, USA, N.A. v. Freedom Card, Inc.*, 333 F. Supp. 2d 239, 244-245 n.13 (D. Del. 2004), but that case did not involve or otherwise mention a claim under the Delaware Deceptive Trade Practices Act.  Finally, Dyson cites *Monsanto Company v. Syngenta Seeds, Inc.* , 2006 U.S. Dist. LEXIS 54515 at *14 (D. Del. August 4, 2006), but that case merely refers to the *Toro v Textron* case, and ultimately dismissed plaintiff's Lanham Act claims, but refused to dismiss plaintiff's Delaware Deceptive Trade Practices Act claims.

Hoover also objects to this instruction to the extent that it inaccurately identifies the counterclaim plaintiff as "Maytag," rather than "Hoover."

Hoover also objects to this proposed instruction as unnecessary and duplicative of prior instructions.

Hoover does not propose an alternate instruction.

**DYSON PROPOSED INSTRUCTION NO. 46**

<u>Delaware Common Law of Unfair Competition – Codified by Statute</u>[37]

The Delaware common law of unfair competition has been codified as the Delaware Deceptive Trade Practices Act. The Delaware common law of unfair competition is not a separate cause of action from the Delaware Trade Practices Act. If Dyson is found not to have violated the Delaware Trade Practices Act, it cannot be liable under the Delaware common law of unfair competition. Therefore, if you return a verdict in Dyson's favor on the Delaware Deceptive Trade Practices Act claim, you must return a verdict in Dyson's favor on the claim for unfair competition under Delaware's common law.

---

[37] Authority*: Young v. Joyce*, 351 A.2d 857, 859 (Del. Sup. Ct. 1975); *Toro Co. v. Textron*, 499 F. Supp. 241, 249, n. 17 (D. Del. 1980); *Chase Manhattan Bank, USA, N.A. v. Freedom Card, Inc.*, 333 F. Supp.2d 239, 244-245 n.13 (D. Del. 2004); *see also Monsanto Company v. Syngenta Seeds, Inc.* , 2006 U.S. Dist. LEXIS 54515 at *14 (D. Del. August 4, 2006); *Grand Ventures, Inc. v. Whaley*, 632 A.2d 63, 67-68 (Del. 1993); *Moore N.A., Inc. v. Poser Business Forms, Inc.*, 2000 WL 1480992 at *7 (D. Del. 2000).

**HOOVER'S OBJECTIONS TO DYSON'S PROPOSED INSTRUCTION NO. 46**

Dyson misstates the law of the state of Delaware.  Caselaw recognizes a separate cause of action for unfair competition in Delaware.  *See State ex rel. Brady v. Wellington Homes, Inc.*, 2003 WL 22048231, at *2 (Del. Super. 2003); *Kellam Energy, Inc. v. Duncan*, 668 F. Supp. 861, 879 (D. Del. 1987); *Coca-Cola Co. v. Nehi Corporation*, 36 A.2d 156, 165 (Del.  1944).

The cases cited by Dyson are inapposite.

Hoover also objects to this instruction to the extent that it inaccurately identifies the counterclaim plaintiff as "Maytag," rather than "Hoover."

Hoover also objects to this proposed instruction as unnecessary and duplicative of prior instructions.

Hoover does not propose an alternate instruction.

**DYSON PROPOSED INSTRUCTION NO. 47**

<u>Multiple Defendants – Multiple Claims</u>[38]

I have two cautionary instructions before I define the types of damages you may award, if you find that Maytag has proved liability according to the standards I have outlined.

First, you must be careful to impose any damages that you award on a claim solely upon the defendant who you find to be liable on that claim. Although there are two defendants in this case, Dyson, Inc. and Dyson Technology Limited, it does not follow that if Dyson, Inc. is liable, then Dyson Technology Limited is liable as well, or vice versa. Although I will refer to "Dyson" generally throughout these instructions simply for expedience, each defendant is entitled to fair, separate and individual consideration of the case without regard to your decision as to the other defendant. If you find that only one defendant is responsible for a particular injury, then you must impose damages for that injury only upon that defendant.

Second, you should not award compensatory damages more than once for the same injury. For example, if Maytag were to prevail on both its Lanham Act and Delaware Deceptive Trade Practices Act claims and establish one dollar of injury, you could not award Maytag one dollar compensatory damages on each claim. It is only entitled to be made whole again, not to recover more than it lost.

---

[38] Authority: 4 <u>Modern Federal Jury Instructions</u> § 77-2; *Bailey v. Board of County Comm'rs*, 956 F.2d 1112, 1129-30 (11th Cir. 1992), *cert. denied*, 506 U.S. 832.

**HOOVER'S OBJECTIONS TO DYSON'S PROPOSED INSTRUCTION NO. 47**

Hoover objects to this instruction to the extent that it inaccurately identifies the counterclaim plaintiff as "Maytag," rather than "Hoover." Hoover does not propose an alternate instruction.

