UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DYSON TECHNOLOGY LIMITED, and )
DYSON, INC., )
                                      Plaintiffs, )

v.                                        )   Civil Action No. 05-434 GMS
                                            )
MAYTAG CORPORATION,                )   FILED UNDER SEAL
                                            )
                          Defendant. )   Redacted Version
                                                   April 9, 2007

**TRIAL BRIEF OF DEFENDANT / COUNTERCLAIM PLAINTIFF HOOVER, INC.**

Kimball R. Anderson
Stephen P. Durchslag
Winston & Strawn LLP
Chicago, IL 60601
Phone (312) 558-5600
Fax (312) 558-5700

Ray L. Weber
Laura J. Gentilcore
Renner, Kenner, Greive, Bobak,
Taylor & Weber
400 First National Tower
Akron, OH 44308
Phone (330) 376-1242
Fax (330) 376-9646

Francis DiGiovanni
James D. Heisman
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 N. Orange Street
Wilmington, DE 19899
Phone (302) 658-9141
Fax (302) 658-5614

## TABLE OF CONTENTS

I. ALLEGED PATENT INFRINGEMENT ................................................................................ i
    A. Nature of the Case .......................................................................................................... 1
    B. Contested Facts The Evidence With Establish ............................................................... 3
    C. Hoover's Theory of Defense Based on Facts ................................................................. 4
    D. Hoover's Contentions Regarding Damages ................................................................... 4
    E. Hoover's Theory of Its Anticipated Motion for Directed Verdict .................................. 5

II. DYSON'S FALSE AND MISLEADING ADVERTISING ................................................... 5
    A. Dyson's Advertising and Claims .................................................................................... 5
    B. Dyson's Advertising Claims Are Literally False ............................................................ 6
    C. Dyson's Advertising Claims Are Impliedly False .......................................................... 9
    D. Dyson's Advertising Claims Violate the Delaware Deceptive Trade Practices Act and Delaware Common Law ................................................ 12
    E. Hoover's Remedies ....................................................................................................... 12

III. CONCLUSION ................................................................................................................... 15

# TABLE OF AUTHORITIES

### Cases

*American Can Co. v. M.J.B. Co.*,
  51 F.2d 761 (D. Del. 1931) ........................................................................................... 3

*AstraZeneca LP v. Tap Pharmaceutical Products, Inc.*,
  444 F. Supp. 2d 278 (D. Del. 2006) ............................................................................ 7

*Banjo Buddies, Inc. v. Renosky*,
  399 F.3d 168 (3d Cir. 2005) ...................................................................................... 13

*Callaway Golf Co. v. Slazenger*,
  384 F. Supp. 2d 735 (D. Del. 2005) ..................................................................... 14, 15

*Castrol Inc. v. Pennzoil Co.*,
  987 F.2d 939 (3d Cir. 1993) ..................................................................................... 6, 7

*Castrol, Inc. v. Pennzoil Quaker State Co.*,
  169 F. Supp. 2d 332 (D.N.J. 2001) ............................................................................. 7

*Castrol, Inc. v. Quaker State Corp.*,
  977 F.2d 57 (2d Cir. 1992) .......................................................................................... 7

*Church & Dwight Co., v. S.C. Johnson & Son, Inc.*,
  873 F. Supp. 893 (D.N.J. 1994) ............................................................................. 9, 12

*Dorr-Oliver, Inc. v. Fluid-Quip, Inc.*,
  914 F Supp. 210 (N.D. Ill. 1995) .............................................................................. 13

*Fechter v. HMW Indus., Inc.*,
  879 F.2d 1111 (3d Cir. 1989) .................................................................................... 12

*Johnson & Johnson-Merck Consumer Pharm. Co. v. Rhone-Poulenc Rorer Pharm., Inc.*,
  19 F.3d 125 (3d Cir. 1994) .......................................................................................... 9

*Lockheed Martin Corp. v. Space Systems/ Loral, Inc.*,
  324 F.3d 1308 (Fed. Cir. 2003) ............................................................................... 1, 3

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*,
  290 F.3d 578 (3d Cir. 2002) ....................................................................................... 7

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
  520 U.S. 17 (1997) ....................................................................................................... 3

*Wynn Oil Co. v. American Way Service Corp.*,
　943 F.2d 595 (3d Cir. 1991) .................................................................................... 14

## Statutes

15 U.S.C. § 1117(a) ............................................................................................. 13, 14

35 U.S.C. § 285 ............................................................................................................ 5

6 Del. C. § 2532(a) (2007) ......................................................................................... 12

6 Del. C. § 2533(b) (2007) ......................................................................................... 15

6 Del. C. § 2533(c) (2007) ......................................................................................... 14

I.  **ALLEGED PATENT INFRINGEMENT**

Now comes Defendant/Counterclaim Plaintiff Hoover, Inc.[1] ("Hoover") and presents this portion of the trial brief dealing with the patent issues.

