IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DYSON TECHNOLOGY LIMITED and DYSON, INC., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) C.A. No. 05-434-GMS |
| MAYTAG CORPORATION, | ) ) **REDACTED – PUBLIC VERSION** |
| Defendant. | ) ) |

**JOINT PROPOSED FINAL PRETRIAL ORDER**

This matter having come before the Court at a pretrial conference held on May 1, 2007 pursuant to Rule 16 of the Federal Rules of Civil Procedure:

| | |
|---|---|
| C. Barr Flinn (No. 4092) | Garrard R. Beeney |
| John W. Shaw (No. 3362) | Richard C. Pepperman, II |
| Adam W. Poff (No. 3990) | James T. Williams |
| YOUNG CONAWAY STARGATT & | Adam R. Brebner |
| TAYLOR, LLP | SULLIVAN & CROMWELL LLP |
| The Brandywine Building | 125 Broad Street |
| 1000 West Street, 17th Floor | New York, New York 10004 |
| Wilmington, Delaware 19801 | (212) 558-4000 |
| (302) 571-6600 | |
| apoff@ycst.com | |

Steven F. Reich
Jeffrey S. Edelstein
John F. Libby
Tamar Feder
Christopher C. Cole
MANATT, PHELPS & PHILLIPS, LLP
7 Times Square
New York, New York 10036
(212) 790-4500

having appeared as counsel for plaintiffs Dyson Technology Limited and Dyson Inc. ("Dyson"),

and:

| | |
|---|---|
| Francis DiGiovanni (No. 3189) | Ray L. Weber |
| Stephanie O'Byrne (No. 4446) | Laura J. Gentilcore |
| CONNOLLY BOVE LODGE & HUTZ LLP | RENNER, KENNER, GREIVE, BOBAK, |
| The Nemours Building | TAYLOR & WEBER |
| 1007 N. Orange Street | 400 First National Tower |
| Wilmington, Delaware  19899 | Akron, Ohio  44308 |
| (302) 658-9141 | (330) 376-1242 |
| fdigiovanni@cblh.com | |

Kimball R. Anderson
Anthony DiSarro
Stephen P. Durchslag
Ronald Y. Rothstein
Lisa J. Parker
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois  60601
(312) 558-5600

having appeared as counsel for defendant Maytag Corporation[1] ("Hoover"), the following actions were taken:

(1)     This is an action for patent infringement.  It also includes counterclaims for false and misleading advertising under the Lanham Act, 15 U.S.C. § 1125(a), and state law. The jurisdiction of the Court is invoked under 28 U.S.C. §§ 1331, 1338 and 1367.  Jurisdiction of the patent claims is not disputed.  Subject matter jurisdiction of the counterclaims is disputed.

(2)     The following stipulations and statements with respect to the patent infringement claims and advertising counterclaims were submitted and are attached to and made a part of this Order.

---

[1] Maytag Corporation has filed motions to amend its counterclaims to add additional counterclaim defendants and a motion to substitute the defendant and counterclaim plaintiff. Dyson has opposed both motions, which are pending as of the filing of the Proposed Joint Pretrial Order.  Dyson objects to Maytag's reference to itself as "Hoover" throughout the Pretrial Order and related documents as Maytag is the only defendant and counterclaimant.

A.  **Statements of Uncontested Facts**

A statement of uncontested facts, which require no proof at trial, will become part of the evidentiary record in the case, and may be read to the jury by the Court or any party, is attached as Schedule 1.

B.  **Statements of Contested Issues of Fact and Law**

An agreed statement of the patent issues of fact and law to be litigated is attached as Schedule 2.

Hoover's statement of the advertising issues of law and fact to be litigated is attached as Schedule 3.

Dyson's statement of the advertising issues of law and fact to be litigated is attached as Schedule 4.

