[redacted]

G. **Hoover's Claimed Damages Are Highly Exaggerated and Seek to Shift to Dyson Responsibility for Maytag/Hoover's Self-Inflicted Wounds.**

[redacted]



[redacted]

## VI. MOOTNESS AND DYSON'S AFFIRMATIVE DEFENSES.

186. With regard to all of Dyson's affirmative defenses, Dyson will prove that Maytag formed the opinion that Dyson's advertising was false and misleading by at least 2002 or early 2003 at the latest.

187. With regard to all of Dyson's affirmative defenses, Dyson will prove that Maytag took no action regarding the alleged false and misleading claims, and did not give Dyson notice that it believed its advertising claims were false and misleading, until June 2005.

188. With regard to all of Dyson's affirmative defenses, Dyson will prove that it was induced to rely upon Maytag's inaction by continuing to spend tens of millions of dollars in advertising and branding and by continuing to use the advertising claims in dispute in the United States between 2002 and June 2005.

189. With regard to all of Dyson's affirmative defenses, Dyson will prove that Maytag negligently failed to assert its claims in a timely manner.

190. With regard to all of Dyson's affirmative defenses, Dyson will prove that it has suffered undue prejudice and unfair potential exposure to substantially increased liability as a result of Maytag's delay in asserting its claims.

191. With regard to Dyson's affirmative defense of unclean hands, Dyson will prove that Maytag has advertised and marketed Hoover upright vacuum cleaners, including the Fusion and Legacy models, using the claim "No Loss of Suction."



194. With regard to Dyson's affirmative defense of unclean hands, Dyson will prove that Maytag has engaged in false and misleading advertising in connection with its Hoover Fusion and Hoover Legacy model upright vacuum cleaners.

195. With regard to Dyson's affirmative defense of unclean hands, Dyson will prove that Maytag manufactured, distributed, and sold upright vacuum cleaner products that it advertised with a "No Loss of Suction" claim, which products infringed Dyson's patents.



## Contested Issues of Law

### Maytag's Standing

197. Standing addresses who may bring a lawsuit. Maytag has the burden of establishing that it has standing to bring the counterclaims and seek damages on behalf of The Hoover Corporation. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561-62 (1992).

198. Maytag must prove that it had standing to bring the counterclaims at the time they were filed. *Anjelino v. New York Times Co.,* 200 F.3d 73, 88 (3d Cir. 1999).

199. Standing has two components: (a) the constitutional requirements of Article III of the Constitution; and (b) prudential considerations. *See Bennett v. Spear,* 520 U.S. 154, 162 (1997).

200. To satisfy the constitutional requirements of Article III, Maytag must show that it has "an injury in fact," causation between the alleged injury and Dyson's alleged conduct, and that there is a likelihood that the injury could be redressed by a favorable decision. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992).

201. Prudential considerations require that parties must assert their own legal rights and interests and not rely on the rights and interests of third parties in creating standing to bring an action. *Conte Bros. Auto., Inc. v. Quaker State-Slick 50, Inc.,* 165 F.3d 221, 233 (3d Cir. 1998); *Thorn v. Reliance Van Co., Inc.,* 736 F.2d 929 (3d Cir. 1984); *USA Interactive v. Dow Lohnes & Albertson P.L.L.C.,* 328 F. Supp. 2d 1294, 1309 (M.D. Fla. 2004), *citing Franchise Tax Bd. of Calif. v. Alcan Aluminum Ltd.,* 493 U.S. 331, 335 (1990).

