IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DYSON TECHNOLOGY LIMITED and DYSON, INC. | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | C.A. No. 05-434-GMS |
| MAYTAG CORPORATION, | ) ) | **REDACTED – PUBLIC VERSION** |
| Defendant. | ) ) | |

## PLAINTIFFS' [CORRECTED] TRIAL BRIEF

OF COUNSEL

Garrard R. Beeney
Richard C. Pepperman, II
James T. Williams
Adam R. Brebner
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
(212) 558-4000

Steven F. Reich
Jeffrey S. Edelstein
John F. Libby
Tamar Feder
Christopher C. Cole
MANATT, PHELPS & PHILLIPS, LLP
7 Times Square
New York, New York  10036
(212) 790-4500

April 11, 2007

John W. Shaw (No. 3362)
C. Barr Flinn (No. 4092)
Adam W. Poff (No. 3990)
YOUNG CONAWAY STARGATT &
TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801
(302) 571-6600
apoff@ycst.com

*Attorneys for Plaintiffs Dyson
Technology Limited and Dyson, Inc.*

## TABLE OF CONTENTS

*Page*

NATURE OF THE CASE ............................................................................................ 1

DYSON'S PATENT INFRINGEMENT CLAIM ...................................................... 2

I.    BACKGROUND:  THE PATENTED TECHNOLOGY AT ISSUE ............................... 2

II.   CONTESTED FACTS THE EVIDENCE AT TRIAL WILL ESTABLISH ................... 3

      A.    The Infringing Product............................................................................ 3

      B.    Infringement of the Patents-in-Suit....................................................... 3

III.  DYSON'S THEORY OF LIABILITY ............................................................... 5

IV.   DYSON'S THEORY OF DAMAGES ............................................................... 5

      A.    Reasonable Royalty ................................................................................ 5

      B.    Enhanced Damages for Willful Infringement......................................... 5

MAYTAG'S FALSE ADVERTISING COUNTERCLAIM........................................... 6

I.    CONTESTED FACTS THE EVIDENCE AT TRIAL WILL ESTABLISH ................... 6

II.   DYSON'S THEORY OF DEFENSE ................................................................. 8

      A.    Dyson's Claims are Neither False Nor Misleading ............................... 8

      B.    Maytag Fails to Establish the Remaining Elements of a Lanham Act
            Violation ............................................................................................... 12

      C.    Maytag's Claims Are Barred by The Equitable Doctrines of Laches,
            Waiver, Estoppel, Acquiescence and Unclean Hands ......................... 12

III.  AVAILABLE DAMAGES IN THE EVENT LIABILITY IS ESTABLISHED............. 13

ANTICIPATED MOTIONS FOR A DIRECTED VERDICT ..................................... 15

# TABLE OF AUTHORITIES

Page

## CASES

*Big O Tire Dealers, Inc. v. Goodyear*,
561 F.2d 1365 (10th Cir. 1977) ........................................................................ 15

*Callaway v. Slazenger*,
384 F. Supp. 2d 735 (D. Del. 2005) .................................................................... 14

*Castrol, Inc. v. Pennzoil Co.*,
987 F.2d 939 (3d Cir. 1993) .............................................................................. 10

*Conopco, Inc. v. Campbell Soup Co.*,
95 F.3d 187 (2d Cir. 1996) ............................................................................... 13

*Conte Bros. Auto. v. Quaker State-Slick 50*,
992 F. Supp. 709 (D.N.J. 1998) ......................................................................... 14

*Emco, Inc. v. Obst*,
2004 U.S. Dist Lexis 12118 (C.D. Cal. May 7, 2004) ........................................... 13

*Fike v. Ruger*,
752 A.2d 112 (Del. 2000) .................................................................................. 13

*Golden Blount, Inc.* v. *Robert H. Peterson Co.*,
438 F.3d 1354 (Fed. Cir. 2006) ........................................................................... 6

*Grand Ventures, Inc. v. Whaley*,
632 A.2d 63 (Del. 1993) .................................................................................... 12

*Haagen-Dazs, Inc. v. Frusen Gladje, Inc.*,
493 F. Supp. 73 (S.D.N.Y. 1980) ........................................................................ 13

