IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DYSON TECHNOLOGY LIMITED and DYSON, INC., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 05-434-GMS |
| MAYTAG CORPORATION, | ) ) | |
| Defendant. | ) ) ) | |

**PLAINTIFFS' MOTION *IN LIMINE* NO. 1
TO PRECLUDE MAYTAG FROM IMPROPERLY EXTENDING
THE SCOPE OF THE COURT'S CONSTRUCTION OF
"MEANS FOR GENERATING AN AIRFLOW"
AND OPENING BRIEF IN SUPPORT THEREOF**

OF COUNSEL:
Garrard R. Beeney
Richard C. Pepperman, II
James T. Williams
Adam R. Brebner
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
(212) 558-4000


Steven F. Reich
Jeffrey S. Edelstein
John F. Libby
Tamar Feder
Christopher C. Cole
MANATT, PHELPS & PHILLIPS, LLP
7 Times Square
New York, New York 10036
(212) 790-4500


Dated: April 16, 2007

C. Barr Flinn (No. 4092)
John W. Shaw (No. 3362)
Monté T. Squire (No. 4764)
YOUNG CONAWAY STARGATT &
TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
msquire@ycst.com

*Attorneys for Plaintiffs Dyson Technology
Limited and Dyson, Inc.*

# TABLE OF CONTENTS

*Page*

SUMMARY OF ARGUMENT ...........................................................................................1

STATEMENT OF FACTS .............................................................................................1

ARGUMENT....................................................................................................................4

CONCLUSION.................................................................................................................5

063753.1002

# TABLE OF AUTHORITIES

*Page(s)*

## CASES

*Acromed Corp.* v. *Sofamor Danek Group, Inc.,*
253 F.3d 1371 (Fed. Cir. 2001)..................................................................................................4

## FEDERAL STATUTES

35 U.S.C. 112, ¶ 6..................................................................................................................4

DB01:2368067.1                    063753.1002

**TABLE OF EXHIBITS**

*Exhibit*

Joint Claim Construction Charts (D.I. 70) ........................................................................A

Excerpts from Defendant Maytag Corporation's Opening Claim Construction Brief
(D.I. 77).............................................................................................................................B

Excerpts from Defendant Maytag Corporation's Response to
Plaintiffs' Opening Claim Construction Brief (D.I. 81) ..........................................C

Excerpts from Plaintiffs' Response to Maytag's Opening Claim Construction Brief
(D.I. 79) ..........................................................................................................................D

Excerpts from Transcript of July 11, 2006 Markman Hearing.................................E

Excerpts from Expert Report of Charles D. DeGraff .............................................F

063753.1002

## SUMMARY OF ARGUMENT

A year ago, when the parties briefed and argued claim construction, defendant Maytag Corporation ("Maytag") deliberately limited its submissions regarding the claim term "means for generating an airflow" to a single patent, U.S. patent No. 4,826,515 (the "'515"). Although the same means-plus-function claim term is found in the other two patents-in-suit (U.S. Patent Nos. 4,643,748 (the "'748") and 4,853,008 (the "'008")), the specifications of those other patents do not provide for the structure advocated by Maytag, and ultimately adopted by the Court, with respect to the '515. Despite this undisputed record, in the report of its technical expert and in its pretrial submissions to this Court, Maytag now takes the position that the Court's construction of "means for generating an airflow" applies to all three patents-in-suit. This position finds no support in the patents or the record. The Court should clarify that its construction of this term applies only to the '515 patent.

## STATEMENT OF FACTS

Each of the asserted claims of the three patents-in-suit includes the means-plus-function claim element "means for generating an airflow." (*See* '748, col. 6:39-40; '515, col. 12:5; '008, col. 4:23, 6:31-32.) The corresponding structure described in the specifications of the patents is a "fan unit" ('748, col. 3:41-42; '008, col. 3:40) or "motor driven fan unit," ('515, col. 4:53). The '748 and '008 patents are silent as to the location of this fan unit relative to the cyclone container, although Figure 1 of the '008 patent shows the fan unit below the container. In contrast, the '515 specification refers to the fan unit as "above the inner [cyclone] unit" ('515, col. 6:50-51), and the drawings of the preferred embodiments of the '515 depict the fan unit above the cyclone (*see* Figs. 1 (13), 3 (54), 5 (121)).

