UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DYSON TECHNOLOGY LIMITED )
and DYSON, INC., )
                         Plaintiffs, )
                         )   Civil Action No. 05-434 GMS
v. )
                         )       REDACTED
MAYTAG CORPORATION, )       VERSION
                         )
                    Defendant. )

## AFFIDAVIT OF CHRIS STATHOPOULOS IN SUPPORT OF DEFENDANT HOOVER, INC.'S MOTION *IN LIMINE* TO BAR EVIDENCE RELATING TO HOOVER ADVERTISING AND SUBSTANTIAITON

I, CHRIS STATHOPOULOS, being duly sworn, hereby depose and say:

1.     I am an attorney for Defendant/Counterclaim Plaintiff Hoover, Inc. ("Hoover"), in the above matter. I have personal knowledge of the facts set forth in this affidavit, which is filed in support of Hoover's Motion *in Limine* to Bar Evidence Relating to Hoover Advertising and Substantiation.

2.     Attached hereto as Exhibit A is a true and correct copy of the December 5, 2006 Joint Discovery Teleconference Letter filed by the parties.

3.     Attached hereto as Exhibit B is a true and correct copy of the transcript of the December 7, 2006 Discovery Teleconference at 46-52.

4.     Attached hereto as Exhibit C is a true and correct copy of the Court's Standing Order entitled "Discovery Dispute Resolution," at http://www.ded.uscourts.gov/GMSmain.htm.

5.     Attached hereto as Exhibit D is a true and correct copy of the transcript of the February 2, 2007 Discovery Teleconference at 3-5.

6.     Attached hereto as Exhibit E is a true and correct copy of the February 16, 2007 Joint Discovery Teleconference Letter filed by both parties at 1.

7.     Attached hereto as Exhibit F is a true and correct copy of the transcript of the February 20-21, 2007 Discovery Teleconference at 73-79.

8.    Attached hereto as Exhibit G is a true and correct copy of Dyson's Statement of Contested Law and Facts ¶¶ 191-195.

9.    Attached hereto as Exhibit H is a true and correct copy of referenced excerpts of the report of Itamar Simonson.

10.    Attached hereto as Exhibit I is a true and correct copy of referenced excerpts of the report of Victor Polansky.


FURTHER AFFIANT SAYETH NAUGHT

Chris Stathopoulos

County of Cook

State of Illinois

Sworn to and subscribed in my presence this 16 day of April 2007

Notary Public.

SEAL

"OFFICIAL SEAL"
PEGGY A. HUFFORD
NOTARY PUBLIC STATE OF ILLINOIS
My Commission Expires 06/16/2008

2

# Exhibit A

# CONNOLLY BOVE LODGE & HUTZ LLP
## ATTORNEYS AT LAW

The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington DE 19899
TEL (302) 658 9141
FAX (302) 658 5614

Francis DiGiovanni
Partner

TEL (302) 888-6316
FAX (302) 658-5614
EMAIL fdigiovanni@cblh.com
REPLY TO Wilmington Office

1990 M Street, NW, Suite 800
Washington DC 20036
TEL (202) 331 7111
FAX (202) 293 6229

WEB www.cblh.com

December 5, 2006

**BY ELECTRONIC FILING**

The Honorable Gregory M. Sleet
United States District Court
  for the District of Delaware
844 N. King Street
Wilmington, Delaware 19801

> Re:    *Dyson Tech. Ltd. et al. v. Maytag Corp.*, Civ. Nos. 05-434-GMS and 06-654-GMS

Dear Judge Sleet:

In anticipation of the discovery teleconference scheduled for December 7, 2006, at 11 a.m. EST, the parties jointly submit the below items to be presented to the Court. The parties respectfully suggest that they alternate presentation of their issues at the teleconference.

A.   Defendant/Counterclaimant's Issues (issues relate to Case 05-434-GMS unless otherwise indicated)

    1.   Plaintiffs' Failure to Produce Documents on the Following Topics as Requested in Defendant's Requests for the Production of Documents:

        a.   Documents in the Control or Custody of James Dyson

        b.   Illegible or Incomplete Consumer Complaint Documents

        c.   Communications with Third Parties, Including but not Limited to Documents Relating to Sears, Roebuck and Co. Sales Today Magazine and Best Buy's Toolkit Internal Web Site

        d.   Communications with Third Parties, Including but not Limited to Communications with Sears Regarding Sears' Disbelief of the Validity of Any of Plaintiffs' Advertising Claims

        e.   Documents that Dyson had Unilaterally Redacted

        f.   Plaintiffs' Ownership and Control

        g.   Plaintiffs' Audited Financials

        h.   Plaintiffs' Prior False Advertising Disputes in the U.S. and Elsewhere

    i.   Data Relating to the Return, Repair, Replacement or Refurbishing of Plaintiffs' Vacuums

    j.   Home-use and Field Testing of Plaintiffs' Vacuums

    k.   Plaintiffs' Vacuum Cleaners in Development

    l.   Floor Surfaces Consumers Buy Vacuums to Clean

    m.  Plaintiffs' Guidelines for Interaction with Advertising, Marketing and Public Relations Firms

    n.   Internal Correspondence Regarding Document Retention in Anticipation of this Litigation

2.    Plaintiffs' Failure to Respond to Defendant's Second Set of Interrogatories

3.    Extension of Deadline for Serving Experts' Reports to Thirty Days After Completion of Final Fact-Witness Deposition

5.    Hearing Date for Defendant's Motion for Temporary Restraining Order and Preliminary Injunction

6.    Discovery and Briefing Schedule for Plaintiff's Motion for a Preliminary Injunction in Case No. 06-654-GMS

B.    Plaintiff/Counterclaim Defendant's Issues:

    1.    Discovery Relating to Maytag's No Loss of Suction Claim

    2.    Scope of Waiver of Attorney-Client Privilege in Defense of Willful Infringement

    3.    Documents Relating to Financials; Customer Repairs; and Testing

    4.    Deposition Conduct of Counsel for Maytag

    5.    Dyson's Amended 30(b)(6) Notice

    6.    Issuance of a Third-party Document Subpoena after the Close of Written Discovery

    7.    Defendant's Interrogatory Responses.

Respectfully submitted,

Francis DiGiovanni

cc:    Clerk of the Court (by electronic filing)
C. Barr Flinn, Esq.
John Shaw, Esq.
Kimball R. Anderson, Esq.
Stephen P. Durchslag, Esq.
Anthony DiSarro, Esq.
Ronald Y. Rothstein, Esq.

