IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DYSON TECHNOLOGY LIMITED and DYSON, INC., Plaintiffs, v. MAYTAG CORPORATION, Defendant. | ) ) ) ) ) Civil Action No. 05-434-GMS ) ) REDACTED FOR PUBLIC FILING ) ) ) |

**DEFENDANT HOOVER, INC.'S BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE* 2 TO EXCLUDE CONTENTIONS REGARDING DYSON INC.'S TRANSFER PRICING ARRANGEMENT**

Francis DiGiovanni (#3189)
James D. Heisman (#2746)
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 N. Orange Street
Wilmington, DE 19899
Phone (302) 658-9141

Of Counsel:

Kimball R. Anderson
Stephen P. Durchslag
Winston & Strawn LLP
35 West Wacker Drive
Chicago, IL 60601
Phone (312) 558–5600

Ray L. Weber
Laura J. Gentilcore
Renner, Kenner, Greive, Bobak, Taylor & Weber
400 First National Tower
Akron, OH 44308
Phone (330) 376–1242

Plaintiffs' Motion *in Limine* #2 ("Motion") improperly conflates evidence with respect to

These two issues must be addressed separately.

I. FACTS AND ARGUMENT

    A. <u>All TPA Evidence Should be Excluded</u>

While Dyson attempts to give a rationale for the transfer pricing arrangements in its Motion, it never simply state what transfer pricing *is*—it is an allocation, or transfer, of profit. In

In *Banjo Buddies v. Renosky*, 399 F.3d 168, 176-77 (3d Cir. 2005), the Third Circuit held, as a matter of law, that allocations or transfers of profit are not costs or expenses that can be deducted from revenues to calculate disgorgable profits under the Lanham Act. *See also Dorr-Oliver, Inc. v. Fluid-Quip, Inc.*, 914 F Supp. 210, 211 (N.D. Ill. 1995). In *Banjo Buddies*, the defendant sought to reduce the amount of its profits that were subject to disgorgement under the Lanham Act by subtracting distributions to shareholders from revenues. Even though the defendant's books and records "treat[ed] the distributions as an expense for bookkeeping purposes," 399 F.3d at 178, the Court held that they were "a method of disbursing income" and, thus, not a business expense that can be deducted from a Lanham Act profits award. *Id.*

1

Because, as a matter of law, profit allocations are not expenses that can be deducted from revenues to calculate profits under the Lanham Act, Hoover has moved *in limine* to exclude any evidence of transfer pricing. If that motion is granted, this motion will become moot, as there will be no need for Hoover to address or characterize those transfers or allocations.

B.  **If TPA Evidence Is Admitted, Hoover Should Be Free To Characterize It**

If Hoover's *in limine* motion is not granted, then Hoover should be permitted to address

---

[1] Report excerpts attached to Affidavit of Chris Stathopoulos ("Resp. Aff.") as Exhibits A, B and C, respectively.

C. <u>Information Regarding James Dyson Is Relevant</u>

A witness's financial interest is "highly relevant" for bias and credibility purposes. *See* Fed. R. Evid. 601, advisory committee notes ("Interest in the outcome of litigation and mental

capacity are, of course, highly relevant to credibility and require no special treatment to render them admissible..."); *McNally v. Nationwide Ins. Co.*, 815 F.2d 254 (3d Cir. 1987) (affirming trial court's jury instruction regarding the possible bias of witnesses with an interest in the outcome of the case); *Creative Dimentions in Mgmt, Inc. v. Thomas Group, Inc.*, 1999 U.S. Dist. LEXIS 2757, *8-9 (E.D. Pa. March 11, 1999) (citing Fed. R. Evid. 601 cmt. and finding that the agreement between the witness and plaintiff's sole shareholder was highly relevant to credibility); *see also United States v. International Business Machine Corp.*, 84 F.R.D. 651, 652 (S.D.N.Y. 1979) (stating it is a "hornbook proposition" that "[i]nquiry into a witness' financial interest in the outcome of a case, and the extent of that interest, is essential if bias is to be uncovered. Personal motives must be factored in when assessing a witness' credibility.")

