IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DYSON TECHNOLOGY LIMITED and DYSON, INC., <br><br>        Plaintiffs, <br><br>        v. <br><br>MAYTAG CORPORATION, <br><br>        Defendant. | C.A. No. 05-434-GMS <br><br>**REDACTED –** <br>**PUBLIC VERSION** |

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF ITS MOTION *IN LIMINE* NO. 1 TO PRECLUDE MAYTAG FROM IMPROPERLY EXTENDING THE SCOPE OF THE COURT'S CONSTRUCTION OF "MEANS FOR GENERATING AN AIRFLOW"**

OF COUNSEL:

Garrard R. Beeney
Richard C. Pepperman, II
James T. Williams
Adam Brebner
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
(212) 558-4000

Steven F. Reich
John Libby
Jeffrey S. Edelstein
Tamar Feder
Christopher A. Cole
MANATT, PHELPS & PHILLIPS, LLP
7 Times Square
New York, New York 10036
(212) 790-4500

C. Barr Flinn (No. 4092)
John W. Shaw (No. 3362)
Adam W. Poff (No. 3990)
Monté T. Squire (No. 4764)
YOUNG CONAWAY STARGATT & TAYLOR LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
msquire@ycst.com

*Attorneys for Plaintiffs Dyson Technology Limited and Dyson, Inc.*

Dated: April 26, 2007

-i-

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Pall Corp.* v. *Hemasure Inc.*,
    181 F.3d 1305, 1308 (Fed. Cir. 1999)......................................................................................... 1

## TABLE OF EXHIBITS

**Exhibit**

United States Patent Number 4,643,748 (Figure 1) ...................................................................... A

United States Patent Number 4,853,008 (Figure 1) ...................................................................... B

Dyson's October 18, 2006 letter addressed to Ray L. Weber........................................................ C

Excerpts from Expert Report of Gareth Evan Lyn Jones ............................................................. D

Excerpts from Transcript of February 13, 2007 Deposition of Gareth Evan Lyn Jones ................ E

Maytag's opposition attempts to obscure a clear state of affairs. Maytag concedes that it never submitted the term "means for generating an airflow" as used in the '748 and '008 patents to the Court for construction. Rather, the parties' claim construction submissions with respect to this term were limited to the '515 patent. (Opp. at 1.) Maytag now argues that the parties somehow "overlooked" the term's use in the '748 and '008 patents and that it will be prejudiced if not allowed to rely on a claim construction it never sought. (Opp. at 3-4.) This is all spurious.

As Dyson pointed out in its Opening Brief (at 2-3), Maytag made a strategic choice to ignore the use of the term in the '748 and '008 patents. The parties did not "overlook" anything. Maytag intentionally limited its claim construction argument to the '515 patent because the structure it advocated is not found in the specifications of the '748 and '008 patents. Having made that strategic choice to obtain a favorable construction of the term in the '515, it should not be permitted to export that construction to the '748 and '008 patents where it does not apply.

Maytag's assertion that the Court's construction of the term with respect to the '748 and '008 patents was "a necessary *sua sponte* ruling" (Opp. at 1) is equally meritless. The Federal Circuit has repeatedly stated that courts need not construe claim terms unrelated to a live dispute. *See, e.g., Pall Corp.* v. *Hemasure Inc.*, 181 F.3d 1305, 1308 (Fed. Cir. 1999). Maytag has never disputed that the accused device—the Hoover Fusion—has a "means for generating an airflow" in the form of a "motor driven fan unit." Absent the additional positional structure advocated by Maytag (and found by the Court) with respect to the '515, Maytag has no colorable noninfringement argument that would bring this term into play.

Maytag does not seriously contend that the positional structure included in the Court's construction of "means for generating an airflow" with respect to the '515 patent is found anywhere in the written specification of either the '748 or '008 patents. Maytag's argument that

this structure is shown in the drawings of these patents is baseless.

Figure 1 of the '748 patent (attached hereto as Ex. A) shows the "vacuum motor," *i.e.*, the "fan unit" (18), to the left of the cyclone and connected to the "outlet port" (13j) via a schematic line. Maytag argues that this is a shorthand way of depicting the position of the fan without running afoul of "limitations on drawing sizes set by the Patent Office." (Opp. at 2.) This is frivolous. There is no PTO drawing requirement that would have precluded the depiction of the fan unit "vertically above and immediately adjacent the cyclone outlet port" if that is what had been intended. (*Compare*, *e.g.*, '515, Fig. 5.) The drawing simply shows that the fan unit is connected to the cyclone outlet (perhaps by ducting, as in the Fusion), and that the position of the fan unit is unspecified except that it must suck or draw air out of the cyclonic unit.

