IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DYSON TECHNOLOGY LIMITED and DYSON, INC., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civil Action No. 05-434 (GMS) ) ) |
| MAYTAG CORPORATION, | ) ) |
| Defendant. | ) |

## ORDER

1.  The plaintiff, Dyson Technology Limited and Dyson, Inc. (collectively, "Dyson"), filed the above-captioned action against Maytag Corporation ("Maytag"), alleging infringement of United States Patent Nos. United States Patent Nos. 4,643,748 (the "'748 patent"), 4,826,515 (the "'515 patent"), 4,853,008 (the "'008 patent"), and 5,848,038 (the "'038 patent") (collectively, the "patents-in-suit"). The patents-in-suit are directed to improvements in cyclonic vacuum cleaner technology. Dyson specifically alleges that Maytag's "Hoover Fusion" cyclonic vacuum cleaner infringes at least one claim of each of the patents-in-suit.

2.  On August 1, 2005, Maytag filed an answer to the complaint and counterclaim (D.I. 22) against Dyson. Maytag's counterclaim alleges that Dyson has engaged in false advertising, thereby violating Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), the Delaware Uniform Deceptive Trade Practices Act, 6 Del. C. § 2532(a), and the Delaware common law. On December 16, 2005, the court entered a Scheduling Order (D.I. 46), setting February 10, 2006 as the date for motions to join other parties and amend the pleadings. On September 28, 2006, Maytag filed supplemental counterclaims (D.I. 125) against Dyson.

3.  On November 28, 2006, Maytag filed a Motion for Leave to File a Second Amended

Answer, Affirmative Defenses and Supplemental Counterclaims (D.I. 166). The motion seeks to add current Dyson parent Dyson James Limited, former Dyson parent Dyson Limited (collectively, "Dyson U.K.") and James Dyson as counterclaim defendants. Maytag asserts that the Dyson U.K. entities and James Dyson are ultimately responsible for the false advertising claims at issue in Maytag's counterclaims. According to the motion, Maytag only recently learned that Dyson U.K. and James Dyson are responsible for the allegations set forth in the counterclaims. The motion further asserts that Maytag has not delayed in bringing the motion, Dyson will not be prejudiced by having the additional counterclaim defendants added to the case, the amendment will not be futile, the court will still retain subject matter and personal jurisdiction over the issues in the case and all added counterclaim defendants, and granting the amendment will prevent Maytag from having to take additional steps if it obtains a judgment on its false advertising claims.

4.     On December 13, 2006, Dyson filed an answering brief (D.I. 186), opposing the motion. Dyson argues that Maytag has failed to establish "good cause" for missing the deadline for motions to amend or join new parties. Dyson also argues that Maytag knew of the corporate structure in effect at Dyson and the relationship between Dyson, Dyson U.K., and James Dyson. Finally, Dyson argues that it will be prejudiced by an amendment at this late date. Specifically, Dyson contends that the filing of motions to dismiss, conducting additional discovery, and the possibility of filing summary judgment motions on behalf of Dyson U.K. and James Dyson will delay trial. Dyson also contends that Maytag will suffer no prejudice if the court denies the motion, because nothing prevents it from commencing a separate action to collect a judgment or vindicate its rights against Dyson U.K. and James Dyson.

5.      Federal Rule of Civil Procedure 16 provides that a schedule "shall not be modified except upon a showing of good cause and by leave of the district judge . . . ." Fed. R. Civ. P. 16(b). At least one court in this district has stated that "[p]roperly construed, 'good cause' means that scheduling deadlines cannot be met despite a party's diligent efforts." *Gonzalez v. Comcast Corporation*, Civ. A. No. 03-455-KAJ, 2004 U.S. Dist. LEXIS 17896, at *2 (citation omitted); *see also* 6A Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice and Procedure § 1522.1, at 230-31 (2d ed. 1990) ("The scheduling order and the timetable it establishes will be *binding*. The rule specifically provides that the order can be modified only upon a showing of good cause. This would require the party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.") (emphasis added). As previously stated, the court issued a scheduling order in this case on December 16, 2005, which required all motions to join other parties and to amend the pleadings to be filed on or before February 10, 2006. (D.I. 46 ¶ 2.) Maytag's motion was filed on November 28, 2006, almost seven months after that deadline, and only six months prior to trial. Thus, under Rule 16, Maytag is required to show good cause as to why the court should grant its motion.

6.      After having considered Maytag's proposed amendment, the parties' submissions on the issue, and the pertinent law, the court concludes that leave to amend should be denied, because Maytag has not met its burden of showing good cause. The court further concludes that, even under the more generous standard of Federal Rule of Civil Procedure 15(a), Maytag's motion should be denied, because granting the motion will result in undue prejudice to Dyson, who is expecting to go to trial on this matter on May 29, 2007.

