IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DYSON TECHNOLOGY LIMITED and | ) | |
| DYSON, INC., | ) | |
| | ) | |
| Plaintiffs/Counter-Defendants, | ) | |
| v. | ) | Civil Action No. 05-434-GMS |
| HOOVER, INC., HOOVER GENERAL L.L.C. | ) | |
| HOOVER LIMITED L.L.C., HOOVER | ) | JURY TRIAL DEMANDED |
| COMPANY I, L.P. and MAYTAG | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendants/Counter-Plaintiffs. | ) | |

## DEFENDANTS' AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

Now comes Hoover, Inc., Hoover General LLC, Hoover Limited LLC, Hoover Company

I, L.P., and Maytag Corporation (collectively, "Defendants" or "Defendants/Counter-Plaintiffs"),

by and through their undersigned counsel, and advance the following Answer, Affirmative

Defenses and Counterclaims to the Complaint filed by Dyson Technology Limited and Dyson,

Inc. (collectively "Plaintiffs" or "Dyson") herein.

## ANSWER

### Parties

1.      Defendants are without information as to the truthfulness of the allegations set

forth in paragraph 1 of the Complaint and leave Plaintiffs to their proof.

2.      Defendants are without knowledge as to the truthfulness of the allegations set

forth in paragraph 2 of the Complaint and leave Plaintiffs to their proof.

3.      Defendants admit the allegations set forth in paragraph 3 of the Complaint.

**Jurisdiction and Venue**

4.    Defendants admit only that the Complaint purports to assert claims for patent infringement under 35 U.S.C. §§ 271 and 281, and deny the remaining allegations of paragraph 4 of the Complaint.

5.    Defendants admit the allegations set forth in paragraph 5 of the Complaint.

6.    Defendants admit the allegations set forth in paragraph 6 of the Complaint.

7.    Defendants deny the allegations of paragraph 7 of the Complaint that venue is proper in this District.

**Facts**

8.    Defendants deny that Patent 4,643,748 was duly and legally issued on February 17,1987, admit that a copy of that patent was attached as Exhibit A to the Complaint, and are without knowledge as to the truthfulness of the remaining allegations set forth in paragraph 8 of the Complaint, leaving Plaintiffs to their proof.

9.    Defendants deny that Patent 4,826,515 was duly and legally issued on May 2, 1989, admit that a copy of that patent was attached as Exhibit B to the Complaint, and are without knowledge as to the truthfulness of the remaining allegations set forth in paragraph 9 of the Complaint, leaving Plaintiffs to their proof.

10.    Defendants deny that Patent 4,853,008 was duly and legally issued on August 1, 1989, admit that a copy of that patent was attached as Exhibit C to the Complaint, and are without knowledge as to the truthfulness of the remaining allegations set forth in paragraph 10 of the Complaint, leaving Plaintiffs to their proof.

11.    Defendants deny that Patent 5,858,038 was duly and legally issued on January

12, 1999, admit that a copy of that patent was attached as Exhibit D to the Complaint, and are without knowledge as to the truthfulness of the remaining allegations set forth in paragraph 11 of the Complaint, leaving Plaintiffs to their proof.

12.     Defendants admit the allegations set forth in the first sentence of paragraph 12 of the Complaint, and deny the remaining allegations of that paragraph.

13.     Defendants deny the allegations set forth in paragraph 13 of the Complaint.

14.     Defendants deny the allegations set forth in paragraph 14 of the Complaint.

15.     Defendants deny the allegations set forth in paragraph 15 of the Complaint.

16.     Defendants deny the allegations set forth in paragraph 16 of the Complaint.

## COUNT I

17.     Defendants repeat the answers set forth in paragraphs 1-16 above, as though fully sets forth in this paragraph.

18.     Defendants deny that the '748 Patent was validly issued, and are without knowledge as to the truthfulness of the remaining allegations set forth in paragraph 18 of the Complaint, leaving Plaintiffs to their proof.

