IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DYSON TECHNOLOGY LIMITED and DYSON, INC., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civil Action No. 05-434 (GMS) ) ) |
| MAYTAG CORPORATION, | ) ) |
| Defendant. | ) |

## ORDER

1.    On May 17, 2007, the court conducted a pretrial conference in the above-captioned action. During the pretrial conference, the court heard brief oral argument on the parties' motions in limine and reserved ruling on the following related motions: (1) Dyson Technology Limited and Dyson, Inc.'s ("Dyson") motion to exclude Maytag Corporation's ("Maytag") alleged inflammatory accusations regarding Dyson's Transfer Pricing Agreement (the "Dyson TPA") (D.I. 312), and (2) Maytag's motion to bar evidence from Dyson's expert witness Laura Stamm, and any reference to transfer pricing (D.I. 323). Having considered the arguments raised in the parties' submissions (D.I. 312, 323, 324, 327, 337, 349, 350, 363, and 369) and during the pretrial conference, the court will grant in part and deny in part Dyson's motion, and grant in part and deny in part Maytag's motion. The court bases its rulings on the following reasons.

2.    In its motion, Dyson seeks to exclude any evidence and/or argument offered by Maytag to challenge the propriety of the Dyson TPA and related evidence. Specifically, Dyson asserts that Maytag intends to dispute the appropriateness of the Dyson TPA, and focus the jury on irrelevant evidence, which includes the Dyson affiliates' "foreigner" status; James Dyson's ("Mr. Dyson") personal wealth; Mr. Dyson's compensation and return on investment from the Dyson parent

company; and the role of Mr. Dyson's wife and children in that company. (See D.I. 312, at 1, 4-5.) Dyson argues that each of the areas of inquiry is irrelevant under Federal Rule of Evidence 402. Alternatively, Dyson argues, pursuant to Federal Rule of Evidence 403, that any probative value attaching to the above-noted evidence is greatly outweighed by the prejudice it would suffer by the introduction of such evidence.

3.     Maytag's motion seeks two forms of relief from the court: (1) an order excluding any evidence offered by Dyson's expert witness Laura Stamm ("Stamm") regarding transfer pricing arrangements, and (2) an order excluding any evidence relating to Stamm's legal assertions and results thereof. First, Maytag argues that it is improper for Stamm to testify regarding three legal opinions she received from Dyson's attorneys and used in formulating her report. Maytag then argues that Stamm's legal conclusions are incorrect and should, therefore, be excluded. Maytag concludes by arguing that any reference to transfer pricing arrangements by Stamm, or anyone else at Dyson, is irrelevant to the issues in the case and will confuse the jury. (See D.I. 324, at 4.)

4.     Both Dyson and Maytag present their arguments pursuant to Federal Rules of Evidence 402 and 403. Rule 402 addresses the admissibility of relevant evidence and states that "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible." Fed. R. Evid. 402. Rule 403 concerns the exclusion of relevant evidence and provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

5.      The court first addresses the arguments regarding the TPA and testimony by Stamm or other witnesses regarding transfer pricing arrangements. After having read the parties' submissions on the issue and considered the arguments made during the course of the pretrial conference, the court concludes that both parties' motions with respect to transfer pricing arrangements are "stealth" summary judgment motions, which the court does not permit during the motion in limine stage of the litigation.[1]  That being said, the court finds that permitting testimony and evidence regarding transfer pricing agreements would result in a mini trial with respect to the propriety of the Dyson TPA and likely confuse the jury.[2]  Accordingly, the court will exclude all evidence and testimony, including Stamm's (which appears in Section VI of her expert report), regarding transfer pricing and the Dyson TPA.

6.      The court further concludes that it will permit Stamm to testify regarding the other aspects

---

[1] In seeking their relief, both parties essentially ask the court to determine as a matter of law whether Dyson's TPA is a bona fide expense. To wit, Dyson argues that the TPA "is specifically designed to achieve the profit margin that Dyson Inc. would enjoy from an arms-length negotiated purchase price from an unaffiliated entity." (D.I. 337, at 4.) Maytag, on the other hand, argues that transfer pricing is not a bona fide expense, but "merely a way of allocating profits among related entities for tax purposes." (D.I. 324, at 4.) Motions in limine should be utilized to exclude evidence, not to argue for judgment as a matter of law.

