

READ IN OPEN
Court 5/29/07

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DYSON TECHNOLOGY LIMITED and )
DYSON, INC., )
　)
　　　　Plaintiffs, )
　　v. ) C.A. No. 05-434-GMS
　)
HOOVER, INC., HOOVER GENERAL )
L.L.C., HOOVER LIMITED L.L.C., )
HOOVER COMPANY I., L.P. and )
MAYTAG CORPORATION, )
　)
　　　　Defendants.

## PRELIMINARY JURY INSTRUCTIONS

INTRODUCTION

Members of the jury: Now that you have been sworn, I am now going to give you some preliminary instructions to guide you in your participation in the trial.

These instructions will give you some general rules and guidance that might apply to any civil case. However, because this is a patent trial that will deal with a subject matter that is not within the every day experience of most of us, I will also give you some additional preliminary instructions regarding patents to assist you in discharging your duties as jurors.

THE PARTIES AND THEIR CONTENTIONS

Before I begin with those instructions, however, allow me to give you an overview of who the parties are and what each contends.

You may recall that during the process that led to your selection as jurors, I advised you that this is a civil action for patent infringement arising under the patent laws of the United States.

The parties in this case are the plaintiffs, Dyson Technology Limited and Dyson, Inc. (collectively, "Dyson"), and the defendants, Hoover, Inc., Hoover General L.L.C., Hoover Limited L.L.C., Hoover Company I, L.P. and Maytag Corporation (collectively, "Hoover").

The dispute between the parties relates to the manufacture and sale of vacuum cleaners employing cyclonic technology. During the trial, the parties will offer testimony to familiarize you with this technology.

Dyson owns three United States Patents that it alleges were infringed by Hoover: Patent No. 4,643,748; Patent No. 4,826,515; and Patent No. 4,853,008. Because these numbers are so long, patents are usually referred to by their last three digits. For example, Patent No. 4,643,748 is called simply "the '748 patent." Dyson contends that Hoover made, used, sold, and offered for sale a vacuum cleaner—called the Hoover "Fusion"—that Dyson contends infringes these patents and that such infringement is willful. Dyson seeks damages for Hoover's alleged infringement.

Dyson asserts that Hoover's Fusion vacuum cleaner infringes certain specific claims of the patents in suit. The claims, as I will explain, are the part of a patent that defines the invention. The claims Dyson asserts are infringed may be called "asserted claims." Similarly, I, and the attorneys and witnesses, may refer to the Hoover "Fusion" as the "accused product." An "accused product" simply refers to a product that Dyson asserts infringes its patents. You, of course, will determine whether or not the accused product infringes the asserted claims of any of Dyson's patents.

Persons or companies sued for infringing a patent can deny infringement. In this case, Hoover denies that it infringes Dyson's patents. I will tell you more about infringement in a few minutes. I will instruct you as to defenses to a charge of infringement and possible damages resulting from a finding of infringement in my instructions to you at the close of the evidence.

DUTIES OF THE JURY

So, let me begin with those general rules that will govern the discharge of your duties as jurors in this case.

It will be your duty to find from the evidence what the facts are. You and you alone will be the judges of the facts. You will then have to apply to those facts the law as I will give it to you both during these preliminary instructions and at the close of the evidence. You must follow that law whether you agree with it or not. In addition to instructing you about the law, at the close of the evidence, I will provide you with instructions as to what the claims of the patents mean. Again, of course, you are bound by your oath as jurors to follow these and all the instructions that I give you, even if you personally disagree with them. All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy, or prejudice that you may feel toward one side or the other influence your decision in any way. Also, do not let anything that I may say or do during the course of the trial influence you. Nothing that I may say or do is intended to indicate, or should be taken by you as indicating, what your verdict should be.

EVIDENCE

The evidence from which you will find the facts will consist of the testimony of witnesses; the testimony of witnesses consists of the answers of the witnesses to questions posed

by the attorneys or the Court—you may not ask questions. Testimony of witnesses will be presented both through witnesses sitting here in the witness stand and through previously recorded testimony, which may be read aloud or shown to you in video form. Evidence will also consist of documents and other things received into the record as exhibits, and any facts that the lawyers agree to or stipulate to or that I may instruct you to find.

Certain things are not evidence and must not be considered by you. I will list them for you now:

1. Statements, arguments, and questions by lawyers are not evidence.
2. Objections to questions are not evidence. Lawyers have an obligation to their clients to make objections when they believe evidence being offered is not proper under the rules of evidence. You should not be influenced by the objection or by the Court's ruling on it. If the objection is sustained, ignore the question. If it is overruled, treat the answer like any other. If you are instructed that some item of evidence is received for a limited purpose only, you must follow that instruction.
3. Testimony that the Court has excluded or told you to disregard is not evidence and must not be considered.
4. Anything you may have seen or heard outside the courtroom is not evidence and must be disregarded. You are to decide the case solely on the evidence presented here in the courtroom.

