IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DYSON TECHNOLOGY LIMITED and DYSON, INC., | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | C.A. No. 05-434-GMS |
| HOOVER, INC., HOOVER GENERAL L.L.C., HOOVER LIMITED L.L.C., HOOVER COMPANY I, L.P. and MAYTAG CORPORATION, | ) ) ) ) ) ) | |
| Defendants. | ) | |

## JOINT PROPOSED FINAL JURY INSTRUCTIONS (PATENT)

C. Barr Flinn (No. 4092)
John W. Shaw (No. 3362)
Adam W. Poff (No. 3990)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
1000 West Street, 17th Floor
Wilmington, Delaware  19801
(302) 571-6600
apoff@ycst.com

Garrard R. Beeney
Richard C. Pepperman, II
James T. Williams
Adam R. Brebner
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
(212) 558-4000

Steven F. Reich
MANATT, PHELPS & PHILLIPS, LLP
7 Times Square
New York, New York  10036
(212) 790-4500

*Attorneys for Plaintiffs Dyson
Technology Limited and Dyson, Inc.*

May 24, 2007

Francis DiGiovanni (No. 3189)
Stephanie O'Byrne (No. 4446)
CONNOLLY BOVE LODGE & HUTZ LLP
The Nemours Building
1007 N. Orange Street
Wilmington, Delaware  19899
(302) 658-9141
fdigiovanni@cblh.com

Kimball R. Anderson
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois  60601
(312) 558-5600

Ray L. Weber
Laura J. Gentilcore
RENNER, KENNER, GREIVE,
BOBAK,TAYLOR & WEBER
400 First National Tower
Akron, Ohio  44308
(330) 376-1242

*Attorneys for Defendants Hoover, Inc.,
Hoover General L.L.C., Hoover Limited
L.L.C., Hoover Company I, L.P. and Maytag
Corporation*

# TABLE OF CONTENTS

1. General Instructions ........................................................................................ 1

   1.1 Introduction and Jurors' Duties ................................................................ 1

   1.2 Burdens of Proof ...................................................................................... 3

   1.3 Evidence Defined ...................................................................................... 4

   1.4 Direct and Circumstantial Evidence ........................................................ 5

   1.5 Statements of Counsel .............................................................................. 6

   1.6 Depositions as Substantive Evidence ...................................................... 7

   1.7 Demonstrative Evidence Not Admitted .................................................... 8

   1.8 Consideration of the Evidence .................................................................. 9

   1.9 Credibility of Witnesses .......................................................................... 10

   1.10 Bias ........................................................................................................ 12

   1.11 Number of Witensses ............................................................................ 13

   1.12 Improper Considerations ...................................................................... 14

   1.13 Expert Testimony .................................................................................. 15

   1.14 Stipulated Facts .................................................................................... 16

2. The Parties and Their Contentions .................................................................. 17

   2.1 The Parties and Their Contentions .......................................................... 17

   2.2 Summary of Patent Issues ...................................................................... 18

3. Infringement .................................................................................................... 19

   3.1 Infringement–Generally .......................................................................... 19

   3.2 Claim Infringement ................................................................................ 20

3.3   Construction of Claims ............................................................... 21

3.4   Independent and Dependent Claims ................................................ 22

3.5   Open Ended of "Comprising" Claims .............................................. 23

3.6   Means-plus-Function Claim Limitations .......................................... 24

3.7   Construction of the Claims at Issue ............................................... 27

3.8   Infringement–Every Claim Limitation Must Be Present, Either Literally
      or Under the Doctrine of Equivalents .......................................... 30

3.9   Infringement–Means-plus-Function Claim Limitations ........................ 32

3.10  Infringement–Elements at Issue ................................................... 34

3.11  Infringement–Intent to Infringe is Immaterial ................................. 38

3.12  Determination of Infringement .................................................... 39

4.    Damages ................................................................................... 40

4.1   Generally ................................................................................ 40

4.2   Compensatory Patent Damages in General ..................................... 41

4.3   Reasonable Certainty .................................................................. 42

4.4   Reasonable Royalty as a Measure of Damages ................................. 43

4.5   Factors for Determining Reasonable Royalty ................................... 44

5.    Willful Infringement .................................................................... 46

6.    Deliberation and Verdict .............................................................. 48

## FINAL INSTRUCTIONS

1. **General Instructions**

   1.1   **Introduction and Jurors' Duties**

   Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case.

   Each of you has been provided a copy of these instructions. You may read along as I deliver them if you prefer; however, I would encourage you to focus your attention on me while the instructions are being read. You will be able to take your copies with you into your deliberations and refer to them at that time, if necessary.

   I will start by explaining your duties and the general rules that apply in every civil case.

   Then I will explain some rules that you must use in evaluating particular testimony and evidence.

   I will explain the positions of the parties and the law you will apply in this case.

   Finally, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.

   Please listen very carefully to everything I say.

   Members of the jury, it is important that you bear in mind the distinction between your duties and my duties. You have two main duties as jurors. The first one is to decide what the facts are from the evidence that you saw and heard here in court. You are the sole judges of the facts. It is your judgment, and your judgment alone, to determine what the facts are, and nothing I have said or done during this trial was meant to influence your decisions about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide if, by the evidentiary standards I give you, the defendant is liable.

Now, as far as my duty is concerned, I have the duty of advising you about the law that you should apply to the facts as you find them. You are not to consider whether the principles I state to you are sound or whether they accord with your own views about policy. You are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. You must accept them despite how you feel about their wisdom. This includes both the instructions that I gave you before and during the trial, and these instructions. All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

_Authority_: Sample Miscellaneous Jury Instructions (Sleet, J.) (rev. January 18, 2006).

