IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DYSON TECHNOLOGY LIMITED and DYSON, INC.<br><br>Plaintiffs,<br><br>v.<br><br>HOOVER, INC., HOOVER GENERAL L.L.C., HOOVER LIMITED L.L.C., HOOVER COMPANY I, L.P. AND MAYTAG CORPORATION,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) C.A. No. 05-434-GMS<br>)<br>)<br>)<br>) **REDACTED –**<br>) **PUBLIC VERSION**<br>)<br>)<br>) |

**PLAINTIFFS' OPENING BRIEF IN SUPPORT THEIR MOTION FOR LIMITED
RELIEF FROM THE PROTECTIVE ORDER**

OF COUNSEL:

Garrard R. Beeney
Richard C. Pepperman, II
James T. Williams
Adam R. Brebner
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
(212) 558-4000

Steven F. Reich
Jeffrey S. Edelstein
John F. Libby
Tamar Feder
Christopher C. Cole
MANATT, PHELPS & PHILLIPS, LLP
7 Times Square
New York, New York 10036
(212) 790-4500

Dated: June 6, 2007

C. Barr Flinn (No. 4092)
John W. Shaw (No. 3362)
YOUNG CONAWAY STARGATT &
TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
jshaw@ycst.com

*Attorneys for Plaintiffs Dyson
Technology Limited and Dyson, Inc.*

## TABLE OF CONTENTS

Page

NATURE AND STAGE OF PROCEEDINGS ...................................................................... 1

SUMMARY OF ARGUMENT .............................................................................................. 2

STATEMENT OF FACTS ..................................................................................................... 2

    A.    Dyson Employs Capron-Tee As A Consultant ...................................................... 2

    B.    Dyson Employs Capron-Tee As A Litigation Expert ............................................ 3

    C.    Mr. Capron-Tee Advises Maytag And Serves As Maytag's Expert In This Action ................................................................. 5

ARGUMENT ........................................................................................................................... 7

    A.    "Good Cause" No Longer Exists To Restrict The Capron-Tee Documents From Public Disclosure ................................................. 7

    B.    Good Cause Does Not Exist To Continue Restricting The Capron-Tee Documents From Public Disclosure ................................................. 8

CONCLUSION ...................................................................................................................... 11

# TABLE OF AUTHORITIES

Page

## CASES

*Cipollone v. Liggett Group, Inc.*,
  785 F.2d 1108 (3d Cir. 1986) ............................................................................................. 7

*Leucadia, Inc. v. Applied Extrusion Technologies, Inc.*,
  998 F.2d 157 (3d Cir. 1993) ............................................................................................... 8

*Pansy v. Borough of Stroudsburg*,
  23 F.3d 772 (3d Cir. 1994) ................................................................................................. 7

## RULES

Federal Rule of Civil Procedure 26(c)(7) ................................................................................ 8

Plaintiffs Dyson Technology Ltd. and Dyson, Inc. ("Dyson") submit this opening brief in support of their motion (a) for limited relief from the restrictions of the December 19, 2005 Protective Order (D.I. 49) on the use and confidentiality of a deposition transcript and certain other documents produced in this action, and (b) to permit Dyson to use and retain such documents following the dismissal of this action. Dyson indicated its intention to submit this motion on the record on Friday, June 1, 2007, and the Court ordered that it would exercise continuing jurisdiction over the subject matter of the instant request. (D.I. 424, June 1, 2007 Trial Transcript at 868:10-16).

## NATURE AND STAGE OF THE PROCEEDING

Dyson learned during this case that an individual named Grahame Capron-Tee — who has worked for Dyson as an industry consultant for several years and as a consulting expert for Dyson in litigation against another vacuum manufacturer involving advertising issues identical to those in this action — has simultaneously been providing Dyson confidential information to defendants (collectively "Hoover") and been paid by Hoover for a lengthy period of time. During the instant litigation, Mr. Capron-Tee agreed to be retained as Hoover's expert at the same time he was serving as a consulting expert to Dyson in the separate litigation noted above. By virtue of his position as a consulting expert to Dyson, Mr. Capron-Tee gained access to highly confidential Dyson information and then turned around and served as an expert to Hoover in a way that Dyson believes may well have violated his ethical and fiduciary duties to Dyson.

