IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DYSON TECHNOLOGY LIMITED and DYSON, INC. | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | C.A. No. 05-434-GMS |
| HOOVER, INC., HOOVER GENERAL L.L.C., HOOVER LIMITED L.L.C., HOOVER COMPANY I, L.P. and MAYTAG CORPORATION, | ) ) ) ) ) | **REDACTED –** **PUBLIC VERSION** |
| Defendants. | ) ) | |

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR
LIMITED RELIEF FROM THE PROTECTIVE ORDER**

OF COUNSEL:

Garrard R. Beeney
Richard C. Pepperman, II
James T. Williams
Adam R. Brebner
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
(212) 558-4000

Steven F. Reich
Jeffrey S. Edelstein
John F. Libby
Tamar Feder
Christopher C. Cole
MANATT, PHELPS & PHILLIPS, LLP
7 Times Square
New York, New York 10036
(212) 790-4500

Dated: June 27, 2007

C. Barr Flinn (No. 4092)
John W. Shaw (No. 3362)
Monté T. Squire (No. 4764)
YOUNG CONAWAY STARGATT &
TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
msquire@ycst.com

*Attorneys for Plaintiffs Dyson
Technology Limited and Dyson, Inc.*

# TABLE OF CONTENTS

Page

INTRODUCTION .................................................................................................................. 1

ARGUMENT ........................................................................................................................ 4

I.    THE SUBJECT DOCUMENTS DO NOT MERIT PROTECTION FROM
      DISCLOSURE ............................................................................................................ 4

      A.    The Burden is on the Producing Parties to Establish the Good Cause
            Necessary to Justify Protection from Disclosure ................................................... 4

      B.    Hoover Fails to Clearly Define the Serious Harm that Would Result from
            Disclosure of the Subject Documents. .................................................................. 6

      C.    Dyson's Motion is Unopposed with Respect to a Large Number of the
            Subject Documents ........................................................................................... 7

            1.    Retention and Use of Non-Confidential Documents ................................. 7

            2.    De-Designation of Documents for Which Hoover did not Propose
                  Redactions ........................................................................................ 7

            3.    De-Designation of Third-Party Produced Documents ............................ 8

      D.    With Respect to the 14 Documents Addressed in its Answering Brief,
            Hoover Has Failed to Establish the Good Cause Necessary to Justify
            Continued Restriction on Disclosure ................................................................. 9

II.   THE PANSY FACTORS WEIGH IN FAVOR OF DISCLOSURE ............................. 12

CONCLUSION .................................................................................................................... 14

DB01:2417416.1                                                    063753.1002

# TABLE OF AUTHORITIES

**Page**

## CASES

*Arnold v. Pennsylvania Dept. of Trans.,*
477 F.3d 105 (3d Cir. 2007) ................................................................................ 5, 6, 9, 13

*Cipollone v. Liggett Group, Inc.,*
785 F.2d 1108 (3d Cir. 1986) ................................................................................ 5

*Joint Stock Society v. UDV North America, Inc.*
104 F. Supp. 390 (D. Del. 2000) ........................................................................... 5

*Joy v. North,*
692 F.2d 880 (2d Cir. 1982) .................................................................................. 5

*Leucadia, Inc. v. Applied Extrusion Tech., Inc.,*
998 F.2d 157 (3d Cir. 1993) .................................................................................. 5

*Pansy v. Borough of Stroudsburg,*
23 F.3d 772 (3d Cir. 1994) ............................................................................... 1, 5, 6, 13

*U.S. v. Morton Salt Co.,*
338 U.S. 632 (1950) .............................................................................................. 13

## RULES

Federal Rules of Civil Procedure, Rule 26 ................................................................ 9

DB01:2417416.1                    063753.1002

## INTRODUCTION

███████████████████████ defendants ("Hoover") orally agreed not to oppose a motion by Dyson to de-classify certain documents that were produced in this litigation and designated as Confidential or Highly Confidential under the Protective Order. *See, e.g.,* Letter from Steve Durschlag to Steve Reich dated June 8, 2007, attached as Exhibit A to Affidavit of Lisa Parker dated June 2007 ("Parker Aff."). Remarkably, Hoover now opposes Dyson's Motion on the spurious grounds that (1) the relief sought is too broad in that it seeks disclosure of Hoover's "highly confidential" advertising, testing, and litigation strategies; and (2) disclosure to third parties in any event is unwarranted.

