UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DYSON TECHNOLOGY LIMITED and DYSON, INC., | ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No. 05-434 GMS |
| v. | ) | |
| | ) | |
| HOOVER, INC., HOOVER GENERAL, L.L.C., HOOVER LIMITED L.L.C. HOOVER COMPANY I., L.P. and MAYTAG CORPORATION, | ) ) ) ) | REDACTED FOR PUBLIC FILING |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' MOTION FOR LEAVE TO FILE A SUR-REPLY IN OPPOSITION TO PLAINTIFFS' MOTION FOR LIMITED RELIEF FROM THE PROTECTIVE ORDER

Defendants (collectively "Hoover") respectfully move this Court to file a sur-reply (Exhibit A) to Plaintiffs' Brief in Support of Their Motion for Limited Relief from the Protective Order. In support of this motion, Hoover states:

1.      Hoover should be allowed to file the attached sur-reply because Dyson's reply brief raises new arguments and contains new matters that should have been included in their opening brief. Generally, a moving party has the right to file a reply brief responding to arguments raised in the non-moving party's answering brief. This right, however, is limited to new arguments that could not have been raised in the moving party's opening brief. *See* Local Rule 7.1.3(c)(2) (stating that "The party filing the opening brief shall not reserve material for the reply brief which should have been included in a full and fair opening brief"). *See also Flanagan v. Wyndham Int'l Inc.*, 231 F.R.D. 98, 101 (D.C. 2005) (stating a sur-reply may be filed by leave of court to "address new matters raised in a reply, to which a party would otherwise be unable to respond") (citations omitted); *Webloyalty Corn, Inc. v. Consumer*

*Innovations, LLC*, C.A. No. 04-90-KAJ, 2005 WL 121796, at *6 (D. Del. Jan. 13, 2005) (citing

to Local Rule 7.1.3 (c)(2)) (Exhibit B hereto).

2.



Additionally, Dyson contends for the first time that third parties, Grahame

Capron-Tee and Compliance Consulting Inc. (CCI), whose documents Dyson seeks to de-

designate, did not properly oppose Dyson's motion. Significantly, Dyson also failed to make a

reasonable effort to contact the third parties or their counsel in an effort to reach agreement prior

to filing its motion as required by Local Rule 7.1.1.

3.



4.     Dyson also states: "By Hoover's own admission, then, the documents for which

Hoover did *not* initially propose redactions contain no confidential or trade secret information."

*Id.* This statement is factually inaccurate. The redactions proposed by Hoover were a "starting point" of negotiations among the parties. Hoover Answering Brief at 6.

5.    Further, Dyson's reply includes the incorrect statement that "Hoover chose to specifically oppose de-designation of only 14 of the 174 challenged documents." Hoover's answering brief provided the Court with 14 examples (out of the thousands of pages that Dyson seeks to de-designate) of the representative types of Hoover confidential information that Dyson's motion seeks to de-designate.

6.    Given the breadth of relief Dyson seeks from the Protective Order and the potential irreparable harm to Hoover's business interests, Hoover should be afforded the opportunity to respond to Dyson's new and factually inaccurate material.

For the foregoing reasons, Hoover respectfully requests that the Court grant its Motion for Leave to File a Sur-Reply in Opposition to Plaintiffs' Motion for Limited Relief from the Protective Order.

/s/ Francis DiGiovanni
Francis DiGiovanni (#3189)
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 N. Orange Street
Wilmington, DE 19899
Phone (302) 658-9141

Kimball R. Anderson
Stephen P. Durchslag
Winston & Strawn LLP
35 West Wacker Drive
Chicago, IL 60601
Phone (312) 558-5600

Ray L. Weber
Renner, Kenner, Greive, Bobak, \
  Taylor & Weber
400 First National Tower
Akron, OH  44308
Phone (330) 376-1242

*Attorneys for Defendants*

Dated:  July 6, 2007

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DYSON TECHNOLOGY LIMITED<br>and DYSON, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No. 05-434 GMS |
| v. | ) | |
| | ) | |
| HOOVER, INC., HOOVER GENERAL,<br>L.L.C., HOOVER LIMITED L.L.C.<br>HOOVER COMPANY I., L.P. and<br>MAYTAG CORPORATION, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**[PROPOSED] ORDER GRANTING MOTION FOR LEAVE TO FILE A SUR-REPLY**

The Court, having considered Defendants' Motion for Leave To File a Sur-Reply, and for good cause appearing therefore, Defendants' Motion for Leave To File a Sur-Reply is GRANTED.

