# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

DYSON TECHNOLOGY LIMITED )
and DYSON, INC., )
  )
            Plaintiffs, )
  )
        v. )          C.A. No. 05-434-GMS
  )
HOOVER INC., HOOVER GENERAL )          **PUBLIC VERSION**
L.L.C., HOOVER LIMITED L.L.C., )
HOOVER COMPANY I, L.P., and )
MAYTAG CORPORATION, )
  )
            Defendants.

## REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION TO ENFORCE THE TERMS OF THE PROTECTIVE ORDER AND THE PARTIES' AGREEMENTS REGARDING THE DESTRUCTION OF DOCUMENTS

|  |  |
|---|---|
|  | C. Barr Flinn  (No. 4092) |
|  | John W. Shaw (No. 3362) |
|  | Monté T. Squire (No. 4764) |
|  | YOUNG CONAWAY STARGATT & TAYLOR, LLP |
|  | 1000 West Street, 17th Floor |
| OF COUNSEL: | Wilmington, Delaware  19801 |
|  | (302) 571-6600 |
| Garrard R. Beeney | jshaw@ycst.com |
| Richard C. Pepperman, II |  |
| James T. Williams | *Attorneys for Plaintiffs Dyson Technology Limited* |
| Adam Brebner | *and Dyson Inc.* |
| SULLIVAN & CROMWELL LLP |  |
| 125 Broad Street |  |
| New York, New York  10004 |  |
| (212) 558-4000 |  |

Steven F. Reich
Jeffrey S. Edelstein
Tamar Feder
MANATT, PHELPS & PHILLIPS, LLP
7 Times Square
New York, New York  10036
(212) 790-4500

Dated:  September 17, 2007

## TABLE OF CONTENTS

Page

I.    SUMMARY OF ARGUMENT ........................................................................... 1

II.   ARGUMENT ................................................................................................... 2

      A.    Hoover's Effort to Distinguish its Destruction Obligations with
            Regard to Documents and Deposition Transcripts is Unpersuasive ...................... 2

      B.    Hoover Ignores the Important Policy Reasons for Allowing Dyson,
            and not Third Party Court Reporting Services, to Retain Copies of
            Deposition Transcripts ........................................................................................ 4

III.  CONCLUSION ................................................................................................ 6

063753.1002

# TABLE OF AUTHORITIES

**Cases**

*MBIA Ins. Co. v. Royal Indemnity Co.*,
  426 F.3d 204 (3d Cir. 2005)............................................................................................ 3

*Nestle Foods Corp. v. Aetna Cas. & Ins. Sur. Co.*,
  129 F.R.D. 483 (D.N.J. 1970) ........................................................................................ 5

*Pansy v. Borough of Stroudsbourgh*,
  23 F.3d 772 (3d Cir. 1994)......................................................................................... 5, 6

*Williams v. Johnson & Johnson*,
  50 F.R.D. 31 (S.D.N.Y. 1970)....................................................................................... 5

DB01:2451716.1                                                  063753.1002

## I.    **SUMMARY OF THE ARGUMENT**

Despite its poisonous tone, Hoover's Answering Brief in Opposition to Plaintiffs Dyson Inc. and Dyson Technology Limited's (collectively, "Dyson") Motion to Enforce the Terms of the Protective Order and the Parties' Agreement Regarding the Destruction of Documents ("Dyson's Motion to Enforce") is fatally flawed in two respects.  First, it ignores the plain and unambiguous language of the Court's December 19, 2005 Protective Order (D.I. 49) ("Protective Order") and the parties' June 14, 2007 letter agreement ("Letter Agreement") that obligate Hoover to destroy documents and deposition transcripts at the conclusion of this litigation. Second, Hoover never disputes that the deposition transcripts in the possession of court reporters are in Hoover's control, and that the court reporting services would destroy those deposition transcripts at the joint request of Hoover and Dyson.  No amount of name-calling or finger-pointing by Hoover can change these dispositive facts.

Nevertheless, Hoover claims that it should be relieved of its obligations under the Protective Order and Letter Agreement because it believes that Dyson has an obligation to preserve deposition transcripts in the hands of court reporters – not for anything having to do with Hoover – but in connection with litigation pending in the United States District Court for the Eastern District of Louisiana between Dyson and a different vacuum manufacturer, Oreck. Even assuming the transcripts were relevant to the Louisiana litigation (which they are not), the duty of preservation in that case is a duty that belongs to Dyson and not Hoover.  Dyson well understands its obligations in the Louisiana litigation and needs no help from Hoover to fulfill them.