## HOOVER'S PROPOSED INSTRUCTION NO. 48

<u>Damages Generally</u>

**Count I:**    **False Advertising Under the Lanham Act**

Damages generally recoverable under the Lanham Act include:

1.    The defendant's obtained as a result of false advertising;

2.    The plaintiff's past and future profits lost as a result of the defendant's false advertising; and

3.    Corrective advertising expenses.

I will now explain these types of damages:

**<u>Dyson's Profits:</u>** For purposes of determining Dyson's false advertising profits, Hoover has the burden of proving Dyson's sales.  Dyson then has the burden of proving its expenses, which shall be deducted from sales to determine profits.  "Expenses" shall mean Dyson's actual, out-of-pocket costs of producing its upright vacuum cleaners, but shall not include distributions or profit transfers to shareholders or related Dyson entities or affiliates.  Consequently, the amount of profits allocated between Dyson, Inc. and its subsidiaries, parents, affiliates and shareholders for tax or accounting purposes is irrelevant for the purposes of determining Dyson's expenses.[39]

**<u>Hoover's Profits</u>**: If you find that Dyson is liable for making false advertising claims, you must award Hoover damages to compensate it for any injury proximately caused by Dyson's conduct.  These are known as compensatory damages.  Only injury that was proximately caused Dyson's conduct may be compensated.  If you decide to award compensatory damages, they must be fair and reasonable.

In awarding damages, you may not engage in pure speculation and guessing.  On the other hand, the law does not require a party to prove the amount of its losses with mathematical

---

[39] 15 U.S.C. 1117(a); *Banjo Buddies, Inc. v. Renosky*, 399 F.3d 168, 177 (3d Cir. 2005); *Callaway Gold Co. v. Slazenger*, 284 F. Supp. 2d 735, 740-742 (D.C. Del. 2005); *Alpo Petfoods, Inc. v. Ralston Purina Co.*, 913 F.2d 958, 965 (DC Cir. 1990).

precision, but only with as much definiteness and accuracy as the circumstances permit.

In calculating compensatory damages, Hoover may recover past and future profits lost as a result of lost sales attributable to Dyson's allegedly wrongful acts. An allowance for lost profits may be included in the damages awarded only when there is some reasonable basis in the evidence in the case for determining that a party has in fact suffered a loss of profits, even though the amount of such loss is difficult to ascertain. In arriving at the amount of any loss of profits sustained, you are entitled to consider and of the party's past earnings, as well as any other evidence in the case bearing upon the issue.[40]

**Corrective Advertising Damages:** Hoover also seeks as a measure of damages for its false advertising claim an amount of money to conduct a prospective corrective advertising campaign. You may also award Hoover the amount of money reasonably required to repair any damage you may determine was caused by Dyson's false advertising.

In determining corrective advertising damages, you should consider the total number of Dyson's allegedly false advertisements and the length of time those advertisements.[41]

If you find for Hoover on Count I, you will consider whether Hoover has proven and therefore is entitled to any of these types of damages that I have described. However, if you find for Dyson on Count I, then you will have no occasion to award Hoover damages.

**Count II:       Violation of the Delaware Deceptive Trade Practices Act**

Damages generally recoverable under the Delaware Deceptive Trade Practices Act include injury directly resulting from unfair competition or unfair trade practices. If Hoover

---

[40] 15 U.S.C. 1117(a); *Banjo Buddies, Inc. v. Renosky*, 399 F.3d 168, 177 (3d Cir. 2005)*Callaway Gold Co. v. Slazenger*, 284 F. Supp. 2d 735, 740-742 (D.C. Del. 2005); *Black & Decker, Inc. v. Pro- Tech Power, Inc.*, 26 F.Supp.2d 834, 863 (E.D. Va. 1998) (quoting *United Indus. Corp. v. Clorox Corp.*, 140 F.3d 1175, 1180 (8th Cir.1998)); *Porous Media Corp. v. Pall Corp.*, 110 F.3d 1329, 1332 (8th Cir. 1997); Hon. Leonard B. Sand, John S. Siffert, Walter P. Laughlin, Steven A. Reiss and Nancy Batterman, *Modern Federal Jury Instructions*, Instruction 77-3 (April 2006).

[41] *Callaway Gold Co. v. Slazenger*, 284 F. Supp. 2d 735, 740-41 (D.C. Del. 2005); *PBM Products, Inc. v. Mead Johnson & Co.,* 174 F.Supp. 2d 417, 420 (E.D. Va. 2001).

proves such injury, then it is entitled to money damages sufficient to compensate it for such injury.[42]

If you find for Hoover on Count II, you will consider whether Hoover has proven and therefore is entitled to any of these types of damages that I have described.  However, if you find for Dyson on Count I, then you will have no occasion to award Hoover damages.

**Count III.        Violation of the Delaware Law of Unfair Competition**

If you decide that Dyson's conduct comprised a violation of the common law of unfair competition, then you must decide whether Hoover is entitled to any monetary damages and the amount of any monetary damages.