A.  **Nature of the Case**

Dyson asserts that the Hoover Fusion vacuum cleaner infringes claim 14 of Dyson patent 4,826,515 (the "'515 patent"), claims 15, 16 and/or 17 of U.S. Patent 4,643,748 (the "'748 patent"), and claim 1, 2, 3, 7, 11, 23, 24 and/or 25 of U.S. Patent 4,853,008 (the "'008 patent").[2]

Hoover contends that there is no infringement because the all elements rule is not satisfied. *See Lockheed Martin Corp. v. Space Systems/ Loral, Inc.*, 324 F.3d 1308, 1321 (Fed. Cir. 2003). Specifically, Hoover contends that at least certain of the following elements, which are common to each of the claims of the three patents-in-suit, are absent in the Hoover Fusion product:

1.  "A dirty air inlet [to outer container]," which the Court has determined is "a passage by which dirty air flows into the outer container of the cleaning apparatus";

2.  The recited dirty air inlet is "oriented for supplying dirt laden air into the container tangentially to the interior surface of the outer container," which the Court has determined to mean "oriented for supplying dirt laden air into the container generally in a direction perpendicular to the radius of the interior surface of the outer container";

---

[1] **REDACTED**
"Hoover, Inc." and to entities owned by Hoover, Inc., including Hoover General LLC, Hoover Limited LLC and Hoover Partnership L.P. On March 13, 2007, Hoover filed a motion seeking leave to join these additional entities

[2] Dyson previously also asserted U.S. Patent 5,858,038, which Hoover contends is invalid, unenforceable, and obtained through fraud on the Patent Office. Dyson has withdrawn that patent from the case.

1

  3. "An air outlet from the container";

  4. A "cyclone air inlet ... in air communication with the air outlet of the container"; and

  5. An equivalent structure to "a motor driven fan unit positioned vertically above and immediately adjacent to the cyclone outlet port" that performs the function of "generating an air inlet."

Hoover contends that none of these limitations, common to each of the asserted claims, is found in the Hoover Fusion vacuum cleaner and, accordingly, under the all elements rule, there is no infringement. Indeed, the absence of a single one of these elements defeats Dyson's case.

Additionally, with regard to claim 14 of the '515 patent, Hoover contends that the following claim limitations are absent in the Hoover Fusion vacuum cleaner:

  1. A "dirty air inlet at an upper portion of the outer container";

  2. A dirt receiving and collecting chamber with a "minimum diameter ... furthest from the cone opening [of the cyclone] of three times the diameter of the cone opening"; and

  3. A ring seal between "the [dirt receiving and collecting] chamber and [the] outer container."

With regard to the '748 patent, Hoover further contends that the following claim limitations are absent in the Hoover Fusion vacuum cleaner:

  1. A "dirty air inlet at an upper portion of the outer container";

  2. A "disc ... provided on the outside of the cyclone intermediate the receiving chamber and the air outlet of the container"; and

  3. That the disc "retards long strands in the dirt from clogging the air outlet and retains the strands in the container."

Finally, with respect to the '008 patent, Hoover additionally contends that the following claim limitations are absent in the Hoover Fusion vacuum cleaner:

1. A shroud "mounted at one end below the air inlet to the cyclone";

2. "Perforations [on the shroud] adjacent to the position intermediate to the cone opening for the flow of air from the outer container to the cyclone inlet";

3. A disc "provided on the shroud means at a lower longitudinal extent of the shroud means and the air inlet of the cyclone and around the axis of the cyclone"; and

4. The disc "aids in dirt removal in the first container by preventing some or the dirt from flowing into the air inlet to the cyclone."