C.  **Exhibits**

A list setting forth for Dyson and Hoover, respectively, exhibits that may be offered as evidence at trial as part of each party's case-in-chief and any objections thereto is attached as Schedule 5. Schedule 5 lists first the exhibits to which there is no objection, followed by the exhibits designated by Dyson to which Maytag objects, followed by the exhibits designated by Hoover to which Dyson objects. Dyson and Hoover are continuing to meet and confer regarding their respective objections to the exhibits, and expect that process to be completed before May 1, 2007. The parties will deliver to the Court the objected-to exhibits by April 26, 2007. Lists of general descriptions of the demonstrative exhibits regarding the false advertising claims are included on each party's exhibit list, which descriptions are non-binding and to which both parties have reserved all objections. The parties have agreed that they will exchange complete color representations of any demonstrative exhibits intended to be used at

trial via e-mail or hand delivery by no later than 8 P.M. on the day two days prior to the use of the demonstrative at trial, and the parties have reserved all objections to such demonstratives.

    D.    **Witnesses**

Lists of names and addresses of the potential witnesses to be called by each party, with a statement of any objections to calling, or to the qualifications of, any witness identified on the lists are attached as Schedule 6.

    E.    **Expert Witnesses**

        1.    Dyson's statement setting forth the qualifications of its expert witnesses is attached as Schedule 7.

        2.    Hoover's statement setting forth the qualifications of its expert witnesses is attached as Schedule 8.

The parties agree that the statements of expert witness qualifications shall not be read to the jury. Dyson and Hoover object to the respective statements for that purpose.

    F.    **Deposition Designation**

A list of portions of depositions that may be offered into evidence by videotape by Dyson and Hoover, respectively, and a statements of the parties' respective objections and counter-designations is attached as Schedule 9. Depositions are ongoing and the parties reserve the right to designate portions of depositions taken after March 5, 2007 that may be offered into evidence at trial. Dyson and Hoover continue to meet and confer regarding their respective objections to the designated deposition testimony, and expect that process to be completed by May 1, 2007.

G. **Statement of Special Damages**

Dyson seeks the following as its damages: (i) a reasonable royalty adequate to compensate Dyson for Hoover's infringement of Dyson's patents in the amount of $1,259,013 pursuant to 35 U.S.C. § 284; (ii) enhanced damages for Hoover's willful infringement pursuant to 35 U.S.C. § 284; (iii) reasonable attorneys' fees and expenses pursuant to 35 U.S.C. § 285 and costs; and (iv) pre- and post-judgment interest. Dyson also seeks attorneys' fees with respect to the advertising counterclaims.

As part of the patent case, Hoover seeks attorney fees and expenses herein pursuant to 35 U.S.C. § 285. For its Lanham Act claims, Hoover seeks no less than $125 million in actual damages; $11.6 million in expected future lose profits for each year it takes to return to Hoover's historic trend; $369 million as Dyson's profits that it obtained as a result of its false advertising campaign; and no less than $122 million in corrective advertising. Hoover seeks attorney fees and costs for its advertising claims as well.

H. **Waivers**

1. Dyson has withdrawn its claim for infringement of United States Patent No. 5,858,038 (Count IV of the Complaint).

2. Dyson is no longer seeking injunctive relief in this action.

3. Hoover has withdrawn its affirmative defenses of invalidity, unenforceability, equitable estoppel, unclean hands, and late claiming with respect to the three patents in suit.

I. **Jury Trial Papers**

The parties have separately submitted the following papers:

1. trial briefs; and

    2.    proposed *voir dire* questions, jury questionnaire,[2] preliminary and final jury instructions, verdict form and special interrogatories, in triplicate and on diskette.

J.    **Statement Regarding Settlement Negotiations**

The parties engaged in a mediation conference on October 23, 2006 before United States Magistrate Judge Thynge. No settlement was reached. Further settlement negotiations are not ongoing, and any such negotiations, if they were held, are unlikely to be productive.