202. Maytag, Hoover's parent, cannot recover damages for injury suffered by its subsidiary, Hoover. *Lujan,* 504 U.S. at 560 n.1; *Conte Bros. Auto., Inc. v. Quaker State-Slick 50, Inc.,* 165 F.3d 221, 233 (3d Cir. 1998); *Thorn v. Reliance Van Co., Inc.,* 736 F.2d 929 (3d

Cir. 1984); *K-B Trucking v. Riss Int'l Corp.,* 763 F.2d 1148, 1154 (10th Cir. 1985); *Classic Communications, Inc. vv. Rural Telephone Serv. Co.,* 956 F. Supp. 896, 902 (D. Kan. 1996); *Waddell & Reed Fin., Inc. v. Torchmark Corp.,* 223 F.R.D. 566, 629 (D. Kan. 2004); *Ergobilt, Inc. v. Neutral Posture Ergonomics,* 1998 WL 383624 (N.D. Tex. Aug. 10, 1998).

**Mootness**

203. Maytag's claims are barred by the mootness doctrine.

**Choice of Law**

204. Delaware applies the "most significant relationship" choice of law doctrine to state law tort claims. *Travelers Indem. Co. v. Lake,* 594 A.2d 38, 47 (Del. 1991).

205. Under that test, the state with the most significant relationship to Maytag's state law claims is Iowa, because Maytag's principal place of business is there and that is where it suffered its alleged injury, if any. *See Travelers,* 594 A.2d at 47; *System Operations, Inc. v. Scientific Games Dev. Corp.,* 555 F.2d 1131, 1138 (3d Cir. 1977); *American Rockwool, Inc. v. Owens-Corning Fiberglass Corp.,* 640 F. Supp. 1411, 1431-33 (E.D. N.C. 1986). To the extent that Maytag has any state law claims, they must be brought under Iowa law.

**Individual Liability**

206. Maytag must prove each element of each cause of action, including damages, against each counterdefendant to prevail on each of its claims. *See, e.g., Bailey v. Board of Commissioners of Alachua County,* 956 F.2d 1112, 1129-30 (11th Cir. 1992), *cert. denied,* 506 U.S. 832 (1992).

207. To prove each counterdefendant's liability, Maytag must establish that each counterdefendant actively participated in the alleged false advertising, deceptive trade practices,

and/or false advertising. *Donsco, Inc. v. Caper Corp.,* 587 F.2d 602, 606 (3d Cir. 1978); *Trans Pacific Ins. Co. v. Trans-Pacific Ins. Co.,* 136 F.R.D. 385, 389 (E.D. Pa. 1991).

**Transfer Pricing and Zero Balance Accounts**

208. The use of zero balance accounts is sound business practice and does not evidence a parent company's improper domination of a subsidiary as a matter of law. *Fletcher v. Atex, Inc.,* 68 F.3d 1451, 1459 (2d Cir. 1995).

209. Transfer pricing is authorized under IRS Code, 26 U.S.C. § 482.

**Lanham Act**

210. In order to prevail on its Lanham Act claims, Maytag must prove each of the following elements by a preponderance of the evidence for each allegedly false advertising claim: (1) that Dyson has made false or misleading statements as to its own products or Maytag's; (2) actual deception; (3) that the deception is material in that it is likely to influence purchasing decisions; (4) that the advertised goods traveled in interstate commerce; and (5) that there is a likelihood of injury to Maytag. *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.,* 290 F.3d 578, 586 (3d Cir. 2002);. *U.S. Healthcare, Inc. v. Blue Cross of Greater Phila.,* 898 F.2d 914, 922 (3d Cir. 1990); *Parkway Baking Co. v. Freihofer Baking Co.,* 255 F.2d 641, 648 (3d Cir. 1958).

211. Puffery is "an exaggeration or overstatement expressed in broad, vague, and commendatory language. *Castrol, Inc. v. Pennzoil Co.,* 987 F.2d 939, 945 (3d Cir. 1993). Similarly, subjective claims about a product cannot be proven true or false, are understood as a mere expression of opinion, and are not false advertising or violative of the Lanham Act. *Lipton v. Nature Co.,* 71 F.3d 464, 474 (2d Cir. 1995).