*Huan New Materials High Tech, Inc.* v. *International Trade Comm'n*,
161 F.3d 1347 (Fed. Cir. 1998) ............................................................................ 4

*Johnson & Johnson-Merck Consumer Pharm. Co.* v. *Rhone-Poulenc Rorer Pharm., Inc.*,
19 F.3d 125 (3d Cir. 1994) .................................................................................. 1

*Merisant Co. v. McNeil Nutritionals, LLC*,
2007 WL 707359 (E.D. Pa. Mar. 2, 2007) ........................................................... 13

*Pharmacia Corp.* v. *GlaxoSmithKline Consumer Healthcare, L.P.*,
292 F.Supp.2d 594 (D.N.J. 2003) ........................................................................ 1

*Pizza Hut, Inc.* v. *Papa John's Int'l, Inc.*,
227 F.3d 489 (5th Cir. 2000) ............................................................................. 10

*Rite-Hite Corp.* v. *Kelley Co.*,
56 F.3d 1538 (Fed. Cir. 1995) ............................................................................. 5

*Sandoz Pharms. Corp. v. Richardson-Vicks, Inc.*,
902 A.2d 222 (3d Cir. 1990) ............................................................................. 10

*Steele v. Ratledge*,
2002 WL 31260990 (Del. Ch. Sept. 20, 2002) ..................................................... 13

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Toro Co. v. Textron,*
499 F. Supp. 241 (D. Del. 1980).................................................................................... 12

*Underwater Devices, Inc.* v. *Morrison-Knudsen Co.,*
717 F.2d 1380 (Fed. Cir. 1983).................................................................................... 6

*Warner-Jenkinson Co.* v. *Hilton Davis Chem. Co.,*
520 U.S. 17 (1997)........................................................................................................ 5

*Zazu Designs v. L'Oreal, S.A.,*
979 F.2d 499 (7th Cir. 1992) .................................................................................. 14-15

## STATUTES

15 U.S.C. § 1125(a) ............................................................................................................ 1

35 U.S.C. § 284.................................................................................................................... 5

35 U.S.C. § 285.................................................................................................................... 5

## OTHER AUTHORITIES

Delaware's Uniform Deceptive Trade Practices Act,
6 Del. C. § 2532(a)......................................................................................................... 1

## NATURE OF THE CASE

This is an action for patent infringement by Plaintiffs Dyson Technology Limited and Dyson, Inc. (collectively, "Dyson") against defendant Maytag Corporation ("Maytag"). Dyson alleges that Maytag sold a vacuum cleaner—the Hoover Fusion—that infringed three Dyson U.S. patents: Patent Nos. 4,826,515 ("'515 patent"); 4,643,748 ("'748 patent"); and 4,853,008 ("'008 patent") (collectively, the "patents-in-suit").[1] Dyson seeks damages for Maytag's willful infringement.

Maytag has asserted counterclaims against Dyson that challenge the truthfulness of virtually every advertising claim Dyson has made since it first entered the U.S. upright vacuum cleaner market in the fall of 2002. Maytag seeks sweeping injunctive relief and enormous and unprecedented damages under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); Delaware's Uniform Deceptive Trade Practices Act, 6 Del. C. § 2532(a); and Delaware's common law of unfair competition. Indeed, the damages sought by Maytag exceed by nearly ten times the largest damages award ever obtained in a Lanham Act case.

Maytag listed 33 allegedly false Dyson claims in its counterclaims. Maytag listed 19 additional claims in its pre-trial disclosures, for a total of 52 claims that it apparently intends to challenge at trial, a panoply of claims presented (or not) in various Dyson print and television ads disseminated at various times over the last five years. Maytag persistently has refused to identify the advertisements in which the challenged claims appear, making a determination of whether each of the claims are literally or impliedly false in the context in which they appear next to impossible.[2]

---

[1] Dyson's Complaint also alleged infringement of U.S. Patent No. 5,858,038, but Dyson has withdrawn that claim.
[2] Maytag's claims are legally insufficient. *See Johnson & Johnson-Merck Consumer Pharm. Co.* v. *Rhone-Poulenc Rorer Pharm., Inc.*, 19 F.3d 125, 129 (3d Cir. 1994) ("A determination of literal falsity rests on an analysis of the message in context."); *Pharmacia Corp.* v. *GlaxoSmithKline Consumer Healthcare,* L.P., 292 F.Supp.2d 594, 599 (D.N.J. 2003).