In briefing claim construction, Maytag argued that the location of the fan unit shown in the specification of the '515 patent constituted part of the corresponding structure for the

"generating an airflow" function. This argument, however, was expressly limited to the '515. The Joint Claim Construction Charts (D.I. 70; 76) agreed to and submitted by the parties and Maytag's Claim Construction briefing (D.I. 77; 81) make unmistakably clear that the parties' dispute regarding this term was limited to its use in the '515 patent. (*See* Joint Claim Construction Charts (attached hereto as Ex. A) at 5; Maytag's Opening Claim Construction Brief (excerpts attached hereto as Ex. B) at 17-18; Maytag's Response to Plaintiffs' Opening Claim Construction Brief (excerpts attached hereto as Ex. C) at 7 .)

Limiting its argument to the '515 was not an oversight on Maytag's part. Rather, it was a deliberate choice going to the heart of Maytag's claim construction argument. Although the parties agreed that the corresponding structure of the means-plus-function term included at least a "motor driven fan unit," Maytag contended, and ultimately the Court agreed, that the structure in the '515 also included the position of the fan unit "vertically above and immediately adjacent the cyclone outlet port." The basis for Maytag's argument was that "[a]ll of the embodiments of a 'means for generating airflow' *presented in the '515 patent* include a motor driven fan unit positioned vertically above and immediately adjacent the cyclone outlet port." (Ex. B at 17 (emphasis added).) Because the specifications of the '748 and '008 patents do not disclose or suggest the fan unit position asserted by Maytag—indeed, the drawings in the '008 show a different position—Maytag carefully limited its submissions to the '515 patent.

In its response to Maytag's claim construction brief and at the Markman hearing, Dyson noted that Maytag's argument with respect to the '515 made little sense given that the same claim term appears in the '748 and '008 patents without any suggestion of the additional structure claimed by Maytag. Dyson specifically pointed out that "Maytag does not claim that [the '748 and '008] patents require that the motor driven fan unit be positioned vertically above

and immediately adjacent to the cyclone outlet port." (Dyson's Response to Maytag's Opening

Claim Construction Brief (D.I. 79) (excerpts attached hereto as Ex. D), at 9-10; *see also* July 11,

2006 Markman Hearing Tr. (excerpts attached hereto as Ex. E), at 34-35 .) In response, Maytag

did not assert that its proposed construction applied to patents other than the '515; rather,

Maytag's counsel argued:

> I would also make as one other comment that, we have four patents
> in issue here. We have to construe the claims of each of the
> patents with respect to that patent and that patent alone. It is
> certainly improper to make reference to Patent A when you are
> construing a means-plus-function of Patent B.

(Ex. E at 48:1-6.)

In its Order construing the 16 claim terms submitted by the parties for construction, the

Court adopted Maytag's proposed construction of the corresponding structure of the "means for

generating an airflow" term as "'a motor driven fan unit positioned vertically above and

immediately adjacent to the cyclone outlet port', and all equivalents thereof." (D.I. 105 ¶ 10.)

The Order does not state whether this construction also applies to the '748 and '008 patents. The

Order prefaces its construction of the disputed claim terms, however, with the statement that the

terms are being construed "as used in the asserted claims of [the patents-in-suit]." (*Id.* at 1.)

Although such a reading would not make sense in view of the parties' prior briefing, the Order

thus arguably can be read as requiring that the corresponding structure of the "means for

generating an airflow" element determined by the Court applies to the '748 and '008 patents as

well.

Maytag cannot dispute that it never sought such a construction for the term's use in the

'748 and '008 patents. Nor can Maytag argue that such a construction finds support in those

patents. Nevertheless, Maytag apparently intends to argue at trial that the claims of those patents

are not infringed by improperly applying the Court's construction of "means for generating an

-3-

airflow" in the '515 to the '748 and '008 patents. (*See* Joint Proposed Final Pretrial Order, Schedule 2, ¶ 2(h); *see also* Expert Report of Charles DeGraff (excerpts attached hereto as Ex. F), at 14-15, 18.) Dyson therefore seeks clarification of this Court's claim construction order.