Ray L. Weber, Esq.
Keith McKenna, Esq.
Richard C. Pepperman II, Esq.
Steven F. Reich, Esq.

_____

**Exhibit B**

1

```
 1              IN THE UNITED STATES DISTRICT COURT

 2              IN AND FOR THE DISTRICT OF DELAWARE

 3                         -  -  -

 4   DYSON TECHNOLOGY LIMITED      :       Civil Action
     and DYSON, INC.,             :
 5                                 :
                   Plaintiffs,     :
 6                                 :
              v.                   :
 7                                 :
     MAYTAG CORPORATION,           :
 8                                 :
                   Defendant.      :       No. 05-434 (GMS)
 9
                           -  -  -
10
                       Wilmington, Delaware
11                   Thursday, December 7, 2006
                            2:00 p.m.
12                      Telephone Conference

13                         -  -  -

14   BEFORE:  HONORABLE GREGORY M. SLEET, U.S.D.C.J.

15   APPEARANCES:

16              JOHN W. SHAW, ESQ., and
                C. BARR FLINN, ESQ.
17              Young Conaway Stargatt & Taylor, LLP
                     -and-
18              RICHARD C. PEPPERMAN, II, ESQ., and
                Sullivan & Cromwell LLP
19              (New York, N.Y.)
                     -and-
20              STEVEN F. REICH, ESQ.,
                CHRISTOPHER COLE, ESQ. (Washington, D.C.), and
21              TAMAR FEDER, ESQ. (Los Angeles, CA)
                Manatt, Phelps & Phillips, LLP
22              (New York, N.Y.)

23                         Counsel for Plaintiffs

24

25
```

**2**

1
2  APPEARANCES CONTINUED:
3       FRANCIS DIGIOVANNI, ESQ.
        Connolly Bove Lodge & Hutz LLP
            -and-
4  STEPHEN DURCHSLAG, ESQ.,
   RONALD Y. ROTHSTEIN, ESQ.,
5  ANTHONY DiSARRO, ESQ. (New York, N.Y.),
   LISA J. PARKER, ESQ., and
6  JOSHUA GOLDBERG, ESQ.
   Winston & Strawn LLP
7  (Chicago, Illinois)
            -and-
8  RAY L. WEBER, ESQ.
   Renner Kenner Greive Bobak Taylor & Weber, LPA
9  (Akron, Ohio)
10          Counsel for Maytag/Hoover
11               - - -
12
13      THE COURT:  Counsel, good morning.  Who is on
14 the line for the plaintiff?
15      MR. SHAW:  Good morning, Your Honor.  John Shaw
16 at Young Conaway for the Dyson parties.  With me from my
17 office is Bart Flinn.  From the Sullivan & Cromwell firm
18 Rick Pepperman, and from the Manatt Phelps firm Steven
19 Reich, Chris Cole, and Tamar Feder.
20      THE COURT:  Good morning.
21      For the defendant.
22      MR. DIGIOVANNI:  Your Honor, Frank DiGiovanni
23 for Maytag.  Also on the line with the Renner Kenner firm is
24 Ray Weber.  And with Winston & Strawn we have Steve
25 Durchslag, Ron Rothstein, Anthony DiSarro, Lisa Parker and

**3**

1  Josh Goldberg.
2       THE COURT:  Good morning.
3       All right.  Have you divided up the issues?
4       MR. DIGIOVANNI:  Yes, Your Honor.  We requested
5  this call initially.  We have divided the issues up.  We
6  sent in the agenda.  I am pleased to report that quite a few
7  of the issues have been resolved.
8       THE COURT:  Let's go down beginning with
9  Paragraph A and check off the issues that have been
10 resolved.
11      MR. DIGIOVANNI:  I will ask Mr. Durchslag to
12 assist, as we go through that.
13      THE COURT:  Okay.
14      MR. DIGIOVANNI:  A.1 lists A.1 grouping of
15 document issues.
16      THE COURT:  They have subparagraphs.  Let's
17 identify which paragraphs are not in issue any longer.
18      MR. DIGIOVANNI:  Lisa and Steve, if you could
19 help?
20      MS. PARKER:  The only issue that remains is
21 home-use and field testing of plaintiffs' vacuums.
22      THE COURT:  Which letter is that?
23      MS. PARKER:  That is letter (J).
24      THE COURT:  That is the only issue remaining?
25      MR. DIGIOVANNI:  I believe also (g).  Does (g)

**4**

1  exist also, Lisa?
2       MS. PARKER:  No, they have agreed just a short
3  time before this call, Frank, to provide the audited
4  financials, as I understand it.
5       MR. DIGIOVANNI:  How about (h)?
6       UNIDENTIFIED SPEAKER:  (H) they have not agreed
7  to my knowledge.  That is the area of advertising in foreign
8  countries.  That remains open.
9       THE COURT:  We have (h) and (j) from Paragraph
10 1.  Is that correct?
11      UNIDENTIFIED SPEAKER:  That's correct.
12      THE COURT:  What about 2?
13      UNIDENTIFIED SPEAKER:  In Paragraph 2, in terms
14 of the failure to respond to second set of interrogatories,
15 go ahead, Lisa.
16      THE COURT:  Is that still an issue?
17      UNIDENTIFIED SPEAKER:  That is still an issue.
18      THE COURT:  3?
19      UNIDENTIFIED SPEAKER:  3 is an open issue.
20      THE COURT:  We seem to have skipped 4.
21      UNIDENTIFIED SPEAKER:  Your Honor, 5, the
22 parties have agreed on an expedited schedule for the
23 temporary restraining order and PI motion.  So briefs will
24 be filed.  As I understand Your Honor's procedure, Your
25 Honor will decide as to whether or not or when there will be