The cases Dyson cites for the proposition that a corporate party's financial condition is irrelevant are inapposite. *See Union Elec. Light & Power Co. v. Snyder Estate Co.*, 65 F.2d 297, 303 (8th Cir. 1933) (counsel's recitation of the number of shares defendant owned of a company during "cross-examination" of a hydraulic engineer who only testified to details about a dam and

4

its electrical plant was beyond the scope of cross-examination and was improper); *Gustafson v. Bridger Coal Co.*, 834 F. Supp. 352, 358 (D. Wyo. 1993) (in an intentional infliction of emotional distress case, the court ordered the parties not to mention punitive damages until the court concluded the actions were willful and wanton, at which time plaintiff could "make a further showing with regard to punitive damages and the net worth of the defendants"; prejudice was never discussed); *Computer Assocs. Int'l Inc. v. American Fundware, Inc.*, 831 F. Supp. 1516, 1526-28 (D. Colo. 1993) (the court found that evidence of the parties' relative financial strength was "<u>no longer</u> relevant" because it had granted summary judgment against the defendant's counterclaim of unfair competition (emphasis added)). These cases do not address whether the evidence is relevant to assessing a witness' motive and bias.[2]

WHEREFORE, for the reasons stated herein, Hoover respectfully requests that this Court deny Plaintiffs' Motion *in Limine*.

---

[2] Because the evidence at issue will be introduced for purposes other than assessing punitive damages, Dyson's cited cases are all off-point. *See Bryan v. Thos. Best & Sons, Inc.*, 453 A.2d 107, 108 (Del. Super. 1982) (court did not allow discovery of defendant's financial information based on plaintiffs' "naked allegation" of punitive damages); *Burke v. Deere & Company*, 6 F.3d 497, 513 (8th Cir. 1993) (reversing and remanding all damages because argument that 75% of punitive damages will go to a trust fund tainted both compensatory and punitive awards); *Softball Country Club v. Decatur Fed. Sav. & Loan Ass'n*, 121 F.3d 649, 653 (11th Cir. 1997) (finding the district court did not abuse its discretion under Georgia law when it restricted financial information related to Georgia's punitive damages statute); *Gearhart v. Uniden Corp.*, 781 F.2d 147, 153 (8th Cir. 1986) (in a products-liability case, noting that under Missouri law, the wealth of a defendant's parent is *usually* irrelevant to a question of *punitive damages*).

5

Respectfully submitted,

HOOVER, INC.

/s/ *Francis DiGiovanni*
Francis DiGiovanni (#3189)
James D. Heisman (#2746)
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 N. Orange Street
Wilmington, DE 19899
Phone (302) 658-9141

Of Counsel:

Kimball R. Anderson
Stephen P. Durchslag
Winston & Strawn LLP
35 West Wacker Drive
Chicago, IL 60601
Phone (312) 558-5600

Ray L. Weber
Laura J. Gentilcore
Renner, Kenner, Greive, Bobak, Taylor & Weber
400 First National Tower
Akron, OH 44308
Phone (330) 376-1242

## CERTIFICATE OF SERVICE

I, Francis DiGiovanni, hereby certify that on April 23, 2007, copies of the foregoing document were served on the following counsel of record in the manner indicated:

**BY HAND DELIVERY AND E-MAIL:**

C. Barr Flinn
John W. Shaw
Adam Poff
Young Conaway Stargatt & Taylor LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801

**BY UNITED STATES MAIL AND E-MAIL:**

Garrard R. Beeney
Richard C. Pepperman, II
James T. Williams
Keith McKenna
Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004

Steven F. Reich
Jeffrey S. Edelstein
Manatt, Phelps & Phillips, LLP
7 Times Square
New York, NY 10004

/s/Francis DiGiovanni
Francis DiGiovanni (#3189)