Maytag's argument with respect to the '008 patent is even weaker. As shown in Figure 1 of the '008 patent (attached hereto as Ex. B), the "fan unit" (19) is indisputably depicted below and away from, rather than above and immediately adjacent to, the cyclone "outlet" (13d). (*See* '008, col. 3:50.) Contrary to Maytag's suggestion, the position of the fan unit below the cyclone outlet is not altered because the air, after leaving the outlet, may then flow through a "tube" (17) and "chamber" (18) to the fan. (Indeed, if "above and immediately adjacent to the cyclone outlet port" merely means that the airflow *eventually* reaches the fan unit, there can be no dispute that this term reads on the Hoover Fusion.)

Maytag asserts that Dyson "delayed nine months" until the "eve of trial" before raising this issue, "greatly prejudice[ing]" Maytag. (Opp. at 1, 4.) This is false. Maytag has been aware of Dyson's position for over six months. On October 18, 2006—six days after receiving from Maytag an interrogatory response that first revealed that Maytag sought to extend improperly the Court's August 2006 claim construction—Dyson sent a letter to Maytag demanding that it revise

its response to comport with a proper reading of the Court's order. In that letter (attached hereto as Ex. C), Dyson made the same points it now makes in this motion. Maytag never responded to Dyson's letter. Dyson again raised the issue in the report of its technical expert served on December 15, 2006 (excerpts attached hereto as Ex. D), and raised the issue for a third time during that expert's deposition on February 13, 2007. During that deposition, Dyson's counsel informed Maytag on the record that Dyson intended "as part of our motion[s *in limine*] . . . to make a motion as to whether 'the means for generating airflow' applies to the '515 alone or all three." (Jones Dep. at 170 (attached hereto as Ex. E).)

Finally, Maytag points to no specific prejudice it will suffer if Dyson's motion is granted. None of the other issues or claim elements in dispute depends on the Court's construction of "means for generating an airflow." The only effect of granting Dyson's motion will be to prevent Maytag from advancing a construction of an element of two patents that it did not raise in its claim construction briefs based on an erroneous reading of the Court's claim construction order. That is not prejudice, much less unfair prejudice.

## CONCLUSION

For the foregoing reasons, Dyson's motion should be granted and Maytag should be precluded from arguing that this Court's construction of "means for generating an airflow" applies to the '748 and '008 patents.

Respectfully submitted,
YOUNG CONAWAY STARGATT & TAYLOR, LLP

C. Barr Flinn (No. 4092)
Monté T. Squire (No. 4764)
The Brandywine Building, 1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
msquire@ycst.com
*Attorneys for Plaintiffs Dyson Technology Limited and Dyson, Inc.*

Dated: April 26, 2007

# **CERTIFICATE OF SERVICE**

I, Monté T. Squire, hereby certify that on May 2, 2007, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

>Francis DiGiovanni, Esquire
>James D. Heisman, Esquire
>CONNOLLY BOVE LODGE & HUTZ LLP
>The Nemours Building – 8th Floor
>1007 N. Orange Street
>Wilmington, DE  19801

I further certify that on May 3, 2007, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and to be served on May 2, 2007 on the following in the manner indicated:

>**BY E-MAIL**
>
>Ray L. Weber, Esquire
>Laura J. Gentilcore, Esquire
>RENNER, KENNER, GREIVE, BOBAK,
>  TAYLOR & WEBER
>400 First National Tower
>Akron, OH  44308
>
>Kimball R. Anderson, Esquire
>Stephen P. Durchslag, Esquire
>WINSTON & STRAWN LLP
>35 W. Wacker Drive
>Chicago, IL  60601-9703

>YOUNG CONAWAY STARGATT & TAYLOR, LLP
>
>/s/ *Monté T. Squire*
>C. Barr Flinn  (No. 4092)
>John W. Shaw (No. 3362)
>Monté T. Squire
>1000 West Street, 17th Floor
>Wilmington, Delaware  19801
>(302) 571-6600
>msquire@ycst.com
>*Attorneys for Dyson Technology Limited and Dyson, Inc.*