7.     At the outset, the court notes that Maytag's opening brief does not address the good cause requirement. Instead, the brief is replete with assertions that Dyson has frustrated Maytag's discovery efforts in this litigation by producing documents late in time, and only recently producing documents and witnesses to testify about Dyson's corporate structure. For example, Maytag contends that "Dyson's conduct during discovery is solely to blame for the facts that Maytag only recently discovered these [ownership] issues." (D.I. 167, at 3.) The court cannot agree with Maytag's assertion, and is puzzled by the fact that these assertions were not raised as a discovery dispute earlier, given the many disputes that arose during the discovery period in this case.[1] The court also is not willing to conclude that Maytag has shown "good cause" by sitting on its rights and waiting to bring Dyson's alleged frustration of the discovery process to the court's attention after fact discovery had closed, and the parties were beginning pre-trial and trial preparations.[2] For these reasons, the court will deny Maytag's motion.

8.     As a further basis for denying Maytag's motion to amend, the court finds that undue prejudice to Dyson would result. Pursuant to Federal Rule of Civil Procedure 15, leave to amend should be "freely given when justice so requires." Fed. R. Civ. P. 15(a). The court has discretion to deny leave to amend when there exists undue delay, bad faith, dilatory motive or undue prejudice

---

[1] The court's discovery dispute procedure is one that should be well-known to the parties to this case, given the fact that the court held at least three teleconferences and convened a hearing regarding the parties' discovery disputes. It is noteworthy that Maytag never raised Dyson's alleged subversion of the discovery process until it filed this motion, which was after the close of fact discovery in the case. See D.I. 90 ¶ 1 (setting November 3, 2006 as the fact discovery cut-off date).

[2] The court also notes that the parties amended the schedule with the court's permission several times in the case to extend the deadlines for fact discovery and expert discovery, as well as motions in limine and submission of the pre-trial order. Maytag, however, never requested an extension of the deadline for amendment and/or joinder.

to the opposing party, or when the amendment would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997).

9.      Maytag argues that Dyson will not be prejudiced in any way by the addition of Dyson U.K. and James Dyson as counter-defendants, because their addition will change nothing. Further, Maytag states in conclusory fashion that "[d]iscovery . . . will not expand." Maytag's reply brief, however, belies this assertion, stating: "If the court requires more information to establish Dyson U.K.'s [and James Dyson's] contacts with Delaware, Maytag would request only the most minimal *additional discovery* . . . ." (D.I. 196, at 12) (emphasis added). Thus, the court is not persuaded by Maytag's argument. Moreover, as previously mentioned, this matter is scheduled for a ten day jury trial beginning on May 29, 2007. Permitting Maytag to add new counterclaim defendants at this late date will virtually implode the scheduling order, resulting not only in added discovery, but the filing motions to dismiss contesting the court's jurisdiction and, possibly, requests from the newly added counterclaim defendants to file case dispositive motions. Additionally, the court is skeptical with respect to Maytag's assertion that it could not have brought the motion to amend sooner, particularly in light of the fact that the information regarding Dyson's financial status was publicly available from a British Companies House web site.[3] (See D.I. 186, at 1-2; D.I. 172, at 7-8.) Given these circumstances, and the court's inability to ameliorate the undue prejudice Dyson will suffer if it permits the belated insertion of three counterclaim defendants into this action, the court believes that

---

[3] Maytag touts this fact in its opening brief in support of its motion for entry of a temporary restraining order and preliminary injunction, stating the following: "Maytag was able to obtain from a British Companies House web site Dyson James Limited's financial statements for the years ending December 31, 2004 and 2005." D.I. 172, at 7; see id. at 8 ("The Dyson financial statements Maytag was able to obtain outside of discovery via the internet paint additional troubling pictures of the removal of assets by James Dyson.")

5

denying the motion to amend is a fair result.[4]

Therefore, IT IS HEREBY ORDERED that:

    1.    Maytag's Motion for Leave to File a Second Amended Answer, Affirmative Defenses, and Counterclaims (D.I. 166) is DENIED.


Dated: May 16, 2007                          /s/ Gregory M. Sleet
                                                   UNITED STATES DISTRICT JUDGE

---

[4] The court also questions Maytag's motives in filing the motion to amend. Instead of setting forth concrete reasons as to why the court should permit an amendment almost seven months out of time, Maytag's motion focuses on Dyson's frustration of the discovery process and Dyson's money, or lack thereof. The main thrust of the motion is not that the proposed counterclaim defendants are indispensable or necessary parties to the action. Rather, in Maytag's own words, it seeks to add the proposed counterclaim defendants "so that any judgment Maytag may obtain can be satisfied either from Dyson corporate, or James Dyson himself." (D.I. 167, at 7; see id. at 8, 9, 13.) To this end, the court notes that Maytag can seek to satisfy any judgment against Dyson with a separate action post-trial.