19.     Defendants deny the allegations set forth in paragraph 19 of the Complaint.

20.     Defendants deny the allegations set forth in paragraph 20 of the Complaint.

21.     Defendants deny the allegations set forth in paragraph 21 of the Complaint.

22.     Defendants deny the allegations set forth in paragraph 22 of the Complaint.

## COUNT II

23.     Defendants repeat the answers set forth in paragraphs 1-22 above, as though fully set forth in this paragraph.

24.    Defendants deny that the '515 Patent was validly issued and are without knowledge as to the truthfulness of the remaining allegations set forth in paragraph 24 of the Complaint, leaving Plaintiffs to their proof.

25.    Defendants deny the allegations set forth in paragraph 25 of the Complaint.

26.    Defendants deny the allegations set forth in paragraph 26 of the Complaint.

27.    Defendants deny the allegations set forth in paragraph 27 of the Complaint.

28.    Defendants deny the allegations set forth in paragraph 28 of the Complaint.

**COUNT III**

29.    Defendants repeat the answers set forth in paragraphs 1-28 above, as though fully set forth in this paragraph.

30.    Defendants deny that the '008 Patent was validly issued and are without knowledge as to the truthfulness of the remaining allegations set forth in paragraph 30 of the Complaint, leaving Plaintiffs to their proof.

31.    Defendants deny the allegations set forth in paragraph 31 of the Complaint.

32.    Defendants deny the allegations set forth in paragraph 32 of the Complaint.

33.    Defendants deny the allegations set forth in paragraph 33 of the Complaint.

34.    Defendants deny the allegations set forth in paragraph 34 of the Complaint.

**COUNT IV**

35.    Defendants repeat the answers set forth in paragraphs 1-34 above, as though fully set forth in this paragraph.

36.    Defendants deny that the '038 patent was validly issued and are without knowledge as to the truthfulness of the remaining allegations set forth in paragraph 36 of the Complaint, leaving Plaintiffs to their proof.

37.    Defendants deny the allegations set forth in paragraph 37 of the Complaint.

38.    Defendants deny the allegations set forth in paragraph 38 of the Complaint.

39.    Defendants deny the allegations set forth in paragraph 39 of the Complaint.

40.    Defendants deny the allegations set forth in paragraph 40 of the Complaint.

## AFFIRMATIVE DEFENSES

1.    Plaintiffs' Complaint fails to state a claim upon which relief can be granted.

2.    The '748, '515,'008 and '038 Patents, and each of the claims allegedly infringed by Defendants, are invalid and void, unenforceable, and of no force and effect for failure to comply with one or more of the requirements of Title 35, United States Code, including, without limitation, the requirements of 35 U.S.C. Secs. 102, 103, and 112, and failure to comply with the applicable rules, regulations, and directives of the United States Patent and Trademark Office pertaining to patents including, but not limited to 37 C.F.R. §1.56.

3.    The products that are the subject of Plaintiffs' accusations of infringement, as set forth in the Complaint, do not infringe any claims of the '748, '515, '008 and '038 Patents asserted in the Complaint.

4.    Defendants have not willfully infringed the '748, '515, '008 and/or '038 Patents.

## COUNTERCLAIMS

Defendants/Counter-Plaintiffs, by and through their undersigned attorneys, for their Supplemented Counterclaims against Plaintiffs Dyson Technology Limited and Dyson, Inc. (collectively, "Dyson") aver as follows:

## JURISDICTION AND VENUE

1.    This are counterclaims by Defendants/Counter-Plaintiffs Hoover, Inc., Hoover General LLC, Hoover Limited LLC, Hoover Company I, L.P., and Maytag Corporation,

(hereinafter the "Hoover Counter-Plaintiffs") against Plaintiffs Dyson Technology Limited and Dyson, Inc. (hereinafter "Dyson").

2.      Dyson has engaged in the transaction of business and committed the acts complained of herein in interstate commerce and in the state of Delaware.

3.      These counterclaims arise out of acts that are unrelated to the subject matter of Dyson's claims and are filed pursuant to Federal Rule of Civil Procedure 13(b).