[2] Indeed, Dyson's briefing regarding the TPA issue relies on tax laws and tax treatises to argue that the TPA is proper. The propriety of the TPA, however, is largely irrelevant to the issues that the jury must decide in this litigation – patent infringement and false advertising. Entangling the jury in argument as to whether the TPA is proper will serve only to confuse them with respect to the main issues at hand. In fact, the only relevance of the TPA to this litigation is to damages. To that end, the court concludes, in the event that Maytag recovers damages on its false advertising claims, Dyson can request a downward adjustment of that award post-trial and argue to the court that the transfers that occur pursuant to the Dyson TPA are bona fide expenses. *See* 10 Mertens, *Law of Federal Income Taxation* § 38B:50 (updated Apr. 2007) ("The [IRS] and the *courts may determine whether a transfer of consideration is bona fide* according to whether an independent party would have paid a similar amount in an arm's length transaction.") (emphasis added).

of her report. Obviously, the parties are well-versed in the law regarding the impropriety of experts rendering legal opinions. The court has read Stamm's corrected expert rebuttal report and has determined that she does not render improper legal opinions but, rather, bases some conclusions on legal limitations provided by Dyson's attorneys – a fact that Maytag specifically points out in its briefing.[3] (See D.I. 324, at 1.) Based on the foregoing discussion, the court will permit Stamm to testify regarding all topics presented in her expert report, except those regarding transfer pricing that are predominantly presented in Section VI.[4]

7.	Finally, the court has considered Dyson's arguments concerning alleged irrelevant evidence, including the Dyson affiliates' "foreigner" status, Mr. Dyson's personal wealth, Mr. Dyson's compensation and return on investment from the Dyson parent company, and the role of Mr. Dyson's wife and children in that company. The court agrees with Dyson's arguments in part, specifically as they relate to "foreigner" status, Mr. Dyson's personal wealth, and the role of Mr. Dyson's family

---

[3] For the parties' edification, the court notes that two of the three limitations Stamm was asked to assume as true are, in fact, legally incorrect. These limitations are as follows: (1) a finding of willfulness or bad faith, and (2) a maximum of three times the plaintiff's actual damages. Both of these limitations were squarely rejected by the Third Circuit in *Banjo Buddies v. Renosky*. *See* 399 F.3d 168, 171, 174 (3d Cir. 2005) (holding that willfulness is an important equitable factor, but not a prerequisite to an accounting of profits for a violation of section 43(a) of the Lanham Act); *see id.* at 177-178 (A plaintiff can recover an accounting of profits if "the defendant is unjustly enriched, if the plaintiff sustained damages, or if an accounting is necessary" as a deterrent. "These rationales are stated disjunctively; any one will do."); *see also* 15 U.S.C. § 1117(a) (A plaintiff can recover, "subject to the principles of equity . . ., (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action."). The court finds, however, that neither of the legally incorrect limitations play a main role in Stamm's report. Analysis regarding the "willfulness or bad faith" limitation appears nowhere in the report. Analysis regarding the "three times the plaintiff's actual damages" limitation does appear in several footnotes, see D.I. 337 Ex. A, at 29 n.111, 113, that the court has already excluded in determining that transfer pricing evidence is properly excluded.

[4] Additionally, some of Stamm's conclusions appear to be based on her consideration of transfer pricing and will not be permitted as testimony.

in his companies. Evidence regarding these items has only marginal probative value, which is substantially outweighed by the prejudice that Dyson would suffer. The court does find, however, that evidence regarding Mr. Dyson's compensation and return on his investment, as well as his control within the Dyson companies, is highly probative of his bias in this litigation and not substantially outweighed by any prejudice to Dyson.

Therefore, IT IS HEREBY ORDERED that:

1. Dyson's Motion In Limine No. 2 to Exclude Maytag's Inflammatory Accusations Regarding Dyson Inc.'s Transfer Pricing Agreement and Related Evidence (D.I. 312) is GRANTED in part and DENIED in part. The motion is GRANTED with respect to evidence of Dyson affiliates' "foreigner" status, Mr. Dyson's personal wealth, and the role of Mr. Dyson's family in his companies. The motion is DENIED in all other respects.

2. Maytag's Motion In Limine to Bar Evidence Relating to Dyson's Expert Laura Stamm's Legal Conclusions and Reference to Transfer Pricing is GRANTED in part and DENIED in part. The motion is GRANTED with respect to Stamm's reference to transfer pricing, which is found in Section VI of her report. The motion is DENIED with respect to Stamm's analysis based on correct legal limitations provided by Dyson's attorneys.

Dated: May 25, 2007                    /s/ Gregory M. Sleet
                                        UNITED STATES DISTRICT JUDGE