There are two kinds of evidence: direct and circumstantial. Direct evidence is direct proof of a fact, such as testimony of an eyewitness. Circumstantial evidence is proof of facts from which you may infer or conclude that other facts exist. As a general rule, the law makes no

distinction between these two types of evidence, but simply requires that you find facts from all the evidence in the case, whether direct or circumstantial or a combination of the two.

CREDIBILITY OF WITNESSES – WEIGHING CONFLICTING TESTIMONY

You are the sole judges of each witness's credibility. You should consider each witness's means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness's biases, prejudices, or interests; the witness's manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

If you find the testimony to be contradictory, then it is your duty and privilege to believe the testimony that, in your judgment, is most believable and disregard any testimony that, in your judgment, is not believable. This instruction applies to the testimony of all witnesses, including expert witnesses.

BURDEN OF PROOF

As I have already told you, in this case, Dyson is the owner of three U.S. patents that it contends Hoover infringed. Dyson, therefore, has the burden of proving infringement by what is called a preponderance of the evidence. That means Dyson has to produce evidence that, considered in the light of all the facts, leads you to believe that what Dyson alleges is more likely true than not. To put it differently, if you were to put Dyson's and Hoover's evidence on opposite sides of a scale, the evidence supporting Dyson's allegations would have to make the scale tip somewhat on its side. If Dyson fails to meet this burden, the verdict must be for Hoover. Dyson must also prove its damages by a preponderance of the evidence.

Dyson also contends that Hoover willfully infringed the patents in suit. Dyson must prove willful infringement by clear and convincing evidence. Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a factual contention is highly probable. Proof by clear and convincing evidence is thus a higher burden than proof by a preponderance of the evidence.

Those of you who have sat on criminal cases will have heard of proof beyond a reasonable doubt. That requirement does not apply to a civil case; therefore, you should put it out of your mind.

## GENERAL GUIDANCE REGARDING PATENTS

I will now give you a general overview of what a patent is and how one is obtained.

### A. Constitutional Basis for Patent Grant

The United States Constitution, Article I, Section 8, grants the Congress of the United States the power to enact laws "to promote the progress of science and the useful arts, by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries."

### B. Exclusionary Right and Term of a Patent

The United States Patent and Trademark Office is responsible for reviewing patent applications and granting patents. Once the "Patent Office" or "PTO" has issued a patent, the patent owner has the right to exclude others from making, using, selling, or offering for sale the invention throughout the United States for the length of the patent term.

A person who, without the patent owner's authority makes, uses, sells, or offers to sell a product that is covered by one or more claims of a valid patent, infringes the patent.

When a patent expires, the patent becomes public domain, and the public is free to use the technology disclosed therein.

### The Parts Of A Patent

I will next briefly describe the parts of a patent and some of the procedures followed by those attempting to obtain patents. Many of the terms used by me in this description are contained in a "Glossary of Patent Terms," which I will give to you along with a copy of these preliminary instructions. Feel free to refer to the Glossary throughout the trial.

Under the patent laws, the United States Patent and Trademark Office examines patent applications and issues patents. A person applying for a patent must include a number of items in his or her application, including: (1) a detailed description of the invention in terms sufficiently full, clear, concise and exact to enable any person skilled in the art to which the invention pertains to be able to make and use the invention; (2) a disclosure of the best mode of carrying out the invention known to the inventor at the time of filing; and (3) one or more claims.

The application includes a written description of the invention called a "specification" and may include drawings that illustrate the invention. The specification concludes with one or more claims that particularly and distinctly define the subject matter that the inventor regards as his or her invention. When a patent application is received at the Patent and Trademark Office, it is assigned to an examiner, who examines the application, including the claims, to determine whether the application complies with the requirements of the U.S. patent laws. The examiner

reviews the prior work of others in the form of files of patents and publications. This type of material is called "prior art." Prior art is generally technical information and knowledge that was known to the public either before the invention by the applicant or more than one year before the filing date of the application. The compilation of the papers concerning the proceedings before the Patent Office is called the "prosecution history," "file wrapper," or "file history." The PTO does not have its own laboratories or testing facilities.

The examiner may "reject" the application claims if he or she believes that they are applications for inventions that are not patentable in light of the prior art, or because the patent specification does not adequately describe the claimed inventions. The applicant may then amend the claims to respond to the examiner's rejections. If, after reviewing the prior art maintained at the PTO, the examiner concludes that the claims presented by the applicant define the applicant's claimed invention over the most relevant known prior art in a manner that is patentable and that the patent meets the other requirements for patentability, the application is granted as a U.S. patent.

Summary Of The Patent Issues

In this case, you must decide several things according to the instructions that I will give you at the end of the trial. Those instructions will repeat this summary and will provide more detail. One thing you will need not decide is the meaning of the patent claims that I have already construed. That is one of my jobs – to explain to you what the patent claims mean. By the way, the word "claims" is a term of art and I will instruct you on its meaning at trial's end. Meanwhile, you will find a definition in the Glossary attached to these preliminary instructions. In essence, you must decide:

(1) whether Dyson has proven by a preponderance of the evidence that Hoover's accused product infringes one or more of the asserted claims of one or more of the three patents in suit;

(2) for those patents that are infringed, whether Dyson has proven its measure of damages for the infringement by a preponderance of the evidence; and

(3) if you find that one or more of Dyson's patents are infringed, whether Dyson has proven by clear and convincing evidence that this infringement was willful.