## 1.2    Burdens of Proof

Dyson has the burden to prove its claims of patent infringement and damages by a preponderance of the evidence. That means Dyson must produce evidence that, when considered in light of all of the facts, leads you to believe that what Dyson claims is more likely true than not. To put it differently, if you were to put Dyson's and Hoover's evidence on the opposite sides of a scale, the evidence supporting Dyson's claims would have to make the scales tip somewhat on Dyson's side.

In addition, Dyson must prove its claim of willful infringement by clear and convincing evidence and not by a preponderance of the evidence, the standard that applies to Dyson's other claims in this case. Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a fact is highly probable.

Finally, keep in mind that "proof beyond a reasonable doubt" does not play any part in this case and you therefore should not consider it at all in your deliberations.

*Authority.* Preliminary Jury Instructions–Patent (Sleet, J.) (rev. January 18, 2006); Uniform Jury Instructions for Patent Cases in the United States Court for the District of Delaware § 1.3 (March 1993).

### 1.3    Evidence Defined

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath, the exhibits that I allowed into evidence, and the stipulations to which the lawyers agreed.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. The arguments of the lawyers are offered solely as an aid to help you in your determination of the facts. Their questions and objections are not evidence. My legal rulings are not evidence. My comments and questions are not evidence.

During the trial, I may have not let you hear the answers to some of the questions the lawyers asked. I may also have ruled that you could not see some of the exhibits that the lawyers wanted you to see. You must completely ignore all of these things. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

Make your decision based only on the evidence, as I have defined it here, and nothing else.

_Authority_: Sample Miscellaneous Jury Instructions (Sleet, J.) (rev. January 18, 2006).

### 1.4    Direct and Circumstantial Evidence

You have heard the terms direct and circumstantial evidence.

Direct evidence is evidence like the testimony of an eyewitness which, if you believe it, directly proves a fact. If a witness testified that she saw it raining outside, and you believed her, that would be direct evidence that it was raining.

Circumstantial evidence is a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence. The law makes no distinction between the weight that you should give to either one, nor does it say that one is any better than the other. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

_Authority_: Sample Miscellaneous Jury Instructions (Sleet, J.) (rev. January 18, 2006).

**1.5     Statements of Counsel**

A further word about statements and arguments of counsel. The attorneys' statements and arguments are not evidence. Instead, their statements and arguments are intended to help you review the evidence presented. If you remember the evidence differently from the attorneys, you should rely on your own recollection.

The role of attorneys is to zealously and effectively advance the claims of the parties they represent within the bounds of the law. An attorney may argue all reasonable conclusions from evidence in the record. It is not proper, however, for an attorney to state a personal opinion as to the truth or falsity of any testimony or evidence. What an attorney personally thinks or believes about the testimony or evidence in a case is not relevant, and you are instructed to disregard any personal opinion or belief concerning testimony or evidence that an attorney has offered during opening or closing statements, or at any other time during the course of the trial.

*Authority*: Sample Miscellaneous Jury Instructions (Sleet, J.) (rev. January 18, 2006).

**1.6    Depositions as Substantive Evidence**

During this trial, you have heard testimony from the playing of videotape excerpts or the reading of written excerpts from depositions. A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded.

Deposition testimony is entitled to the same consideration and is to be judged, insofar as possible, in the same way as if the witness testified in person here in the courtroom.

_Authority_: Fed. R. Civ. P. 32; 4 Leonard B. Sand _et al._, _Modern Federal Jury Instructions_, Inst. 74-14 (2006).

-7-

### 1.7    Demonstrative Evidence Not Admitted

Some charts, summaries and graphics used by the parties during the trial were not admitted into evidence. These were shown to you in order to make the other evidence more meaningful and to aid you in considering the evidence. They are no better than the testimony or the documents upon which they are based, and are not themselves independent evidence. Therefore, you are to give no greater consideration to these charts, summaries and graphics than you would give to the evidence upon which they are based.

It is for you to decide whether the charts, summaries and graphics correctly present the information contained in the testimony and exhibits on which they were based. You are entitled to consider the charts, summaries and graphics if you find that they are of assistance to you in analyzing and understanding the evidence.

_Authority_: 4 Leonard B. Sand _et al._, _Modern Federal Jury Instructions_, Inst. 74-12 (2006).

### 1.8    Consideration of Evidence

You should use your common sense in weighing the evidence.  Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves.  If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

*Authority*:  Sample Miscellaneous Jury Instructions (Sleet, J.) (rev. January 18, 2006); Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware § 1.5 (March 1993).

**1.9     Credibility of Witnesses**

You are the sole judges of each witness's credibility. You should consider each witness's means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness's biases, prejudices, or interests; the witness's manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

If you find the testimony to be contradictory, then it is your duty and privilege to believe the testimony, if any, that, in your judgment, is believable and disregard any testimony that, in your judgment, is not believable.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there is evidence tending to prove that the witness testified falsely about some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony he or she gave at trial. You have the right to distrust such witness's testimony in other particulars, and you may reject all or some of the testimony of that witness or give it such credibility as you may think it deserves.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth. People may tend to forget some things or remember other things inaccurately. If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

-10-

This instruction applies to all witnesses.

*Authority*:  Sample Miscellaneous Jury Instructions (Sleet, J.) (rev. January 18, 2006).

**1.10    Bias**

In deciding whether to believe a witness, you should consider any evidence of hostility or affection which the witness may have towards one of the parties, or other interest or motive the witness may have in cooperating with a particular party.

It is your duty to consider whether the witness has permitted any such bias or interest to color his or her testimony. In short, if you find that a witness is biased, you should view his or her testimony with caution, weigh it with care and subject it to close and searching scrutiny.

_Authority_: 4 Leonard B. Sand _et al._, _Modern Federal Jury Instructions_, Inst. 76-2 (2006).