Numerous documents produced in this litigation evidence Mr. Capron-Tee's wrongdoing, and Dyson seeks to be able to share those documents with personnel at Dyson who have interacted with Mr. Capron-Tee over the years to evaluate the harm he has inflicted, the potential remedies for that harm, and the impact of these facts on Mr. Capron-Tee's role in regulatory

bodies before which Dyson appears. Although many of these documents presently are designated as "highly confidential" under the Protective Order, none contain Hoover "trade secret or confidential research, design, development, or commercial information." The documents and deposition transcript should be declassified and Dyson should be given relief from the Protective Order such that it may retain these documents in order to assess the potential harm it has suffered, the potential remedies available to Dyson, and the impact on Mr. Capron-Tee's role in regulatory bodies before which Dyson appears.

## SUMMARY OF ARGUMENT

1.    No good cause exists to not grant Dyson relief from the confidentiality and use restrictions of the Protective Order for the documents and transcript at issue in this Motion. The documents and transcript do not contain Hoover trade secret or confidential information. In contrast, good cause exists to allow Dyson to retain and use copies of the documents to assess the damage done by Mr. Capron-Tee to Dyson's business interests and to determine what remedy, if any, to pursue in light of that damage.

## STATEMENT OF FACTS

**A.    Dyson Employs Capron-Tee As A Consultant**

Since the early 1970s, Grahame Capron-Tee has worked in the floor-care industry focusing on product standards and testing. (See Capron-Tee Dep. 11:9-23, 13:3-14:19, 17:14-18:16)[1] For more than two decades, Mr. Capron-Tee has been active on committees of the International Electrotechnical Commission (IEC) — the international body for electrical appliance technical tests and performance standards — concerning floor care. (Id. at 16:23-17:7,

---

[1]    The transcript of and exhibits to the Deposition of Grahame Capron-Tee, taken April 5, 2007 ("Capron-Tee Dep."), may be found under Exhibit A of the Appendix filed in support of this motion.

19:23-20:3, 24:24-25-17) Since 1990, Mr. Capron-Tee has served as Chair of the IEC vacuum cleaner performance testing committee and its "Working Group III" responsible for maintaining floor care performance standards. (Id. at 17:5-13, 25:23-26:12; see Capron-Tee Dep. Ex. 2 at 1) And, since 1999, Mr. Capron-Tee has been the IEC representative on the ASTM, Inc. — an IEC counterpart — committee concerning standards and testing for floor care products. (See Capron-Tee Dep. 33:6-34:20)

Mr. Capron-Tee has provided Dyson industry-related consulting services and has regularly submitted written reports to Dyson concerning developments in the IEC and the ASTM standards committee responsible for the development of test methodologies, mainly in circumstances where Dyson was not represented at the meetings in question. (See, e.g., Capron-Tee Dep. Ex. 3)

In connection with his industry-related consulting work, Mr. Capron-Tee promised to maintain the confidentiality of proprietary information he received from Dyson and memorialized this understanding in a Confidentiality Agreement dated February 16, 2003. (Capron-Tee Dep. 228:22-229:3; Capron-Tee Dep. Ex. 15) Under the Agreement, Mr. Capron-Tee agreed that he would "not without the express written consent of [Dyson] communicate or otherwise make available Proprietary Information to any third party; . . . not use any Proprietary Information other than for the purposes for which it was disclosed; [and] not copy or reproduce in any way any Proprietary Information, except with the prior written consent of [Dyson]." (Capron-Tee Dep. Ex. 15 ¶ 2.1-2.5)

### B.   Dyson Employs Capron-Tee As A Litigation Expert

In 2005, Dyson's litigation counsel, Sullivan & Cromwell, retained Mr. Capron-Tee as a consulting expert in litigation captioned *Oreck Holdings LLC et al.* v. *Dyson, Inc.*, Civ. A. No.

05-361 (E.D. La.) ("*Oreck*"). In that litigation, Oreck Holdings LLC, a vacuum manufacturer, and its affiliates, brought false advertising claims against Dyson just like the claims brought by Hoover in this litigation. In particular, like Hoover here, Oreck alleged that Dyson's "no loss of suction" advertising claim was false and misleading. (Declaration of Marc De Leeuw, executed April 12, 2007 ("De Leeuw Dec."), Appendix Ex. B ¶ 16)