Setting aside the fact that Hoover has reneged on its oral agreement with Dyson, both of Hoover's arguments are easily dismissed. To begin with, Hoover's Answering Brief ignores the crucial fact that the producing party – here, Hoover – has the burden of establishing that good cause exists for the continued confidential treatment of the challenged documents, a burden which Hoover has failed to carry. Indeed, of the roughly 174 documents that are the subject of Dyson's Motion, Hoover's Answering Brief addresses only 14 with any specificity. And even with respect to those 14 documents, Hoover makes only the most cursory allegations that the documents contain confidential information and that Hoover would be harmed by their disclosure. Such broad and unspecified allegations are insufficient to justify continued protection for documents that fail to meet the standard articulated by the Third Circuit in *Pansy v. Borough of Stroudsburg*, 23 F.3d 772 (3d Cir. 1994) for such treatment.

Not only has Hoover failed to demonstrate good cause for continuing to shield any of these documents from public view, but the circumstances justifying the requested relief are compelling and undisputed. The record strongly suggests that Hoover's expert witness in this

litigation, Mr. Capron-Tee, may have injured Dyson by playing both sides of the industry fence and using Dyson's confidential information to Dyson's competitive and legal disadvantage.

While Hoover tries to cast Dyson's request as an effort to get Hoover's confidential information from Hoover's expert witness, the exact opposite is true. As Dyson demonstrated in its opening brief, Mr. Capron-Tee for years worked as *Dyson's* retained consultant. Yet, during this time, he may secretly and improperly have conveyed Dyson's confidential information to Hoover, as reflected in the documents at issue. Then, after Dyson retained Mr. Capron-Tee to serve as an expert witness on Dyson's behalf in a false advertising case brought by Oreck – in which Oreck challenged the same Dyson claims Hoover challenged herein – Hoover, knowing of Dyson's previous retention of Mr. Capron-Tee, contracted with him to serve as an expert witness *in this case*, being careful not to reveal to Dyson for almost a year Mr. Capron-Tee's role as Hoover's expert.

Thus, the "confidential information" Hoover now seeks to prevent from seeing the light of day is in fact *Dyson's* confidential information, as conveyed to Hoover by Mr. Capron-Tee, and *not Hoover's* confidential information. Hoover has offered no justification – and indeed should not be allowed – to shield Mr. Capron-Tee from his own acts by hiding behind a "highly confidential" designation in now terminated litigation.

Moreover, in complaining of disclosure of non-confidential documents to "third parties," Hoover improperly seeks to re-negotiate what it already has traded away. By agreeing that it would not oppose the "de-designation" of these documents, Hoover necessarily agreed that there would be no further restriction on their use by Dyson. Indeed, there are no barriers under the terms of the Protective Order to Dyson's use of any non-confidential documents produced in this case. Dyson's Motion seeks permission to retain and use non-confidential documents in the

manner permitted by the Protective Order (i.e. with no restrictions), that it otherwise would be
obligated to destroy at the conclusion of this litigation.   Such retention and use is necessary to
allow Dyson to vindicate interests that may well have been injured by Hoover's expert,
Mr. Capron-Tee.

Hoover's suggestion that the parties simply amend the Protective Order to allow other
Dyson employees to see the challenged documents is insufficient.  Dyson must be able to retain
and use the documents outside of Dyson in order to pursue either judicial or regulatory remedies,
either in the U.S. or in the U.K., against Mr. Capron-Tee.  As not all of those venues afford the
parties a subpoena power, Hoover's suggestion that Dyson subpoena Hoover in a later action for
the same documents misses the mark.  Moreover, use of the requested documents and
information may prove necessary for Dyson to commence any such proceedings.