It is HEREBY ORDERED that the Clerk of the Court enter the Sur-Reply attached as Exhibit A to the Motion for Leave To File Sur-Reply.

SO ORDERED this _____ day of _____, 2007

_____
Chief Judge Gregory M. Sleet
United States District Court for the District of Delaware

## STATEMENT PURSUANT TO LOCAL RULE 7.1.1

I, Francis DiGiovanni, Esq., an attorney for plaintiff, hereby state that the parties attempted to reach an agreement on the matters set forth in Defendants' Motion for Leave To File a Sur-Reply.    Specifically, on July 5 and 6, 2007, Lisa Parker, Esq., communicated with Craig Rutenberg, Esq., Esq., seeking defendant's consent to the relief sought in the motion.  Mr. Rutenberg did not consent.

Date:   July 6, 2007                          /s/ Francis DiGiovanni
                                             Francis DiGiovanni (#3189)

# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DYSON TECHNOLOGY LIMITED and DYSON, INC., | ) ) | |
| Plaintiffs, | ) ) | |
| | ) | **Civil Action No. 05-434 GMS** |
| v. | ) ) | |
| HOOVER, INC., HOOVER GENERAL, L.L.C., HOOVER LIMITED L.L.C. HOOVER COMPANY I., L.P. and MAYTAG CORPORATION, | ) ) ) ) ) | |
| | ) | REDACTED FOR PUBLIC FILING |
| Defendants. | ) ) | |

## DEFENDANTS' SUR-REPLY IN OPPOSITION TO PLAINTIFFS' MOTION FOR LIMITED RELIEF FROM THE PROTECTIVE ORDER

### INTRODUCTION

In violation of Local Rule 7.1.3(c)(2), the reply brief filed by Dyson includes topics not addressed in Dyson's opening brief, as well as egregious factual inaccuracies. Hoover believes the newly presented arguments should not be considered by this Court in ruling on Dyson's Motion for Limited Relief from the Protective Order and, in any event, the newly presented arguments are false. Additionally, none of the new factually inaccurate allegations in Dyson's reply brief do anything to alter the truth of the matter, which is that documents containing, among other things, Hoover's highly confidential advertising, testing, and litigation strategy are not appropriate material for unbridled dissemination and public view.

## ARGUMENT

**I.**

REDACTED

**II. DYSON'S REPLY BELATEDLY AND MISLEADINGLY CLAIMS THAT CAPRON-TEE AND CCI DID NOT OPPOSE DYSON'S MOTION.**

In its reply brief, Dyson implies that third parties, Grahame Capron-Tee and Compliance Consulting Inc. (CCI), whose documents Dyson seeks to de-designate, did not properly oppose Dyson's motion.  *See* Dyson Reply at 7.  Again, whether Mr. Capron-Tee or CCI opposed the motion should and could have been raised in Dyson's opening brief.  However, Dyson did not raise this in its opening brief because Dyson failed to make a reasonable effort to contact the third parties or their counsel in an effort to reach agreement prior to filing its motion as required

by Local Rule 7.1.1. Rather, Dyson informed CCI of the motion only after Hoover raised the issue. *See* Letter from S. Durchslag to S. Reich, dated June 8, 2007 (Exhibit 1 hereto). Further, Dyson did not provide Mr. Grahame Capron-Tee with notice of the motion. The notice Mr. Capron-Tee received was provided by Hoover. Thus, not only is Dyson raising in its reply brief information that should have been raised in its opening brief, but the information Dyson has included in its reply is misleading and should not be considered by this Court.

## III.   DYSON MISLEADS THE COURT CONCERNING HOOVER'S POSITION ON THE DOCUMENTS AT ISSUE.

### A.   Dyson attempts to bolster its reply by adding new arguments based on a proposal Dyson previously rejected.

During the parties' meet and confer discussions, Hoover proposed redactions to the documents at issue in Dyson's motion. Dyson rejected Hoover's proposal. Despite this fact, Dyson's reply brief inappropriately discusses the substance of these redactions. Specifically, Dyson's reply states that "Hoover initially proposed, as part of the meet and confer process, to redact some 80 of the 174 documents that it claimed contained Hoover's proprietary information." Dyson Reply at 7. Further, Dyson asserts that "By Hoover's own admission, then, the documents for which Hoover did *not* initially propose redactions contain no confidential or trade secret information." *Id.* ˉThis is factually inaccurate. As stated in Hoover's answering brief, the redactions proposed by Hoover were a "*starting point*" of negotiations among the parties. Hoover Answering Brief at 6 (emphasis added). More importantly, prior to filing its reply brief, Dyson did not respond to the redactions Hoover proposed during the parties' meet and confer process. Nonetheless, Dyson sees fit to rely on these redactions as a measuring stick to guide the Court in determining confidentiality in its reply brief. In an effort to bolster its claims, Dyson is improperly presenting on reply arguments that it previously rejected during the

3

parties' meet and confer process.  This Court should not consider this newly-included and misleading information.