Indeed, while Dyson does not expect that transcripts of depositions in this litigation will have any relevance to the Oreck litigation, it has undertaken to preserve the transcripts for that case in the unlikely event they are determined to fall within the proper scope of discovery in that

matter. Hoover, however, should not be allowed to create a situation in which Dyson's competitors may be able to obtain sensitive Dyson-related information directly from court reporters in ways that provide the reporters little ability to: (1) provide notice to Dyson that the information has been demanded by third parties, (2) evaluate the legitimacy of the request or demand for disclosure, or (3) seek appropriate terms limiting further disclosure or use of the transcripts upon dissemination. The point of Dyson's motion is not to avoid required preservation or disclosure, but to make sure that any third-party demands for the information, and any disclosure of it, be made directly to or by Dyson itself. This is not an "extreme position" as Hoover claims (Opp. at 6), but rather an eminently reasonable one, and one that cannot be addressed, as Hoover suggests, merely through the terms of a protective order since neither the future demanding parties nor the relevant court reporting agencies may be subject to the jurisdiction of this Court.

Hoover has no legitimate interest in avoiding its obligations under the wrap-up provisions of the Protective Order and Letter Agreement. Accordingly, the Court should grant Dyson's Motion to Enforce.

## II.      ARGUMENT

### A.      Hoover's Effort to Distinguish its Destruction Obligations with Regard to Documents and Deposition Transcripts is Unpersuasive.

Despite Hoover's unambiguous promise to destroy all deposition transcripts (Rutenberg Declaration in Support of Motion to Enforce filed August 24, 2007 ("Rutenberg Decl."), Ex. B; Parker Decl. Ex. D), Hoover asks that the Court now distinguish between its obligation to destroy documents and its obligation to destroy deposition transcripts. Opp. at 4-6. Unfortunately for Hoover, neither the Protective Order nor the Letter Agreement draws any distinction between Hoover's duties with respect to the two types of materials.

The Protective Order obligates the parties to destroy both documents and deposition transcripts at the conclusion of the litigation to the extent Confidential or Highly Confidential information is contained therein. Protective Order, attached to Rutenberg Decl. at ¶ 21. The Letter Agreement goes even further and extends that destruction requirement to all deposition transcripts, regardless of their content. See Rutenberg Decl., Ex. B, Letter Agreement at Bullet Point One ("[t]he parties agree to destroy all documents produced by the opposing parties in the above lawsuits") and Bullet Point Three ("[t]he parties agree to destroy all deposition transcripts"). Clearly, deposition transcripts are to be treated the same way as documents produced by the parties, and even Hoover is forced to acknowledge its obligation to cause the destruction of Dyson documents in the hands of Hoover's agents. Opp. at 5.

To support its argument that it need not authorize court reporters to destroy the deposition transcripts, Hoover asks that the Court consider the parties' intent in entering into the Letter Agreement and find an absence of a "meeting of the minds" on the issue. See Opp. at 5. However, this ignores both the unambiguous language of the Letter Agreement and the relevant law of contract interpretation in the face of unambiguous contractual terms. See MBIA Ins. Co. v. Royal Indemnity Co., 426 F.3d 204, 210 (3d Cir. 2005) ("[u]nambiguous written agreements should be enforced according to their terms, without using extrinsic evidence to interpret the intent of the parties, to vary the contract or to create an ambiguity") (internal quotation omitted).

Most fundamentally, Hoover is wrong when it argues that the destruction of deposition transcripts by court reporters was not contemplated by the Letter Agreement. Opp. at 5. The July 23, 2007 request from Dyson's counsel -- on which Hoover relies to support that position (Opp. at 5) -- was a request related to the *implementation* of the terms of the Letter Agreement and was not a *new* term outside the scope of that provision. Simply put, it would make no sense for the parties to agree to destroy deposition transcripts but not require their agents, in this case

-3-

court reporting services, to do likewise. On that basis alone, Hoover's argument about the parties' supposed intent should be rejected.

**B.    Hoover Ignores the Important Policy Reasons for Allowing Dyson, and not Third Party Court Reporting Services, to Retain Copies of Deposition Transcripts.**

Dyson does not expect transcripts of depositions taken in this action between Dyson and Hoover to be relevant to the separate action in Louisiana between Dyson and Oreck. Nevertheless, Dyson will preserve the transcripts pending a determination of the appropriate scope of discovery in that litigation.[1] But, Hoover cannot invoke the Louisiana litigation to avoid its own duties in the litigation before this Court.

Hoover argues that "[n]o harm will come to Dyson if the court reporters' transcripts are not destroyed." Opp. at 6. Nothing could be further from the truth, and this assertion demonstrates how badly Hoover misses the point of Dyson's motion. Contrary to Hoover's argument, Dyson does not seek to avoid any discovery obligations. What Dyson seeks is to avoid a situation in which numerous court reporters across the country and in the United Kingdom have sensitive Dyson business-related information subject to subpoena or other compulsory process by Dyson's competitors. It is impossible to predict in what forum or in what type of proceeding that information might be sought and whether any given court reporter would be able to, depending on the rules and practices applicable in the relevant tribunal or jurisdiction, notify Dyson that a request for the transcripts had been made. Moreover, no court reporter will be as well-situated or as motivated as Dyson to assess the legitimacy of any such process, or to

---

[1] Hoover cites many cases for the proposition that the federal rules impose on Dyson an obligation to preserve evidence which might be relevant to the issues in *Oreck* or other reasonably anticipated litigation. See Opp. at 2-3. Dyson does not dispute its obligations in this regard, but this has nothing to do with Hoover or this motion.

determine whether appropriate limits on further disclosure of the information should be sought. Dyson's motion is designed to require parties seeking this information to demand it of, and obtain it from, Dyson -- the party with the greatest interest in the information. This is not something nefarious, as Hoover suggests (Opp. at 3), but rather is an entirely reasonable and appropriate procedure for protecting the transcripts against improper disclosure. And, contrary to Hoover's assertions (Opp. at 6-7), Dyson's legitimate interest in these materials cannot be safeguarded through imposition of a protective order by this Court since neither the future demanding parties nor the relevant court reporting services may be subject to its jurisdiction. Thus, to the extent policy considerations are relevant in construing the terms of the parties' agreements, they strongly favor Dyson.