In order to recover damages at common law for unfair competition, Hoover must prove injury directly resulting from the unfair competition or unfair trade practices.  If Hoover proves such injury, then it is entitled to money damages sufficient to compensate it for such injury.

Hoover may prove damages based on circumstantial evidence, but you may not award damages based on speculation or conjecture.  Once Hoover produces evidence providing a reasonable basis for damages, defendant has the burden to prove causes unrelated to the unfair competition caused the plaintiff's decline in profits or other injury.[43]

If you find for Hoover on Count III, you will consider whether Hoover has proven and therefore is entitled to any of these types of damages that I have described.  However, if you find for Dyson on Count I, then you will have no occasion to award Hoover damages.

---

[42] *See* 6 *Del. C.* 2533(c).

[43] *Dionisi v. DeCampli*, 1995 WL 398536, *17 (Del. Ch. June 28, 1995).

**DYSON'S OBJECTIONS TO HOOVER'S PROPOSED INSTRUCTION NO. 48**

Dyson objects to the instruction on the grounds that the reference to "Hoover" renders the instruction unintelligible. Hoover is not a party; Maytag is the counterclaimant. Dyson further objects that conflating the damages instructions for Maytag's three distinct claims into a single instruction is misleading, erroneous, and prejudicial. Dyson further objects that the instruction for damages under Count I and Count II is argumentative and gives an incomplete, inaccurate, and erroneous statement of the law.

Dyson further objects to sentence three and four of "Dyson's Profits" on the grounds that it is irrelevant, misleading, prejudicial, argumentative, and erroneous as a matter of law and improperly attempts to inject irrelevant and contested purported facts into the trial and jury instructions.

Dyson objects to the second sentence in paragraph two of "Hoover's Profits" after the word "precision" on the grounds that it is vague, ambiguous, and confusing.

Dyson further objects that paragraph three is an incomplete and insufficient description of the definition of willfulness. *See, e.g., Zazu Designs v. L'Oreal, S.A.,* 979 F.2d 499, 507 (7th Cir. 1992) (reversing finding of willfulness in Lanham Act case) ("In stating that L'Oreal's conduct was willful, the district judge seems to have equated this term with knowing or intentional. Willful is a word with many uses in the law, but even the weaker connotations imply knowledge of unlawfulness or reckless indifference to the law, and not simply intentional acts.").

Dyson further objects to this instruction on the grounds that there is no basis for a corrective advertising award in this case. Maytag is not entitled to corrective advertising damages because it has sold its upright vacuum cleaner business.

Dyson further objects to the "Corrective Advertising" section of this instruction because it is an incomplete, and therefore misleading and prejudicial, statement of the law. Dyson's proposed "Corrective Advertising" Instruction, Alternative 2, is a more accurate statement of the law.

Dyson further objects that damages are unavailable under the Delaware Deceptive Trade Practices Act, and therefore the instruction is erroneous as a matter of law, misleading, and prejudicial.  Finally, Dyson reserves the right to supplement its objections to this instruction, which was amended by Maytag hours before the filing of these Jury Instructions.

**DYSON PROPOSED INSTRUCTION NO. 49**

<u>Calculation of Past and Future Damages</u>[44]

[Alternative 1]

If you determine that Maytag is entitled to an award of monetary damages, it may recover an amount that will fairly and adequately compensate it for any damages it has sustained as a result of Dyson having violated the law.  Because Maytag is no longer in the upright vacuum cleaner business, it cannot recover for any damages it might have suffered after it sold its vacuum cleaner business.  That means that Maytag cannot recover any damages for harm suffered after January 31, 2007 or for any period in the future.

[Alternative 2]

Maytag is entitled to recover an amount that will fairly and adequately compensate it for any damages it has sustained to date.

Moreover, if you find that Maytag is reasonably certain to suffer damages in the future from its injuries then you may award Maytag such amount as you believe would reasonably compensate Maytag for such future damages.   If you should find that Maytag is entitled to a verdict which is based in part on future damages, then it becomes the duty of the jury to ascertain the present worth in dollars of such future damages, since the award of future damages necessarily requires that payment be made now for a loss that actually will not occur until some future date.  Under these circumstances, the result is that Maytag will, in effect, be reimbursed in advance of the loss and will have the use of money which it would not have received until a future date.  The value of such award, therefore, should be discounted by you to its present value, i.e., its value today and not some future date.

---

[44] Authority:  4 <u>Modern Federal Jury Instructions</u> § 77-4 (LexisNexis 2006); *Jones & Laughlin Steel Corp. v. Pfeifer,* 462 U.S. 523 (1983).

**HOOVER'S OBJECTIONS TO DYSON'S PROPOSED INSTRUCTION NO. 49**

Hoover objects to this instruction because it is erroneous as a matter of law and fact and is argumentative.

Hoover also objects to this instruction to the extent that it inaccurately identifies the counterclaim plaintiff as "Maytag," rather than "Hoover."

Hoover also objects to this proposed instruction as unnecessary and duplicative of prior instructions.