### B. Contested Facts The Evidence Will Establish

Hoover respectfully presents that each of the claim limitations set forth above will be demonstrated as being absent in the Hoover Fusion vacuum cleaner. As to virtually all of these claim limitations, Dyson has asserted literal infringement, not infringement under the doctrine of equivalents. It is clear that these elements are not literally present in the Hoover Fusion vacuum cleaner and the absence of a single one would preclude infringement of a claim containing that limitation. *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997) ("[C]omparison of the claim to the accused device, requires a determination that every claim limitation or its equivalent is found in the accused device."); *Lockheed Martin Corp. v. Space Systems/Loral, Inc.*, 324 F.3d 1308, 1321 (Fed. Cir. 2003) (Under the all elements rule, there can be no infringement under the doctrine of equivalents if even one limitation of a claim or its equivalent is not present in the accused device.); *See also American Can Co. v. M.J.B. Co.*, 51 F.2d 761, 764 (D. Del. 1931) ("The absence of a single element from a device that is alleged to infringe a patented combination is fatal to the claim of infringement."). Indeed, the evidence will

3

show that each and every claim limitation presented above is absent in the Hoover Fusion vacuum cleaner.

### C.   Hoover's Theory of Defense Based on Facts

The evidence will show that the all elements rule is not satisfied. For there to be infringement, each and every claim limitation, or its equivalent, must be present in the accused product. Dyson asserts literal infringement as to virtually all of the claim limitations at issue. Hoover will object to any contentions/instructions regarding infringement under the doctrine of equivalents that have not been earlier advanced by Dyson herein, and particularly by its expert witnesses.

Hoover contends that the absence of a single claim limitation among those presented above as being common to all of the asserted claims, is fatal to Dyson's contentions of infringement. Hoover contends that not just one of those limitations is absent, but all of them. Additionally, Hoover contends that limitations specific to certain of the claims in issue are also absent, further precluding a finding of infringement.

### D.   Hoover's Contentions Regarding Damages

Hoover recognizes that Dyson is seeking damages in the form of a reasonable royalty, and does not seek lost profits, actual damages, or an injunction. Dyson's expert advances that the damages should be determined as a 5% royalty on Hoover's sales. Hoover contends that the range is more on the order of 1-1.5%, in the unlikely event that infringement is found. Hoover's expert, Alex Constable, will present quantative and qualitative evidence to demonstrate that a reasonable royalty on the patented subject matter, which constitutes minimal improvements in the area of cyclonic cleaning (which actually have nothing to do with cleaning at all), should fall within the 1-1.5% range. Hoover expects its damages arguments to be fully consistent with the report of Alex Constable.

Hoover seeks a determination that this is an exceptional case (35 U.S.C. § 285), based upon the allegations of infringement despite the clear absence of multiple claim limitations in the accused product. Hoover further contends that this is an exceptional case in light of Dyson's maintenance of its infringement contentions despite this Court's ruling in the *Markman* proceedings.

### E. Hoover's Theory of Its Anticipated Motion for Directed Verdict

Hoover anticipates moving for a directed verdict of noninfringement on the basis of the absence of structure in the Hoover Fusion vacuum cleaner that is responsive to various claim limitations. The product itself, including cross sectional portions thereof, will clearly demonstrate the absence of infringement as failing to comply with the all elements rule, and it is Hoover's intention to move for directed verdict in that regard.

## II. DYSON'S FALSE AND MISLEADING ADVERTISING

The evidence will also establish at trial that Dyson violated Section 43(A) of the Lanham Act, Delaware's Deceptive Trade Practices Act, and the Delaware common law for unfair competition, for making false and misleading advertising claims concerning Dyson upright vacuum cleaners that are sold in the United States.

### A. Dyson's Advertising and Claims

The advertising and marketing of Dyson vacuums in the United States

**REDACTED**

Dyson's false advertising claims, ................

**REDACTED**

5

**REDACTED**

The following are among the types of advertising claims Dyson makes related to Dyson upright vacuum cleaners that are literally false:

**REDACTED**

[3] In addition to the literal falsity of the claims,

**REDACTED**

### B.   Dyson's Advertising Claims Are Literally False

The evidence at trial will show that these advertising claims are literally false. In the Third Circuit, "the test for literal falsity is simple; if a defendant's claim is untrue, it must be deemed literally false." *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 944 (3d Cir. 1993). The evidence will show,

**REDACTED**

Further, although the plaintiff normally has the burden to demonstrate that the defendant's advertising claim is false, it may be found that a completely unsubstantiated advertising claim by the defendant is *per se* false without additional evidence by plaintiff to that