K.    **Completion of Discovery**

Discovery is ongoing and has not been completed. The parties have requested a conference call with the Court to discuss certain remaining open issues, and expert discovery remains to be completed, as well. Because discovery has yet to be completed, the parties reserve the right to amend and/or supplement their statements of contested facts, exhibit lists, witness lists, and jury instructions accordingly, and to introduce any evidence at trial to rebut or refute any issues raised in supplemental or amended statements of contested facts.

L.    **Motions in limine**

Pursuant to the Court's March 6, 2007 Order, Motions in Limine briefing shall be completed by April 26, 2007. The parties will supplement the Joint Pretrial Trial by April 26, 2007 to include the list of motions in limine filed by each party.

(3)    Trial of this case is scheduled to commence on May 29, 2007.

---

[2] Hoover objects to the use of a jury questionnaire prepared by one of the parties because the model pretrial order on the Court's web site does not provide for such. In the event the Court agrees to use Dyson's independently and improperly submitted questionnaire, Hoover reserves the right to create its own and/or supplement Dyson's.

**Dyson's Statement of Length of Trial:** Dyson believes that trial of the patent infringement claims will take five days with a substantially equal division of time between the parties.

Mindful of the value of the Court's time, Dyson expects trial of the false advertising claims alone to take at least ten (10) court days, meaning that combined with the patent claims, Dyson anticipates that the trial will last at least three full weeks. Maytag now attacks every claim that Dyson has made in its U.S. advertising campaigns since its products were launched here in late 2002. Maytag has also demonstrated an unwillingness to narrow the disputed issues for trial, including refusing to stipulate in the attached Statement of Uncontested Facts that Maytag Corporation is a corporation organized under the laws of the state of Delaware and other identifying information that Maytag admitted in its Answer.

The parties have identified over twenty-five (25) witnesses that they will call related to the false advertising claims and defenses, and dozens more that they may call. Additionally, Maytag has designated nearly every question and answer from ten (10) depositions – at least forty (40) hours of videotaped deposition testimony – all of which it intends to offer as evidence at trial. Moreover, Maytag seeks as damages from Dyson many hundreds of millions of dollars – nearly 10 times the largest award ever in a Lanham Act case. Given these factors, Dyson believes its ten (10) day estimate for trial of the advertising portion of the case to be optimistic.

**Hoover's Statement on the Length of Trial:** Hoover objects to Dyson's argument here as improper for a pretrial order. The December 2005 Scheduling Order in this case calls for ten days for trial, and any arguments to change that date should come as a result of motion practice. Notwithstanding this objections, Hoover recognizes the significant strain on the Court's time and resources that adding days would cause. Accordingly, Hoover believes the patent issues can be tried in four days or less, with the remaining time, or any additional days the Court has available, going to the advertising case.

Contrary to Dyson's claims, Hoover is not attacking every advertising claim made by Dyson since 2002. Hoover challenges more than fifty advertising claims, but most can be consolidated and developed at trial in categories, such as "No Loss of Suction," "Most Powerful Upright," "Does Not Rely on Filters," "Picks Up More Dirt and Dust," etc. The proof of both literal and implicit falsity of these claims is relatively simple and straightforward.

Despite weeks of good faith conferring about the substance of this Order, Dyson now seeks to misrepresent these discussions, claiming that Hoover is unwilling to narrow the disputed issues for trial. In reality, Dyson is referring to Hoover's deletion of a single item in the Joint Statement of Uncontested Facts relating to Maytag's corporate status because, at this time, the question of whether that fact is in dispute remained unresolved. The dispute over this single, isolated fact, which arose between the parties sometime in the morning of April 2, does not constitute unwillingness by Hoover to narrow the issues for trial, but rather an attempt by Hoover to diligently work to complete the numerous other submissions required for this Pretrial Order. Hoover does not understand why Dyson would choose to claim that it will need more time for trial due to a dispute between the parties about a single fact that arose the morning of the filing of this Order with the Court. In any event, Hoover certainly expects that, though ongoing

conferences with Dyson, this single, isolated fact can be addressed and will not require any additional time for trial.