212. For any statement to be considered commercial advertising or promotion, it must be "part of an organized campaign to penetrate the relevant market. Proof of widespread dissemination within the relevant industry is a normal concomitant of meeting that requirement." *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 56 (2d Cir. 2002).

213. Dyson's generalized claims of superiority are puffery and not actionable under the Lanham Act. *See, e.g., U.S. Healthcare, Inc. v. Blue Cross of Greater Phila.*, 898 F.2d 914, 922 (3d Cir. 1990).

214. In order to prevail on its Lanham Act claims, Maytag must establish that each challenged claim is either (1) literally false, or (2) literally true but misleading (i.e., consumer confusion). *Novartis,* 290 F.3d at 586.

215. For each challenged claim, Maytag must prove that the claim is false or misleading, not merely that it is unsubstantiated. *Johnson & Johnson-Merck Consumer Pharm. Co. v. Rhone-Poulenc Rorer Pharm., Inc.*, 19 F.3d 125, 129 (3d Cir. 1994).

**Literal Falsity**

216. A literally false claim must be (1) explicit; or (2) conveyed by necessary implication. *Novartis,* 290 F.3d at 586-87; *Clorox Co. v. Procter & Gamble Commercial Co.,* 228 F.3d 24, 34 (1st Cir. 2000). A claim is conveyed by necessary implication only if, when considering the advertisement in its entirety, the audience would recognize the claim as readily as if it had been explicitly stated. *Id.*

217. A determination of literal falsity rests on an analysis of the challenged claim in context. *Johnson & Johnson-Merck,* 19 F.3d at 129.

218. In order to determine whether a claim is literally false, the claim must be considered according to objective industry standards, not the subjective standards of the plaintiff challenging the claim. *Castrol, Inc. v. Pennzoil Co.,* 799 F. Supp. 424, 436 (D.N.J. 1992), *aff'd,* 987 F.2d 939 (3d Cir. 1993); *Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc.,* 915 F. Supp. 360, 365-66 (S.D. Fla. 1996).

219. Only an unambiguous statement can be literally false; the greater the degree to which a message relies upon the consumer to integrate its components and draw the apparent conclusion, the less likely it is that a finding of literal falsity will be supported. *Novartis,* 290 F.3d at 587.

220. To the extent that any challenged claim explicitly or implicitly represents that tests substantiate the challenged claim (a so-called "establishment claim"), Maytag can prove that the challenged claim is false only if it proves that the tests that Dyson relies upon do not support the claim. *See, e.g., BASF Corp. v. Old World Trading Co.,* 41 F.3d 1081, 1090 (7th Cir. 1994); *Castrol Inc. v. Quaker State Corp.,* 977 F.2d 57, 63 (2d Cir. 1992).

221. To prove that an advertising claim based on product testing is literally false, Maytag "must do more than show that the tests supporting the claim are unpersuasive." *Castrol, Inc. v. Pennzoil Quaker State Co.,* 169 F. Supp. 2d 332, 336 (D.N.J. 2001), *citing McNeil-P.C.C., Inc. v. Bristol-Meyers Squibb Co.,* 938 F.2d 1544, 1549 (2d Cir. 1991). Maytag must demonstrate that such tests "are not sufficiently reliable to permit one to conclude with reasonable certainty that they established the claim made." *Id.*; *S.C. Johnson & Son, Inc. v. Clorox Co.,* 930 F. Supp. 753, 780 (E.D.N.Y. 1996).

222. Testing performed in accordance with industry standards is considered reliable and appropriate to substantiate establishment claims. *See, e.g., Castrol,* 169 F. Supp. 2d at 336;

*Castrol*, 987 F.2d at 944; *Lenscrafters, Inc. v. Vision World, Inc.*, 943 F. Supp. 1481, 1502 (D. Minn. 1996).

223. In order to prove a challenged claim is false, the test methodology should approximate "real world" consumer use in accordance with the product's user manual. *See, e.g., S.C. Johnson & Son, Inc. v. Clorox Co.*, 930 F. Supp. 753, 768 (E.D.N.Y. 1996).