## DYSON'S PATENT INFRINGEMENT CLAIM

### I.    BACKGROUND:  THE PATENTED TECHNOLOGY AT ISSUE

This case concerns cyclonic vacuum cleaner technology.  Unlike traditional vacuum cleaners that depend on bags or filters, a cyclonic vacuum cleaner separates dirt from air through the use of centrifugal force, thus avoiding the clogging and attendant loss of suction inherent in bag- or filter-based vacuum cleaners.  The early version of the cyclonic vacuum created by James Dyson consisted of an outer, relatively low-speed cyclone formed by a cylinder-shaped container and an inner, high-speed cyclone with a conical shape.[3]  Dirty air flows tangentially into the outer container and spins around the container creating centrifugal force that separates the larger particles of dust and debris from the air and deposits them at the bottom of the container.  The air then flows into the cone-shaped inner cyclone, where the velocity of the air increases as it spins down the cone.  This increased velocity creates sufficient centrifugal force to separate extremely fine particles from the air, which are then deposited in a separate dirt receiving and collecting chamber at the bottom of the cone-shaped cyclone.  When the air flow reaches the bottom of the container below the cyclone, it then travels back up through the center of the inner cyclone to an air outlet.

The patents-in-suit relate to improvements to James Dyson's early cyclonic technology.

- **The '748 patent.**  The '748 patent claims a disc that surrounds the inner cyclone and is designed, among other things, to prevent long strands in the dirt, such as hair, from clogging the air outlet and to retain those strands in the outer container.

- **The '008 Patent.**  The '008 patent claims a combined disc and shroud around the inner cyclone.  The shroud is perforated to screen larger lightweight fibrous material from escaping the outer container.  The disc, which is located below the shroud, helps to prevent some of the dirt from flowing into the air inlet to the inner cyclone and thus leaving the outer container.

- **The '515 Patent.**  The '515 patent claims a circular dirt collection chamber below the inner cyclone with a diameter at the end furthest from the cone opening of the

---

[3]  More recently, Dyson has developed and marketed cyclonic vacuum cleaners that include arrays of multiple smaller inner cyclones.

bottom of the inner cyclone that is a minimum of three times the diameter of that opening. This improvement addresses the problem of dirt becoming re-entrained in the airflow leaving the inner cyclone or not settling at the bottom of the dirt collection chamber.

## II.    CONTESTED FACTS THE EVIDENCE AT TRIAL WILL ESTABLISH

### A.    The Infringing Product

In May 2005, Maytag began selling the Hoover Fusion vacuum cleaner in Wal-Mart stores in the United States. The evidence will show that Maytag designed this product to replicate the cyclonic technology developed by James Dyson in an effort to "ride the coattails" of Dyson while "devalu[ing]" Dyson's market advantage.[4] In fact, the evidence will show that Maytag and its development partner, TEK, copied James Dyson's original expired patents in designing the Hoover Fusion. As Maytag and TEK developed the product, however, they encountered the same performance problems that the patents-in-suit were intended to address. They therefore utilized Dyson's more recent patented improvements—an inner dirt collection chamber with a diameter three times the diameter of the cone opening and a combined disc and shroud—in an attempt to turn the old technology into a marketable product. Maytag was aware of the Dyson patents, but, faced with enormous pressure to meet deadlines with Wal-Mart, went ahead with sales of the infringing product. The evidence will show that the contribution of Maytag's patent attorney to the project was his willingness to take risks.

### B.    Infringement of the Patents-in-Suit

Maytag's expert identifies 14 elements in the asserted claims of the patents-in-suit that Maytag contends are not met in the Fusion. Maytag does not contest the remaining elements. As Dyson's expert, Gareth Jones, an engineer with years of experience designing cyclonic vacuum cleaners, will testify, each of the contested elements is met in the Fusion.

---

[4] *See* Pl. Ex. 31 (MAY 002973-75).