## ARGUMENT

Maytag's attempted application of the Court's construction of the term "means for generating an airflow" to the claims of the '748 and '008 patents is improper.

*First,* the parties did not submit the "means for generating an airflow" term as used in the '748 and '008 patents to the Court for construction. Rather, the parties' Joint Claim Construction Charts, four claim construction briefs, and argument at the Markman hearing show that Maytag expressly limited its proposed construction of the term to the '515. Indeed, Maytag argued that it was improper to consider the other patents in construing this means-plus-function term as used in the '515.

*Second,* there is absolutely no support in the specifications or drawings of the '748 and '008 patents for the additional structure argued by Maytag and adopted by the Court with respect to the '515. The disclosed structures in the '748 and '008 patents do not include any suggestion at all that the position of the "motor driven fan unit" is "vertically above and immediately adjacent to the cyclone outlet port." To the contrary, the drawings in the '008 patent put the fan unit below the cyclone container. (*See* '008 patent Fig. 1 (19).) Absent any hint of the additional structure asserted by Maytag with respect to the '515 in the specifications of the '748 and '008 patents, the Court could not have intended to require this structure to apply to those other patents. *See* 35 U.S.C. 112, ¶ 6 (means-plus-function "claim shall be construed to cover the corresponding structure . . . *described in the specification* and equivalents thereof") (emphasis added); *see also, e.g., Acromed Corp.* v. *Sofamor Danek Group, Inc.*, 253 F.3d 1371, 1382 (Fed. Cir. 2001) ("In construing a means-plus-function limitation, the court must identify

-4-

. . . the corresponding structure in the written description for performing that function."). Indeed, Maytag's successful claim construction argument was premised on disregarding the use of the same term in, and specifications of, the '748 and '008 patents.

*Third,* the Order construing the claims contains no suggestion that the Court intended to go beyond the parties' submissions to extend the scope of its construction to the '748 and '008 patents. There is simply no principled basis for Maytag's position. The Court thus should clarify that its construction of "means for generating an airflow" is limited to the '515 patent.

## CONCLUSION

For the foregoing reasons, Dyson's motion *in limine* should be granted and the Court should clarify that its construction of the claim term "means for generating an airflow" is limited to the '515 patent.

Respectfully submitted,

YOUNG CONAWAY STARGATT & TAYLOR, LLP

C. Barr Flinn (No. 4092)
John W. Shaw (No. 3362)
Monté T. Squire
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
msquire@ycst.com

*Attorneys for Plaintiffs*

Dated: April 16, 2007

## CERTIFICATE OF SERVICE

I, John W. Shaw, hereby certify that on April 16, 2007, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Francis DiGiovanni, Esquire
> James D. Heisman, Esquire
> CONNOLLY BOVE LODGE & HUTZ LLP
> The Nemours Building – 8th Floor
> 1007 N. Orange Street
> Wilmington, DE 19801

I further certify that on April 16, 2007, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following in the manner indicated:

> **BY E-MAIL ON APRIL 16, 2007 AND**
> **FEDERAL EXPRESS ON APRIL 17, 2007**
>
> Ray L. Weber, Esquire
> Laura J. Gentilcore, Esquire
> RENNER, KENNER, GREIVE, BOBAK,
>    TAYLOR & WEBER
> 400 First National Tower
> Akron, OH 44308
>
> Kimball R. Anderson, Esquire
> Stephen P. Durchslag, Esquire
> WINSTON & STRAWN LLP
> 35 W. Wacker Drive
> Chicago, IL 60601-9703

> YOUNG CONAWAY STARGATT & TAYLOR, LLP
>
> C. Barr Flinn (No. 4092)
> John W. Shaw (No. 3362)
> The Brandywine Building
> 1000 West Street, 17th Floor
> Wilmington, Delaware 19801
> (302) 571-6600
> jshaw@ycst.com
> *Attorneys for Dyson Technology Limited and Dyson, Inc.*