**5**

1  a hearing.
2       So we have nothing to say on Item 5.
3       THE COURT:  6.
4       MR. DIGIOVANNI:  There is an issue, certainly.
5       THE COURT:  And Paragraph B.1.
6       MR. SHAW:  Your Honor, I believe 1 and 2 are
7  still at issue.
8       THE COURT:  The rest have been resolved?
9       MR. SHAW:  4 is still at issue, and a portion of
10 3 may be.  And I need to defer to my colleagues.
11      UNIDENTIFIED SPEAKER:  Actually, 3 has been
12 resolved shortly before this call.
13      THE COURT:  Okay.  5.
14      UNIDENTIFIED SPEAKER:  5 I believe is no longer
15 an issue.  6 is no longer at issue.  And I believe 7 is no
16 longer an issue.
17      UNIDENTIFIED SPEAKER:  7 is an issue as it
18 relates to Defendant's Issue No. 2.
19      THE COURT:  So we have 7 as an issue.
20      Let's start with A.1(h).
21      UNIDENTIFIED SPEAKER:  Did you say (h), Your
22 Honor?
23      THE COURT:  Yes.  A.1(h).
24      UNIDENTIFIED SPEAKER:  Would it be at all
25 possible for us to start with No. A.3?

46

1  we will get together with Mr. Cole and Mr. Reich and be able
2  to agree on a briefing schedule.
3          THE COURT: If you can, you can.
4          Let's go to B.1.
5          MR. COLE: Your Honor, this issue relates to
6  discovery on Maytag's (inaudible) suction claim.
7          As you know, Maytag — this implicates the other
8  case as well. I am not going to — the fusion vacuum
9  cleaner that is being sold is being sold with a very
10 prominent advertising claim that the product offers no loss
11 of suction. Now, earlier during this very call Your Honor
12 heard a significant amount of argument from counsel for
13 Maytag that the way that Dyson substantiates its no loss of
14 suction claim in other countries is directly relevant to
15 this lawsuit, they absolutely needed that discovery.
16         During the course of discovery in this case,
17 however, Your Honor, Maytag's attorneys have resisted
18 producing any evidence or any discovery regarding Maytag's
19 own use of the very claim that they are challenging in our
20 case. We think the way they substantiate that claim is
21 absolutely relevant to their argument that our claim is
22 false. And we are seeking discovery on that. It's
23 absolutely relevant, certainly calculated to lead to the
24 admission of admissible evidence.
25         In this case, I don't see any credible argument

47

1  that it is not relevant to this case.
2          THE COURT: Okay.
3          MR. ROTHSTEIN: Your Honor, on behalf of Maytag,
4  I have a number of remarks to make about that.
5          The first is, Your Honor, this is just an
6  end-run around the discovery process to obtain discovery and
7  get a free pass on discovery in the case that they
8  originally filed in New York and was subsequently
9  transferred to Delaware.
10         The claims at issue in that case are not at
11 issue in the case currently pending before Your Honor and
12 that we are on the call for here today. And any suggestion
13 to the contrary would be disingenuous.
14         Your Honor, Dyson here is just seeking to obtain
15 discovery in that matter to attempt to bolster their
16 preliminary injunction motion that they have got pending
17 before Your Honor. They have not moved on that preliminary
18 injunction. They have never brought that preliminary
19 injunction motion to Your Honor's attention. They have
20 really been hiding their heads in the sand on that issue.
21 And it was not until today, Your Honor, that Maytag forced
22 the issue to come up in front of Your Honor on their
23 preliminary injunction that that issue has even been
24 addressed in front of the Court.
25         And it's really incumbent on them, and we have

48

1  repeatedly stated to Dyson, if you think that those issues
2  are relevant in the present case, then you have got to seek
3  some sort of relief from the Judge. But short of doing
4  that, it is our belief that they are just inappropriately
5  trying to get discovery on another case and just wasting
6  everybody's time trying to establish and carry their burden
7  of proof on a motion for preliminary injunction where we
8  have just gotten over that whole discussion.
9          We haven't even had our Rule 16 conference to
10 establish discovery timelines.
11         My final point, Your Honor, is every time we ask
12 them, why do you need this discovery, their response is,
13 because it's calculated to lead to the discovery of
14 admissible evidence. That's all we get. We don't get any
15 explanation beyond that.
16         And I would just like to say in my final remark
17 that the claims are different and they haven't demonstrated
18 the claims are the same in any respect whatsoever. There is
19 some similar language, but there are some very vast
20 differences.
21         THE COURT: So a request, and I think an
22 appropriate one, that if the information sought is
23 calculated to lead to admissible evidence, then you need to
24 be more specific than just stating that in conclusory
25 language.

49

1          MR. REICH: Judge, let me give you a very
2  concrete reason why we need this evidence. They are going
3  to stand in front of the jury with respect to our no loss of
4  suction claim, and they are going to attempt to undermine
5  the manner in which we substantiate that claim and the tests
6  on which we rely to substantiate that claim. I need to be
7  able to, on our part of the case, or in cross-examination,
8  say to Maytag's witnesses, okay, Mr. Witness, you are
9  critical of how we substantiate our no loss of suction
10 claim. You are critical of the testing that we rely on to
11 substantiate our no loss of suction claim. How do you
12 substantiate your no loss of suction claim and what tests do
13 you rely on to substantiate your no loss of suction claim?
14 And wouldn't it be probative if they substantiated their no
15 loss of suction claim the way we did? And wouldn't it be
16 probative if they relied on the same kind of testing that we
17 did?
18         I very much need that evidence in this case,
19 Your Honor.
20         THE COURT: All right.
21         MR. ROTHSTEIN: Your Honor, several points.
22 First of all, Maytag's advertising is not at issue in this
23 case. And they are not claiming that it is.
24         The second thing is, it's not probative how
25 Maytag substantiates its advertising in the present case