4.      This Court has subject matter jurisdiction over Hoover Counter-Plaintiffs' counterclaim pursuant to 28 U.S.C. §§ 1331 & 1338 and supplemental jurisdiction of the state law claims pursuant to 28 U.S.C. § 1367.

5.      This Court has personal jurisdiction over Dyson because Dyson filed suit in this district.

6.      Venue over the Hoover Counter-Plaintiffs' claims is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because Dyson conducts business in this district and continues to do so, and a substantial part of the events or omissions giving rise to these claims occurred in this district.

## COMMON ALLEGATIONS

7.      At all times relevant hereto, and from at least 2000 to the present, one or more of the Hoover Counter-Plaintiffs, or their predecessors in interest, manufactured and sold Hoover brand vacuum cleaners in the United States in competition with Dyson.  Effective January 31, 2007, by virtue of a corporate reorganization and transaction, Hoover, Inc., Hoover General LLC, Hoover Limited LLC, Hoover Company I, L.P. own the exclusive right to pursue and recover on the claims against Dyson for the injury caused to the Hoover Counter-Plaintiffs, and their predecessors in interest, as set forth herein.

8.    Dyson also manufactures and sells upright vacuum cleaners in the United States, including the DC07, DC14, and DC15 upright vacuum cleaners, and upon information and belief, Dyson upright vacuum cleaners travel in interstate commerce.

9.    The Hoover Counter-Plaintiffs and Dyson are direct competitors in the U.S. market for upright vacuum cleaners.

**Dyson's False and Misleading Suction Power and Cleaning Efficacy Superiority Claims**

10.    In Dyson's marketing campaign for Dyson's upright vacuum cleaners, Dyson has made in the past and continues to make the following false and misleading suction power and cleaning efficacy superiority claims:

i.    The most powerful upright.

ii.    The most powerful upright vacuum cleaner available.

iii.    The most powerful upright for pet hair.

iv.    The Root[8]Cyclone has the highest suction power and picks up more dirt from your home.

v.    Dyson scientists developed the Root[8]Cyclone technology to give higher suction power and pick up more dust.

vi.    More cyclones give higher suction power.

vii.    Double the suction of other vacuums.  After 10 oz of dust.

viii.    When it comes to vacuuming, nothing is more important than suction.

ix.    Higher volumes of air are spread simultaneously through many cyclones to give higher constant suction power - which means you pick up even more dust.

x.    Wide channel picks up large debris that others can leave behind.

11.     These claims appear on Dyson's website, in Dyson print advertisements, in national television commercials for Dyson vacuum cleaners, and on the packaging for Dyson's DC07, DC14, and DC15 upright vacuum cleaners.

12.     These claims, both collectively and individually, communicate to consumers that the Dyson DC07, DC14, and DC15 upright vacuum cleaners are the most powerful upright vacuum cleaners and have more suction power than all other upright vacuum cleaners.

13.     In fact, Dyson upright vacuum cleaners are not the most powerful upright vacuum cleaners and do not have more suction power than all other upright vacuum cleaners.

14.     These claims, both collectively and individually, also communicate to consumers, both expressly and by implication, that the Dyson DC07, DC14, and DC15 upright vacuum cleaners clean carpet better than all other upright vacuum cleaners.

15.     In fact, Dyson upright vacuum cleaners do not clean carpet better than all other upright vacuum cleaners.

16.     The packaging for all Dyson upright vacuum cleaners includes the following suction power chart ("Chart") comparing the suction power of Dyson vacuum cleaners to that of other bag and bagless vacuum cleaners.



17.     This Chart communicates to consumers that Dyson's DC07 upright vacuum cleaner has vastly superior suction power, and therefore will clean carpet up to twice as effectively as all other bag and bagless upright vacuum cleaners.

18.     In fact, Dyson's DC07 upright vacuum cleaner not have more suction power, and does not clean better than all other upright vacuum cleaners.

19.     This Chart also communicates to consumers that Dyson's DC07 upright vacuum cleaner will maintain the highest constant level of suction power.