CONDUCT OF THE JURY

Now, a few words about your conduct as jurors.

First, I instruct you that during the trial you are not to discuss the case with anyone or permit anyone to discuss it with you. Until you retire to the jury room at the end of the case to deliberate on your verdict, you simply are not to talk about this case. If any lawyer, party, or witness does not speak to you when you pass in the hall, ride the elevator, or the like, remember it is because they are not supposed to talk with you nor you with them. In this way, any unwarranted and unnecessary suspicion about your fairness can be avoided. If anyone should try to talk to you about the case, bring it to the Court's attention promptly.

Second, do not read or listen to anything touching on this case in any way.

Third, do not try to do any research or make any investigation about the case on your own.

Finally, do not form any opinion until all the evidence is in. Keep an open mind until you start your deliberations at the end of the case.

During the trial, I will permit you to take notes. A word of caution is in order. There is always a tendency to attach undue importance to matters that one has written down. Some

DB01:2400917.1                                                                                           059155.1003

testimony that is considered unimportant at the time presented, and thus not written down, may take on greater importance later in the trial in light of all the evidence presented. Therefore, you are instructed that your notes are only a tool to aid your own individual memory and that you should not compare your notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence. Your notes are not evidence, and are by no means a complete outline of the proceedings or a list of the highlights of the trial. Above all, your memory should be your greatest asset when it comes time to deliberate and render a decision in this case.

So, if you do take notes, leave them in your seat at the end of the day, and my Deputy will collect them and return them to your seat the next day. And, remember that they are for your own personal use.

I will give you detailed instructions on the law at the end of the case, and those instructions will control your deliberations and decision.

COURSE OF THE TRIAL

This trial, like most jury trials, comes in seven stages or phases. We have already been through the first phase, which was to select you as jurors. The remaining stages are:

(2)  These preliminary instructions to you;

(3)  Opening statements which are intended to explain to you what each side intends to prove and are offered to help you follow the evidence. The opening statements are not evidence but simply a roadmap for what each side believes the evidence will be. The lawyers are not required to make opening statements at this time or they may defer this opening until it is their turn to present evidence;

(4) The presentation of the evidence which will include live witnesses and previously recorded testimony, as well as documents and things;

(5) My final instructions on the law to you;

(6) The closing arguments of the lawyers which will be offered to help you make your determination. These, likewise, are not evidence; and, finally,

(7) Your deliberations where you will evaluate and discuss the evidence among yourselves and determine the outcome of the case.

Please keep in mind that evidence is often introduced somewhat piecemeal. So, as the evidence comes in, you as jurors need to keep an open mind.

We will begin shortly, but first I want to outline the anticipated schedule of the trial.

TRIAL SCHEDULE

Though you have heard me say this during the voir dire, I want to again outline the schedule I expect to maintain during the course of this trial.

This case is expected to take 5 days to try. We will normally begin the day at 9:00 A.M. promptly. We will go until 1:00 P.M. and, after a one hour break for lunch, from 2:00 P.M. to 4:30 P.M. There will be a fifteen minute break at 11:00 A.M. and another fifteen minute break at 3:15 P.M. The only significant exception to this schedule may occur when the case is submitted to you for your deliberations. On that day, the proceedings might last beyond 4:30 P.M. We will post a copy of this schedule for your convenience in the jury deliberation room.

# GLOSSARY OF PATENT TERMS

| | |
|---|---|
| Applicants | The named inventors who are applying for the patent. |
| Assignment | Transfer of ownership rights in a patent or patent application from one person or company to another. |
| Claims | The part of a patent that defines the invention. These are found at the end of the patent specification in the form of numbered paragraphs. A patent may have one or more claims. |
| Disclosure of Invention | The part of the patent specification that explains how the invention works and usually includes a drawing. |
| File Wrapper, File History or Prosecution History | The written record of proceedings in the United States Patent and Trademark Office ("Patent Office" or "PTO"), including the original patent application and later rejections, responses to rejections and other communications between the Patent Office and the applicant. |
| Patent Application | The initial papers filed in the Patent Office by an applicant. These typically include a specification, drawings, claims and the oath (Declaration) of the applicant. |
| Patent Examiners | Personnel employed by the Patent Office having expertise in various technical areas who review (examine) patent applications to determine whether the claims of a patent application are patentable and whether the disclosure adequately describes the invention. |
| Prior Art | Any information that is used to describe public, technical knowledge prior to the invention by the applicant or more than a year prior to the filing of his/her application. |
| Prior Art References | Any item of prior art (publication, patent or product) used to determine patentability. |
| Specification | The part of the patent application or patent that describes the preferred embodiment(s) of the invention, and may include drawings. The specification does not define the invention, only the claims do. |