### 1.11  Number of Witnesses

One more point about the witnesses.  Sometimes jurors wonder if the number of witnesses who testified makes any difference.

Do not make any decisions based only on the number of witnesses who testified. What is more important is how believable the witnesses were, and how much weight you think their testimony deserves.  Concentrate on that, not the numbers.

*Authority*:  Sample Miscellaneous Jury Instructions (Sleet, J.) (rev. January 18, 2006).

## 1.12    Improper Considerations

Also, let me remind you that it would be improper for you to consider any personal feelings you may have about the national origin or race of the parties or witnesses.

The parties to this case are entitled to a trial free from prejudice. Our judicial system cannot work unless you reach your verdict through a fair and impartial consideration of the evidence.

*Authority*:  4 Leonard B. Sand *et al.*, *Modern Federal Jury Instructions*, Inst. 71-9 (2006).

### 1.13    Expert Testimony

Expert testimony is testimony from a person who has a special skill or knowledge in some science, profession or business.  This skill or knowledge is not common to the average person but has been acquired by the expert through special study or experience.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness.  Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case.

*Authority:* Sample Miscellaneous Jury Instructions (Sleet, J.) (rev. January 18, 2006).

### 1.14   Stipulated Facts

Dyson and Hoover have stipulated–that is, they have agreed–that certain facts are as counsel have read into the record.  You therefore should treat those facts as having been proved to be true.

2.    **The Parties and Their Contentions**

2.1    **The Parties and Their Contentions**

Before I instruct you on the law that you wil apply in this case, let me explain the positions of the parties and their contentions

As I stated at the outset of this trial, the parties to this case are the plaintiffs, Dyson Technology Limited and Dyson, Inc. (collectively, "Dyson"), and the defendants, Hoover, Inc., Hoover General L.L.C., Hoover Limited L.L.C., Hoover Company I, L.P. and Maytag Corporation (collectively, "Hoover").

Dyson accuses Hoover of infringing certain claims of three patents: (i) claim no. 14 of the '515 patent; (ii) claim nos. 15, 16 and 17 of the '748 patent; and (iii) claim nos. 1, 2, 3, 7, 11, 23, 24 and 25 of the '008 patent. The product accused of infringement in this case is the Hoover Fusion vacuum cleaner. You have seen the accused product during the course of this trial. Dyson seeks damages in the form of a reasonable royalty for Hoover's infringing use of Dyson's inventions. Dyson also seeks a finding from you that Hoover's infringement of its patents was willful.

Hoover is the defendant in this case. It denies that the Hoover Fusion vacuum cleaner infringes any of these claims and therefore contends that Dyson is not entitled to any damages. It also denies that any infringement was willful.

## 2.2    Summary of Patent Issues

In this case, you must decide the following three things according to the instructions that I am now providing to you:

(1)    whether Dyson has proven by a preponderance of the evidence that the Hoover Fusion infringes any of the twelve asserted claims of the three patents in suit;

(2)    if you find infringement, whether Dyson has proven its measure of damages by a preponderance of the evidence; and

(3)    if you find infringement, whether Dyson has proven by clear and convincing evidence that such infringement by Hoover was willful.

I will now give you more detailed instructions about each of these issues and the patent laws as they specifically relate to this case.  If you would like to review my instructions at any time during your deliberations, they will be available to you in the jury room.

3.       **Infringement**

    3.1    **Infringement–Generally**

        As I stated before, Dyson alleges that Hoover infringes claim no. 14 of the '515 patent, claim nos. 15, 16 and 17 of the '748 patent, and claim nos. 1, 2, 3, 7, 11, 23, 24, and 25 of the '008 patent.  If any person makes, uses, sells or imports what is covered by a patent claim without the patent owner's permission, that person is said to infringe the patent.

*Authority*:    35 U.S.C. § 271(a)

### 3.2    Claim Infringement

To decide whether Hoover has infringed Dyson's patent, you will have to understand the patent "claims." As I told you at the beginning of the trial, the claims of a patent are the numbered paragraphs at the end of a patent. The claims describe the invention made by the inventor. This is what the patent owner owns and what the patent owner may prevent others from making, selling or importing.

Only the claims of the patent can be infringed. A patent also includes drawings and discussion of examples of the invention, but the drawings and examples cannot be infringed. You should not compare Hoover's product with any specific drawing or example set out in the '515, '748, or '008 patent or with any Dyson product. The only correct comparison is with the language of the claims themselves, with the meaning I will give you.

Each separate claim of a patent represents separate patent protection given to a patent owner. The law does not require infringement of all the claims in a patent. Each of the claims must be considered individually, and to show infringement of a patent, Dyson need only establish that one of the claims of that patent has been infringed.

_Authority_: Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware § 3.1 (March 1993); ABA, _Model Jury Instructions: Patent Litigation_, § 7.1 (2005).

**3.3    Construction of Claims**

In deciding whether or not an accused product infringes a patent, the first step is to understand the meaning of the words used in the patent claims.

It is my job to determine what the patent claims mean and to instruct you about that meaning. You must accept the meanings I give you and use them when you decide whether or not the patent is infringed.

Before I instruct you about the meaning of the words of the claims, I will explain to you the different types of claims that are at issue in this case.

It may be helpful to refer to the copy of the patents that you have been given as I discuss the claims at issue here. The claims are found at the end of each patent. The verdict form that will be provided to you when I conclude my instructions will list the claims at issue.

_Authority_: _Markman v. Westview Instruments, Inc._, 517 U.S. 370 (1996); ABA, _Model Jury Instructions: Patent Litigation_ § 6.1 (2005).

**3.4    Independent and Dependent Claims**

Patent claims may exist in two forms, referred to as independent claims and dependent claims. An independent claim does not refer to any other claim of the patent. Thus, it is not necessary to look at any other claim to determine what an independent claim covers. Claim 14 of the '515 patent, claim 15 of the '748 patent and claims 1 and 23 of the '008 patent are independent claims.