To understand the vacuum testing documents at issue in that case, and to formulate a strategy to defend against Oreck's false advertising claims, Dyson's outside counsel, Sullivan & Cromwell, contacted Mr. Capron-Tee about serving as an expert consultant in the field of vacuum cleaner testing and test methods. (Id. ¶ 10) On July 20, 2005, Mr. Capron-Tee met with Dyson's in-house general counsel and outside counsel to discuss his retention. At that meeting, Dyson's counsel and Mr. Capron-Tee discussed the adequacy of Dyson's testing to support Dyson's "no loss of suction" advertising claim and the propriety of IEC test methods for evaluating vacuum cleaner loss of suction. (Id. ¶ 11) Mr. Capron-Tee agreed to consult with Sullivan & Cromwell in the *Oreck* matter. (Id.; see Capron-Tee Dep. 246:16-247:5 (Capron-Tee was retained particularly to "advise on the methods Oreck had used" to attack Dyson's no loss of suction claim))

After this meeting, Dyson's counsel provided Mr. Capron-Tee copies of the pleadings in the *Oreck* case and both Oreck's and Dyson's test results on Dyson vacuum cleaners. (Id. ¶ 12) Mr. Capron-Tee also spoke with Dyson's general counsel, Martin Bowen, and its standards-and-testing employee, James Widdowson. (Capron-Tee Dep. 250:25-251:15) On October 14, 2005, after having spent at least three days reviewing the test results in detail, Mr. Capron-Tee met again with Dyson's counsel. During this meeting, Dyson's counsel and Mr. Capron-Tee discussed in detail the parties' testing relating to Dyson's "no loss of suction" advertising claim,

including the strengths and weaknesses of both parties' testing, the potential bases for challenging Oreck's testing, and the possibility of conducting further testing to support Dyson's advertising claim. (De Leeuw Dec. ¶ 16) As Mr. Capron-Tee himself recalls: "Oreck had made a claim that Dyson machines lost suction and they had presented data based" on a particular testing method "[and] I was effectively advising as to the validity of that method." (Capron-Tee Dep. 39:16-20) The parties settled the *Oreck* related litigation in January 2007 and, in March 2007, Mr. Capron-Tee assured Dyson's counsel that he had destroyed or deleted all *Oreck* confidential material. (De Leeuw Dec. ¶ 17-19; Appendix Exs. G and H)

Mr. Capron-Tee also met with Dyson's counsel in connection with the Hoover litigation before this Court. In January 2007, Dyson's counsel asked Mr. Capron-Tee to meet to discuss issues related to the IEC and ASTM testing relevant to the Hoover case — in other words, the same types of issues in controversy in the *Oreck* litigation. (Capron-Tee Dep. 257:3-21) On January 26, 2007, Mr. Capron-Tee and Tamar Feder, of Manatt, Phelps & Phillips, Dyson's lead law firm on the advertising claims in the Hoover litigation, met in Lisbon, Portugal. (See Capron-Tee Dep. Exs. 23, 24) For almost three hours, Mr. Capron-Tee discussed IEC and ASTM testing with respect to Dyson's products. (Id. Ex. 24)

C.  **Mr. Capron-Tee Advises Hoover And Serves As Hoover's Expert In This Action**

Dyson learned in discovery in this action that for years — while consulting for Dyson and acting as its expert in the *Oreck* litigation — Mr. Capron-Tee was acting as Hoover's advisor on Dyson's confidential activities. Moreover, during the Hoover litigation Dyson learned that Mr. Capron-Tee has been Hoover's expert in this very action.

The documents that Dyson seeks to de-designate and retain show that Mr. Capron-Tee provided Hoover reports of Dyson's confidential business activities *for years*. As Mr. Capron-

Tee testified at his deposition two months ago, he has been tracking Dyson's activities for Hoover (and its predecessor Hoover) since 1999 — three years before he offered his consulting "services" to Dyson — ███████████████████████████████ ███████████████████████ Indeed, while Mr. Capron-Tee was engaged to provide

███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████

Thus, ███████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
██████ and, for years, he consistently littered his monthly reports to Hoover with information concerning Dyson's activities (see, e.g., id. Exs. 6, 8, 9, 10, 11) — routinely disclosing what appears to be confidential and proprietary information he had learned from Dyson, even after he and Dyson had entered into the Confidentiality Agreement (see, e.g., id. Exs. 16, 17, 18, 19).