Hoover also criticizes Dyson for not responding to redactions Hoover proposed
immediately before filing its opposition to Dyson's motion.  Hoover fails to inform the Court
that it waited 12 days after Dyson filed its Motion before proposing any redactions, leaving
Dyson only two days to respond before Hoover's Answering Brief was due.  Both the timing and
substance of Hoover's proposed redactions were unreasonable.  But, Hoover's proposed
redactions are important for another reason.  In seeking to redact only about half of the
documents that are the subject of Dyson's Motion, Hoover essentially concedes that the
remainder of the documents contain no information that is proprietary to Hoover.

Hoover also erroneously argues that Dyson delayed in bringing its motion, and therefore
somehow should be estopped from seeking relief now.  Nothing obligated Dyson to challenge
confidentiality designations during the pendency of a case in which Mr. Capron-Tee likely was
to testify on Hoover's behalf and therefore be subject to cross-examination on these very topics.

3

Moreover, the Protective Order explicitly relieves both parties from any obligation to challenge the propriety of confidentiality designations at a particular time, and instead reserves a party's right to do so at any time.  Protective Order, ¶ 16.

In addition, Dyson entered the settlement agreement after the parties agreed and the Court ordered that the Court would maintain jurisdiction over the case for the very purpose of hearing and deciding this Motion.  Hoover never complained at the time that it was too late to make this Motion or that the relief sought should not be granted because Dyson did not raise these issues earlier.  Once again, Hoover should not be permitted to enjoy the fruits of a settlement (and the very real possibility of adverse jury verdicts) and then make arguments that are at odds with the fundamental premise of making this Motion.

Lastly, Hoover lacks standing to challenge confidentiality designations by third-parties. Neither Mr. Capron-Tee nor CCI – the two third parties whose documents Dyson seeks to de-designate – has moved to intervene for purposes of opposing Dyson's Motion, despite having received notice of the Motion.  This speaks volumes about the absence of injury to those third parties if Dyson's Motion were granted.

Accordingly, for all the reasons state above, the Court should grant Dyson's Motion for Limited Relief from the Protective Order and enter an order permitting retention and use of the documents listed in Exhibit C to Dyson's Motion.

## ARGUMENT

## I.    THE SUBJECT DOCUMENTS DO NOT MERIT PROTECTION FROM DISCLOSURE

### A.    The Burden is on the Producing Parties to Establish the Good Cause Necessary to Justify Protection from Disclosure.

Under Third Circuit case law, a party faces a high burden to establish that documents should be protected as confidential or trade secret.  The producing parties here –  Hoover, Mr.

4

Capron-Tee, and Compliance Consulting, Inc. ("CCI") – must come forward with "a showing that disclosure will work a clearly defined and serious injury to the party seeking closure." *Arnold v. Pennsylvania Dept. of Trans.,* 477 F.3d 105, 108 (3d Cir. 2007). "[C]ase law requires the [producing party] to justify the need for continued protection on an itemized or document-by-document basis." *Joint Stock Society v. UDV North America, Inc.* 104 F. Supp. 390, 397 (D. Del. 2000); *see also Pansy v. Borough of Stroudsburg,* 23 F.3d 722, 786-87 (3d Cir. 1994).

The Protective Order entered in this case also provides that any party may "apply by motion to the Court for a ruling that certain documents or testimony designated as Confidential or Highly Confidential, or the information therein, are not entitled to confidential status or protection . . ." Protective Order, ¶ 15. Following established Third Circuit law, the Protective Order further provides that upon the filing of such a motion, "[T]he producing party will have the burden of establishing the grounds for confidential treatment of the document or testimony at issue." Protective Order, ¶ 15; *see also* ¶ 8; *see also Arnold,* 477 F.3d at 108; *Pansy,* 23 F.3d at 786-87; *Joint Stock Society,* 104 F. Supp. at 397.