### B.    Dyson misleadingly asserts that Hoover only opposes de-designation of 14 out of 174 documents.

In its reply, Dyson falsely claims that "Hoover chose to specifically oppose de-designation of only 14 of the 174 challenged documents." Dyson Reply at 7.  This statement is misleading.   Contrary to Dyson's assertion, Hoover is not challenging only 14 documents. Rather, Hoover chose 14 examples (out of the thousands of pages of documents that Dyson seeks to de-designate) in an effort to group the types of Hoover confidential information that is at risk of public disclosure if Dyson's motion is granted.   Because Dyson seeks to de-designate thousands of pages of documents, Hoover sought to respond to Dyson's overbroad motion in the most efficient manner possible.  If directed by this Court to do so, Hoover would of course conduct a particularized review of the thousands of pages of documents Dyson seeks to disclose. For purposes of this briefing, however, Hoover thought it appropriate to group documents for purposes of demonstrating the overbreadth of Dyson's motion and minimizing the burden on the Court.   The Court should disregard Dyson's false assertion that Hoover only opposes de-designation of 14 documents.

### CONCLUSION

For the reasons set forth above, in addition to those reasons set forth in Hoover's Answering Brief in Opposition to Plaintiffs' Motion for Limited Relief from the Protective Order, Hoover respectfully requests that this Court deny Dyson's motion.

4

/s/ Francis DiGiovanni
Francis DiGiovanni (#3189)
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 N. Orange Street
Wilmington, DE 19899
Phone (302) 658-9141

Kimball R. Anderson
Stephen P. Durchslag
Winston & Strawn LLP
35 West Wacker Drive
Chicago, IL 60601
Phone (312) 558-5600

Ray L. Weber
Renner, Kenner, Greive, Bobak,
    Taylor & Weber
400 First National Tower
Akron, OH 44308
Phone (330) 376-1242

*Attorneys for Defendants*

Dated: July 6, 2007

# EXHIBIT 1

# WINSTON & STRAWN LLP

| | | |
|---|---|---|
| 43 RUE DU RHONE<br>1204 GENEVA, SWITZERLAND | 35 WEST WACKER DRIVE<br>CHICAGO, ILLINOIS 60601-9703 | 200 PARK AVENUE<br>NEW YORK, NEW YORK 10166-4193 |
| BUCKLERSBURY HOUSE<br>3 QUEEN VICTORIA STREET<br>LONDON, EC4N 8NH | (312) 558-5600 | 21 AVENUE VICTOR HUGO<br>75116 PARIS, FRANCE |
| 333 SOUTH GRAND AVENUE<br>LOS ANGELES, CALIFORNIA 90071-1543 | FACSIMILE (312) 558-5700 | 101 CALIFORNIA STREET<br>SAN FRANCISCO, CALIFORNIA 94111-5894 |
| | www.winston.com | 1700 K STREET, N.W.<br>WASHINGTON, D.C. 20006-3817 |



**REDACTED**

WINSTON & STRAWN LLP





# EXHIBIT B



Not Reported in F.Supp.2d                                                                                    Page 2

Not Reported in F.Supp.2d, 2005 WL 121796 (D.Del.), 73 U.S.P.Q.2d 1898

**(Cite as: Not Reported in F.Supp.2d)**

Webloyalty.Com, Inc. v. Consumer Innovations, LLC
D.Del.,2005.

United States District Court,D. Delaware.
WEBLOYALTY.COM, INC., Plaintiff,
v.
CONSUMER INNOVATIONS, LLC, Defendant.
**No. Civ.A.04-90-KAJ.**

Jan. 13, 2005.

*MEMORANDUM ORDER*
JORDAN, J.