The cases that Hoover cites in its opposition do not support its contention that it can avoid the requirements of the Protective Order and Letter Agreement. Neither *Nestle Foods Corp. v. Aetna Cas. & Ins. Sur. Co.*, 129 F.R.D. 483 (D.N.J. 1970) or *Williams v. Johnson & Johnson*, 50 F.R.D. 31 (S.D.N.Y. 1970) have anything to do with enforcing (or even interpreting) the terms of an existing protective order. Rather, in both cases, the court rejected a party's request for entry of a protective order governing documents produced in the litigation.

Here, the Court long ago found good cause to enter a Protective Order under which documents designated by either party as Confidential or Highly Confidential are entitled to certain protections, including destruction upon conclusion of the litigation. Hoover's cited cases shed no light on the current dispute.[2]

---

[2] Hoover also cites the Third Circuit's pronouncement in *Pansy v. Borough of Stroudsbourgh*, 23 F.3d 772 (3d Cir. 1994) that "a court must take into account that third parties may often have no way of knowing what relevance a settled case may have to their interests," as support for the argument that deposition transcripts within its control should be preserved for the benefit of the *Oreck* plaintiffs. *See* Opp. at 4, *citing Pansy*, 23 F.3d at 778-780. Missing from Hoover's

## III.    CONCLUSION

For the foregoing reasons and for those set forth in Dyson's opening motion, Dyson

respectfully requests that its Motion to Enforce be granted.

Respectfully submitted,

YOUNG CONAWAY STARGATT & TAYLOR, LLP

C. Barr Flinn (No. 4092)
John W. Shaw (No. 3362)
Monté T. Squire (No. 4764)
The Brandywine Building,
1000 West Street, 17th Floor
Wilmington, Delaware  19801
(302) 571-6600
jshaw@ycst.com

*Attorneys for Plaintiffs Dyson Technology Limited and
Dyson, Inc.*

OF COUNSEL:

Garrard R. Beeney
Richard C. Pepperman, II
James T. Williams
Adam Brebner
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
(212) 558-4000

---

citation is any explanation of the context for that statement by the Third Circuit.  The Third
Circuit made this observation in deciding that a motion by a third-party newspaper to intervene
in order to obtain a copy of the parties' settlement agreement was timely filed six months after
the case had settled.  Pronouncements made in service of evaluating the timeliness of a motion
offer no guidance regarding the merits of Dyson's Motion to Enforce.  *Pansy* in fact determined
that documents *not* filed with the Court, like the transcripts at issue here, are not judicial
documents to which the public has a right of access.  *Pansy,* 23 F.3d at 782.

DB01:2451716.1                                                                                   063753.1002

Steven F. Reich
Jeffrey S. Edelstein
Tamar Feder
MANATT, PHELPS & PHILLIPS, LLP
7 Times Square
New York, New York  10036
(212) 790-4500

Dated: September 17, 2007


41156360.1

## CERTIFICATE OF SERVICE

I, John W. Shaw, hereby certify that on September 24, 2007, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Francis DiGiovanni, Esquire
> James D. Heisman, Esquire
> CONNOLLY BOVE LODGE & HUTZ LLP
> The Nemours Building – 8th Floor
> 1007 N. Orange Street
> Wilmington, DE 19801

I further certify that on September 24, 2007, I caused a copy of the foregoing document to be served by e-mail on the above-listed counsel of record and on the following in the manner indicated:

> **BY E-MAIL**
>
> Ray L. Weber, Esquire
> Laura J. Gentilcore, Esquire
> RENNER, KENNER, GREIVE, BOBAK,
>   TAYLOR & WEBER
> 400 First National Tower
> Akron, OH 44308
>
> Kimball R. Anderson, Esquire
> Stephen P. Durchslag, Esquire
> WINSTON & STRAWN LLP
> 35 W. Wacker Drive
> Chicago, IL 60601-9703

> YOUNG CONAWAY STARGATT & TAYLOR, LLP
>
> /s/ *John W. Shaw*
> C. Barr Flinn (No. 4092)
> John W. Shaw (No. 3362)
> Monté T. Squire (No. 4764)
> 1000 West Street, 17th Floor
> Wilmington, Delaware 19801
> (302) 571-6600
> jshaw@ycst.com
> *Attorneys for Dyson Technology Limited and Dyson, Inc.*