Hoover does not propose an alternate instruction.

**DYSON PROPOSED INSTRUCTION NO. 50**

Lanham Act – Damages – Dyson's Profits

Maytag seeks as a measure of its damages a portion of Dyson's profits. You may in your discretion award Maytag damages in the amount of Dyson's profits resulting from the alleged false advertising in addition to awarding actual damages. Whether Dyson acted willfully and in bad faith is one of the factors that you may consider in deciding whether to award Maytag damages in the amount of Dyson's profits.

Authority: *Banjo Buddies, Inc. v. Renosky*, 399 F.3d 168, 173-75 (3d Cir. 2005).

**HOOVER'S OBJECTIONS TO DYSON'S PROPOSED INSTRUCTION NO. 50**

Hoover objects to this instruction to the extent that it inaccurately identifies the counterclaim plaintiff as "Maytag," rather than "Hoover."

Hoover also objects to this proposed instruction as unnecessary and duplicative of prior instructions.

Hoover does not propose an alternate instruction.

**DYSON PROPOSED INSTRUCTION NO. 51**

Lanham Act – Damages – Corrective Advertising[45]

[Alternative 1]

Maytag seeks as an alternative measure of damages for its false advertising claim an amount of money to conduct a prospective corrective advertising campaign.  An award of damages for prospective corrective advertising is a substitute for Maytag's damages or Dyson's profits.   However, because Maytag has sold its upright vacuum cleaner business, you may not award damages for the cost of prospective corrective advertising.

[Alternative 2]

Maytag seeks as an alternative measure of damages for its false advertising claim an amount of money to conduct a prospective corrective advertising campaign.  An award of damages for prospective corrective advertising is a substitute for Maytag's damages or Dyson's profits.   You should award damages based on the cost of prospective corrective advertising if you find that it is a less expensive measure of damages.  If you decide to award Maytag damages based on prospective corrective advertising, you may award Maytag the amount of money reasonably required for prospective advertising designed to repair any damage you may determine was caused by Dyson's allegedly false or misleading claims.  However, if you make such an award of damages, you may not award damages on any of the other theories requested by Maytag.

---

[45] Authority:  *Callaway Golf Co. v. Slazenger*, 384 F. Supp. 2d 735, 740-41; *Zazu Designs v. L'Oreal, S.A.*, 979 F.2d 499, 506, 509 (7th Cir. 1992); *PBM Products, Inc. v. Mead Johnson & Co.*, 174 F.Supp.2d 417, 420 (E.D. Va. 2001); *Gillette v. Wilkinson Sword, Inc.*, 1992 U.S. Dist. LEXIS 1265, 1992 WL 30938, *4 (S.D.N.Y. 1992); *Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.*, 561 F.2d 1365, 1375 (10th Cir. 1977).

**HOOVER'S OBJECTIONS TO DYSON'S PROPOSED INSTRUCTION NO. 51**

Hoover objects to the previous proposed instruction because it is erroneous as a matter of law and fact and is argumentative.

Hoover also objects to this instruction to the extent that it inaccurately identifies the counterclaim plaintiff as "Maytag," rather than "Hoover."

Hoover also objects to this proposed instruction as unnecessary and duplicative of prior instructions.

Hoover does not propose an alternate instruction.

## DYSON PROPOSED INSTRUCTION NO. 52

### Lanham Act – Consider Damages Only if Necessary[46]

If you conclude that Maytag has met its burden of proving by a preponderance of the evidence that one or more of Dyson's advertisements or promotions violated the Lanham Act, then you must decide whether Maytag is entitled to any monetary damages and the amount of any monetary damages caused by Dyson having violated the law.  Maytag has the burden of proving the amount of any such damages, again by a preponderance of the evidence.  In doing so, Maytag must show that its damages were not the result of other factors.  In addition, in considering whether Maytag suffered any monetary damages resulting from Dyson having violated the law, you should consider the amount of time Dyson ran the advertisement or promotion that violated the law.

However, you should not infer that Maytag is entitled to recover damages merely because I am instructing you on the elements of damages.  It is exclusively your function to decide upon liability, and I am instructing you on damages only so that you will have guidance should you decide that Maytag is entitled to recover damages based on any finding of liability you may, in your discretion, make.

---

[46] Authority: *Astrazeneca LP v. Tap Pharm. Prods.*, Civil Action No. 04-1332-KAJ, 2006 U.S. Dist. LEXIS 40620 (D. Del. May 18, 2006); *Brown v. Armstrong*, 957 F. Supp. 1203 (D. Mass. 1997); *Eulo v. Deval Aerodynamics, Inc.*, 47 F.R.D. 35 (E.D. Pa. 1969), *modified on other grounds*, 430 F.2d 325 (3d Cir. 1970), *cert. denied*, 401 U.S. 974 (1971).

**HOOVER'S OBJECTIONS TO DYSON'S PROPOSED INSTRUCTION NO. 52**

Hoover objects to this instruction to the extent that it inaccurately identifies the counterclaim plaintiff as "Maytag," rather than "Hoover."