---

[3] This list is not intended to be exhaustive. There are other types of claims Hoover intends to address at trial, including for example, Dyson's claims that. The evidence will show that these claims are literally false.   **REDACTED**

effect. *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 590 (3d Cir. 2002). The evidence will show that

**REDACTED**

Additionally, Hoover can establish that Dyson's advertising claims based on product testing are literally false either by showing: (1) that such tests are not sufficiently reliable to permit one to conclude with reasonable certainty that they establish the claim made; or (2) that the tests, even if reliable, do not establish the proposition asserted by the defendants. *Castrol, Inc. v. Pennzoil Quaker State Co.*, 169 F. Supp. 2d 332, 336 (D.N.J. 2001); *Castrol, Inc. v. Quaker State Corp.*, 977 F.2d 57, 62-63 (2d Cir. 1992); *see also Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 943 (3d Cir. 1993); *AstraZeneca LP v. Tap Pharmaceutical Products, Inc.*, 444 F. Supp. 2d 278, 294 (D. Del. 2006). Hoover may meet this burden either by attacking the validity directly or by showing that are contradicted or unsupported by other scientific tests. *Pennzoil Quaker State Co.*, 169 F. Supp. 2d at 336; *Castrol, Inc.*, 977 F.2d at 62-63. The evidence will show, as discussed in more detail below,

**REDACTED**

The facts that will establish that

**REDACTED**

**REDACTED**

Further, the suction power is measured at the hose,

The evidence will also show that

**REDACTED**

8

**REDACTED**

In addition, the evidence will show that

### C. Dyson's Advertising Claims Are Impliedly False

The evidence will also establish that Dyson's advertising claims are impliedly false, *i.e.*, deceptive or misleading, and that

The burden of proof is shifted to the defendant in Lanham Act cases, and a presumption arises that consumers are, in fact, being deceived when a plaintiff has presented evidence of the defendant's intent to deceive the public. *Johnson & Johnson-Merck*, 19 F.3d at 130.

**REDACTED**

Establishing that a claim is impliedly false depends on the message that is conveyed to consumers. *Johnson & Johnson-Merck*, 19 F.3d at 129. If the burden is not shifted establish how consumers actually react by relying on studies or surveys on how consumers react to ads. *See id.*; *Castrol, Inc. v. Pennzoil Co.*, 987 F.2d at 943; *Church & Dwight Co v. S.C. Johnson & Son, Inc.*, 873 F. Supp. 893, 906 (D.N.J. 1994). First, Dyson

**REDACTED**

10

**REDACTED**

Dyson's advertising claims are also false because

**REDACTED**

11

### D. Dyson's Advertising Claims Violate the Delaware Deceptive Trade Practices Act and Delaware Common Law

Hoover will prove that Dyson has violated the Delaware Deceptive Trade Practices Act and common law by establishing that Dyson has done one or more of the following: (1) represented that Dyson's vacuum cleaners at issue

(2) represented that Dyson's vacuum cleaners 

**REDACTED**

(3)

or (4) advertised Dyson vacuum cleaners

*See* 6 Del. C. § 2532(a) (2007). As discussed above, the evidence will show one or more of these violations.

**REDACTED**

### E. Hoover's Remedies

Once Hoover proves that Dyson is liable for false advertising, Hoover will be entitled to a permanent injunction and compensation. The Court must consider the following in order to grant a permanent injunction to enjoin Dyson's false advertising claims: (1) Hoover's success on the merits; (2) the probability of irreparable injury to Hoover in the absence of relief; (3) the potential harm to Dyson; and, if applicable, (4) the public interest. *Fechter v. HMW Indus., Inc.*, 879 F.2d 1111, 1116 (3d Cir. 1989); *Church & Dwight*, 873 F. Supp. at 903. The evidence will show that in the relevant market where Dyson and Hoover competed--

**REDACTED**

**REDACTED**

Finally, the public has an interest in not being deceived or confused.

In addition to having Dyson permanently enjoined, Hoover may recover: (1) the profits arising from Dyson's false advertising; (2) any damages Hoover sustained; and (3) the costs of the action. 15 U.S.C. § 1117(a); *Banjo Buddies, Inc. v. Renosky*, 399 F.3d 168, 176 (3d Cir. 2005).