Moreover, despite the fact that the parties have identified about twenty five witnesses, Hoover believes that number will go down as trial approaches. For example, Dyson has identified nine expert witnesses for its advertising case, many of who are cumulative. Limiting the time for trial will force Dyson to avoid calling unnecessary and redundant witnesses. Moreover, it is Dyson, and not Hoover, that has listed everyone with knowledge of this case as a potential witness. Dyson has listed about forty potential witnesses, while Hoover requires substantially less.

As to Hoover's deposition designations, such expansive designation is common practice this far before trial and when the parties do not know which witnesses in their opponents' control will be made available for trial. The bulk of Dyson's false advertising campaign was created, paid for and disseminated out of England. If Dyson makes those employees available for trial, Hoover's expansive designations will be moot.

Finally, the amount of damages Hoover is seeking is irrelevant to the question of the length of trial. In any event, while Hoover is prepared to try the patent and advertising issues in one trial over ten days, Hoover would agree to additional days for the advertising issues.

**Dyson's Statement on Bifurcation:** Consistent with the inclination expressed by the Court at the December 5, 2005 Scheduling Conference, Dyson respectfully requests that its patent infringement claims and Hoover's advertising counterclaims be tried separately before a single jury. (*See* Dec. 5, 2005 Tr. at 26:19-21 ("The Court . . . has expressed a leaning toward a bifurcated process with the same jury.") The patent and advertising claims present different issues for the jury to decide with limited overlap in the evidence, and bifurcation will reduce the

risk of jury confusion. Whereas Dyson's patent claims focus on whether a single Hoover product—the Hoover Fusion vacuum cleaner—infringes Dyson's patents, Hoover's advertising counterclaims focus on Dyson's advertising concerning multiple Dyson products. In addition, the patent dispute is much narrower in scope with significantly fewer witnesses and exhibits than the false advertising claims, as demonstrated by the limited number of contested factual and legal issues on the patent side (*see* Schedule 2, attached) compared with the advertising side of the case (*see* Schedules [3 and 4], attached). Given the size and factual breadth of Hoover's advertising counterclaims, Dyson is legitimately concerned that, without bifurcation, its patent claims will become lost in a joint trial and potentially disregarded by the jury. In contrast, trying the two sides of the case sequentially will enable the jury to learn efficiently the overlapping background facts about the products and the companies, while avoiding the serious risk of juror confusion of the issues in dispute.

**Hoover's Statement on Bifurcation[3]:** Hoover objects to Dyson's inclusion of this issue and expanded argument in this Pretrial Order, as it is a matter subject to motion practice and not properly addressed in this filing. Accordingly, Dyson should formally move for bifurcation, and Hoover should have the opportunity to brief the issue so that the Court is fully informed on the merits. Because of Dyson's insistence on presenting the issue here, however, Hoover at this time summarizes its opposition to bifurcation. Bifurcation, which is not favored either in the Federal Rules of Civil Procedure or under settled authority, is inadvisable here because of the substantial

---

[3] Hoover assumes that what Dyson is referring to here is Rule 21 severance, rather than Rule 42 bifurcation. *See Rodin Props.-Shore Mall, N.V. v. Cushman & Wakefield, Inc.*, 49 F. Supp. 2s 709, 720 (D.N.Y. 1999) (noting that bifurcation "will usually result in one judgment, but severed claims become entirely independent actions to be tried, and judgment entered thereon, independently.") However, for purposes of this Order, Hoover will refer to Dyson's request as "bifurcation."

overlap in witnesses and documents.  *See* Fed. F. Civ. P. 42 advisory committee notes (1966) ("[S]eparation of issues for trial is not to be routinely ordered."); *Willemijn Houdstermaatschaapij BV v. Apollo Computer*, 707 F. Supp. 1429, 1433-1434 (D. Del. 1989); *Fuji Mach. Mfg. Co. v. Hover-Davis, Inc.*, 982 F. Supp. 923, 924 (W.D.N.Y. 1997).