224. The requirement that *in vitro* and *in vivo* testing be correlated is limited to substantiation for advertising claims for pharmaceutical products and, possibly, products whose efficacy depends on chemical processes. *Johnson & Johnson-Merck*, 19 F.3d at 127; *Church & Dwight Co., Inc. v. S.C. Johnson, Inc.*, 873 F. Supp. 893, 905 n.4 (D. N.J. 1994). The requirement of *in vitro* and *in vivo* correlation has not been extended to the advertising claims regarding other products, such as machines, that are not *in vivo* (*i.e.*, alive).

225. Tests performed in bad faith may be unreliable or invalid. *Procter & Gamble Co. v. Cheesebrough-Pond's Inc.*, 747 F.2d 114, 119 (2d Cir. 1984).

226. For any challenged claim in which Dyson represents that its product is superior without explicit or implicit reference to tests or studies that substantiate such claim, Maytag must affirmatively prove that Dyson's products are equal to or inferior to Maytag's products. *Castrol*, 977 F.2d at 63; *BASF*, 41 F.3d at 1090.

227. Only an unambiguous message can be literally false, "if the message is susceptible of more than one meaning, the plaintiff cannot assert literal falsity. *Pharmacia Corp. v. GlaxoSmithKline Consumer Healthcare, L.P.*, 292 F.Supp.2d 594, 599 (D.N.J. 2003).

228. Only if Maytag proves that a challenged claim is literally false may relief be granted without considering whether consumers are misled. *Johnson & Johnson-Merck*, 19 F.3d at 129.

**Implied Falsity**

229. If Maytag cannot prove that a challenged claim is literally false, Maytag must prove that the claim is deceptive or misleading. *Johnson & Johnson-Merck,* 19 F.3d at 129.

230. Where a plaintiff cannot show that a claim is literally false, it must show that the advertisement conveyed an impliedly false message that was misleading to consumers. To do this, a plaintiff bears the burden of proving actual deception by a preponderance of the evidence. "Hence, it cannot obtain relief by arguing how consumers could react; it must show how consumers actually do react." *AstraZeneca LP v. Tap Pharmaceutical Products, Inc*, 444 F.Supp.2d 278, 295-96 (D. Del. 2006) *citing Sandoz Pharma. Corp v. Richardson-Vicks, Inc.,* 902 F.2d 222, 228-29 (3d. Cir. 1990).

231. To prevail on false advertising claims, Maytag must show that consumers were *actually* misled by Dyson's advertising. *AstraZeneca LP v. Tap Pharmaceutical Products, Inc*, 444 F.Supp.2d 278, 296 (D. Del. 2006) (emphasis added).

232. In order to prove that a challenged claim is deceptive or misleading, Maytag must prove both that: (1) the statement is material because it is likely to influence purchasing decisions, and (2) that the misrepresentation has a tendency to deceive the consumer. *Sandoz Pharm. Corp. v. Richardson-Vicks, Inc.,* 735 F.Supp. 597, 600 (D. Del. 1989).
At least 20% of consumers must be misled to establish that the challenged claims have a tendency to deceive consumers. *Johnson & Johnson-Merck Consumer Pharm Co. v. Rhone-Poulenc Rorer Pharm., Inc.,* 29 F.3d 125, 134 n.14 (3d Cir. 1994).

**Materiality**

233. Even if Maytag proves that a challenged claim is literally false, Maytag must still prove that the claim is material. *See, e.g., Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1250 (11th Cir.2002); *Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.*, 284 F.3d 302, 311 (1st Cir.2002); *S.C. Johnson & Son, Inc. v. Clorox Co.*, 241 F.3d 232, 238 (2d Cir. 2001).