*First*, the Hoover Fusion contains the improvements described in the patents-in-suit. The diameter of the dirt collection chamber in the Hoover Fusion is 3.1 times the diameter of the cone opening and thus exploits the improvement claimed in the '515 patent. Maytag's expert argues that the "bottom" of the Fusion's dirt collection chamber—and thus the location at which the measurement should be taken—is the plastic portion of the chamber, and not the rubber extension glued to it. But even if that were appropriately considered the bottom of the chamber, Dyson's expert found that the diameter of the chamber measured from this point was 2.97 times the diameter of the cone opening, which meets the "3 times" requirement of the claim.[5]

Similarly, the Fusion contains a disc (as claimed in the '748 patent) that is combined with a shroud (as claimed in the '008 patent). Maytag contends that these structures are not located where the patents say they are, but these arguments are inappropriate attempts to narrow the plain language of the claims. ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

██████████████████████

*Second*, Maytag contends that certain elements—a "dirty air inlet," "at an upper portion of the container," "oriented for supplying dirt laden air into the container tangentially," with "an air outlet from the container," a "cyclone air inlet," and a "means for generating airflow"—relating to

---

[5] *See San Huan New Materials High Tech, Inc.* v. *International Trade Comm'n*, 161 F.3d 1347, 1361 (Fed. Cir. 1998) (permitting rounding to the nearest integer to determine whether claim limit met).

████████████████████████████████████

the basic design of cyclonic vacuum cleaners are not met.  These arguments are belied by a visual inspection of the Fusion and the testimony of Dyson's expert.

## III.    DYSON'S THEORY OF LIABILITY

Each element of the asserted claims is present in the accused product.  Maytag has abandoned its invalidity and unenforceability defenses.  Accordingly, because there is no intent element to infringement, proof that the Hoover Fusion includes the disputed elements either literally or under the doctrine of equivalents will establish Maytag's liability for patent infringement and Dyson's entitlement to damages.  *See Warner-Jenkinson Co.* v. *Hilton Davis Chem. Co.*, 520 U.S. 17, 35 (1997).

## IV.    DYSON'S THEORY OF DAMAGES

### A.    Reasonable Royalty

The only issue for trial is the appropriate royalty rate for these infringing sales.  Employing the accepted "hypothetical negotiation" model (*see, e.g., Rite-Hite Corp.* v. *Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (*en banc*)),

### B.    Enhanced Damages for Willful Infringement

Dyson seeks treble damages and its reasonable attorney's fees and expenses pursuant to 35 U.S.C. §§ 284, 285 based on Maytag's willful infringement.  Where an infringer knew of a patent and lacked a good faith belief that the patent was invalid or not infringed, willful infringement is

established. *See Underwater Devices, Inc.* v. *Morrison-Knudsen Co.*, 717 F.2d 1380, 1389-90 (Fed. Cir. 1983).

There is no dispute that Maytag knew of the three Dyson patents-in-suit. The evidence will show that Maytag went ahead with the manufacture and sale of the Fusion even though it recognized that there was significant risk that the product would be found to infringe Dyson's patents. ███████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████ Under these circumstances, the opinions of Maytag's in-house lawyer are insufficient to defeat a willfulness finding based on the other evidence. *See Underwater Devices,* 717 F.2d at 1389-90 (circumstances in which opinion is given is a factor the jury may consider); *see also Golden Blount, Inc.* v. *Robert H. Peterson Co.*, 438 F.3d 1354, 1367-70 (Fed. Cir. 2006) (incompetent opinion supports willfulness finding).

## MAYTAG'S FALSE ADVERTISING COUNTERCLAIM

### I.    CONTESTED FACTS THE EVIDENCE AT TRIAL WILL ESTABLISH

The false advertising counterclaim asserted by Maytag in this case is an example of a competitor bested in the marketplace, bringing suit for losses that, contrary to its allegations, are attributable solely to its missteps in managing its business and marketing its products.

An important feature of Dyson's marketing campaign in the U.S. is to describe Dyson's "No Loss of Suction" feature. This revolutionary technological advance means that Dyson vacuum cleaners provide constant suction as consumers use the product.

Dyson combined this technological breakthrough with an eye-catching design, including colorful and innovative product styling, and thoughtful features, such as an integral hose and easier-

to-empty bagless dust bin, that make its vacuums more convenient and more fun to use. The product quickly became a sensation in the U.S., creating a popular "buzz" unlike any other vacuum cleaner before it. All of these factors have been important contributors to Dyson's success.