50

1   because it's Dyson's burden to prove that they have got
2   appropriate substantiation for their own advertising claims
3   and that they had that substantiation at the time that they
4   decided to make those advertising claims, which was at least
5   in the United States over four years ago.
6           What Maytag does in its advertising is not
7   probative in any way whatsoever to how Dyson was conducting
8   itself as early as 2002 in the United States.
9           So it's obviously just a ruse to get discovery
10  for their preliminary injunction motion and avoid their
11  responsibilities, their procedural responsibilities that
12  they should go to. They are ultimately going to get that
13  discovery, we have explained that to them in detail, when
14  they get their discovery in the transfer case. But they
15  should wait for that opportunity and not burden the parties
16  with discovery that just has absolutely no bearing on the
17  ultimate issues in this case.
18          MR. REICH: Judge, if they are going to attack
19  the reasonableness of our substantiation, and if they are
20  going to attack the reasonableness of our testing, our
21  position is that a reasonable juror, if a reasonable juror
22  heard that their substantiation methods were the same or
23  similar to ours, or that their testing were the same or
24  similar to ours, that reasonable juror could find that our
25  substantiation of that same claim or our testing of that

51

1   same claim was also reasonable and therefore could refuse to
2   return a verdict in favor of Maytag.
3           THE COURT: There is a no loss of suction claim
4   in the 434 case?
5           UNIDENTIFIED SPEAKER: Yes.
6           MR. ROTHSTEIN: It is a different claim, Your
7   Honor. It is a qualified claim. The language is entirely
8   different from any of the claims that are being made by
9   Dyson in the current case.
10          THE COURT: So you don't expect it to come up in
11  the context that Mr. Reich suggests?
12          MR. ROTHSTEIN: I didn't follow you, Your Honor.
13          THE COURT: In other words, the concern that Mr.
14  Reich articulates, you submit, is a straw person or straw
15  man?
16          MR. ROTHSTEIN: I absolutely do, Your Honor.
17  Quite frankly —
18          THE COURT: Or red herring, whatever colloquial
19  term you want to use.
20          MR. ROTHSTEIN: I do, Your Honor. Quite
21  frankly, what Hoover does, or is doing currently, or is not
22  doing currently, is not a proxy for what Dyson is or was
23  required to do back in 2002 when they came to the United
24  States.
25          THE COURT: I agree. I am going to deny the

52

1   request.
2           No. 2. Scope of waiver of attorney-client
3   privilege in defense of willful infringement.
4           MR. SHAW: Your Honor, I believe this presents a
5   very discrete legal issue for Your Honor, one you have
6   probably seen before.
7           The question here, Maytag has relied on opinions
8   of counsel on noninfringement and some aspects of invalidity
9   to defend our claim of willful infringement in the patent
10  case. The dispute between the parties is a very discrete
11  one: what is the scope of waiver that attends that opinion?
12          It is Dyson's position that the waiver is of the
13  subject matter of the opinion and goes to all communications
14  between counsel and client as to those subjects, and also as
15  to the work product and other things that the client who
16  received that bear on the reasonableness of the client's
17  state of mind after receiving the opinion.
18          Your Honor's last writing on this that I have
19  been able to find is from, I believe, the Mosel-Vitalic
20  case. It appears to be consistent with the rulings that
21  Judge Farnan and Judge Robinson have rendered as recently a
22  this summer, and also with the Federal Circuit's opinion in
23  the In Re EchoStar case from May, that the scope of waiver
24  does extend to the entire subject matter of the opinion.
25          Maytag, as I understand it, is relying on what I

53

1   will call the Judge McKelvie rule, which was first
2   articulated in the Thorn v. EMI case, and which Your Honor
3   had rejected in Elonex, and which currently Judge Jordan
4   still ascribes to. That is where will the dichotomy, which
5   is the appropriate scope of the waiver, is it Your Honor's
6   Elonex and the more recent opinions from Judge Farnan and
7   Judge Robinson? Or is it Judge McKelvie's view of the very
8   narrow scope of waiver?
9           THE COURT: You are right, Mr. Shaw. This
10  subject has been — this has been the subject of discussion
11  and much consideration by this Court and others, other
12  Judges on this Court.
13          I have not changed my view.
14          MR. DIGIOVANNI: Your Honor, if I may.
15          THE COURT: Yes.
16          MR. DIGIOVANNI: The Judge Jordan opinion in
17  Ampex v. Eastman Kodak, which came out this summer, I woul
18  submit it does not go straight — does not adopt Judge
19  McKelvie's position identically. What Judge McKelvie has
20  done is looked at precisely what Dyson is looking for here,
21  and that is litigation documents such as strategy documents
22  that are not in the form of an opinion of counsel or
23  actually providing advice regarding infringement or
24  invalidity. So if a document merely mentions
25  noninfringement or infringement or invalidity or validity or

**Exhibit C**

## DISCOVERY DISPUTE RESOLUTION

**Discovery Disputes**:  Should counsel find they are unable to resolve a discovery or scheduling matter, a representative from each party in the matter shall be on the line when contacting chambers at (302) 573-6470 to schedule a teleconference.  Not less than forty-eight hours prior to the teleconference, the parties shall file with the court, via electronic means (CM/ECF), a joint, non-argumentative letter agenda not to exceed two (2) pages in length, exclusive of exhibits, outlining the issue(s) in contention.  After the parties have had three (3) discovery teleconferences, they will be required to file a joint letter showing good cause why the court should permit a fourth discovery teleconference.

**Exhibit D**

1

```
 1              IN THE UNITED STATES DISTRICT COURT

 2              IN AND FOR THE DISTRICT OF DELAWARE

 3                        -  -  -

 4    DYSON TECHNOLOGY LIMITED      :.       Civil Action
      and DYSON, INC.,             :
 5                                 :
                  Plaintiffs,      :
 6                                 :
           v.                      :
 7                                 :
      MAYTAG CORPORATION,          :
 8                                 :
                  Defendant.       :    No. 05-434 (GMS)
 9
                          -  -  -
10
                    Wilmington, Delaware
11                  Friday, February 2, 2007
                         10:00 a.m.
12                  Telephone Conference

13                        -  -  -

14    BEFORE:  HONORABLE GREGORY M. SLEET, U.S.D.C.J.

15    APPEARANCES:

16              JOHN W. SHAW, ESQ., and
                MONTE T. SQUIRE, ESQ.
17              Young Conaway Stargatt & Taylor, LLP
                          -and-
18              RICHARD C. PEPPERMAN, II, ESQ.
                Sullivan & Cromwell LLP
19              (New York, N.Y.)
                          -and-
20              STEVEN F. REICH, ESQ.,
                JOHN F. LIBBY, ESQ., (Los Angeles, CA),
21              TAMAR FEDER, ESQ., (Los Angeles, CA), and
                CHRISTOPHER A. COLE, ESQ. (Washington, D.C.)
22              Manatt, Phelps & Phillips, LLP
                (New York, N.Y.)
23
                          Counsel for Plaintiffs
24

25
```