20.     In fact, Dyson's DC07 upright vacuum does not maintain the highest constant level of suction power.

### Dyson's False and Misleading Design and Performance Claims

21.     Dyson has made in the past and continues to make the following false and misleading claims regarding the design and performance of its upright vacuum cleaners:

     i.     The Dyson cyclones create 100,000 times the force of gravity to spin dirt out of the air, so nothing gets clogged, ever.

ii.   Bags, filters, they all clog with dust and lose suction.  But a Dyson works differently.  Its creates 100,000 times the force of gravity to spin dirt out of the air, so nothing gets clogged, ever.

iii.  [A Dyson] doesn't lose suction.

iv.   The first vacuum cleaner that doesn't lose suction.

v.    Only a Dyson is designed not to lose suction.

vi.   Unlike other vacuum cleaners, Dyson doesn't lose suction.

vii.  Because a Dyson doesn't clog like other vacuums, its suction power remains constant, room after room, after room.

viii. Other vacuums can lose up to half their suction power after a small amount of dust.  Dyson doesn't - it keeps its suction power room after room.

ix.   Dirt and dust are thrown out of the airflow and collected in the bin, not on filters or in bags.

22.    These claims appear on Dyson's website, in Dyson print advertisements, in national television commercials for Dyson vacuum cleaners, and on the packaging for Dyson's DC07, DC14, and DC15 upright vacuum cleaners.

23.    These claims regarding performance and design clearly communicate to consumers that Dyson upright vacuum cleaners do not lose suction.

24.    In fact, Dyson upright vacuum cleaners do lose suction over time.

25.    These claims regarding performance and design also imply that Dyson upright vacuum cleaners do not have filters that can clog.

26.    In fact, Dyson upright vacuum cleaners have at least two filters, a pre-motor filter and a HEPA filter, both of which can clog and require maintenance.

**Dyson's False and Misleading Claims that Other Vacuum**

**Cleaners Do Not  Work Properly**

27.     Dyson makes the following false and misleading claim relating to vacuum cleaners: "Fact: Vacuums don't always work effectively.  Dyson does."

28.     This claim appears in a commercial on Dyson's website and in national television advertisements for Dyson vacuum cleaners.

29.     This claim, in the context of the commercial which depicts a vacuum cleaner failing to pick up dust mites and dirt from carpet, falsely communicate to consumers, both expressly and by implication, that other vacuum cleaners, including the Hoover WindTunnel upright vacuum cleaner, do not work and will leave dirt and dust mites in carpet that a Dyson vacuum cleaner will pick up.

30.     Further, this claim in the context of the commercial falsely communicates to consumers, both expressly and by implication, that other vacuum cleaners, including the Hoover WindTunnel upright vacuum cleaner, do not work due to clogged filters.

31.     In fact, Hoover upright vacuum cleaners do work properly and Hoover WindTunnel vacuum cleaners are more effective than Dyson upright vacuum cleaners at removing dust and dirt from carpet when used as directed.

32.      Dyson makes the following false and misleading claims relating to vacuum cleaners containing bags and filters:

     i.   Ever since the vacuum cleaner was invented its had a basic design flaw… bags, filters, they all clog with dust then lose suction.  The technology simply doesn't work.

     ii.   When vacuum cleaners lose suction, your first instinct is to shake or hit it to unblock the clog.  The problem, however, is more serious.  Bags, filters, they all clog with dust and lose suction.  I just think things should work properly.

     iii.   Other vacuums – the more you use them, the less they work.

iv.   Only a Dyson is designed to not lose suction.  Which make you wonder, what are the others designed to do?

33.   These claims appear on Dyson's website, in Dyson print advertisements, in national television commercials for Dyson vacuum cleaners, and on the packaging for Dyson's DC07, DC14, and DC15 upright vacuum cleaners.

34.   These claims falsely communicate to consumers that other vacuum cleaners, including the Hoover WindTunnel upright vacuum cleaner, do not work properly.