A dependent claim refers to at least one other claim in the patent. A dependent claim includes each of the limitations of the other claim or claims to which it refers, as well as the additional limitations recited in the dependent claim itself. Therefore, to determine what a dependent claim covers, it is necessary to look at both the dependent claim and the other claim or claims to which it refers.

For example, claim 2 of the '008 patent is a dependent claim. It refers to claim 1. To determine what dependent claim 2 covers, the words of that claim and the words of claim 1 must be read together.

You are not to imply the limitations or words of the dependent claims into the independent claims if the independent claims do not include the same limitations.

_Authority_: 35 U.S.C. § 112 ¶ 4; ABA, _Model Jury Instructions: Patent Litigation_ § 6.2 (ABA 2005); Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware § 3.3 (March 1993).

### 3.5    Open Ended or "Comprising" Claims

The beginning portion, or preamble, of all the claims at issue use the words "comprising" or "including." "Comprising" is interpreted the same as "including," and both mean "including" or "containing." A claim that uses the word "comprising" or "including" is not limited to products having only the elements that are recited in the claim, but also covers products that add additional elements. For example, a claim to a table comprising the three elements of a (1) tabletop, (2) legs and (3) glue would be infringed by a table with those elements and additional structures, such as a leaf or wheels on the table's legs not claimed in the patent.

_Authority_: ABA, _Model Jury Instructions: Patent Litigation_ § 6.5.1 (2005); _Hewlett-Packard Co. v. Repeat-O-Type Stencil Mfg. Corp._, 123 F.3d 1445, 1451 (Fed. Cir. 1997) ("The claim term 'including' is synonymous with 'comprising' thereby permitting the inclusion of the unnamed components.")

## 3.6    Means-plus-Function Claim Limitations

[**Dyson proposes:**   Some patent claim limitations may describe a "means" for performing a function, rather than describing the structure that performs the function.  For example, let's assume a patent describes a table where the legs are glued to the tabletop.  One way to claim the table is to recite the tabletop, four legs and glue between the legs and the tabletop.  Another way to claim the table is to recite the tabletop and the legs, but, rather than recite the glue, recite a "means for securing the legs to the tabletop."  This second type of claim limitation is called a "means-plus-function" limitation.  It describes a means for performing the function of securing the legs to the tabletop, rather than expressly reciting the glue.

When a claim limitation is in the means-plus-function in form, it covers the structures described in the patent specification for performing the function stated in the claim, as well as any structure that is equivalent to the described structures.  In our example, the claim covers a table using glue to secure the legs to the tabletop, as described in the patent, and any equivalent structure that performs the function of securing the legs to the tabletop, such as nailing the legs to the tabletop.

Claim 14 of the '515 patent includes a means-plus-function limitation.  In instructing you about the meaning of the means-plus-function claim limitation, I will tell you, first, the function that the means-plus-function claim limitation performs, and, second, the structure disclosed in the patent specification that corresponds to the means-plus-function limitation.]

[**Hoover proposes:**   Some patent claim limitations may be written in what is known as a "means-plus-function" format.  A means-plus-function element is a claim element that claims a means for performing a specific function.  For example, a table could be claimed in

-24-

a patent as being a tabletop, legs and means for attaching the legs to the tabletop.   The means-plus-function element would cover structures described in the specification that perform the required function of "attaching the legs to the tabletop."

I will now explain the special rules that apply to this type of claim language. First, the accused device must perform the specified function.  Second, if Defendant's accused product does not perform the required function, you must identify the structure in Defendant's accused product that actually performs this function.  Finally, you must determine whether that accused structure is the same as or equivalent to the structure identified in the patent for performing the required function.  If the structure of the accused device is the same as, or equivalent to, the structure in the patent, then the means-plus-function element of the claim is present.

Two structures are equivalent if a person of ordinary skill in the art would consider the differences between them to be insubstantial.  One way to determine this is to look at whether or not the accused structure performs the identical function in substantially the same way to achieve substantially the same result.]

**[Dyson submits that Hoover's proposed instructions does not provide the jury with sufficient specific guidance.  Dyson's proposed language is a neutral description of the law based on the ABA model instructions.]**

**[Hoover submits that Dyson's proposal is prejudicial in suggesting that, for example, nailing and glueing are equivalents–when any cabinet worker would know that they are not.  Dyson also fails to address the insubstantial difference assessment.  Hoover submits that its instructions are complete, clear and concise and are based on the Uniform**

Jury Instructions for Patent Cases for the United States District Court for the District of Delaware, 2004.]

*Authority*: U.S.C. § 112 ¶ 6; ABA, *Model Jury Instructions: Patent Litigation* § 6.4 (2005).

**3.7    Construction of the Claims at Issue**

I have now instructed you as to the types of claims at issue in this case. As I stated at the outset, it is the Court's duty under the law to define what the claims at issue mean. I have made my determinations and I will now instruct you on the meaning of certain words, terms and phrases used in the asserted claims. You must use the meanings that I give you to make your decisions if the claims in this suit are infringed.

1.    The term "dirty air inlet [to outer container]" means a "passage by which dirty air flows into the outer container of the cleaning apparatus."

2.    The term "oriented for supplying dirt laden air into the container tangentially to the interior surface of the outer container" means "oriented for supplying dirt laden air into the container generally in a direction perpendicular to the radius of the interior surface of the outer container."

3.    The term "which has a circular cross section" means "the outer container has a circular cross section."

4.    The term "maintaining its velocity to a cone opening smaller in diameter than the diameter of the upper end of the cyclone" means "the frusto-conical shape of the cyclone assists in keeping the air flow moving as it makes its way from the air inlet at the top of the cyclone to the smaller cone opening at the bottom of the cyclone."