Worse yet, unbeknownst to Dyson, Mr. Capron-Tee allowed himself to be retained as Hoover's expert in the instant litigation to consult and issue reports on the very topics on which he was offering expert advice *to Dyson* in the *Oreck* case. Even while serving as a consultant to Dyson in the *Oreck* case, Mr. Capron-Tee had numerous conversations with Hoover about testing standards and issues involved in the instant litigation. (Capron-Tee Dep. 41:11:23, 43:20-44:18, 49:13-19, 51:4-18. 52:3-17, 219:22-221:17; Capron-Tee Dep. Ex. 13).

Mr. Capron-Tee was Hoover's expert when he met with Dyson's counsel, Ms. Feder, about this case in Lisbon on January 26, 2007 — at which time he failed to disclose that he had been engaged by Hoover some nine months earlier. Days after the meeting with Dyson's counsel, Mr. Capron-Tee provided Hoover a detailed nine-page memorandum closely describing the content of his meeting with Dyson's counsel and offering an assessment of Ms. Feder as an advocate and litigation opponent. (See Capron-Tee Dep. Exs. 23, 24)

With the instant litigation now settled, Dyson wishes to share with relevant Dyson personnel the details of Mr. Capron-Tee's behavior so it can assess the damage he has done and determine what remedies may be available to it. In order to do that, Dyson asks that the Court de-designate the materials from "highly confidential" status and allow it to retain copies of those documents that are referenced in Appendix Ex. C.

## ARGUMENT

A.   **"Good Cause" No Longer Exists To Restrict The Capron-Tee Documents From Public Use and Disclosure.**

"[I]t is well-established that . . . an order of protection over discovery material must [be predicated on a showing of] 'good cause[.]'" Pansy v. Borough of Stroudsburg, 23 F.3d 772, 786 (3d Cir. 1994). In cases like this one, where a broad umbrella protective order has been entered, the burden of demonstrating "good cause" is high:

> Good cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure. The injury must be shown with specificity . . . Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing. . . .

Id. at 786-87 (citations and quotations omitted). "Moreover, the harm [to the party seeking protection] must be significant not a mere trifle." Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3d Cir. 1986).

In this case, the operative Protective Order reiterates the high burden of proof on anyone seeking to maintain a "highly confidential" designation. The Protective Order reserves a "Highly Confidential" designation only for "trade secret or any confidential research, design, development or commercial information contained in any document." (Protective Order at ¶1(d).) The "burden of proving that any information is Confidential or Highly Confidential shall remain with the party or third party making such designation." (Protective Order at ¶8.) If a party challenges the confidentiality designation of any document or testimony, "[i]t is understood and agreed that the producing party will have the burden of establishing the grounds for confidential treatment of the document or testimony at issue." (Protective Order at ¶15.)

B.  **Good Cause Does Not Exist To Continue Restricting The Capron-Tee Documents From Use Or Disclosure.**

Here, no good cause exists to not grant Dyson relief from the confidentiality and use restrictions set out in the Protective Order for the Capron-Tee transcript and documents.[2] The documents do not contain Hoover trade secret or other competitive information that could justify limiting their dissemination under the Protective Order. See Fed. R. Civ. Proc. 26(c)(7) (allowing confidentiality designations to protect "trade secret or other confidential research, development, or commercial information"); see also Leucadia, Inc. v. Applied Extrusion Technologies, Inc., 998 F.2d 157, 166 (3d Cir. 1993) (explaining, however, that even trade secrets are not given "automatic and complete immunity against disclosure"). Thus, no legitimate interest in preserving the confidentiality of the materials survives the settlement of this matter.

---

[2] Although Dyson is seeking to have Hoover's "highly confidential" designation removed from the Capron-Tee transcript and documents, the transcript and many of the Capron-Tee documents contain information which is confidential *to Dyson*. Accordingly, Dyson has filed this motion and all accompanying papers under seal and requests that the Capron-Tee documents be maintained by the Court in that manner.

Dyson, however, has a strong interest in unobstructed access to the Capron-Tee documents. As described more fully below, the Capron-Tee documents arguably contain information that would support allegations that Mr. Capron-Tee breached his confidentiality and fiduciary duties to Dyson. Mr. Capron-Tee also serves on various regulatory and standards bodies before which Dyson regularly appears. As such, Dyson has a significant interest in de-designating and retaining copies of the Capron-Tee documents so it can review them with relevant Dyson employees and determine if any additional steps to protect its interests are appropriate. Some examples of the Capron-Tee documents at issue in this Motion are as follows:

**MAY028923**: In an email entitled "Dyson in the USA," Mr. Capron-Tee reveals that "Dyson will be launching the DC07 upright in September in the US but only on a regional basis. I would anticipate that would most likely be the Northern Eastern United States but don't know for sure. The idea is to concentrate resources on a region rather than spread them nationally." (MAY028923) Although this email discloses what appears to be a great deal of Dyson confidential information, there is no Hoover information contained in the email. (See MAY028923, Appendix Ex. D)

**MAY028908-10**: This document contains a cover email and  does not appear to reveal any Maytag trade secret information or confidential information that would justify maintaining the confidentiality designation of this document in light of Dyson's countervailing interest in de-designation and retention.