A party's mere declaration that information is confidential or a trade secret does not make it so. *See, e.g., Leucadia, Inc. v. Applied Extrusion Tech., Inc.,* 998 F.2d 157, 166 (3d Cir. 1993) (explaining that trade secrets are not given "automatic and complete immunity against disclosure"). And "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning" do not establish confidentiality. *Pansy,* 23 F.3d at 786-87. For instance, broad claims that disclosure of information would "injure the [party] in the industry and local community" are insufficient. *Cipollone v. Liggett Group, Inc.,* 785 F.2d 1108, 1121 (3d Cir. 1986), *citing Joy v. North,* 692 F.2d 880, 894 (2d Cir. 1982).

5

**B.** **Hoover Fails to Clearly Define the Serious Harm that Would Result from Disclosure of the Subject Documents.**

Without any specificity, Hoover broadly asserts that the 174 documents that are the subject of Dyson's Motion include Hoover's competitive intelligence, marketing strategies, and litigation analysis and, therefore, are deserving of protection from disclosure. However, Hoover fails to identify with particularity the proprietary information contained in most of the documents or the serious injury it might suffer from the disclosure of such information. Surely it is not the case that each and every one of the 174 challenged documents contains confidential or trade secret information, particularly when many of the documents were produced by third-parties. Yet, by failing to address the challenged documents with any particularity, Hoover's Answering Brief asks the Court to assume as much,. Hoover fails to carry its burden under Third Circuit precedent to identify with *particularity* as to *each document or relevant group of documents* the confidential or trade secret information contained therein and to "clearly define" the "serious harm" that would result from its disclosure. *See Arnold.,* 477 F.3d at 108; *Pansy,* 23 F.3d at 786-87.

Hoover does specifically address, by way of "example," 14 of the challenged documents. But even with respect to these 14 documents, Hoover makes only the most perfunctory assertions of confidentiality or resulting harm. Some of these documents, for example, are nearly five years old and contain information that did not even originate from Hoover, but from third parties. *See, e.g.,* Parker Aff. Exs. I, J, K and M (nearly or over five years old), Exs. C and G ████████████ ████████████████████████████ and Exs. N, O and P (produced by third parties). As explained more fully below, Hoover falls far short of the requirement to particularize the proprietary information contained in these 14 documents and the serious harm that would result from its disclosure. *See, infra,* Section I.D.

**C.    Dyson's Motion is Unopposed with Respect to a Large Number of the Subject Documents.**

    1.    Retention and Use of Non-Confidential Documents.

There is no dispute between the parties regarding Dyson's use and retention of non-confidential documents during the course of the litigation. Indeed, the Protective Order places no restrictions on the use of such documents. The relief requested in Dyson's Motion with respect to non-confidential documents is required only to permit Dyson to retain these documents after the litigation concludes, and Hoover has advanced no reason not to grant the Motion in this respect. Retention and use (including disclosure to third parties) is required if Dyson is to remedy any harm caused by Mr. Capron-Tee through the filing of either a judicial or regulatory proceeding. The 24 documents currently not designated as either confidential or highly confidential are attached to the Appendix of Exhibits to Plaintiffs' Reply Brief ("Appendix") as Exhibit A.

    2.    De-Designation of Documents for Which Hoover did not Propose Redactions.

While it ultimately chose to specifically oppose de-designation of only 14 of the 174 challenged documents, Hoover initially proposed, as part of the meet and confer process, to redact some 80 of the 174 documents that it claimed contained Hoover's proprietary information. *See* June 18, 2007 email from Lisa Parker to John Shaw, *et al.*, attached to the Appendix as Exhibit B ("Per our discussions and correspondence on Friday, attached please find Hoover's suggested redactions to the Maytag/Hoover documents that Dyson seeks to have de-designated. We have redacted portions of the documents that relate to Hoover's confidential information.") By Hoover's own admission, then, the documents for which Hoover did *not* initially propose redactions contain no confidential or trade secret information. Accordingly, Dyson's Motion with respect to these documents should be granted. The Hoover documents for which Hoover

7

did not propose redactions are attached to the Appendix as Exhibit C.