### I. INTRODUCTION

**\*1** Presently before me is a Motion for Summary Judgment (Docket Item [" D.I." ] 91) filed by defendant Consumer Innovations, LLC (" Consumer Innovations" ) and a Motion for Discovery on the Issue of Personal Jurisdiction (D.I. 27; " Motion for Discovery" ) filed by Webloyalty.com, Inc. (" Webloyalty" ). Webloyalty filed this action on February 9, 2004 (D.I.1) and subsequently filed a First Amended Complaint (the " Complaint" ) on May 26, 2004 (D.I.52). Webloyalty alleges two counts in its Complaint. First, that Consumer Innovations infringed its copyright, Registration No. TX5842219, " [b]y using strikingly or substantially similar sell pages in commerce ... without Webloyalty's permission, license or consent." (*Id.* at ¶¶ 20, 24, 25.) Second, that Consumer Innovations' " use in commerce of Webloyalty's advertisements is likely to cause confusion, mistake or deception as to both [Consumer Innovations'] affiliation, connection, or association with Webloyalty ... [and] the origin, sponsorship or approval of [Consumer Innovations'] goods, services, or commercial activities," such that Consumer Innovations' activities constitute " unfair competition and a false designation of origin in violation of the Lanham Act, 15 U.S.C. § 1125(a)." (*Id.* at ¶ ¶ 31, 32, 33.) This court has jurisdiction pursuant to 28 U.S.C. § 1331.

For the reasons that follow, Consumer Innovations' Motion for Summary Judgment (D.I.91) will be denied and Webloyalty's Motion for Discovery

(D.I.27) will be denied as moot.[FN1]

> FN1. Webloyalty filed its Motion for Discovery in response to Consumer Innovations' Motion to Dismiss (D.I.16). Webloyalty sought discovery " only if the Court determine[d] that [its] opposition to Consumer Innovations' motion to dismiss for lack of in personam jurisdiction is not sufficient by itself to result in denial of [Consumer Innovations'] motion." (*Id.* at 1.) On September 2, 2004, Consumer Innovations filed a Notice of Withdrawal of its Motion to Dismiss. (D.I.84.) Based on Consumer Innovations' withdrawal of its motion, I consider Webloyalty's Motion for Discovery (D.I.16) to be moot.

### II. BACKGROUND [FN2]

> FN2. The following rendition of background information does not constitute findings of fact and is cast in the light most favorable to the non-moving party, the plaintiff.

Webloyalty and Consumer Innovations are businesses engaged in the marketing of online membership clubs to consumers. (D.I. 92 at 3; D.I. 94 at 3.) Consumers purchasing memberships are able to purchase goods and/or services offered through the clubs at a discount. (D.I. 94 at 3.) One of the ways in which Webloyalty markets these club memberships is by contracting with other companies (" partner companies" ), who sell goods and services on line, to place a banner on the partner company's sale confirmation web page. (D.I. 94 at 3.) Generally, the marketing of each parties' club memberships occurs in the following manner:

1. A consumer completes an online purchase from the partner company and is then directed to the partner company's " confirmation page."

2. The confirmation page has a " banner advertisement" with an offer from Webloyalty or Consumer Innovations.

3. If the consumer clicks on the banner advertisement, the consumer is then transferred to the " sell page" on the website for Webloyalty or Consumer Innovations depending on whose banner ad appeared.

4. The sell page offers the consumer the opportunity

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2005 WL 121796 (D.Del.), 73 U.S.P.Q.2d 1898

(Cite as: Not Reported in F.Supp.2d)

Page 3

to become a member of the particular discount program. It contains the material terms of the program, the offer details, and a description of the program. The sell page also allows the consumer to return to the partner company's website by clicking on a link.

(See D.I. 92 at 4.)

*2 In October 2002,[FN3] Webloyalty entered into a contract with a company called Walter Drake to promote its services on the Walter Drake confirmation page in the manner described above. (D.I. 94 at 3 .) From that time until August of 2003, Webloyalty was the only company to offer these services through Walter Drake. (See id. at 4.) In August of 2003, Walter Drake ran a test to determine whether its consumers preferred the services of Webloyalty or those of one of its competitors, InQ. (Id. at 3-4.) At the end of the test period, the Webloyalty banner was again placed on all of the Walter Drake confirmation pages. (Id. at 4.)

> FN3. Drawing all reasonable inferences in favor of the non-moving party for the purposes of this motion, I will accept Webloyalty's statement that the date of contract was October, 2002, although Consumer Innovations stated that it was in or about November, 2002. (D.I. 94 at 3.)

In December 2003,[FN4] Consumer Innovations entered into a deal with a broker [FN5] pursuant to which it would offer its " Traveler Innovations" service on the Walter Drake confirmation page. (D.I. 94 at 4.) The purpose of this arrangement was to test Consumer Innovations' program against Webloyalty's " Reservation Rewards" program. (Id.) In this arrangement, customers would alternatively be directed by Walter Drake to either the Consumer Innovations or Webloyalty sell page. (Id.) As part of the agreement between Walter Drake and Webloyalty, and the agreement between Walter Drake and Consumer Innovations, consumers joining either the " Reservation Rewards" or " Travelers Innovations" program would be given a $10 credit toward their next Walter Drake purchase. (D.I. 92 at 5.)