Hoover also objects to this proposed instruction as unnecessary and duplicative of prior instructions.

Hoover does not propose an alternate instruction.

**DYSON PROPOSED INSTRUCTION NO. 53**

<u>Lanham Act – Nominal Damages</u>[47]

A successful false advertising claimant is entitled to nominal damages under the Lanham Act even if the claimant has not established actual damages.  Nominal damages are an insignificant amount of money.  Nominal damages would be appropriate here if you were to conclude that Maytag had met its burden of proving that Dyson committed false advertising under the Lanham Act, but also that Maytag had no substantial loss or injury to be compensated or that it failed to prove with reasonable certainty the amount of its damages.

---

[47] Authority:  *Banjo Buddies, Inc. v. Renosky,* 399 F.3d 168, 173-74 (3d Cir. 2005)*; Callaway Golf. Co. v.Dunlop,* C.A. 01-669 (KAJ), Jury Instruction No. 2.1

**HOOVER'S OBJECTIONS TO DYSON'S PROPOSED INSTRUCTION NO. 53**

Hoover objects to this instruction to the extent that it inaccurately identifies the counterclaim plaintiff as "Maytag," rather than "Hoover."

Hoover also objects to this proposed instruction as unnecessary and duplicative of prior instructions.

Hoover does not propose an alternate instruction.

# DYSON PROPOSED INSTRUCTION NO. 54

## Exceptional Case[48]

Maytag contends that Dyson engaged in culpable conduct making this an exceptional case. You may find that Dyson's conduct makes this is an exceptional case if you determine by clear and convincing evidence that Dyson engaged in bad faith, fraud, malice, or knowingly false advertising.

Dyson also contends that Maytag engaged in culpable conduct making this an exceptional case. You may find that Maytag's conduct makes this an exceptional case if you determine by clear and convincing evidence that Maytag engaged in litigation in bad faith. In making that determination, you should consider all the circumstances, including both parties' conduct during the case, including any delay by Maytag in suing Dyson.

---

[48] Dyson submits this instruction to be used only if the Court orders that the jury will determine whether this case is exceptional. If the Court so orders, Dyson reserves the right to amend its Special Interrogatories to provide for such findings. 15 U.S.C. 1117(a); *Perricone v. Medicis Pharmaceutical Corp.*, 432 F.3d 1368, 1380-81 (Fed. Cir. 2005); *Securacomm Consulting, Inc. v. Securacom Inc.*, 224 F.3d 273, 280-81 (3d Cir. 2000); *Ferrero U.S.A., Inc. v. Ozak Trading, Inc.*, 952 F.2d 44, 48 (3d Cir. 1991) (citing with approval holding by District Court that "bad faith intentionally must be shown for a case to qualify as exceptional"); *Callaway Gold Co. v. Slazenger*, 284 F. Supp. 2d 735, 746-47 (D.C. Del. 2005); *J & J Snack Foods, Corp. v. Earthgrains Co.*, No. 00-6230, 2003 WL 21051711, at *3 (D.N.J. 2003).

**HOOVER'S OBJECTIONS TO DYSON'S PROPOSED INSTRUCTION NO. 54**

Hoover objects to Dyson's Proposed Instruction No. 54  because it is erroneous as a matter of law, vague and confusing.  Specifically, the first sentence of Dyson's instruction is inconsistent with the law relating to establishment claims.  Moreover, the last two sentences of Dyson's instruction are vague and confusing.

Hoover also objects to this instruction to the extent that it inaccurately identifies the counterclaim plaintiff as "Maytag," rather than "Hoover."  Hoover also objects to this proposed instruction as unnecessary and duplicative of prior instructions.

**HOOVER'S PROPOSED INSTRUCTION NO.** 55

<u>Willfulness – Burden of Proof and Standard</u>[49]

If you determine that Dyson violated the Delaware Deceptive Trade Practices Act, you must determine whether such violation was willful.

A violation of the Delaware Deceptive Trade Practices Act is willful where the violator intentionally engaged in the violating conduct, knowing that the conduct was false or deceptive.

---

[49] *State ex rel. Brady v. Wellington Homes, Inc.*, 2005 WL 3416243, *1 (Del. Super. Nov. 29, 2005) (willfulness under Delaware Consumer Fraud Act was submitted to the jury); *See* Ninth Circuit Model Civil Jury Instructions 18.25 TRADEMARK DAMAGES—INTENTIONAL INFRINGEMENT (15 U.S.C. § 1117(b)) ("If you find that the defendant infringed the plaintiff's trademark, you must also determine whether the defendant used the trademark intentionally, knowing it was an infringement.").