In assessing the profits arising from Dyson's false advertising, Hoover needs only to prove Dyson's sales. *Banjo Buddies*, 339 F.3d at 176. Once Hoover proves Dyson's sales, the burden shifts to Dyson, and Dyson must prove all elements of cost or deduction claimed. 15 U.S.C. 1117(a). However, Dyson may not attempt to deduct distributions of profits or payments of compensation, dividends, or inter-company charges made to owners. *Banjo Buddies*, 339 F.3d at 176-77; *see also Dorr-Oliver, Inc. v. Fluid-Quip, Inc.*, 914 F Supp. 210, 211 (N.D. Ill. 1995). In *Banjo Buddies*, the Third Circuit clearly stated the defendant may not seek to deduct, from sales, amounts that are an allocation of profit to, or among, owners. *Banjo Buddies*, 339 F.3d at 176-78. Consequently,

**REDACTED**

**REDACTED**

Finally, Dyson's profits can be awarded even if: (1) Hoover does not prove actual damages, or if damages were found to be *de minimus* or too speculative; and (2) it is found that Dyson's conduct was not willful. *Banjo Buddies*, 339 F.3d at 176-77.

Among the ways to measure Hoover's damages are: (1) Hoover's lost profits attributable to the false advertising; and (2) the amount necessary to undertake a corrective advertising campaign. *See* 44 Am. Jur. Proof of Facts 3d 1; *Callaway Golf Co. v. Slazenger*, 384 F. Supp. 2d 735, 741 (D. Del. 2005).

**REDACTED**

Finally, under the Lanham Act, the Court may treble the damages. 15 U.S.C. § 1117(a). Under the Delaware Deceptive Trade Practices Act, the court shall be treble the amount of the actual damages proved. 6 Del. C. § 2533(c) (2007).

If Dyson's actions are found to be willful by a preponderance of the evidence, Hoover should recover both its damages and the profits arising from Dyson's false advertising. *See Callaway Golf Co.*, 384 F. Supp. 2d at 740; *Wynn Oil Co. v. American Way Service Corp.*, 943 F.2d 595, 606-07 (3d Cir. 1991).

**REDACTED**

Finally, attorney fees and prejudgment interest are authorized to the prevailing party if the case was "exceptional," which is established by clear and convincing evidence of

**REDACTED**

*See Callaway Golf Co* 384 F. Supp. 2d at 747; 6 Del. C. § 2533(b) (2007) (attorneys' fees). Hoover will be able to establish that this case was exceptional at trial.

### III. CONCLUSION

Hoover will demonstrate at trial that it did not and does not infringe Dyson's '748 and '008 patents. Hoover will also demonstrate at trial that Dyson's advertising campaigns for its upright vacuum cleaners were and are false and misleading, and comprise unfair competition. Hoover will demonstrate that it has been significantly damaged by Dyson's false and misleading conduct, and that damages and a permanent injunction are appropriate remedies.

**Redacted Version**
**April 9, 2007**

/s/ Francis DiGiovanni
Francis DiGiovanni (#3189)
James D. Heisman (#2746)
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 N. Orange Street
Wilmington, DE 19899
Phone (302) 658-9141
Fax (302) 658-5614

Kimball R. Anderson
Stephen P. Durchslag
Winston & Strawn LLP
35 West Wacker Drive
Chicago, IL 60601
Phone (312) 558-5600
Fax (312) 558-5700

Ray L. Weber
Laura J. Gentilcore
Renner, Kenner, Greive, Bobak,
Taylor & Weber
400 First National Tower
Akron, OH 44308
Phone (330) 376-1242
Fax (330) 376-9646

## CERTIFICATE OF SERVICE

I, Francis DiGiovanni, hereby certify that on April 2, 2007, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> C. Barr Flinn
> John W. Shaw
> Young Conaway Stargatt & Taylor LLP
> The Brandywine Building
> 1000 West Street, 17th Floor
> Wilmington, Delaware 19801

I further certify that on April 2, 2007, I caused a copy of the foregoing document to be served by hand delivery and e-mail on the above-listed counsel of record, and by e-mail and first class mail on the following counsel of record:

> Garrard R. Beeney
> Richard C. Pepperman, II
> James T. Williams
> Sullivan & Cromwell LLP
> 125 Broad Street
> New York, NY 10004
>
> Steven F. Reich
> Jeffrey S. Edelstein
> Manatt, Phelps & Phillips, LLP
> 7 Times Square
> New York, NY 10004

/s/ Francis DiGiovanni
Francis DiGiovanni (#3189)