  Dyson's concern about the potential for jury confusion is greatly exaggerated.  Patent claims are frequently tried together with antitrust counterclaims.  Both the factual and legal issues relating to false advertising claims are far less complex than those incidental to claims under the federal antitrust laws.  The risk of jury confusion here is minimal and can be controlled through the Court's preliminary and final instructions.

  Contrary to Dyson's unsupported arguments, numerous witnesses in both the patent and advertising cases overlap, save for expert witnesses.  Examples of witnesses who likely will testify to both patent and advertising claims include Dyson inventor, CEO and principal spokesman James Dyson, as well as Hoover employees Russell H. Boyer and David Baker.  Moreover, Dyson's argument that its patent case involves only one product – the Hoover Fusion – while Hoover's advertising case involves several of Dyson's vacuums, is a red herring.  Dyson does not distinguish in its advertising between its products.  Accordingly, the real focus of this case is the function and design of both parties' vacuum cleaners for both the patent and advertising issues, and the question of whether Dyson's representations to the public about its vacuums' capabilities are truthful.  The issues are inextricably intertwined.

Dyson has agreed to try this case in a limited number of days – namely, ten. Its request for bifurcation now is an ill-disguised attempt to run out the time clock on the patent case and force Hoover to recall many witnesses in its false advertising case. Because many of the witnesses, exhibits, and subject matters are common to both the patent and advertising portions of the case, bifurcation will result in multiple witnesses having to testify twice, and judicial economy will not be served. Accordingly, Hoover respectfully requests that the patent infringement and advertising claims proceed together. In the event the Court orders bifurcation, Hoover respectfully requests that the cases proceed one after the other, with no delay in between so as to minimize the prejudice to Hoover.

(4)     Type of trial: JURY.

(5)     The parties recommend that eight jurors be selected at the commencement of the trial.

(6)     This Order will control the course of the trial and may not be amended except by consent of the parties and the Court, or by order of the Court to prevent manifest injustice.

(7)     Possibility of settlement of this case was considered by the parties.

Date: _____, 2007

                                                                           United States District Judge

| /s/ *Adam W. Poff* | /s/ *Francis DiGiovanni* |
|---|---|
| C. Barr Flinn (No. 4092) | Francis DiGiovanni (No. 3189) |
| John W. Shaw (No. 3362) | Stephanie O'Byrne (No. 4446) |
| Adam W. Poff (No. 3990) | CONNOLLY BOVE LODGE & HUTZ LLP |
| YOUNG CONAWAY STARGATT & TAYLOR, LLP | The Nemours Building |
| The Brandywine Building | 1007 N. Orange Street |
| 1000 West Street, 17th Floor | Wilmington, Delaware 19899 |
| Wilmington, Delaware 19801 | (302) 658-9141 |
| (302) 571-6600 | fdigiovanni@cblh.com |
| apoff@ycst.com | |
| | Ray L. Weber |
| Garrard R. Beeney | Laura J. Gentilcore |
| Richard C. Pepperman, II | RENNER, KENNER, GREIVE, BOBAK, TAYLOR & WEBER |
| James T. Williams | 400 First National Tower |
| Adam R. Brebner | Akron, Ohio 44308 |
| SULLIVAN & CROMWELL LLP | (330) 376-1242 |
| 125 Broad Street | |
| New York, New York 10004 | Kimball R. Anderson |
| (212) 558-4000 | Anthony DiSarro |
| | Stephen P. Durchslag |
| Steven F. Reich | Ronald Y. Rothstein |
| Jeffrey S. Edelstein | Lisa J. Parker |
| John F. Libby | WINSTON & STRAWN LLP |
| Tamar Feder | 35 West Wacker Drive |
| Christopher C. Cole | Chicago, Illinois 60601 |
| MANATT, PHELPS & PHILLIPS, LLP | (312) 558-5600 |
| 7 Times Square | |
| New York, New York 10036 | *Attorneys for Defendant Maytag Corporation* |
| (212) 790-4500 | |

*Attorneys for Plaintiffs Dyson Technology Limited and Dyson, Inc.*