234. Materiality is a separate inquiry from deception because materiality considers whether the false or misleading statement is likely to make a difference to purchasers in their decision to buy the product. "Thus, even when a statement is literally false or has been made with the intent to deceive, materiality must be demonstrated in order to show that the misrepresentation had some influence on consumers." *3M Innovative Properties Co. v. Dupont Dow Elastomers LLC*, 361 F. Supp. 2d 958, 971 (D. Minn. 2005); *see also Mylan Pharma. Inc. v. Procter and Gamble Co.*, 443 F.Supp.2d 453, 462 (S.D.N.Y. 2006); *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1250 (11th Cir. 2002) ("The materiality requirement is based on the premise that not all deceptions affect consumer decisions."); *S.C. Johnson & Son, Inc. v. Clorox Co.*, 241 F.3d 232, 238 (2d Cir. 2001) (holding that the plaintiff must establish materiality even when a court finds that a defendant's advertisement is literally false); *Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.*, 284 F.3d 302, 311 (1st Cir. 2002).

**Consumer Survey Evidence**

235. Whether an advertising claim has a tendency to deceive consumers is measured by the public reaction to the advertising. The success of a false advertising claim "usually turns on the persuasiveness of a consumer survey." *Johnson & Johnson-Merck*, 19 F.3d at 129.

236. The proponent of a survey must establish that it was conducted in accordance with accepted principles of survey research. *Pittsburgh Press Club v. United States*, 579 F.2d 751, 758 (3d Cir. 1978).

237. Generally accepted survey principles include the following: "A proper universe must be examined and a representative sample must be chosen; the persons conducting the survey must be experts; the data must be properly gathered and accurately reported. It is essential that the sample design, the questionnaires and the manner of interviewing meet the standards of objective surveying and statistical techniques." *Id.*; Diamond, Shari Seidman, "Reference Guide on Survey Research," Ref. Manual on Sci. Evid., (2nd Ed. Fed Jud. Ctr. 2000).

238. A consumer survey may be fatally flawed and inadmissible if it suffers from one or more of the following defects: (1) reliance on improper, close-ended or leading questions; (2) order bias; (3) lack of funneling, filtering, or control questions; (4) leading or suggestive close ended questions; (5) lack of or inappropriate control questions; (6) inadequate data collection; (7) inappropriate probing; and/or (8) inappropriate sample size. *See, e.g., Johnson & Johnson-Merck*, 19 F.3d 132-36; *Procter & Gamble Pharm., Inc. v. Hoffmann-La Roche Inc.*, 2006 WL 2588002 at *22-25 (S.D.N.Y.); *Winning Ways, Inc. v. Holloway Sportswear, Inc.*, 913 F. Supp. 1454, 1470 (D. Kan. 1996) (holding that consumer survey's flaws rendered it inadmissible) *American Home Products Corp. v. Procter & Gamble Co.*, 871 F. Supp. 739, 750 (D.N.J. 1994).

239. Closed-ended surveys are "can be leading and suggestive and require incorporation of several well-established mechanisms to minimize bias." *Procter and Gamble Pharm., Inc. v. Hoffman-La Roche Inc.*, 2006 WL 2588002 at *23 (S.D.N.Y.). These include rotating the questions or using a control question, "funnel," "full-filter" questions, or "quasi-filter questions" that are designed to screen out respondents who may truly not have an opinion on the issue under

48

investigation and minimizes guessing. *Id.* Reliability of answers elicited by closed-ended questions is undermined where a survey fails to provide a respondent with all possible options to any question including the options of "neither" or "don't know." *Id. Warner-Lambert Co. v. Schering-Plough Corp.*, 1991 WL 221107 (S.D.N.Y.) (finding that closed-ended survey questions were essentially leading questions where the format and the wording of the multiple choice questions limited respondents' answers to potentially inadequate or specious alternatives. Therefore, the answers could not be relied on as reflecting the spontaneous reactions of the interviewees.); *AstraZeneca LP v. Tap Pharmaceutical Products, Inc*, 444 F.Supp.2d 278, 292-93 (D. Del. 2006) (holding that internet survey was inadmissible where closed-ended question responses were so lacking in reliability as to be effectively meaningless).