At the time it filed suit, Maytag manufactured and sold upright vacuum cleaners under its own name, as well as under the Hoover brand name. When Dyson entered the upright vacuum cleaner market in the United States, Hoover was the leader in mid-range and premium vacuum cleaners, as the premium market was defined at that time. Its flagship product was the Hoover WindTunnel, which, while unchallenged in its product category, was based on a platform that was five years old. Like other traditional vacuum cleaners, the Hoover WindTunnel relied on traditional barrier filtration using bags or filters as the primary means of separating dirt from air.

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

## II.    DYSON'S THEORY OF DEFENSE

### A.    Dyson's Claims are Neither False Nor Misleading

Given the sheer number of challenged claims, Dyson addresses the claims by category.

1.    <u>Claims Relating to Constant Suction</u>: [REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

---

[REDACTED]

2.    <u>Claims Relating to Suction Power</u>: ████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████

3.    <u>Claims About Reliance on Filters and No Clogging</u>: ████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████

4.    <u>Claims About Dyson Cleaners' Pick-Up of "Larger Dirt and Debris"</u>: ████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████

5.    <u>Implied Claims of Cleaning Superiority</u>: ████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████

Maytag seeks to prove the presence of this implied claim of cleaning superiority without having conducted any consumer survey.[10] ████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████

█████████████████████████████████████████████████ Phrases such as "cleans your house better" are classic non-actionable puffery. *Pizza Hut, Inc.* v. *Papa John's Int'l, Inc.*, 227 F.3d 489, 496-99 (5th Cir. 2000) ("Better Ingredients" and "Better Pizza" non-actionable puffery).

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████

6.    <u>Implied Claims by Brand Advertising</u>: ███████████████████████████

████████████████████████████████████████████████████████████

---

[10] Maytag's claims should thus fail as a matter of law. *Castrol, Inc.* v. *Pennzoil Co.*, 987 F.2d 939, 951 (3d Cir. 1993) ("The only exception to the burden to prove that an advertisement is misleading through consumer survey evidence is if the advertisement is 'literally false.'") (citing *Sandoz Pharms. Corp.* v. *Richardson-Vicks, Inc.*, 902 F.2d 222, 228 (3d Cir. 1990).

███████████████████████████████████████████████████

████████████████████████████████████████

7.     <u>Claims that Other Vacuums Do Not Work Properly</u>: ███████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████

8.     ███████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████

9.     ███████████████████████████████████████████████████

███████████████████████████████████████████████

10.     <u>Claims that Dyson Dirt Cups are Hygienic</u>: ████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████

11.     <u>Claims that Dyson Vacuums are Made of "Liquid Steel"</u>: ███████████████

███████████████████████████████████████████████████

█████████████████████████████████████

12.     <u>Claims that Dyson Invented the Integral Hose and Cyclone Technology</u>: ██████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████

13.    <u>Claims that Hoover was Found Liable for Infringing on Dyson's Patent:</u> ████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████

**B.    Maytag Fails to Establish the Remaining Elements of a Lanham Act Violation**

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████

**C.    Maytag's Claims Are Barred by The Equitable Doctrines of Laches, Waiver, Estoppel, Acquiescence and Unclean Hands**

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

---

[11]  Maytag's claims under the Delaware Deceptive Trade Practices Act and the common law of unfair competition add little to its Counterclaims.  The protections afforded under the Delaware Deceptive Trade Practices Act are no greater than those afforded by the Lanham Act.  *Toro Co. v. Textron*, 499 F. Supp. 241, 249, n. 17 (D. Del. 1980).  The Delaware Deceptive Trade Practices Act also codifies the common law of unfair competition and is not a separate cause of action.  *Grand Ventures, Inc. v. Whaley*, 632 A.2d 63, 67-68 (Del. 1993).  As such, if Dyson is not liable under the Lanham Act, it also is not liable under either the Delaware Deceptive Trade Practices Act or the common law of unfair competition.  And if Dyson is liable under the Lanham Act, Maytag cannot recover more than once for the same injury.