**2**

1  APPEARANCES CONTINUED:

2      FRANCIS DIGIOVANNI, ESQ.
         Connolly Bove Lodge & Hutz LLP
3         -and-
        STEPHEN P. DURCHSLAG, ESQ.,
4      RONALD Y. ROTHSTEIN, ESQ.,
        LISA J. PARKER, ESQ., and
5      ANTHONY DiSARRO, ESQ. (New York, N.Y.)
         Winston & Strawn LLP
6        (Chicago, Illinois)
          -and-
7      RAY L. WEBER, ESQ.
         Renner Kenner Greive Bobak Taylor & Weber, LPA
8        (Akron, Ohio)

9              Counsel for Maytag/Hoover

10                - - -

11

12          THE COURT: Good morning, counsel. Who is on
13  the line for Dyson today?
14          MR. SHAW: Good morning, Your Honor. John Shaw
15  at Young Conaway. On the line from Manatt, Phelps &
16  Phillips are Steven Reich, John Libby, Tamar Fader, and
17  Chris Cole. Also on the line from Sullivan & Cromwell is
18  Rick Pepperman. In my office, Monte Squire.
19          THE COURT: Who is going to handle the matters
20  for Dyson today?
21          MR. SHAW: Your Honor, I think a variety of us
22  are. I will be handling Item No. 1 on Maytag's list.
23          THE COURT: All right. Who is on the line for
24  the Maytag Corporation?
25          MR. DURCHSLAG: Good morning, Your Honor. Steve

**3**

1  Durchslag from Winston & Strawn. We are representing Maytag
2  and Hoover in this matter. With me in Chicago is Ron
3  Rothstein, who will be addressing Point No. 1, in addition,
4  Lisa Parker, who will be addressing Point No. 2. In my New
5  York office is Tony DiSarro, who will be addressing Point
6  No. —
7          THE COURT: We will get to it when we get to it,
8  counsel.
9          MR. DURCHSLAG: In addition, Your Honor, Frank
10  DiGiovanni, local counsel, who is on the line as well.
11          MR. DIGIOVANNI: Good morning, Your Honor.
12          THE COURT: Good morning.
13          Has everybody been introduced?
14          UNIDENTIFIED SPEAKER: Mr. Weber is also on the
15  line.
16          MR. WEBER: Ray Weber representing
17  Maytag/Hoover.
18          THE COURT: I have a motion filed by Dyson
19  styled as a Motion For Reargument of The Court's Telephone
20  Ruling Denying Dyson's Request For Discovery Regarding
21  Maytag's No Loss Of Suction Claims. It is filed at Docket
22  Item 209. It is filed over the signature of local counsel.
23  Specifically, who signed this one?
24          MR. SHAW: I may have, Your Honor.
25          THE COURT: Mr. Shaw, you should know that this

**4**

1  order violates if not the letter certainly the spirit of my
2  custom and practice here -- it is going to soon become a
3  standing order — regarding the permission to engage in
4  motions practice involving discovery motions.
5          Is there some question or something unclear
6  about my practice among the local counsel here, Mr. Shaw?
7          MR. SHAW: I certainly had not been aware that
8  you had a practice on that particular issue. With regard to
9  the motion, the reason it was filed was there was a —
10          THE COURT: Mr. Shaw, let me interrupt. Am I
11  somehow unclear or is it not understood by local
12  practitioners that I do not permit written discovery motions
13  without leave of Court?
14          MR. SHAW: That is clear, Your Honor.
15          THE COURT: How can you sit here with a straight
16  face and say to me that you don't understand that the filing
17  of a motion for reargument in a discovery matter, where no
18  permission was given to file a motion at the outset, is
19  compliant with my practice?
20          MR. SHAW: Your Honor, I honestly had not
21  conceptualized it in that way. There was a misstatement in
22  the call that was material to the issue that was decided.
23  It appeared at the time that motion for reconsideration was
24  the right approach to take.
25          THE COURT: Well, it was exactly the wrong

**5**

1  approach to take, and henceforth shall not be taken. Is
2  that understood?
3          MR. SHAW: It is, Your Honor.
4          THE COURT: All right. I am going to strike the
5  motion from the docket.
6          Let's get on with the letter and start out with
7  the first item under Defendant/Counterclaimant's issues.
8          UNIDENTIFIED SPEAKER: Thank you, Your Honor,
9  Since we are representing the plaintiff in this matter, let
10  me turn this matter over to my partner, Ron Rothstein, who
11  will address the first point.
12          MR. ROTHSTEIN: Thank you, Your Honor.
13          The first issue has to do with the waiver of the
14  attorney-client privilege. I think the issue breaks down
15  into four parts. If you would like, I can give you those
16  four parts right now and we can then deal with them in
17  order.
18          THE COURT: Go ahead.
19          MR. ROTHSTEIN: The first is did Dyson waive the
20  attorney-client and work product privileges by designating
21  James Widdowson, an expert witness, on documents he
22  considered in connection with the report he furnished under
23  Rule 26(a)(2)(B) of the Federal Rules?
24          The second is does Dyson have the option of
25  designating Mr. Widdowson as an expert not subject to the