35.   In fact, Hoover upright vacuum cleaners do work properly and Hoover WindTunnel vacuum cleaners are more effective than Dyson upright vacuum cleaners at removing dust and dirt from carpet.

**Dyson's False and Misleading Claims That Its Vacuum Cleaners
are Approved For Allergy Sufferers**

36.   Dyson claims on its packaging for its DC07, DC14 and DC15 upright vacuum cleaners that these vacuum cleaners have been "Approved for allergy sufferers."

37.   This claim, both expressly and by implication, communicates to consumers that Dyson vacuum cleaners provide proven relief from allergy symptoms.

38.   Upon information and belief, Dyson vacuum cleaners have not been approved for allergy sufferers by the United States Food and Drug Administration or by any recognized U.S. organization, and are not an effective method for treating allergy sufferers.

**Dyson's False and Misleading Claims that its Vacuum Cleaners Create 100,000 Times
the Force of Gravity**

39.   Dyson claims in its television advertising that a Dyson vacuum cleaner "…creates 100,000 times the force of gravity to spin the dirt out of the air."

40.     This claim is reinforced in print advertising, including in a tag which accompanies each new Dyson, stating that Dyson Root[8]Cyclone technology "uses 100,000 G of centrifugal force in the cyclones to filter dust from the airflow efficiently."

41.     These claims communicate to consumers that Dyson upright vacuum cleaners create 100,000 times the force of gravity.

42.     In fact, this claim is literally false; the type of cyclone used in Dyson upright vacuum cleaners generates a force far short of 100,000 times the force of gravity.

**Dyson's False Claims that its Dirt Cups are "Hygienic"**

43.     Dyson also claims in its print advertising and on its packaging that its vacuum cleaners are "Hygienic and quick to empty."

44.     This claim falsely communicates to consumers that the removal of dirt from Dyson upright vacuum cleaners is a quick, clean, and hygienic process.

45.     In fact, the removal of dirt from Dyson upright vacuum cleaners is not hygienic because dust particles will become airborne traveling from the cup to the garbage can, thus exposing the user to these now airborne dust particles.

**Dyson's False and Misleading Claim that its upright Vacuum Cleaners
are Made of "Liquid Steel"**

46.     Dyson claims, by way of a small plastic chip on each of its upright vacuum units, that Dyson vacuum cleaners are made of "Liquid Steel."

47.     This claim is misdescriptive and leads consumers to believe that Dyson vacuum cleaners are manufactured with steel and therefore more durable than they really are.

48.     In fact, upon information and belief, Dyson vacuum cleaners are manufactured with molded plastic.

**Dyson's False and Misleading Claims that Dyson Invented
the Integral Hose and "Cyclone Technology"**

49.    Dyson claims in print advertising for its upright vacuum cleaners that "Even the integral hose, seen on most upright vacuum, cleaners, is a Dyson invention."

50.    In fact, Dyson did not invent the integral hose seen on most upright vacuum cleaners.

51.    Dyson also claim in print advertising for its upright vacuum cleaners that "Dyson . . . invented cyclone technology."

52.    In fact, Dyson did not invent cyclone technology.

**Dyson's False and Misleading Claims that The Hoover Company
Was Found Liable for Infringing Dyson's Patent**

53.    Dyson claims in print advertising for its upright vacuum cleaners in the United States that "one of the largest UK vacuum manufacturers tried to imitate a Dyson, and James Dyson was forced back into court to protect his invention again."  Above this copy Dyson has included what appears to be an excerpt from a newspaper with the headline "the High Court last week agreed with James Dyson that Hoover had stolen the secrets of his dual-cyclone vacuum cleaner."

54.    This claim, expressly and by implication, communicates to U.S. consumers that The Hoover Company located in the United States, was found liable for patent infringement.

55.    In fact, neither Maytag nor The Hoover Company was a party to the lawsuit in the United Kingdom and neither Maytag nor The Hoover Company has been found liable for infringement of any Dyson patents.