5.    The term "the air inlet being oriented for supplying air tangentially to the surface" means "the air inlet being oriented for supplying air generally in a direction perpendicular to the radius of the surface."

6.    The term "means for generating airflow" as used in claim no. 14 of the '515 patent is a means plus function claim as I described to you a few moments ago. The function of the

-27-

term is "generating an airflow." The corresponding structure is "a motor driven fan unit positioned vertically above and immediately adjacent to the cyclone outlet port," and any equivalent structure that performs the function of "generating an airflow." Although the '748 and '008 patents also use the terms "means for generating airflow," there is no dispute that that claim element is satisfied for purposes of those patents. So keep in mind that this construction applies only to the '515 patent.

7.    The term "a disc means provided on the outside of the cyclone intermediate the receiving chamber and the air outlet of the container and around to the longitudinal axis of the cyclone" means "a disc on the outside of the cyclone intermediate the receiving chamber and air outlet of the container and around the longitudinal axis of the cyclone." Although the claim language uses the phrase "disc means," I have determined that this is not a "means plus function" claim and that a "disc means" is a "disc."

8.    The term "a shroud means mounted on and around the outer surface of the cyclone and having opposed ends along the longitudinal axis and providing for outlet air from the container into the air inlet to the cyclone" means "a shroud that provides for outlet air from the container into the air inlet to the cyclone, which is mounted on and around the outer surface of the cyclone and has opposed ends along the longitudinal axis." Although the claim language uses the phrase "shroud means," I have determined that this is not a "means plus function" claim and that a "shroud means" is a "shroud."

The other terms of the claims at issue have not been construed by me. You should give those words and phrases their plain and ordinary English language meaning.

_Authority_: _Markman v. Westview Instruments, Inc._, 517 U.S. 370 (1996); _U.S. Surgical Corp. v. Ethicon, Inc._, 103 F.3d. 1554, 1568-69 (Fed. Cir. 1997); ABA, _Model Jury Instructions: Patent_

**3.8     Infringement—Every Claim Limitation Must Be Present, Either Literally or Under the Doctrine of Equivalents**

In order to infringe a patent claim, a product must include every limitation or element of the claim. If Hoover's product omits even a single element recited in a claim, then you must find that Hoover has not infringed that claim. If, however, Hoover's product includes each element of a claim, then you must find that Hoover infringed that claim. You must consider each of the patent claims separately.

A claim limitation may be present in an accused product in one of two ways: either literally or under what is known as the doctrine of equivalents. A claim limitation is literally present if it exists in the accused product just as it is described in the claim language, either as I have explained that language to you or, if I did not explain it, as you understand it.

A claim limitation is present in an accused product under the doctrine of equivalents if the differences between the claim limitation and a comparable element of the accused product are insubstantial. One way to determine whether there is infringement under the doctrine of equivalents is to look at whether or not the accused product performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed invention.

Another way to determine whether the differences are insubstantial is to consider whether or not people of ordinary skill in the field of the invention believe that the element found in the accused product and the element recited in the patent claim limitation are interchangeable. A person of ordinary skill is a person with average education and training in

*Litigation* § 6.6 (2005); 4 Leonard B. Sand *et al., Modern Federal Jury Instructions, Inst.* 86-8 (2006).

-29-

the field. The belief of such a person must be based on what was known at the time of the activities that constitute the alleged infringement, and not what was known at the time the patent application was filed or when the patent issued. Thus, the inventor need not have foreseen, and the patent need not describe, all potential equivalents to the invention covered by the claims. Also, slight changes in technique or improvements made possible by technology developed after the patent application is filed may still be considered equivalent for the purposes of the doctrine of equivalents. You may not find infringement under the doctrine of equivalents if even one limitation of a claim or its equivalent is missing from the accused device.

_Authority_: ABA, *Model Jury Instructions: Patent Litigation* § 7.3 (2005) (citing cases).

### 3.9    Infringement—Means-plus-Function Claim Limitations

As I told you, one element of one of the claims at issue is a means-plus-function limitation.

To prove that an accused product includes a structure that is literally covered by a means-plus-function limitation, a patent owner must prove two things by a preponderance of the evidence. First, that the accused product contains a structure that performs the identical function to the function recited in the means-plus-function limitation. Second, that the structure of the accused product that performs that function is either the same or equivalent to the corresponding structure disclosed in the patent specification.

One way of determining whether the structure of the accused product is equivalent to the structure disclosed in the specification is to determine whether or not the accused structure performs the identical function, in substantially the same way, to achieve substantially the same result, as the structure disclosed in the specification. Your inquiry here should be restricted to a consideration of the way the disclosed structure and the accused structure perform the function recited in the claim. You should not be influenced by the manner in which the structures perform other extraneous functions.

In this case, for infringement of the '515 patent, one of the things you must determine is whether the accused product contains a structure that performs the function of "generating an airflow," and, if so, whether the structure that performs that function is equivalent

-31-

to "a motor driven fan unit positioned vertically above and immediately adjacent to the cyclone outlet port."

*Authority*: ABA, *Model Jury Instructions: Patent Litigation* § 7.6 (2005); *Applied Medical Res. Corp. v. U.S. Surgical Corp.*, 448 F. 3d 1324, 1334 (Fed. Cir. 2006); *J&M Corp. v. Harley-Davidson, Inc.*, 269 F. 3d 1360, 1367 (Fed. Cir. 2001); *IMS Tech., v. Haas Automation, Inc.*, 206 F. 3d 1422, 1435-37 (Fed. Cir. 2000).

**3.10    Infringement—Elements at Issue**

Only certain elements of the patents at issue in this case are disputed.  Thus, you need to consider only certain elements of the patents.  Hoover does not dispute that all of the other elements of the claims at issue of these three patents are met by the Hoover Fusion vacuum cleaner.  In other words, Dyson is deemed to have met its burden of proof with respect to those elements of the patent claims not disputed by Hoover.