**MAY073215-16**: In an email entitled: ▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬ Other than Mr. Capron-Tee's own advice to Hoover about how to counter Dyson's business plans, there is no discussion of Hoover in the document. (See MAY73215-16, Appendix Ex. F).

**MAY073136-38, MAY062762-63**: These are additional ▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ To the extent there is any Hoover information in the documents, they are mere ruminations as to how best to respond to the intelligence he has gathered about Dyson. (See MAY07316-18, MAY062762-63, Appendix Ex. G).

**MAY002534**: This is a memo from a Hoover employee describing a conversation with Mr. Capron-Tee. The document contains three bullet points, each of which contains information about Dyson. There is no information regarding Hoover in the document. (MAY002534, Appendix Ex. H).

**MAY062768**: ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬ (MAY062768, Appendix Ex. I) There is no Hoover information on the document.

**MAY002067-74**: This is a memo ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

 No confidential Hoover information is contained. (Id.)

*   *   *

As this discussion of a representative sample of Mr. Capron-Tee documents indicates, the Capron-Tee documents and transcript do not contain Hoover trade secret or confidential information that would justify maintaining a "heightened confidentiality" designation under the Protective Order. That alone is sufficient grounds to grant this Motion. The balance tilts even further in favor of granting this Motion when due consideration is paid to Dyson's strong interest in utilizing the information contained in the Capron-Tee documents to assess the damage done to Dyson by Mr. Capron-Tee's actions.

## CONCLUSION

For the foregoing reasons, Dyson respectfully requests the Court to grant Dyson's Motion for relief from the protective order and to permit Dyson to retain and use copies of the documents and transcript that are the subject of this motion, as set forth in the proposed form of order submitted for the Court's consideration as an attachment to Dyson's motion.

Respectfully submitted,

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____
C. Barr Flinn (No. 4092)
John W. Shaw (No. 3362)
The Brandywine Building,
1000 West Street, 17th Floor
Wilmington, Delaware  19801
(302) 571-6600
jshaw@ycst.com
*Attorneys for Plaintiffs Dyson Technology Limited and Dyson, Inc.*

12

OF COUNSEL:

Garrard R. Beeney
Richard C. Pepperman, II
James T. Williams
Adam R. Brebner
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
(212) 558-4000

Steven F. Reich
Jeffrey S. Edelstein
John F. Libby
Tamar Feder
Christopher C. Cole
MANATT, PHELPS & PHILLIPS, LLP
7 Times Square
New York, New York  10036
(212) 790-4500

Dated:  June 6, 2007

## CERTIFICATE OF SERVICE

I, John W. Shaw, hereby certify that on June 13, 2007, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

>Francis DiGiovanni, Esquire
>James D. Heisman, Esquire
>CONNOLLY BOVE LODGE & HUTZ LLP
>The Nemours Building – 8th Floor
>1007 N. Orange Street
>Wilmington, DE 19801

I further certify that on June 13, 2007, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following in the manner indicated:

**BY E-MAIL**

>Ray L. Weber, Esquire
>Laura J. Gentilcore, Esquire
>RENNER, KENNER, GREIVE, BOBAK,
>  TAYLOR & WEBER
>400 First National Tower
>Akron, OH 44308

>Kimball R. Anderson, Esquire
>Stephen P. Durchslag, Esquire
>WINSTON & STRAWN LLP
>35 W. Wacker Drive
>Chicago, IL 60601-9703

>YOUNG CONAWAY STARGATT & TAYLOR, LLP
>
>/s/ *John W. Shaw*
>C. Barr Flinn (No. 4092)
>John W. Shaw (No. 3362)
>Monté T. Squire (No. 4764)
>1000 West Street, 17th Floor
>Wilmington, Delaware 19801
>(302) 571-6600
>jshaw@ycst.com
>*Attorneys for Dyson Technology Limited and Dyson, Inc.*