### 3.    De-Designation of Third-Party Produced Documents

Hoover also has no standing to challenge Dyson's Motion with respect to third-party produced documents, and neither Mr. Capron-Tee nor CCI, the two third parties whose documents are included in Dyson's Motion, have moved to intervene for purposes of opposing Dyson's Motion, despite having received notice of same.  Mr. Capron-Tee has chosen not to oppose the relief sought, according to a letter sent by Mr. Capron-Tee to James Dyson.  *See* Appendix, Exhibit D.  And CCI's procedurally improper letter to the Court – which the Court should not consider since CCI has not sought leave to intervene for purposes of addressing Dyson's Motion – fails to particularize the confidential or trade secret information contained in each of the 12 challenged CCI documents.  There is no legal support for the argument that communications between members of committees charged with establishing standards for vacuum cleaner testing should be protected as confidential or trade secret information. And CCI's argument that it produced documents in reliance upon the Protective Order ignores the fact that CCI produced documents in response to a Court ordered subpoena.  In doing so, it enjoyed the benefit of the Protective Order, which allowed it unilaterally to designate certain documents as confidential, but placed the burden affirmatively upon CCI to justify such designations if challenged in Court.

Accordingly, there is no basis on which to deny Dyson's Motion with respect to these third-party produced documents.  The bates range for the documents produced by Mr. Capron-Tee are attached to the Declaration of Craig Rutenberg as Exhibit D.  The CCI documents that are the subject of Dyson's Motion are attached to the Declaration of Craig Rutenberg as Exhibit E.

8

**D.**  **With Respect to the 14 Documents Addressed in its Answering Brief, Hoover Has Failed to Establish the Good Cause Necessary to Justify Continued Restriction on Disclosure.**

A cursory review of the fourteen documents specifically identified by Hoover in its Answering Brief belies any claim that they warrant protection from disclosure. The documents are, for the most part, emails that are several years old; some date back over five years – before Dyson even entered the U.S. market. None of the fourteen documents contains any of the indicia of confidential or trade secret information that can be protected under Rule 26 of the Federal Rules of Civil Procedure. Nor has Hoover shown that it will suffer any "clearly defined or serious injury" as the result of the disclosure of any of these documents (or any of the other challenged documents, for that matter). *Arnold*, 477 F.3d at 108.

Dyson's position with respect to each of the 14 documents is set forth below:



**MAY073463** (Parker Aff., Ex. C): ▓▓▓▓▓▓▓▓▓▓▓▓▓ Mr. Capron-Tee apparently uses Dyson's confidential information to provide unsolicited advice to Hoover ▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓ Hoover has no protectable confidential or trade secret interest in the document.

**MAY022137** (Parker Aff., Ex. D): ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓ Hoover has no protectable confidential or trade secret interest in a four year-old email that discusses a 2003 marketing plan.

**MAY031780** (Parker Aff., Ex. E): Without conceding that this document contains confidential or trade secret information, Dyson agrees that the top portion of this document may

be redacted.  However, Dyson reiterates its request that it be allowed to retain and use the portion of the email that is Mr. Capron-Tee's email to Hoover, ████████████████████████████ ████████████████████████████████ as nothing contained in that portion of the email warrants protection as Hoover's confidential or trade secret information.

**MAY032506** (Parker Aff., Ex. F):  Without conceding that this document contains confidential or trade secret information, Dyson agrees that the top portion of this document may be redacted.  However, Dyson reiterates its request that it be allowed to retain and use the portion of the document ████████████████████████████████████████ ██████████████████████████████████████████ as nothing contained in that portion of the email warrants protection as Hoover's confidential or trade secret information.

**MAY002755** (Parker Aff., Ex. G):  Without conceding that this document contains confidential or trade secret information, Dyson agrees that the bottom portion of this document may be redacted.  However, Dyson reiterates its request that it be allowed to retain and use the portion of the document ████████████████████████████████████████ ██████████████████████████████████████████ as nothing contained in that portion of the email warrants protection as Hoover's confidential or trade secret information.