> FN4. Drawing all reasonable inferences in favor of the non-moving party for the purposes of this motion, I will accept Webloyalty's statement that the agreement

was made in December, 2003, although Consumer Innovations stated that it was in or about January, 2004. (D.I. 94 at 4.)

> FN5. Webloyalty alleges that the agreement was between Consumer Innovations and a " broker," whereas Consumer Innovations alleges that the agreement was made between it and Walter Drake. (D.I. 94 at 4; D.I. 92 at 5.) Either way, the result, as described above, was the same.

The present dispute centers on Consumer Innovations' sell page. Webloyalty alleges that Consumer Innovations created its sell page by copying portions of Webloyatly's sell page. (See D.I. 92 at 4-5.) Several portions of Webloyalty's and Consumer Innovations' sell pages contained identical verbiage. (D.I. 52, Ex. E at 1-2.) Examples of such identical verbiage include: [FN6] " Try all the benefits for the next 30 days FREE and see how much you save! There's no obligation to continue. If you are completely satisfied, do nothing and you'll enjoy ongoing savings for only $_ [FN7] a month;" " For your convenience __ [FN8] will use the contact and credit or debit card information you provided to Walter Drake today for billing and benefit processing;" and " To thank you for your purchase at Walter Drake today, click YES below to get your $10 .00 Cash Back Gift ... on your next Walter Drake purchase plus sign up for all the money-saving benefits of __,[FN9] our ... online travel ... discounts ... program!" (Id.)

> FN6. Although the full extent of Webloyalty's copyright is not disclosed in the record, the phrases listed above are representative of the information presented on Webloyalty's and Consumer Innovations' sell pages.

> FN7. In Webloyalty's sell page, the cost is $9 a month whereas on Consumer Innovations' sell page, the cost is $7 a month. (D.I. 52, Ex. E at 1-2.)

> FN8. The blank contains the program name, " Reservation Rewards" in Webloyalty's sell page, and " Traveler Innovations" in Consumer Innovations' sell page. (D.I. 52, Ex. E at 1-2.)

> FN9. The blank contains the program names as in footnote 8.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Consumer Innovations has since modified its sell page. (D.I. 92 at 4-5.) Webloyalty admits that Consumer Innovations' modified sell page does not infringe its copyright. (*Id.* at 5.)

### III. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(c), a party is entitled to summary judgment if a court determines from its examination of " the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In determining whether there is a triable issue of material fact, a court must review the evidence and construe all inferences in the light most favorable to the non-moving party. *Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 573 (3d Cir.1976). However, a court should not make credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000). To defeat a motion for summary judgment, the non-moving party must " do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986) (internal citation omitted). The non-moving party " must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(c). " Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Inds. Co., Ltd.,* 475 U.S. at 587 (internal citation omitted). Accordingly, a mere scintilla of evidence in support of the non-moving party is insufficient for a court to deny summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986).

### IV. DISCUSSION

*3 Webloyalty alleges that Consumer Innovations infringed its copyright (D.I. 52 at ¶¶ 20, 24, 25) and that Consumer Innovations' activities constitute unfair competition (*id.* at 31, 32, 33).

#### A. Copyright Infringement

To prove copyright infringement, a plaintiff must establish that it owns a valid copyright and that the copyrighted material was copied by the defendant.

*Dam Things from Denmark, a/k/a Troll Company ApS v. Russ Berrie & Co., Inc.,* 290 F.3d 548 at 561 (3d Cir.2002) (citing *Whelan Assocs., Inc. v. Jaslow Dental Lab., Inc .,* 797 F.2d 1222, 1231 (3d Cir.1986)). Certificates of registration issued by the U.S. Copyright Office constitute *prima facie* evidence of the validity of the copyright and ownership of the material. *Ford Motor Co. v. Summit Motor Products, Inc.,* 930 F.2d 290-91 (3d Cir.1991) (internal citations omitted). Consumer Innovations concedes that Webloyalty's " ownership of the copyrighted property is undisputed" and that, therefore, the question is whether it copied protectible material from the Webloyalty sell page. (D.I. 92 at 8.)