**DYSON'S OBJECTIONS TO HOOVER'S PROPOSED INSTRUCTION NO. 55**

Dyson objects to this instruction on the grounds that it is an incomplete and inaccurate statement of the law. Maytag misstates the standard for a finding of willfulness. *See, e.g., Zazu Designs v. L'Oreal, S.A.,* 979 F.2d 499, 507 (7th Cir. 1992) (reversing finding of willfulness in Lanham Act case) ("In stating that L'Oreal's conduct was willful, the district judge seems to have equated this term with knowing or intentional. Willful is a word with many uses in the law, but even the weaker connotations imply knowledge of unlawfulness or reckless indifference to the law, and not simply intentional acts.").

**DYSON PROPOSED INSTRUCTION NO. 56**

<u>Willfulness – Burden of Proof and Standard</u>[50]

If you determine that Dyson has engaged in false advertising in violation of the Lanham Act and the Delaware Trade Practices Act, you also are required to determine whether Dyson acted willfully in doing so.

In order for Maytag to establish that Dyson acted willfully, it must satisfy a higher burden of proof. It must establish that Dyson acted willfully by clear and convincing evidence. What does "clear and convincing evidence" mean? Clear and convincing evidence is a more exacting standard than proof by a preponderance of the evidence, where you need to believe only that a party's claim is more likely true than not true. Clear and convincing proof leaves no substantial doubt in your mind. It is proof that establishes in your mind, not only that the proposition at issue is probable, but also that it is highly probable.

To prove willfulness Maytag must establish that Dyson engaged in culpable conduct, such as bad faith or malice, in falsely advertising its products.

---

[50] Authority: *Accu Personnel, Inc. v. Accustaff, Inc.*, 846 F. Supp. 1191, 1216 (D. Del. 1994); *Jones Apparel Group, Inc. v. Steinman*, 466 F. Supp. 560, 564 (E.D. Pa. 1979); *see also Ferrero U.S.A., Inc. v. Ozak Trading, Inc.*,  952 F.2d 44, 47 (3d. Cir. 1991); *Standard Terry Mills, Inc. v. Shen Mfg. Co.*, 803 F.2d 778 (3d Cir. 1986); *Callaway Golf Co. v. Slazenger,* 384 F. Supp. 2d 735, 740 (D. Del. 2005).

**HOOVER'S OBJECTIONS TO DYSON'S PROPOSED INSTRUCTION NO. 56**

Dyson improperly proposes a single willfulness instruction to be used for both the Lanham Act and the Delaware Deceptive Trade Practices Act. Thus, the instruction here is redundant.

Moreover, Hoover objects to Dyson's proposed instruction here because Dyson seeks to impose a higher standard – "culpable conduct, such as bad faith or malice" – into the willfulness standard. As the 9th Circuit Model Instructions (for Lanham Act cases) demonstrate, this is incorrect.

Finally, Hoover also objects to this instruction to the extent that it inaccurately identifies the counterclaim plaintiff as "Maytag," rather than "Hoover."

## HOOVER'S PROPOSED INSTRUCTION NO. 57

<u>Instruction for Special Interrogatory Pursuant to FRCP 39(c)</u>

Hoover has requested that the Court enter an injunction in this case. An injunction in a false advertising case is an order entered by the Court prohibiting a party from making certain advertising claims in the future. It is the responsibility of the Court to decide whether an injunction should be entered or not. As jurors, you need not decide that issue.

However, I will seek your advice with respect to the scope of an injunction in the event that I decide to enter one. In this regard, you will be asked when rendering your verdict to identify those categories of advertising claims that you have found are false and misleading so that the Court may consider these findings in connection with its decision on an injunction.

**DYSON'S OBJECTION TO PROPOSED INSTRUCTION NO. 57**

Dyson objects to Maytag's proposed instruction as misleading, confusing, prejudicial, unnecessary and erroneous as a matter of law.  Dyson further objects that that the instruction improperly suggests that Lanham Act liability may attach simply because a statement is "false and misleading" regardless of the other elements of a Lanham Act claim.  Dyson further reserves any additional objections on the ground that Maytag did not submit the proposed instruction until shortly before the filing of the Joint Proposed Final Pretrial Order.

**DYSON PROPOSED INSTRUCTION NO. 58**

Laches[51]

Dyson alleges that all of Maytag's claims under the Lanham Act, the Delaware Deceptive Trade Practices Act, and the Delaware common law of unfair competition are barred by the doctrine of laches. Under this doctrine, Maytag's claims are barred if Dyson can show, by a preponderance of the evidence, that : (1) Maytag unreasonably delayed in asserting its claims after it concluded that the challenged advertising claims were false or misleading; and (2) Dyson was prejudiced or injured as a result of that delay.

The period of delay for laches is measured from the time Maytag knew or reasonably should have known that the challenged claims were false or misleading to August 1, 2005, the date on which Maytag first filed its counterclaims in this action.

In deciding whether the delay was reasonable, you should consider whether Maytag has offered any legitimate justification for the delay.

In deciding whether Dyson has been prejudiced or injured, you should consider whether Dyson has suffered financially as a result of its reliance on Maytag's failure to bring its claims in a timely manner.