240. Consumer survey or consumer perception evidence is inadmissible to determine the meaning of the words in a claim or to set the standard to which objectively verifiable claims must be held. *Mead Johnson & Co. v. Abbott Labs.*, 201 F.3d 883, 885-87 (7th Cir. 2000). "The Lanham Act makes misleading statements actionable, but a misunderstood statement is not the same as a misleading one." *Haymond v. Lundy*, 2001 WL 15956, at *4 (E.D.Pa.) (holding an attorney's claims that he "supervised" a broad range of cases could not support an implied claim that he was personally handling client's claim because "that interpretation was unreasonable as a matter of law"). *See also American Italian Pasta Co. v. New World Pasta Co.*, 371 F.3d 387, 393-94, (8th Cir. 2004) (holding that a consumer survey cannot be used to transform an advertising phrase into a specific, measurable claim or determine a claim's benchmark).

**Delaware Deceptive Trade Practices Act ("DPTA") and Unfair Competition**

241. The DPTA provides solely for injunctive relief. *Grand Ventures, Inc. v. Whaley*, 632 A.2d 63, 68 (Del. 1993).

242. The DTPA codifies the common law of unfair competition. *Moore North Amer., Inc. v. Poser Business Forms, Inc.*, 2000 WL 1480992 at *7 (D. Del.)

243. The DPTA affords no greater protection than the Lanham Act. Therefore, if Dyson is not found to have violated the Lanham Act, it cannot be liable under the Delaware Trade Practices Act. *Toro Co. v. Textron*, 499 F. Supp. 241, 249, n. 17 (D. Del. 1980); *Chase Manhattan Bank, USA, N.A. v. Freedom Card, Inc.*, 333 F. Supp.2d 239, 244-245 n.13 (D. Del. 2004); *see also Monsanto Company v. Syngenta Seeds, Inc.*, 2006 U.S. Dist. LEXIS 54515 at *14 (D. Del. August 4, 2006); *Young v. Joyce*, 351 A.2d 857, 859 (Del. Sup. Ct. 1975); *Kellam Energy, Inc. v. Duncan*, 668 F.Supp. 861, 879 (D. Del. 1987).

244. If Maytag fails to prove its claim for violation of the DTPA, then its claims for common law unfair competition fails as a matter of law; if Maytag fails to establish its unfair competition claim, then its DTPA claim fails as a matter of law. *Grand Ventures*, 632 A.2d 63; *Moore*, 2000 WL 1480992.

245. Any relief granted under the DTPA or the Delaware common law of unfair competition is limited to any alleged deceptive conduct or unfair competition that occurred in Delaware. 6 Del. C. § 2532.

**Damages**

246. The Lanham Act allows a plaintiff to recover (1) defendant's profits, (2) any damages sustained by the plaintiff; and (3) the cost of the action. *Callaway Golf. Co. v. Slazenger*, 384 F. Supp. 2d 735, 740 (D. Del. 2005); 15 U.S.C. § 1117(a).

247. Punitive damages are not available under the Lanham Act. *Caesar's World, Inc. v. Venus Lounge, Inc.*, 520 F.2d 269, 274 (3d Cir. 1975), *citing Fleischman Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 720 (1967).

248. Willfulness is a factor to consider when deciding whether to award a defendant's profits. *Banjo Buddies, Inc. v. Renofsky*, 399 F.3d 168, 173 (3d Cir. 2005).

249. "Willful is a word with many uses in the law, but even the weaker connotations imply knowledge of unlawfulness or reckless indifference to the law, and not simply intentional acts." *Zazu Designs v. L'Oreal, S.A.*, 979 F.2d 499, 507 (7th Cir. 1992) (reversing finding of willfulness in Lanham Act case).