███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
████████████████████████████████████
         ████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
█████████████████████████████████████████

## III.    AVAILABLE DAMAGES IN THE EVENT LIABILITY IS ESTABLISHED

███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
██████████████████████████████████████

---

[12] *See., e.g., Merisant Co. v. McNeil Nutritionals, LLC,* 2007 WL 707359 at *10-12; (E.D. Pa. Mar. 2, 2007); *Fike v. Ruger,* 752 A.2d 112, 114 (Del. 2000); *Steele v. Ratledge,* 2002 WL 31260990 at *3 (Del. Ch. Sept. 20, 2002); *Conopco, Inc. v. Campbell Soup Co.,* 95 F.3d 187, 192 (2d Cir. 1996).
[13] *Haagen-Dazs, Inc. v. Frusen Gladje, Inc.,* 493 F. Supp. 73, 76 (S.D.N.Y. 1980); *Merisant Co. v. McNeil Nutritionals, LLC,* 2007 WL 707359 (E.D. Pa. 2007) *Emco, Inc. v. Obst,* 2004 U.S. Dist Lexis 12118 (C.D. Cal. May 7, 2004).
[14]  Maytag now purports to have sold to Techtronics Industries, a Chinese company, its right to recover on its false advertising claims together, with its floorcare assets. Techtronic's representative testified in deposition that, in order to induce Techtronics to accept comparatively small liabilities associated with Dyson's patent claim, Maytag agreed to throw in its false advertising claim it now



claims is worth over $600 million.

[15]

Accordingly, it cannot establish the right to recover damages for any other allegedly false or misleading claim. *See, e.g.*, *Conte Bros. Auto. v. Quaker State-Slick 50*, 992 F. Supp. 709, 710 (D.N.J. 1998).

[16] *Callaway v. Slazenger*, 384 F. Supp. 2d 735, 740-41 (D. Del. 2005); *Zazu Designs v. L'Oreal*,

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

## ANTICIPATED MOTIONS FOR A DIRECTED VERDICT

Dyson anticipates moving for judgment as a matter of law on the following: (1) infringement of the patents-in-suit; (2) no evidence that any of Dyson's claims are literally false or misleading; (3) no evidence that any literally false or misleading claims are likely to influence a consumer's purchasing decision; (4) in the case of misleading claims, no evidence that consumers were in fact actually deceived; (5) no evidence that any false or misleading claim caused Maytag any damages; (6) no evidence that Maytag will suffer future harm or need to perform corrective advertising; and (7) no evidence that Dyson acted willfully even if Maytag has presented sufficient evidence permitting a reasonable juror to find that it falsely advertised.

Respectfully submitted,

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____
John W. Shaw (No. 3362)
C. Barr Flinn (No. 4092)
Adam W. Poff (No. 3990)
The Brandywine Building, 1000 West Street, 17th Floor
Wilmington, Delaware  19801, (302) 571-6600

*Attorneys for Plaintiffs*

Dated:  April 11, 2007

---

*S.A.*, 979 F.2d 499, 506, 509 (7th Cir. 1992); *Big O Tire Dealers, Inc. v. Goodyear*, 561 F.2d 1365, 1375 (10th Cir. 1977).

**CERTIFICATE OF SERVICE**

I, Adam W. Poff, hereby certify that on April 12, 2007, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Francis DiGiovanni, Esquire
> James D. Heisman, Esquire
> CONNOLLY BOVE LODGE & HUTZ LLP
> The Nemours Building – 8th Floor
> 1007 N. Orange Street
> Wilmington, Delaware 19801

I further certify that on April 12, 2007, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following in the manner indicated:

> **BY E-MAIL**
>
> Ray L. Weber, Esquire
> RENNER, KENNER, GREIVE, BOBAK,
>    TAYLOR & WEBER
> 400 First National Tower
> Akron, OH 44308
>
> Kimball R. Anderson, Esquire
> WINSTON & STRAWN LLP
> 35 W. Wacker Drive
> Chicago, IL  60601-9703

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ *Adam W. Poff*
C. Barr Flinn  (No. 4092)
John W. Shaw (No. 3362)
Adam W. Poff (No. 3990)
Chad S.C. Stover (No. 4919)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801
(302) 571-6600
apoff@ycst.com
*Attorneys for Dyson Technology Limited*
 *and Dyson, Inc.*