**Exhibit E**

# YOUNG CONAWAY STARGATT & TAYLOR, LLP

BEN T. CASTLE
SHELDON N. SANDLER
RICHARD A. LEVINE
RICHARD A. ZAPPA
FREDERICK W. IOBST
RICHARD H. MORSE
DAVID C. McBRIDE
JOSEPH M. NICHOLSON
CRAIG A. KARSNITZ
BARRY M. WILLOUGHBY
JOSY W. INGERSOLL
ANTHONY G. FLYNN
JEROME K. GROSSMAN
EUGENE A. DIPRINZIO
JAMES L. PATTON, JR.
ROBERT L. THOMAS
WILLIAM D. JOHNSTON
TIMOTHY J. SNYDER
BRUCE L. SILVERSTEIN
WILLIAM W. BOWSER
LARRY J. TARABICOS
RICHARD A. DILIBERTO, JR.
MELANIE K. SHARP
CASSANDRA F. ROBERTS
RICHARD J.A. POPPER
TERESA A. CHEEK
NEILLI MULLEN WALSH

JANET Z. CHARLTON
ROBERT S. BRADY
JOEL A. WAITE
BRENT C. SHAFFER
DANIEL P. JOHNSON
CRAIG D. GREAR
TIMOTHY JAY HOUSEAL
MARTIN S. LESSNER
PAULINE K. MORGAN
C. BARR FLINN
NATALIE WOLF
LISA B. GOODMAN
JOHN W. SHAW
JAMES P. HUGHES, JR.
EDWIN J. HARRON
MICHAEL R. NESTOR
MAUREEN D. LUKE
ROLIN P. BISSELL
SCOTT A. HOLT
JOHN T. DORSEY
M. BLAKE CLEARY
CHRISTIAN DOUGLAS WRIGHT
DANIELLE GIBBS
JOHN J. PASCHETTO
NORMAN M. POWELL
ELENA C. NORMAN

JOSEPH M. BARRY
SEAN M. BEACH
SANJAY BHATNAGAR
DONALD J. BOWMAN, JR.
TIMOTHY P. CAIRNS
JEFFREY T. CASTELLANO
KARA HAMMOND COYLE
KRISTEN SALVATORE DEPALMA
MARGARET M. DIBIANCA
MARY F. DUGAN
ERIN EDWARDS
KENNETH J. ENOS
IAN S. FREDERICKS
JAMES J. GALLAGHER
SEAN T. GREECHER
STEPHANIE L. HANSEN
DAWN M. JONES
KAREN E. KELLER
JENNIFER M. KINKUS
EDWARD J. KOSMOWSKI
JOHN C. KUFFEL
KAREN LANTZ
TIMOTHY E. LENGKEEK

ANDREW A. LUNDGREN
MATTHEW B. LUNN
JOSEPH A. MALFITANO
ADRIA B. MARTINELLI
MICHAEL W. McDERMOTT
MARIBETH L. MINELLA
EDMON L. MORTON
D. FON MUTTAMARA-WALKER
MARGARET R. NOEL
ADAM W. POFF
SETH J. REIDENBERG
SARA BETH A. REYBURN
CHERYL A. SANTANIELLO
(NJ & PA ONLY)
MICHELE SHERRETTA
MONTÉ T. SQUIRE
MICHAEL P. STAFFORD
CHAD S.C. STOVER
JOHN E. TRACEY
TRAVIS N. TURNER
MARGARET B. WHITEMAN
SHARON M. ZIEG

SENIOR COUNSEL
CURTIS J. CROWTHER

SPECIAL COUNSEL
JOHN D. McLAUGHLIN, JR.
KAREN L. PASCALE
PATRICIA A. WIDDOSS

OF COUNSEL
BRUCE M. STARGATT
STUART B. YOUNG
EDWARD B. MAXWELL, 2ND

THE BRANDYWINE BUILDING
1000 WEST STREET, 17TH FLOOR
WILMINGTON, DELAWARE 19801

P.O. BOX 391
WILMINGTON, DELAWARE 19899-0391

(302) 571-6600
(800) 253-2234 (DE ONLY)
FAX: (302) 571-1253

110 WEST PINE STREET
P.O. BOX 594
GEORGETOWN, DELAWARE 19947
(302) 856-3571
(800) 255-2234 (DE ONLY)
FAX: (302) 856-9338

WWW.YOUNGCONAWAY.COM

DIRECT DIAL: 302.571.6713
DIRECT FAX: 302.576.3515
msquire@ycst.com

February 16, 2007

**BY ELECTRONIC FILING**

The Honorable Gregory M. Sleet
United States District Court
 for the District of Delaware
844 North King Street
Lockbox 19
Wilmington, Delaware 19801

Re: *Dyson Tech. Ltd., et al. v. Maytag Corp.*,
C.A. No. 05-434-GMS

Dear Judge Sleet:

In anticipation of the discovery teleconference scheduled for Tuesday, February 20, 2007 at 10:30 a.m. (EST) in the above matter, the parties jointly submit the following items to be presented to the Court:

Plaintiffs' Issues:

1. Discovery related to possible substitution of a party

2. Date certain for Maytag to answer Dyson's Interrogatory No. 11

3. Date certain for Maytag to comply with December 7, 2006 Order on attorney-client privilege waiver

4. Reconsideration of the Court's decision on discoverability of Maytag's claim substantiation

5. Guidance as to the cut-off and scope of expert discovery:

DB01:2300772.1                                                                 063753.1002

YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Honorable Gregory M. Sleet
February 16, 2007
Page 2

      (a) Propriety of late-disclosed expert reports, new expert testing and related discovery issues

### Defendant/Counterclaimant's Issues

1. Third party discovery in the U.K. (Dyson ad agencies)

2. Third party discovery in Germany (a company that performs testing for Dyson)

3. Production of documents by Dyson on the following topics:

    (a) Blockage issues relating to Dyson's DC07 upright vacuum.

    (b) Advertisements/infomercials for Dyson's upright vacuums sold in the United States.

    (c) Dyson's advertising submissions to Sears, Sales Today Magazine, and Best Buy Toolkit.

    (d) NAD challenges concerning Dyson (including one involving Euro-Pro).

    (e) Dyson vacuums that were returned or repaired due to the classification of "other."

    (f) Dyson's internal test methods or DTMs (including that relating to clogging).

    (g) Filters and Dyson's in-home testing of its upright vacuums.

### Joint Issues

1. Discovery related to IBR

2. Scheduling of depositions extending beyond the Court's deadline

3. The Court's practice in handling Daubert issues, and specifically whether such motions count against the motions in limine limit of five.