**Irreparable Injury to the Hoover Counter-Plaintiffs**

56.    Dyson's false and misleading claims have caused and continue to cause the Hoover Counter-Plaintiffs to suffer irreparable injury to their goodwill and reputation, for which the Hoover Counter-Plaintiffs have no adequate remedy at law.

57.    Dyson's false and misleading superiority claims diminish the goodwill established in the Hoover WindTunnel brand upright vacuum cleaner, divert sales from the Hoover Counter-Plaintiffs to Dyson, and tarnish and diminish the Hoover Counter-Plaintiffs' reputation.

58.    The Hoover Counter-Plaintiffs believe that they have lost, and will continue to lose, sales as a direct result of the false claims made by Dyson.  The Hoover Counter-Plaintiffs have been forced to expend considerable monies to counteract the negative effects of Dyson's claims.

**FIRST COUNTERCLAIM**
**(VIOLATION OF LANHAM ACT)**

59.    The Hoover Counter-Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1- 52 of the Counterclaim above.

60.    Dyson's false and misleading advertising claims, as described above, constitute material false and misleading descriptions of fact and material false and misleading representations of fact in interstate commercial advertising and promotion, which materially misrepresent the performance capabilities of its DC07, DC14 and DC15 upright vacuum cleaners and create actual deception, or at least a tendency to deceive a substantial portion of Dyson's intended audience, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

61.    Dyson's false and misleading descriptions of fact and false and misleading representations of fact are willful and intentional, with deceptive intent, making this an exceptional case.

62.    Dyson's false and misleading claims have caused, and will continue to cause, great, immediate, and irreparable harm, to the Hoover Counter-Plaintiffs' business reputation, injury to their goodwill, loss of competitive advantage, and pecuniary damages.

63.    The Hoover Counter-Plaintiffs have no adequate remedy at law.

## SECOND COUNTERCLAIM
### (VIOLATION OF DELAWARE'S DECEPTIVE TRADE PRACTICES STATUTE)

64.    The Hoover Counter-Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1-57 of the Counterclaim above.

65.    Dyson's false and misleading advertising claims also represent that Dyson's upright vacuum cleaners have certain characteristics or benefits that they do not have, and are of a particular standard, quality, or grade of which they are not, and disparage the goods of others, including the Hoover Counter-Plaintiffs, by false or misleading representation of material facts in violation of the Delaware Uniform Deceptive Trade Practices Act, 6 Del. C. § 2532(a) (2005).

66.    Dyson's false and misleading descriptions of fact and false and misleading representations of fact are willful and intentional, with deceptive intent, making this an exceptional case.

67.    Dyson's false and misleading advertising claims have caused, and will continue to cause, great, immediate, and irreparable harm to consumers, the public interest and the Hoover Counter-Plaintiffs' business reputation, goodwill, and competitive advantage.

68.    The Hoover Counter-Plaintiffs have no adequate remedy at law.

## THIRD COUNTERCLAIM
## (DELAWARE COMMON LAW UNFAIR COMPETITION)

69.     The Hoover Counter-Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1-62 of the Counterclaim above.

70.     Dyson's false and misleading advertising claims also represent that Dyson's upright vacuum cleaners have certain characteristics or benefits that they do not have, and are of a particular standard, quality, or grade of which they are not, and disparage the goods of others, including the Hoover Counter-Plaintiffs, by false or misleading representation of materials facts.

71.     Dyson's false and misleading descriptions of fact and false and misleading representations of fact are willful and intentional, with deceptive intent, making this an exceptional case.

72.     Dyson's false and misleading advertising claims have caused, and will continue to cause, great, immediate, and irreparable harm to consumers, the public interest and the Hoover Counter-Plaintiffs' business reputation, goodwill, and competitive advantage.

73.     The Hoover Counter-Plaintiffs have no adequate remedy at law.

### PRAYER FOR RELIEF

As to the Complaint herein, the Hoover Counter-Plaintiffs pray:

1.     That Dyson's Complaint be dismissed with prejudice and that Dyson take nothing from this action.

2.     That this Court find that none of the Hoover Counter-Plaintiffs' products infringe any of Dyson's '748, '515, '008 and '038 Patents.