First, for infringement of all the claims at issue, you need to determine whether the Hoover Fusion includes all of the following elements common to all claims of the three patents in suit:

1.    "a dirty air inlet [to outer container]," which is "a passage by which dirty air flows into the outer container of the cleaning apparatus";

2.    whether that "dirty air inlet" is "oriented for supplying dirt laden air into the container tangentially to the interior surface of the outer container," meaning "oriented for supplying dirt laden air into the container generally in a direction perpendicular to the radius of the interior surface of the outer container";

3.    "an air outlet from the container"; and

4.    a "cyclone air inlet . . . in air communication with the air outlet of the container."

[**Dyson Proposes:**  If the Hoover Fusion has all of these elements, you then need to consider elements specific to the claims of the individual patents at issue.] [**Hoover Proposes:**  If the Hoover Fusion does not have all of these elements, then it does not infringe any of the patent claims and you need not consider the issue of infringement any further. However, if the Hoover Fusion has all of these elements, you then need to consider elements

specific to the claims of the individual patents at issue.] **[Dyson submits that Hoover's proposed language is prejudicial and invites the jury to shortcut its analysis.]** **[Hoover submits that this instruction is consistent with the all-elements rule and follows a rational course of assessment.]** For claim 14 of the '515 patent to be infringed, you must determine whether the Hoover Fusion includes the following additional elements:

      1.   a "dirty air inlet at an upper portion of the outer container";

      2.   a dirt receiving and collecting chamber with a "minimum diameter . . . furthest from the cone opening [of the cyclone] of 3 times the diameter of the cone opening." This element must be met as a matter of literal infringement;

      3.   a ring seal between "the [dirt receiving and collecting] chamber and [the] outer container";

      4.   an equivalent structure to "a motor driven fan unit positioned vertically above and immediately adjacent to the cyclone outlet port" that performs the function of "generating an airflow."

      If you find that Dyson has proven by a preponderance of the evidence that the Hoover Fusion vacuum cleaner contains all of these elements, you should find for Dyson on infringement of claim 14 of the '515 patent. On the other hand, if you find that Dyson has failed to prove that the Hoover Fusion contains all of these elements, you should find for Hoover on infringement of claim 14 of the '515 patent.

      For infringement of claims of the '748 patent, in addition to the four common elements I discussed before, you must determine whether the Hoover Fusion also includes the following additional elements:

      1.   "a dirty air inlet at an upper portion of the outer container";

-34-

2.    a "disc . . . provided on the outside of the cyclone intermediate the receiving chamber and the air outlet of the container"; and

3.    that the disc "retards long strands in the dirt from clogging the air outlet and retains the strands in the container."

If you find that Dyson has proven by a preponderance of the evidence that the Hoover Fusion vacuum cleaner contains all of these elements, you should find for Dyson on infringement of claim nos. 15, 16, and 17 of the '748 patent. If you do not find that Dyson has proven by a preponderance of the evidence that the Hoover Fusion vacuum cleaner contains all of these elements, you should find for Hoover on infringement of all of the asserted claims of the '748 patent.

For infringement of the claims of the '008 patent, in addition to the four common elements I mentioned before (page 33), you must determine whether the Hoover Fusion also includes the following additional elements:

1.    a shroud "mounted at one end below the air inlet to the cyclone";

2.    "perforations [on the shroud] adjacent to the position intermediate to the cone opening for the flow of air from the outer container to the cyclone inlet";

3.    a disc "provided on the shroud means at a lower longitudinal extent of the shroud means and the air inlet of the cyclone and around the axis of the cyclone"; and

4.    that the disc "aids in dirt removal in the first container by preventing some of the dirt from flowing into the air inlet to the cyclone."

If you find that Dyson has proven by a preponderance of the evidence that the Hoover Fusion vacuum cleaner contains all of these elements, you should find for Dyson on infringement of claim nos. 1, 2, 3, 7, 11, 23, 24, and 25 of the '008 patent. If you do not find that

-35-

Dyson has proven by a preponderance of the evidence that the Hoover Fusion vacuum cleaner contains all of these elements, you should find for Hoover on infringement of all of the asserted claims of the '008 patent.

**3.11    Infringement—Intent to Infringe is Immaterial**

One other point on infringement, whether or not a party knew what it was doing was an infringement does not matter.  A person or entity may infringe a patent even if the person or entity believed in good faith that what it was doing was not an infringement of any patent.  A person or entity may infringe a patent even if the person or entity did not know of the patent.

_Authority_: ABA, _Model Jury Instructions: Patent Litigation_ § 7.1 (2005); see also Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware § 3.5 (March 1993).

**3.12    Determination of Infringement**

In short, taking each asserted claim of the three patents in suit separately, if you find that Dyson has proven by a preponderance of the evidence that each element of any one or more of the asserted claims is present in the Hoover Fusion, either literally or under the doctrine of equivalents, then you must find that the Hoover Fusion infringes that claim. Similarly, if you find that Dyson has failed to prove the presence of any claim element in the Hoover Fusion, either literally or under the doctrine of equivalents, then you must find that the Hoover Fusion does not infringe that claim.

_Authority_: ABA, _Model Jury Instructions: Patent Litigation_ § 7.7 (2005).

4.    **Damages**

   4.1    **Generally**

   I have now instructed you as to the law governing Dyson's claims of patent infringement. If you find that Hoover has infringed a claim of one of the patents in suit, then you must determine what damages Hoover must pay to Dyson for that infringement. If, on the other hand, you find that Hoover has not infringed a claim of any patent, then Dyson is not entitled to any damages, and you should not make any findings about damages.