**MAY002067-74** (Parker Aff., Ex. H): ████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████ The information is dated and of no strategic value to Hoover.  Without

conceding that MAY002067 contains confidential or trade secret information, Dyson agrees that

MAY002067 may be redacted in the manner Hoover proposed on June 18, 2007.  However,

Dyson reiterates its request that it be allowed to retain and use the remaining portion of

MAY002067, 

▓▓▓▓▓ as nothing in the remaining portion of MAY2067 or Mr. Capron-Tee's

memorandum warrants protection as Hoover's confidential or trade secret information.

**MAY061309** (Parker Aff., Ex. I):  Without conceding that this document contains any

confidential or trade secret information, Dyson is willing to withdraw its request for de-

classification of this document.

**MAY028602** (Parker Aff., Ex. J):  This document ▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ This is

especially true since the email goes to the very heart of Mr. Capron-Tee's improper conduct.

Hoover has no protectable confidential or trade secret interest in this document.

**MAY031282** (Parker Aff., Ex. K):  Without conceding that this document contains any

confidential or trade secret information, Dyson agrees that the top portion of this document may

be redacted.  However, Dyson reiterates its request that it be allowed to retain and use the portion

of the document ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓ as nothing contained in that portion of this email or the report warrants protection as

Hoover's confidential or trade secret information.

11

**MAY023407-14** (Parker Aff., Ex. L):  Without conceding that this document contains any confidential or trade secret information, Dyson is willing to withdraw its request for de-classification of this document.

**MAY021565** (Parker Aff., Ex. M):  Without conceding that this document contains any confidential or trade secret information, Dyson is willing to withdraw its request for de-classification of this document.

**TEE000114** (Parker Aff., Ex. N) and **TEE001719** (Parker Aff., Ex. O):  These documents are email exchanges between Mr. Capron-Tee and Hoover's counsel in this litigation. As a principal matter, Mr. Capron-Tee has not sought to intervene in this action, and, in his June 19, 2007 letter to James Dyson, concedes that he does not oppose disclosure of the documents he produced.  (*See,* Appendix, Ex. D.).  In addition, Hoover has no standing to object to third-party designations.  Moreover, Hoover advances no legal support for the argument that communications between counsel and testifying experts qualify as confidential or trade secret information.  There is no basis for protecting communications between a retained testifying expert and counsel under any privilege or theory of confidential or trade secret information. Accordingly, Hoover has no protectable confidential or trade secret interest in either document.

**CCI013809** (Parker Aff., Ex. P):  This document is an email exchange between Ron Battema of CCI and Ken Barrick of Electrolux.  It contains no information relating to Hoover, let alone any confidential or trade secret information, and Hoover has no standing to object to third-party designations.  CCI itself has not sought to intervene in this action, and its June 21, 2007 letter to the Court is procedurally improper.  *See also supra*, Section I.C.3 (addressing to the merits of CCI's letter).

## II.    THE *PANSY* FACTORS WEIGH IN FAVOR OF DISCLOSURE

The Third Circuit has articulated the factors a Court must weigh in deciding whether a

party has demonstrated good cause sufficient to warrant protection from disclosure. *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 787-788 (3d Cir. 1994).[1] Incredibly, Hoover fails to tell the Court that its Answering Brief addresses only a few of the seven factors delineated in *Pansy*, presumably because it believes only those factors weigh in its favor (which they do not). *See* Answering Brief at 8. The full list of factors that the Third Circuit requires a Court to consider when faced with a request to restrict disclosure are: (1) the privacy interest of the party seeking protection; (2) whether the information is being sought for a legitimate purpose; (3) the prevention of particularly serious embarrassment; (4) whether the information sought is important to public health or safety; (5) whether the sharing of the information among litigants promotes fairness and efficiency; (6) whether the party benefiting from the order of confidentiality is a public entity; and (7) whether the case involves important public issues. *Id.*