Copying is a " shorthand reference to the act of infringing any of the copyright owner's five exclusive rights set forth at 17 U.S.C. § 106." *Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.,* 307 F.3d 197, 206 (3d Cir.2002) (quoting *Ford Motor,* 930 F.2d at 291.) Because it is rarely possible to prove copying through direct evidence, *Roth Greeting Cards v. United Card Co.,* 429 F.2d 1106, 1110 (9th Cir.1970), " copying may be proven inferentially by showing that the defendant had access to the allegedly infringed copyrighted work and that the allegedly infringing work is substantially similar to the copyrighted work." *Whelan Assocs.,* 797 F.2d at 1231-32 (internal citations omitted). The test for " substantial similarity" has two considerations: extrinsic and intrinsic. *Dam Things from Denmark,* 290 F.3d at 562. Extrinsically, experts " may be called upon to determine whether there is sufficient similarity between the works so as to conclude that the alleged infringer ' copied' the work." *Id.* (citing *Whelan Assocs.,* 797 F.2d at 1232.) Intrinsically, the fact-finder is to determine whether a " lay-observer" would " believe that the copying was of protectible aspects of the copyrighted work." *Id.* (citing *Whelan Assocs.,* 797 F.2d at 1232.) These two considerations have been described as whether " the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same." FN10 *See id.* (quoting *Folio Impressions, Inc. v. Byer California,* 937 F.2d 759, 765 (2d Cir.1991)).

> FN10. In *Dam Things From Denmark,* the Third Circuit noted that it had previously adopted the Second Circuit's test for substantial similarity, as described in *Arnstein v. Porter,* 154 F.2d 464, 468-69 (2d

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2005 WL 121796 (D.Del.), 73 U.S.P.Q.2d 1898

(Cite as: Not Reported in F.Supp.2d)

Cir.1946). _Dam Things From Denmark,_ 290 F.3d at 562. This test consists of two considerations: " ' actual copying' which focuses on access in conjunction with ' probative' similarity, and ' actionable copying' which considers whether there is ' substantial' similarity between the alleged infringing work and the _protectible elements_ of the original work." _Dam Things from Denmark,_ 290 F.3d at 562 (internal citations omitted). The test for actual copying can be established by direct evidence or inferred by evidence of access and " similarities that are probative of copying between the works, and expert testimony." _Id._ (internal citations omitted).

The Supreme Court, however, has explained that " [n]ot all copying ... is copyright infringement." _Feist Publ'ns., Inc. v. Rural Tel. Serv. Co., Inc.,_ 499 U.S. 340, 361 (1991). Therefore, the trial court must consider, " whether the copying is actionable, viewing the item through the lay person's eyes, focusing on whether the substantial similarities relate to protectible material." _Dam Things From Denmark,_ 290 F.3d at 562 (internal citation omitted.) This test makes clear that " it is only after actual copying is established that one claiming infringement then proceeds to demonstrate that the copying was improper or unlawful by showing that the second work bears ' substantial similarity' to protected expression in the earlier work." _Id._ (internal quotation omitted).

Consumer Innovations makes two arguments as to why there is no genuine issue of material fact. First, it argues that the language common to both Consumer Innovations' and Webloyalty's sell pages is not protectible under the Copyright Act of 1976 because the language is merely functional or standard in the industry and therefore, was not originally created by Webloyalty. (D.I. 92 at 9-10.) Second, it argues that the common language was made up of common expressions which may be lawfully appropriated under the merger and scenes-a-faire doctrines. (_Id._ at 10-13.)

**\*4** Webloyalty counter-argues that Consumer Innovations has failed to show that no genuine issues of material fact exist and, therefore, summary judgment for Consumer Innovations is not appropriate. First, Webloyalty notes that evidence of its copyright registration is _prima facie_ evidence of originality. (D.I. 94 at 6.) Webloyalty argues that Consumer Innovations has failed to overcome this presumption of originality because there is no evidence that Webloyalty's sell page was copied from prior similar works. (_Id._ at 6-7.) Second, Webloyalty argues that the doctrines of merger and scenes-a-faire do not apply because there are " a number of ways" to express the idea of " a $10 incentive for joining a membership club and for instructing individuals how to join." (_Id._ at 11.)