---

[51] Authority:  *See., e.g., Merisant Co. v. McNeil Nut., LLC,* 2007 WL 707359 at *10-12; (E.D. Pa.); *Fike v. Ruger,* 752 A.2d 112 (2000); *Steele v. Ratledge,* 2002 WL 31260990 at *3 (Del. Ch. 2002); *Conopco, Inc. v. Campbell Soup Co.,* 95 F.3d 187, 192 (2d Cir. 1996).

**HOOVER'S OBJECTIONS TO DYSON'S PROPOSED INSTRUCTION NO. 58**

Hoover objects to Dyson's remaining Proposed Instructions, Nos. 58 through 62 in their entirety as erroneous as a matter of law and because they ask for the jury to make a ruling of law, which is outside the province of the jury's duty.

Moreover, Hoover also objects to this instruction to the extent that it inaccurately identifies the counterclaim plaintiff as "Maytag," rather than "Hoover."

Hoover does not propose an alternate instruction.

**DYSON'S RESPONSE TO MAYTAG'S OBJECTION**

Laches is a defense to an action at law in Delaware, and a defense to a claim under the Lanham Act for the jury to decide, unless proven as a matter of law. *See, e.g., Roulo v. Russ Berrie & Co.,* 886 F.2d 931, 942 (7th Cir. 1989); *Conan Properties, Inc. v. Conans Pizza, Inc.,* 752 F.2d 145, 152 (5th Cir. 1985); *USH Ventures v. Global Telesystems Group, Inc.,* 796 A.2d 7, 19-20 (De. 2000).

**DYSON PROPOSED INSTRUCTION NO. 59**

<u>Unclean Hands</u>[52]

Dyson alleges that all of Maytag's claims under the Lanham Act, the Delaware Deceptive Trade Practices Act, and the Delaware common law of unfair competition are barred by the doctrine of unclean hands.  Under this doctrine, Maytag's claims are barred if Dyson can show, by clear and convincing evidence, that Maytag has acted in bad faith or is guilty of fraudulent or unconscionable conduct. There must be a close nexus between Maytag's misconduct and the challenged advertising claims.

There is no set formula for determining whether unclean hands applies in this lawsuit. Rather, you must consider and weigh all the facts and circumstances in view of the principles noted above to determine whether you believe that, on balance, Maytag acted in such bad faith in the matters relating to the controversy between Maytag and Dyson that, in fairness, Maytag should be denied the relief it seeks in this lawsuit.

---

[52] Authority:  *Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 174 (3d Cir. 2001); *Haagen-Dazs, Inc. v. Frusen Gladje, Inc.*, 493 F. Supp. 73, 76 (S.D.N.Y. 1980); *Merisant Co. v. McNeil Nutritionals, LLC*, 2007 WL 707359 (E.D. Pa. 2007); *Emco, Inc. v. Obst*, 2004 U.S. Dist Lexis 12118 (C.D. Cal. May 7, 2004).

**HOOVER'S OBJECTIONS TO DYSON'S PROPOSED INSTRUCTION NO. 59**

Hoover objects to Dyson's remaining Proposed Instructions, Nos. 58 through 62 in their entirety as erroneous as a matter of law and because they ask for the jury to make a ruling of law, which is outside the province of the jury's duty.

Moreover, Hoover also objects to this instruction to the extent that it inaccurately identifies the counterclaim plaintiff as "Maytag," rather than "Hoover."

Hoover does not propose an alternate instruction.

**DYSON'S RESPONSE TO MAYTAG'S OBJECTION**

Unclean hands is a defense to an action at law in Delaware, and a defense to a claim under the Lanham Act for the jury to decide, unless proven as a matter of law. *See, e.g., Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 174 (3d Cir. 2001); *Haagen-Dazs, Inc. v. Frusen Gladje, Inc.*, 493 F. Supp. 73, 76 (S.D.N.Y. 1980); *Merisant Co. v. McNeil Nutritionals, LLC*, 2007 WL 707359 (E.D. Pa. 2007); *Emco, Inc. v. Obst*, 2004 U.S. Dist Lexis 12118 (C.D. Cal. May 7, 2004).; *Conan Properties, Inc. v. Conans Pizza, Inc.,* 752 F.2d 145, 152 (5th Cir. 1985); *USH Ventures v. Global Telesystems Group, Inc.,* 796 A.2d 7, 19-20 (De. 2000).

## DYSON PROPOSED INSTRUCTION NO. 60

### Equitable Estoppel[53]

Dyson alleges that all of Maytag's claims under the Lanham Act, the Delaware Deceptive Trade Practices Act and the Delaware common law of unfair competition are barred by the doctrine of equitable estoppel.  Under this doctrine, Maytag's claims are barred if Dyson proves, by a preponderance of the evidence, that:

(1)     Maytag's conduct either intentionally or unintentionally led Dyson to reasonably infer that it did not dispute Dyson's advertising claims;

(2)     Dyson relied on that conduct; and

(3)     Dyson suffered material injury as a consequence of that reliance.