250. In the context of a false advertising claim under the Lanham Act, willfulness and bad faith require proof of a connection between the defendant's awareness of its competitors and its actions at those competitors' expense. Voluntary, knowing, and intentional misconduct is considered an indicator of willfulness. *Callaway*, 384 F. Supp. 2d at 742.

251. If the Court finds that the amount of the recovery awarded is excessive, the Court may, in its discretion, enter judgment for such sum as the Court shall find to be just, according to the circumstances of the case. 15 U.S.C. § 1117(a).

252. To obtain a damages for corrective advertising, Maytag must show that such damages are the least expensive way to proceed. *Callaway*, 384 F. Supp. 2d at 740-41, *quoting Zazu Designs v. L'Oreal, S.A.*, 979 F.2d 499, 506, 509 (7th Cir. 1992).

253. An award of post-trial corrective advertising must be justifiable as a surrogate for plaintiff's damages or defendant's profit. *Callaway*, 384 F. Supp. 2d at 741, *quoting PBM Products, Inc. v. Mead Johnson & Co.*, 174 F.Supp.2d 417, 420 (E.D. Va. 2001).

254. Maytag's damages are limited to a maximum amount of three times its actual damages. *Alpo Petfoods, Inc. v. Ralston Purina Co.*, 913 F.2d 958 (D.C. Cir. 1990); *Foxtrap, Inc. v. Foxtrap, Inc.*, 671 F.2d 636, 642 (D.C. Cir. 1982); 15 U.S.C. § 1117(a).

**Attorneys' Fees**

255. Attorneys' fees are available to the prevailing party in a Lanham Act case if the case is deemed exceptional. *Callaway*, 384 F. Supp. 2d at 747.

256. Attorneys' fees are available to the prevailing party in a DPTA case if the conduct was willful. *Accu Personnel, Inc. v. Accustaff, Inc.*, 846 F. Supp. 1191, 1216 (D. Del. 1994).

257. A finding of exceptionality under either the Lanham Act or DPTSA requires proof of culpable conduct, such as "bad faith, fraud, [or] malice . . ." by clear and convincing evidence. *Callaway*, 384 F. Supp. 2d at 748; *Accu Personnel*, 846 F. Supp. at 1216; *see also Ferrero U.S.A., Inc. v. Ozak Trading, Inc.*, 952 F.2d 44, 47 (3d. Cir. 1991).

258. Even if the case is deemed exceptional, an award of attorneys' fees is not required. *Callaway*, 384 F. Supp. 2d at 746.

259. Attorneys fees are available to a prevailing defendant in a Lanham Act case where the plaintiff engaged in litigation in bad faith such that the lawsuit is an exceptional case. Relevant factors include both parties' litigation conduct, including any delay by the plaintiff in suing the defendant. 15 U.S.C. 1117(a); *Perricone v. Medicis Pharmaceutical Corp.*, 432 F.3d 1368, 1380-81 (Fed. Cir. 2005); *Securacomm Consulting, Inc. v. Securacom Inc.*, 224 F.3d 273, 280-81 (3d Cir. 2000).

**Permanent Injunction**

260. Under the principles of equity, and on terms that the Court considers reasonable, an injunction may be entered against Dyson if Dyson's deceptive trade practices will likely damage Maytag. Proof of monetary damage, loss of profits, or intent deceive is not required. 6 Del. C. § 2533(a).

**Affirmative Defenses**

261. Maytag's counterclaims are barred by the doctrine of estoppel.

262. Maytag's counterclaims are barred by the doctrine of equitable estoppel.

263. Maytag's counterclaims are barred by the doctrine of laches.

264. Maytag's counterclaims are barred by the doctrine of acquiescence.

265. Maytag's counterclaims are barred by the doctrine of waiver.

266. Maytag's counterclaims are barred by the doctrine of unclean hands.

80389797.1