      Respectfully submitted,

      Monté T. Squire (No. 4764)

MTS

cc:    Clerk of the Court (by electronic filing/hand delivery)

DB01:2300772.1                                         063753.1002

YOUNG CONAWAY STARGATT & TAYLOR, LLP

The Honorable Gregory M. Sleet
February 16, 2007
Page 3

     Francis DiGiovanni, Esquire (by e-mail/hand delivery)
     Ray L. Weber, Esquire
     Laura J. Gentilcore, Esquire
     Kimball R. Anderson, Esquire
     Stephen P. Durchslag, Esquire

**Exhibit F**

1

1          IN THE UNITED STATES DISTRICT COURT

2          IN AND FOR THE DISTRICT OF DELAWARE

3                        -   -   -

4    DYSON TECHNOLOGY LIMITED     :      Civil Action
     and DYSON, INC.,             :
5                                 :
                Plaintiffs,       :
6                                 :
          v.                      :
7                                 :
     MAYTAG CORPORATION,          :
8                                 :
                Defendant.        :      No. 05-434 (GMS)
9
10
                   Wilmington, Delaware
11   Tuesday, February 20, 2007, and Wednesday, Febuary 21, 2007
                       10:30 a.m.
12                 Telephone Conference

13                        -   -   -

14   BEFORE:  HONORABLE GREGORY M. SLEET, U.S.D.C.J.

15   APPEARANCES:

16          JOHN W. SHAW, ESQ.,
            C. BARR FLINN, ESQ., and
17          MONTE SQUIRE, ESQ.
            Young Conaway Stargatt & Taylor, LLP
18                  -and-
            RICHARD C. PEPPERMAN, II, ESQ., and
19          ADAM R. BREBNER, ESQ.
            Sullivan & Cromwell LLP
20          (New York, N.Y.)
                    -and-
21          STEVEN F. REICH, ESQ.,
            JOHN F. LIBBY, ESQ., (Los Angeles, CA),
22          TAMAR FEDER, ESQ., (Los Angeles, CA), and
            CHRISTOPHER A. COLE, ESQ. (Washington, D.C.)
23          Manatt, Phelps & Phillips, LLP
            (New York, N.Y.)
24                         Counsel for Plaintiffs

25

2

APPEARANCES CONTINUED:

       JAMES HEISMAN, ESQ., and
       FRANCIS DiGIOVANNI, ESQ.
       Connolly Bove Lodge & Hutz LLP
           -and-
       STEPHEN P. DURCHSLAG, ESQ.,
       RONALD Y. ROTHSTEIN, ESQ.,
       LISA J. PARKER, ESQ., and
       ANOTHONY DiSARRO, ESQ. (New York, N.Y.),
       GREGORY CLARICK, ESQ., and
       MONICA YOUN, ESQ.
       Winston & Strawn LLP
       (Chicago, Illinois)
           -and-
       RAY L. WEBER, ESQ.
       Renner Kenner Greive Bobak Taylor & Weber, LPA
       (Akron, Ohio)

                Counsel for Maytag/Hoover

                   - - -

       THE COURT:  Counsel, good morning.  Who is on the line today for Dyson?

       MR. FLINN:  Good morning, Your Honor.  Barr Flinn from Young Conaway.  I have with me my colleague, Monte Squire.  Also, I will introduce my co-counsel.  We have Rick Pepperman from Sullivan & Cromwell.  We have Steve Reich, John Libby, Tamar Feder, Chris Cole and Greg Clarick from Manatt Phelps & Phillips.

       THE COURT:  Good morning, counsel.

       For the defendant Maytag.

       MR. DiGIOVANNI:  Your Honor, Frank DiGiovanni from Connolly Bove.  My co-counsel in Chicago are Steve

1    testimonial time, if it is going to be testimony.

2              MR. REICH:  So we can fold that into our

3    calculus in conducting the PTC.

4              THE COURT:  I think that completes all of the

5    issues except for Plaintiff's Issue No. 4.  Is that correct?

6              UNIDENTIFIED SPEAKER:  Yes, except for that one,

7    Your Honor.

8              THE COURT:  I am not in the habit of

9    reconsidering my rulings that I issued or announced during a

10   teleconference of this nature.  I guess that what you are

11   saying is I made a ruling concerning something called the

12   discoverability of Maytag's claim substantiation during a

13   previous discovery conference?

14             MR. REICH:  Yes, Your Honor.  Your Honor, I am

15   not in the habit of filing motions for reconsideration.  But

16   when there is an issue that is significant that I think the

17   Court ought to take another look at, that is why we

18   proceeded the way we did and that's why we brought it to

19   Your Honor's attention.

20             Let me just briefly put it into context.

21             The case that you have in front of you now

22   focuses on defense claims that its vacuum cleaner doesn't

23   lose suction.  That is sort of the core claim that is being

24   attacked by Maytag in this litigation.  And it's the core of

25   what is going to be tried before Your Honor and to a jury.

74

1          Maytag has its own vacuum cleaner products, two

2    of them.  One of them is called the Hoover Fusion.

3          With respect to the Hoover Fusion, Maytag also

4    makes a no loss of suction claim.

5          Here is the basic point that we make, Your

6    Honor.  In attacking our no loss of suction claim, namely,

7    Dyson's, they are going to attack the kind of testing that

8    we do and they are going to claim that the substantiation we

9    do for our no loss of suction claim is insufficient.

10          As part of our defense, we want to be able to

11   show that our testing is reasonable according to practice in

12   the industry.  In other words, what the industry standard

13   is.  And we think that as part of showing what the industry

14   standard is, we should be able to get discovery and put in

15   front of the jury how they test their no loss of suction

16   claim because it is essentially the same claim we make.  And

17   it seems to us, Your Honor, that if our testing is in accord

18   with industry standards, then this claim that we make would

19   not violate the Lanham Act.

20          The problem that I have is from a very practical

21   perspective, if Your Honor doesn't allow this discovery,

22   essentially, the jury is going to be presented with a

23   picture of our testing, and will not be able to put into

24   context the reasonableness of the testing and the

25   reasonableness of our reliance on that testing.