3.     That this Court award the Hoover Counter-Plaintiffs their costs and attorney fees herein.

17

4.      That this Court award such other and further relief as it deems just and proper.

As to the Counterclaims herein, the Hoover Counter-Plaintiffs pray that this Court enter judgment:

1.      Preliminarily and permanently enjoining Dyson, its officers, subsidiaries, parents, divisions, agents, servants, employees and attorneys, and those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise, from distributing packaging or advertising containing false and misleading claims that its Dyson upright vacuum cleaners 1) have superior power and suction versus all other upright vacuum cleaners on the market; 2) clean better than all other upright vacuum cleaners on the market; 3) do not have filters; 4) do not loose suction; 5) create 100,000 times the force of gravity; 6) are hygienic; 7) are made of "liquid steel"; and 8) are approved for allergy sufferers.

2.      Preliminarily and permanently enjoining Dyson, its officers, subsidiaries, parents, divisions, agents, servants, employees and attorneys, and those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise, from distributing packaging or advertising containing false and misleading claims that 1) other vacuum cleaners do not work properly; 2) Dyson invented the integral hose and "cyclone technology"; and 3) Hoover has been found liable of infringement of Dyson's patents.

3.      Ordering Dyson to recall all packaging or advertising containing false and misleading claims regarding its DC07, DC14 and DC15 upright vacuum cleaners;

4.      Ordering Dyson to publish corrective advertising to dispel the false and deceptive impressions created by its advertising;

5.      Ordering Dyson to pay the Hoover Counter-Plaintiffs' damages, trebled, and their lost profits caused by Plaintiff's false descriptions and misrepresentations;

6.      Ordering Dyson to pay the Hoover Counter-Plaintiffs punitive damages;

7.      Ordering Dyson to pay the Hoover Counter-Plaintiffs its damages, both compensatory and statutory, by reason of Dyson's false advertising and unfair competition;

8.      Ordering Dyson to pay the Hoover Counter-Plaintiffs' costs, disbursements, expenses and attorneys' fees in this action; and

9.      Granting the Hoover Counter-Plaintiffs such other, further and different relief as this Court shall deem just and proper.

## REQUEST FOR JURY TRIAL

Defendants/Counter-Plaintiffs request a jury trial herein.

Respectfully submitted,

/s/ Francis DiGiovanni
Francis DiGiovanni (#3189)
James Heisman (#2746)
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 N. Orange Street
Wilmington, DE  19899
Phone (302) 658-9141
Facsimile (302) 658-5614

Ray L. Weber
Laura J. Gentilcore
Renner, Kenner, Greive, Bobak, Taylor & Weber
400 First National Tower
Akron, OH  44308
Phone (330) 376-1242
Facsimile (330) 376-9646

Kimball R. Anderson
Stephen P. Durchslag
Winston & Strawn LLP
35 West Wacker Drive
Chicago, IL  60601
Phone (312) 558-5600
Facsimile (312) 558-5700

Attorneys for Defendants/Counter-Plaintiffs

## <u>CERTIFICATE OF SERVICE</u>

I, Francis DiGiovanni, hereby certify that on May 22, 2007, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> C. Barr Flinn
> John W. Shaw
> Young Conaway Stargatt & Taylor LLP
> The Brandywine Building
> 1000 West Street, 17th Floor
> Wilmington, Delaware 19801

I further certify that on May 22, 2007, I caused a copy of the foregoing document to be served by hand delivery and e-mail on the above-listed counsel of record, and by e-mail and first class mail on the following counsel of record:

> Garrard R. Beeney
> Richard C. Pepperman, II
> James T. Williams
> Sullivan & Cromwell LLP
> 125 Broad Street
> New York, NY 10004
>
> Steven F. Reich
> Jeffrey S. Edelstein
> Manatt, Phelps & Phillips, LLP
> 7 Times Square
> New York, NY 10004

> /s/      Francis DiGiovanni
> Francis DiGiovanni (#3189)

CHI:1914804.4