*Authority*: ABA, *Model Jury Instructions: Patent Litigation* § 11.1 (2005).

### 4.2    Compensatory Patent Damages in General

Patent law provides that in the case of infringement of a patent claim, the owner of the patent is entitled to damages adequate to compensate for the infringement, but in no event less than what a reasonable royalty would be for the use made of the invention by the infringer.

*Authority*: 35 U.S.C. § 284.

### 4.3    Reasonable Certainty

If you find that Dyson prevails on its contentions of infringement, Dyson is entitled to all damages it has proven by a preponderance of evidence with "reasonable certainty." On one hand, reasonable certainty does not require proof of damages with mathematical precision. Mere difficulty in ascertaining damages is not fatal to Dyson's right to recover. On the other hand, Dyson is not entitled to speculative damages; that is, you should not award any amount of reasonable royalty that, although possible, is wholly remote or left to conjecture and/or guess. You may base your evaluation of reasonable certainty on opinion evidence.

Finally, any doubts regarding the computation of the amount of damages should be resolved against Hoover.

_Authority_:  Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware § 6.3 (March 1993); _DSU Medical Corp. v. JMS Co., Ltd._, 471 F.3d 1293, 1309 (Fed. Cir. 2006); _Sensonics, Inc. v. Aerospace Corp._, 81 F.3d 1566, 1572 (Fed. Cir. 1996); _Kaufman Co., Inc. v. Lantech, Inc._, 926 F.2d 1136, 1141 (Fed. Cir. 1991); _Ryco, Inc. v. Ag-Bag Corp._, 857 F.3d 1418, 1428 (Fed. Cir. 1988); _Lam, Inc. v. Johns-Manville Corp._, 718 F.2d 1056, 1065-66 (Fed. Cir. 1983).

**4.4    Reasonable Royalty as a Measure of Damages**

In this case, Dyson is asking for damages in the amount of a reasonable royalty for Hoover's sales.

A royalty is an amount of money that someone pays a patent owner to be able to use the patented invention.  A reasonable royalty in this case is the amount of money that would have been agreed to in a hypothetical arms' length negotiation between Dyson and Hoover with both operating on the understanding that the negotiated patent is valid and would be infringed by the accused products.

You are to decide what a reasonable royalty would be based on circumstances as of the time before infringement would begin.  In this case, that would be around May 2005, just before Hoover began selling the Fusion.

In the hypothetical arms' length negotiation, you must assume that both parties are willing participants.  You must assume that the person negotiating on behalf of Hoover was willing to take a license and would have known that the asserted claims were valid, enforceable and infringed by Hoover.  You should also assume that Dyson would have been willing to grant a license.  Finally, you must assume that both Dyson and Hoover knew all pertinent information at the time of the hypothetical negotiations.

Having that in mind, you may consider any relevant evidence in determining the reasonable royalty for Hoover's use of the patented invention, including the opinion testimony of experts.

_Authority_:  ABA, _Model Jury Instructions: Patent Litigation_ § 11.9.1; Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware § 6.10 (March 1993).

### 4.5    Factors for Determining Reasonable Royalty

I will list for you a number of factors you may consider in deciding what is a reasonable royalty. This is not a list of every possible factor, but it will give you an idea of the kinds of things to consider in determining a reasonable royalty:

1. The royalties received by Dyson for licenses granted to others under the '515, '748 and '008 patents;

2. The rates paid by Dyson and Hoover or others for the use of other patents comparable to the '515, '748 and '008 patents;

3. The nature and scope of the license, as exclusive or non-exclusive, or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold;

4. Dyson's established policy and marketing program to maintain its patent exclusivity by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that exclusivity;

5. The commercial relationship between Dyson and Hoover, such as whether they are competitors;

6. The effect of selling the patented product in promoting sales of other products of Hoover;

7. The duration of the patent and the length of the licenses;

8. The profitability of the product made using the patent, and whether or not it is commercially successful or popular;

9. The advantages and benefits of using the patented inventions over products not using the invention;

-43-

10. The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by Dyson, and the benefits to those who have used the invention;

11. The extent to which Hoover has made use of the invention, and any evidence that shows the value of that use;

12. The portion of the profit or percentage of the selling price that may be customary in the vacuum cleaner business or in comparable businesses to allow for the use of patented inventions comparable to the inventions claimed in the patent;

13. The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by Hoover; and

14. Expert opinion as to what would be a reasonable royalty.

You may also consider any other economic factor that a normally prudent business person would, under similar circumstances, take into consideration in negotiating the hypothetical license between Dyson and Hoover.

You may consider any evidence regarding these factors, but neither Dyson nor Hoover is required to submit evidence on all these factors.

_Authority_: ABA, _Model Jury Instructions: Patent Litigation_ § 11.9.1; Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware § 6.11 (March 1993); _Tec Air, Inc. v. Denso Mfg. Mich., Inc._, 192 F.3d 1253, 1362 (Fed. Cir. 1999); _Fonar Corp. v. Gen. Elec. Co._, 107 F.3d 1543, 1552-53 (Fed. Cir. 1997); _Mahurkar v. C.R. Bard, Inc._, 79 F.3d 1572, 1579-81 (Fed. Cir. 1996); _Maxwell v. J. Baker, Inc._, 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); _Rite-Hite Corp. v. Kelley Co._, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (_en banc_); _Georgia-Pacific Corp. v. United States Plywood Corp._, 318 F. Supp. 116 (S.D.N.Y. 1970).

5.      **Willful Infringement**

Dyson also contends that Hoover has willfully infringed the patent claims at issue in this

case.  If you find on the basis of the evidence and the law as I have explained it that Hoover

infringed one or more claims of one of the three patents in suit, you must then decide whether or

not Hoover's infringement was willful.