Almost all of these factors weigh in favor of disclosure here. With respect to the first, Hoover, as a corporation, has no claim to privacy. *Arnold v. Pennsylvania*, 477 F. 3d 105, 111 (3d Cir. 2007) ("[C]orporations can claim no equality with individuals in the enjoyment of a right to privacy"), *quoting U.S. v. Morton Salt Co.*, 338 U.S. 632, 652 (1950). As for the second factor, Dyson legitimately seeks the right to pursue available remedies for any harm caused by Mr. Capron-Tee's duplicitous conduct. The same basic principle at work with the first factor also argues in favor of Dyson with respect to the third. *Pansy*, 23 F.3d at 787. ("As embarrassment is usually thought of as a nonmonetized harm to individuals, it may be especially

---

[1] Contrary to Hoover's assertion, Dyson is not seeking to modify the terms of the Protective Order after litigation has concluded, but rather to enforce its terms, which require Hoover to demonstrate to the Court that the challenged documents warrant confidential treatment under Third Circuit law. This Hoover has failed to do. Because the Protective Order provides Dyson with a mechanism for challenging at any time Hoover's unilateral confidentiality designation, Hoover's purported "reliance" on the Protective Order in producing the documents merits no consideration here. Protective Order ¶ ¶ 15 and 16; *see also* Answering Brief at 3, 8.

13

difficult for a business enterprise, whose primary measure of well-being is presumably monetized, to argue for a protective order on this ground.") The fifth factor also weighs in Dyson's favor as it is far more efficient to de-designate the documents than force Dyson to commence a lawsuit in the United States for purposes of issuing Hoover a subpoena in order to obtain the very same documents Dyson currently has in its possession. It also is only fair that Dyson be permitted to use documents containing *Dyson's*, and not *Hoover's*, confidential information. Finally, while the fourth and sixth factor admittedly have no application here, the seventh factor does, as the motion benefits the public interest in promoting ethical corporate behavior. There is no public interest in protecting corporate espionage as confidential, and the public benefits from any proceeding that ensures that there are ample deterrents to such unethical behavior.

DB01:2417416.1                                                                063753.1002

## CONCLUSION

For the foregoing reasons, Dyson respectfully requests that the Court grant Dyson's Motion for Limited Relief from the Protective Order and enter an order permitting retention and use of the documents listed in Exhibit C to Dyson's Motion.

Respectfully submitted,

YOUNG CONAWAY STARGATT & TAYLOR, LLP

C. Barr Flinn (No. 4092)
John W. Shaw (No. 3362)
Monté T. Squire (No. 4764)
The Brandywine Building,
1000 West Street, 17th Floor
Wilmington, Delaware  19801
(302) 571-6600
msquire@ycst.com

*Attorneys for Plaintiffs Dyson Technology Limited
and Dyson, Inc.*

Dated: June 27, 2007

15

## CERTIFICATE OF SERVICE

I, Monté T. Squire, hereby certify that on July 5, 2007, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Francis DiGiovanni, Esquire
> James D.  Heisman, Esquire
> CONNOLLY BOVE LODGE & HUTZ LLP
> The Nemours Building – 8th Floor
> 1007 N. Orange Street
> Wilmington, DE  19801

I further certify that on July 5, 2007, I caused a copy of the foregoing document to be served by e-mail on the above-listed counsel of record and on the following in the manner indicated:

> **BY E-MAIL**
> Ray L. Weber, Esquire
> Laura J. Gentilcore, Esquire
> RENNER, KENNER, GREIVE, BOBAK,
>   TAYLOR & WEBER
> 400 First National Tower
> Akron, OH  44308
>
> Kimball R. Anderson, Esquire
> Stephen P. Durchslag, Esquire
> WINSTON & STRAWN LLP
> 35 W. Wacker Drive
> Chicago, IL  60601-9703

> YOUNG CONAWAY STARGATT & TAYLOR, LLP
>
> /s/ Monté T. Squire
> C. Barr Flinn  (No. 4092)
> John W. Shaw (No. 3362)
> Monté T. Squire (No. 4764)
> 1000 West Street, 17th Floor
> Wilmington, Delaware  19801
> (302) 571-6600
> jshaw@ycst.com
> *Attorneys for Dyson Technology Limited and Dyson, Inc.*