Webloyalty is correct that there are genuine issues of material fact that require denial of Consumer Innovations' Motion for Summary Judgment. Consumer Innovations has failed to rebut the _prima facie_ case of originality established by Webloyalty's copyright registration. Certificates of registration constitute _prima facie_ evidence of originality. _Blendingwell Music, Inc. v. Moor-Law, Inc.,_ 612 F.Supp. 474, 480 (D.Del.1985) (internal citations omitted). Consumer Innovations' argument as to lack of originality is entirely unsupported. [FN11] Consumer Innovations argued that the common language of both sell pages was " standard in the industry" or consisted of " functional instructions" such that it was not protectible. (D.I. 92 at 9-10.) Consumer Innovations, however, does not provide any evidentiary or legal support for this argument. Even if Consumer Innovations had such evidence, a defendant cannot offer evidence of prior similar works without evidence that plaintiff copied those works. 3 Melville B. Nimmer & David Nimmer, _Nimmer on Copyright_ § 12.11[B][1]. Furthermore, " [u]nless the originality vel non of a copyrighted work is determinable as a matter of law, it becomes a question of fact for the fact finder to resolve." _Scientist, Inc. v. Lindsey,_ No. CIV. A. 95-7960, 1996 WL 278778, at \*3 n. 7 (D.Del. May 22, 1996) (quoting _Modern Publ'g v. Landoll, Inc.,_ 849 F.Supp. 22, 24 (S.D.N.Y.1994)).

> FN11. Consumer Innovations seems to imply that the common language of the sell pages was standard in the industry because the individual who wrote the sell page for Webloyalty, and the individual who allegedly wrote the sell page for Consumer Innovations, were both previously employed by Trilegiant, a company that also used sell pages to conduct business. (D.I. 92 at 9.) Consumer Innovations noted that it was "

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2005 WL 121796 (D.Del.), 73 U.S.P.Q.2d 1898

(Cite as: Not Reported in F.Supp.2d)

more than a little ironic" that both men had the same former employer. (*Id.*) Consumer Innovations, however, has failed to present evidence that Webloyalty personnel copied the sell page from the Trilegiant sell page or any other sell page, or, for that matter, whether the Trilegiant sell page was even created before Webloyalty's.

It is not until Consumer Innovations' Reply Brief in support of its Motion for Summary Judgment that it moves past its lack of originality argument and argues that any substantial similarity between the two sell pages is not actionable. (D.I. 98 at 6-8.) It admits, however, as it must, that the determination of the cause of the substantial similarity, " is a question of fact." (*Id.* at 7 (quoting *Whelan,* 797 F.2d at 1232 n. 23.)) Therefore, it is clear that Consumer Innovations has not rebutted the *prima facie* case of originality nor has it established that there are no genuine issues of material fact relating to the originality of the work at issue or the determination of substantial similarity.

Consumer Innovations' second argument is that the functional nature of the language and the cash back feature are " external factors" which limit the number of ways to express the ideas conveyed on the sell page such that the doctrines of merger or scenes-a-faire prevent Webloyalty from claiming an exclusive right to the common language of the sell pages. (D.I. 92 at 10-13.) Under the doctrine of scenes-a-faire, copyright protection is denied " to those expressions that are standard, stock, or common to a particular topic or that necessarily follow from a common theme or setting." *Dun & Bradstreet Software Servs., Inc.,* 307 F.3d at 215 (quoting *Gates Rubber Co. v. Bando Chem. Indus.,* 9 F.3d 823, 838 (10th cir.1993)). Scenes-a-faire are " incidents, characters or settings which are as a practical matter indispensable ... in the treatment of a given topic." *Whelan Assocs.,* 797 F.2d at 1236 (quoting *Atari, Inc. v. N. Am. Philips Consumer Elecs. Corp.,* 672 F.2d 607, 616 (7th Cir.1982), *cert. denied,* 459 U.S. 880 (1982)). The scenes-a-faire doctrine denies copyright protection to an idea that is capable of expression only in a stereotyped form. *Atari, Inc.,* 672 F.2d at 616.

*5 The doctrine of merger applies where there is a merger of idea and expression, such that a given idea is inseparably tied to a particular expression. *Educ. Testing Servs. v. Katzman,* 793 F.2d 533, 539 (3d Cir.1986). " The idea and the expression will

coincide when the expression provides nothing new or additional over the idea ." *Midway Mfg. Co. v. Bandai-America, Inc.,* 546 F.Supp. 125, 148 (D.N.J.1982) (internal citation omitted). Under such circumstances, protecting the expression would entail protecting the idea itself, which is impermissible under copyright law. *Atari, Inc.,* 672 F.2d at 612.