In deciding whether Dyson has suffered material prejudice, you should consider whether Dyson suffered a financial detriment by relying on Maytag's failure to bring its claims in a timely manner.

---

[53] Authority: *Nevins v. Bryan,* 885 A.2d 233, 249 (Del.Ch. 2005); *USH Ventures v. Global Telesystems Group, Inc.,* 796 A.2d 719-20 (2000); *Wilson v. American Ins. Co.,* 209 A.2d 902, 903-04 (Del.1965).

**HOOVER'S OBJECTIONS TO DYSON'S PROPOSED INSTRUCTION NO. 60**

Hoover objects to Dyson's remaining Proposed Instructions, Nos. 58 through 62 in their entirety as erroneous as a matter of law and because they ask for the jury to make a ruling of law, which is outside the province of the jury's duty.

Moreover, Hoover also objects to this instruction to the extent that it inaccurately identifies the counterclaim plaintiff as "Maytag," rather than "Hoover."

Finally, Hoover objects to this proposed instruction specifically because it is unsupported by any citation of supporting authority, as required by the Court's online Final Pretrial Order form (http://www.ded.uscourts.gov/GMSmain.htm) at 4, fn 8 ("All instructions, including objections, shall be in writing *and include citations of supporting authorities*) (emphasis added)

Hoover does not propose an alternate instruction.

**DYSON PROPOSED INSTRUCTION NO. 61**

<u>Waiver</u>[54]

Dyson alleges that all of Maytag's claims under the Lanham Act, the Delaware Deceptive Trade Practices Act, and the Delaware common law of unfair competition are barred by the doctrine of waiver. Under this doctrine, Maytag's claims are barred if Maytag relinquished its right to bring such a claim. A waiver need not be express and may be inferred from conduct on the part of Maytag, indicating that Maytag intends to renounce its right to bring its claims.

There is no set formula for determining whether the doctrine of waiver applies in this lawsuit. Rather, you must consider and weigh all the facts and circumstances in view of the principles noted above to determine whether you believe that, on balance, Maytag inferred through its conduct that it intended to renounce its right to bring its claims.

---

[54] Authority: *George v. Frank A. Robino, Inc.,* 334 A.2d 223 (Del.1975)

**HOOVER'S OBJECTIONS TO DYSON'S PROPOSED INSTRUCTION NO. 61**

Hoover objects to Dyson's remaining Proposed Instructions, Nos. 58 through 62 in their entirety as erroneous as a matter of law and because they ask for the jury to make a ruling of law, which is outside the province of the jury's duty.

Moreover, Hoover also objects to this instruction to the extent that it inaccurately identifies the counterclaim plaintiff as "Maytag," rather than "Hoover."

Finally, Hoover objects to this proposed instruction specifically because it is unsupported by any citation of supporting authority, as required by the Court's online Final Pretrial Order form (http://www.ded.uscourts.gov/GMSmain.htm) at 4, fn 8 ("All instructions, including objections, shall be in writing *and include citations of supporting authorities*) (emphasis added)

Hoover does not propose an alternate instruction.

**DYSON PROPOSED INSTRUCTION NO. 62**

<u>Acquiescence</u>[55]

Dyson alleges that all of Maytag's claims under the Lanham Act, the Delaware Deceptive Trade Practices Act, and the Delaware common law of unfair competition are barred by the doctrine of acquiescence.  Under this doctrine, Maytag's claims are barred if you find that it has acknowledged the legitimacy of the conduct of which it now complains.  Acquiescence need not be express and may be inferred from Maytag's conduct, indicating that Maytag has acknowledged the legitimacy of Dyson's conduct.

There is no set formula for determining whether the doctrine of acquiescence applies in this lawsuit.  Rather, you must consider and weigh all the facts and circumstances in view of the principles noted above to determine whether you believe that, on balance, Maytag inferred through its words or actions that it had acquiesced to the conduct it now contends was unlawful.

---

[55] Authority:  *Nevins v. Bryan,* 885 A.2d 233, 248 (Del.Ch. 2005); *Pennsylvania Railroad Co. v. Stauffer Chem. Co.,* 255 A.2d 696 (Del.1969).

**HOOVER'S OBJECTIONS TO DYSON'S PROPOSED INSTRUCTION NO. 62**

Hoover objects to Dyson's remaining Proposed Instructions, Nos. 58 through 62 in their entirety as erroneous as a matter of law and because they ask for the jury to make a ruling of law, which is outside the province of the jury's duty.

Moreover, Hoover also objects to this instruction to the extent that it inaccurately identifies the counterclaim plaintiff as "Maytag," rather than "Hoover."

Finally, Hoover objects to this proposed instruction specifically because it is unsupported by any citation of supporting authority, as required by the Court's online Final Pretrial Order form (http://www.ded.uscourts.gov/GMSmain.htm) at 4, fn 8 ("All instructions, including objections, shall be in writing *and include citations of supporting authorities*) (emphasis added)

Hoover does not propose an alternate instruction.

41102661.3

114