1          We believe that if the jury heard that Hoover

2    itself tests an almost identical claim in a similar way,

3    that the jury would be able to contextualize and give weight

4    to reasonableness of our testing.

5          That is why we wanted the discovery.  And, Your

6    Honor ruled that we weren't entitled to it and we have now

7    brought it back to Your Honor, because we think there is

8    case law in the Third Circuit that talks about the relevance

9    of industry practice in this kind of case.

10          THE COURT:  Who is going to handle this?

11          MR. DURCHSLAG:  I would like to bring Mr.

12   Rothstein on if I could, who argued this -- he is over at

13   Manatt's offices at the present time -- if I might.  We are

14   trying to get him on the other line right now.

15          THE COURT:  He didn't get a chance to hear Mr.

16   Reich.

17          MR. DURCHSLAG:  I know that, Your Honor.  I will

18   certainly proceed in the interim.

19          He is defending a deposition brought at Manatt

20   Phelps by Mr. Cole on this very case that was scheduled at

21   9:00 this morning -- 9:30.

22          I will address it.

23          THE COURT:  I think you should, Mr. Durchslag.

24          MR. DURCHSLAG:  This case was brought in 2005,

25   in June of 2005, by Dyson.  We in August of 2005 filed a

1  counterclaim, indicating the issue that their advertising

2  was false in the loss of suction response to their patent

3  claim.

4       A year later, they went to New York, before the

5  New York Court in August 2006, claiming that our no loss of

6  suction was false even though it was a different claim under

7  different bases.  They raised in their briefs as to why they

8  were entitled to be in New York, that it was specifically

9  necessary for them to deal with our testing, with their

10 testing in the Delaware case because under the Lanham Act,

11 as was argued and as we indicated in our brief, is the only

12 standard is the reasonableness of their test.  And in their

13 lawsuit, the counterclaim that has now been transferred to

14 Your Honor, it is the reasonableness of our test.

15      So it is a completely different standard and

16 claim.

17      From a delay point of view, this is a year after

18 this issue was raised.  They still have yet to raise a

19 counterclaim.  Instead, they are pursuing a separate action

20 in Delaware.  Their own, if I can quote from their brief,

21 Your Honor, they specifically say in their brief that there

22 is no need to try these cases on the same basis because they

23 are different standards as to our advertising being

24 legitimate standards.  And as far as the industry norm goes,

25 the industry norm, they can use industry to defend, they

1  have the wealth of industry practices before them in that

2  case and in this case.

3          Our advertising is not at issue.  It is far

4  later in the material.  It is a far different claim.

5          We have a claim qualified.  It is not in a

6  comparative context, the way theirs is.  They admitted all

7  that in the briefing schedule we have given to Your Honor

8  when they raised this as a separate motion.

9          To come back at this very late date and claim

10  they are entitled to our advertising when it is different

11  standards, when it is their advertising that is in question

12  and will be before Your Honor in the case that they elected

13  to bring a year later, seems to us a total abuse of the

14  judicial process.

15          MR. DiSARRO:  Your Honor, Anthony DiSarro on

16  behalf of Maytag.  May I also be heard on this issue?

17          THE COURT:  You have just joined us?

18          MR. DiSARRO:  No.  I have been on from the

19  beginning.

20          THE COURT:  Go ahead.

21          MR. DiSARRO:  I think the rules and case law

22  makes clear that motions for reconsideration should be

23  reserved for instances where perhaps a nuance was not

24  perceived by the Court or an issue was not raised the first

25  time around.

78

1          But I have the transcript from the original

2    session, at which this was argued on December 7th.  And I

3    can read it into the record.  But Mr. Reich's argument then

4    was identical to the one he just made now.  And Your Honor

5    heard it, and denied the request.

6          So I don't even think this qualified for a

7    motion for reconsideration, because the very argument Mr.

8    Reich made now he made back in December.

9          THE COURT:  Counsel, I think you are right.  We

10   are going to leave it there.

11          Anything else?

12          MR. DURCHSLAG:  I think that concludes things

13   from our end.

14          THE COURT:  Mr. Reich.

15          MR. REICH:  Your Honor, can I just make two

16   seconds of a record?

17          THE COURT:  No.  On this motion for

18   reconsideration issue?

19          MR. REICH:  Yes.

20          THE COURT:  No.  It's done.  I agree with the

21   other side.  I have ruled.  I am not going to take

22   everyone's time up having him read into this transcript the

23   transcript from the other hearing.  It's not time-efficient

24   in my view.  I am sure that I fully considered the issue.  I

25   recollect that I did at the time.  I have heard nothing to

79

1    cause me to change my view.

2         I don't think you meet the standards for a

3    motion to reconsider.  They are disfavored in this district.

4    Regardless of what you say the Third Circuit says, it is not

5    that I am unwilling to, obviously, to be guided and to

6    follow the Superior Court, but I believe you probably raised

7    that and I think you did at the time.

8         That is as much as I feel I need to say under

9    the circumstances.

10         So the answer is no.

11         Okay?

12         MR. REICH:  The record is what the record is,

13   Your Honor.

14         THE COURT:  That is right, Mr. Reich.

15         Anything else?

16         MR. REICH:  No, Your Honor.

17         THE COURT:  Take care, counsel.

18         (Teleconference concluded at 10:45 a.m.)

19              -  -  -

20   Reporter:  Kevin Maurer

21

22

23

24

25

# EXHIBITS G, H, AND I
# HAVE BEEN REDACTED

## CERTIFICATE OF SERVICE

I, Francis DiGiovanni, hereby certify that on April 16, 2007, copies of the foregoing document were served on the following counsel of record in the manner indicated:

**BY HAND DELIVERY AND E-MAIL:**

C. Barr Flinn
John W. Shaw
Adam Poff
Young Conaway Stargatt & Taylor LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801

**BY UNITED STATES MAIL AND E-MAIL:**

Garrard R. Beeney
Richard C. Pepperman, II
James T. Williams
Keith McKenna
Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004

Steven F. Reich
Jeffrey S. Edelstein
Manatt, Phelps & Phillips, LLP
7 Times Square
New York, NY 10004

_____
Francis DiGiovanni (#3189)