When a company becomes aware that a patent may have relevance to a product it intends

to make and sell, that company has a duty to exercise due care and investigate whether or not its

proposed activities infringe any valid claim of the patent.  If that company does not do this and is

found to have infringed any of the patent claims, then the infringement was willful.

The issue of willful infringement is not relevant to your decision of whether or not there

is infringement or what is a reasonable royalty.  Rather, a finding of willful infringement may, in

certain circumstances, entitle the patent owner to increased damages.  If you decide that Hoover

willfully infringed any of the patent claims, then it is my job to decide whether or not to award

increased damages to Dyson.

Although, as I explained before, Dyson must prove infringement by the more probable

than not standard, Dyson must prove that Hoover willfully infringed by the higher burden of

clear and convincing evidence.

To establish willful infringement, Dyson must prove two things with clear and

convincing evidence:

1.      Dyson must prove that Hoover was aware of the patents it infringed.  Here, it is

        not disputed that Hoover was aware of the three patents in suit.  Thus, Dyson

        must be deemed to have satisfied this element.

2.      Second, Dyson must prove that Hoover proceeded to make and sell the Hoover

Fusion without a reasonable, good-faith belief that the patent was invalid or that

the patent was not infringed.

To determine whether Hoover acted with a reasonable, good-faith belief or whether

Hoover willfully infringed claims at issue in this case, you must consider all of the

circumstances, including the following:

1.      When Hoover became aware of the patents, whether Hoover formed a good-faith

belief that the patent was invalid or that the patent was not infringed, including whether Hoover

obtained and followed the good-faith advice of a competent lawyer.  The obtaining and

following of counsel's good-faith advice, if competent, may be evidence that infringement was

not willful.

In evaluating Hoover's reliance on the advice of a lawyer, you should consider when

Hoover obtained the advice, the quality of the information Hoover provided to the lawyer, the

competence of the lawyer's opinion, and whether or not Hoover relied upon the advice.  Advice

is competent if it was based upon a reasonable examination of the facts and law relating to

validity and infringement issues, consistent with the standards and practices generally followed

by competent lawyers.  You can also consider whether the opinion was conclusory in nature or

provides a thorough analysis of the relevant issues.  You may also consider whether the lawyer

was motivated to reach a particular result or otherwise biased in favor of a particular result.

2.      Another factor you should consider in determining willfulness is whether or not,

in designing the Hoover Fusion, Hoover intentionally copied the disclosures of the patents in suit

or whether Hoover instead tried to "design around" the patents by designing a product that

Hoover believed did not infringe these claims.  Evidence of copying the invention of a patent is

-46-

evidence of willful infringement; on the other hand, evidence of a good-faith effort to "design around" the claims is evidence that the infringement was not willful.

Keep in mind that a determination by you that Hoover has infringed the '515, '748, and '008 patents does not automatically mean that the infringement was willful. As I have explained, the infringement is not willful if Hoover had a good-faith belief that it did not infringe or that the patents were invalid, and if its belief was reasonable under all the circumstances.

_Authority_: ABA, _Model Jury Instructions: Patent Litigation_ § 8 (2005); 35 U.S.C § 284; _Knorr-Bremse Systeme Fuer Nutzfahrzeuge GHMB v. Dana Corp._, 383 F. 3d 1337, 1342-48 (Fed. Cir. 2004) (_en banc_); _Golden Blount, Inc. v. Robert H. Peterson Co._, 438 F.3d 1354, 1367-70 (Fed. Cir. 2006); _Read Corp. v. Portec, Inc._, 970 F.2d 816, 826-27 (Fed. Cir. 1992); _Rolls Royce Ltd. v. GTE Valeron Corp._, 800 F.2d 1101, 1110 (Fed. Cir. 1986); _Underwater Devices, Inc. v. Morrison-Knudsen Co._, 717 F.2d 1380, 1389-90, 219 U.S.P.Q. 569 (Fed. Cir. 1983).

6.    **Deliberation and Verdict**

That concludes the part of my instructions explaining the law that governs your deliberations over the patent issues in this case. Now let me finish up by explaining some things about how to conduct your deliberations in the jury room.

How you conduct your deliberations is up to you. But, however you conduct those deliberations, please remember that your verdict must represent the considered judgment of each juror.

It is your duty, as jurors, to consult with one another and to deliberate with a view toward reaching an agreement, if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict. Remember at all times that you are not partisans. You are judges — judges of the facts, not me. Your sole interest is to seek the truth from the evidence in the case.

In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict. Your verdict must be unanimous.

A form of verdict has been prepared for you. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form. You will then return to the courtroom, your foreperson will give the form to my Deputy Clerk and your verdict shall be announced.

-48-

It is proper to add the caution that nothing said in these instructions, and nothing in the form of a verdict, is meant to suggest or convey in any way or manner any intimation as to what verdict I think you should find. What the verdict shall be is your sole and exclusive duty and responsibility.

That concludes the part of my instructions explaining the rules for considering the testimony and evidence. Now let me finish up by explaining how you may communicate questions or messages to the Court if you have any.

Once you start deliberating, do not talk to the Jury Officer, to my Deputy Clerk, or to me, or to anyone else except each other about the case. If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the Jury Officer. The question will be given to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you. Any questions or messages normally are sent to me through the foreperson, who by custom of this Court is Juror Number 1.

One more thing about messages. Do not ever write down or tell anyone else how you stand on your votes. For example, do not write down or tell anyone else that you are split 6-2, or 4-4, or whatever your vote happens to be. That should stay secret until you are finished.

Let me finish by repeating something I said to you earlier. Nothing that I have said or done during this trial was meant to influence your decision in favor of either party. You must decide the case yourselves based on the evidence presented and, as I have already said, your verdict in this case must be unanimous.

_Authority_: Sample Miscellaneous Jury Instructions (Sleet, J.) (rev. January 18, 2006).