Consumer Innovations' arguments based on these doctrines are also insufficient to establish that summary judgment is appropriate. For either doctrine to apply, Consumer Innovations must establish that there is a limited, if not singular, manner to express the ideas presented on the sell page. It has not made any such showing. The evidence presented by Consumer Innovations, if anything, proves the opposite. Consumer Innovations provides two examples of sell pages that offer a $10 incentive for joining a membership club and inform the reader how to join. (D.I. 92 at Ex. I; D.I. 95 at Ex. 14, Dec. Anne M. Sterba.) These sell pages clearly show that there are other ways in which those ideas can be expressed. Neither of these sell pages uses the same text or arrangement as Webloyalty's copyrighted page. While, the " external factors" described by Consumer Innovations may provide the central ideas, there apparently are a number of ways to express them.[FN12] Therefore, Consumer Innovations has not established that either doctrine supports their argument for summary judgment on this record.

> FN12. For instance, Webloyalty submitted seven examples of sell or enrollment pages embodying a cash back offer which it admits do not utilize the same text or same look and feel as Webloyalty's sell page. (D.I. 96 at Ex. A, Dec. Tamra Lichtman.)

Because Consumer Innovations has failed to satisfy its burden of proving that no genuine issues of material fact exist as to the issue of copyright infringement, its Motion for Summary Judgment is denied.

## B. Unfair Competition

Consumer Innovations' entire argument for summary judgment on Webloyalty's unfair competition claim in its Opening Brief in support of its Motion for Summary Judgment is contained in two sentences. First, Consumer Innovations states that: " Because the elements common to the Reservation Rewards sell page and the Travelers Innovations sell page

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2005 WL 121796 (D.Del.), 73 U.S.P.Q.2d 1898

(Cite as: Not Reported in F.Supp.2d)

Page 7

relate only to the non-copyrightable language, plaintiff's claims for infringement, unfair competition, and trade dress must be dismissed as a matter of law." (D.I. 92 at 8.) Then Consumer Innovations concludes with a request for " Summary Judgment in favor of Consumer Innovations, LLC, dismissing all claims against it with prejudice." (D.I. 92 at 15.) In its Reply Brief in support of its Motion for Summary Judgment (D.I. 98; " Reply Brief" ), however, Consumer Innovations dedicated nearly 10 pages to its argument for why it is entitled to summary judgment on Webloyalty's unfair competition claim. Consumer Innovations' explanation for why it did not earlier address Webloyalty's unfair competition claim was that Webloyalty did not provide any evidence to establish any of the elements of its unfair competition claim throughout discovery. (D.I. 98 at 11-12.)

*6 Delaware Local Rule 7.1.3(c)(2) pertains to Reply Briefs and states: " The party filing the opening brief shall not reserve material for the reply brief which should have been included in a full and fair opening brief...." Therefore, if Consumer Innovations had an argument to make as to why summary judgment on Webloyalty's unfair competition claim was appropriate, it should have been raised in their opening brief, unless it was responding to an argument made by Webloyalty in its Answering Brief (D.I.94). Consumer Innovations, however, was not responding to an argument raised in Webloyalty's Answering Brief because Webloyalty's entire argument, presented in its " Summary of Argument," consisted of the following: " Although [Consumer Innovations" ] motion formulaically requests dismissal " of any and all claims against it"    ... [Consumer Innovations'] Opening Brief ... does not even mention Webloyalty's allegations of unfair competition under the Lanham Act 15 U.S.C. § 1125(a) ... and contains no arguments as to why Count II should be dismissed." (D.I. 94 at 2.)

Because Consumer Innovations' arguments presented on pages 11 through 20 of its Reply Brief should have been presented in its Opening Brief for proper consideration pursuant to Local Rule 7.1.3(c)(2), its Motion for Summary Judgment as to Webloyalty's unfair competition claim is also denied.

## V. CONCLUSION

Accordingly, it is hereby ORDERED that Consumer Innovations' Motion for Summary Judgment (D.I.91)

is DENIED and Webloyalty's Motion for Discovery (D.I.27) is DENIED as moot.

D.Del.,2005.
Webloyalty.Com, Inc. v. Consumer Innovations, LLC
Not Reported in F.Supp.2d, 2005 WL 121796 (D.Del.), 73 U.S.P.Q.2d 1898

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## CERTIFICATE OF SERVICE

I, Francis DiGiovanni, hereby certify that on July 6, 2007, copies of the foregoing document were served on the following counsel of record in the manner indicated:

**BY HAND DELIVERY AND E-MAIL:**

C. Barr Flinn
John W. Shaw
Young Conaway Stargatt & Taylor LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801

**BY UNITED STATES MAIL AND E-MAIL:**

Garrard R. Beeney
Richard C. Pepperman, II
James T. Williams
Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004

Steven F. Reich
Jeffrey S. Edelstein
Manatt, Phelps & Phillips, LLP
7 Times Square
New York, NY 10004

/s/ Francis DiGiovanni
Francis DiGiovanni (#3189)